1  LATHAM & WATKINS LLP
   William K. Rawson (D.C. Bar No. 367167)
2  (application for *pro hac vice* pending)
   william.rawson@lw.com
3  Claudia M. O'Brien (D.C. Bar No. 447354)
   (application for *pro hac vice* pending)
4  claudia.o'brien@lw.com
   Stacey L. VanBelleghem (D.C. Bar No. 988144)
5  (application for *pro hac vice* pending)
   stacey.vanbelleghem@lw.com
6     555 Eleventh Street, N.W., Suite 1000
      Washington, D.C.  20004-1304
7     Telephone:  (202) 637-2200
      Fax:  (202) 637-2201
8
   Patrick J. Ferguson (Ca. Bar No. 252778)
9  patrick.ferguson@lw.com
      505 Montgomery Street, Suite 2000
10    San Francisco, CA  94111-6538
      Telephone:  (415) 391-0600
11    Fax:  (415) 395-8095

WILEY REIN LLP
David B. Weinberg (D.C. Bar No. 186247)
(application for *pro hac vice* pending)
dweinberg@wileyrein.com
Eric Andreas (D.C. Bar No. 462777)
(application for *pro hac vice* pending)
eandreas@wileyrein.com
   1776 K Street NW
   Washington, DC  20006
   Telephone:  (202) 719-7000
   Fax:  (202) 719-7049

*Attorneys for Proposed Intervenor-Defendants*
*CropLife America, et al.*

12

13                    UNITED STATES DISTRICT COURT
                   NORTHERN DISTRICT OF CALIFORNIA
14                      SAN FRANCISCO DIVISION

15 | CENTER FOR BIOLOGICAL DIVERSITY, *et al*., | CASE NO. NO. 11-CV-293-JCS |

16                Plaintiffs,

NOTICE OF MOTION AND MOTION OF
CROPLIFE AMERICA, ET AL. TO
INTERVENE AS DEFENDANTS, AND
MEMORANDUM IN SUPPORT

17         v.

18  UNITED STATES ENVIRONMENTAL
    PROTECTION AGENCY, *et al*.,

(The Honorable Joseph C. Spero)

19                Defendants,

Date:  April 22, 2011
Time:  9:30 am
Place:  Courtroom A - 15th Floor

20

        and

21

22  CROPLIFE AMERICA, RESPONSIBLE
    INDUSTRY FOR A SOUND
23  ENVIRONMENT, SOUTHERN CROP
    PRODUCTION ASSOCIATION, WESTERN
24  PLANT HEATH ASSOCIATION, MID-
    ATLANTIC CROPLIFE ASSOCIATION

25             Proposed Intervenor-
                  Defendants.
26

27

28

## NOTICE OF MOTION AND MOTION TO INTERVENE

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Notice is hereby given that on April 22, 2011, or as soon thereafter as the case may be heard, in the Courtroom of the Honorable Joseph C. Spero (Courtroom A - 15th Floor), CropLife America ("CropLife"), Responsible Industry for a Sound Environment ("RISE"), Southern Crop Production Association ("SCPA"), Western Plant Health Association ("WPHA") and Mid-America CropLife Association ("MACA") (collectively "Intervenor-Defendants") will and hereby do respectfully move to intervene as of right as defendants in the above-entitled action pursuant to Rule 24(a)(2) of the Federal Rules of Civil Procedure.  Alternatively, Defendant-Intervenors seek permissive intervention under Rule 24(b)(2) in order to protect their members' vital interests in the registration, sale and use of the pesticide active ingredients that are at issue in this case.

This Motion is based upon this Notice of Motion and Motion to Intervene, the Memorandum in Support thereof, the Declaration of Douglas T. Nelson, the Proposed Order, the Proposed Answer pursuant to Rule 24(c), all pleadings and papers filed in this action, and upon such other matters the Court may entertain.

Counsel for Intervenor-Defendants has conferred with counsel for the other parties to determine whether there is opposition to this motion.  Plaintiffs' counsel advise that they oppose intervention as to the merits, but not the remedy.  Defendants' counsel advises that the United States Environmental Protection Agency and Administrator Jackson (hereinafter jointly referred to as "EPA") take no position on this motion.

1     <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2     **INTRODUCTION**

3     Plaintiffs' principal allegation is that EPA has not properly consulted with the National

4 Marine Fisheries Service or the Fish and Wildlife Service (collectively the "Services") under

5 Section 7(a)(2) of the Endangered Species Act ("ESA") in authorizing the use in the United

6 States of over 300 chemicals as pesticides.[1]  Plaintiffs further allege that the thousands of

7 products that incorporate these chemicals present inadequately-evaluated risks to over 200

8 threatened or endangered species.  To cure each of these alleged violations, Plaintiffs assert that

9 this Court should order EPA to ban much of the use of the products until consultations are

10 complete.  Compl. ¶ 3.

11     Every product challenged by Plaintiffs has been found by EPA, after a rigorous

12 evaluation process, to "perform its intended function without unreasonable adverse effects on the

13 environment."[2]  Moreover, these products play a fundamental role in assuring a safe and

14 affordable food supply for all Americans, are essential to controlling such public health pests as

15 mosquitoes and rodents, and support agricultural exports that are central to our nation's

16 economic well being.

17     The relief Plaintiffs seek is the *de facto* frustration of the comprehensive pesticide

18 registration system established by the Federal Insecticide, Fungicide, and Rodenticide Act

19 ("FIFRA"), 7 U.S.C. §§ 136 *et seq.*  The over 300 chemicals identified in the Complaint are used

20 to formulate thousands of the actual "end-use" products used by farmers and consumers.  EPA

21 "registers" every one of those separate products, resulting in thousands of regulatory actions, and

22 has a system in place to consider endangered species impacts.  This evaluation is underway

23 pursuant to a Congressionally-mandated "registration review" process schedule.  It will run for

24 the next fifteen years, then begin again.[3]  Plaintiffs never objected to EPA's plan to implement

---

26 [1] Pesticides include such products as herbicides, insecticides, fungicides and rodenticides.

[2] 7 U.S.C. § 136a(c)(5)(C).

27 [3] 71 Fed. Reg. 45720, 45726 (Aug. 9, 2006).

28

this program when it was announced five years ago.  Moreover, already "the volume and complexity of EPA's section 7 consultation requests on pesticide reregistrations exceed [the Fish and Wildlife Service's] capability to complete consultations within normal statutory timelines."[4]

Plaintiffs, nonetheless, seek to force the evaluations of the potential impacts of each of EPA's registration actions on a list of over 200 different species outside EPA's established system.  These species are located in agricultural areas in every state in the nation except Alaska.  Initial estimates are that this means evaluation of as many as 30,000 product-species pairs.  Ultimately, the relief Plaintiffs seek would require the Court to supervise tens of thousands of EPA judgments and oversee EPA's entire pesticide registration program.

Further, before this Court could order much of the relief Plaintiffs seek, it would need to undertake product-by-product hearings to establish irreparable injury.  *See, e.g., Monsanto Co. v. Geertson Seed Farms*, 130 S. Ct. 2743 (2010) (holding that plaintiff must demonstrate irreparable injury to obtain injunctive relief); *see also Winter v. NRDC*, 129 S.Ct. 365 (2008).  As a consequence, even if Plaintiffs' characterization of the law were correct – which it is not – it would take years to define the appropriate relief under this standard, likely delaying the very evaluations Plaintiffs seek.  The additional burden on EPA would serve only to drain EPA resources and render its regulatory efforts less effective and more costly.

### BACKGROUND OF DEFENDANT-INTERVENORS

**CropLife**.  CropLife's members are the owners of the pesticide registrations whose use Plaintiffs seek to curtail and thus have a unique and direct interest in this case.  Nelson Decl. ¶ 2 (attached as Ex. 1).  CropLife seeks to intervene to protect its members' property interests.  *Id.*  Those interests are evidenced by (among other things) CropLife's members' investment in the generation and submission of voluminous data, studies and analyses to support their registrations and their extensive participation in EPA's registration processes under FIFRA.  *Id.*

These are the chemicals that help control the thousands of different weeds, insect species

---

[4]  Letter from Marjorie A. Nelson (U.S. Fish and Wildlife Service) to Arthur-Jean B. Williams (EPA), at 3 (Jan. 14, 2009).

1   and diseases that can destroy crops.  *Id.*  Without these products, U.S. food production would

2   certainly decline, causing food prices to rise.  *Id.*  Perhaps as important, the increased yields that

3   result from the use of these products reduce the cost and environmental footprint of agriculture

4   (by reducing acreage needed to achieve yields but also facilitating no or low tillage farming that

5   reduces run-off and soil erosion), thus benefiting both consumers and the environment.  *Id.*

6          **Responsible Industry for a Sound Environment.**  RISE is a national not-for-profit

7   trade association that promotes the intelligent use of pesticides to enhance and protect urban and

8   other non-agricultural areas.  *Id.* ¶ 4.  It is a standing committee of CropLife and its membership

9   includes producers and suppliers of specialty pesticides and fertilizers used for professional

10  applications and general consumer use through retail outlets.  *Id.*  Member products are used, for

11  example, to control mosquitoes, fleas, ticks, cockroaches, rodents, termites and carpenter ants,

12  thus lessening threats to human health and risk of structural damage.  *Id.*  Like CropLife, RISE

13  members hold EPA registrations for many of the pesticides being challenged in this lawsuit and

14  its members have invested hundreds of millions of dollars in research and testing in order to

15  support their registrations.  *Id.*

16         **Southern Crop Production Association.**  SCPA was established to act as a regional

17  trade association to provide pesticide formulators with relevant regulatory and other information,

18  and to represent its members interests at both the state and federal levels.  *Id.* ¶ 6.  SCPA is a

19  regional partner with CropLife and its membership now includes over 95% of the firms that

20  manufacture, formulate and distribute crop protection products in the southern states of Alabama,

21  Arkansas, Delaware, Florida, Georgia, Kentucky, Louisiana, Maryland, Mississippi, North

22  Carolina, Oklahoma, South Carolina, Tennessee, Texas and Virginia.  *Id.*  Several of SCPA's

23  members have state and federal registrations for pesticide products that are at issue in this case or

24  distribute such products.  *Id.*

25         **Western Plant Health Association.**  WPHA's purpose is to promote the

26  environmentally sound use and handling of plant health products and services for the production

27  of safe and high quality food, fiber and horticultural products.  *Id.* ¶ 7.  WPHA is a regional

28  partner with CropLife and it represents the interests of fertilizer and crop protection

1   manufacturers, biotechnology providers, distributors and agricultural retailers in California,

2   Arizona and Hawaii.  *Id*.  The organization's membership comprises more than 90% of all the

3   companies marketing plant nutrients, soil amendments, agricultural minerals and crop protection

4   products in those states.  *Id*.  Most importantly, its members hold state and federal registrations

5   that include many of the 381 pesticides listed in the Complaint or that distribute or sell such

6   pesticides.  *Id*.

7       **Mid-America CropLife Association.**  MACA's mission is to research public issues

8   relating to crop production and to work to improve the crop life cycle through health, safety and

9   public education.  *Id*. ¶ 5.  MACA's members are engaged in the manufacture, formulation,

10  distribution, or supply of products or services to the agriculture chemical industry in the states of

11  Colorado, Illinois, Indiana, Iowa, Kansas, Michigan, Minnesota, Missouri, Nebraska, North

12  Dakota, Ohio, South Dakota and Wisconsin.  *Id*.  Several MACA member companies are also

13  members of CropLife.  *Id*.  Thus, like CropLife, they hold pesticide registrations that are listed in

14  the Complaint.  Other MACA members also distribute and supply such pesticide products.  *Id*.

15                          **ARGUMENT**

16  **I.    THE CURRENT STAY OF LITIGATION DOES NOT AFFECT THE COURT'S
        ABILITY TO CONSIDER THIS MOTION**
17

18       Proposed Intervenor-Defendants recognize that this case is currently stayed, but believe

19  that this Court has the legal authority to consider their motion to intervene notwithstanding the

20  current stay.  Indeed, courts have previously allowed intervention even during the pendency of a

21  stay.  *See, e.g., Sierra Club v. Robertson*, 960 F.2d 83, 84, 86 (8th Cir. 1992) (where party

22  moved to intervene while a district court case was stayed pending an administrative appeal, the

23  appellate court remanded to the district court with instructions to permit intervention).  The

24  current stay of litigation should be viewed as limited to advancing the purposes set forth by

25  Plaintiffs and Federal Defendants – "discussing how best to proceed with this litigation,

26  including exploring the possibility of settlement."  Joint Motion to Stay Litigation at 1.  The stay

27  should not affect Intervenors' right to intervene in this action to protect their members'

28  significant interests at stake in this litigation.  To frustrate Intervenors' right to protect these

interests would be inconsistent with this Circuit's recent precedent reaffirming "[a] liberal policy in favor of intervention [to] serve[] both efficient resolution of issues and broadened access to the courts." *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011) (*en banc*).  In an abundance of caution, however, proposed Intervenors have also filed an administrative request to temporarily lift the stay for the limited purpose of considering this Motion.  *See* Administrative Motion of Proposed Intervenor-Defendants CropLife America, *et al.* for a Limited Lifting of the Stay to Consider the Motion to Intervene.

## II.  INTERVENTION OF RIGHT SHOULD BE GRANTED

An applicant is entitled to intervene as of right under Rule 24(a)(2) if it satisfies four conditions:

> (1) the motion must be timely; (2) the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action; (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and (4) the applicant's interest must be inadequately represented by the parties to the action.

*Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d at 1177; *see also Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 817 (9th Cir. 2001).  The Ninth Circuit "interprets [this] rule broadly in favor of intervention."  *Forest Conservation Council v. US. Forest Service*, 66 F.3d 1489, 1493 (9th Cir. 1995), to allow "parties with a practical interest in the outcome of a particular case to intervene."  *United States v. City of Los Angeles*, 288 F.3d 391, 398 (9th Cir. 2002) (internal quotation omitted) (emphasis in original).  The intervention inquiry is "guided primarily by practical considerations, not technical distinctions."  *Berg*, 268 F.3d at 818 (internal quotation omitted).  "[A] district court is required to accept as true the non-conclusory allegations made in support of an intervention motion."  *Id.* at 819.

Defendant-Intervenors satisfy all requirements for intervention as of right.

### A.  This Motion Is Timely

There is no prejudice here.  Plaintiffs Complaint was filed on January 20, 2011.  No hearings have been held, no answer has been filed by the government, and the case is presently stayed.  As a result, this motion is timely.  *See, e.g., Idaho Farm Bureau Fed'n v. Babbitt*, 58

1    F.3d 1392, 1397 (9th Cir. 1995) (motion was timely when motion filed "four months after

2    [plaintiff] filed the action" and "before any hearings or rulings on substantive matters"); *Sierra*

3    *Club v. EPA*, 995 F.2d 1478, 1481 (9th Cir. 1993) (holding intervention was clearly timely where

4    it was filed "before the EPA had even filed its answer"); *see also Sierra Nev. Forest Prot.*

5    *Campaign v. Rey*, No. S-05-0205, 2005 WL 2231548, at * 1-2 (E.D. Cal. Sept. 14, 2005)

6    (granting intervention motion filed 9 months into action); *Mont. Wilderness Ass'n v. McAllister*,

7    Nos. 07-39, 07-59,  2007 WL 4564175, at *l (D. Mont. Dec. 20, 2007) (granting permissive

8    intervention motion filed 5 months into action).

9            **B.**      **Intervenor-Defendants Have Legally Protectable Interests That May Be**
                     **Impaired by Disposition of This Case**

10

11         An interest is "significantly protectable" if it is "protectable under some law" and "there

12   is a relationship between the legally protected interest and the [plaintiffs'] claims."  *Berg*, 268

13   F.3d at 818 (citations omitted).  An interest is "related" to a claim when resolution of the claim

14   actually affects the movant's interest.  *Donnelly v. Glickman*, 159 F.3d 405, 410 (9th Cir. 1998).

15   Further, the Ninth Circuit has set forth "a practical, threshold inquiry.  No specific legal or

16   equitable interest need be established."  *Forest Conservation Council*, 66 F.3d at 1493 (quoting

17   *Greene v. United States*, 996 F.2d 973, 976 (9th Cir. 1993)).  Intervenor-Defendants and their

18   members clearly have protectable interests in this case.

19         Defendant-Intervenors' members produce, distribute and sell a majority of the crop

20   protection, urban use and specialty pesticides used in the United States and hold registrations for

21   most of the pesticides listed by Plaintiffs in the Complaint.  Nelson Decl. ¶¶ 2, 4-7, 9.  Under the

22   Administrative Procedure Act, FIFRA registrations are considered licenses that are protected by

23   law.  5 U.S.C. § 551(8) ("license" includes "the whole or a part of an agency permit, certificate,

24   approval, registration . . . or other form of permission.").  As a consequence, registration licenses

25   have been held to be significantly protectable property interest for purposes of determining a

26   third party's right to intervene in an action.  *See, e.g., Natural Res. Def. Council v. EPA*, 99

27   F.R.D. 607, 609 (D.D.C. 1983) ("Plaintiffs' complaint challenges procedures pursuant to which

28   EPA reached preliminary decisions that the intervenors' pesticide products merited continued

registration.  If Plaintiffs succeed in this case, these regulatory decisions . . . will be set aside.

Thus, the intervenors can be said to have a substantial and direct interest in the subject of this

litigation."); *Sierra Club*, 995 F.2d at 1485-86 (ruling that holder of discharge permits under the

Clean Water Act had a "protectable" interest and could intervene as of right where the litigation

could result in modifications to those permits); *Animal Prot. Inst. v. Martin*, 241 F.R.D. 66 (D.

Me. 2007) (granting intervention as of right to licensed fur trappers where plaintiffs sought to

enjoin state agency from issuing licenses); *Nader v. Ray*, 363 F. Supp. 946, 953 (D.D.C. 1973)

(granting intervention as of right to holders of nuclear facility operating licenses issued by the

Atomic Energy Commission where the licenses would have been revoked or suspended if the

plaintiffs prevailed).

Moreover, the registrations at issue in this case are the product of enormous financial

investments by Intervenor-Defendants, who have collectively invested billions of dollars to

obtain and maintain the registrations and who also rely on revenue from the sale and distribution

of such products.  Nelson Decl. ¶¶ 2-7, 10-11.  If the Plaintiffs prevail in this case, those

pesticide licenses will be completely or partially revoked for use on millions of acres throughout

the United States, subjecting Intervenors-Defendants' members to significant financial losses in

the many billions of dollars.  *Id*. ¶ 10.  This alone is clearly a sufficient interest, directly related

to the subject of this action, to support intervention as of right.  *See, e.g., People for the Ethical

Treatment of Animals v. Babbitt*, 151 F.R.D. 6 (D.D.C. 1993).

Intervenor-Defendants also have significant, protectable interests in the considerable

efforts invested by its members in "participat[ing] in the administrative process" that culminated

in the administrative action at issue here.  Such involvement is sufficient to support intervention

as of right.  *Idaho Farm Bureau Fed'n*, 58 F.3d at 1397-98 (holding that such participation gave

rise to legally protectable interest and affirming grant of intervention as of right); *Sagebrush

Rebellion, Inc. v. Watt*, 713 F.2d 525, 527 (9th Cir. 1983) (explaining that the Ninth Circuit has

not had "any difficulty determining that the organization seeking to intervene had an interest in

the subject of the suit" in cases "challenging the legality of a measure which it had supported");

*Wash. State Bldg. & Constr. Trades Council v. Spellman*, 684 F.2d 627,630 (9th Cir. 1982)

1   (holding that sponsors of a ballot initiative had a significantly protectable interest in defending

2   initiative against challenge).

3        CropLife members, for example, have participated extensively in the administrative

4   processes for the registration and reregistration of the pesticides at issue. *Id*. ¶ 12  They have

5   submitted voluminous scientific data, comments and analysis, and have spent countless hours

6   meeting with EPA, the Services and scientific advisory panels to support the finding that these

7   pesticides meet the legal safety criteria required for registration and do not adversely affect listed

8   species. *Id*.

9   **C.    Intervenor-Defendants' Interests Will Not Be Adequately Represented By Existing Parties**

10

11        The final condition for intervention as of right is that the representation of a proposed

12   intervenor's interests by the existing parties "may be" inadequate.  The Supreme Court has stated

13   that the burden of making a showing of inadequacy should be treated as "minimal." *Trbovich v.*

14   *United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972); *see also Berg*, 268 F.3d at 823.  As

15   the Ninth Circuit has explained, a movant's "burden in showing inadequate representation is

16   minimal:  It is sufficient to show that representation may be inadequate." *Forest Conservation*

17   *Council*, 66 F.3d at 1498 (emphasis in original) (citing *Trbovich*, 404 U.S. at 538 n.10); *see also*

18   *Berg*, 268 F.3d at 822-23.  In considering the adequacy of representation, this Court must

19   "consider whether the interest of a present party is such that it would undoubtedly make all the

20   intervenor's arguments; whether the present party is capable and willing to make such

21   arguments; and whether the intervenor would offer any necessary elements to the proceedings

22   that other parties would neglect." *Forest Conservation Council*, 66 F.3d at 1498-99.

23        The interests of Intervenor-Defendants and their members in this action are not

24   adequately represented by EPA.  Intervenor-Defendants have an interest in protecting specific

25   pesticide registrations and preserving the value of those licenses, or preserving the right to

26   distribute or sell the pesticides.

27        EPA, in contrast, has no interest in protecting pesticide licenses or distribution rights.

28   Indeed, courts have recognized that in the particular context of pesticides regulation, the

1  inadequacy standard is met even in cases where EPA and pesticide manufacturers appear to have

2  interests that are directly aligned. *See, e.g., Natural Res. Def. Council*, 99 F.R.D. at 610

3  (concerning regulatory reform measures for pesticides). This is because EPA's broader goal in

4  challenges to its pesticides regulations is "defending [the] policies and procedures that it utilizes

5  in regulating many potential harmful substances . . . ," while a manufacturer has "interests [that]

6  are more narrowly focused on proceedings relating to the particular pesticide [it] manufacture[s]"

7  and thus wishes to maximize its opportunities to prove that its products are safe. *Id.*

8       Moreover, EPA may desire to reach a settlement of this case that would put in place some

9  or all of the restrictions sought by Plaintiffs, but to which Intervenor-Defendants object. In fact,

10  a stay has already been entered in part without notice to Intervenor-Defendants so that EPA and

11  Plaintiffs can explore the possibility of settlement. Dkt. #14. Courts have found that this

12  potential for conflict is sufficient to meet the "minimal" burden of demonstrating inadequacy of

13  representation. *See, e.g.*, *Berg*, 268 F.3d at 823 ("City in this case cannot be expected

14  successfully to safeguard Applicants' legally protectable interests"); *Forest Conservation

15  Council*, 66 F.3d at 1499 (finding proposed intervenors satisfied the minimal showing required

16  for inadequacy of representation because, in part, "the government must present the broad public

17  interest, not just the economic concerns of the [proposed intervenors]"). Moreover, the

18  government's duty to represent the interests of the public at large means its interests do not

19  necessarily align with Intervenor-Defendants and their members. *See Utah Ass'n of Counties v.

20  Clinton*, 255 F.3d 1246, 1255-56 (10th Cir. 2001); *Kleissler v. United States,* 157 F.3d 964, 973-

21  74 (3d Cir. 1998).

22       The government's refusal to take a position on intervention, and the filing of the joint

23  motion to stay without notifying Intervenor-Defendants, further underscores that it has no

24  intention of representing Intervenor-Defendants' interests.

25       Under these circumstances, there certainly is no indication that the government will

26  "undoubtedly make all [of the proposed intervenor's] arguments," a fact which further counsels

27  in favor of intervention. *Forest Conservation Council*, 66 F.3d at 1498-99.

28

### III.    PERMISSIVE INTERVENTION SHOULD BE GRANTED

In addition to meeting all the requirements for mandatory intervention, Intervenor-Defendants also meet the standard for permissive intervention.  Rule 24(b) provides that on timely application "the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact."  Fed. R. Civ. P. 24(b)(l).  "The language of the rule makes clear that . . . if there is a common question of law or fact, the requirement of the rule has been satisfied and it is then discretionary with the court whether to allow intervention."  *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1111 (9th Cir. 2002).

A proposed permissive intervenor must satisfy three prerequisites:  (1) its claims or defenses must share a common question of law or fact with the main action; (2) the motion must be timely; and (3) there must be an independent ground for jurisdiction.  *S. Cal. Edison Co. v. Lynch*, 307 F.3d 794, 803 (9th Cir. 2002).  Intervenor-Defendants easily satisfy each of these prerequisites.

As set forth above, the current motion is timely.  Also, the "common question of law or fact" is easily satisfied.  Intervenor-Defendants seek to address a major issue in the case – namely the validity of the registrations Plaintiffs seek to enjoin.  Intervenor-Defendants' members have been deeply involved with developing, distributing and selling the pesticides at issue, insuring their safety to humans and the environment, securing governmental approvals and educating the public.  Intervenor-Defendants can therefore "assist the court in its orderly procedures leading to the resolution of th[e] case."  *Kootenai Tribe*, 313 F.3d at 1111.  This information is not simply "common" to Plaintiffs' claims, it is "directly responsive to" the issues raised by Plaintiffs' Complaint.  *Id*. at 1110.

### CONCLUSION

For the foregoing reasons, this motion to intervene should be granted.

1

Dated:  March 18, 2011                          Respectfully submitted,

2

3                                                s/ Patrick J. Ferguson

DAVID B. WEINBERG                                  PATRICK J. FERGUSON
4  (D.C. Bar No. 186247)                            (Ca. Bar No. 252778)
(application for *pro hac vice* pending)          LATHAM & WATKINS LLP
5  ERIC ANDREAS (D.C. Bar No.                        505 Montgomery Street, Suite 2000
462777)                                          San Francisco, CA  94111-6538
6  (application for *pro hac vice* pending)          Telephone:  (415) 391-0600
WILEY REIN LLP                                   Fax:  (415) 395-8095
7     1776 K Street NW                               Email: patrick.ferguson@lw.com
Washington, DC  20006
8     Telephone:  (202) 719-7000                  WILLIAM K. RAWSON
Fax:  (202) 719-7049                          (D.C. Bar No. 367167)
9  Email: dweinberg@wileyrein.com                  (application for *pro hac vice* pending)
eandreas@wileyrein.com                   CLAUDIA M. O'BRIEN
10                                                  (D.C. Bar No. 447354)
(application for *pro hac vice* pending)
11                                                 STACEY L. VANBELLEGHEM
(D.C. Bar No. 988144)
12                                                 (application for *pro hac vice* pending)
LATHAM & WATKINS LLP
13                                                    555 Eleventh Street, N.W., Suite
1000
14                                                    Washington, D.C.  20004-1304
Telephone:  (202) 637-2200
15                                                  Fax:  (202) 637-2201
Email: william.rawson@lw.com
16                                                    claudia.o'brien@lw.com
stacey.vanbelleghem@lw.com

17                    *Attorneys for Proposed Intervenor-Defendants*

18

19

20

21

22

23

24

25

26

27

28

1
## <u>CERTIFICATE OF SERVICE</u>

2      I hereby certify that on March 18, 2011 I filed the foregoing Notice of Motion and

3 Motion to Intervene, the Memorandum in Support thereof, the Declaration of Douglas T. Nelson,

4 the Proposed Order, and the Proposed Answer were filed with the Clerk of the Court for the

5 United States District Court.

6      I HEREBY CERTIFY that the foregoing was served on March 18, 2011 on the following

7 individuals via CM/ECF notification:

8  Justin Augustine
   Collette Lucille Adkins Giese
9  Jaclyn M. Lopez
   Center for Biological Diversity
10 351 California St., Suite 600
   San Francisco, California 94104
11 Telephone:  (415) 436-9682
   Fax:  (415) 436-9683
12 Email:  jaugustine@biologicaldiversity.org
   Email:  cadkinsgiese@biologicaldiversity.org
13 Email:  jlopez@biologicaldiversity.org

14 Michael W. Graf
   Law Offices of Michael Graf
15 227 Behrens St.
   El Cerrito, CA 94530
16 Telephone: (510) 525-7222
   Fax: (510) 525-1208
17 Email:  mwgraf@aol.com

18 *Counsel for Plaintiffs*

19 James Anthony Maysonett
   Erik Edward Petersen
20 U.S. Department of Justice
   Environmental & Natural Resources Div.
21 Wildlife & Marine Resources Section
   Benjamin Franklin Station, P.O. Box 7369
22 Washington, DC 20044-7369
   Telephone: (202) 305-0216
23 Fax: (202) 305-0275
   Email: james.a.maysonett@usdoj.gov
24 Email: erik.petersen@usdoj.gov

25 *Defendants*

26                                    s/ Patrick J. Ferguson
                                     Patrick J. Ferguson
27

28