LATHAM & WATKINS LLP
William K. Rawson (D.C. Bar No. 367167)*
william.rawson@lw.com
Claudia M. O'Brien (D.C. Bar No. 447354)*
claudia.o'brien@lw.com
Stacey L. VanBelleghem (D.C. Bar No. 988144)*
stacey.vanbelleghem@lw.com
   555 Eleventh Street, N.W., Suite 1000
   Washington, D.C. 20004-1304
   Telephone: (202) 637-2200
   Fax: (202) 637-2201

Patrick J. Ferguson (Ca. Bar No. 252778)
patrick.ferguson@lw.com
   505 Montgomery Street, Suite 2000
   San Francisco, CA 94111-6538
   Telephone: (415) 391-0600
   Fax: (415) 395-8095

* Admitted *pro hac vice*

WILEY REIN LLP
David B. Weinberg (D.C. Bar No. 186247)*
dweinberg@wileyrein.com
Eric Andreas (D.C. Bar No. 462777)*
eandreas@wileyrein.com
   1776 K Street NW
   Washington, DC 20006
   Telephone: (202) 719-7000
   Fax: (202) 719-7049

*Attorneys for Proposed Intervenor-Defendants CropLife America, et al.*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, et al., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, et al., <br><br> Defendants, <br><br> and <br><br> CROPLIFE AMERICA, RESPONSIBLE INDUSTRY FOR A SOUND ENVIRONMENT, SOUTHERN CROP PRODUCTION ASSOCIATION, WESTERN PLANT HEATH ASSOCIATION, MID AMERICA CROPLIFE ASSOCIATION, <br><br> Proposed Intervenor-Defendants. | CASE NO. NO. 11-CV-293-JCS <br><br> **REPLY OF CROPLIFE AMERICA, ET AL. IN SUPPORT OF THE MOTION TO INTERVENE AS DEFENDANTS** <br><br> (The Honorable Joseph C. Spero) <br><br> Date: April 22, 2011 <br> Time: 9:30 am <br> Place: Courtroom A - 15th Floor |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................... II

INTRODUCTION ........................................................................................................................ 1

ARGUMENT ................................................................................................................................ 1

I.  PLAINTIFFS HAVE NOT PRESENTED VALID ARGUMENTS
    AGAINST INTERVENTION AS OF RIGHT ................................................................ 1

    A.  Intervenor-Defendants Have A Significantly Protectable Interest in
        the Liability Phase ................................................................................................ 2

        1.  Intervenor-Defendants' Interests Supporting Intervention
            Are Implicated in the Liability Phase ....................................................... 2

        2.  Plaintiffs Rely on Arguments Expressly Rejected in
            *Wilderness Society* and Arguments Otherwise Unsupported
            in Current Law .......................................................................................... 4

    B.  A Ruling in Plaintiffs' Favor on Liability Would Impair
        Intervenor-Defendants' Interests .......................................................................... 7

    C.  Intervenor-Defendants are Not Adequately Represented by EPA ........................ 8

II. PLAINTIFFS HAVE NOT PRESENTED VALID ARGUMENTS
    AGAINST PERMISSIVE INTERVENTION ................................................................ 11

III. INTERVENOR-DEFENDANTS' PARTICIPATION SHOULD NOT BE
     LIMITED ........................................................................................................................ 12

CONCLUSION ........................................................................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*American Bird Conservancy v. FCC*,
    545 F.3d 1190 (9th Cir. 2008) ....................................................................................9, 12

*Arakaki v. Cayetano*,
    324 F.3d 1078 (9th Cir. 2003) ....................................................................................10, 11

*Forest Conservation Council v. United States Forest Service*,
    66 F.3d 1489 (9th Cir. 1995), *overruled in part on other grounds by Wilderness
    Society v. United States Forest Service*, 630 F.3d 1173 (9th Cir. 2011) ...........................10

*Geerston Farms, Inc. v. Johanns*,
    439 F. Supp. 2d 1012 (N.D. Cal. 2006), *aff'd on other grounds*, 541 F.3d 938 (9th
    Cir. 2008) ..........................................................................................................................10

*Kootenai Tribe of Idaho v. Veneman*,
    313 F.3d 1094 (9th Cir. 2002), *overruled in part on other grounds by Wilderness
    Society v. United States Forest Service*, 630 F.3d 1173 (9th Cir. 2011) ...........................11

*League of United Latin American Citizens v. Wilson*,
    131 F.3d 1297 (9th Cir. 1997...........................................................................................10, 11

*NRDC v. Norton*,
    No. 1:05-CV-01207 OWW TAG, 2006 U.S. Dist. LEXIS 1363
    (E.D. Cal. Jan. 5, 2006)....................................................................................................12

*NRDC v. Norton*,
    No. 05-16581, 2006 U.S. App. LEXIS 10087 (9th Cir. Apr. 19, 2006)............................10

*National Association of Home Builders v. San Joaquin Valley Unified Air Pollution
    District*,
    No. 1:07cv0820, 2007 U.S. Dist. LEXIS 73292 (E.D. Cal. Sept. 20, 2007) .....................11

*Perry v. Proposition 8 Official Proponents*,
    587 F.3d 947 (9th Cir. 2009) ..........................................................................................10, 11

*Pesticide Action Network North America v. United States EPA*,
    No. 08-1814, 2008 U.S. Dist. LEXIS 98572 (N.D. Cal. Dec. 5, 2008).........................9, 10

*Sierra Club v. EPA*,
    995 F.2d 1478 (9th Cir. 1993), *overruled in part on other grounds by Wilderness
    Society v. United States Forest Service*, 630 F.3d 1173 (9th Cir. 20011) ...........................7

*South Yuba River Citizens League v. National Marine Fisheries Service*,
    No. CIV. S-06-2845, 2007 WL 3034887 (E.D. Cal. Oct. 16, 2007) ...................................3

*Southwest Center for Biological Diversity v. Berg*,
    268 F.3d 810 (9th Cir. 2001) ..........................................................................................7, 8

*Trbovich v. United Mine Workers of America*,
    404 U.S. 528 (1972)............................................................................................................8

| | Page(s) |
|---|---:|
| *United Farm Workers of America v. United States EPA*, No. C04-099R SM, 2008 U.S. Dist. LEXIS 40196 (W.D. Wash. May 19, 2008) | 10 |
| *United Farm Workers of America v. EPA*, 592 F.3d 1080 (9th Cir. 2010) | 9 |
| *Wilderness Society v. United States Forest Service*, 630 F.3d 1173 (9th Cir. 2011) | 4, 5, 6 |

**STATUTES**

| | |
|---|---:|
| 7 U.S.C. § 136n(b) | 9 |
| 16 U.S.C. § 1536(a)(2) | 2 |

# INTRODUCTION

The gravamen of Plaintiffs' Complaint is that pesticide registrations held by Intervenor-Defendants have been issued and maintained in violation of federal law. Intervenor-Defendants unquestionably have significantly protectable interests in those product registrations, and in the administrative process by which those registrations were granted. Plaintiffs' contention that Intervenor-Defendants should not be heard until after the legality of their licenses has been determined is based on arguments that were expressly rejected by the Ninth Circuit sitting *en banc* in *Wilderness Society*. Plaintiffs' arguments also fly in the face of the liberal intervention policy reaffirmed in *Wilderness Society*, and that Plaintiffs have endorsed when seeking intervention themselves in ESA cases. Plaintiffs' contention that Intervenor-Defendants' interests are adequately represented by EPA is equally without merit; the burden to demonstrate inadequate representation is minimal, and here Intervenor-Defendants identify specific defenses that they intend to assert that EPA may not assert, and also cite a concrete example of an ESA case where pesticide registrants' interests were not adequately represented by EPA. Intervenor-Defendants have established all of the elements required for both intervention as of right and permissive intervention. Plaintiffs have not presented any valid reasons why Intervenor-Defendants' intervention motion should not be granted.

# ARGUMENT

## I. PLAINTIFFS HAVE NOT PRESENTED VALID ARGUMENTS AGAINST INTERVENTION AS OF RIGHT

Plaintiffs' Opposition disregards the Ninth Circuit's liberal intervention standard and characterizes their action against EPA in a misleadingly narrow manner in an attempt to refute Intervenor-Defendants' significantly protectable interests in the liability phase of this case. However, Intervenor-Defendants have significantly protectable interests in *both* the liability and remedy phases of this case, a liability phase ruling in Plaintiffs' favor would significantly impair these interests, and EPA cannot be presumed to represent these interests adequately in either the liability or the remedy phase.

A. **Intervenor-Defendants Have A Significantly Protectable Interest in the Liability Phase**

1. **Intervenor-Defendants' Interests Supporting Intervention Are Implicated in the Liability Phase**

Plaintiffs concede that Intervenor-Defendants have significantly protectable interests in their pesticide registrations, Pls.' Opp'n at 9 (Dkt. #48), but argue that Intervenor-Defendants should not be permitted to intervene in the liability phase of this case because this phase only addresses whether EPA has complied with the ESA and "Applicant-Intervenors have no significantly protectable interest in whether the agency is complying with the ESA." Pls.' Opp'n at 6. In reality, Plaintiffs seek a ruling from this Court that registrations held by Intervenor-Defendants' members were issued or maintained in violation of the ESA. The ESA Section 7(a)(2) consultation requirement is triggered only by *agency action*, *see* 16 U.S.C. § 1536(a)(2); Pls.' Opp'n at 2; Compl. ¶19, and it is abundantly clear from the Complaint that the agency actions that Plaintiffs allege triggered this consultation obligation are EPA's actions in registering and reregistering pesticides under the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"). Compl. ¶¶34-46, 130, 131, 132. Thus, Intervenor-Defendants' significantly protectable interests in those pesticide registrations have a direct relationship to the liability phase of this case.

Plaintiffs do not dispute that Intervenor-Defendants' members have collectively invested billions of dollars in research and testing to obtain and maintain the pesticide registrations at issue in this case and have spent thousands of hours on these registrations. Declaration of Douglas T. Nelson in Support of the Motion of CropLife America, et al. to Intervene as Defendants ¶¶11-12, Dkt. #17 ("Nelson Decl."). Intervenor-Defendants unquestionably have a protectable interest in the legal status of those registrations, and in avoiding any ruling that those registrations were issued or maintained in an unlawful manner. Thus, a ruling by this Court that EPA has violated the ESA consultation requirement in granting registrations to Intervenor-Defendants' members—what Plaintiffs term the "liability" phase of this litigation—is of obvious interest to Intervenor-Defendants and will determine whether any remedial relief is warranted.

1    Intervenor-Defendants' members also have a protectable interest in their participation in
2 the administrative process leading to the agency actions that allegedly triggered the ESA
3 consultation requirement in this case—EPA's actions in registering and reregistering pesticides
4 under FIFRA. *See* Mot. to Intervene at 7-8. Intervenor-Defendants' members have participated
5 extensively in the administrative processes for the registration and reregistration of most of the
6 pesticides named in this suit. Nelson Decl. ¶12. Thus, Intervenor-Defendants have an interest in
7 any determination that any of these agency actions, which they supported, are in violation of the
8 ESA.
9    Furthermore, Intervenor-Defendants have an interest in the *finality* of EPA's registration
10 and reregistration decisions under FIFRA, and in any attempt to *alter* the administrative process
11 for future registrations in ways that would increase the cost, burden or delay in bringing valuable
12 new products to market. *See* Nelson Decl. ¶¶ 8, 14, 15. This Court has previously recognized
13 these important interests in granting full intervention to CropLife America in a case alleging
14 ESA violations in EPA's reregistration of four pesticides. *See* Memorandum and Order,
15 *Pesticide Action Network N. Am. v. U.S. EPA*, No. C 08-01814 MHP, Dkt. #43 (N.D. Cal. July 8,
16 2008) (attached as Ex. A). In that case, Judge Patel acknowledged the then current "federal
17 defendant" rule, but found that CropLife America "has a vested interest in maintaining the
18 current regulatory scheme for the benefit of its members" and "any change in the regulatory
19 scheme will likely lead to large financial consequences for [CropLife America] members." *Id.* at
20 5. Judge Patel concluded that CropLife America "has an identifiable, significantly protectable
21 interest in the integrity and finality of re-registration decisions." *Id.* Other U.S. District Courts in
22 California have similarly recognized these and other interests in granting private parties
23 intervention of right in all phases of ESA litigation. *See, e.g., S. Yuba River Citizens League* v.
24 *Nat'l Marine Fisheries Serv.,* No. CIV. S-06-2845, 2007 WL 3034887, at * 14 (E.D. Cal. Oct.
25 16, 2007) (granting intervention in all phases of ESA case); Order at 7-13, *Home Builders Ass'n*
26 *of N. Cal. v. Williams,* Civ. No. S-04-345, Dkt. #22 (E. D. Cal. Apr. 8, 2004) (granting Center for
27 Biological Diversity intervention as of right in merits phase of ESA case and concluding that the
28 "NEPA doctrine" did not apply) (attached as Ex. B). Moreover, in a case outside of the Ninth

Circuit, the court granted private parties intervention in all phases of ESA litigation involving pesticide registrations. *See* Memorandum Opinion, *NRDC v. U.S. EPA*, No. RDB-03-2444, Dkt. #26 (D. Md. Dec. 1, 2003) (attached as Ex. C).

Plaintiff Center for Biological Diversity effectively conceded these points when it sought to intervene in the liability phase of an ESA case. In that case, Center for Biological Diversity denied that its "interests lie only in the remedial phase of th[e] action" instead arguing that it had "an obvious interest in the resolution of this case on the merits[,] as the determination of the legality of the Sonoma and Santa Barbara listing rules will determine whether any remedy is needed in the first instance." Reply in Supp. of Mot. to Intervene at 6, *Home Builders Ass'n of N. Cal. v. Williams*, No. Civ. S-04-0345, Dkt. # 20 (E.D. Cal. Mar. 26, 2004) (attached as Ex. D). So too here.

### 2. Plaintiffs Rely on Arguments Expressly Rejected in *Wilderness Society* and Arguments Otherwise Unsupported in Current Law

Plaintiffs' Opposition is based on arguments that were expressly rejected by the Ninth Circuit sitting *en banc* in *Wilderness Society v. United States Forest Service*, 630 F.3d 1173 (9th Cir. 2011), and on decisions that predate that holding. Plaintiffs' Opposition also ignores the Ninth Circuit's clear statements in *Wilderness Society* that intervention should be granted liberally.

Plaintiffs acknowledge that *Wilderness Society* overturned the Ninth Circuit's prior National Environmental Policy Act ("NEPA") "federal defendant" rule limiting private parties' intervention as of right during the liability phase of NEPA cases. Pls.' Opp'n at 6. However, Plaintiffs' arguments against intervention in the liability phase of this case are the *same arguments* that the Ninth Circuit originally relied upon in support of the NEPA "federal defendant" doctrine, and have now rejected. Plaintiffs argue that "[d]uring the liability phase, the issue is whether EPA is complying with its duties under Section 7(a)(2) of the ESA. As explained below, Applicant-Intervenors have no significantly protectable interest in whether the agency is complying with the ESA." Pls.' Opp'n at 6; *see id.* at 8 (explaining that Plaintiffs "want the Court to order EPA to comply with its ESA procedural requirements"). This is the

same rationale that courts in the Ninth Circuit relied upon in crafting the NEPA "federal defendant" doctrine. *See, e.g. Wilderness Soc'y*, 630 F.3d at 1177 ("The rationale for this rule is that such parties lack a 'significantly protectable' interest warranting intervention of right under Rule 24(a)(2) because NEPA is a procedural statute that binds only the federal government."); *id.* at 1178 (rejecting prior reasoning that "proposed intervenors lacked the 'direct, significant legally protectable interest' required for intervention of right under Rule 24(a)(2) because in cases 'brought to require compliance with federal statutes regulating governmental projects, the governmental bodies charged with compliance can be the only defendants.'") (citation omitted).

Thus, Plaintiffs' arguments have been explicitly rejected by the Ninth Circuit, *en banc*, and the doctrine that they seek to apply here to an ESA case is no longer good law. *See id.* at 1178 (abandoning the NEPA "federal defendant" rule as "inconsistent with the text of Rule 24(a)(2), which requires only 'an interest relating to the property or transaction that is the subject of the action.' Fed. R. Civ. P. 24(a)(2)."). Thus, Plaintiffs are asking this Court to apply to this ESA case a doctrine that the Ninth Circuit emphatically rejected in the NEPA context, yet they present no valid reason to do so.

Not only did the Ninth Circuit reject the arguments underlying the NEPA "federal defendant" doctrine—arguments similar to Plaintiffs' arguments here—but the Ninth Circuit also expressly noted that the doctrine was not applicable to intervention cases brought under other environmental statutes, including the ESA. *See id.* at 1179 ("That the 'federal defendant' rule is at odds with the normal standards we apply in all other intervention of right cases is further demonstrated by our consistent approval of intervention of right on the side of the federal defendant in cases asserting violations of environmental statutes other than NEPA."); *id.* at 1180 ("[I]n *Idaho Farm Bureau* . . . we approved intervention of right by environmental groups as defendants in an action challenging the Fish and Wildlife Service's compliance with the Endangered Species Act of 1973 ('ESA') . . . .").

The Ninth Circuit in *Wilderness Society* also clearly reiterated a liberal intervention policy embracing "broadened access to the courts" that runs counter to Plaintiffs' assertions regarding Intervenor-Defendants' interests in the liability phase of this case. *See id.* at 1179

1 (construing "the Rule 'broadly in favor of proposed intervenors,'" because "'[a] liberal policy in favor of intervention serves both efficient resolution of issues and broadened access to the courts.'") (citation omitted); *id.* ("'[i]t is generally enough that the interest is protectable under some law, and that there is a relationship between the legally protected interest and the claims at issue.'") (citation omitted). This liberal intervention standard emphasized in *Wilderness Society* was *supported* by Plaintiff Center for Biological Diversity when seeking intervention in the liability phase of *Home Builders Association of Northern California*: "District courts in the Ninth Circuit construe Rule 24 'liberally, in favor of potential intervenors.'" Reply in Supp. of Mot. to Intervene at 2, *Home Builders Ass'n of N. Cal.*, No. Civ. S-04-0345, Dkt. #20 (E.D. Cal. Mar. 26, 2004) (attached as Ex. D) (citation omitted). In seeking to limit Intervenor-Defendants' participation in this case to the remedy phase, Plaintiffs now ignore this standard.

Plaintiffs cite the Court's prior denial of "the pesticide industry's" intervention in the liability phase of a case challenging EPA's failure to consult regarding eleven threatened and endangered species. *See* Pls.' Opp'n at 7 (citing *Center for Biological Diversity v. EPA*, No. C07-2794-JCS (N.D. Cal. Mar. 19, 2008)). However, that ruling was issued before *Wilderness Society*, and Center for Biological Diversity based its opposition to intervention in the liability phase in that case upon the "federal defendant" rule that has now been rejected. *See* Pl.'s Combined Opp. to Motions to Intervene at 1, 6, *Center for Biological Diversity v. EPA*, No. C-07-2794-JCS, Dkt. #27 (N.D. Cal. Oct. 11, 2007) (attached as Ex. E). Thus, the limitation on intervention in that case was based upon pre-*Wilderness Society* case law and a recently-abandoned doctrine, and should have no persuasive value here.

Plaintiffs also imply that public interest groups should have greater intervention rights than companies that have invested billions of dollars and thousands of hours in the registrations at issue. *See* Pls.' Opp'n at 10 ("Unlike the intervenors in these three cited cases, Applicant-Intervenors are not public interest groups seeking intervention in an action challenging the legality of a measure they have supported. As such, these cases have no relevance here."); Nelson Decl. ¶¶ 11-12. However, nothing in *Wilderness Society* or other Ninth Circuit law gives greater access to judicial courts to public interest groups compared to private parties, and there is

no legal basis for such a distinction.  To the contrary, the Ninth Circuit has held that "[c]ontract rights are traditionally protectable interests." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001).  Furthermore, the Ninth Circuit has expressly rejected the notion that intervention under another environmental statute—the Clean Water Act—"is limited to 'environmental interests, not economic interests.'"  *Sierra Club v. EPA*, 995 F.2d 1478, 1483 (9th Cir. 1993), *overruled in part on other grounds by Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 20011) (en banc).  Intervenor-Defendants' interests in their FIFRA registrations are real, substantial and concrete, and the notion that those interests should be discounted in any way because they are economic interests lacks any basis in law, and is flatly contradicted by the reasoning in *Wilderness Society,* which embraces "broad access" to judicial courts for all parties with a protectable interest.

**B.    A Ruling in Plaintiffs' Favor on Liability Would Impair Intervenor-Defendants' Interests**

Plaintiffs argue that "no direct impacts to those registrations would occur even if EPA is found in violation of the ESA. Rather, Applicant-Intervenors' pesticide registrations may only be affected as a result of the interim injunctive relief the Center seeks." Pls.' Opp'n at 1.  This is simply not true.

*First*, a ruling on whether the pesticide registrations at issue in this case were issued in violation of the ESA "could by itself have severe adverse impacts on the utility and value of the licenses. The value of any license issued by EPA would be significantly diminished by a finding that EPA's approval of the licenses is in violation of Section 7 of the ESA." Nelson Decl. ¶10; *see id.* ¶14 ("Intervenor-Defendants also seek more broadly to protect their members' interest in avoiding adverse legal precedent which would diminish the value of their pesticide licenses.").

*Second*, Plaintiffs are incorrect in claiming that their Complaint does not seek to "order EPA to change the Applicant-Intervenors' pesticide registrations." Pls.' Opp'n at 8.  Plaintiffs' Complaint clearly alleges that pesticide usage authorized by EPA under the registrations issued to Intervenor-Defendants actually harm endangered species – and seeks to have this Court find that consultation under Section 7(a)(2) is needed to ensure that the listed pesticides do not

7
Case Number: 11-cv-293
REPLY IN SUPP. OF MOT. TO INTERVENE

jeopardize the enumerated endangered species.  *See* Compl. ¶¶1, 2, 93, 99, 100, 101, 130, 131, 132.  Plaintiffs thus clearly allege that those pesticide registrations *must* be changed to avoid jeopardy to endangered species; it is disingenuous for them to now suggest that the registrations need not be changed, or that the relief they seek is far "too attenuated" from any such changes in the registrations.  *See* Pls.' Opp'n at 8, 10.

*Third*, as already stated and as Plaintiffs do not deny, Intervenor-Defendants spent tremendous resources in participating in the administrative process leading to the agency actions at issue in this case—the pesticide registrations.  *See* Nelson Decl. ¶12.  If Plaintiffs are successful in the liability phase, this agency action will be deemed unlawful, impairing Intervenor-Defendants' interest in that process.

*Finally*, as also has been stated, Intervenor-Defendants have an interest in the finality of EPA's decisions resulting from the FIFRA processes and the status of the administrative processes themselves.  Any finding that EPA has violated the ESA in registering or reregistering pesticides could lead to changes to the those processes that would increase cost, burden or delay in bringing new products to market.  *See* Nelson Decl. ¶¶8, 14.  Thus, contrary to Plaintiffs' claims, a ruling in Plaintiffs' favor on liability would impair Intervenor-Defendants' interests in several important respects.

### C. <u>Intervenor-Defendants are Not Adequately Represented by EPA</u>

The burden of demonstrating inadequacy is "minimal" —all that Intervenor-Defendants need show is that their representation by EPA "may be" inadequate because of a difference in interests between themselves and the Agency.  *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n. 10 (1972); *Sw. Ctr. for Biological Diversity*, 268 F.3d at 824.  This inadequacy already has been demonstrated by EPA's entering into a joint stay with Plaintiffs for the purposes of discussing settlement without notifying Intervenor-Defendants, after Intervenor-Defendants had asked for EPA's position on our intervention motion.  Order granting Joint Mot. to Stay Litigation (Dkt. #14).

Indeed, Intervenor-Defendants firmly believe that Ninth Circuit precedent clearly demonstrates that there is no liability here on EPA's part because this Court does not have

jurisdiction to hear Plaintiffs' claims, so that any EPA agreement to a "settlement" prior to a decision on forthcoming motions would be wholly inappropriate. The fact that EPA is willing to entertain settlement discussions (other than to accept the voluntary dismissal of this case) confirms that the Agency cannot be expected to represent Intervenor-Defendants' interests. Unless it grants Intervenor-Defendants' intervention, the Court cannot be confident this important argument will be fully presented to it.

It would be premature to fully present this jurisdictional analysis in this Reply, but in brief summary, the argument is based on a straightforward reading of *American Bird Conservancy v. FCC*, 545 F.3d 1190 (9th Cir. 2008) ("*American Bird*") and *United Farm Workers of America v. EPA*, 592 F.3d 1080 (9th Cir. 2010) ("*UFW*"). The *American Bird* case holds "that district courts lack jurisdiction over ESA claims when the substance of those claims essentially attacks a regulatory statute that vests exclusive jurisdiction in the courts of appeals." *Pesticide Action Network N. Am. v. U.S. EPA*, No. 08-1814, 2008 U.S. Dist. LEXIS 98572, at *16-17 (N.D. Cal. Dec. 5, 2008). In turn, *UFW* holds that the court of appeals has exclusive jurisdiction under FIFRA Section 16(b), 7 U.S.C. § 136n(b), regarding challenges to EPA reregistration decisions (and by analogy, initial registration decisions). *UFW,* 592 F.3d at 1083 ("[R]eview of the contested decision in this case should have been sought in this court. Unfortunately for the appellants it is now too late to seek it here. Petitions for review must be filed 60 days after the decision.").

Here, as in *American Bird*, the "registrations are . . . inextricably intertwined with [EPA's] obligation to consult with the [Services]," 545 F.3d at 1193, because Plaintiffs' failure-to-consult claim is in reality a collateral attack on EPA's pesticide registrations. *See, e.g.*, Compl. ¶3 (Plaintiffs allege that because EPA has not initiated consultation, this Court should enjoin "EPA from allowing pesticide uses" that may impact threatened or endangered species). Further, our initial review of the nearly 400 hundred pesticides listed by Plaintiffs in the Complaint indicate that all have already gone through registration or reregistration and that 60 days has passed in all cases.

This Court has already found this precise argument compelling. Pending the Ninth

Circuit's decision in *UFW*, Judge Patel held that cases brought by Pesticide Action Network North America (one of the named Plaintiffs in this action) alleging, like here, that EPA failed to consult regarding its pesticide registrations, needed to be stayed because "[a]pplying . . . Ninth Circuit precedent . . ., plaintiffs' failure-to-consult claims under the ESA will likely be subject to FIFRA's exclusive review provision." *Pesticide Action Network N. Am.*, 2008 U.S. Dist. LEXIS 98572, at *25; *see also Geertson Farms, Inc. v. Johanns*, 439 F. Supp. 2d 1012, 1020 (N.D. Cal. 2006) (dismissing failure to consult claim because it actually challenged a pesticide tolerance and thus was subject to the exclusive review provision in the Federal Food, Drug and Cosmetic Act). Significantly, after the Ninth Circuit's ruling, plaintiffs dropped the cases that had been stayed, rather than risk a final judicial ruling on the issue.

EPA's quick move to stay the case and enter settlement discussions, despite this Court's questionable jurisdiction, demonstrates that EPA cannot be relied upon to make this argument and thus does not adequately represent Intervenor-Defendants' interests. *See, e.g., NRDC v. Norton*, No. 05-16581, 2006 U.S. App. LEXIS 10087, at *4-5 (9th Cir. Apr. 19, 2006) (finding threat of settlement raised "serious doubts" that existing parties would protect applicants' economic interests). That conclusion is bolstered by the fact that the Agency similarly failed to make what proved to be the controlling jurisdictional argument before the District Court that decided the *UFW* case, before ultimately endorsing it on appeal. *United Farm Workers of Am. v. U.S. EPA*, No. C04-099RSM, 2008 U.S. Dist. LEXIS 40196, at *8 n.2 (W.D. Wash. May 19, 2008) ("The EPA does not contest this court's jurisdiction to hear the Plaintiffs' claim.").

Plaintiffs' adequate representation argument also fails because the cases upon which they rely are inapposite. Pls.' Opp'n at 11-12. The Ninth Circuit rule is that "'[i]nadequate representation is most likely to be found when the applicant asserts a personal interest that does not belong to the general public.'" *Forest Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1499 (9th Cir. 1995) (citation omitted), *overruled in part on other grounds by Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011) (en banc). But the three cases that Plaintiffs rely on—*Arakaki v. Cayetano*, 324 F.3d 1078 (9th Cir. 2003), *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947 (9th Cir. 2009), and *League of United Latin American*

*Citizens v. Wilson*, 131 F.3d 1297 (9th Cir. 1997)—all sought to protect broad interests of the general public. In *Arakaki*, the issue was racial discrimination (324 F.3d at 1081); in *Perry*, gay marriage (587 F.3d at 949); and in *League of United Latin American Citizens*, illegal immigration. 131 F.3d at 1300.

In contrast, the interest Intervenor-Defendants assert is personal and pecuniary and directly tied to the pesticide registrations Plaintiffs challenge. The cases cited by Plaintiffs thus say nothing about the inadequacy (or, for that matter, adequacy) of leaving EPA to represent Intervenor-Defendants' interests. *See also Nat'l Ass'n of Home Builders v. San Joaquin Valley Unified Air Pollution Dist.*, No. 1:07cv0820, 2007 U.S. Dist. LEXIS 73292, at *13 (E.D. Cal. Sept. 20, 2007) (holding that because proposed interveners had an interest in the substantive issues, they would be allowed to intervene in an unlimited capacity).

## II. PLAINTIFFS HAVE NOT PRESENTED VALID ARGUMENTS AGAINST PERMISSIVE INTERVENTION

The Ninth Circuit has been clear that "all that is necessary for permission intervention is that [the] intervenor's 'claim or defense and the main action have a question of law or fact in common.'" *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1108 (9th Cir. 2002) (citation omitted), *overruled in part on other grounds by Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011) (en banc). That requirement is easily satisfied here.

Plaintiffs characterize the main action in this case as "EPA's failure to initiate consultation with the Service, and therefore ensure against jeopardy and adverse modification." Pls.' Opp'n at 2. But the Complaint demonstrates that their real goal is to challenge the validity of the pesticide registrations listed in the Complaint. For example, Plaintiffs spend several pages in the Complaint alleging how certain pesticides adversely affect listed species. *See, e.g.*, Compl. ¶¶93-129. Because they believe these alleged impacts are occurring, Plaintiffs seek an injunction to require EPA to prohibit the otherwise lawful use of nearly 400 pesticide active ingredients by requiring mitigation measures beyond those already imposed by EPA to protect listed species until consultations are complete. Compl. ¶3. While Plaintiffs are careful not to elaborate on specific mitigation, the Court can rest assured that they seek the same measures

sought in *Center for Biological Diversity v. Environmental Protection Agency,* No. 07-2794 (N.D. Cal.) and *Washington Toxics Coalition v. Environmental Protection Agency,* No. 1-132 (W.D. Wash.). Joint Motion for Entry of Stipulated Injunction (Jan. 12, 2010) and Order Approving Stipulated Injunction (May 17, 2010), No. 07-2794, Dkt. Nos. 104, 121 (attached as Ex. F); Order, No. C01-0132C (Jan. 22, 2004) (attached as Ex. G). In both cases, the courts imposed extensive no-use buffer zones around species habitat until consultations were completed—a process that already has taken over five years and has no end in sight. Exs. F, G.

Thus, despite Plaintiffs' "artful pleading," there is no doubt that the main action here entails the validity of the pesticide registrations themselves. *American Bird*, 545 F.3d 1193. As a result, and because Intervenor-Defendants' members hold the registrations that are being challenged by Plaintiffs and intend to raise the defense that this Court lacks jurisdiction to hear such a claim, there is a common question of law suitable for permissive intervention.

### III.  INTERVENOR-DEFENDANTS' PARTICIPATION SHOULD NOT BE LIMITED

As a last resort, Plaintiffs urge this Court to limit Intervenor-Defendants' participation in this case to filing one brief on the appropriate remedy "with any other participation subject to court approval." Pls.' Opp'n at 14. In effect, Plaintiffs argue that even if Intervenor-Defendants have a legal right to participate in all phases of the case, they should be required to justify their participation anew every step of the way. The only justification Plaintiffs offer is that this would "reduc[e] the potential for duplicative briefing or other redundant participation." *Id.* at 14-15. Granting intervention will not lead to duplicative briefing or redundant participation because Intervenor-Defendants' interests are not adequately represented by the government, as described above. Requiring that the parties litigate intervention rights every time Intervenor-Defendants have something to say, however, would be a waste of judicial resources. The one unpublished case that Plaintiffs cite provides no support for Plaintiffs' request—it merely notes that the party may be required to coordinate briefing or share oral argument, but defers such coordination conditions to the scheduling conference. *NRDC v. Norton*, No. 1:05-CV-01207 OWW TAG, 2006 U.S. Dist. LEXIS 1363, at *33-34 (E.D. Cal. Jan. 5, 2006). Plaintiffs have offered no valid reason for the requested limitation.

## **CONCLUSION**

For the foregoing reasons, Intervenor-Defendants respectfully request that the Court grant their motion to intervene.

Dated: April 8, 2011

Respectfully submitted,

    s/Patrick J. Ferguson

| | |
|---|---|
| WILLIAM K. RAWSON* <br> (D.C. Bar No. 367167) <br> CLAUDIA M. O'BRIEN* <br> (D.C. Bar No. 447354) <br> STACEY L. VANBELLEGHEM* <br> (D.C. Bar No. 988144) <br> LATHAM & WATKINS LLP <br>   555 Eleventh Street, N.W., Suite 1000 <br>   Washington, D.C. 20004-1304 <br>   Telephone: (202) 637-2200 <br>   Fax: (202) 637-2201 <br> Email: william.rawson@lw.com <br>     claudia.o'brien@lw.com <br>     stacey.vanbelleghem@lw.com <br><br> DAVID B. WEINBERG* <br> (D.C. Bar No. 186247) <br> ERIC ANDREAS* <br> (D.C. Bar No. 462777) <br> WILEY REIN LLP <br>   1776 K Street NW <br>   Washington, DC 20006 <br>   Telephone: (202) 719-7000 <br>   Fax: (202) 719-7049 <br> Email: dweinberg@wileyrein.com <br>     eandreas@wileyrein.com <br><br> *Admitted *pro hac vice* | PATRICK J. FERGUSON <br> (Ca. Bar No. 252778) <br> LATHAM & WATKINS LLP <br> 505 Montgomery Street, Suite 2000 <br> San Francisco, CA 94111-6538 <br> Telephone: (415) 391-0600 <br> Fax: (415) 395-8095 <br> Email: patrick.ferguson@lw.com <br><br><br><br><br><br><br> *Attorneys for Proposed Intervenor-Defendant CropLife America, RISE, Southern Crop Production Association, Western Plant Health Association, and Mid America CropLife Association* |

# **CERTIFICATE OF SERVICE**

I hereby certify that on April 8, 2011 I filed the foregoing Reply of CropLife America, et al. in Support of the Motion to Intervene as Defendants with the Clerk of the Court for the United States District Court.

I HEREBY CERTIFY that the foregoing was served on April 8, 2011 on the following individuals via CM/ECF notification:

Justin Augustine
Collette Lucille Adkins Giese
Jaclyn M. Lopez
Center for Biological Diversity
351 California St., Suite 600
San Francisco, California 94104
Telephone: (415) 436-9682
Fax: (415) 436-9683
Email: jaugustine@biologicaldiversity.org
Email: cadkinsgiese@biologicaldiversity.org
Email: jlopez@biologicaldiversity.org

Michael W. Graf
Law Offices of Michael Graf
227 Behrens St.
El Cerrito, CA 94530
Telephone: (510) 525-7222
Fax: (510) 525-1208
Email: mwgraf@aol.com

*Counsel for Plaintiffs*

James Anthony Maysonett
Erik Edward Petersen
U.S. Department of Justice
Environmental & Natural Resources Div.
Wildlife & Marine Resources Section
Benjamin Franklin Station, P.O. Box 7369
Washington, DC 20044-7369
Telephone: (202) 305-0216
Fax: (202) 305-0275
Email: james.a.maysonett@usdoj.gov
Email: erik.petersen@usdoj.gov

*Defendants*

                                              s/Patrick J. Ferguson
                                              Patrick J. Ferguson