LATHAM & WATKINS LLP
William K. Rawson (D.C. Bar No. 367167)*
william.rawson@lw.com
Claudia M. O'Brien (D.C. Bar No. 447354)*
claudia.o'brien@lw.com
Matthew D. Thurlow (CA. Bar No. 243470)
mattthew.thurlow@lw.com
Stacey L. VanBelleghem
       (D.C. Bar No. 988144)*
stacey.vanbelleghem@lw.com
    555 Eleventh Street, N.W., Suite 1000
    Washington, D.C. 20004-1304
    T: (202) 637-2200 F: (202) 637-2201

Patrick J. Ferguson (Ca. Bar No. 252778)
patrick.ferguson@lw.com
    505 Montgomery Street, Suite 2000
    San Francisco, CA 94111-6538
    T: (415) 391-0600 F: (415) 395-8095

WILEY REIN LLP
David B. Weinberg (D.C. Bar No. 186247)*
dweinberg@wileyrein.com
    1776 K Street NW
    Washington, DC  20006
    T:  (202) 719-7000 F:  (202) 719-7049

*Attorneys for Intervenor-Defendant CropLife America, et al.*

* Admitted *pro hac vice*

STEPTOE & JOHNSON LLP
Seth Goldberg (CA Bar No. 153719)
sgoldberg@steptoe.com
Cynthia L. Taub (D.C. Bar No. 445906)*
ctaub@steptoe.com
    1330 Connecticut Avenue, NW
    Washington, DC 20036
    T: 202.429.3000  F: 202.429.3902

*Attorneys for Defendant-Intervenor American Chemistry Council*

ARNOLD & PORTER LLP
Thomas W. Stoever, Jr. (Ca. Bar No. 150056)
thomas.stoever@aporter.com
    370 Seventeenth Street, Suite 4400
    Denver, CO 80202-1370
    T: (303) 863-1000  F: (303) 832-0428
*Attorney for Intervenor-Defendant Reckitt Benckiser LLC*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, *et al.*,<br><br>        Plaintiffs,<br><br>    v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, *et al.*,<br><br>        Defendants,<br><br>    and<br><br>CROPLIFE AMERICA, *et al.*<br><br>        Intervenor-Defendants. | CASE NO. 11-CV-293-JCS<br><br>**NOTICE OF MOTION AND MOTION OF CROPLIFE AMERICA, AMERICAN CHEMISTRY COUNCIL, AND RECKITT BENCKISER LLC TO DISMISS AND MEMORANDUM IN SUPPORT**<br><br>(The Honorable Joseph C. Spero)<br><br>Date:    February 15, 2013<br>Time:   9:30 am<br>Place:   Courtroom G – 15th Floor |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION AND MOTION TO DISMISS

Notice is hereby given that on February 15, 2013, at 9:30 a.m., or as soon thereafter as the case may be heard, in the Courtroom of the Honorable Joseph C. Spero (Courtroom A – 15th Floor), Intervenor-Defendants CropLife America, Responsible Industry for a Sound Environment, Southern Crop Production Association, Western Plant Health Association and Mid America CropLife Association (collectively "CropLife"), American Chemistry Council ("ACC"), and Reckitt Benckiser LLC ("Reckitt") (collectively "Intervenor-Defendants") will and hereby do respectfully move to dismiss Plaintiffs' Complaint under Fed. R. Civ. P. 12(b)(1) and Fed. R. Civ. P. 12(h)(3) for lack of subject matter jurisdiction and under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

This Motion is based upon this Notice of Motion and Motion to Dismiss, the Memorandum in Support thereof, and all pleadings and papers filed in this action, and upon such matters the Court may entertain, including oral argument, at the time of the hearing on this Motion.  For the reasons set forth in the Memorandum of Points and Authorities below, CropLife, ACC, and Reckitt request that the Court grant the relief requested and dismiss the case in its entirety both for lack of jurisdiction under Rules 12(b)(1) and 12(h)(3), and for failure to state a claim under Rule 12(b)(6).

Counsel for Intervenor-Defendants have conferred with counsel for the other parties to determine whether there is opposition to this motion.  Plaintiffs' counsel advise that Plaintiffs oppose this motion.  Defendants' counsel advise that the government will be filing a separate Motion to Dismiss.  Intervenor-Defendants American Farm Bureau Federation, *et al*., advise that they will file a separate response that supports and joins in this motion.

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................. 1

II.     BACKGROUND .................................................................................................. 2

    A.      The Federal Insecticide, Fungicide and Rodenticide Act ....................... 2

    B.      The Endangered Species Act .................................................................... 4

    C.      The Complaint .......................................................................................... 6

III.    STANDARD OF REVIEW .................................................................................. 6

    A.      Standard of Review Under Fed. R. Civ. P. 12(b)(1) and 12(h)(3) .......... 6

    B.      Standard of Review Under Fed. R. Civ. P. 12(b)(6) ............................... 7

IV.     ARGUMENT ....................................................................................................... 8

    A.      This Court Lacks Subject Matter Jurisdiction ........................................ 9

    B.      Plaintiffs Have Failed To Plead Any Cognizable Affirmative Agency
        Action Subject to a Duty to Consult ...................................................... 13

    C.      Plaintiffs Have Failed To Plead Any Facts To Support Allegations
        Regarding EPA's Purported Duty to Reinitiate Consultation ............... 15

    D.      The Statute of Limitations Has Run For Nearly All The Challenged
        Pesticides ............................................................................................... 16

V.      CONCLUSION .................................................................................................. 17

1

## **TABLE OF AUTHORITIES**

2

3
**Page(s)**

**FEDERAL CASES**

4

*American Bird Conservancy v. FCC*,

5
545 F.3d 1190 (9th Cir. 2008).......................................................................... 1, 11, 13

6
*American Rivers v. NMFS*,

7
No. 96-384, 1997 U.S. Dist. LEXIS 5337 (D. Or. Apr. 13, 1997) ........................................ 16

8
*Ashcroft v. Iqbal*,

9
129 S. Ct. 1937 (2009) ................................................................................ 1, 7, 8, 16

10
*Barron v. Reich*,

11
13 F.3d 1370 (9th Cir. 1994)................................................................................... 7

12
*Bell Atlantic Corp. v. Twombly*,

13
550 U.S. 544 (2007) ........................................................................................... 1, 7

14
*Bennett v. Spear*,

15
520 U.S. 154 (1997) ............................................................................................. 16

16
*Broadened Horizons Riverkeepers v. United States Army Corps of Engineers*,

17
8 F. Supp. 2d 730 (E.D. Tenn. 1998) ..................................................................... 16

18
*California Diversified Promotions, Inc. v. Musick*,

19
505 F.2d 278, 280 (9th Cir.1974)............................................................................ 7

20
*California Save Our Streams Council, Inc. v. Yeutter*,

21
887 F.2d 908 (9th Cir. 1989)............................................................................ 11, 13

22
*California Sportfishing Protection Alliance v. FERC,*

23
472 F.3d 593 (9th Cir. 2006)........................................................................... 13, 14

24
*Center for Biological Diversity v. Chertoff*,

25
No. C-08-2999, 2009 U.S. Dist. LEXIS 26322 (N.D. Cal. Mar. 30, 2009).................... 14, 16

26
*Conservation Force v. Salazar*,

27
646 F.3d 1240 (9th Cir. 2011)................................................................................ 8

28

## TABLE OF AUTHORITIES

*(Continued)*

**Page(s)**

*Council for Endangered Species Act Reliability v. Jackson*,

No. Cv-10-8254, 2011 U.S. Dist. LEXIS 135635 (D. Ariz. Nov. 23, 2011) ................... *passim*

*Defenders of Wildlife v. EPA*,

420 F.3d 946 (9th Cir. 2005) ............................................................................................ 14

*Environmental Defense Fund, Inc. v. Costle*,

631 F.2d 922 (D.C. Cir. 1980) ............................................................................................ 4

*Hardin v. Jackson*,

625 F.3d 739 (D.C. Cir. 2010) ........................................................................................ 17

*Karuk Tribe of California v. U.S. Forest Service*,

681 F.3d 1006, 1021 (9th Cir. 2012) ................................................................................ 14

*Kentucky Heartwood v. Worthington*,

20 F. Supp. 2d 1076 (E.D. Ky. 1998) .............................................................................. 16

*Moe v. United States*,

326 F.3d 1065 (9th Cir. 2003) ............................................................................................ 7

*Moss v. Secret Service*,

572 F.3d 962 (9th Cir. 2009) .............................................................................................. 8

*NRDC v. EPA*,

676 F. Supp. 2d 307 (S.D.N.Y. 2009) ................................................................................ 9

*Northwest Food Processors Ass'n v. Reilly*,

886 F.2d 1075 (9th Cir. 1989) ........................................................................................ 10

*Northwest Resource Information Center, Inc. v. NMFS*,

25 F.3d 872 (9th Cir. 1994) ............................................................................................ 11

*Pesticide Action Network North America v. EPA*,

No. C-08-1814, 2008 U.S. Dist. LEXIS 98572 (N.D. Cal. Nov. 24, 2008) .................. 4, 5, 11

**TABLE OF AUTHORITIES**

(Continued)

*Ruhrgas AG v. Marathon Oil Company,*

526 U.S. 574 (1999) ..................................................................................................... 7

**Page(s)**

*Sierra Club v. EPA,*

162 F. Supp. 2d 406 (D. Md. 2001) ...................................................................... 16

*Steel Co. v. Citizens for a Better Environment,*

523 U.S. 83 (1998) ....................................................................................... 7, 13

*Tennessee Valley Authority v. Hill,*

437 U.S. 153 (1978) ................................................................................................ 14

*Tribal Village of Akutan v. Hodel,*

869 F.2d 1185 (9th Cir. 1988), *cert. denied,* 493 U.S. 873 (1989) ........................................ 16

*United Farm Workers v. EPA,*

No. C-099RSM, 2008 U.S. Dist. LEXIS 40196 (W.D. Wash. May 16, 2008),

*aff'd,* 592 F.3d 1080 (9th Cir. 2010) ...................................................................... 10

*United Farm Workers of America v. EPA,*

592 F.3d 1080 (9th Cir. 2010) ....................................................................... *passim*

*United States v. 14.02 Acres,*

547 F.3d 943 (9th Cir. 2008) ......................................................................... 7

*United States ex rel. Lee v. Corinthian Colleges,*

655 F.3d 984 (9th Cir. 2011) .......................................................................... 1, 7

*Washington Toxics v. EPA,*

No. 01-00132, Order of 07/02/2002 at 13 (W.D. Wash.) ..................................................... 15

*Western Watersheds Project v. Metejko,*

468 F.3d 1099 (9th Cir. 2006) ......................................................................... 14

*Wind River Mining Corp. v. United States,*

946 F.2d 710 (9th Cir. 1991) .......................................................................... 16

# TABLE OF AUTHORITIES

**FEDERAL STATUTES** *(Continued)*

Page(s)

5 U.S.C. § 551(6) ................................................................................................. 9

5 U.S.C. § 551(8) ................................................................................................. 10

7 U.S.C. § 136, *et seq*. ........................................................................................ 1, 2

7 U.S.C. § 136a-1 ................................................................................................ 2, 4

7 U.S.C. § 136a-1(d) ........................................................................................... 2

7 U.S.C. § 136a-1(g)(2)(C) .................................................................................. 3

7 U.S.C. § 136a-1(g)(2)(D)(i) .............................................................................. 3

7 U.S.C. § 136a(a) ............................................................................................... 2

7 U.S.C. § 136a(c)(4) ........................................................................................... 2, 12

7 U.S.C. § 136a(c)(5) ........................................................................................... 3

7 U.S.C. § 136a(c)(5)(C) ...................................................................................... 2

7 U.S.C. § 136j(a)(2)(G) ...................................................................................... 2

7 U.S.C. § 136n(a) ............................................................................................... 4, 8, 9

7 U.S.C. § 136n(b) ............................................................................................... 4, 8, 9, 16

16 U.S.C. § 1531, *et seq*. ..................................................................................... 1

16 U.S.C. § 1536(a)(2) ......................................................................................... 5

16 U.S.C. § 1540(g)(1)(A) .................................................................................... 5

28 U.S.C. § 2401(a) ............................................................................................. 1, 8, 16

**RULES**

Fed. R. Civ. P. 8(a) .............................................................................................. 8

Fed. R. Civ. P. 12(b)(1) ....................................................................................... 2, 7, 17

Fed. R. Civ. P. 12(b)(6) ....................................................................................... 2, 8, 17

Fed. R. Civ. P. 12(h)(3) ....................................................................................... 2, 6, 17

1

## TABLE OF AUTHORITIES

REGULATIONS *(Continued)*

Page(s)

40 C.F.R. § 155.50 ................................................................................................................... 4

40 C.F.R. § 155.57 ................................................................................................................... 4

40 C.F.R. § 155.58 ................................................................................................................... 4

50 C.F.R. § 402.02, *et seq.* ..................................................................................................... 5

50 C.F.R. § 402.14(g) .............................................................................................................. 5

50 C.F.R. § 402.14(l)(1) .......................................................................................................... 5

50 C.F.R. § 402.16 .......................................................................................................... 15, 16

50 C.F.R. § 402.40(c) .............................................................................................................. 5

60 Fed. Reg. 27,504 (May 24, 1995) ....................................................................................... 3

61 Fed. Reg. 24,490 (May 15, 1996) ....................................................................................... 3

69 Fed. Reg. 26,819 (May 14, 2004) ....................................................................................... 4

74 Fed. Reg. 22,541 (May 13, 2009) ....................................................................................... 2

MISCELLANEOUS

5C Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1393 (3d ed.)................. 6

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.      **INTRODUCTION**

The Complaint in this case seeks to combine in a single action challenges to EPA's registrations of 382 pesticides under the Federal Insecticide, Fungicide and Rodenticide Act, 7 U.S.C. § 136, *et seq.* ("FIFRA"). The Complaint alleges that EPA violated the Endangered Species Act, 16 U.S.C. § 1531, *et seq.* ("ESA"), in each case by failing to consider the potential effects of the use of each of the 382 pesticides on over 200 species identified under the ESA as "threatened or endangered." But the context of that error is never stated.

This Court, however, does not have jurisdiction over the vast majority of the claims raised by Plaintiffs. As recent decisions by the Ninth Circuit and district courts make clear, Plaintiffs should have brought their claims directly challenging EPA's registration decisions in a court of appeals, not in this Court. *See, e.g., United Farm Workers of Am. v. EPA*, 592 F.3d 1080 (9th Cir. 2010) ("*UFW*"); *American Bird Conservancy v. FCC*, 545 F.3d 1190 (9th Cir. 2008) ("*American Bird*"); *Council for Endangered Species Act Reliability v. Jackson*, No. Cv-10-8254, 2011 U.S. Dist. LEXIS 135635 (D. Ariz. Nov. 23, 2011) ("*CESAR*").

Any claims that might survive a jurisdictional challenge must also be dismissed because the Complaint fails to allege that EPA took any "action" sufficient to trigger ESA responsibilities, and thus fails to meet the minimum specificity requirements established by the Supreme Court and Ninth Circuit in such cases as *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009) ("*Iqbal*"); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ("*Twombly*"); and *United States ex rel. Lee v. Corinthian Colleges*, 655 F. 3d. 984 (9th Cir. 2011).[1]

Finally, even if the Court had jurisdiction and Plaintiffs had properly pled, the standard six-year statute of limitations has expired for the majority of Plaintiffs' claims. 28 U.S.C. § 2401(a).

For all these reasons, the Complaint should be dismissed. We address each argument

---

[1] Plaintiffs' Complaint also fails to sufficiently plead facts to establish standing as to each of the listed pesticides with respect to the listed species. Intervenor-Defendants reserve to the right to further address this issue in the future if, for example, Plaintiffs' Complaint survives the present Motion.

below, after first reviewing the pertinent statutory schemes, summarizing the key provisions of the Complaint, and setting forth the standards governing motions to dismiss under Fed. R. Civ. P. 12(b)(1), 12(h)(3), and 12(b)(6).

## II.    BACKGROUND

### A.    The Federal Insecticide, Fungicide and Rodenticide Act

The Federal Insecticide, Fungicide and Rodenticide Act, 7 U.S.C. § 136 *et seq*. ("FIFRA") requires that pesticides be "registered" by EPA prior to their distribution and sale.  7 U.S.C. § 136a(a).  Registered pesticides include both "active ingredients" – the chemicals having pesticidal characteristics – and other constituents.  Every registered product must display a label that specifies the uses to which a product may be put and how it should be applied.  For example, EPA may allow one herbicide to be used on field corn, but limit its use to the period before seedlings emerge, while it allows another herbicide to be used on corn but only late in the season, and only if farm workers do not enter the cornfield for several hours after application.

Whenever EPA receives an application to register a pesticide that contains a previously-unregistered active ingredient, the Agency must publish a notice in the Federal Register and allow a 30-day public comment period.  *Id.* § 136a(c)(4).  EPA may then register the pesticide if it determines, among other things, that the product "will perform its intended function without unreasonable adverse effects on the environment." *Id*. § 136a(c)(5)(C).  FIFRA forbids anyone from using a registered pesticide in a way inconsistent with its EPA-approved labeling.  *See id*. § 136j(a)(2)(G).

Congress amended FIFRA in 1988 to require "reregistration" of pesticides originally registered before 1984 so that EPA could determine whether the products continued to meet the statutory criteria for registration.  *Id.* § 136a-1.  For the most part, EPA completed its review of these older pesticides in 2008.  74 Fed. Reg. 22,541 (May 13, 2009).  As part of the reregistration process, companies holding pre-1984 registrations were required to submit scientific studies supporting their products and inform EPA of the uses those products were to serve.  *See* 7 U.S.C. § 136a-1(d).

If EPA concluded in reregistration that all defended uses of a pesticide met the standard for registration, EPA issued either an Interim Reregistration Eligibility Decision ("IRED") or a final Reregistration Eligibility Decision ("RED"). *Id*. § 136a-1(g)(2)(C).[2] However, if EPA determined that some or all uses of the pesticide would have "unreasonable adverse effects," *id*. § 136a(c)(5), the pesticide could not be reregistered for those uses. EPA could either negotiate with registrants regarding revisions to labels to eliminate the Agency's concerns or begin the process of cancelling or suspending the existing registration. *Id*. § 136a-1(g)(2)(D)(i). As a practical matter, most registrants either negotiated acceptable revisions or voluntarily cancelled the product uses to which EPA objected (and, sometimes, all uses of the product).

During the first ten years of EPA's reregistration effort, the Agency published notice in the Federal Register of the availability of the RED and supporting documents and invited public comment. *See, e.g.,* 60 Fed. Reg. 27,504 (May 24, 1995) (announcing the availability of RED documents for Ethephon, Linuron, and Metolachlor). EPA explained:

> The reregistration program is being conducted under Congressionally mandated time frames, *and EPA recognizes both the need to make timely reregistration decisions and to involve the public.* Therefore, EPA is issuing these REDs as final documents with a 60-day comment period. Although the 60-day public comment period does not affect the registrant's response due date, it is *intended to provide an opportunity for public input* and a mechanism for initiating any necessary amendments to the RED. All comments will be carefully considered by the Agency. If any comment significantly affects a RED, EPA will amend the RED by publishing the amendment in the Federal Register.

*Id*. at 27,505 (italics added). The notice of availability for public review of an otherwise complete RED decision provided one last opportunity for the public to submit "additional input and to initiate potential amendments to the RED." *CESAR*, 2011 U.S. Dist. LEXIS 135635, at *3.

As the reregistration program progressed, EPA continued to follow this practice. In addition, the Agency regularly announced its intent to prepare REDs on a multi-year schedule and solicited public comment on each scheduled chemical in order to help EPA prioritize the order in

---

[2] EPA would issue an IRED when its risk analysis for an individual chemical was complete, but evaluation of the cumulative risk of use of the product along with other pesticides of similar composition had not yet been completed.

which RED development would be initiated each year.  *See e.g.* 61 Fed. Reg. 24,490 (May 15,

1996)*.*  EPA further invited greater public participation at other stages in the development of

individual REDs and supporting documents.  For example, EPA published Federal Register

notices inviting public comment on the risk assessments and characterizations that preceded

preparation of the RED.  *See* 69 Fed. Reg. 26,819-20 (May 14, 2004).  EPA also invited public

comment on the development of a risk reduction strategy, and encouraged the public to suggest

risk management approaches.  *Id*. at 26,822.  Throughout these processes, the Agency also

engaged in less formal dialogues with stakeholders.  *Id*. at 26,822-23.

With the completion of the reregistration program, EPA began the statutorily mandated

program of "registration review."  7 U.S.C. § 136a-1.  The registration review program serves the

same purpose of reregistration, and involves the review of every registered pesticide every fifteen

years.  Like reregistration, it provides for substantial public involvement.  40 C.F.R. § 155.50.

And, as with reregistration, EPA states in its final decision whether a pesticide meets the FIFRA

standard for registration and, if not, what changes to its labeling are necessary.  *See id*. §§ 155.57-

58.

FIFRA also contains a judicial review provision.  Under FIFRA Section 16(b), where

EPA has made a decision following a "public hearing," review can be obtained exclusively in the

courts of appeals within sixty days.  7 U.S.C. § 136n(b).  Where EPA has made a decision "not

following a hearing," FIFRA Section 16(a) provides that review is proper in the district court.  *Id*.

§ 136n(a).  Courts have consistently held that challenges to the merits of a reregistration action

are governed solely by FIFRA Section 16(b), because the public comment procedures involved

constitute a hearing.[3]  *See, e.g., UFW*, 592 F.3d 1080; *CESAR*, 2011 U.S. Dist. LEXIS 135635;

---

[3] The requirement for judicial review in the courts of appeals within sixty days where there has been a decision following a hearing makes considerable sense.  The administrative process allows for public comment, and creates a record for review.  The sixty-day window in FIFRA 16(b) thus creates a quick avenue for finality, which is important to those who hold registrations and seek to commercialize them.  Equally important, direct review in the courts of appeals after a hearing also benefits the courts and EPA by conserving judicial and administrative resources.  *See, e.g., Envt'l Defense Fund, Inc. v. Costle*, 631 F.2d 922 (D.C. Cir. 1980) (holding where judicial review focuses on an agency's administrative record, "requiring petitioners challenging regulations to go first to the district court results in unnecessary delay and expense.").

*Pesticide Action Network N. Am. v. EPA*, No. C-08-1814, 2008 U.S. Dist. LEXIS 98572 (N.D. Cal. Nov. 24, 2008) ("*PANNA*").

### B.      The Endangered Species Act

Section 7 of the Endangered Species Act ("ESA") requires federal agencies to "insure that any action authorized, funded, or carried out by such agency . . . is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of [critical] habitat of such species . . . ." 16 U.S.C. § 1536(a)(2).  To achieve this result, "action agencies" (such as EPA in the current instance) must consult with either the National Marine Fisheries Service or the Fish and Wildlife Service (collectively the "Services") about actions which may impact threatened or endangered species. (The species involved determines which Service has jurisdiction.)

The Services have adopted regulations that provide specific examples of action requiring formal consultation.  *See* 50 C.F.R. § 402.02, *et seq.*  Those actions include "the granting of licenses, contracts, leases, easements, rights-of-way, permits, or grants in aid." *Id*. § 402.02.  The Services' regulations also include an optional, FIFRA-specific set of consultation procedures that more specifically define a "FIFRA action" for purposes of consultation as "an action by EPA to approve, permit or authorize the sale, distribution or use of a pesticide under [FIFRA]."  50 C.F.R. § 402.40(c).  When consultation under either of these provisions is completed, the Service prepares a "biological opinion" that sets forth its view as to whether the proposed action is likely to "jeopardize the continued existence of" any listed species or "result in the destruction or adverse modification of [critical] habitat."  16 U.S.C. § 1536(a)(2); 50 C.F.R. §§ 402.14(g), 402.14(l)(1).

The ESA authorizes "any person [to] commence a civil suit on his own behalf . . . to enjoin any person, including the United States and any other governmental instrumentality or agency . . . who is alleged to be in violation of any provision of this chapter or regulation issued under the authority thereof."  16 U.S.C. § 1540(g)(1)(A).  It also provides that "[t]he district courts shall have jurisdiction . . . to enforce any such provision or regulation." *Id*.  However, as

indicated above and discussed more fully below, courts called upon to interpret the judicial review provisions of FIFRA and the ESA as to decisions undertaken by EPA to register or reregister pesticides have found that the FIFRA provision controls the timing and venue of challenges to those decisions. *See, e.g., CESAR*, 2011 U.S. Dist. LEXIS 135635, at *8; *PANNA*, 2008 U.S. Dist. LEXIS 98572, at *24.

## C.    The Complaint

Plaintiffs essentially make two assertions in their "Claim for Relief."  The first and primary assertion (which, for simplicity, we refer to below as "Claim I") is that EPA failed to *initiate* consultation under Section 7(a)(2) of the ESA for separate EPA actions regarding 382 individual pesticides and their impact on over 200 threatened or endangered species.  Compl. ¶¶ 1, 130, 133, 142-143, App. A &B.  Appendix A to the Complaint provides a list of these pesticides along with species that "may be affected" by the registered pesticides listed.  Compl. App. A.

Despite the fact that the Complaint lists 382 "pesticide registrations" that are allegedly out of compliance with Section 7(a)(2) of the ESA, nowhere in the Complaint do Plaintiffs identify any "FIFRA actions" pertinent to any specific pesticide that triggered the allegedly required consultations.  Compl. at 34; *see also id*. ¶ 3.  Thus, the Complaint is a direct attack on the registration and reregistration decisions authorizing the use of Intervenor-Defendants' members' products.

The Complaint's second assertion purports to challenge EPA's failure to *reinitiate* consultation in some contexts.  (We refer to this below as "Claim II").  However, the Complaint wholly fails to name which pesticides or species were the subject of those consultations or in any other way identify them.  Compl. ¶ 133.

The remedy Plaintiffs seek is an "order compelling EPA to initiate and complete [the] consultation process."  Compl. ¶ 3; *see also id*. at 34.  Plaintiffs also ask the Court to restrict the use of the pesticides where they may impact listed species until "EPA has brought its pesticide registrations into compliance with Section 7(a)(2) of the ESA."  Compl. at 34; *see also id.* ¶ 3.

III.   **STANDARD OF REVIEW**

A.   **Standard of Review Under Fed. R. Civ. P. 12(b)(1) and 12(h)(3)**

Fed. R. Civ. P. 12(h)(3) provides that, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  This defense can be raised at any time by any interested party.  *See* 5C Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. Civ. § 1393 (3d ed.); *see also Moe v. United States*, 326 F.3d 1065, 1070 (9th Cir. 2003) ("Jurisdiction is at issue in all stages of a case."); *Cal. Diversified Promotions, Inc. v. Musick*, 505 F.2d 278, 280 (9th Cir.1974) (it is well settled that a court can dismiss a complaint *sua sponte* for lack of jurisdiction).

It is the obligation of federal courts to ensure that they have subject matter jurisdiction before proceeding.  *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) ("[S]ubject-matter delineation must be policed by the courts on their own initiative even at the highest level."); *Steel Co. v. Citizens for a Better Env't.*, 523 U.S. 83, 94 (1998) ("Th[e] question [of jurisdiction] the court is bound to ask and answer for itself, even when not otherwise suggested, and without respect to the relation of the parties to it.").  They must do so because "[w]ithout jurisdiction the court cannot proceed at all in any cause.  Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause."  *Id.*

Where a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) takes the form of a "facial attack," as here, the Court may consider those facts in the complaint as well as those of which it may take judicial notice, including administrative dockets. *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994) (taking judicial notice of facts on facial jurisdictional attack); *United States v. 14.02 Acres*, 547 F.3d 943, 955 (9th Cir. 2008) (judicial notice is proper for records of administrative action).

B.   **Standard of Review Under Fed. R. Civ. P. 12(b)(6)**

Recent landmark Supreme Court decisions require that a plaintiff's complaint provide sufficient factual "heft" to "plausibly" establish the alleged violations.  *Twombly*, 550 U.S. at 557;

**CASE NUMBER: 11-CV-293**
**MOTION TO DISMISS**

1   *Iqbal*, 129 S. Ct. 1937.  This "requires more than labels and conclusions."  *Twombly*, 550 U.S. at

2   555.  A plaintiff must actually plead "factual content" to support its claims.  *Iqbal*, 129 S. Ct. at

3   1949.

4       The Ninth Circuit has directed rigorous compliance with these standards.  A district court

5   must determine whether the complaint itself "contains sufficient factual matter that, taken as true,

6   state[s] a claim for relief . . . plausible on its face."  *Corinthian Colls.*, 655 F.3d at 991, citing

7   *Iqbal*; *see also Moss v. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).  If there is "a lack of a

8   cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory,"

9   the court must dismiss the complaint under Fed. R. Civ. P. 12(b)(6) for failing to meet the

10  requirements of Fed. R. Civ. P. 8(a).  *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th

11  Cir. 2011) (internal citations omitted).

12      In assessing a plaintiff's complaint, a court first must identify the factual elements legally

13  required to establish the plaintiff's claims.  *Iqbal*, 129 S. Ct. at 1947-49.  Second, the court must

14  separate factual allegations from "pleadings that, because they are no more than conclusions, are

15  not entitled to the assumption of truth."  *Id*. at 1950.  Third, the court must "draw upon its judicial

16  experience and common sense" to determine on a "context specific basis" whether the "well-

17  pleaded facts" rise to the level of plausibility rather than the "mere possibility of misconduct." *Id*.

18  at 1949.

19      As shown below, Plaintiffs' allegations regarding EPA's alleged failures to consult and

20  alleged failures to reinitiate consultation completely fail to meet these standards.  They are

21  inadequate as a matter of law because they fail entirely to plead facts sufficient to constitute a

22  claim under ESA Section 7(a)(2).  Moreover, as to nearly all of the pesticides at issue, as a matter

23  of law no sufficient allegations could be made, because this Court could not have jurisdiction in

24  light of FIFRA provisions and the controlling statute of limitations.

25  **IV.   <u>ARGUMENT</u>**

26      The Complaint in this action suffers from several fatal flaws.  First, this Court lacks

27  subject-matter jurisdiction over nearly the entire matter.  7 USC § 136n(a)-(b).  Second, Plaintiffs

28

have failed to plead adequate facts to support their allegations -- specifically, they have failed to adequately identify agency actions or other events triggering a duty to consult with the Services or to re-initiate such consultation.  Finally, for nearly all Plaintiffs' claims the statute of limitations has run, either under the sixty-day statute of limitations imposed by FIFRA Section 16(b) or under the general six-year statute of limitations for civil actions against the United States.  7 USC § 136n(b); 28 U.S.C. § 2401(a).

### A.    This Court Lacks Subject Matter Jurisdiction

The foundation of Plaintiffs' first claim is that EPA improperly acted on 382 challenged registrations without consulting the Services before doing so.  But FIFRA provides its own judicial review provisions governing challenges to EPA's actions based upon whether such action follows a "public hearing."  Such challenges are to be brought only in the Court of Appeals, and must be filed within 60 days of the entry of the order.[4]  7 USC § 136n(b).  Only challenges to EPA actions which were taken "not following a hearing" may be brought in the District Court. 7 USC § 136n(a).

Thus, Ninth Circuit has instructed that "[t]he cardinal condition for district court jurisdiction is that the Administrator of the EPA has made a decision 'not following a hearing.'" *UFW*, 592 F.3d at 1082.  The *UFW* court also held that, for purposes of 7 USC § 136n(a)-(b), a "public hearing" occurs where "notice [was] given of a decision to be made and presentation to the decisionmaker of the positions of those to be affected by the decision."  *Id.*

Therefore, Plaintiffs' Claim I must be dismissed for almost all of the 382 pesticides under 7 USC § 136n(a)-(b).  This Court does not have jurisdiction to hear challenges to the corresponding registration and reregistration decisions for those pesticides because each of those decisions were entered by EPA "following a public hearing."  Plaintiffs were required to file their

---

[4] "In the case of actual controversy as to the validity of any *order* issued by the Administrator *following a public hearing*, any person who will be adversely affected by such order and who had been a party to the proceedings may obtain judicial review by filing in the United States court of appeals for the circuit wherein such person resides or has a place of business, *within 60 days* after the entry of such order, a petition praying that the order be set aside in whole or in part . . . Upon the filing of such petition the court shall have *exclusive jurisdiction* to affirm or set aside the order complained of in whole or in part."  7 U.S.C. § 136n(b) (emphasis added).

challenges in the Court of Appeals within 60 days of EPA's orders, pursuant to 7 USC § 136n(b). *UFW*, 592 F.3d at 1082 ("If a hearing has been held, no jurisdiction exists in the district court.").

First, EPA's registration and reregistration decisions are orders.  Although the word "order" is not defined in FIFRA, the Administrative Procedure Act ("APA"), to which reference properly is made in such circumstances,[5] defines "order" to include "licensing."  5 U.S.C. § 551(6).  Further, a "license" is defined under the APA to include a "registration."  *Id.* at § 551(8).  Courts thus have consistently held that EPA's registration and reregistration decisions are "orders."[6]

Second, as in *UFW*, the registration and reregistration actions of the type at issue here occurred following a "public hearing."  *UFW* involved a challenge to EPA's final decision to reregister uses of azinphos-methyl ("AZM") on the grounds that mandated label requirements were not sufficiently protective of farm workers.  592 F.3d at 1081.  As with all reregistration actions, EPA had solicited and received comment on the reregistration of AZM.  *Id.*

The Ninth Circuit held that a "public hearing" included the "elements essential in any fair proceeding – notice be given of a decision to be made and presentation to the decisionmaker of the position of those to be affected by the decision."  *Id.* at 1082.  In other words, notice and the opportunity for comment.  "By itself," the Court further noted, "the term [hearing] does not connote more."  *Id.*  Moreover, for purposes of Section 16(b), "a 'hearing' includes proceedings in which there [was] no presentation of public argument."  *Id.*  The Court explained that "[a] judge who reads a brief 'hears' the case.  An administrator who reads comments 'hears' what they say."  *Id.*

Applying this construction, the Ninth Circuit then held that the "plain meaning of

---

[5] *See, e.g., NRDC v. EPA*, 676 F. Supp. 2d 307, 311 (S.D.N.Y. 2009) ("Since FIFRA does not provide a standard for judicial review, the EPA's failure to comply with FIFRA is governed by the standards established by the APA.").

[6] *United Farm Workers v. EPA*, No. C04-099RSM, 2008 U.S. Dist. LEXIS 40196, at *15 (W.D. Wash. May 16, 2008) (holding that a decision to reregister a pesticide is an order following a public hearing), *aff'd*, 592 F.3d 1080 (9th Cir. 2010); *CESAR*, 2011 U.S. Dist. LEXIS 135635, at *8 (same); *Nw. Food Processors Ass'n v. Reilly*, 886 F.2d 1075, 1077-78 (9th Cir. 1989) (assuming pesticide cancellation decision an order).

'hearing' [was] satisfied by the [reregistration] process EPA provided the manufacturers, the growers, the environmental groups, and the Farm Workers. To conclude that there was 'no hearing' would fly in the face of the process." *Id*. As a result, the Court held that the plaintiffs' challenge to EPA's final reregistration decision for AZM should have been filed in the court of appeals, and affirmed the district court's order dismissing the case. *Id*. at 1084.

*UFW* did not involve an ESA-based challenge to EPA reregistration decisions. But while the *UFW* case was on appeal, Judge Patel in the Northern District of California considered its implications on several pending cases that alleged ESA failures in the course of reregistration. Interpreting *UFW* and another recent Ninth Circuit's ruling, *American Bird,* 545 F.3d 1190, Judge Patel stayed the cases before her. *PANNA*, 2008 U.S. Dist. LEXIS 98572. She held that "[a]pplying . . . Ninth Circuit precedent to the current action, plaintiffs' failure-to-consult claims under the ESA will likely be subject to FIFRA's exclusive review provision, if section 16(b) is in fact found to control in *UFW*." *Id*. at *24.

Judge Patel's reference to *American Bird* was well-founded. In that case, the plaintiffs had alleged that the FCC had violated its duty to consult under the ESA to insure that construction of seven communication towers which the FCC had "registered" under the Communications Act would not jeopardize certain species of listed Hawaiian birds. *American Bird,* 545 F.3d at 1192. Like FIFRA Section 16(b), the jurisdictional provision at issue in *American Bird* "vest[ed] the federal courts of appeals with 'exclusive' subject matter jurisdiction over actions to 'enjoin, set aside, annul, or suspend any order of the [FCC].'" *Id*. at 1191.

The Ninth Circuit held that the tower "registrations," like EPA's pesticide "registrations," constituted "orders." *Id*. at 1193. It then held that the district court lacked jurisdiction because "[t]he tower registrations [were] inextricably intertwined with the FCC's obligation to consult with the Secretary." *Id*.[7]

---

[7] Other cases reach similar conclusions. *See, e.g., Cal. Save Our Streams Council, Inc. v. Yeutter*, 887 F.2d 908, 911 (9th Cir. 1989) (holding provision of Federal Power Act vesting court of appeals with exclusive jurisdiction over review of FERC licensing orders trumps more general provisions allowing for district court review); *Nw. Res. Info Ctr., Inc. v. NMFS*, 25 F.3d 872, 875 (9th Cir. 1994) (holding exclusive jurisdiction to court of appeals over challenges to final action of Bonneville Power Administration take precedence over ESA citizen suit provision).

1    Another, more recent case, *CESAR*, 2011 U.S. Dist. LEXIS 135635, tied the bow on this

2    analysis by applying Judge Patel's reasoning to dismiss a FIFRA-based ESA dispute.  In *CESAR*,

3    the plaintiffs challenged the validity of the RED for rotenone, a pesticide that can be used to kill

4    invasive fish species.  Plaintiffs alleged that EPA had failed to consult under the ESA with regard

5    to the impact of applying the pesticide to rivers that contained native threatened and endangered

6    fish species.  *Id*. at *6-7.

7    EPA moved to dismiss the *CESAR* complaint for lack of subject matter jurisdiction,

8    arguing that the plaintiffs' challenge should have been filed in the court of appeals.  *Id*. at *11.

9    Judge McNamee, relying on *UFW* and *American Bird*, held that plaintiffs' allegations for failure

10   to consult were "rooted in" EPA's issuance of the Rotenone RED.  *Id*. at *15.  He then endorsed

11   EPA's argument that because a RED is indisputably the agency "action" allegedly taken in

12   violation of the ESA's consultation requirement, any challenge to the RED must be brought in the

13   court of appeals, and dismissed the case.  *Id.* at *17.

14   So too here, Plaintiffs ask the Court to "[o]rder appropriate restrictions on the use of the

15   identified pesticides where they may affect endangered and threatened species and critical

16   habitats until the consultation process has been completed and *EPA has brought its pesticide*

17   *registrations into compliance* with Section 7(a)(2) of the ESA."  Compl. at 34 (emphasis added).

18   Thus, Plaintiffs' challenge is clearly to the validity of each of the 382 pesticide registrations listed

19   in the Complaint, which are "inextricably intertwined" with EPA's obligation to consult under the

20   ESA.  Those claims must have been brought in a court of appeals within sixty days of EPA's

21   registration or reregistration decisions.[8]

22   The 382 pesticides listed in the Complaint fall into two categories.  241 have undergone

23   reregistration by EPA. The other 141 were initially registered after 1984, and thus were not

24   subject to reregistration.  *See* Declaration of Roger Miksad ("Miksad Decl."), Ex. 1.  As to all of

25   the products in the first group, as with the AZM reregistration at issue in *UFW*, there has been

26

27   _____

28   [8] Plaintiffs even challenge EPA's reregistration decision for AZM, which the Ninth Circuit held
     in *UFW* could only be challenged in the courts of appeals.

notice, an opportunity to comment and written submissions.  Thus, pursuant to FIFRA Section 16(b), Plaintiffs were required to bring their challenge, on a timely basis, in either the Ninth Circuit or another appropriate court of appeals, not here.

As to 97 of the remaining 141 pesticides – more than two thirds of them – notice of the applications for registration were published in the Federal Register in accordance with FIFRA Section 3(c)(4), and the public provided with a 30-day comment period.  7 U.S.C. § 136a(c)(4); Miksad Decl., Ex. 1.  Therefore, although the procedural context is slightly different from those presented in *UFW, PANNA* and *CESAR,* the result is the same.  The elements required by Section 16(b) are met, and Plaintiffs' claims should have been brought (on a timely basis) in a court of appeals.[9]

Plaintiffs, having brought their claims out of time, and in the wrong court, have attempted to plead around exacting jurisdictional provisions of FIFRA 16(b).  Plaintiffs have done this by defining the "action" they are challenging as EPA's "ongoing discretionary control and involvement over all of these pesticides," rather than the registration of any particular pesticide.  Compl. ¶ 131.  But as described in detail in the next section below, discretionary control is not an action of the sort that triggers a consultation obligation.  *Cal. Sportfishing Prot. Alliance v. FERC*, 472 F.3d 593, 595 (9th Cir. 2006).  Instead, it must be "some *affirmative agency action*," such as EPA's issuance of a registration or reregistration decision.  *Id*.

Plaintiffs cannot be allowed "through careful pleading, to avoid the strict jurisdictional limits imposed by Congress" in Section 16(b).  *American Bird*, 545 F.3d at 1194 (quoting *Cal. Save Our Streams Council, Inc. v. Yeutter*, 887 F.2d 908, 911 (9th Cir. 1989) (internal quotation marks omitted).  Rather, "when two jurisdictional statutes draw different routes of appeal, the well-established rule is to apply only the more specific legislation.  To hold otherwise would render nugatory Congress' carefully crafted scheme of review."  *Id*.

---

[9] For forty-four out of these 141 pesticides, notice and opportunity for comment on the pending registration applications, although required by statute, could not be located as of the date of this filing.  In any event, these are all subject to dismissal either for failure to plead an agency action that triggers consultation under the ESA, or because the challenge to thirty-five of these forty-four registrations exceed the six-year statute of limitations period.

- 13 -

Where, as here, the court lacks jurisdiction over a matter "[t]he only function remaining to the court is that of announcing the fact and dismissing the cause."  *Steel Co.*, 523 U.S. at 94.

**B.      Plaintiffs Have Failed To Plead Any Cognizable Affirmative Agency Action Subject to a Duty to Consult**

The few challenges in the Complaint that may slip past the strict limits of Section 16(b) – and we are unsure if there are any – still fall victim to Plaintiffs' attempts to plead around that section's jurisdictional confines.  This is because, as mentioned above, Plaintiffs improperly define the action they are challenging as EPA's "ongoing and discretionary control" over the 382 pesticides.  Compl. ¶ 131.  The Ninth Circuit rule, however, is clear:  "[t]he ESA . . . mandate[s] consultation with [the Services] only before an agency takes some *affirmative agency action*, such as issuing a license."  *Cal. Sportfishing* at 595 (emphasis added), citing *Tenn. Valley Auth. v. Hill*, 437 U.S. 153 (1978).  "Where private activity is proceeding pursuant to a vested right or to a previously issued license" – such as a pesticide registration – "an agency has no duty to consult under Section 7 if it takes no further affirmative action. . . ."  *Karuk Tribe of California v. U.S. Forest Service*, 681 F.3d 1006, 1021 (9th Cir. 2012).  Where, as here, there is "no such action . . . there [is] no corresponding duty to consult."  *Western Watersheds Project v. Metejko*, 468 F.3d 1099, 1102 (9th Cir. 2006), citing *Defenders of Wildlife v. EPA*, 420 F.3d 946 (9th Cir. 2005).

"[T]he existence of such discretion without more is not an 'action' triggering a consultation duty."  *Id.* at 1108.  Indeed, the *Western Watersheds* decision is directly on point.  It involved a challenge to a decision of the Bureau of Land Management ("BLM") not to consult with the Services regarding water diversion licenses that had been issued before enactment of the ESA.  The Court found that BLM's retention of discretion to adopt new regulations affecting license holders did not constitute an "action" sufficient to trigger consultation under Section 7(a)(2).  *Id.* at 1110-11.

This principle subsequently was affirmed by the Ninth Circuit in *California Sportfishing*.  In that case, plaintiffs alleged that the Federal Energy Regulatory Commission ("FERC") was subject to a duty to consult regarding a license to operate a hydroelectric facility.  The license had been granted nineteen years before the complaint was filed.  The plaintiffs argued that continuing

private operations pursuant to the license amounted to an "agency action" for purposes of Section 7(a)(2). The Court rejected this argument. It found that because FERC had not taken any affirmative oversight actions since approving the existing license, the duty to consult had not been triggered. The Court explained that FERC's authority to amend a license unilaterally did not amount to a triggering action because it is merely the "discretion to decide whether to exercise discretion." *Cal. Sportfishing,* 472 F.3d at 599; *see also Ctr. for Biological Diversity v. Chertoff*, No. C-08-2999, 2009 U.S. Dist. LEXIS 26322, at *18-19 (N.D. Cal. Mar. 30, 2009) ("Discretion, without more, is insufficient to trigger the consultation requirement of § 7(a)(2); rather, such requirements are only implicated by 'affirmative actions.'").

Furthermore, Plaintiffs must plead with specificity the facts sufficient to establish a duty to consult as to each individual pesticide identified in the Complaint. "Although the duty to consult is identical with respect to all registered pesticides, it is distinct with respect to each pesticide" and must be pled separately. *Washington Toxics v. EPA*, No. 01-00132, Order of 07/02/2002 at 13 (W.D. Wash.) (requiring separate pleading of the facts for each of 953 pesticides; finding only 55 were sufficiently pled to establish standing). The Complaint makes no effort whatsoever to meet this requirement.

In short, just as in *California Sportfishing* and *Western Watersheds*, Plaintiffs' recitation of EPA's oversight authority does not establish an "affirmative agency action" sufficient to trigger a consultation duty. Moreover, after *Iqbal*, *Twombly* and the Ninth Circuit's decisions implementing those Supreme Court rulings, this Court may not find "agency actions" where Plaintiffs fail to plead them. For these reasons, Plaintiffs' claims – should any survive the jurisdictional challenge – must be dismissed pursuant to Rule 12(b)(6).[10]

## C.     Plaintiffs Have Failed To Plead Any Facts To Support Allegations Regarding EPA's Purported Duty to Reinitiate Consultation

The Services' regulations establish that previously-completed consultations may be reopened in some circumstances. 50 C.F.R. § 402.16. These include situations in which "the

---

[10] In the alternative, dismissal of Plaintiffs' entire first claim would be proper under Rule 12(b)(1) for the reasons stated in this section.

1  amount or extent of taking" allowed has been exceeded; when "new information reveals" an

2  unconsidered effect on a listed species; when the "identified action is subsequently modified in a

3  manner that causes an effect . . . that was not considered;" or when "a new species is listed" that

4  may be affected.  *Id.*

5       The Complaint's second claim is a challenge to EPA's alleged failures to have reinitiated

6  consultation with regard to some unidentified consultations "from 1989 and 1993" and also to

7  have properly implemented the terms and conditions required by "the previous Biological

8  Opinions."  Compl. ¶ 133.  Key factual allegations that would be necessary to support this claim

9  would include identification of  the Biological Opinions involved, what new information might

10 trigger the reinitiation of consultation, what new pesticide uses might be subject to consultation,

11 what protections EPA may have failed to ensure were implemented, and what "terms and

12 conditions" EPA may have failed to implement.  50 C.F.R. § 402.16.  The Complaint alleges

13 none of these.[11]

14      Thus, Plaintiffs' second claim is nothing but a "naked assertion[] devoid of further factual

15 enhancements" that on its face is insufficient to state a claim.  *Iqbal* at 1949-50.  The absence of

16 any factual allegations even addressing other elements of EPA's purported errors also is fatal.  *Id.*

17 For these reasons, Plaintiffs' second claim should be dismissed.

18      **D.      The Statute of Limitations Has Run For Nearly All The Challenged Pesticides**

19      As to nearly all of the 382 pesticides for which initial registration actions and REDs were

20 completed, FIFRA Section 16(b) established a sixty-day statute of limitations for seeking judicial

21 review.[12]  That has long since expired.  However, even if that were not the case, by far the

22 majority of the claims of the sort Plaintiffs seek to assert here would be barred by the general six-

23

---

[11] Even if Plaintiffs had properly identified the "measures" or "alternatives" contained in the
unidentified Biological Opinions that EPA failed to implement, such failures would be
insufficient to plausibly support a claim.  It is well established that an agency's failure to
implement such mitigation measures is unreviewable because Biological Opinions are technically
only recommendations, and are not binding on the agency.  *See Bennett v. Spear*, 520 U.S. 154,
170 (1997) ("the action agency is technically free to disregard the [Biological Opinion] and
proceed with its proposed action. . . .").  This conclusion is further dictated by *Tribal Village of
Akutan v. Hodel*, 869 F.2d 1185, 1193 (9th Cir. 1988), *cert. denied*, 493 U.S. 873 (1989); *see also
Am. Rivers v. NMFS*, No. 96-384, 1997 U.S. Dist. LEXIS 5337, at *27 (D. Or. April 3, 1997).
[12] 7 U.S.C. § 136n(b).

year statute of limitations established by 28 U.S.C. § 2401(a).  Section 2401(a) unequivocally states that "[e]very civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues."

Where a statute does not contain its own statute of limitations, this standard federal six-year statute of limitations governs.  *See* 28 U.S.C. § 2401(a).  Section 7(a)(2) suits are subject to this rule.  *See Wind River Mining Corp. v. United States*, 946 F.2d 710, 713 (9th Cir. 1991); *Chertoff*, 2009 U.S. Dist. LEXIS 26322.  *See also, e.g., Sierra Club v. EPA*, 162 F. Supp. 2d 406, 422 n.26 (D. Md. 2001); *Broadened Horizons Riverkeepers v. U.S. Army Corps of Eng'rs*, 8 F. Supp. 2d 730, 736 n.9 (E.D. Tenn. 1998); *Kentucky Heartwood v. Worthington*, 20 F. Supp. 2d 1076, 1093 (E.D. Ky. 1998).

Further, because the allegedly unlawful actions in this Complaint, if properly pled, would be pesticide registration actions under FIFRA, the statute of limitations period would begin to run on the date the registration or reregistration is approved by EPA.  *Hardin v. Jackson*, 625 F.3d 739, 742 (D.C. Cir. 2010).

Plaintiffs' Complaint was filed with the Court on January 20, 2011.  Therefore, even assuming *arguendo* that Plaintiffs' Complaint has sufficiently identified affirmative agency actions, to be challenged in this case those actions must have occurred on or after January 20, 2005.  Out of the 382 pesticide registrations and reregistrations challenged in the Complaint, 223 were approved for registration or reregistration prior to that date and are thus beyond the six-year statute of limitations period.  *See* Miksad Decl., Ex. 1.  Therefore, Plaintiffs' Complaint as to all those pesticides must be dismissed as barred by the statute of limitations.[13]

## V.   **CONCLUSION**

For the foregoing reasons, the Court should grant Intervenor-Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1), 12(h)(3), and 12(b)(6).

---

[13] With regard to the 159 pesticides not subject to dismissal based on the six-year statute of limitations, each of these would have to be dismissed for the reasons stated earlier in this brief.

1

2

Dated: November 16, 2012

Respectfully submitted,

s/William K. Rawson

3

4

5

6

7

8

9

DAVID B. WEINBERG
(D.C. Bar No. 186247)*
WILEY REIN LLP
dweinberg@wileyrein.com
   1776 K Street NW
   Washington, DC 20006
   Telephone: (202) 719-7000
   Facsimile: (202) 719-7049

WILLIAM K. RAWSON (D.C. Bar No. 367167)*
CLAUDIA M. O'BRIEN (D.C. Bar No. 447354)*
MATTHEW D. THURLOW (Ca. Bar No. 243470)
STACEY L. VANBELLEGHEM
   (D.C. Bar No. 988144)*
LATHAM & WATKINS LLP
   555 Eleventh Street, N.W., Suite 1000
   Washington, D.C. 20004-1304
   T: (202) 637-2200 F: (202) 637-2201
Email: william.rawson@lw.com
   claudia.o'brien@lw.com
   mattthew.thurlow@lw.com
   stacey.vanbelleghem@lw.com

10

11

12

13

PATRICK J. FERGUSON (Ca. Bar No. 252778)
LATHAM & WATKINS LLP
   505 Montgomery Street, Suite 2000
   San Francisco, CA 94111-6538
   T: (415) 391-0600 F: (415) 395-8095
Email: patrick.ferguson@lw.com

14

*Attorneys for Intervenor-Defendant CropLife America, RISE, Southern Crop Production Association, Western Plant Health Association, and Mid America CropLife Association*

15

16

17

18

19

SETH GOLDBERG (CA Bar No. 153719)
sgoldberg@steptoe.com
CYNTHIA L. TAUB
   (D.C. Bar No. 445906)*
ctaub@steptoe.com
STEPTOE & JOHNSON LLP
   1330 Connecticut Avenue, NW
   Washington, DC 20036
   T: (202)429-3000 F: (202) 429-3902

THOMAS W. STOEVER, JR.
(Ca. Bar No. 150056)
Thomas.stoever@aporter.com
ARNOLD & PORTER LLP
   370 Seventeenth Street, Suite 4400
   Denver, CO 80202-1370
   T: (303) 863-1000 F: (303) 832-0428

20

21

*Attorneys for Intervenor-Defendant American Chemistry Council*

*Attorney for Intervenor-Defendant Reckitt Benckiser LLC*

22

23

*Admitted pro hoc vice*

24

25

26

27

28