Justin Augustine (CA Bar No. 235561)
Jaclyn Lopez (CA Bar No. 258589)
Center for Biological Diversity
351 California Street, Suite 600
San Francisco, CA 94104
Tel: (415) 436-9682
Fax: (415) 436-9683
jaugustine@biologicaldiversity.org
jlopez@biologicaldiversity.org

Collette L. Adkins Giese (MN Bar No. 035059X)*
Center for Biological Diversity
8640 Coral Sea Street Northeast
Minneapolis, MN 55449-5600
Tel: (651) 955-3821
Fax: (415) 436-9683
cadkinsgiese@biologicaldiversity.org

Michael W. Graf (CA Bar No. 136172)
Law Offices, 227 Behrens Street
El Cerrito, CA 94530
Tel: (510) 525-7222
Fax: (510) 525-1208
mwgraf@aol.com

Attorneys for Plaintiffs
*Granted admission *pro hac vice*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **CENTER FOR BIOLOGICAL DIVERSITY**, a non-profit organization; and **PESTICIDE ACTION NETWORK NORTH AMERICA**, a non-profit organization;<br><br>   Plaintiffs,<br><br>   v.<br><br>**ENVIRONMENTAL PROTECTION AGENCY**; and **LISA JACKSON**, Administrator, U.S. EPA;<br><br>   Defendants.<br>and<br><br>**CROPLIFE AMERICA**, et al.<br><br>   Intervenor-Defendants. | Case No. CV-11-0293-JCS<br><br>**PLAINTIFFS' COMBINED OPPOSITION TO MOTIONS TO DISMISS**<br><br>**Hearing Date: March 15, 2013<br>Time: 9:30 am<br>Courtroom G – 15th Floor**<br><br>**Magistrate Judge Joseph C. Spero** |

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................................. 1

BACKGROUND ................................................................................................................... 2

    EPA Has Mandatory Duties Under The Endangered Species Act ........................................ 2

    EPA's Oversight Of Pesticides Under The Federal Insecticide, Fungicide, And Rodenticide Act ....... 3

    Previous Litigation Has Found EPA In Violation Of Section 7(a)(2) Of The ESA ............................... 4

    EPA Continues To Violate The ESA ...................................................................................... 6

STANDARD OF REVIEW ...................................................................................................... 7

ARGUMENT ......................................................................................................................... 7

I.    DEFENDANTS' MOTIONS IMPROPERLY ELEVATE FIFRA ABOVE THE ESA ............... 7

II.   EPA'S CONTINUING AUTHORITY OVER PESTICIDE REGISTRATIONS IS ONGOING AGENCY ACTION SUBJECT TO THE ESA'S CONSULTATION REQUIREMENT ............ 9

III.  THE COURT HAS SUBJECT MATTER JURISDICTION BECAUSE FIFRA'S JUDICIAL REVIEW PROVISIONS ARE INAPPLICABLE TO PLAINTIFFS' ESA CLAIMS ................ 13

    A.    The Ninth Circuit In *Washington Toxics* Holds That ESA Challenges To EPA's Oversight Of Pesticides Can Be Brought Under The ESA's Citizen Suit Provision ........ 14

    B.    Applying FIFRA's Judicial Review Provision To Plaintiffs' ESA Claims Would Be Inconsistent With FIFRA's Plain Language ................................................................. 15

    C.    None Of The Cases Relied Upon By Defendants Alter Washington Toxics's Holding On The Relationship Between FIFRA And The ESA ......................................... 17

IV.  THE STATUTE OF LIMITATIONS HAS NOT RUN ...................................................... 22

V.   THE COMPLAINT PLEADS FACTS ESTABLISHING EPA'S DUTY TO REINITIATE CONSULTATION ON THE 1989 AND 1993 BIOLOGICAL OPINIONS ........................... 23

VI.  THE COMPLAINT PLEADS FACTS DEMONSTRATING STANDING .............................. 25

    A.    The Complaint Alleges Facts Establishing Each Element Of Standing ........................ 26

    B.    No Case Requires That Plaintiffs Plead At The Level Of Specificity Demanded By EPA ................................................................................................................... 27

CONCLUSION ..................................................................................................................... 29

# **TABLE OF AUTHORITIES**

**Cases**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................................ 7, 25

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............................................................. 7, 25

*Broadened Horizons Riverkeepers v. U.S. Army Corps of Eng'rs*,

    8 F. Supp. 2d 730 (E.D. Tenn. 1998) ............................................................................ 23

*California Sportfishing Prot. Alliance v. FERC*, 472 F.3d 593 (9th Cir. 2006) ................. 12, 13

*Center for Biological Diversity v. EPA*, No. C07-02794 JCS,

    2010 U.S. Dist. LEXIS 59683 (N.D. Cal. May 17, 2010) ............................................... 5

*Center for Biological Diversity v. Leavitt*, No. C 02-01580 JSW,

    2005 U.S. Dist. LEXIS 40806 (N.D. Cal. Sept. 19, 2005) ............................................... 5

*Center for Biological Diversity v. Whitman*, No. C-02-1580 JSW,

    Docket No. 80 (N.D. Cal. June 30, 2003) ................................................................. 11, 22

*Chapman v. Pier 1 Imps. Inc.*, 631 F.3d 939 (9th Cir. 2011) ............................................ 28

*Coalition for a Sustainable Delta v. FEMA*, 711 F. Supp. 2d 1152 (E.D. Cal. 2010) ............ 28

*Coalition for a Sustainable Delta v. FEMA*, 812 F. Supp. 2d 1089 (E.D. Cal. 2011) ......... 1, 22

*Council for Endangered Species Act Reliability v. Jackson* ("*CESAR*"), No. CV-10-8254-SMM,

    2011 U.S. Dist. LEXIS 135635 (D. Ariz. Nov. 23, 2011) ............................................. 20

*Defenders of Wildlife v. EPA*, 882 F.2d 1294 (8th Cir. 1989) ......................................... 15

*Dow AgroSciences v. National Marine Fisheries Serv.*, 637 F.3d 259 (4th Cir. 2011) ........... 15

*Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469 (1992) ......................................... 15

*Forest Guardians v. Johanns*, 450 F.3d 455 (9th Cir. 2006) ........................................... 25

*Karuk Tribe of Cal. v. U.S. Forest Serv.*, 681 F.3d 1006 (9th Cir. 2012) ....................... passim

*Kentucky Heartwood v. Worthington*, 20 F. Supp. 2d 1076 (E.D. Ky. 1998) ...................... 23

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992). ........................................ 26, 27, 28, 29

*Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871 (1990) ......................................................... 25

*Maya v. Centex Corp.*, 658 F.3d 1060 (9th Cir. 2011) ................................................... 2, 25

*Northwest Coal. v. United States EPA*, C10-1919 TSZ,

    2012 U.S. Dist. LEXIS 141911 (W.D. Wash. Oct. 1, 2012)........................................ 26

*Northwest Envtl. Def. Ctr. v. Brown*, 476 F. Supp. 2d 1188 (D. Or. 2007)............................................ 28

*Pacific Rivers Council v. Thomas*, 30 F.3d 1050 (9th Cir. 1994).................................................. 11, 12

*Pesticide Action Network North America v. United States EPA* ("*PANNA*"), No. C 08-1814 MHP,

    2008 U.S. Dist. LEXIS 98572 (N.D. Cal. Dec. 5, 2008)..................................................... 16, 17

*Sierra Club v. Marsh*, 816 F.2d 1376 (9th Cir. 1987) ............................................................... 25

*Sierra Club v. United States EPA*, 162 F. Supp. 2d 406 (D. Md. 2001)........................................ 23

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007) ....................................... 24

*Tennessee Valley Auth. ("TVA") v. Hill*, 437 U.S. 153 (1978) ....................................... 2, 3, 8

*Turtle Island Restoration Network v. Nat'l Marine Fisheries Servs.*, 340 F.3d 969 (9th Cir. 2003) ....... 11

*Turtle Island Restoration Network v. United States DOC*, 438 F.3d 937 (9th Cir. 2006)....................... 19

*United Farm Workers of America v. EPA*, 592 F.3d 1080 (9th Cir. 2010) ............................. 17

*United States v. Ritchie*, 342 F.3d 903 (9th Cir. 2003)........................................................ 24

*Warth v. Seldin*, 422 U.S. 490 (1975) .............................................................................. 25

*Washington Toxics Coal. v. EPA*, 413 F.3d 1024 (9th Cir. 2005) ....................................... passim

*Washington Toxics Coal. v. EPA*, No. C01-132C,

    2002 U.S. Dist. LEXIS 27654 (W.D. Wash. July 2, 2002)................................................. passim

*Washington Toxics Coal. v. EPA*, No. C01-132C,

    2003 U.S. Dist. LEXIS 26088 (W.D. Wash. Aug. 8, 2003)................................................. 14

*Washington Toxics Coal. v. United States Dept. of Interior*,

    457 F. Supp. 2d 1158 (W.D. Wash. 2006) ................................................................. 9, 10

*WaterWatch of Or. v. United States Army Corps of Eng'rs*, No. 99-861-BR,

    2000 U.S. Dist. LEXIS 17650 (D. Or. June 7, 2000)................................................... 22

*Western Watersheds Project v. Kraayenbrink*, 632 F.3d 472 (9th Cir. 2011)........................... 7

*Western Watersheds Project v. Matejko*, 468 F.3d 1099 (9th Cir. 2006)....................... 1, 12, 22

*Wild Fish Conservancy v. Salazar*, 628 F.3d 513 (9th Cir. 2010) ....................................... 11

*Wolfe v. Strankman*, 392 F.3d 358 (9th Cir. 2004)............................................................ 7

**Statutes**

16 U.S.C. § 1536(a)(2)........................................................................................................ passim

16 U.S.C. § 1540(g)............................................................................................................ 3, 19

7 U.S.C. § 136.................................................................................................................... 4

7 U.S.C. § 136a.................................................................................................................. 3, 4

7 U.S.C. § 136d.................................................................................................................. 4, 9

7 U.S.C. § 136n........................................................................................................ 15, 16, 20, 21

7 U.S.C. §§ 136-136y........................................................................................................... 3

**Rules**

50 C.F.R. § 402.02............................................................................................................. 3, 10

50 C.F.R. § 402.03............................................................................................................. 10

50 C.F.R. § 402.14............................................................................................................. 3

50 C.F.R. § 402.16............................................................................................................. 23, 24

50 C.F.R. Part 402............................................................................................................. 6

Fed. R. Civ. P. 12(b)(1)...................................................................................................... 7, 25

Fed. R. Civ. P. 12(b)(6)...................................................................................................... 7

Fed. R. Civ. P. 8(a)............................................................................................................ 7

Plaintiffs the Center for Biological Diversity and Pesticide Action Network North America (collectively "Plaintiffs" or "the Center") respectfully submit this combined opposition to the motions to dismiss filed by:  1) the U.S. Environmental Protection Agency ("EPA") and its Administrator, Lisa Jackson (collectively, "Federal Defendants" or "EPA") (Docket No. 139); and 2) CropLife America, Responsible Industry for a Sound Environment, Southern Crop Production Association, Western Plant Health Association, Mid America CropLife Association, American Chemistry Council, and Reckitt Benckiser LLC (collectively "Intervenors") (Docket No. 137) (collectively, "Defendants").

## **INTRODUCTION**

Under the Endangered Species Act ("ESA"), every federal agency has a duty to "insure," through consultation with the federal wildlife agencies, "that any action authorized, funded, or carried out by such agency . . . is not likely to jeopardize the continued existence of any endangered species or threatened species . . . ." 16 U.S.C. § 1536(a)(2).  This case seeks to enforce this fundamental protection for 212 listed species that may be harmed by registered pesticides.  EPA has an ongoing responsibility to protect these imperiled animals from toxic pesticide use through consultation, but the agency has failed to do so.

Rather than meet their ESA obligations, EPA has instead filed a motion to dismiss (as have Intervenors) that misconstrues the allegations of Plaintiffs' Complaint and ignores binding Ninth Circuit precedent.  There is no merit to their argument that the Complaint fails to identify an "agency action" subject to the duty to consult under Section 7(a)(2) of the ESA.  At least twice now – in *Washington Toxics* and *Western Watersheds Project* – the Ninth Circuit has explained that EPA's "continuing authority over pesticide regulation" constitutes "ongoing" agency action, and is therefore subject to the duty to consult.  *Washington Toxics Coal. v. EPA*, 413 F.3d 1024, 1033 (9th Cir. 2005); *Western Watersheds Project v. Matejko,* 468 F.3d 1099, 1109-10 (9th Cir. 2006).  Moreover, because Plaintiffs challenge ongoing agency action, Defendants' argument that Plaintiffs' claims are barred by the statute of limitations is also easily rejected, as courts in the Ninth Circuit hold that Section 7(a)(2) challenges to ongoing agency actions are not barred by the statute of limitations.  *See, e.g.*, *Coalition for a Sustainable Delta v. FEMA*, 812 F. Supp. 2d 1089, 1123 (E.D. Cal. 2011).

Furthermore, Defendants mischaracterize the Complaint when they argue that Plaintiffs

challenge the validity of pesticide registrations and must bring such challenges in the court of appeals under the judicial review provisions of FIFRA. FIFRA's judicial review provisions do not apply because the Complaint brings no FIFRA claims, does not seek to set aside pesticide registrations, and is brought pursuant to the ESA's citizen-suit provision. The Ninth Circuit in *Washington Toxics* has already held that the ESA's citizen suit provision provides jurisdiction to challenge EPA's failure to consult in regard to registered pesticides. *Washington Toxics*, 413 F.3d at 1033-34.

Defendants also wrongly ask this Court to require Plaintiffs to plead their factual allegations with a level of specificity far above that which is required under the law. In regard to Plaintiffs' claim that EPA must reinitiate consultation, the Complaint alleges all facts necessary for the Court to infer that EPA is violating the ESA by failing to reinitiate consultation given the new information on the species and pesticides addressed in the 1989 and 1993 Biological Opinions. Compl. ¶¶ 133-38. Similarly, Plaintiffs allege facts sufficient to prove each element of Article III standing. Compl. ¶¶ 9-13. No more is required as the Court must "presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Maya v. Centex Corp.*, 658 F.3d 1060, 1068 (9th Cir. 2011).

For all these reasons, which are explained in detail below, the Court should deny the motions to dismiss filed by the Federal Defendants and Intervenors.

**BACKGROUND**

**EPA Has Mandatory Duties Under The Endangered Species Act**

The Endangered Species Act is the "most comprehensive legislation for the preservation of endangered species ever enacted by any nation." *Tennessee Valley Auth. ("TVA") v. Hill*, 437 U.S. 153, 180 (1978). "The plain intent of Congress in enacting this statute was to halt and reverse the trend toward species extinction, whatever the cost," *id.* at 184, and this precautionary approach to preserving species "is reflected not only in the stated policies of the Act, but in literally every section of the statute." *Id*.

To fulfill its substantive purposes, the ESA establishes an interagency consultation process whereby a federal agency, here EPA, is required to consult with the U.S. Fish and Wildlife Service ("FWS") or the National Marine Fisheries Service ("NMFS") (collectively, "the Services") to "insure that any action authorized, funded, or carried out by [EPA] . . . is not likely to jeopardize the continued

existence of any endangered species or threatened species or result in the adverse modification of habitat of such species . . . determined . . . to be critical . . . ." 16 U.S.C. § 1536(a)(2) (Section 7 consultation); 50 C.F.R. § 402.14 (Formal Consultation). The consultation requirement reflects "a conscious decision by Congress to give endangered species priority over the 'primary missions' of federal agencies." *Tennessee Valley Auth.*, 437 U.S. at 185.

When an action may affect listed species or critical habitat, EPA must initiate consultation by providing the FWS or NMFS with information about the action and its impact on listed species and their habitat. 50 C.F.R. § 402.14(a), (c). EPA's failure to initiate consultation with the Services, and therefore ensure against jeopardy and adverse modification of critical habitats, is at the heart of this litigation.

At the completion of consultation, the FWS or NMFS issues a Biological Opinion that determines whether the action is likely to jeopardize species or adversely modify critical habitat, *see* 50 C.F.R. § 402.02, and if necessary specifies reasonable and prudent alternatives and measures to protect the species and its habitat from the action. 16 U.S.C. § 1536(b)(3); *see also Karuk Tribe of Cal. v. U.S. Forest Serv.*, 681 F.3d 1006, 1020 (9th Cir. 2012). These consultation steps are performed by the Services and are not at issue in this litigation.

The ESA has a citizen suit provision that allows "any person" to sue an agency "alleged to be in violation of any provision of [the ESA]." 16 U.S.C. § 1540(g)(1). It provides that the "district courts shall have jurisdiction . . . to enforce any such provision or regulation . . . ." *Id.* Prospective plaintiffs must wait 60 days after providing written notice before commencing their suit. *Id.* § 1540(g)(2).

**EPA's Oversight Of Pesticides Under The Federal Insecticide, Fungicide, And Rodenticide Act**

EPA is responsible for the oversight of pesticide sales and use in the United States. Specifically, the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA") charges EPA with registration, review, and ongoing oversight of chemicals for use as insecticides, herbicides, fungicides, rodenticides, fumigants, and other pesticides in the United States. 7 U.S.C. §§ 136-136y. Under FIFRA, a pesticide generally may not be sold or used in the United States unless it has an EPA registration for that particular use. 7 U.S.C. § 136a(a).

1    EPA may register a pesticide after finding (among other things) that application of the pesticide

2    will not cause "unreasonable adverse effects on the environment." 7 U.S.C. § 136a(c)(5). In sharp

3    contrast to the ESA's precautionary approach, environmental harm is evaluated under FIFRA using a

4    cost-benefit analysis: FIFRA defines "unreasonable adverse effects on the environment" as "any

5    unreasonable risk to man or the environment, taking into account the economic, social, and

6    environmental costs and benefits of the use of any pesticide . . . ." 7 U.S.C. § 136(bb).

7    EPA must periodically review pesticide registrations with a goal of reviewing each pesticide

8    registration every 15 years. 7 U.S.C. § 136a(g)(1). EPA has the authority to compel registrants to

9    submit data necessary for a "registration review." *Id.* § 136a(g)(2). In addition, EPA has the authority

10   to cancel pesticide registrations whenever "a pesticide or its labeling or other material required to be

11   submitted does not comply with the provisions of [FIFRA] or, when used in accordance with widespread

12   and commonly recognized practice, generally causes unreasonable adverse effects on the environment . .

13   . ." *Id.* § 136d(b). EPA may immediately suspend a pesticide registration to prevent an imminent

14   hazard. *Id.* § 136d(c). Through these actions and oversight, EPA retains ongoing discretionary

15   involvement and control over pesticide registrations. *Washington Toxics Coal. v. EPA*, 413 F.3d 1024,

16   1033 (9th Cir. 2005).

17   In 1988, EPA established the "Endangered Species Protection Program" or "ESPP" to try to

18   address its pesticide program's compliance with the ESA. However, despite the existence of EPA's

19   ESPP program for over 20 years, the vast majority of pesticides have undergone no analysis of impacts

20   to listed species under the ESA. Since 1993, there have been only a few completed consultations with

21   the Services regarding pesticide impacts to listed species, other than those imposed by court orders, as

22   discussed below.

23   **Previous Litigation Has Found EPA In Violation Of Section 7(a)(2) Of The ESA**

24   In the last decade, environmental groups, including the Center for Biological Diversity, have

25   successfully compelled EPA to comply with Section 7(a)(2) of the ESA. A coalition of environmental

26   groups brought the first major case in 2001 seeking to require EPA to undergo consultation with the

27   NMFS on pesticide impacts to endangered or threatened salmon and steelhead in the waters of the

28   Pacific Northwest. EPA admittedly did not consult as required under Section 7(a)(2) of the ESA, but

argued that because it had complied with FIFRA in registering the pesticides, it was not bound by the ESA. The Ninth Circuit rejected EPA's contention: "EPA retains ongoing discretion to register pesticides, alter pesticide registrations, and cancel pesticide registrations. Because EPA has continuing authority over pesticide regulation, it has a continuing obligation to follow the requirements of the ESA." *Washington Toxics Coal. v. EPA*, 413 F.3d 1024, 1033 (9th Cir. 2005). The Ninth Circuit also rejected the argument "that administrative exhaustion or primary jurisdiction under FIFRA applies in this case or that the district court should have first required the plaintiffs to exhaust FIFRA remedies before entering an injunction." *Id.* Instead, the Court held that "the ESA citizen suit provision creates an express, adequate remedy." *Id.* at 1034. The Ninth Circuit affirmed the district court's grant of injunctive relief, which placed restrictions on the use of certain pesticides in the habitat of listed salmon and steelhead. *Id.* at 1035.

Despite the Ninth Circuit's affirmation in *Washington Toxics* that EPA cannot avoid its obligations under the ESA to engage in Section 7 consultation regarding pesticides, nearly all of EPA's subsequent consultations on pesticide impacts have responded to additional litigation brought by environmental groups. The Center for Biological Diversity brought two such successful lawsuits. On April 2, 2002, the Center for Biological Diversity filed a lawsuit against EPA for failing to undergo consultation with the FWS regarding pesticide impacts on the California red-legged frog, again in violation of Section 7(a)(2) of the ESA. Thereafter, the Court granted the Center's motion for summary judgment. *Center for Biological Diversity v. Leavitt*, No. C 02-01580 JSW, 2005 U.S. Dist. LEXIS 40806, *18 (N.D. Cal. Sept. 19, 2005). Pursuant to the Court's order, on October 20, 2006, the parties stipulated to interim injunctive relief and a schedule by which EPA would determine whether its actions affected the species.

On May 30, 2007, the Center for Biological Diversity filed another lawsuit against EPA for failing to undergo consultation with Services, this time regarding pesticide impacts on eleven San Francisco Bay Area species. On May 17, 2010, this Court entered an Order Approving Stipulated Injunction, through which EPA agreed to a schedule of compliance for completing the consultations and interim injunctive relief. *Center for Biological Diversity v. EPA*, No. C07-02794 JCS, 2010 U.S. Dist. LEXIS 59683 (N.D. Cal. May 17, 2010).

**EPA Continues To Violate The ESA**

Despite this series of lawsuits aimed at forcing EPA to comply with its ESA obligation to consult with federal wildlife agencies on pesticide impacts to endangered and threatened species, EPA continues to operate its pesticide registration program in violation of the ESA. As a consequence, on January 19, 2011, the Center filed the present lawsuit against EPA.

As with the previous litigation, the Center alleges that EPA is violating Section 7(a)(2) of the ESA, and its implementing regulations, by failing to initiate and reinitiate consultation with the Services and failing to insure through consultation that the registration of certain pesticides is not likely to jeopardize the continued existence of endangered and threatened species or destroy or adversely modify designated critical habitat. Compl. ¶¶ 139-44; *see* 16 U.S.C. § 1536(a)(2); 50 C.F.R. Part 402. This lawsuit concerns EPA's failure to consult on the impacts of 382 pesticides known to be harmful to 212 federally threatened and endangered species throughout the United States. Compl. ¶¶ 93, 130. Documents from EPA and FWS, as well as peer reviewed scientific studies, establish that each of the endangered and threatened species named in the lawsuit are vulnerable to pesticides that are registered by EPA and used in areas that may affect these imperiled species. Compl. ¶ 99.

Plaintiffs request declaratory and injunctive relief, including: 1) a declaration that EPA is violating Section 7(a)(2) of the ESA by failing to consult with the FWS and NMFS; 2) an order that EPA initiate or reinitiate consultation pursuant to Section 7(a)(2) of the ESA in an expeditious fashion; and 3) an order imposing appropriate restrictions on the use of the identified pesticides where they may affect endangered and threatened species and critical habitats until the consultation process has been completed and EPA has brought its pesticide registrations into compliance with Section 7(a)(2) of the ESA. Compl. Prayer for Relief ¶¶ 1-3.

Given the nationwide scope of the litigation and the large numbers of species and pesticides at issue, Federal Defendants and Plaintiffs believed that settlement could be an efficient way to resolve this dispute, and on March 15, 2011, the Court granted their joint motion to stay the litigation to conserve judicial resources during settlement discussions. *See* Docket No. 14. Thereafter, because Federal Defendants and Plaintiffs were unable to reach agreement by November 1, 2012, the Court set a schedule to hear the motions to dismiss from Defendants. Docket Nos. 133-34.

**STANDARD OF REVIEW**

Federal Rule of Civil Procedure 12(b)(1) permits a defendant to bring a motion to dismiss asserting a lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Here, Defendants bring a facial attack on subject matter jurisdiction challenging Plaintiffs' choice of court, standing, and arguing that the statute of limitations has run. With a facial attack, the plaintiff's complaint is construed "liberally," with allegations accepted "as true" and "all reasonable inferences" drawn in plaintiff's favor. *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Federal Rule of Civil Procedure 8(a) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2).

**ARGUMENT**

**I. DEFENDANTS' MOTIONS IMPROPERLY ELEVATE FIFRA ABOVE THE ESA**

Under the ESA, a federal agency's primary duty is to "insure," through consultation with the FWS or NMFS, "that any action authorized, funded, or carried out by such agency . . . is not likely to jeopardize the continued existence of any endangered species or threatened species . . . ." 16 U.S.C. § 1536(a)(2); *Western Watersheds Project v. Kraayenbrink*, 632 F.3d 472, 495 (9th Cir. 2011) ("The heart of the ESA is section 7(a)(2) . . . .")

In *TVA v. Hill*, the Supreme Court examined the language and legislative history of Section 7 and found no exceptions to the mandate to protect endangered species:

> One would be hard pressed to find a statutory provision whose terms were any plainer than those in § 7 of the Endangered Species Act. Its very words affirmatively command all federal agencies "to insure that actions authorized, funded, or carried out by them do not jeopardize the continued existence" of an endangered species or "result in the

destruction or modification of habitat of such species . . . ." This language admits of no exception.

. . .

In addition, the legislative history undergirding § 7 reveals an explicit congressional decision to require agencies to <u>afford first priority to the declared national policy of saving endangered species</u>. The pointed omission of the type of qualifying language previously included in endangered species legislation reveals a conscious decision by Congress to <u>give endangered species priority over the "primary missions" of federal agencies</u>.

437 U.S. at 173, 185 (emphasis added, citations omitted).

Here, Defendants' motions rely on a fundamentally <u>contrary</u> legal proposition:  that FIFRA's jurisdictional provisions trump the ESA's substantive protections and that Plaintiffs' ability to enforce the ESA's substantive mandate is therefore limited by FIFRA.  Defendants attempt to characterize Plaintiffs' ESA consultation claims as a "direct attack on the registration and reregistration decisions authorizing the use" of pesticides (Intervenor Brief, Docket No. 137 at 6), which they argue are now unchallengeable due to the running of the statute of limitations (60 days) for filing a FIFRA case.  *See* EPA Brief, Docket No. 139 at 12-15; Intervenor Brief, Docket No. 137 at 9-14.

Defendants' arguments are not only directly contrary to *TVA v. Hill,* they were soundly and explicitly rejected by the Ninth Circuit in *Washington Toxics Coal. v. EPA*, 413 F.3d 1024 (9th Cir. 2005), which addressed identical claims challenging EPA's failure to initiate ESA consultation regarding the effects of ongoing registered pesticide use on federally listed salmon species in the Pacific Northwest.  Furthermore, the Ninth Circuit's recognition that the ESA may not be subordinated to another federal statute with complementary purposes has been confirmed time and again.  *See, e.g., Karuk Tribe of Cal. v. U.S. Forest Serv.*, 681 F.3d 1006, 1024 (9th Cir. 2012) (en banc) ("An agency 'cannot escape its obligation to comply with the ESA merely because it is bound to comply with another statute that has consistent, complementary objectives.'" (quoting *Washington Toxics*, 413 F.3d at 1032)).

In this case, EPA has failed to insure through ESA consultation that its continuing authority over 382 registered pesticides is not jeopardizing 212 listed species.  Yet under Defendants' theory, Plaintiffs would have no recourse to rectify this ongoing lack of ESA compliance.  This would be true even for species listed after a pesticide registration was completed or where the prior registration procedure did not include consultation.  Such outcomes violate the very core of the ESA, which ensures the

preservation of listed species through consultation.[1]  In addition, as explained below, Defendants' arguments ask the Court to ignore Ninth Circuit precedent, particularly *Washington Toxics*.  In fact, Intervenors fail to even cite this seminal case that speaks directly to the issues at hand.

## II.   EPA'S CONTINUING AUTHORITY OVER PESTICIDE REGISTRATIONS IS ONGOING AGENCY ACTION SUBJECT TO THE ESA'S CONSULTATION REQUIREMENT

Plaintiffs' Complaint is based upon the well-established legal concept that EPA's registration of pesticides, and its continuing regulatory authority over these registrations – pursuant to which millions of pounds of pesticides are applied annually – constitutes "<u>ongoing</u>" agency action, subject to the ESA's consultation requirement.  In *Washington Toxics*, the Ninth Circuit specifically affirmed this duty:

> EPA retains ongoing discretion to register pesticides, alter pesticide registrations, and cancel pesticide registrations. *See* 7 U.S.C. § 136a-d. Because EPA has continuing authority over pesticide regulation, it has a continuing obligation to follow the requirements of the ESA. . . . In this case, EPA has discretion 'to inure to the benefit' of listed species. Pesticide registrations under FIFRA are ongoing and have a long-lasting effect even after adoption. EPA retains discretion to alter the registration of pesticides for reasons that include environmental concerns. *See* 7 U.S.C. §§ 136d(c)(1)-(2), 136(l).

*Washington Toxics,* 413 F.3d at 1033.  Defendants do not cite any cases that overrule the Ninth Circuit's decision in *Washington Toxics* that EPA's ongoing discretionary authority over registered pesticides triggers the duty to consult under the ESA.  Instead, Defendants offer the baseless argument that Plaintiffs did not plead "specific affirmative action" subject to the duty to consult under Section 7 of the ESA.  EPA Brief, Docket No. 139 at 9; *see* Intervenor Brief, Docket No. 137 at 14-15.  This argument ignores well-established Ninth Circuit case law regarding "ongoing" agency action.

As broadly defined by the ESA and its implementing regulations, agency "action" includes "all activities or programs of any kind authorized, funded, or carried out" by a federal agency.  50 C.F.R. §

---

[1]     Consultation with the wildlife agencies is critical to insure that ongoing pesticide use will not jeopardize the survival of listed species because EPA's consideration of pesticide risk is "not only less protective than Service determinations, there is overwhelming evidence [that] EPA risk assessments . . . would actually result in harm to listed species."  *See Washington Toxics Coal. v. United States Dept. of Interior,* 457 F. Supp. 2d 1158, 1184 (W.D. Wash. 2006); *id.* at 1193 (reviewing extensive record demonstrating that EPA's process is plagued by "substantial flaws . . . highly likely (if not certain) to result in an overall under-protection of listed species"); *id.* at 1090 ("Service scientists noted in the context of specific consultation initiation packages that EPA appeared to have omitted to perform any routine searches of the available scientific literature for relevant data.").

402.02; *see* 16 U.S.C. § 1536(a)(2); *Karuk Tribe of Cal. v. United States Forest Serv.*, 681 F.3d 1006, 1021 (9th Cir. 2012) ("We have repeatedly held that the ESA's use of the term 'agency action' is to be construed broadly."). To identify action subject to the consultation requirement, Ninth Circuit courts engage in a two-fold inquiry. *Karuk Tribe*, 681 F.3d at 1021. "First, [courts] ask whether a federal agency affirmatively authorized, funded, or carried out the underlying activity. Second, [courts] determine whether the agency had some discretion to influence or change the activity for the benefit of a protected species." *Id.*; *see* 50 C.F.R. § 402.03 ("Section 7 [applies] to all actions in which there is discretionary Federal involvement or control.").

Here, EPA has affirmatively authorized, funded, and carried out the registration of the 382 pesticides identified in the Complaint, and EPA has discretion to influence or change the use of these registered pesticides for the benefit of the protected species identified in the Complaint. Compl. ¶¶ 130-31. Specifically, the Complaint explains that EPA's "ongoing discretionary control and involvement over all of these [382] pesticides . . . constitutes 'agency actions' subject to consultation under Section 7(a)(2) of the ESA." Compl. ¶ 131.[2]

Defendants do not appear to dispute that EPA has registered the pesticides at issue in the case, or that EPA has the requisite discretion to regulate these pesticides for the benefit of protected species – a point of law also established in *Washington Toxics*. 413 F.3d at 1033. Instead, Defendants argue that "ongoing discretionary authority" does not constitute "agency action." *See* EPA Brief, Docket No. 139 at 9, 11; Intervenor Brief, Docket No. 137 at 15. In essence, Defendants challenge the well-established legal concept that "ongoing" agency action triggers ESA consultation duties.

Here, Defendants' position fails at the outset because there is binding Ninth Circuit authority on all fours with the present case. *Washington Toxics* affirmed that EPA's continuing authority over

---

[2]     The Complaint further alleges that EPA has failed to initiate or reinitiate consultation on the impacts of these pesticides on the 212 species named in the Complaint. Compl. ¶¶ 49-50, 93, 143. The Complaint also alleges that these pesticides "may affect" the listed species through pages of detailed allegations on pesticide impacts. *See generally* Compl. ¶¶ 81-129. Thus, there is no merit to the Federal Defendants' argument that Plaintiffs have failed to allege "sufficient facts to identify any particular FIFRA action that was allegedly taken by EPA without the benefit of ESA consultation or to show how any such actions allegedly may affect particular listed species or critical habitat . . . ." EPA Brief, Docket No. 139 at 18.

pesticide registrations constitutes ongoing agency action. 413 F.3d at 1033; *see also Washington Toxics Coal. v. EPA*, No. C01-132C, 2002 U.S. Dist. LEXIS 27654, *25 (W.D. Wash. July 2, 2002) (holding by the district court that "[b]ecause EPA retains ongoing discretionary authority to modify the terms and conditions of these 'licenses', the Court concludes that each pesticide registration constitutes an <u>ongoing agency action</u> for purposes of section 7(a)(2).") (emphasis added). In affirming the district court's conclusion, *Washington Toxics* analogized to two other cases where the Ninth Circuit also found "ongoing" agency action subject to the duty to consult. *Washington Toxics*, 413 F.3d at 1033 (citing *Turtle Island Restoration Network v. Nat'l Marine Fisheries Servs.*, 340 F.3d 969, 977 (9th Cir. 2003) (fishing permits); *Pacific Rivers Council v. Thomas*, 30 F.3d 1050, 1053 (9th Cir. 1994) (forest plans)). As in those cases, the Ninth Circuit explained that "[p]esticide registrations under FIFRA are ongoing and have a long-lasting effect even after adoption" and "[b]ecause EPA has continuing authority over pesticide regulation, it has a continuing obligation to follow the requirements of the ESA." 413 F.3d at 1033.

Moreover, subsequent Ninth Circuit decisions have continued to uphold this approach, noting that "[a]n 'ongoing agency action' exists if the action 'comes within the agency's decisionmaking authority and remains so,'" *Wild Fish Conservancy v. Salazar*, 628 F.3d 513, 518 (9th Cir. 2010), and that "[w]here the challenged action comes within the agency's decision making authority *and remains so*, it falls within section 7(a)(2)'s scope." *Western Watersheds Project v. Matejko*, 468 F.3d 1099, 1109 (9th Cir. 2006); *see also Center for Biological Diversity v. Whitman*, No. C-02-1580 JSW, Docket No. 80 at 9, n.6 (N.D. Cal. June 30, 2003) ("Because of this continuing discretion, pesticide registration constitutes ongoing agency action under § 7(a)(2) of the ESA.").

Despite the fact that the Ninth Circuit has time and again reaffirmed that ongoing agency action triggers the duty to consult (and that pesticide registrations are ongoing agency action), the Federal Defendants refer to *Karuk Tribe*, 681 F.3d at 1021, to argue that no duty to consult exists here because "[r]egulatory discretion or oversight authority, standing alone, does not give rise to a duty to consult." *See* Docket No. 139 at 10. But this argument ignores that "ongoing" agency action is an adequate basis for Plaintiffs' claim. *Karuk Tribe* does nothing to alter the holdings of numerous Ninth Circuit cases that "ongoing" agency action triggers the duty to consult. In fact, *Karuk Tribe* does not even address

whether an agency's continuing regulatory authority over a license (in this case a pesticide registration) constitutes ongoing agency action triggering ESA consultation duties. Instead, *Karuk Tribe* analyzed whether the Forest Service's approval of private mining activities constituted agency action at all; it held that that the Forest Service affirmatively authorized these private mining activities and thus consultation was required. 681 F.3d at 1023-24, 1027.

Defendants also cite to *Western Watersheds Project v. Matejko*, 468 F.3d 1099 (9th Cir. 2006), but that case explicitly supports Plaintiffs' position. *Western Watersheds* acknowledges previous holdings that "ongoing" agency action triggers the duty to consult, explaining: "[w]here the challenged action comes within the agency's decision making authority *and remains so*, it falls within section 7(a)(2)'s scope." *Id.* at 1109. Indeed, *Western Watersheds* specifically discusses and approves of *Washington Toxics*, finding that EPA's oversight of pesticide registrations is an example of "ongoing agency action" because EPA retains "continuing decision-making authority," *id*. at 1109-10, and that "[i]n those types of cases, there is a duty to consult." *Id.* at 1110. In short, *Western Watersheds* makes clear that ongoing agency action based on continuing agency discretion triggers ESA consultation, while also determining that ongoing agency action did not exist in that particular case.[3]

Defendants' reliance on *California Sportsfishing* is similarly unpersuasive. *See California Sportsfishing Prot. Alliance v. FERC*, 472 F.3d 593 (9th Cir. 2006). In *California Sportsfishing*, the plaintiffs argued that the Federal Energy Regulatory Commission ("FERC") must consult with NMFS on salmon impacts from a 30-year license for a hydroelectric project that was granted 19 years before the complaint was filed. 472 F.3d at 594. The Ninth Circuit found that the duty to consult was not triggered because "the agency action of granting a permit is complete." *Id*. at 598. The Ninth Circuit distinguished *Pacific Rivers Council v. Thomas*, 30 F.3d 1050 (9th Cir. 1994), where the agency

---

[3]        In *Western Watersheds*, the environmental plaintiffs argued that Bureau of Land Management's ("BLM's") failure to regulate water diversions for agriculture and other irrigation uses by private parties should be subject to the ESA's consultation requirement. 468 F.3d at 1102, 1107. The Ninth Circuit ultimately found that BLM's regulatory oversight was not adequate to constitute ongoing agency action, given that BLM did not retain sufficient discretionary authority over its previously issued permit. *Id.* at 1109-10 ("[T]here is no 'on-going agency action' where the agency has acted earlier but specifically did not *retain* authority . . . . Here, even if the BLM could have regulated the diversions to protect endangered species, it did not retain such discretion.").

approval of forest plans that govern ongoing and new projects had "'an ongoing and long-lasting effect even after adoption,' and represented 'on-going agency action.'" *California Sportsfishing*, 472 F.3d at 598 (quoting *Pacific Rivers Council*, 30 F.3d at 1053). For this reason, *California Sportsfishing* can be easily distinguished from the situation here, where the Ninth Circuit has already found that EPA's pesticide registrations under FIFRA – like the forest plans at issue in *Pacific Rivers Council* – "are ongoing and have a long-lasting effect even after adoption." *Washington Toxics*, 413 F.3d at 1033. Thus, contrary to Defendants' unsupported contentions, *California Sportsfishing* does not alter the well-settled proposition that "ongoing" agency action triggers the ESA's consultation requirement. Nor does it alter the holding of *Washington Toxics* that EPA's continuing authority over pesticide registrations is ongoing agency action.

In sum, while Defendants wish to feign ignorance as to the "action" at issue in this case, the answer could not be more plain – the Ninth Circuit has found that EPA's continuing authority over pesticide registrations constitutes ongoing agency action that is subject to Section 7 consultation. Therefore, because Plaintiffs' Complaint states just that – "EPA retains ongoing discretionary control and involvement over all of these pesticides, which constitutes 'agency actions' subject to consultation under Section 7(a)(2) of the ESA" – there is no reasonable basis to find that the Complaint is not properly pled. Compl. ¶ 131.

## III. THE COURT HAS SUBJECT MATTER JURISDICTION BECAUSE FIFRA'S JUDICIAL REVIEW PROVISIONS ARE INAPPLICABLE TO PLAINTIFFS' ESA CLAIMS

Defendants argue that most of Plaintiffs' claims should have been brought in the court of appeals within 60 days after EPA registered the pesticides under FIFRA and that this Court therefore lacks jurisdiction. Yet binding Ninth Circuit authority holds that ESA-based challenges to EPA's oversight of pesticide registrations are properly brought under the ESA's citizen suit provision in the district courts. *Washington Toxics Coal. v. EPA*, 413 F.3d 1024 (9th Cir. 2005). Intervenors fail to even cite this seminal case, and for the reasons explained below, Defendants' arguments lack merit and must be rejected.

## A. The Ninth Circuit In *Washington Toxics* Holds That ESA Challenges To EPA's Oversight Of Pesticides Can Be Brought Under The ESA's Citizen Suit Provision

The Court need look no further than *Washington Toxics* to reject Defendants' argument that FIFRA's judicial review provision controls Plaintiffs' ESA claims. *Washington Toxics Coal. v. EPA*, 413 F.3d 1024 (9th Cir. 2005). In *Washington Toxics*, the plaintiffs alleged that EPA was in violation of Section 7(a)(2) of the ESA – the same provision at issue here – by failing to consult with NMFS to ensure that 54 different pesticides would not jeopardize the survival and recovery of listed salmon and steelhead. 413 F.3d at 1030. EPA and the intervenors expressly argued "that plaintiffs' claims do not arise under the ESA's citizen-suit provision" but instead that the Administrative Procedures Act ("APA") and FIFRA governs the claims. *Washington Toxics Coal. v. EPA*, No. C02-132C, 2002 U.S. Dist. LEXIS 27654, at *16 (W.D. Wash. July 2, 2002). The district court rejected this theory, finding that "the ESA citizen-suit provision is the proper avenue for plaintiffs' section 7(a)(1) and 7(a)(2) claims." *Id.* at *19.[4]

The Ninth Circuit affirmed the district court orders in their entirety, rejecting the argument "that administrative exhaustion or primary jurisdiction under FIFRA applies in this case or that the district court should have first required the plaintiffs to exhaust FIFRA remedies before entering an injunction." 413 F.3d at 1033. The Ninth Circuit explained:

> Neither FIFRA nor the ESA, however, suggest any legislative intent to require exhaustion of the FIFRA remedy before seeking relief under the ESA. . . . [T]he mere fact that FIFRA recognizes EPA authority to suspend registered pesticides to protect listed species does not mean that FIFRA remedies trump those Congress expressly made available under ESA, or that FIFRA provides an exclusive or primary remedy. The scheme of the two statutes suggests the exact opposite.

413 F.3d at 1033-34.

---

[4] *See also Washington Toxics Coal.*, 2002 U.S. Dist. LEXIS 27654, at *17-18 ("When Congress vests an agency with responsibility for administering a statute, such as EPA's administration of FIFRA, the ESA nevertheless applies to agency actions taken pursuant to that statute. . . . Thus, FIFRA and its procedures do not govern plaintiffs' claims."); *Washington Toxics Coal. v. EPA*, No. C01-132C, 2003 U.S. Dist. LEXIS 26088, *14 (W.D. Wash. Aug. 8, 2003) ("[R]egardless of whether plaintiffs *could* pursue suspension or cancellation proceedings via the APA and FIFRA, this Court held over one year ago that plaintiffs' claims do not arise under the APA and FIFRA. Likewise, plaintiffs' claims are not governed by FIFRA standards.").

Here, Defendants argue that Plaintiffs should have brought their ESA claims before the court of appeals under FIFRA. Docket No. 139 at 12-15; Docket No. 137 at 9-14. But the Ninth Circuit has already rejected the argument that "FIFRA provides an exclusive or primary remedy." 413 F.3d at 1034. The Ninth Circuit instead specifically held that "the ESA citizen suit provision creates an express, adequate remedy." *Id.*; *see also Defenders of Wildlife v. EPA*, 882 F.2d 1294, 1300 (8th Cir. 1989) (holding that the plaintiffs could challenge the EPA's authorization of the above-ground use of pesticides containing strychnine through the ESA's citizen-suit provision in district court and outside of the FIFRA framework); *Dow AgroSciences v. National Marine Fisheries Serv.*, 637 F.3d 259, 264-65 (4th Cir. 2011) (rejecting the defendant's contention that FIFRA section 16(b) provided an exclusive avenue to challenge a biological opinion regarding a pesticide reregistration – the end product of section 7 consultation).

In short, *Washington Toxics* holds that EPA's continuing oversight of pesticide registrations can be challenged through a lawsuit in the district court under the ESA's citizen suit provision. *Washington Toxics* is the only case that controls here, as it is the only binding authority that squarely addresses the relationship between FIFRA and the ESA – and it found that FIFRA's administrative process does not apply to plaintiffs bringing ESA claims and that Congress vested jurisdiction in the district courts for ESA cases. For this reason alone, the Court should conclude that the ESA's citizen suit provision governs Plaintiffs' claims.

### B. Applying FIFRA's Judicial Review Provision To Plaintiffs' ESA Claims Would Be Inconsistent With FIFRA's Plain Language

Even if the Court determines that *Washington Toxics* does not fully address the relationship between the judicial review provisions of FIFRA and the ESA, analysis of the plain language of FIFRA's judicial review provision shows that Congress did not intend for FIFRA to trump the citizen suit provision of the ESA. The "beginning point" of statutory interpretation "must be the language of the statute . . . ." *Estate of Cowart v. Nicklos Drilling Co.*, 505 U.S. 469, 475 (1992).

First, section 16(b) of FIFRA (the judicial review provision) only applies "[i]n the case of actual controversy as to the validity of any order . . . ." 7 U.S.C. § 136n(b). Most importantly, and as explained fully in Section II above, Plaintiffs are not seeking to invalidate any particular "order" or

pesticide registration. Rather Plaintiffs' challenges are based on EPA's <u>ongoing agency action</u>, specifically, its "ongoing discretionary control and involvement" over 382 pesticide registrations. Compl. ¶ 131. Even though this failure-to-consult claim under the ESA is legally distinct from a challenge to the validity of a pesticide registration under FIFRA, Defendants repeatedly mischaracterize Plaintiffs' claims, trying to squeeze them within the FIFRA framework. But just like the plaintiffs in *Washington Toxics*, plaintiffs here "do not challenge any pesticide registrations. Rather, plaintiffs challenge EPA's alleged failure to consult . . . regarding the effects of such registrations on threatened and endangered [species]." *Washington Toxics Coal.*, 2002 U.S. Dist. LEXIS 27654 at *17. Simply stated, FIFRA's judicial review provisions do not apply here because this is not a FIFRA case.

Second, section 16(b) of FIFRA explicitly states that it may only be used by a person "who had been a party to the [FIFRA] proceedings . . . ." 7 U.S.C. § 136n(b). The *Washington Toxics* Court, however, explained that "[n]either FIFRA nor the ESA . . . suggest any legislative intent to require exhaustion of the FIFRA remedy before seeking relief under the ESA." 413 F.3d at 1033. The only way to logically reconcile these two realities is to find that the judicial review provisions of FIFRA do not – indeed, cannot – apply to an ESA case like this one.

Furthermore, while Defendants point to *Pesticide Action Network North America v. United States EPA* ("*PANNA*"), No. C 08-1814 MHP, 2008 U.S. Dist. LEXIS 98572 (N.D. Cal. Dec. 5, 2008) to justify their position, *PANNA* was a ruling on a motion to stay and specifically did "not reach the merits of whether FIFRA section 16(b) actually subsumes ESA's district court jurisdiction provision here and now." *Id*. at *25. Defendants' reliance on *PANNA* is also misplaced because the facts of *PANNA* are easily distinguishable from the present case. In *PANNA*, the plaintiffs brought claims under FIFRA <u>and</u> the ESA. 2008 U.S. Dist. LEXIS 98572 at *2. The plaintiffs "directly challenge[d] the pesticide reregistrations under the regulatory statute, FIFRA," and sought an order that EPA "make new REDs for the four pesticides." *Id*. at *8, 18. Here, Plaintiffs bring no FIFRA claims and do not challenge the validity of the pesticide registrations. Moreover, *PANNA*'s analysis of FIFRA's judicial review provision demonstrates yet another reason why FIFRA is inapplicable here. The Court explained that "FIFRA section 16(b) only triggers the exclusive jurisdiction of the court of appeals once a petition for judicial review is submitted." *Id*. at *15 (citing 7 U.S.C. § 136n(b) ("*Upon the filing of such petition* the

[court of appeals] shall have exclusive jurisdiction.")). Thus, "[i]f plaintiffs are time-barred from petitioning the Ninth Circuit, there would be no exclusive jurisdiction provision to which to affix the ESA claims in the manner defendants propose. Plaintiffs might then rely solely on ESA's jurisdictional provision, which vests the district court with jurisdiction." *Id.* That is exactly what Plaintiffs in this case are doing – relying solely on the ESA's jurisdictional provision because they bring only ESA claims.

For these reasons, the plain language of FIFRA shows that its provision providing for exclusive jurisdiction in the court of appeals does not apply here.

### C. None Of The Cases Relied Upon By Defendants Alter *Washington Toxics*'s Holding On The Relationship Between FIFRA And The ESA

#### 1. *United Farm Workers* Is Not An ESA Case

To argue that Plaintiffs' ESA claims must be brought in the court of appeals under FIFRA, Defendants primarily rely upon the holding of *United Farm Workers of America v. EPA*, 592 F.3d 1080 (9th Cir. 2010). *United Farm Workers* simply holds FIFRA section 16(a) does not vest jurisdiction in the district court for challenges to the validity of a FIFRA order following a hearing. *Id.* at 1082. This ruling has no relevance here. Plaintiffs do not challenge the validity of any pesticide registrations and therefore FIFRA's procedures are not invoked. *See Washington Toxics Coal. v. EPA*, 2002 U.S. Dist. LEXIS 27654, *17 (W.D. Wash. July 2, 2002) (finding that "plaintiffs do not challenge any pesticide registrations. Rather, plaintiffs challenge EPA's alleged failure to consult with NMFS regarding the effects of such registrations on threatened and endangered salmonids"). Again, Plaintiffs' claims are based on EPA's "ongoing discretionary control and involvement" over regulation of 382 registered pesticides, which triggers the duty to consult under the ESA. Compl. ¶ 131. *United Farm Workers* did not address whether the ESA's citizen-suit provision provides jurisdiction to challenge EPA's failure to consult on pesticide impacts to listed species (an issue that is squarely addressed by *Washington Toxics*). In fact, *United Farm Workers* says nothing about the relationship between FIFRA and the ESA, as *United Farm Workers* involved only FIFRA claims.

## 2. *American Bird* Is Distinguishable

Defendants also rely upon *American Bird Conservancy v. FCC*, 545 F.3d 1190 (9th Cir. 2008). *American Bird* involved a challenge to seven towers registered by the Federal Communications Commission ("FCC") that were killing two listed species of seabirds. 545 F.3d at 1192. The plaintiffs previously objected to the tower registrations through participation in the FCC administrative process, including filing a petition with the FCC. *Id*. Their 60-day notice letter explained that they would file an ESA citizen suit if the FCC's administrative process produced an unsatisfactory result. *Id*. Dissatisfied with the "glacial" pace of the FCC's administrative process, *id*. at 1195, the plaintiffs did not wait for the FCC to issue a final order on their administrative petition and instead filed a complaint in district court alleging that the FCC failed to consult under the ESA when it registered the seven communication towers. *Id*. at 1192.

The defendants argued that the court lacked jurisdiction over the ESA claims because section 402(a) of the Communications Act and the Hobbs Act vest the federal courts of appeals with "exclusive" subject matter jurisdiction over actions to "enjoin, set aside, annul, or suspend any order of the [Federal Communications] Commission." *Id*. at 1191. The plaintiffs argued that their claims were not precluded because they were based on a failure to consult under the ESA. *Id*. at 1193.

Holding that the ESA claims were actually direct challenges to the tower registrations that were precluded by the exclusive review provision in the Communications Act and the Hobbs Act, the Ninth Circuit relied heavily on the fact that the plaintiffs had challenged the tower registrations through the FCC's administrative process and threatened in their notice of intent to sue that they would bring the ESA claims if the FCC continued to authorize the operation of the communication towers. *Id*. The Ninth Circuit therefore concluded that the plaintiffs' "true objection" was to the tower registrations themselves. *Id*.

Key differences exist between the situation here and *American Bird*. Just as in *Washington Toxics*, "plaintiffs do not challenge any pesticide registrations. Rather, plaintiffs challenge EPA's alleged failure to consult . . . regarding the effects of such registrations on threatened and endangered [species]." *Washington Toxics Coal.*, 2002 U.S. Dist. LEXIS 27654, *17. And unlike the plaintiffs in

1    *American Bird*, Plaintiffs have not indicated any motive to directly challenge the registrations.  *See infra*

2    at Section III.C.3 (distinguishing *CESAR*).  *Cf. American Bird*, 545 F.3d at 1192.

3         More importantly, in *American Bird*, the Court was <u>not</u> addressing a situation where, like here,

4    the agency retains ongoing discretionary control over the registrations and Plaintiffs' consultation claims

5    are based on that ongoing agency action.  *See Washington Toxics*, 413 F.3d at 1033.  While the FCC

6    only had an obligation to consult prior to issuing its orders approving the towers, EPA continues to have

7    a duty to consult <u>after</u> it issues a pesticide registration.  Thus, while the plaintiff in *American Bird* could

8    "pursue its claims through the FCC's administrative process," Plaintiffs in this case cannot pursue their

9    claims through the FIFRA process because the duty to consult at issue is occurring now and is ongoing,

10   long after the end of the FIFRA administrative process for any particular registration.  *American Bird*,

11   545 F.3d at 1195.  What fundamentally matters from a legal standpoint is that the EPA's duty to consult

12   in regard to pesticide registrations is ongoing, and therefore, so too must be the ability of citizens to

13   enforce that duty.

14        Furthermore, *American Bird* cannot be dispositive here because it does not deal with pesticide

15   regulation and therefore did not examine the relationship between the ESA and FIFRA, nor did it cite to

16   or discuss *Washington Toxics*.[5]  Determining whether a regulatory statute's jurisdictional provision

17   applies to ESA claims requires a statute-specific analysis.  *See Turtle Island Restoration Network v.*

18   *United States DOC*, 438 F.3d 937, 947 (9th Cir. 2006).  The Ninth Circuit in *Washington Toxics* has

19   already examined the relationship between FIFRA and the ESA and therefore this Court need look no

---

[5]       Cited by the Federal Defendants in a footnote, *California Save Our Streams Council, Inc. v.*
*Yeutter*, 887 F.2d 908, 911 (9th Cir. 1989), is also irrelevant to this case as it dealt with neither the ESA
nor FIFRA.  Instead, it examined the relationship between the Federal Power Act and two other statutes
(the National Environmental Policy Act and the American Indian Religious Freedom Act), neither of
which provide a private right of action through a citizen-suit provision. Plaintiffs in that case argued that
the district court had jurisdiction pursuant to the general provisions of 28 U.S.C. §§ 1331, 1343, and
1362.  *Id*. at 910.  Noting that "[j]urisdiction to review agency decisions is generally vested in the courts
of appeals," the Ninth Circuit determined that the district court lacked jurisdiction because the more
specific jurisdictional provisions of the FPA applied.  *Id*. at 911.  Here, on the other hand, the ESA – a
statute specifically addressing the protection of endangered species at issue here – has a citizen suit
provision that explicitly provides for jurisdiction in the district court.  16 U.S.C. § 1540(g).  Thus, the
notion that "[j]urisdiction to review agency decisions is generally vested in the courts of appeals" is not
applicable here.  887 F.2d at 911.

further. As the Ninth Circuit has explained, FIFRA does <u>not</u> provide an "exclusive or primary" remedy for ESA claims relating to EPA's continuing authority over pesticide registrations, and "exhaustion of the FIFRA remedy before seeking relief under the ESA" is not necessary. 413 F.3d at 1033-34. Indeed, FIFRA's judicial review provisions only apply to challenges "as to the validity of any order," 7 U.S.C. § 136n(b), and Plaintiffs do not challenge the validity of any FIFRA orders.

In short, *Washington Toxics* – not *American Bird* – controls here because it actually addresses the relationship between FIFRA and the ESA, and it found that FIFRA's administrative process does not apply to plaintiffs bringing only ESA claims and that Plaintiffs can rely on the ESA's specific jurisdictional provision to bring such claims in district court. Consequently, Ninth Circuit precedent dictates that this Court possesses jurisdiction to address the EPA's ongoing authority over the 382 registered pesticides at issue in this case.

### 3. *CESAR* Is Distinguishable And Is Inconsistent With Ninth Circuit Precedent

Defendants rely heavily on *Council for Endangered Species Act Reliability v. Jackson* ("*CESAR*"), No. CV-10-8254-SMM, 2011 U.S. Dist. LEXIS 135635 (D. Ariz. Nov. 23, 2011), which is the only case other than *Washington Toxics* to have examined the relationship between FIFRA and the ESA. The Court should not follow *CESAR*. First, the facts of *CESAR* can be easily distinguished from the present case. Second, *CESAR* does not adhere to Ninth Circuit precedent.

In *CESAR*, a nonprofit organization and a landowner sued EPA under the ESA's citizen suit provision for failing to consult with the FWS before approving the use of rotenone and for failing to ensure that registration of rotenone would not jeopardize several endangered species found in Arizona. *Id*. at *6. Importantly, the plaintiffs also alleged that EPA failed to "compl[y] with the FIFRA prior to issuing its re-registration decision on rotenone and approving its use as an aquatic pesticide." *Id*. at *6-7. Among the relief the plaintiffs sought was for the court to "order the EPA 'to make a new re-registration eligibility decision for rotenone use . . . .'" *Id*. at 7.

The district court analogized to *American Bird* and found that the plaintiffs' "allegations are rooted in Defendants' issuance of a RED for rotenone and Plaintiffs' desire for a new RED regarding rotenone." *Id*. at *15 (citing complaint requesting that the court "[o]rder EPA to make a new re-registration eligibility decision for rotenone use"). The district court explained that the plaintiffs' claim

"is best construed as a collateral attack on an agency registration triggering the jurisdictional provisions of the applicable regulatory statute." *Id*. For that reason, the district court held that FIFRA section 16(b), 7 U.S.C. § 136n(b), which governs judicial review of pesticide registrations, applied. *Id*. at *16.

The key facts of *CESAR*, upon which the district court relied, are not present here. In *CESAR*, the plaintiffs directly challenged the registration by asking the court to "order the EPA 'to make a new re-registration eligibility decision for rotenone use.'" *Id*. at *7. Here, although Defendants repeatedly mischaracterize Plaintiffs' claims as an attack on EPA's pesticide registrations, the Complaint, unlike the one in *CESAR*, does not challenge the registrations and does not seek an order that EPA issue new registration decisions. Moreover, Plaintiffs do not bring any FIFRA claims. The Complaint brings only ESA claims under the ESA's citizen suit provision because Plaintiffs seek a Court order that EPA must consult under the ESA. These distinctions matter because consultation alone does not dictate any changes in pesticide registrations. Only upon the completion of consultation would EPA then determine whether and how to use its FIFRA authorities. For these reasons, the situation here is meaningfully different from *CESAR* and cannot be reasonably construed as "a collateral attack on an agency registration triggering the jurisdictional provisions of the applicable regulatory statute." *See CESAR*, 2011 U.S. Dist. LEXIS 135635 at *15.

Moreover, *CESAR* should not be followed because it failed to recognize that *Washington Toxics* controls the analysis. The district court found *Washington Toxics* to be "not persuasive" because it "did not address jurisdiction provisions akin to the ones in this case." *Id*. at *16. Yet the Ninth Circuit in *Washington Toxics* asked whether "primary jurisdiction under FIFRA applies in this case." 413 F.3d at 1033. The Ninth Circuit then plainly decided that question, explaining that "[n]either FIFRA nor the ESA, however, suggest any legislative intent to require exhaustion of the FIFRA remedy before seeking relief under the ESA." *Id*. Under *Washington Toxics*, "the ESA citizen suit provision creates an express, adequate remedy" and "independently authorizes a private right of action," so plaintiffs can rely on the ESA's citizen suit provision. 413 F.3d at 1034.

Undeterred by the Ninth Circuit's holding in *Washington Toxics*, Defendants once again attempt to undermine ESA applicability to pesticide regulation by claiming that EPA's failure to consult is governed by FIFRA rather than the ESA. This effort must be rejected. Acceptance of Defendants'

arguments would eviscerate the ability of citizens to enforce the EPA's ongoing duty to consult in regard to pesticide registrations. *Washington Toxics* already resolved the key underlying question by holding that "[n]either FIFRA nor the ESA . . . suggest any legislative intent to require exhaustion of the FIFRA remedy before seeking relief under the ESA." 413 F.3d at 1033. And none of the cases relied upon by Defendants alter the controlling authority of *Washington Toxics* regarding the relationship between FIFRA and the ESA. Therefore, the only acceptable outcome here is to follow *Washington Toxics*, reaffirm that the ESA's citizen suit provision is the proper route for bringing an ESA case such as this one, and deny Defendants' motion to dismiss for lack of jurisdiction.

## IV. THE STATUTE OF LIMITATIONS HAS NOT RUN

In arguing that many of the claims in this case are time-barred challenges to discrete pesticide registrations under FIFRA, Defendants yet again misconstrue the Complaint and ask this Court to ignore Ninth Circuit authority. As explained above, the Ninth Circuit has held that EPA's continuing authority over its pesticide registrations is ongoing agency action. *Washington Toxics*, 413 F.3d at 1033; *Western Watersheds Project*, 468 F.3d at 1109-10; *see Washington Toxics Coal.*, 2002 U.S. Dist. LEXIS 27654 at *25; *Center for Biological Diversity v. Whitman*, No. C-02-1580 JSW, Docket No. 80 at 9, n.6 (N.D. Cal. June 30, 2003).

This key holding is also dispositive for the statute-of-limitations analysis because Section 7(a)(2) claims for such ongoing agency actions are not barred by the six-year statute of limitations established by 28 U.S.C. § 2401(a). *Coalition for a Sustainable Delta v. FEMA*, 812 F. Supp. 2d 1089, 1123 (E.D. Cal. 2011) (rejecting defendants' argument that Section 7 consultation claim was time barred after analogizing to *Washington Toxics* and reasoning that "FEMA's floodplain NFIP ongoing mapping activity in the Sacramento-San Joaquin Delta is ongoing agency action and therefore not barred by the six-year statute of limitations."); *WaterWatch of Or. v. United States Army Corps of Eng'rs*, No. 99-861-BR, 2000 U.S. Dist. LEXIS 17650, *31 n.13 (D. Or. June 7, 2000) (rejecting defendant's argument that the failure to consult claims were time barred because "The 1971 and 1978 permits are still in effect, the pump stations are still being operated . . . .").

The Section 7 cases relied upon by Defendants are easily distinguishable because none of them involve ongoing agency action. Instead, each of those cases challenges discrete agency actions that

triggered the six-year limitations period.  *See Sierra Club v. United States EPA*, 162 F. Supp. 2d 406, 422 n.26 (D. Md. 2001) (EPA's approval of Maryland's 1990 water quality revision); *Broadened Horizons Riverkeepers v. U.S. Army Corps of Eng'rs*, 8 F. Supp. 2d 730, 736 (E.D. Tenn. 1998) (construction permits issued by the Corps or TVA prior to September 19, 1990); *Kentucky Heartwood v. Worthington*, 20 F. Supp. 2d 1076, 1092-93 (E.D. Ky. 1998) (Environmental Impact Statement adopted by Forest Service in 1985).

To summarize, challenges to ongoing agency action are not barred by the statute of limitations, and *Washington Toxics* makes clear that EPA's oversight of its pesticide registrations is ongoing agency action.  As such, there is no merit to Defendants' argument that Plaintiffs' claims regarding a majority of the pesticides in the Complaint are time barred.

## V.  THE COMPLAINT PLEADS FACTS ESTABLISHING EPA'S DUTY TO REINITIATE CONSULTATION ON THE 1989 AND 1993 BIOLOGICAL OPINIONS

Although EPA has completed almost no ESA consultations on pesticide impacts since 1993, Complaint ¶ 50, two completed consultations occurred prior to then when the FWS issued the 1989 and 1993 Biological Opinions.  Compl. ¶ 133.  The Complaint alleges that EPA is violating the ESA by failing to reinitiate consultation for the species and pesticides addressed in those biological opinions.  Compl. ¶¶ 133-38.  Defendants are wrong to argue that the Complaint fails to plead sufficient facts to support the reinitiation of consultation claim.

The ESA's consultation regulations provide that agencies must reinitiate consultation under certain circumstances.  50 C.F.R. § 402.16.  Specifically, the regulations provide that:

Reinitiation of formal consultation is required and shall be requested by the Federal agency or by the Service, where discretionary Federal involvement or control over the action has been retained or is authorized by law and:

(a) If the amount or extent of taking specified in the incidental take statement is exceeded;

(b) If new information reveals effects of the action that may affect listed species or critical habitat in a manner or to an extent not previously considered;

(c) If the identified action is subsequently modified in a manner that causes an effect to the listed species or critical habitat that was not considered in the biological opinion; or

(d) If a new species is listed or critical habitat designated that may be affected by the identified action.

*Id*. Here, as the Complaint alleges, the duty to reinitiate consultation has been triggered by "new information" and modification of the identified action. 50 C.F.R. § 402.16(b),(c); *see* Compl. ¶¶ 135-37.

First, the Complaint pleads specific facts regarding the new information that gives rise to the duty to reinitiate consultation. The Complaint alleges that "EPA's own documents provide new information demonstrating the serious potential for significant harm or death to listed species from pesticides." Compl. ¶ 135. It further alleges that "pesticides previously consulted on are now being used in new and different manners than that considered at the time of review." Compl. ¶ 135.

Second, the Complaint pleads specific facts regarding modification of EPA's actions with respect to the pesticides and species addressed in the 1989 and 1993 Biological Opinions. Compl. ¶¶ 136-37. It alleges that "EPA has failed to ensure the implementation of the reasonable and prudent measures and the reasonable and prudent alternatives associated with the 1989 and 1993 Biological Opinions." Compl. ¶ 136. As such, "EPA does not know how much take has occurred, and continues to occur, nor whether applicators are adhering to the reasonable and prudent measures and the reasonable and prudent alternatives." *Id*. "[B]ecause of EPA's failure to implement the terms and conditions of the 1989 and 1993 Biological Opinions, 'the identified action [has been] modified in a manner that causes an effect to the listed species that was not considered in the biological opinion.' 50 C.F.R. § 402.16." Compl. ¶ 137.

Defendants misrepresent the Complaint and misunderstand the pleading requirements under Rule 12(b)(6). It is simply not true that Plaintiffs fail to identify "the Biological Opinions involved," the "listed species or critical habitat designations" affected,[6] or the "new information" or "new impacts" that trigger reinitiation. Intervenor Brief, Docket No. 137 at 16; EPA Brief, Docket No. 139 at 21; *see*

---

[6]     While the Complaint does not explicitly identify the listed species or critical habitat designations affected by the 1989 and 1993 Biological Opinions, these details are provided in the biological opinions themselves, which the Court may consider in ruling on the motions to dismiss. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (explaining that in ruling on a motion to dismiss, the Court may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice"); *United States v. Ritchie*, 342 F.3d 903, 909 (9th Cir. 2003) ("Courts may take judicial notice of some public records, including the 'records and reports of administrative bodies.'").

Compl. ¶¶ 133, 135.  Plus, there is no need to identify "what new pesticide uses might be subjection to consultation," "what protections EPA may have failed to ensure were implemented," or what "terms and conditions EPA may have failed to implement."  Intervenor Brief, Docket No. 137 at 16.  Such details of EPA's actions are best fleshed out through discovery and need not be pled.  *See Twombly*, 550 U.S. at 556 (holding that plaintiffs must allege "enough fact to raise a reasonable expectation that discovery will reveal evidence" to support the legal violations).

In sum, the key inquiry is whether the Complaint alleges enough facts for the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  Because the Complaint alleges adequate facts in support of the claim that EPA failed in its duty to reinitiate consultation on the pesticides and species addressed in the 1989 and 1993 Biological Opinions, Defendants' motions to dismiss this claim must be denied.[7]

## VI.    THE COMPLAINT PLEADS FACTS DEMONSTRATING STANDING

The Federal Defendants challenge Plaintiffs' Article III standing through a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1).  Fed. R. Civ. P. 12(b)(1).  In reviewing such a motion to dismiss, the court "must accept as true all material allegations of the complaint and must construe the complaint in favor of the complaining party."  *Maya v. Centex Corp.,* 658 F.3d 1060, 1068 (9th Cir. 2011) (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)).  Furthermore, general factual allegations can suffice as the court will "presum[e] that general allegations embrace those specific facts that are necessary to support the claim."  *Id.* (quoting *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 889 (1990)).  Despite the modest burden imposed upon plaintiffs at the pleading stage, EPA demands "specific facts" and accuses Plaintiffs of offering "empty allegations."  Docket No. 139 at 19.  But as explained below, a review of the Complaint demonstrates that Plaintiffs allege sufficient facts establishing each element of standing.

---

[7]    Contrary to Intervenors' assertions, an action agency's failure to implement essential terms of a biological opinion triggers the duty to reinitiate consultation.  *See, e.g.*, *Sierra Club v. Marsh*, 816 F.2d 1376, 1388 (9th Cir. 1987) (reinitiation required when Corps refused to implement mitigation measures provided in the biological opinion); *see also Forest Guardians v. Johanns*, 450 F.3d 455, 465 (9th Cir. 2006) (reinitiation required when Forest Service failed to implement biological opinion's requirement for grazing monitoring).

**A.  The Complaint Alleges Facts Establishing Each Element Of Standing**

The facts alleged in the Complaint, which taken as true as they must at this stage, establish each of the three elements of Article III standing.  *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  Plaintiffs allege facts establishing that EPA's failure to consult on nearly 400 pesticides is causing harm to Plaintiffs' interests in approximately 200 endangered and threatened species and that this injury can be redressed by the Court.  *See generally* Compl. ¶¶ 11-13.  These allegations are sufficient.  *See Northwest Coal. v. United States EPA*, C10-1919 TSZ, 2012 U.S. Dist. LEXIS 141911 *9-15 (W.D. Wash. Oct. 1, 2012) (denying motion to dismiss for lack of standing in Section 7 pesticides case based on substantially similar allegations of injury in fact).

To begin, the Complaint sufficiently pleads an "injury in fact" by alleging that Plaintiffs' members have interests in the threatened and endangered species at issue and live in or visit areas in which the species exist that are harmed by the pesticides at issue.  Compl. ¶ 11.  Specifically, Plaintiffs' members "live, work, visit, recreate, and otherwise enjoy areas across the nation that are impacted by the pesticides at issue in this Complaint."  *Id.*  Furthermore, Plaintiffs' members "derive professional, aesthetic, spiritual, recreational, economic, and educational benefits from the endangered and threatened species that live in these areas," and "engage in wildlife observation, research, photography, restoration activities, and educational programs involving endangered and threatened species that are impacted by the pesticides at issue in this Complaint."  *Id.*

The Complaint establishes that these interests in the species are being harmed by each of the pesticides at issue through pages of detailed allegations on pesticide impacts.  *See generally* Compl. ¶¶ 81-129.  For example, "Federal agency documents or peer-reviewed journal articles document pesticide impacts on these species."  *Id.* ¶ 99.  The Complaint gives specific examples of documented pesticide impacts on particular endangered and threatened species.  *Id.* ¶¶ 104-16.  It provides examples of statements from EPA, other agencies, and scientists that particular pesticides cause impacts on these listed species.  *Id.* ¶¶ 117-29.  Referencing Exhibit A to the Complaint, Plaintiffs allege that each of the pesticides at issue harms particular endangered species:  "The pesticides listed for each endangered or threatened species in Exhibit A are those known to be harmful to the taxonomic group of that species and can be used in the state where that species lives."  *Id.* ¶ 101.

The Complaint also adequately alleges that EPA is the cause of the injuries to Plaintiffs' members. EPA has registered all the pesticides at issue in the Complaint, *id.* ¶ 130, and "[a]bsent EPA's registration and oversight of pesticides, they could not be used and would not be negatively impacting listed species." Complaint ¶ 12. Because pesticides harm these listed species and therefore can limit or outright eliminate a member's ability to observe them, "EPA's failure to ensure that its actions regarding pesticides do not impact endangered species and their habitats harms Plaintiffs' members' interests in the species." *Id.*

In addition to injury and causation, Plaintiffs must also establish redressibility. Yet EPA does not appear to seriously question this remaining element of standing, as it is beyond dispute that the Complaint adequately alleges that Plaintiffs' injuries are likely to be redressed by a favorable decision: "If EPA engaged in consultation as required, the Service would detail how the pesticides are affecting listed species and their habitats and, if necessary, would suggest reasonable and prudent alternatives to protect the species. 16 U.S.C. § 1536(a)(3). . . . The relief sought herein, EPA's compliance with the ESA, would redress Plaintiffs' injuries." *Id.* ¶¶ 12-13. Indeed, a favorable ruling by this Court would result in EPA initiating consultation with the Services for the pesticides and species detailed in this Complaint. *See Washington Toxics Coal. v. EPA*, 413 F.3d 1024, 1030 (9th Cir. 2005).

### B. No Case Requires That Plaintiffs Plead At The Level Of Specificity Demanded By EPA

The Federal Defendants argue that Plaintiffs are required to allege "specific facts" and have failed to do so. Docket No. 139 at 19. This argument is without merit and conflates the standard of review for a motion to dismiss with that of a motion for summary judgment. As explained by the Supreme Court in *Lujan v. Defenders of Wildlife*:

> At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.' . . . In response to a summary judgment motion, however, the plaintiff can no longer rest on such 'mere allegations,' but must 'set forth' by affidavit or other evidence 'specific facts,' Fed. Rule Civ. Proc. 56(e), which for purposes of the summary judgment motion will be taken to be true.

*Lujan*, 504 U.S. at 561 (internal citation omitted).

In other words, Plaintiffs have no obligation at the pleading stage to offer the "specific facts" that the Federal Defendants demand. Instead, because Federal Defendants bring a motion to dismiss, Plaintiffs' general allegations are presumed to encompass any such "specific facts." *Id*. Therefore, the Federal Defendants are wrong to insist that the Complaint identify specific members or specific areas the members live in or will visit. Such details are included in the declarations of Plaintiffs' members, as necessary at the summary judgment stage.

In arguing that Plaintiffs' allegations are insufficient, EPA relies upon *Chapman v. Pier 1 Imports Inc.*, where the Ninth Circuit found that a disabled plaintiff lacked standing to challenge alleged access barriers to a store because he failed to identify "what those barriers were and how his disability was affected by them so as to deny him the 'full and equal' access that would satisfy the injury-in-fact requirement . . . ." *Chapman v. Pier 1 Imps. Inc.*, 631 F.3d 939, 954 (9th Cir. 2011). Here, in contrast, Plaintiffs not only allege interests in specific ESA-listed species that are harmed by specific pesticides under EPA's control, they have stated their specific cognizable interests in those species – professional, aesthetic, spiritual, recreational, economic, and educational. Compl. ¶ 11**.** Moreover, Plaintiffs allege that the continued unmitigated use of these particular pesticides harms these particular species, and consequently injures Plaintiffs' interests in the species. *Id*. ¶¶ 11-12. Exhibit A to Plaintiffs' Complaint details which pesticides under EPA's control affect each listed species, and the Complaint itself alleges that Plaintiffs' members have interests in those ESA-listed species that are being impaired by EPA's failure to comply with the ESA. Compl. ¶¶ 11-13. Because these allegations establish how Plaintiffs' members are harmed by EPA's unlawful actions, *Chapman* is easily distinguishable.

Moreover, the Federal Defendants offer no authority in support of the argument that the Complaint must specifically identify "at least one of Plaintiffs' members" who has been injured by EPA's unlawful actions. Docket No. 139 at 19. To the contrary, courts in the Ninth Circuit have repeatedly rejected this argument. *Coalition for a Sustainable Delta v. FEMA*, 711 F. Supp. 2d 1152, 1164 (E.D. Cal. 2010) (holding in a Section 7 case that "it is not necessary to identify specific names of members at the pleading stage"); *Northwest Envtl. Def. Ctr. v. Brown*, 476 F. Supp. 2d 1188, 1191-92 (D. Or. 2007), rev'd on other grounds, 617 F.3d 1176 (9th Cir. 2010) (rejecting the defendant's argument that the plaintiffs' standing allegation was "generic and insufficiently concrete and

particularized to satisfy standing requirements because the allegation does not identify any specific members").

Like the plaintiffs in these cases, Plaintiffs here have no obligation to list their members' names in the Complaint nor do they have an obligation to identify the specific areas the members live in or will visit. It is entirely sufficient that Plaintiffs allege an interest in specific ESA-listed species that can be harmed by specific pesticides and that Plaintiffs' members live in or will visit areas of concern. Such allegations are sufficient at this stage because, again, these "general allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Defenders of Wildlife*, 504 U.S. at 561.

For these reasons, the allegations in the Complaint are sufficient to survive EPA's motion to dismiss, which must be denied.

## **CONCLUSION**

For the above stated reasons, the Court should deny Defendants' motions to dismiss.


Respectfully submitted this 21st day of December, 2012,


/s/ Collette L. Adkins Giese

Justin Augustine (CA Bar No. 235561)
Jaclyn Lopez (CA Bar No. 258589)
Center for Biological Diversity
351 California Street, Suite 600
San Francisco, CA 94104
Tel: (415) 436-9682
Fax: (415) 436-9683
jaugustine@biologicaldiversity.org
jlopez@biologicaldiversity.org

Collette L. Adkins Giese (MN Bar No. 035059X)*
Center for Biological Diversity
8640 Coral Sea Street Northeast
Minneapolis, MN 55449-5600
Tel: (651) 955-3821
Fax: (415) 436-9683
cadkinsgiese@biologicaldiversity.org

Michael W. Graf (CA Bar No. 136172)
Law Offices
227 Behrens Street
El Cerrito, CA 94530
Tel: (510) 525-7222
Fax: (510) 525-1208
mwgraf@aol.com

Attorneys for Plaintiffs

*Granted admission *pro hac vice*