Justin Augustine (CA Bar No. 235561)
Jaclyn Lopez (CA Bar No. 258589)
Center for Biological Diversity
351 California Street, Suite 600
San Francisco, CA 94104
Tel: (415) 436-9682
Fax: (415) 436-9683
jaugustine@biologicaldiversity.org
jlopez@biologicaldiversity.org

Collette L. Adkins Giese (MN Bar No. 035059X)*
Center for Biological Diversity
8640 Coral Sea Street Northeast
Minneapolis, MN 55449-5600
Tel: (651) 955-3821
Fax: (415) 436-9683
cadkinsgiese@biologicaldiversity.org

Michael W. Graf (CA Bar No. 136172)
Law Offices
227 Behrens Street
El Cerrito, CA 94530
Tel: (510) 525-7222
Fax: (510) 525-1208
mwgraf@aol.com

Attorneys for Plaintiffs

*Admitted *pro hac vice*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

**CENTER FOR BIOLOGICAL DIVERSITY**, a non-profit organization; and **PESTICIDE ACTION NETWORK NORTH AMERICA**, a non-profit organization;

Plaintiffs,

v.

**ENVIRONMENTAL PROTECTION AGENCY**; and **LISA JACKSON**, Administrator, U.S. EPA;

Defendants,

and

**CROPLIFE AMERICA**, et al.

Intervenor-Defendants.

Case No. CV-11-0293-JCS

**PLAINTIFFS' OPPOSITION TO SECOND RENEWED MOTION TO INTERVENE FILED BY CROPLIFE, RECKITT, AND AMERICAN CHEMISTRY COUNCIL**

**Hearing Date: March 15, 2013**
**Time: 9:30 am**
**Courtroom G – 15th Floor**

**Magistrate Judge Joseph C. Spero**

## TABLE OF CONTENTS

**INTRODUCTION** ........ 1

**ARGUMENT** ........ 2

**I. THE COURT SHOULD DENY INTERVENTION AS OF RIGHT IN THE LIABILITY PHASE** ........ 2

A. Intervenors Lack Significantly Protectable Interests In The Liability Phase and Their Ability To Protect Any Interests Will Not, As A Practical Matter, Be Impaired ........ 2

B. Intervenors Are Adequately Represented By EPA In The Liability Phase ........ 5

**II. THE COURT SHOULD DENY PERMISSIVE INTERVENTION IN THE LIABILITY PHASE** ........ 7

**III. THE COURT SHOULD LIMIT INTERVENORS' PARTICIPATION** ........ 8

**CONCLUSION** ........ 8

## TABLE OF AUTHORITIES

**Cases**

*Arakaki v. Cayetano*, 324 F.3d 1078 (9th Cir. 2003)....................................................................... 5, 6

*Center for Food Safety v. Connor*, No. C 08-00484 JSW, 2008 U.S. Dist. LEXIS 65867 (N.D. Cal. Aug. 15, 2008) ............................................................ 8

*Donnelly v. Glickman*, 159 F.3d 405 (9th Cir. 1998) ................................................................... 2, 8

*League of United Latin American Citizens v. Wilson*, 131 F.3d 1297 (9th Cir. 1997)............................... 6

*Northwest Forest Res. Council v. Glickman*, 82 F.3d 825 (9th Cir. 1996)................................................ 2

*NRDC v. Norton*, No. 1:05-CV-01207 OWW TAG, 2006 U.S. Dist. LEXIS 1363 (E.D. Cal. Jan. 5, 2006) ................................................................ 9

*NRDC v. United States EPA*, 99 F.R.D. 607 (D.D.C. 1983) ........................................................... 4

*Oregon Natural Desert Association v. Shuford*, No. 06-242-AA, 2006 U.S. Dist. LEXIS 64452 (D. Or. Sept. 8, 2006) ................................................................ 8

*Perry v. Proposition 8 Official Proponents*, 587 F.3d 947 (9th Cir. 2009)....................................... 6, 8, 9

*Sierra Club v. EPA*, 995 F.2d 1478 (9th Cir. 1993)......................................................................... 2

*Southwest Ctr. for Biological Diversity v. Berg*, 268 F.3d 810 (9th Cir. 2001) ........................................ 6

*United States v. Alisal Water Corp.*, 370 F.3d 915 (9th Cir. 2004)............................................... 2, 3, 4, 5

*United States v. City of Los Angeles*, 288 F.3d 391 (9th Cir. 2002)....................................................... 3, 4

*Wilderness Soc'y v. United States Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011)....................................... 2

**Statutes**

7 U.S.C. § 136n(b) ........................................................................................................... 3

**Rules**

Advisory Committee Notes to 1966 Amendments to Fed. R. Civ. P. 24 .................................................. 9

Fed. R. Civ. P. 24(a) ........................................................................................................ 2

Fed. R. Civ. P. 24(b) ..................................................................................................... 7, 8

**INTRODUCTION**

Plaintiffs Center for Biological Diversity and Pesticide Action Network North America oppose the second renewed motion to intervene during the liability phase filed by CropLife America, Responsible Industry for a Sound Environment, Southern Crop Production Association, Western Plant Health Association, and Mid America CropLife Association (collectively, "CropLife"), American Chemistry Council, and Reckitt Benckiser LLC (collectively "Intervenors"). *See* Docket No. 135.

In March of 2012, the Court denied without prejudice Intervenors' first renewed motion for intervention during the liability phase. Docket No. 113. Since then, the Federal Defendant, Environmental Protection Agency ("EPA"), has filed a motion to dismiss that raises all the issues raised by Intervenors in their motion to dismiss. These briefs demonstrate that Intervenors have no reasonable argument their interests are inadequately represented by EPA.

Moreover, Plaintiffs continue to oppose the pesticide registrants' intervention in the liability phase for the reasons previously explained. *See* Docket Nos. 48, 51, 67, 101 (briefs in opposition to intervention). Specifically, the Court should deny participation during the liability phase – where the Court will decide whether EPA has complied with the consultation requirement under Section 7 of the Endangered Species Act ("ESA") – because disposition of that narrow issue will not directly affect Intervenors' interests, nor will it, as a practical matter, impair or impede their ability to protect any interest. Intervenors have an interest in their pesticide registrations, but those registrations are not at issue, and will not be impacted, at the liability stage of this case. Rather, Intervenors' interests may only be affected as a result of the interim relief Plaintiffs seek (such as restricting use of pesticides in listed species' habitats during the time EPA is completing its ESA consultation duties), which Intervenors can address during the remedial phase.

Because Intervenors cannot demonstrate a significantly protectable interest that could be impaired by the outcome in the liability phase, and that any such interest is inadequately represented by EPA, Intervenors do not meet the requirements for intervention as of right in the liability phase. Furthermore, permissive intervention in the liability phase should be denied because Intervenors do not meet the requirements, and their participation would likely impede the efficient resolution of this case.

For these reasons, and as further explained below, the Court should deny the motion to intervene.

## ARGUMENT

### I. THE COURT SHOULD DENY INTERVENTION AS OF RIGHT IN THE LIABILITY PHASE

In the Ninth Circuit, courts grant invention as of right only if: (1) the application is timely; (2) the applicants have a significantly protectable interest; (3) the applicants are so situated that disposition of the action may, as a practical matter, impair or impede their ability to protect that interest; and (4) the applicants' interests are inadequately represented by the existing parties. *Northwest Forest Res. Council v. Glickman*, 82 F.3d 825, 836 (9th Cir. 1996); *see* Fed. R. Civ. P. 24(a). The applicant bears the burden of showing that all of the requirements for intervention have been met. *United States v. Alisal Water Corp.*, 370 F.3d 915, 919 (9th Cir. 2004).

#### A. Intervenors Lack Significantly Protectable Interests In The Liability Phase and Their Ability To Protect Any Interests Will Not, As A Practical Matter, Be Impaired

To gain intervention, applicants must demonstrate that they have a "significantly protectable" interest. *Wilderness Soc'y v. United States Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011). The operative two-part inquiry is "whether the interest is protectable under some law, and whether there is a relationship between the legally protected interest and the claims at issue." *Id*. at 1176 (quoting *Sierra Club v. EPA*, 995 F.2d 1478, 1484 (9th Cir. 1993)). Importantly, an applicant generally satisfies the "relationship requirement only if the resolution of the plaintiff's claims will actually affect the applicant." *Donnelly v. Glickman*, 159 F.3d 405, 410 (9th Cir. 1998) (emphasis added). Furthermore, even if a court finds that Intervenors have a significantly protectable interest, intervention is still improper unless the action will "as a practical matter impair or impede the [] ability to protect that interest." *Alisal Water Corp.*, 370 F.3d at 919.

The issue before the Court during the liability phase of this case is a narrow one: whether the EPA must consult with the United States Fish and Wildlife Service or National Marine Fisheries Service (collectively, "the Services") regarding the impacts of registered pesticides on endangered and

threatened species.[2] Intervenors argue that they "must be permitted to participate in these proceedings now, when the legality of their licenses will be determined, rather than after." Docket No. 135 at 6. However, all that is being determined in the liability phase of this case is the legality of EPA's failure to consult with wildlife agencies regarding the impacts of registered pesticides. The practical implication of such a liability finding is limited to compelling EPA to submit effects determinations to the Services. Such action by EPA will not impose restrictions on, and hence will not affect, Intervenors' interests in their pesticide registrations. Indeed, Intervenors themselves take the position that "registration licenses cannot be altered (other than voluntarily) unless EPA initiates cancellation or suspension proceedings under FIFRA." Docket No. 135 at 5. This is why a remedial phase exists for this case. Because resolution of the liability phase of the case will not result in any restrictions to the registered pesticides, a remedial phase is necessary to determine what interim limitations should be placed upon pesticide use during the consultation process.

Intervenors rely in part upon *United States v. City of Los Angeles*, 288 F.3d 391 (9th Cir. 2002), to argue that the threat of injunctive relief is sufficient to allow intervention in the liability phase of this case.[3] Docket No. 135 at 9. However, in *City of Los Angeles*, the complaint not only sought injunctive relief, it also "raise[d] factual allegations that [proposed-intervenor's] member officers committed unconstitutional acts in the line of duty," and "a judicial finding of liability" would allow the employer to "unilaterally change a collective bargaining agreement" relating to "the terms and conditions of its members' employment." *Id*. at 399-400. Thus, the merits phase of the case directly impacted the

---

[2] This Court's June 3, 2011 Order (Docket No. 81) determined that it is appropriate to divide the case into liability and remedy phases when addressing intervention.

[3] Intervenors also rely upon several district court cases where the courts granted full intervention to pesticide registrants. However, these cases are not persuasive because they did not examine whether intervention restricted to the liability phase could have been warranted. *Ctr. for Biological Diversity v. U.S. Fish & Wildlife*, No. C 11-05108 JSW (N.D. Cal. Mar. 22, 2012), "Cal. red-legged frog Order" (Docket No. 136-1) (granting CropLife's intervention in case challenging U.S. Fish and Wildlife Service's failure to complete ESA consultation without discussing whether intervention might be limited to the liability phase); *Pesticide Action Network N. Am. v. U.S. EPA*, No. C 08-01814 MHP (N.D. Cal. July 8, 2008), "PANNA Order" (Docket No. 136-3) (granting CropLife's <u>unopposed</u> intervention without any discussion of whether intervention might be limited to the liability phase); *NRDC v. United States EPA*, 99 F.R.D. 607, 609 (D.D.C. 1983) (granting intervention without addressing whether intervention might be limited to the liability phase).

proposed-intervenor's interests. Here, nothing about the liability phase will result in an impact to any registrant and instead will only impact the EPA.

Intervenors further complain of the "significant burden" of an "additional administrative process" in which they would participate if a liability ruling leads to consultations. *See* Docket No. 135 at 7. While Intervenors have invested in the "process of registering pesticides through FIFRA," Docket No. 135 at 5, the statutorily-prescribed FIFRA process will not change as a result of this lawsuit. Instead, this lawsuit seeks to impose upon EPA an existing legally required process under the ESA to ensure that impacts to listed species are analyzed in consultation with the Services. This additional process under the ESA – the initiation of consultation and any associated opportunities for public participation – will not affect Intervenors' interests in their registrations or the FIFRA registration process. Rather, any participation by Intervenors in the ESA process would be aimed at protecting their registrations from any future impacts of EPA's effects determinations, but that is too attenuated to support intervention here. Furthermore, Intervenors cannot, as a practical matter, demonstrate that their ability to protect their interests will be impaired or impeded by an "additional administrative process" that could result from this case. In fact, the very existence of the administrative process that Intervenors speak to demonstrates that they will have the means to protect any interests affected by this lawsuit. *See Alisal Water Corp.*, 370 F.3d at 921 (holding that even if the lawsuit would affect applicant's interests, those interests are not "impaired" if they have other means to protect them). In other words, if the liability phase of this case results in an ESA consultation process, nothing about this case will impair or impede Intervenors' ability to participate in that process and protect their interests during that process. Similarly, Intervenors would have the ability and means to protect their interests by filing a lawsuit that challenges any outcome of the ESA consultation process.

Intervenors also allege an interest in the "finality" of registration decisions, Docket No. 135 at 7, and point to the PANNA Order, Docket No. 136-3, in which the court determined that CropLife America "has an identifiable, significantly protectable interest in the integrity and finality of re-registration decisions" and "disposition of this action may impair or impede the applicants' ability to protect their interest in the existing registrations and the registration process." *Pesticide Action Network N. Am. v. U.S. EPA*, No. C 08-01814 MHP (N.D. Cal. July 8, 2008), "PANNA Order" (Docket No.

136-3). That case, however, had FIFRA registrations themselves at stake. Here, on the other hand, a liability ruling under the ESA will not reopen or otherwise alter the registrations or change the FIFRA registration procedures because, as already explained, a ruling in Plaintiffs' favor would speak only to the EPA's ESA obligations, not to the legality of any pesticide registration under FIFRA. Moreover, as already explained, Intervenors would have the means to protect their registrations – via the administrative process or the judicial system – should this case result in ESA consultation.

Finally, the Court has already allowed Intervenors to participate in all settlement talks, and has further explained that it will allow Intervenors to object to any settlement presented to the Court. Docket No. 82 at 6. Such participation ensures that the pesticide registrants' interests will be protected and therefore negates any basis for their intervention in the liability phase. *Alisal Water Corp.*, 370 F.3d at 921 (denying intervention "because the court has established other means by which Silverwood may protect its interests"). For these reasons, the Court should deny intervention in the liability phase.

**B. Intervenors Are Adequately Represented By EPA In The Liability Phase**

Intervenors also fail to show that their asserted interests will be inadequately represented by EPA during the liability phase. Intervenors bear the burden of demonstrating the inadequacy of representation, and when, as here, the applicant seeks the same result as one of the present parties, a presumption of adequacy arises. *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003). As the Ninth Circuit has explained:

> The "most important factor" to determine whether a proposed intervenor is adequately represented by a present party to the action is "how the [intervenor's] interest compares with the interests of existing parties." Where the party and the proposed intervenor share the same "ultimate objective," a presumption of adequacy of representation applies, and the intervenor can rebut that presumption only with a "compelling showing" to the contrary.

*Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 951 (9th Cir. 2009) (internal citations omitted) (quoting *Arakaki*, 324 F.3d at 1086); *see also League of United Latin American Citizens v. Wilson*, 131 F.3d 1297, 1305-06 (9th Cir. 1997) (denying intervention where government defendants and applicants shared the same ultimate objective in upholding the constitutionality of a ballot proposition). Intervenors cannot defeat the presumption of adequacy of the government's representation during the liability phase.

During the liability phase, Intervenors and EPA both seek the same result: to defend against Plaintiffs' legal challenge to EPA's failure to consult. Both EPA and Intervenors "share the same ultimate objective" in defending EPA from liability. *See Perry*, 587 F.3d at 951. When the parties seek the same outcome, a difference in strategy or opinion does not meet the burden of showing inadequate representation. *Id.* at 954 ("As we have held, mere[ ] differences in [litigation] strategy . . . are not enough to justify intervention as a matter of right.") During the liability phase, it makes no difference that EPA's interests in its pesticide review program are broader than Intervenors' financial interests in their pesticide registrations. Intervenors have not made the requisite showing that "because of the difference in interests, it is likely that Defendants will not advance the same arguments as Applicants." *Southwest Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 824 (9th Cir. 2001). Indeed, EPA raised <u>all</u> of the issues Intervenors raised in their motion to dismiss. Intervenors' arguments about their financial stakes in their registrations (which the EPA lacks) are only relevant during the remedial phase, which Plaintiffs did not oppose and the Court granted.[4]

At the intervention hearing held on June 3, 2011, the Court explained that it could not then determine whether EPA is adequately representing Intervenors' interests because it did not know what arguments EPA and Intervenors will make. *See, e.g.,* Docket No. 82 at 24:6-8 ("So you've got to show me the arguments that you're going to make that [EPA] can't make adequately.") Review of the briefs in support of the motions to dismiss filed by Intervenors and EPA shows that EPA is an adequate representative. The EPA raised the same issues as Intervenors in their motion to dismiss (plus one

---

[4] Using bits and pieces of arguments made by the Center in pleadings from other cases, Intervenors argue that Plaintiffs seek a "double standard" that imposes a greater burden for companies seeking intervention. Yet those cases are distinguishable from the situation here. In *Home Builders Association of Northern California v. Williams*, No. Civ. S-04-0345 LKK GGH (E.D. Cal. Mar. 26, 2004), the liability phase threatened to affect the legality of the Distinct Population Segment policy, which could affect many species listed under that policy in which the proposed environmental intervenors had interests. Docket No. 136-5 at 8. Here, in contrast, Intervenors could be impacted only by restrictions on pesticide use, which would occur during the remedial phase (and would not be impacted by a ruling on the merits). In *Yount v. Salazar*, No. 3:11-cv-08171 (D. Ariz. Apr. 12, 2012), Yount opposed intervention in all phases by the proposed environmental intervenors so their arguments logically emphasized how the case's outcome would affect the property at issue. Docket No. 136-2 at 7. Here, in contrast, Intervenors' emphasis on how the relief in this case might affect their registrations is off-target because they have already been granted intervention in the remedial phase to protect those interests.

additional argument not made by Intervenors). As such, as the Court recognized, intervention is not warranted because EPA adequately represents Intervenors' interests. *Id*. at 20:7-10: ("[I]f [the Federal Defendants] make their motion to dismiss for lack of jurisdiction, then I won't let you in because they're an adequate representative.")

In sum, Intervenors cannot establish that EPA is inadequately representing their interests. EPA and Intervenors' interests in the liability phase are aligned, and therefore, the Court must deny Intervenors' request to intervene as of right in the liability phase.

## II. THE COURT SHOULD DENY PERMISSIVE INTERVENTION IN THE LIABILITY PHASE

A court *may* allow permissive intervention under Fed. R. Civ. P. 24(b) if the applicant demonstrates that: (1) it shares a common question of law or fact with the main action; (2) its motion is timely; and (3) the court has an independent basis for jurisdiction over the applicant's claims. *Donnelly*, 159 F.3d at 412. Where an applicant has met these requirements, the court may also consider other factors in the exercise of its discretion, including the nature and extent of the intervenors' interest and whether the intervenors' interests are adequately represented by other parties. *Perry*, 587 F.3d at 955. Importantly, Rule 24(b)(3) requires that the court also "consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." *Id*. (quoting Fed. R. Civ. P. 24(b)(3)).

Intervenors have not met their burden of showing that they satisfy the requirements for permissive intervention. Intervenors misstate both the nature of Plaintiffs' claims and the requirements for permissive intervention. The lawsuit does not seek to invalidate the pesticide registrations, and the liability phase of the case will not affect the pesticide registrations. Therefore, Intervenors have not alleged a claim that shares a common question of law or fact with the liability phase. *See Center for Food Safety v. Connor*, No. C 08-00484 JSW, 2008 U.S. Dist. LEXIS 65867, *9-10 (N.D. Cal. Aug. 15, 2008) (denying permissive intervention because "no common issues of law or fact exist during the merits phase of th[e] action because the only issue in this phase is whether the federal government complied with [environmental statutes]"); *Oregon Natural Desert Association v. Shuford*, No. 06-242-AA, 2006 U.S. Dist. LEXIS 64452, *15-16 (D. Or. Sept. 8, 2006) (denying permissive intervention in the liability phase where issue was whether government complied with the law).

In addition, as set forth above, Intervenors have not shown that EPA is an inadequate representative. EPA has raised the same jurisdictional arguments made by Intervenors. If no settlement is reached, EPA can fully and adequately present arguments on summary judgment concerning whether EPA has violated Section 7(a)(2) of the ESA. Therefore, not only would participation of Intervenors in the liability phase be redundant, it would impede efficient resolution of this case, which would be prejudicial to the existing parties and waste judicial resources. Moreover, the fact that delay would likely result weighs against Intervenors' participation in this lawsuit. *Perry*, 587 F.3d at 946 (holding that it was "within the district court's discretion to find that the delay occasioned by intervention outweighed the value added by the Campaign's participation in the suit").

## III. THE COURT SHOULD LIMIT INTERVENORS' PARTICIPATION

The Court may limit an intervenor's participation "subject to appropriate conditions or restrictions responsive among other things to the requirements of the efficient conduct of the proceedings." Advisory Committee Notes to 1966 Amendments to Fed. R. Civ. P. 24; *NRDC v. Norton*, No. 1:05-CV-01207 OWW TAG, 2006 U.S. Dist. LEXIS 1363, *33-34 (E.D. Cal. Jan. 5, 2006) (explaining that the court may require the intervenor to coordinate briefing or share oral argument with the existing parties). If the Court permits CropLife, Reckitt, and American Chemistry Council to intervene in the liability phase, Plaintiffs propose that the Court limit their participation to the consolidated motion to dismiss that they filed, with any other participation subject to court approval. Such a limitation would conserve judicial resources by reducing the potential for duplicative briefing or other redundant participation.

## CONCLUSION

For the above stated reasons, the Court should deny Intervenors' second renewed motion to intervene in the liability phase of this case.

Respectfully submitted this 21st day of December, 2012,

/s/ Justin Augustine

Justin Augustine (CA Bar No. 235561)
Jaclyn Lopez (CA Bar No. 258589)
Center for Biological Diversity

351 California Street, Suite 600
San Francisco, CA 94104
Tel: (415) 436-9682
Fax: (415) 436-9683
jaugustine@biologicaldiversity.org
jlopez@biologicaldiversity.org

Collette L. Adkins Giese (MN Bar No. 035059X)*
Center for Biological Diversity
8640 Coral Sea Street Northeast
Minneapolis, MN 55449-5600
Tel: (651) 955-3821
Fax: (415) 436-9683
cadkinsgiese@biologicaldiversity.org

Michael W. Graf (CA Bar No. 136172)
Law Offices
227 Behrens Street
El Cerrito, CA 94530
Tel: (510) 525-7222
Fax: (510) 525-1208
mwgraf@aol.com

Attorneys for Plaintiffs

*Admitted *pro hac vice*

