UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, et al., | Case No. 11-cv-00293-JCS |
| Plaintiffs, | |
| v. | **ORDER GRANTING MOTION TO INTERVENE; GRANTING MOTIONS TO DISMISS AND DISMISSING COMPLAINT WITH LEAVE TO AMEND.** |
| ENVIRONMENTAL PROTECTION AGENCY, et al., | |
| Defendants. | **Dkt. Nos. 135, 137, 139.** |

## I.    INTRODUCTION

Plaintiffs Center for Biological Diversity and Pesticide Acton Network North America (hereafter "Plaintiffs") filed this action against the Environmental Protection Agency (hereafter "EPA"), alleging the EPA violated the Endangered Species Act by failing to undertake required consultations regarding the effects of 382 registered pesticides on endangered and threatened species.  Representatives of the producers of the pesticides−CropLife America, Responsible Industry for a Sound Environment, Southern Crop Production Association, Western Plant Health Association, Mid America CropLife Association, American Chemistry Council, and Reckitt Benckiser LLC−filed a Motion to Intervene as defendants under Rule 24 of the Federal Rules of Civil Procedure.  The Court previously granted intervention in the remedial phase of the case, and now GRANTS the Motion to Intervene in the liability phase.

On November 16, 2012, both the EPA and Intervenor-Defendants filed a Motion to Dismiss, contending the Complaint should be dismissed under Rule 12(b)(6) for failure to state a claim under the Endangered Species Act upon which relief may be granted.  Defendants also argue that Plaintiffs' Endangered Species Act claim is, in substance, an attack on the EPA's pesticide registrations which are governed by the Federal Insecticide, Fungicide and Rodenticide Act, and

therefore, the case should be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction.

The EPA additionally contends that Plaintiffs have not adequately pled a factual basis to support

standing.  For the reasons explained below, the Motions to Dismiss are GRANTED and the

Complaint is DISMISSED WITH LEAVE TO AMEND.[1]

## II.      BACKGROUND

### A.      <u>Statutory Background</u>

#### 1.      The Endangered Species Act ("ESA")

The ESA requires federal agencies such as the EPA to "insure that any action authorized,

funded, or carried out by such agency (hereinafter … referred to as an 'agency action') is not

likely to jeopardize the continued existence of any endangered species or threatened species or

result in the destruction or adverse modification of habitat of such species which is determined by

the Secretary … to be critical."  16 U.S.C. § 1536(a)(2).  Section 7(a)(2) of ESA requires agencies

to consult with either the United States Fish and Wildlife Service or the National Marine Fisheries

Service (hereafter "Services" or "Service") whenever an agency takes action that "may affect"

listed species or their habitats.  16 U.S.C. § 1536(a)(2); *see also* 50 C.F.R. § 402.14(a).

The regulations promulgated under the ESA define "agency action" as:

> Action means all activities or programs of any kind authorized,
> funded, or carried out, in whole or in part, by Federal agencies in the
> United States or upon the high seas.  Examples include, but are not
> limited to: (a) actions intended to conserve listed species or their
> habitat; (b) the promulgation of regulations; (c) the granting of
> licenses, contracts, leases, easements, rights-of-way, permits, or
> grants-in-aid; or (d) actions directly or indirectly causing
> modifications to the land, water, or air.

50 C.F.R. § 402.02 (emphasis added).  The Ninth Circuit has also clarified that determining

whether there has been an "agency action" requires a two-part test:

> First, we ask whether a federal agency affirmatively authorized,
> funded, or carried out the underlying activity.  Second, we determine
> whether the agency had some discretion to influence or change the
> activity for the benefit of a protected species.

*Karuk Tribe*, 681 F.3d 1006, 1021 (9th Cir. 2012) (*en banc*) ("*Karuk Tribe*").  The second prong

_____

[1]  The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).

2

1  of this test−determining whether the agency had discretion−derives from ESA's implementing

2  regulations which limit the application of ESA § 7 to "all actions in which there is discretionary

3  Federal involvement or control."  50 C.F.R. § 402.03.

4      If the agency determines that its action "may affect" endangered or threatened species or

5  critical habitat, the agency must pursue either informal or formal consultation with one of the

6  Services.  *See* 50 C.F.R. §§ 402.13-402.14.  Formal consultation is required unless the agency

7  determines, as a result of informal consultation with the Service, "that the proposed action is not

8  likely to adversely affect any listed species or critical habitat."  *Id.* § 402.13(a).  If the agency

9  action "may affect listed species or critical habitat," formal consultation is required.  *Id.* §

10  402.14(a).  If formal consultation is required, the Service prepares a Biological Opinion stating

11  whether the proposed action is likely to "jeopardize the continued existence of listed species or

12  result in the destruction or adverse modification of critical habitat."  *Id.* § 402.14(g).  Thereafter,

13  the agency must determine how to proceed with its action in light of the Service's Biological

14  Opinion.  *Id.* § 402.15.

15      An agency is required to *reinitiate* formal consultation if the agency retains discretionary

16  involvement or control over the action and one of the following four triggers occurs:

17      (a) If the amount or extent of taking specified in the incidental take
18      statement is exceeded;

19      (b) If new information reveals effects of the action that may affect
    listed species or critical habitat in a manner or to an extent not
20      previously considered;

21      (c) If the identified action is subsequently modified in a manner that
    causes an effect to the listed species or critical habitat that was not
22      considered in the biological opinion; or

23      (d) If a new species is listed or critical habitat designated that may
    be affected by the identified action.

24  50 C.F.R. § 402.16.

25      The ESA's citizen suit provision authorizes any person to "commence a civil suit on his

26  own behalf … to enjoin any person, including the United States and any other governmental

27  instrumentality or agency … who is alleged to be in violation of any provision of this chapter or

28  regulation issued under the authority thereof."  16 U.S.C. § 1540(g)(1)(A).  The citizen suit

3

1    provision also provides that "*district courts* shall have jurisdiction ... to enforce any such provision

2    or regulation."  *Id.* § 1540(g) (emphasis added).

3                    **2.      The Federal Insecticide, Fungicide and Rodenticide Act ("FIFRA")**

4            FIFRA establishes a regulatory scheme for the distribution, sale and use of pesticides.

5    7 U.S.C. §§ 136 *et seq.*  Under FIFRA, a pesticide may not be distributed or sold in the United

6    States unless it has been registered by the EPA.  7 U.S.C. § 136a(a).  The EPA registers a pesticide

7    upon determining, *inter alia*, that "when used in accordance with widespread and commonly

8    recognized practice it will not generally cause unreasonable adverse effects on the environment."

9    *Id.* § 136a(c)(5).  FIFRA defines "unreasonable adverse effects on the environment" as "(1) any

10   unreasonable risk to man or the environment, taking into account the economic, social, and

11   environmental costs and benefits of the use of any pesticide, or (2) a human dietary risk from

12   residues that result from a use of a pesticide."  *Id.* § 136(z)(bb).

13           The EPA undertakes a variety of registration actions under FIFRA.  For instance, the EPA

14   may approve an application for a new chemical or active ingredient which is not contained in any

15   other registered pesticide product, or approve a new use application for a previously registered

16   pesticide.  *See* 7 U.S.C. § 136a(c)(5), (7).  The EPA is also required to review each pesticide

17   registration every fifteen years "to ensure that each pesticide registration continues to satisfy the

18   FIFRA standard for registration."  40 C.F.R. § 155.40(a).  In 1988, Congress amended FIFRA to

19   require the EPA to reregister pesticides containing any active ingredients in a pesticide registered

20   before November 1, 1984.  *See* 7 U.S.C. § 136a-1(a).  The five-phase reregistration process

21   culminates in the issuance of a Reregistration Eligibility Determination ("RED") after the agency

22   determines whether the pesticide meets the registration standard.  *Id.* § 135a-1(g)(2)(C).

23           The regulations issued under FIFRA provide that the EPA "may evaluate a pesticide use"

24   at its "own initiative, or at the suggestion of any interested person."  40 C.F.R. § 154.10.  The EPA

25   "may conduct a Special Review of a pesticide use if he determines, based on a validated test or

26   other significant evidence, that the use of the pesticide … [m]ay pose a risk to the continued

27   existence of any endangered or threatened species, … [m]ay result in the destruction or other

28   adverse modification of any [critical] habitat," or "[m]ay otherwise pose a risk to humans or to the

United States District Court
Northern District of California

4

environment which is of sufficient magnitude to merit a determination whether the use of the pesticide product offers offsetting social, economic, and environmental benefits that justify initial or continued registration."  40 C.F.R. § 154.7

Judicial review over the EPA's registration actions are governed by FIFRA § 16.  *See* 7 U.S.C. § 136n (a)-(b).  Section 16 divides jurisdiction over the appeals of the EPA's registration actions among district courts and the court of appeals.  *Id*.  To determine which court has jurisdiction over the appeal, one must determine whether the agency took action following a public hearing.  *Id*.  Under FIFRA § 16(a), the district court has jurisdiction to review certain agency actions *not following* a hearing:

> Except as otherwise provided in this subchapter, the refusal of the Administrator to cancel or suspend a registration or to change a classification *not following a hearing* and other final actions of the Administrator not committed to the discretion of the Administrator by law are judicially reviewable by the district courts of the United States.

7 U.S.C. § 136n (a) (emphasis added).  Under FIFRA § 16(b), the court of appeals has jurisdiction to review orders of the EPA *following* a public hearing:

> In the case of actual controversy as to the validity of any order issued by the Administrator *following a public hearing*, any person who will be adversely affected by such order and who had been a party to the proceedings may obtain judicial review by filing in the United States court of appeals, …. within 60 days after the entry of such order, a petition praying that the order be set aside in whole or in part…. Upon the filing of such petition the court shall have exclusive jurisdiction to affirm or set aside the order complained of in whole or in part.

7 U.S.C. 136n (b) (emphasis added).  The Ninth Circuit has held that the EPA makes a decision following a "public hearing," and therefore within the scope of FIFRA § 16(b), when it provides notice in the Federal Register and an opportunity for public comment.  *See United Farm Workers v. Environmental Protection Agency*, 592 F.3d 1080 (9th Cir. 2010).

### B.    Factual Allegations

Plaintiffs filed the instant Complaint asserting a single ESA claim against the EPA for its alleged failure to initiate or reinitiate consultation with the Services regarding 382 currently

United States District Court
Northern District of California

1   registered active pesticide ingredients.  Complaint ("Compl.") ¶¶ 139-44.  Plaintiffs have not

2   asserted any FIFRA claims in their complaint.  *See id.* ¶ 14 ("Here, Plaintiffs bring claims only

3   under the ESA.").  Instead, Plaintiffs contend that "EPA retains ongoing discretionary control and

4   involvement over all of these pesticides, which constitutes 'agency action' subject to consultation

5   under Section 7(a)(2) of the ESA." *Id.* ¶ 141.  Plaintiffs identify 382 active pesticide ingredients

6   "currently registered for use by EPA" that "may affect" listed species and critical habitat.  *Id.* ¶¶

7   140, 142.  Plaintiffs attach a table to the Complaint identifying the threatened or endangered

8   species affected by each pesticide.  *Id.* ¶ 93 and Ex. A.  Plaintiffs allege that because the EPA's

9   "ongoing agency actions related to the pesticides … may affect listed species and critical habitat,

10  and because the standards for reinitiating consultation exist, EPA is required to initiate and

11  reinitiate consultation with the Service."  *Id.* ¶ 142.

12          Plaintiffs also allege that the EPA has "failed to reinitiate consultation for species and

13  pesticides addressed in consultations from 1989 to 1993," and that for those species covered in the

14  1989 and 1993 Biological Opinions, the EPA is not meeting its Section 7 "no jeopardy"

15  obligations because the EPA is not properly implementing the terms and conditions of the

16  Biological Opinions.  Compl. ¶ 133.  Plaintiffs allege that the EPA was required to reinitiate

17  consultation with regard to the species addressed in the 1989 and 1993 Biological Opinions

18  because it has discretionary control and involvement over the registered pesticides, and triggering

19  factors discussed in the regulations have occurred.  *Id.* ¶ 134; *see also* 50 C.F.R. § 402.16.  For

20  instance, Plaintiffs allege: (1) that the EPA has failed to ensure the implementation of the

21  measures in the 1989 and 1993 Biological Opinions and therefore cannot determine whether "the

22  amount or extent of taking specified in the incidental take statement is exceeded," § 402.16(a),

23  Compl. ¶ 136; (2) that "new information exists regarding the impacts of pesticides on wildlife and

24  plants" that is contained in the "EPA's own documents," Compl. ¶ 135, *see* § 402.16(b); and, (3)

25  that "because of EPA's failure to implement the terms and conditions of the 1989 and 1993

26  Biological Opinions, 'the identified action [has been] modified in a manner that causes an effect to

27  the listed species or critical habitat that was not considered in the biological opinion," Compl. ¶

28  136 (quoting § 402.16(c)).  Finally, Plaintiffs allege that "because the terms and conditions of the

1989 and 1993 Biological Opinions are not being enforced, or even monitored, EPA is failing to ensure that its authorizations of pesticide use are not jeopardizing ESA listed species."  Compl. ¶ 138.

### C.   Procedural History

On March 15, 2011, the Court entered a stay of this litigation pursuant to a joint stipulation filed by the EPA and Plaintiffs.  Since then, various producers of the pesticides filed several motions to intervene in the litigation.  *See* Dkt. Nos. 16, 40, 53, 58.  On June 3, 2011, the Court granted the motions to intervene as to the remedial phase of the case, and denied without prejudice the motions to intervene as to the liability phase of the case.[2]  *See* Dkt. No. 81.  The producers of the pesticides subsequently filed a motion to dismiss, a motion to intervene (in the liability phase of the litigation), and a motion to lift the stay.  *See* Dkt. Nos. 94-95, 98.  While the motions to dismiss and intervene were denied without prejudice, *see* Docket Number 133, the motion to lift stay was granted in part on November 1, 2012.

On November 16, 2012, the applicants for intervention filed a renewed Motion to Intervene in the liability phase of this case.  Dkt. No. 135.  The EPA and the applicants each filed a Motion to Dismiss.  Dkt. Nos. 137, 139.  The pending Motion to Intervene and the Motions to Dismiss will be address separately.

## III.   MOTION TO INTERVENE

### A.   Legal Standard

Under Rule 24(a)(2) of the Federal Rules of Civil Procedure, an applicant may intervene in a court proceeding as of right if the applicant "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest."  Fed.R.Civ.P. 24(a).  There is no right to intervene, however, if "existing parties adequately represent that interest."  *Id.*

---

[2] The Court denied the motion to intervene without prejudice as to the liability portion for the motions filed by Crop Life (including Mid America CropLife Association), Reckitt Benckiser and the American Chemistry Council to the extent they represent pesticide registrants.  *See* Dkt. No. 81. The Court denied the motions to intervene filed by the American Farm Bureau and the American Chemistry Council to the extent those parties represent members which are not pesticide registrants.  *See id.*

United States District Court
Northern District of California

The Ninth Circuit applies a four-part test to determine whether a party may intervene as of right:

> (1) the motion must be timely;
>
> (2) the applicant must claim a "significantly protectable" interest relating to the property or transaction which is the subject of the action;
>
> (3) the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest; and
>
> (4) the applicant's interest must be inadequately represented by the parties to the action.

*Wilderness Society v. United States Forest Service*, 630 F.3d 1173, 1177 (9th Cir. 2011) (*en banc*). "While an applicant seeking to intervene has the burden to show that these four elements are met, the requirements are broadly interpreted in favor of the intervenor." *Citizens for Balanced Use v. Montana Wilderness*, 647 F.3d 893, 897 (9th Cir. 2011).

Even if there is no intervention as of right, a court may, in its discretion, grant permissive intervention under Rule 24(b)(1)(B) if "the applicant for intervention shows (1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common." *United States v. City of Los Angeles, Cal.*, 288 F.3d 391, 403 (9th Cir. 2002) (citation omitted).

**B.      Discussion**

Plaintiffs do not contest that the applicants for intervention have submitted their motions timely. Rather, Plaintiffs challenge the applicants' assertion that they have protectable interests in the liability phase of this action, that disposition of this action will impair those interests, and that they are not adequately represented through the EPA's defense of this action. The applicants are owners of the pesticide registrations, and thus have property and financial interests in the registrations. "It is generally enough that the interest is protectable under some law, and that there is a relationship between the legally protected interest and the claims at issue." *Sierra Club v. EPA*, 995 F.2d 1478, 1484 (9th Cir. 1993). Plaintiffs allege that the EPA failed to undergo required consultations before issuing the pesticide registrations. Because Plaintiffs' claim against the EPA may affect the pesticide registrations, the Court finds that the applicants have a protectable interest in the subject of this action, which may, as a practical matter, be impaired by

8

1   this litigation.

2          Whether the applicants' interests are adequately represented by the EPA presents a closer

3   question.  "The burden of showing inadequacy of representation is 'minimal' and satisfied if he

4   applicant can demonstrate that representation of its interests 'may be' inadequate." *Citizens for*

5   *Balanced Use*, 647 F.3d at 898 (citing *Arakaki v. Cayetano*, 324 F.3d 1078, 1086 (9th Cir. 2003)).

6   "The 'most important factor' to determine whether a proposed intervenor is adequately

7   represented by a present party to the action is 'how the [intervenor's] interest compares with the

8   interests of existing parties." *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 950 (9th

9   Cir. 2009) (citing *Arakaki*, 324 F.3d at 1086).  "Where the party and the proposed intervenor share

10  the same 'ultimate objective,' a presumption of adequacy of representation applies, and the

11  intervenor can rebut that presumption only with a 'compelling showing' to the contrary." *Perry*,

12  587 F.3d at 951 (citing *Arakaki*, 324 F.3d at 1086); *see also League of United Latin Am. Citizens*

13  *v. Wilson*, 131 F.3d 1297 (9th Cir. 1997) (presumption of adequacy arose because a public interest

14  group and defendant had the same ultimate objective to defend the constitutionality of a state law).

15  In evaluating the adequacy of representation, courts in the Ninth Circuit consider three factors:

16  "(1) whether the interest of a present party is such that it will undoubtedly make all of a proposed

17  intervenor's arguments; (2) whether the present party is capable and willing to make such

18  arguments; and (3) whether a proposed intervenor would offer any necessary elements to the

19  proceeding that other parties would neglect." *Citizens for Balanced Use*, 647 F.3d at 898 (citing

20  *Arakaki*, 324 F.3d at 1086).

21          The applicants argue that they do not share the same ultimate objective as the EPA.  They

22  contend that while the EPA is concerned with defending itself from liability, the applicants'

23  "objective is to ensure that their licenses are final and not subject to further process, regardless of

24  the EPA's liability."  Reply at 8:22-23.  The applicants also argue that their interests "necessarily

25  differ" from those of the EPA.  They contend that the EPA has broader, regulatory interests in the

26  FIFRA process, while the applicants−the *regulated*−have specific property interests in maintaining

27  the validity of their pesticide registrations.  They note as an example the fact that the EPA engaged

28  in settlement negotiations with the Plaintiffs, which the applicants would never have agreed to.

United States District Court
Northern District of California

1    They argue these differences demonstrate that the EPA's representation of the applicants' interests

2    "may be" inadequate.  *Citizens for Balanced Use*, 647 F.3d at 898.

3            The applicants have distinct property and financial interests in the pesticide registrations

4    which are not shared by the EPA.  "Inadequate representation is most likely to be found when the

5    applicant asserts a personal interest that does not belong to the general public*." Forest*

6    *Conservation Council v. U.S. Forest Serv.*, 66 F.3d 1489, 1499 (9th Cir. 1995), *abrogated by*

7    *Wilderness Soc. v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011) (quoting 3B Moore's Federal

8    Practice, ¶ 24.07[4] at 24-78 (2d ed. 1995)).  In this case, however, the Court knows how the

9    applicants will represent their property interests.  Notably, the applicants' Motion to Dismiss does

10   not contain any legal argument that the EPA's Motion fails to include.  Indeed, the applicants have

11   identified no argument that the EPA has been unwilling to assert in defense of this matter−which

12   the applicants would assert.  In the liability phase of these proceedings, the applicants and the EPA

13   share the same ultimate objective−to uphold the validity of the pesticide registrations as a matter

14   of law.  By failing to identify one argument which the EPA will not make, the applicants have

15   failed to rebut the presumption of adequate representation.  *Perry*, 587 F.3d at 951 (addressing the

16   three *Arakaki* factors in terms of rebutting the presumption of adequate representation).

17           Nevertheless, the Court will grant permissive intervention under Rule 24(b)(1)(B).  The

18   applicants meet the necessary requirements: (1) there is no jurisdictional bar to their defense; (2)

19   the motions to intervene were timely when initially filed; and (3) there is a common question of

20   law and fact regarding the pesticide registrations which form the basis of Plaintiffs' ESA claim

21   and the intervenors' arguments in defense to the EPA's liability as owners of these pesticide

22   registrations.  *See* Fed.R.Civ.P. 24(b)(1)(B).  Other courts in this district have allowed intervention

23   in analogous circumstances.[3]  The Motion to Intervene is therefore GRANTED.

24   //

25

26           [3] *See* Declaration of William K. Rawson in Support of Renewed Motion of CropLife
     America, et al. to Intervene as Defendants, Exhs. A (Judge White's Order Granting Motion to
27   Intervene in *Center for Biological Diversity v. U.S. Fish & Wildlife*, Case No. 11-cv-5108, Dkt.
     No. 27), B (Judge Patel's Order Granting Motions to Intervene in *Pesticide Action Network North*
28   *America v. U.S. Environmental Protection Agency*, Case No. 08-cv-1814, Dkt. No. 43).

United States District Court
Northern District of California

1    **IV.    MOTIONS TO DISMISS**

2        **A.    Legal Standard**

3            **1.    Rule 12(b)(6)**

4    A complaint may be dismissed for failure to state a claim for which relief can be granted

5    under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  Fed. R. Civ. P. 12(b)(6).  "The

6    purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the

7    complaint." *N. Star. Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  In ruling on

8    a motion to dismiss under Rule 12(b)(6), the Court takes "all allegations of material fact as true

9    and construe(s) them in the lights most favorable to the non-moving party." *Parks Sch. of Bus. v.*

10   *Symington*, 51 F.3d 1480, 1484 (9th Cir. 1990).

11   Generally, the plaintiff's burden at the pleading stage is relatively light.  Rule 8(a) requires

12   a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R.

13   Civ. P. 8(a)(2).  The complaint need not contain "detailed factual allegations," but must allege

14   facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S.

15   662, 663 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).  The factual

16   allegations must be definite enough to "raise a right to relief above the speculative level on the

17   assumption that all of the complaint's allegations are true." *Twombly*, 550 U.S. at 545.  "[T]he

18   tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals

19   of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at

20   663.

21           **2.    Rule 12(b)(1)**

22   A motion to dismiss for lack of jurisdiction is brought under Rule 12(b)(1) of the Federal

23   Rules of Civil Procedure.  A claim may be challenged under Rule 12(b)(1) both facially and

24   factually. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  Where, as here, a

25   facial challenge is brought, "the challenger asserts that the allegations contained in a complaint are

26   insufficient on their face to invoke federal jurisdiction." *Id.*  "Whether subject matter jurisdiction

27   exists therefore does not depend on resolution of a factual dispute, but rather on the allegations in

28   [the] complaint." *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004).  When reviewing a Rule

United States District Court
Northern District of California

11

12(b)(1) motion to dismiss for lack of jurisdiction, all allegations are assumed to be true and all reasonable inferences are drawn in plaintiff's favor. *Id.* The plaintiff bears the burden of establishing jurisdiction by preponderance of the evidence. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

### B.   Discussion

#### 1.   Failure to Consult − Agency Action

Defendants challenge the adequacy of the ESA claim on the basis that Plaintiffs have failed to allege the EPA took any "agency action" to trigger Section 7's consultation requirement. Section 7 of the ESA defines agency action as "any action authorized, funded, or carried out by [a federal] agency." 16 U.S.C. § 1536(a)(2). The ESA regulations provide that "action means all activities or programs of any kind … by the Federal agencies in the United States," including the "granting of licenses" or "actions directly or indirectly causing modifications to the land, water, or air." 50 C.F.R. § 402.02. The Ninth Circuit has stated that agency action has a "broad definition" in the ESA "in conformance with Congress's clear intent." *Karuk Tribe*, 681 F.3d at 1020 (quoting *Pacific Rivers Council v. Thomas*, 30 F.3d 1050, 1054-55 (9th Cir. 2004) ("*Pacific Rivers*")).

In *Karuk Tribe*, the Ninth Circuit, sitting *en banc*, clarified that determining whether there has been an "agency action" requires a two-part test:

> Our "agency action" inquiry is two-fold. First, we ask whether a federal agency affirmatively authorized, funded, or carried out the underlying activity. Second, we determine whether the agency had some discretion to influence or change the activity for the benefit of a protected species.

*Karuk Tribe*, 681 F.3d at 1021. The second prong of this test−determining whether the agency had discretion−derives from ESA's implementing regulations which limit the application of ESA § 7 to "all actions in which there is discretionary Federal involvement or control." 50 C.F.R. § 402.03. "The Supreme Court explained that this limitation harmonizes the ESA consultation requirement with other statutory mandates that leave an agency no discretion to consider the protection of listed species." *Karuk Tribe*, 681 F.3d at 1020-21 (citing *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 665-55 (2007)).

United States District Court
Northern District of California

In the Complaint, Plaintiffs provide a list of pesticides "currently registered for use by EPA." Compl. ¶ 130; *see also* Exh. A (listing chemical groups subject to this case and species that may be affected by each chemical group). Notably, Plaintiffs do not allege that the EPA's act of registering the pesticides constitutes agency action. Rather, Plaintiffs allege that "EPA retains discretionary control and involvement over all … pesticides, which constitutes 'agency actions' subject to consultation under Section 7(a)(2) of the ESA." Compl. ¶¶ 131, 141. Plaintiffs explain:

> For example, EPA *may* change the use classification of any pesticide when necessary to prevent unreasonable adverse effects on the environment. 7 U.S.C. § 136a(d)(2). Also, EPA *may* determine that additional data is required to maintain an existing pesticide registration. 7 U.S.C. § 136a(c)(2)(B)(i). Moreover, FIFRA grants EPA *authority to* change, cancel, restrict, or immediately suspend registered pesticide labeling, or particular uses. 7 U.S.C. § 136d.

Compl. ¶ 132 (emphasis added). Allegations that the EPA "may" undertake a variety of actions with regard to the pesticide registrations and has "authority" to do so are allegations that the EPA has "discretionary Federal involvement or control" over pesticide registrations. *Id.*; 50 C.F.R. § 402.03. However, such allegations do not establish that the EPA ever "*affirmatively* authorized, funded, or carried out the underlying activity"−the first prong of the 'agency action' test. *Karuk Tribe*, 681 F.3d at 1021 (emphasis added). Plaintiffs do not mention any "affirmative act"−such act of registering the pesticides; changing the classification; requiring additional data; or cancelling, restricting or suspending pesticide labeling or uses−at any point in the Complaint.

Instead, Plaintiffs argue that they have sufficiently pled "agency action" because EPA oversight of pesticide registrations constitutes "ongoing" agency action. Specifically, Plaintiffs argue that the "EPA has affirmatively authorized, funded and carried out the registration of 382 pesticides identified in the Complaint, and EPA has discretion to influence or change the use of these registered pesticides for the benefit of the protected species identified in the Complaint." Opp. at 10:9-11. Plaintiffs cite a number of Ninth Circuit cases which recognize "ongoing" agency action as a sufficient basis to trigger Section 7's consultation requirement. For instance, in *Pacific Rivers*, the Ninth Circuit held that the Forest Service's Land Resource Management Plans ("LRMPs")−documents which established standards and guidelines governing projects in certain forest areas for a period of fifteen years−"constitute continuing agency action requiring

13

United States District Court
Northern District of California

consultation under § 7(a)(2) of the ESA." *Pacific Rivers*, 30 F.3d at 1051-52. The court rejected

the Forest Service's argument that the LRMPs did not constitute ongoing agency action

"throughout their duration, but only when they were adopted in 1990 or if they are revised or

amended in the future." *Id*. at 1053. Instead, the court found that because the LRMPs have

"ongoing and long-lasting effect even after adoption, … the LRMPs represent ongoing agency

action." *Id*. Similarly, in *Washington Toxics*, a case substantially similar to the case at bar, the

Ninth Circuit reaffirmed the applicability of "ongoing" agency action when it stated that

"[b]ecause EPA has continuing authority over pesticide regulation, it has a continuing obligation

to follow the requirements of the ESA." *Washington Toxics Coalition v. Environmental*

*Protection Agency*, 413 F.3d 1024, 1033 (9th Cir. 2005) ("*Washington Toxics*") (affirming

summary judgment in favor of environmental groups that challenged the EPA's failure to consult

with regard to several pesticide registrations).

Although *Pacific Rivers*, *Washington Toxics* and other Ninth Circuit cases[4] discuss

"ongoing" agency action, the Ninth Circuit altered the "agency action" analysis while sitting *en*

*banc*.[5] In *Karuk Tribe*, the court held that "[a]n agency must consult under Section 7 *only* when it

makes an 'affirmative' act or authorization." *Karuk Tribe*, 681 F.3d at 1021 (emphasis added).

The court provided examples of affirmative agency actions such as the "renewal" of existing

contracts, the "creation" of management strategies, and the "issuance" of permits. *Id*. Thus, to the

extent "ongoing" agency action is based upon regulatory authority or discretionary control, such

ongoing agency action does not trigger Section 7's consultation requirement. This is not to say,

---

[4] *See Environmental Protection Information Center v. Simpson Timber Co.*, 255 F.3d 1071, 1083 (9th Cir. 2001); *Sierra Club v. Babbitt*, 65 F.3d 1502, 1508-09 (9th Cir. 1995); *Turtle Island Restoration Network v. Nat'l Marine Fisheries Serv.*, 340 F.3d 969, 977 (9th Cir. 2003); *Western Watersheds Project v. Matejo*, 468 F.3d 1099, 1109 (9th Cir. 2006); *Wild Fish Conservancy v. Salazar*, 628 F.3d 513, 518 (9th Cir. 2010).

[5] The court's decision in *Karuk Tribe* was preceded by two previous Ninth Circuit cases which also held that an agency must "affirmatively" act to trigger Section 7's consultation requirement. *See Western Watersheds Project v. Matejko*, 468 F.3d 1099, 1102 (9th Cir. 2006) ("We conclude that the duty to consult is triggered by affirmative actions; because there was no such 'action' here, there was no corresponding duty to consult."); *California Sportfishing Protection Alliance v. FERC*, 472 F.3d 593 (9th Cir. 2006) ("The ESA and the applicable regulations, however, mandate consultation with NMFS only before an agency takes some affirmative agency action, such as issuing a license.").

1    however, that an "affirmative" agency act cannot be ongoing.  The "ongoing construction and

2    operation of a dam," for example, is sufficient to trigger consulting obligations because the

3    operation of a dam is an affirmative act.  *Id.* (citing *Tennessee Valley Authority v. Hill*, 437 U.S.

4    153, 173-74 (1978)).

5        Plaintiffs argue that *Karuk Tribe* does not address whether an agency's continuing

6    regulatory authority constitutes ongoing agency action.  To the contrary, the court clearly stated

7    that "[w]here private activity is proceeding pursuant to a vested right or to a previously issued

8    license, an agency has no duty to consult under Section 7 if it takes no further affirmative action

9    regarding the activity."  *Id.*; *see also California Sportfishing*, 472 F.3d at 595, 599 (the agency's

10   grant of a license constituted an agency action, but the agency's continuing discretion to "modify

11   the license to reflect changing environmental concerns" did not).  Moreover, although *Karuk Tribe*

12   cites *Pacific Rivers* and *Washington Toxics* with approval, these cases were not cited for the

13   proposition which Plaintiffs seek to establish here.[6]  Thus, to the extent prior cases held that

14   ongoing control over a previous agency action is sufficient to trigger Section 7's consultation

15   requirement without any further affirmative act, those holdings have been implicitly overruled in

16   *Karuk Tribe*.

17       In the Complaint, Plaintiffs assert one ESA claim which encompasses the EPA's failure to

18   initiate consultation with the Services regarding the registration of 382 pesticides.  However,

19   Plaintiffs have not alleged, nor can they allege, any single affirmative act which corresponds to the

20   registration of all 382 pesticides.  Registration or re-registration of each of the 382 pesticides−or

21   some other affirmative act by the EPA−triggers the EPA's requirement to consult with the

22   Services regarding each individual pesticide.  Mere discretionary control and involvement will not

23   suffice.  Plaintiffs must allege a separate ESA claim corresponding to an affirmative act with

24   respect to each of the 382 pesticides, and will be given an opportunity to do so.  As discussed

25   below, this requirement has far-reaching implications with regard to Plaintiffs' allegations of

26

27       [6] *Karuk Tribe* cites *Pacific Rivers* for the proposition that "agency action" should be
     construed broadly, and *Washington Toxics* for the proposition that "federal agencies' authorization

28   of private activities, such as the approval and registration of pesticides" may constitute agency
     action.  *Karuk Tribe*, 681 F.3d at 1020-21.

United States District Court
Northern District of California

standing and subject matter jurisdiction.

### 2.      Failure to Reinitiate Consultation

The Court must separately address Plaintiffs' allegation that the EPA failed to *reinitiate* consultation with the Service regarding the species and pesticides addressed in the EPA's 1989 and 1993 Biological Opinions.  An agency is required to reinitiate formal consultation if the agency retains discretionary involvement or control over an agency action and one of the following four triggers occurs:

> (a) If the amount or extent of taking specified in the incidental take statement is exceeded;
>
> (b) If new information reveals effects of the action that may affect listed species or critical habitat in a manner or to an extent not previously considered;
>
> (c) If the identified action is subsequently modified in a manner that causes an effect to the listed species or critical habitat that was not considered in the biological opinion; or
>
> (d) If a new species is listed or critical habitat designated that may be affected by the identified action.

50 C.F.R. § 402.16.

The first flaw in Plaintiffs' pleadings relating to the EPA's failure to reinitiate consultation is that they are too general.  To state a claim for failure to reinitiate, Plaintiffs must plead, for a specific pesticide, that the agency had prior consultation, and facts showing that one or more of the triggering events occurred.  Plaintiffs simply recite the language in 50 C.F.R. § 402.16 by alleging: (1) that the EPA has failed to ensure the implementation of the measures in the 1989 and 1993 Biological Opinions and therefore cannot determine whether "the amount or extent of taking specified in the incidental take statement is exceeded," § 402.16(a), Compl. ¶ 136; (2) that "new information exists regarding the impacts of pesticides on wildlife and plants" that is contained in the "EPA's own documents," Compl. ¶ 135, *see* § 402.16(b); and, (3) that "because of EPA's failure to implement the terms and conditions of the 1989 and 1993 Biological Opinions, 'the identified action [has been] modified in a manner that causes an effect to the listed species or critical habitat that was not considered in the biological opinion," Compl. ¶ 136 (quoting §

United States District Court
Northern District of California

1   402.16(c)).  Such conclusory allegations are insufficient under the federal pleading standards

2   described in *Iqbal* and *Twombly*.

3          Moreover, Plaintiffs misinterpret how the § 402.16 factors would require the EPA to

4   reinitiate consultation.  For instance, Plaintiffs allege that because the EPA failed to implement the

5   required measures, the EPA cannot know whether the amount of take identified in the incidental

6   take statement has been exceeded.  Compl. ¶ 136.  Plaintiffs do not allege, however, that the

7   amount of take specified in the incidental take statement has in fact been exceeded, which is

8   required under § 402.16(a).  Similarly, Plaintiffs' allegation that the "EPA is failing to ensure that

9   its authorization of pesticide use are not jeopardizing ESA listed species," Compl. ¶ 138, is not an

10  allegation that "a new species is listed or critical habitat designated that may be affected by the

11  identified action," *id.* § 402.16(d).  If Plaintiffs file an amended complaint, they must allege with

12  greater specificity the facts giving rise to the EPA's duty to reinitiate consultation regarding each

13  of the pesticides and species addressed in the 1989 and 1993 Biological Opinions, and must

14  address the factors as written in 50 C.F.R. § 402.16.

15              **3.       Standing**

16         The EPA challenges Plaintiffs' constitutional standing to assert their ESA claim.  Derived

17  from Article III's cases-or-controversy requirement, the Supreme Court has long held that a

18  plaintiff in federal court must affirmatively demonstrate an "irreducible constitutional minimum"

19  of (1) an injury in fact, (2) a causal connection between that injury and the challenged conduct,

20  and (2) that the injury will be redressed with a favorable decision.  *Lujan*, 504 U.S. at 560.  In

21  addition, a "plaintiff must demonstrate standing 'for each claim he seeks to press' and for 'each

22  form of relief sought.'"  *Oregon v. Legal Services Corp.*, 552 F.3d 965, 969 (9th Cir. 2009)

23  (quoting *Daimler Chrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (holding that the exercise of

24  supplemental jurisdiction over a state law claim does not relieve the plaintiff of the burden of

25  demonstrating constitutional standing for that state law claim)).

26         Defendants challenge Plaintiffs' failure to allege facts supporting standing for each

27  individual pesticide at issue in this case.  Plaintiffs do not respond to this argument.  Rather,

28  Plaintiffs contend they plead sufficient facts to establish each element of standing.  In the

United States District Court
Northern District of California

Complaint, Plaintiffs allege that their members' interests in living, working, visiting, recreating and otherwise enjoying "areas across the nation" are injured "by EPA's registration, authorization and oversight of pesticides known to be harmful to endangered and threatened species and their habitats." Compl. ¶¶ 11-12. Plaintiffs allege a causal connection between the "EPA's failure to ensure that its actions regarding pesticides do not impact endangered species and their habitats" and the harm to "Plaintiffs' members' interests in the species." *See id.* ¶ 12. Plaintiffs further allege that resolution of this case in their favor would redress their injuries because the EPA would be required to comply with ESA's Section 7 consultation requirement. *Id.* ¶ 13. Plaintiffs do not, however, allege any facts in connection to Plaintiffs' or the members' injury with regard to their interests in any particular species or geographical area affected by any particular pesticide.

Plaintiffs must bring a separate ESA claim in connection with the EPA's affirmative act with regard to each individual pesticide in order to invoke Section 7's consultation requirement. It follows that Plaintiffs must also allege facts supporting standing for each individual claim. *Oregon v. Legal Services Corp.*, 552 F.3d at 969 ("A plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief sought.") (internal quotations omitted); *Allen v. Wright*, 468 U.S. 737, 752 (1984) ("the standing inquiry requires careful judicial examination of a complaint's allegations to ascertain whether the particular plaintiff is entitled to an adjudication of the *particular claims* asserted") (emphasis added). Plaintiffs have failed to do so.

The Supreme Court's decision in *Lewis v. Casey*, 518 U.S. 343 (1996), illustrates the point. In *Lewis*, the district court found that the Arizona Department of Corrections ("ADOC") failed to meet the constitutional minimum of providing prisoners access to the courts through use of a law library, and therefore ordered a system-wide injunction mandating detailed, system-wide changes. *Id.* at 347-48. This was a class action brought by twenty-two representative class plaintiffs who were inmates of various prisons operated by ADOC. *Id.* at 346. The Ninth Circuit affirmed, but the Supreme Court reversed because the district court failed to support the broad injunction with minimal factual findings of standing. The district court found only one actual injury on part of one named plaintiff who was illiterate and whose case was dismissed due to the prison's lack of special assistance for his illiteracy. *Id.* at 358. The Supreme Court held that this one injury did

18

not support the broad injunction ordered by the district court, which included several mandates beyond the scope of assisting illiterate inmates. *Id.* at 357. The Court explained:

> [S]tanding is not dispensed in gross. If the right to complain of one administrative deficiency automatically conferred the right to complain of all administrative deficiencies, any citizen aggrieved in one respect could bring the whole structure of state administration before the courts for review.

*Id.* at 358 n. 6. "The remedy must of course be limited to the inadequacy that produced the injury in fact that the plaintiff has established." *Id.* at 358.

Here, Plaintiffs seek a broad remedy—an injunction mandating the EPA to consult with the Services regarding the registration and oversight of 382 pesticides. However, if properly pleaded, each pesticide corresponds to an individual agency affirmative act which triggers the EPA's duty to consult with the Services. If the EPA failed to consult with the Services regarding the effects of Pesticide X on the environment, and that failure-to-consult confers standing on a plaintiff to bring an ESA claim arising under Section 7, the plaintiff's standing in connection with Pesticide X does not confer standing on the plaintiff to also bring a separate claim regarding Pesticide Y. If that were the case, the remedy would not be "limited to the inadequacy that produced the injury in fact that the plaintiff has established." *Lewis*, 518 U.S. at 358. It is certainly possible that some of the facts giving rise to the plaintiff's standing in connection with Pesticide X will overlap with the facts giving rise to the plaintiff's standing in connection with Pesticide Y, but such facts must be expressly alleged. "A plaintiff must demonstrate standing for each claim he seeks to press." *DaimlerChrysler*, 547 U.S. at 352.

Plaintiffs argue they have pled sufficient facts because "[a]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss [courts] presume that general allegations embrace those specific facts that are necessary to support the claim." *Lujan*, 504 U.S. at 561. However, Plaintiffs have not even pled the "general factual allegations" giving rise to each individual ESA claim, nor have they asserted individual ESA claims. The district court's decision in *Washington Toxics* also supports this reasoning. *See Washington Toxic*, No. 01-132C, 2002 WL 34213031, *6-8 (W.D. Wash. July 2, 2002). There, the court granted summary judgment in favor of the defendant as to the majority of the 898

United States District Court
Northern District of California

United States District Court
Northern District of California

1  challenged active pesticide ingredients for which the plaintiffs submitted no evidence on the

2  causation element of standing, and allowed the plaintiffs' claims to proceed only with respect to

3  55 pesticide active ingredients. *Id.* at *8. Although the standing issue in this case first arises on a

4  Rule 12(b)(6) motion and not on summary judgment as it did in *Washington Toxics*, the Court

5  agrees that "plaintiffs must demonstrate standing separately for each section 7(a)(2) claim." *Id.* at

6  *7. Plaintiff will be given an opportunity to plead standing for each pesticide.

7  ### 4.    Subject Matter Jurisdiction

8  The parties also dispute whether this Court has jurisdiction over Plaintiffs' ESA claims.

9  Plaintiffs argue that jurisdiction is proper under the ESA's citizen suit provision, which states that

10  "district courts shall have jurisdiction … to enforce any such provision or regulation." 16 U.S.C.

11  § 1540(g)(1)(A). In support of this position, Plaintiffs cite *Washington Toxics*, where the Ninth

12  Circuit affirmed summary judgment in favor of environmental groups who challenged the EPA's

13  failure to consult with regard to certain pesticide registrations. *See Washington Toxics*, 413 F.3d

14  at 1033.

15  Defendants argue, however, that because Plaintiffs' allegations attack the substance of the

16  EPA's pesticide registrations, and because FIFRA § 16(b) vests exclusive jurisdiction in the court

17  of appeals over the EPA's actions following a public hearing, Plaintiffs have not established this

18  Court's jurisdiction over a majority of the claims. In support of their position, Defendants cite

19  *American Bird Conservancy v. Federal Communications Commission*, 545 F.3d 1190 (9th Cir.

20  2008) ("*American Bird*"), and other Ninth Circuit cases cited therein, for the proposition that

21  district courts lack jurisdiction over ESA claims when the substance of those claims attacks a

22  regulatory statute that vests exclusive jurisdiction in the court of appeals.

23  The jurisdictional question turns on whether Plaintiffs' ESA claim confers an independent

24  basis for jurisdiction in district court by virtue of the ESA's citizen suit provision, or whether

25  Plaintiffs' ESA claims are subsumed by FIFRA's jurisdictional provisions because Plaintiffs are

26  essentially challenging an act which is governed by FIFRA's administrative scheme. Before the

27  Court may adequately address this question, however, the Ninth Circuit's previous decisions in

28  this area of law must be examined.

United States District Court
Northern District of California

i.   *United Farm Workers*

The Ninth Circuit's decision in *United Farm Workers* has implications on the scope of the jurisdictional issue in this case.  FIFRA § 16 divides the universe of appeals over the EPA's actions with regard to pesticide registrations between district courts and the court of appeals.  On the one hand, FIFRA § 16(a) provides that district courts have jurisdiction over the EPA's registration actions "not following a hearing."  7 U.S.C. § 136n(a).  On the other hand, FIFRA § 16(b) provides that the court of appeals has "exclusive jurisdiction" over a "case of actual controversy as to the validity of any order issued by the Administrator following a public hearing."  *Id*. § 136n(b).  In *United Farm Workers*, the plaintiffs sought review of the EPA's Registration Eligibility Determination ("RED") for the use of the pesticide Azinphos-Methyl ("AZM") in district court under the belief that the appeal fell within the scope of FIFRA § 16(a) because there was no public hearing before the EPA's issuance of the RED.  *United Farm Workers*, 592 F.3d at 1082.  However, the Ninth Circuit held the court of appeals had exclusive jurisdiction under FIFRA § 16(b) because the EPA had provided notice in the Federal Register and an opportunity for public comment before issuing the RED, which constituted a "public hearing" for purposes of FIFRA § 16.  *Id*. at 1083.

Assuming *arguendo* that Plaintiffs' ESA claims may not be asserted except or provided by FIFRA § 16, this Court may still have jurisdiction over claims arising under FIFRA § 16(a), that is, review of EPA registration actions which did not, at a minimum, provide notice in the Federal Register and an opportunity for public comment.  However, if the registration actions follow a public hearing as interpreted by the Ninth Circuit in *United Farm Workers*, the court of appeals has exclusive jurisdiction under FIFRA § 16(b).  The EPA does not suggest "that every FIFRA action ever taken with respect to all 382 active pesticide ingredients catalogued in the Complaint constitutes an 'order … following a public hearing' under FIFRA Section 16(b) and [*United Farm Workers*]."  Motion at 14:24-26.  Nevertheless, the EPA contends that the EPA is required to publish notice and provide an opportunity to comment with regard to most registration actions.  *See, e.g.*, 7 U.S.C. § 136a(c)(4) (requiring notice and comment for each pesticide application that contains any new active ingredient or a changed use pattern); 40 C.F.R. § 155.50(b) (requiring

21

1   notice for a registration review).  Plaintiffs bear the burden of showing the basis for subject matter

2   jurisdiction.  *Lujan*, 504 U.S. at 561.  Thus, if the jurisdictional provisions in FIFRA § 16 apply to

3   Plaintiffs' ESA claims, Plaintiffs must show why each particular claim is governed by FIFRA §

4   16(a) rather than § 16(b) to establish this Court's jurisdiction.

5                              **ii.**        ***Washington Toxics***

6          The only Ninth Circuit decision to explicitly address the interaction of the ESA and FIFRA

7   is *Washington Toxics*.  In that case, the EPA argued that because it complied with the

8   requirements of FIFRA when registering the pesticides, it was not bound by the ESA's

9   consultation requirements.  *Washington Toxics*, 413 F.3d at 1028.  The Ninth Circuit rejected this

10  argument:

11              The statutes at issue in this case … have different but
                complementary purposes.  FIFRA utilizes a cost-benefit analysis to
12              ensure that there is no unreasonable risk created for people or the
                environment from a pesticide, taking into account the economic,
13              social, and environmental costs and benefits of a pesticide's use….

14              In contrast, the ESA affords endangered species the "highest of
15              priorities" in assessing risks and benefits.  *Tennessee Valley Auth. v.
                Hill*, 437 U.S. 153, 174, 98 S.Ct. 2279, 57 L.Ed.2d 117 (1978).  The
16              reasoning of our case law therefore leads us to conclude that an
                agency cannot escape its obligation to comply with the ESA merely
17              because it is bound to comply with another statute that has
                consistent, complementary objectives.
18

19  *Id.* at 1032.  The court also rejected the EPA's arguments that the doctrines of administrative

20  exhaustion and primary jurisdiction precluded the plaintiff's claims, stating that "the mere fact that

21  FIFRA recognizes EPA authority to suspend registered pesticides to protect listed species does not

22  mean that FIFRA remedies trump those Congress expressly made available under ESA, or that

23  FIFRA provides and exclusive or primary remedy."  *Id*. at 1033-34.

24         Plaintiffs contend that this Court need look no further than *Washington Toxics* to find

25  subject matter jurisdiction over ESA § 7 claims alleging the EPA's failure to consult.  However,

26  *Washington Toxics* did not "opine on the jurisdictional question" presented in this case.  *Pesticide

27  Action Network North America v. U.S. Environmental Protection Agency*, No. 08-1814-MHP,

28  2008 WL 5130405, *8 (N.D. Cal. Dec. 5, 2008) ("*PANNA*") (quoting *American Bird Conservancy*

*v. F.C.C.*, 408 F.Supp.2d 987, 995 (D. Hawaii 2006)).  Although the court considered the doctrines of primary jurisdiction and exhaustion of administrative remedies, these are distinct doctrines and did not concern the jurisdictional provision of FIFRA § 16 with which the Court is presented here.  A review of the district court's docket in *Washington Toxics* reveals that FIFRA § 16(b), 7 U.S.C. § 136n(b), was never explicitly cited, and thus, never considered.  The sole reference to FIFRA § 16 was in connection with the intervenors' argument that the Administrative Procedure Act ("APA"), and its limited provision for judicial review of final agency action, governed the claims.  *See Washington Toxics*, No. 01-132C, 2002 WL 34213031 (W.D. Wash. July 2, 2002), Dkt. No. 62 (Intervenors' Cross-Motion for Summary Judgment) at 11:11; Dkt. No. 67 (Intervenors' Reply in Support of Cross-Motion for Summary Judgment) at n. 3.

At the hearing on Defendants' Motions to Dismiss, Plaintiffs argued that in *Washington Toxics*, the Ninth Circuit held that jurisdiction over the ESA claim was proper in district court when it rejected the argument that the APA applied.  The APA provides judicial review for "final agency action for which there is no other adequate remedy in a court."  5 U.S.C. § 704.  The court held that because the ESA's citizen suit provision provided an adequate remedy, the APA did not apply.  *Washington Toxics*, 413 F.3d at 1034.  However, the court did not consider whether FIFRA § 16 itself barred the suit in district court.  When a superior court "does not address a jurisdictional issue directly, any *sub silentio* assumption of jurisdiction in a case does not constitute binding authority on the jurisdictional question."  *Thompson v. Frank*, 599 F.3d 1088, 1090 n. 1 (9th Cir. 2010) (internal quotations omitted).  Thus, this Court must look beyond *Washington Toxics* to resolve the jurisdictional issue in this case.

### iii.    *American Bird*

The most relevant Ninth Circuit decision to the jurisdictional question at issue in this case is *American Bird*, a case decided after *Washington Toxics*.  In *American Bird*, environmental organizations challenged the decision by the Federal Communications Commission ("FCC") to issue licenses for seven communications towers before consulting with the Services as required under ESA § 7.  *American Bird*, 545 F.3d at 1192.  Although the complaint only contained an ESA claim against the FCC for its failure to consult, the FCC argued that the plaintiff's "core

23

objections" were to the FCC's order issuing the tower licenses, and therefore, the district court

lacked jurisdiction because the Communications Act limits jurisdiction over appeals of FCC

orders exclusively to the court of appeals.[7]  *Id*. at 1193.  Although the plaintiffs "disclaimed any

intent to challenge the tower registrations themselves," the court looked beyond the allegations of

the complaint and considered the nature of the lawsuit and the relief sought.  *Id*.  The Ninth Circuit

agreed with the FCC that the district court lacked jurisdiction:

> American Bird does not object to the agency's failure to consult in
> the abstract; rather, it identifies seven discrete tower registrations
> that it alleges were not supported by adequate environmental
> investigation.  The tower registrations are therefore inextricably
> intertwined with the FCC's obligation to consult with the Secretary.

*Id*.  The court further stated that "American Bird cannot elude the Communication Act's exclusive

review provision by disguising its true objection to the tower registrations as a 'failure to act'

claim."  *Id*.

    The Ninth Circuit found support from previous cases where the court similarly found "that

a plaintiff may not escape an exclusive avenue of judicial review through artful pleading."

*American Bird*, 545 F.3d at 1194.  The court's decision in *California Save Our Streams Council,*

*Inc. v. Yeutter*, 887 F.3d 908 (9th Cir. 1989) ("*Yeutter*"), is one such case.  In *Yeutter*,

environmental groups challenged the conditions of a license granted by the Federal Energy

Regulatory Commission ("FERC") acting under the Federal Power Act to construct a

hydroelectric power facility.  *Yeutter*, 887 F.2d at 909.  Although the Federal Power Act provides

for exclusive jurisdiction in the court of appeals for any claim based upon "an order issued by the

Commission," 16 U.S.C. § 825l (b), the plaintiffs brought suit in district court on the basis of

federal question jurisdiction over the FERC's alleged violations of the National Environmental

Policy Act ("NEPA"), 42 U.S.C. §§ 4321-47, and the American Indian Religious Freedom Act

(AIRFA), 42 U.S.C. §§ 1996 *et seq*.  *Id*. at 910.  Like the later plaintiffs in *American Bird*, the

---

[7] The FCC is charged with the authority to issue licenses for communication towers under the Communications Act, 47 U.S.C. § 402.  The Communications Act incorporates the Hobbs Act, which vests the court of appeals with "'exclusive jurisdiction' to review 'all final orders of the Federal Communications Commission.'"  *American Bird*, 545 F.3d at 1193 (quoting 28 U.S.C. § 2342).

United States District Court
Northern District of California

United States District Court
Northern District of California

1  environmental groups argued that there was an independent statutory basis for jurisdiction because

2  they brought claims under NEPA and AIRFRA, and not under the Federal Power Act. *Id.* at 911.

3  Nevertheless, the court rejected the plaintiffs' "attempt to style this as an independent claim

4  against the Forest Service" because "the practical effect of the action in district court is an assault

5  on an important ingredient of the FERC license." *Id.* at 912.

6        The *American Bird* court also cited *Turtle Island Restoration Network v. United States*

7  *Department of Commerce*, 438 F.3d 937 (9th Cir. 2006) ("*Turtle Island*"). In *Turtle Island*, the

8  National Marine Fishery Service issued regulations reopening the part of the Hawaii-based long-

9  line fishery that targets swordfish. The regulations were issued under the Magnuson-Stevens

10  Fishery Conservation and Management Act of 1976 ("Magnuson Act"), 16 U.S.C. §§ 1801 *et seq.*,

11  which provides jurisdiction over challenges to "regulations which implement a fishery

12  management plan," 16 U.S.C. § 1855(f)(2), but only if the petition for review is filed within 30

13  days. *Turtle Island*, 438 F.3d at 940. Five months after the regulations were issued,

14  environmental groups filed suit against the Service alleging violations of the Migratory Bird Act,

15  16 U.S.C. §§ 703-12, the NEPA, and the ESA (under a different section than what Plaintiffs assert

16  in this case). *Turtle Island*, 438 F.3d at 939. The plaintiffs did not reference the Magnuson Act

17  and its 30-day statute of limitations in the Complaint. Nevertheless, the Ninth Circuit found that

18  "the claims are appropriately characterized as an attack on the regulations reopening the fishery,

19  the Magnuson Act's statute of limitations applies, and Turtle Island's petition [was] barred

20  because it was filed beyond the thirty-day time limitation." *Id.*

21        At least two other district courts have applied the reasoning in *American Bird* and the

22  cases cited therein to hold that they lack (or likely lack) jurisdiction over ESA claims asserted

23  against the EPA in connection with its pesticide registrations. *See PANNA*, 2008 WL 5130405;

24  *Council for Endangered Species Act Reliability v. Jackson*, No. 10-8254, 2011 WL 5882192 (D.

25  Ariz. Nov. 23, 2011) ("*CESAR*"). In *PANNA*, the plaintiffs asserted both FIFRA and ESA claims

26  against the EPA in connection with its reregistration of four pesticides. *PANNA*, 2008 WL

27  5130405, at *4. While awaiting the Ninth Circuit's decision in *United Farm Workers*, the court

28  imposed a stay on both the FIFRA and ESA claims upon finding that the ESA claims "would

1   likely be subsumed" by FIFRA's jurisdictional provisions. *Id*. at *6. Similarly, in *CESAR*, the

2   plaintiffs alleged that the EPA violated the ESA by failing to consult with the Service before

3   approving the use of the pesticide rotenone. *CESAR*, 2011 WL 5882192, at *2. Applying

4   *American Bird*, the district court found that "failure to consult claim is best construed as a

5   collateral attack on an agency registration triggering the jurisdictional provisions of [FIFRA]." *Id.*

6   at *5. The Court is unaware of any district court case which has found jurisdiction over an ESA

7   claim with regard to pesticide registrations after the Ninth Circuit's decision in *American Bird.*

8                                    *        *        *

9            The Court finds that *American Bird* controls the jurisdictional question in this case.

10   Although Plaintiffs only challenge the EPA's failure to consult under ESA § 7, Plaintiffs' "core

11   objections" are to the pesticide registrations themselves, which are governed under FIFRA's

12   administrative framework. *American Bird*, 545 F.3d at 1193. Like in *American Bird*, this Court is

13   presented with two conflicting jurisdictional statutes−FIFRA § 16 and the ESA's citizen suit

14   provision. While ESA's citizen suit provision provides for jurisdiction in district court, FIFRA §

15   16 establishes a comprehensive framework for all appeals over the EPA's actions with regard to

16   pesticide registrations. FIFRA § 16 divides the universe of appeals between the district courts and

17   the court of appeals, where the place of jurisdiction turns on whether the EPA's action follows a

18   public hearing. *See United Farm Workers*, 592 F.3d at 1083. "[W]hen two jurisdictional statutes

19   draw different routes of appeal, the well-established rule is to apply only the more specific

20   legislation." *American Bird*, 545 F.3d at 1194 (quoting *Yeutter*, 887 F.3d at 911). If Plaintiffs'

21   ESA claim is based upon an EPA action which follows a public hearing, and thereby invokes

22   application of FIFRA § 16(b), this Court lacks jurisdiction over that particular claim.

23            The Ninth Circuit's decision in *Karuk Tribe* further supports the Court's conclusion. In

24   *Washington Toxics*, the court reasoned that the EPA's "ongoing" regulatory control over pesticide

25   registrations was sufficient to trigger consultation obligations. However, *Karuk Tribe* now

26   explicitly requires Plaintiffs to identify an affirmative agency act to invoke Section 7's

27   consultation requirement. These affirmative acts, such as registering a pesticide, cancelling a

28   registration, and many other acts of the EPA in connection with pesticides are also acts which are

United States District Court
Northern District of California

United States District Court
Northern District of California

1  governed by the jurisdictional provisions of FIFRA § 16.  Thus, the EPA's actions with regard to

2  pesticide registrations are "inextricably intertwined" with the EPA's affirmative act which triggers

3  the obligation to consult under Section 7.  *American Bird*, 545 F.3d at 1193.

4       Plaintiffs argue that *American Bird* should not control the jurisdiction question in the

5  pesticide context because *American Bird* interpreted a different statute, and determining whether a

6  regulatory statute's jurisdictional provision applies to ESA claims requires a statute-specific

7  analysis.  *See Turtle Island*, 438 F.3d at 947 ("it is the language of the specific jurisdictional

8  statute … that controls").  Plaintiffs contend that applying FIFRA's jurisdictional provision to

9  Plaintiffs' ESA claims would be inconsistent with the plain language of FIFRA.

10       First, Plaintiffs argue that FIFRA § 16(b) cannot apply because they are not challenging

11  "the validity of any order," 7 U.S.C. § 136n(b), as the statute requires, but rather EPA's "ongoing

12  agency action" by virtue of its "ongoing discretionary control" over the 382 pesticides named in

13  the Complaint.  Nevertheless, as explained above, this argument was implicitly rejected in *Karuk*

14  *Tribe*.  "Ongoing discretionary control" is insufficient to invoke application of ESA § 7's

15  consultation requirement; Plaintiffs must identify an affirmative agency act.  *Karuk Tribe*, 681

16  F.3d at 1021.  In *United Farm Workers*, the Ninth Circuit held that the EPA's issuance of a RED

17  is an "order" for purposes of FIFRA § 16(b).  *United Farm Workers*, 592 F.3d at 1081-82.  It is

18  likely that many actions taken by the EPA with regard to pesticide registrations are "orders"

19  within the meaning of FIFRA § 16(b).  If the challenged action is *not* an "order," then it may fall

20  within the scope of FIFRA § 16(a).

21       Second, Plaintiffs argue that FIFRA § 16(b) is not triggered unless a petition is actually

22  filed in the court of appeals.  Plaintiffs find support for this argument in the language of § 16(b),

23  which states that "[*u*]*pon the filing of such petition* the court shall have exclusive jurisdiction to

24  affirm or set aside the order complained of in whole or in part."  7 U.S.C. § 136n(b) (emphasis

25  added); *see also PANNA*, 2008 WL 5130405, *5 (contemplating the possibility that § 16(b) is only

26  triggered once a petition for judicial review is submitted).  Although the language of the statute is

27  ambiguous, the Ninth Circuit implicitly rejected this argument in *United Farm Workers*.  The

28  plaintiffs in that case never filed a petition for judicial review in the court of appeals, but rather

1   only sought review in district court.  Nevertheless, the Ninth Circuit held that FIFRA § 16(b)

2   governed their claim.  *See United Farm Workers*, 592 F.3d at 1082.  Therefore, one need not

3   actually file a petition in the court of appeals to invoke the exclusive jurisdictional provisions of

4   FIFRA § 16(b).

5   　　　　Third, Plaintiffs contend that FIFRA § 16(b) only applies to a person who was "party to the

6   proceedings," and that because the court in *Washington Toxics* held that a plaintiff is not required

7   to exhaust administrative remedies, the judicial review provision in FIFRA § 16(b) must not

8   apply.  This is essentially a repetition of Plaintiffs' argument that *Washington Toxics* establishes

9   this Court's jurisdiction over the ESA claims.  However, jurisdiction is a separate question than

10   the exhaustion of administrative remedies, and is governed by a separate line of cases.  The fact

11   FIFRA § 16 governs jurisdiction over ESA claims does not require exhaustion of the

12   administrative remedies contemplated in *Washington Toxics*.[8]  In deciding *Washington Toxics*, the

13   Ninth Circuit did not address the jurisdictional question raised here with regard to FIFRA § 16.

14   *Washington Toxics*, 413 F.3d at 1033.  When a superior court "does not address a jurisdictional

15   issue directly, any *sub silentio* assumption of jurisdiction in a case does not constitute binding

16   authority on the jurisdictional question."  *Thompson*, 599 F.3d at 1090 n. 1 (internal quotations

17   omitted); *see also United States v. L. A. Tucker Truck Lines, Inc.*, 344 U.S. 33, 38 (1952).  Thus,

18   *Washington Toxic*'s holding that administrative remedies need not be exhausted does not preclude

19

20   　　　　[8] In holding that administrative remedies need not be exhausted prior to invoking ESA § 7,
the *Washington Toxics* court cited section 136d(c) as the "limited administrative remedy"

21   available.  *Washington Toxics*, 413 F.3d at 1033.  Section 136d(c) provides that the EPA may
suspend the registration of a pesticide−either in the case of an emergency or after the EPA issues a

22   notice of intent to cancel the registration or change the classification−if the EPA "determines that
action is necessary to prevent an *imminent hazard* during the time required for cancellation or

23   change in classification proceedings."  7 U.S.C. § 136d(c)(1) (emphasis added).  An "imminent
hazard" includes within its definition the "unreasonable hazard to survival of a species endangered

24   or threatened by the Secretary pursuant to the Endangered Species Act of 1973."  *Id.* § 136(*l*).
　　　　As the Ninth Circuit recognized in *Washington Toxics*, "[n]either FIFRA nor the ESA …

25   suggest any legislative intent to require exhaustion of the FIFRA remedy before seeking relief
under the ESA."  *Washington Toxics*, 413 F.3d at 1033.  Although regulations promulgated under

26   Section 136d permit "any interested person" to petition the EPA to determine, *inter alia*, whether
use of a pesticide "may pose a risk to the continued existence of any endangered or threatened

27   species," or "may result in the destruction or other adverse modification of any [critical] habitat …
for any endangered or threatened species," *see* 40 C.F.R. §§ 154.10, 154.7, one may *also*

28   challenge the EPA's alleged failure to consult with the Services through normal review procedures
governed by FIFRA § 16, 7 U.S.C. 136n.

United States District Court
Northern District of California

1    this Court's decision that FIFRA § 16 governs jurisdiction over appeals arising from EPA actions

2    regulated under FIFRA.

3          The Court has also considered whether Plaintiffs would have been able to assert their ESA

4    claim under FIFRA § 16(b), which expressly limits review in the court of appeals to those who

5    "had been a party to the proceedings."  7 U.S.C. § 136n(b).  If only the person or entity that

6    submits the application for a pesticide registration or registration action may be considered a

7    "party to the proceeding," then FIFRA § 16(b) does not contemplate a viable forum for Plaintiffs

8    to assert their ESA claims.  However, the regulations promulgated under FIFRA and the

9    legislative history of FIFRA § 16(b) indicate this is not the case.  The regulations governing

10   FIFRA hearings define a "Party" as "any person, group, organization, or Federal agency or

11   department that participates in a hearing," which is broader than the definition of an "Applicant,"

12   which is "any person who has made application to have a pesticide registered or classified

13   pursuant to the provisions of the Act."  40 C.F.R. § 164.2 (e), (m).  Moreover, the legislative

14   history of FIFRA § 16(b) shows that conference committee members intended "that anyone who

15   intervenes in a public hearing under [FIFRA] shall be considered a party for purposes of [FIFRA §

16   16(b)]."  Conf. Rep. No. 92-1540, 92d Cong., 2d Sess., *reprinted in* 1972 U.S. Code Cong. & Ad.

17   News 4133.

18         The question still remains, however, what it means to intervene and participate in a

19   hearing.  In *United Farm Workers*, the Ninth Circuit held that when the EPA provides notice in the

20   Federal Register and an opportunity for public comment, that constitutes a "public hearing" which

21   invokes the applicability of FIFRA § 16(b).  While not entirely clear, it does appear that anyone

22   who submits a comment to the EPA during the allotted time intervenes and participates, and

23   therefore, is a "party to the proceeding" who may seek review of an adverse decision by the EPA

24   in the court of appeals under FIFRA § 16(b).  Another FIFRA regulation supports this conclusion,

25   as it provides that "[a]ny person wishing to participate in a proceeding" can submit their position

26   in writing, and separately requires additional information if that person "is a registrant or an

27   applicant for registration."  40 C.F.R. § 164.24.  This language suggest that environmental groups,

28   such as Plaintiffs in this case, have the ability to intervene and participate in an administrative

United States District Court
Northern District of California

29

United States District Court
Northern District of California

1   hearing under FIFRA, and therefore may appeal under FIFRA § 16(b) as a "party to the

2   proceeding." [9]

3       Plaintiffs also attempt to distinguish *American Bird* on its facts.  Before the plaintiffs in

4   *American Bird* filed suit in district court under the ESA's citizen suit provision, they pursued

5   administrative remedies.  Specifically, the plaintiffs filed a "Petition for National Environmental

6   Policy Act Compliance" with the FCC, and simultaneously filed a "Notice of Violations Under the

7   Endangered Species Act" with the Secretary of the Interior, in which they "threatened to file a

8   citizen suit … if the FCC's administrative process produced an unsatisfactory result."  *American*

9   *Bird*, 545 F.3d at 1192.  The plaintiffs then filed suit in district court while the administrative

10  process was still pending.  *Id.*  The plaintiffs in *Yeutter* and *Turtle Island* were similarly more

11  involved with the administrative processes prior to filing suit in district court.[10]

12      Plaintiffs argue that the Ninth Circuit's reasoning in *American Bird*−and presumably in

13  *Yeutter* and *Turtle Island* as well−relied heavily on the fact that the plaintiffs had participated in

14  the administrative proceedings and only filed an ESA claim in district court when such

15  proceedings became unsatisfactory.  To some extent, Plaintiffs are correct.  In *American Bird*, the

16  court rejected the plaintiff's attempt to "elude the Communications Act's exclusive review

17  provision by *disguising* its true objection to the tower registrations as a 'failure to act' claim."

18  *American Bird*, F.3d at 1193 (emphasis added); *see also Turtle Island*, 438 F.3d at 945 ("Turtle

19  Island's challenge cannot *credibly* be viewed as anything other than an attack on the regulations")

20  ───────────────

21      [9]  The regulatory jurisdictional provision in *Yeutter*−the Federal Power Act−similarly
    limited review to "any party to the proceeding."  *Yeutter*, 887 F.2d at 910-11 (quoting 16 U.S.C. §

22  825*l*).  Because the plaintiffs' request for late intervention in the administrative proceedings was
    denied, it seems the plaintiffs were not "party to the proceeding."  *See id.* at 910.  Nevertheless,

23  the court held that the exclusive jurisdictional provision of the Federal Power Act applied, likely
    because the plaintiffs *could have been* a party to the proceeding.  By contrast, the regulatory

24  jurisdictional provisions at issue in both *American Bird* and *Turtle Island* allowed any person who
    was adversely affected by an administrative decision to appeal that decision in the court of

25  appeals.

26      [10]  Before the plaintiffs in *Yeutter* filed claims in district court based on violations of
    NEPA and AIRFRA, they sought to intervene in the FERC proceedings and filed for

27  administrative review of the conditions imposed by the Forest Service on the FERC license.
    *Yeutter*, 887 F.3d at 910.  Similarly, in *Turtle Island*, the plaintiffs participated in the formal

28  rulemaking process before the disputed regulations were issued and contested by the plaintiffs in
    federal court.  *Turtle Island*, 438 F.3d at 939.

(emphasis added).  Nevertheless, the Ninth Circuit's holdings in these cases were not based on the plaintiffs' credibility.  Rather, the court looked to the nature of the claims and relief sought, and found that the agencies' failure to consult was "inextricably intertwined" with agency actions governed by a regulatory framework.  *American Bird*, 545 F.3d at 1193.  There are no facts in this case which distinguish it from this binding precedent.

There are sound policy reasons to apply the jurisdictional provisions established by FIFRA § 16.  It makes little sense to allow Plaintiffs to assert an ESA claim in district court, when simultaneously, the same act triggering Section 7's consultation requirement may be appealed under FIFRA's review procedures.  As the court explained in *Yeutter*, "[t]he point of creating a special review procedure in the first place is to avoid duplication and inconsistency.  It provides a single and expeditious procedure for resolving licensing disputes."  *Yeutter*, 887 F.2d at 912.  The possibility of two simultaneous lawsuits−one in the district court and one in the court of appeals−does not align with Congress' intent for efficient and safe resolution for pesticide registrations.  *See id*.  Moreover, other administrative means exist for "any interested person" to petition the EPA to conduct a "special review" if use of a pesticide "[m]ay pose a risk to the continued existence of any endangered or threatened species or "[m]ay result in the destruction or other adverse modification of any [critical] habitat."  40 C.F.R. §§ 154.10, 154.7.  Although Plaintiffs are not required to exhaust, *see Washington Toxics*, 413 F.3d at 1033, or even invoke these "special review" procedures, their existence shows that endangered and threatened species may be protected by means other than filing a lawsuit in district court based on noncompliance with Section 7.

This analysis is necessarily general given that Plaintiffs have not alleged specific affirmative acts for each pesticide triggering § 7 consultation.  It is possible that a specific affirmative act may fall outside of FIFRA § 16, although the Court finds it hard to conceive of such an act.  It is also possible that a specific affirmative act may fall under FIFRA § 16(a) rather than § 16(b).  This potential issue will be addressed based on the allegations of the specific affirmative acts in any amended complaint.

United States District Court
Northern District of California

1    The Court also addresses the intersection of FIFRA § 16 and Plaintiffs' allegation that the

2    EPA failed to *reinitiate* consultation with regard to pesticides listed in the 1989 and 1993

3    Biological Opinions.  It appears that the majority of the events listed in 50 C.F.R. § 402.16, which

4    trigger the duty to reinitiate consultation, do not arise from any act undertaken by the EPA.  When

5    a triggering event is not governed by FIFRA, then FIFRA's jurisdictional provision does not

6    apply.  However, subsection (c) requires the EPA to reinitiate consultation when an "identified

7    action is subsequently modified in a manner that causes an effect to the listed species or critical

8    habitat that was not considered in the biological opinion." 50 C.F.R. § 402.16(c).  If the

9    modification of the identified action arises from an EPA action regulated by FIFRA, then

10   jurisdiction over the appeal of such modification is governed by FIFRA § 16.  As discussed above,

11   Plaintiffs have not pled sufficient facts to show that the EPA was required to reinitiate

12   consultation.  In an amended complaint, Plaintiffs must also address the jurisdictional issue for a

13   claim based on failure to reinitiate consultation if the triggering event is regulated under FIFRA.

14   In sum, the provision of FIFRA § 16 appears to confer jurisdiction in this case.  As

15   described above, in their amended complaint, Plaintiffs must plead facts showing the specific

16   affirmative acts or orders of the EPA that they allege with respect to each pesticide.  They must

17   also plead facts showing standing with respect to each pesticide.  And finally, they must plead

18   facts showing how this Court has jurisdiction under FIFRA § 16(a) for the affirmative actions

19   alleged−or that the specific affirmative acts fall outside the ambit of FIFRA § 16.

20                          **5.      Statute of Limitations**

21   Having determined that Plaintiffs must assert a separate ESA claim with regard to each

22   individual "agency action," and must also establish the basis for standing and jurisdiction for each

23   of these claims, the Court must now address the statute of limitations as applied to Plaintiffs'

24   Complaint.  Plaintiffs argue that no statute of limitations applies because they are challenging

25   "ongoing agency action."  However, as the Court explained above, in light of the Ninth Circuit's

26   decision in *Karuk Tribe*, Plaintiffs cannot merely identify an "ongoing agency action" based on

27   discretionary control or authority.  Rather, Plaintiffs must identify an affirmative act.  *Karuk*

28   *Tribe*, 681 F.3d at 1021.  The statute of limitations will apply in relation to the affirmative act

                                              32

1    alleged with regard to each pesticide.

2          The ESA does not contain its own statute of limitations.  Thus, the six-year statute of

3    limitations in 28 U.S.C. § 2401(a) applies.  *See Wind River Mining Corp. v. United States*, 946

4    F.2d 710, 713 (9th Cir. 1991); *Coos Cnty. Bd. of Cnty. Comm'rs v. Kempthorne*, 531 F.3d 792,

5    812 n. 16 (9th Cir. 2008).  Section 2401(a) provides that "every civil action commenced against

6    the United States shall be barred unless the complaint is filed within six years after the right of

7    action first accrues."  28 U.S.C. § 2401(a).  Plaintiffs' Complaint was filed on January 20, 2011.

8    To the extent the Complaint implies a challenge to the EPA's affirmative acts on registrations

9    actions occurring prior to January 20, 2005, such claims are barred by the statute of limitations.  In

10   the amended complaint, Plaintiffs will have to plead the specific affirmative act for each pesticide,

11   and that will inform the Court's application of the statute of limitations.

12   **V.      CONCLUSION**

13         For the foregoing reasons, the Motion to Intervene is GRANTED.  The EPA's and the

14   Intervenors' Motions to Dismiss are GRANTED and Plaintiffs' Complaint is DISMISSED WITH

15   LEAVE TO AMEND.  If Plaintiffs choose to file an amended complaint, that complaint shall be

16   filed within thirty (30) days of the issuance of this order.  If Plaintiffs do not file an amended

17   complaint, the clerk is directed to close the file.

18         IT IS SO ORDERED.

19   Dated: April 22, 2013

20

21                                                         _____

22                                                         Joseph C. Spero
                                                           United States Magistrate Judge

23

24

25

26

27

28