LATHAM & WATKINS LLP
William K. Rawson (D.C. Bar No. 367167)*
william.rawson@lw.com
Claudia M. O'Brien (D.C. Bar No. 447354)*
claudia.o'brien@lw.com
Stacey L. VanBelleghem
(D.C. Bar No. 988144)*
stacey.vanbelleghem@lw.com
    555 Eleventh Street, N.W., Suite 1000
    Washington, D.C. 20004-1304
    T: (202) 637-2200 F: (202) 637-2201

Andrea M. Hogan (Ca. Bar No. 238209)
andrea.hogan@lw.com
    505 Montgomery Street, Suite 2000
    San Francisco, CA 94111-6538
    T: (415) 391-0600 F: (415) 395-8095

WILEY REIN LLP
David B. Weinberg (D.C. Bar No. 186247)*
dweinberg@wileyrein.com
Roger H. Miksad (D.C. Bar No. 996137)*
rmiksad@wileyrein.com
    1776 K Street NW
    Washington, DC 20006
    T: (202) 719-7000 F: (202) 719-7049

*Attorneys for Intervenor-Defendants CropLife
America, et al.*

* Admitted *pro hac vice*

STEPTOE & JOHNSON LLP
Seth Goldberg (CA Bar No. 153719)
sgoldberg@steptoe.com
Cynthia L. Taub (D.C. Bar No. 445906)*
ctaub@steptoe.com
    1330 Connecticut Avenue, NW
    Washington, DC 20036
    T: 202.429.3000 F: 202.429.3902

*Attorneys for Intervenor-Defendant American
Chemistry Council*

ARNOLD & PORTER LLP
Thomas W. Stoever, Jr. (Ca. Bar No. 150056)
thomas.stoever@aporter.com
    370 Seventeenth Street, Suite 4400
    Denver, CO 80202-1370
    T: (303) 863-1000 F: (303) 832-0428
*Attorney for Intervenor-Defendant Reckitt
Benckiser LLC*

CROWELL & MORING LLP
J. Michael Klise (D.C. Bar No. 412420)*
jmklise@crowell.com
Kirsten L. Nathanson (D.C. Bar No. 463992)
David Menotti (D.C. Bar No. 158089)
Thomas R. Lundquist (D.C. Bar No. 968123)
    1001 Pennsylvania Ave., NW
    Washington, D.C. 20004-2595
    T: (202) 624-2500 F: (202) 628-5116

*Attorneys for Intervenor-Defendants American
Farm Bureau Federation, et al.*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, *et al.*,<br><br>            Plaintiffs,<br><br>     v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, *et al.*,<br><br>            Defendants,<br><br>     and<br><br>CROPLIFE AMERICA, *et al.*<br><br>            Intervenor-Defendants. | CASE NO. 11-CV-293-JCS<br><br>**MOTION OF CROPLIFE AMERICA, AMERICAN CHEMISTRY COUNCIL, RECKITT BENCKISER LLC, AND AMERICAN FARM BUREAU FEDERATION FOR A MORE DEFINITE STATEMENT**<br><br>(The Honorable Joseph C. Spero)<br><br>Date:   October 4, 2013<br><br>Time:  1:30 pm<br><br>Place:  Courtroom G - 15th Floor |

## **<u>NOTICE OF MOTION AND MOTION FOR A MORE DEFINITE STATEMENT</u>**

1

2   TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

3          Notice is hereby given that on October 4, 2013, at 1:30 P.M., or as soon thereafter as the

4   case may be heard, in the Courtroom of the Honorable Joseph C. Spero (Courtroom G - 15th

5   Floor), Intervenor-Defendants CropLife America, Responsible Industry for a Sound

6   Environment, Southern Crop Production Association, Western Plant Health Association and Mid

7   America CropLife Association (collectively "CropLife"); American Chemistry Council

8   ("ACC"); Reckitt Benckiser LLC ("Reckitt"); and American Farm Bureau Federation, National

9   Agricultural Aviation Association, National Alliance of Forest Owners, National Association of

10  Corn Growers, National Cotton Council, National Council of Farmer Cooperatives, National

11  Potato Council, Oregonians for Food and Shelter, USA Rice Federation, and Washington Friends

12  of Farms and Forests ("User Groups") (collectively "Intervenor-Defendants") will and hereby do

13  respectfully move for a more definite statement pursuant to Federal Rule of Civil Procedure

14  12(e).

15          In support of this Motion for a More Definite Statement, Intervenor-Defendants rely on

16  the Memorandum in Support thereof, the Proposed Order, all pleadings and papers filed in this

17  action, and upon such other matters the Court may entertain.

18

19

20

21

22

23

24

25

26

27

28

**<u>TABLE OF CONTENTS</u>**

TABLE OF AUTHORITIES ............................................................................................... III

INTRODUCTION ............................................................................................................. 1

BACKGROUND ............................................................................................................... 1

LEGAL STANDARD ........................................................................................................ 3

ARGUMENT ..................................................................................................................... 3

I.   PLAINTIFFS' FAILURE TO CONSULT CLAIMS ARE SO VAGUE
     AND AMBIGUOUS THAT INTERVENOR-DEFENDANTS CANNOT
     REASONABLY PREPARE A RESPONSE. ................................................................ 3

II.  PLAINTIFFS HAVE FAILED TO COMPLY WITH THE COURT'S
     ORDER TO ALLEGE "WITH GREATER SPECIFICITY THE FACTS
     GIVING RISE" TO A DUTY REINITIATE CONSULTATION
     CORRESPONDING TO EACH PESTICIDE ............................................................... 9

III. PLAINTIFFS SHOULD BE REQUIRED TO REPLEAD STANDING TO
     CONFORM TO THEIR MORE DEFINITE STATEMENT OF EACH
     CLAIM. ................................................................................................................ 12

CONCLUSION ................................................................................................................ 14

**Intervenor-Defendants' Motion
for a More Definite Statement
11-cv-293-JCS**

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................................................3

*City of Oakland v. Keep on Trucking Co.*,
    No. C 95–03721 CRB,
    1998 WL 470465 (N.D. Cal. July 30, 1998) ........................................................3

*Clark v. McDonald's Corp.*,
    213 F.R.D. 198 (D.N.J. 2003)............................................................................14

*Conley v. Gibson*,
    355 U.S. 41 (1957)...............................................................................................3

*GNI Waterman LLC v. A/M Valve Co.*,
    No. CVF 07-0863 LJO TAG,
    2007 WL 2669503 (E.D. Cal. Sept. 7, 2007) .....................................................8

*Karuk Tribe of California v. United States Forest Service*,
    681 F.3d 1006 (9th Cir. 2012), *cert. denied*, 133 S. Ct. 1579 (2013).................1

*Kazemi v. Payless Shoesource Inc.*,
    No. C 09-5142 MHP,
    2010 WL 963225 (N.D. Cal. Mar. 16, 2010) ......................................................3

*Mann v. Boatwright*,
    477 F.3d 1140 (10th Cir. 2007) ..........................................................................3

*McHenry v. Renne*,
    84 F.3d 1172 (9th Cir. 1996) .........................................................................1, 12

*Swierkiewicz v. Sorema N.A.*,
    534 U.S. 506 (2002)..............................................................................................3

*United States ex rel. Garst v. Lockheed-Martin Corp.*,
    328 F.3d 374 (7th Cir. 2003) ...............................................................................3

### STATUTES AND REGULATIONS

16 U.S.C.§ 1531, *et seq*..............................................................................................1

16 U.S.C. § 1536(a) ....................................................................................................2

21 U.S.C. § 346a(h) ............................................................................................4, 5, 7

Fed. R. Civ. P. 8(a)(2)...............................................................................................14

**Page(s)**

## OTHER AUTHORITIES

U.S. EPA, *Endangered Species Effects Determinations and Consultations and Biological Opinions*, http://www.epa.gov/espp/litstatus/effects/ (last visited Aug. 26, 2013) ...............11

U.S. EPA, *Effects Determinations for the California Red-legged Frog and other California Listed Species*, http://www.epa.gov/espp/litstatus/effects/redleg-frog/index.html (last visited Aug. 26, 2013) ......................................................................................................................11

U.S. EPA, Office of Pesticide Programs, *Risks of Brodifacoum Use to the Federally Threatened Alameda Whipsnake, and the Federally Endangered Salt Marsh Harvest Mouse and San Joaquin Kit Fox* (Mar. 30, 2012)*, available at* http://www.epa.gov/espp/litstatus/effects/redleg-frog/2012/brodifacoum/analysis.pdf........11

U.S. EPA, *Pesticides: Reregistration 1, 3-Dichloropropene*, http://www.epa.gov/oppsrrd1/reregistration/telone/ (last visited Aug. 26, 2013) ...................6

U.S. Fish and Wildlife Service, U.S. EPA, *U.S. Fish and Wildlife Service Biological Opinion: On Selected Pesticides* (revised Sept. 14, 1989).....................................................................13

U.S. Fish and Wildlife Service, U.S. EPA, *U.S. Fish and Wildlife Service Species Profile, Higgins eye Lampsilis higginsii*, http://ecos.fws.gov/speciesProfile/profile/speciesProfile.action?spcode=F009 (last visited Aug. 26, 2013) ......................................................................................................................13

| | |
|---|---|
| 1 | **INTRODUCTION** |
| 2 | This Court's April 22, 2013 Order gave Plaintiffs unambiguous instructions on how to |
| 3 | revise their complaint alleging non-compliance by Defendant U.S. Environmental Protection |
| 4 | Agency ("EPA") with the Endangered Species Act ("ESA"), 16 U.S.C.§ 1531, *et seq.*[1] Plaintiffs |
| 5 | have not complied. |
| 6 | Rather than adhering to the roadmap the Court provided, the Amended Complaint (ECF |
| 7 | No. 160) has ballooned to 2,129 repetitive and often-ambiguous paragraphs that render it |
| 8 | impossible for either Intervenor-Defendants or the Federal Defendants to respond.  Thus, it is far |
| 9 | from the "short and plain statement" of Plaintiffs' claims required by Federal Rule of Civil |
| 10 | Procedure 8(a). |
| 11 | On August 15, the Federal Defendants filed a Motion for More Definite Statement (ECF |
| 12 | No. 168).  The Intervenor-Defendants concur that, at the least, the new Amended Complaint is |
| 13 | inadequate and that, pursuant to Federal Rule of Civil Procedure 12(e), Plaintiffs should be |
| 14 | directed to try again.[2] Intervenor-Defendants have prepared this memorandum as a supplement |
| 15 | to the explanations in the Federal Defendants' Motion and to further document why both |
| 16 | Intervenor-Defendants' and the Federal Defendants' Motion for a More Definite Statement |
| 17 | should be granted. |
| 18 | **BACKGROUND** |
| 19 | In its April 22 Order, the Court ruled that the Ninth Circuit's 2012 *en banc* decision in |
| 20 | *Karuk Tribe of California v. United States Forest Service*, 681 F.3d 1006 (9th Cir. 2012), *cert.* |
| 21 | *denied*, 133 S. Ct. 1579 (2013), explicitly barred Plaintiffs' theory that EPA's "discretionary |
| 22 | |

---

[1]  Order Granting Motion to Intervene; Granting Motions to Dismiss and Dismissing Complaint with Leave to Amend, ECF No. 157, 2013 U.S. Dist. Lexis 57436 (Apr. 22, 2013) ("Order" or "April 22 Order").

[2]  Indeed, the Plaintiffs' failure to comply with the Court's Order is sufficiently egregious to support involuntary dismissal of this case in its entirety pursuant to Federal Rule of Civil Procedure 41(b).  *See., e.g., McHenry v. Renne*, 84 F.3d 1172, 1176 (9th Cir. 1996) ("'[N]o attempt [was] made to match up the specific factual allegations and the specific legal claims to a specific defendant. The result is that defendants and this court are literally guessing as to what facts support the legal claims being asserted against certain defendants.'" (citation omitted)).

control and involvement" over pesticides constituted "agency action" sufficient to trigger the consultation requirements established by Section 7(a) of the ESA, 16 U.S.C. § 1536(a). Order at 14-15. It also provided Plaintiffs with a roadmap for how properly to replead their case. For example, the Court directed:

- "Plaintiffs must bring a separate ESA claim in connection with the EPA's affirmative act with regard to each individual pesticide in order to invoke Section 7's consultation requirement." *Id*. at 18.

- "Plaintiffs must show why each particular claim is governed by FIFRA § 16(a) rather than § 16(b) to establish this Court's jurisdiction." *Id*. at 22.

- "Plaintiffs must also address the jurisdictional issue for a claim based on failure to reinitiate consultation if the triggering event is regulated under FIFRA." *Id*. at 32.

- "Plaintiffs must plead facts showing the specific affirmative acts or orders of the EPA that they allege with respect to each pesticide." *Id*.

- "[Plaintiffs] must allege with greater specificity the facts giving rise to the EPA's duty to reinitiate consultation regarding each of the pesticides and species addressed in the 1989 and 1993 Biological Opinions, and must address the factors as written in 50 C.F.R. § 402.16." *Id*. at 17.

The Court further granted Plaintiffs thirty days (later extended to forty-five days) to file an amended complaint, if they chose to do so.

In their 437-page Amended Complaint, Plaintiffs have gone from failing to cite a single affirmative act for any active ingredient to citing virtually every activity EPA has ever undertaken with respect to each active ingredient—including such things as voluntary cancellation orders and typographical corrections. Plaintiffs then go on to reference EPA websites for additional, *unspecified* acts—and allege that *all* of these are "actions" that trigger a duty to consult, while continuing to assert that EPA's "continuing jurisdiction" triggers consultation requirements.[3]

---

[3] In their claims for relief, Plaintiffs state that they are relying on every act cited in the Amended Complaint to support their duty to consult claims. *See, e.g.,* Am. Comp. ¶ 1510 ("The actions subsequent to the registration, including product registration, as set forth above, constitute additional 'affirmative agency actions' subject to consultation under Section 7(a)(2) of the ESA.").

**LEGAL STANDARD**

Federal Rule of Civil Procedure 12(e) authorizes a motion for a more definite statement

where "the complaint is so indefinite that [the] defendant cannot ascertain the nature of the claim

being asserted and therefore cannot reasonably be expected to frame an appropriate response."

*City of Oakland v. Keep on Trucking Co.*, No. C 95–03721 CRB, 1998 WL 470465, at *1 (N.D.

Cal. July 30, 1998); *cf. Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, (2007) (complaint

must "'give the defendant fair notice of what the ... claim is and the grounds upon which it

rests'" (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *see also*

*Kazemi v. Payless Shoesource Inc.*, No. C 09-5142 MHP, 2010 WL 963225, at *4 (N.D. Cal.

Mar. 16, 2010) (Spero, M.J.).

Courts are to consider the requirements of Rule 12(e) in conjunction with Rule 8(a)'s

"simplified pleading standard [which] applies to all civil actions, with limited exceptions."

*Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002).  "Rule 8(a) requires parties to make

their pleadings straightforward, so that judges and adverse parties need not try to fish a gold coin

from a bucket of mud."  *United States ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378

(7th Cir. 2003) (Easterbrook, J.).[4]  Thus, Rule 12(e) also is the appropriate vehicle for seeking

clarification of pleadings which fail to meet Rule 8(a)'s requirements.

**ARGUMENT**

**I.     PLAINTIFFS' FAILURE TO CONSULT CLAIMS ARE SO VAGUE AND**
**        AMBIGUOUS THAT INTERVENOR-DEFENDANTS CANNOT REASONABLY**
**        PREPARE A RESPONSE.**

Plaintiffs allege a failure to consult with respect to 31 active ingredients.  The claims—to

which Plaintiffs devote a staggering 956 paragraphs—are formulaic, with much of the language

from one claim being repeated verbatim in the next.  *See* Am. Compl. ¶¶ 108-786, 1507-1785.

Yet Plaintiffs still fail to comply with the Court's April 22 Order.

This Court unambiguously instructed Plaintiffs to "allege a separate ESA claim

───────────────────

[4]  *See also, e.g., Mann v. Boatwright*, 477 F.3d 1140, 1148 (10th Cir. 2007) ("It was not the
district court's job to stitch together cognizable claims for relief from the wholly deficient
pleading ….").

**Intervenor-Defendants' Motion
for a More Definite Statement
11-cv-293-JCS**

corresponding to an affirmative act with respect to each" individual pesticide, and to "show why each particular claim is governed by FIFRA § 16(a) rather than § 16(b) to establish this Court's jurisdiction." Order at 15, 22. The Court described the desired result: "if properly pleaded, each pesticide corresponds to an individual agency affirmative act which triggers the EPA's duty to consult with the Services." *Id.* at 19.

Rather than alleging an "individual agency affirmative act" that corresponds to each pesticide, however, Plaintiffs now indiscriminately identify the initial registration decisions and any and all acts related to the products that EPA has taken since the initial registration decisions, without identifying which act or acts allegedly triggers a duty to consult, or why. The cited activities include ministerial acts that Plaintiffs' counsel previously has acknowledged would never trigger a duty to consult,[5] registration and reregistration decisions the Court has already ruled are barred,[6] and tolerance decisions that are subject to the exclusive jurisdiction of the court of appeals under provisions of the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 346a(h). And Plaintiffs continue to allege that EPA's ongoing oversight and control over registrations is sufficient to trigger a duty to consult,[7] notwithstanding the Court's express holding to the contrary. Order at 14.

For example, for 1,3-dichloropropene, the Amended Complaint mentions EPA's 1998 Reregistration Eligibility Decision ("RED"), several April 2010 "Soil Fumigant Risk Assessments," an Updated Reregistration Eligibility Decision Fact Sheet from 2008, and EPA's completion of various product reregistrations implementing the RED. But the Amended Complaint never indicates how or why Plaintiffs believe any of these acts triggered a duty to consult under the ESA—let alone whether those claims are governed by FIFRA § 16(a) or

---

[5]  *See infra* at 5 and n. 12.

[6]  Order at 26.

[7]  *See* Am. Compl. ¶¶ 116, 141, 161, 183, 206, 226, 246, 266, 287, 310, 331, 353, 376, 398, 419, 441, 462, 487, 507, 528, 550, 571, 592, 615, 635, 657, 680, 703, 726, 748, 771, 1509, 1518, 1536, 1545, 1554, 1563, 1572, 1581, 1590, 1599, 1608, 1617, 1626, 1635, 1644, 1653, 1662, 1671, 1680, 1689, 1698, 1707, 1716, 1725, 1734, 1743, 1752, 1761, 1770.

§ 16(b). *See* Am. Compl. ¶¶ 113, 117-19.

        This pattern is repeated as to many other products. Plaintiffs list a host of activities, such as the issuance of tolerances that restrict product usage,[8] cancellation orders or proceedings that do the same,[9] and fact sheets[10] without specifying whether or why any of these acts would trigger a duty to consult or cause the Plaintiffs harm. Indeed, Plaintiffs even cite as triggering consultation a one page memorandum "correct[ing] a typographical error" in the dicamba RED.[11] *See* Am. Compl. ¶ 377; EPA, Correction to the Amendments to the Dicamba RED (June 17, 2009). This is both ludicrous and contradicts Plaintiffs' counsel's statement to the Court, "[t]here's no way they would consult on each of these, you know, daily events when they carry out their registration. That's not where they consult. They consult on the actual registration." Tr. at 16:13-16, Mar. 15, 2013, ECF No. 156 ("Mar. 15, 2013 Tr.").[12]

        Similarly, the Amended Complaint makes 31 separate references[13] to EPA's "Chemical

---

[8]   *See, e.g.,* Am. Compl. ¶ 207. The Federal Food, Drug, and Cosmetic Act expressly provides that challenges to tolerances must be brought in the courts of appeals and thus are similarly outside the jurisdiction of this court. *See* 21 U.S.C. § 346a(h).

[9]   *See, e.g.*, Am. Compl. ¶¶ 162, 248, 289, 355, 399, 464. Another problem with Plaintiffs' allegations is that, to the extent they raise EPA actions that are not yet final as potential triggers for consultation, their claims are not yet ripe for adjudication. *See, e.g.*, ¶¶ 248, 892, 897, 909, 1478 (raising allegations related to EPA's 2008 risk mitigation and subsequent, but not-yet-final, 2013 Notice of Intent to Cancel affecting registrations for certain rodenticide bait products).

[10]   *See, e.g.*, Am. Compl. ¶ 118.

[11]   In another example, among the "actions" Plaintiffs reference by date for 1,3-dichloropropene is an October 16, 2008 rejection of a label change notification, whereby EPA requested the label change be submitted under a different process. In other words, no ultimate decision on the change was reached and no change to the product was made. *See* Am. Compl. ¶ 120. It appears that the Amended Complaint simply includes the first entry listed in EPA's Pesticide Product Label System for that product without a meaningful analysis.

[12]   Similarly, the Amended Complaint lists product registrations, which typically merely conform product labels to the restrictions set forth in the reregistration decisions, without alleging in any claim any specific facts to explain why any of these activities allegedly triggered consultation requirements. *See* Mar. 15, 2013 Tr. at 19:9-10 ("It reregisters all the products, and maybe it's a perfunctory action.").

[13]   *See* Am. Compl. ¶¶ 115, 140, 160, 182, 205, 225, 245, 265, 286, 309, 330, 352, 375, 397, 418, 440, 461, 486, 506, 527, 549, 570, 591, 614, 634, 656, 679, 702, 725, 747, 770.

1  Search" Internet tool and 25 references to pesticide specific Internet pages.[14]  Plaintiffs claim

2  that "subsequent actions … are summarized on these webpages." *See e.g.* Am. Compl. ¶ 115.

3  But the Chemical Search database can contain hundreds of documents per chemical and each

4  pesticide-specific Internet page contains dozens of documents and links to additional

5  webpages.[15]  Nowhere in the Amended Complaint do Plaintiffs designate which of these

6  references they allege to be a specific "agency action."  Instead, Plaintiffs simply purport,

7  through identical language repeated in every claim for relief, to rely on every act or allegation

8  mentioned earlier in the Amended Complaint as an affirmative act that triggers a duty to

9  consult.[16]

10        Plaintiffs cannot assert that every single activity by EPA pertaining to the registration or

11  reregistration of an active ingredient or a registration containing that ingredient triggers a duty to

12  consult or causes them harm, but it also is impossible to determine from the Amended Complaint

13  which acts Plaintiffs *do* believe trigger a duty to consult.  As a consequence, Intervenor-

14  Defendants cannot respond.

15        As a further example, Plaintiffs' allegations regarding the herbicide dicamba cite EPA's

16  Office of Pesticide Programs' Chemical Search website.  Am. Compl. ¶ 375.  That site, in turn,

17  includes a number of sections with different categories of information regarding dicamba.  But

18  Plaintiffs do not specify which section contains the relevant information.  Perhaps Plaintiffs are

19  referring to the dicamba website's "Regulatory Actions" section, which has two listings: a RED

20  and a tolerance decision.  But the dicamba RED was issued after an opportunity for public

21

22  14  *See* Am. Compl. ¶¶ 115, 140, 160, 205, 225, 265, 286, 309, 330, 352, 375, 397, 418, 440,
       461, 486, 527, 549, 570, 634, 656, 679, 702, 725, 770.

23
    15  The pages also consistently note that "EPA no longer updates this page." *See, e.g.,* Am.
24     Compl. ¶ 115; EPA, Pesticides: Reregistration 1, 3-Dichloropropene,
       http://www.epa.gov/oppsrrd1/reregistration/telone/ (last visited Aug. 26, 2013).

25
    16  For instance, in the First Claim for Relief for 1,3-dichloropropene Plaintiffs assert that all
26     actions "set forth above, constitute additional 'affirmative agency actions' subject to
       consultation."  Plaintiffs repeat this assertion verbatim 31 times: *see* Am. Compl. ¶¶ 1510,
27     1519, 1528, 1537, 1546, 1555, 1564, 1573, 1582, 1591, 1600, 1609, 1618, 1627, 1636, 1645,
       1654, 1663, 1672, 1681, 1690, 1699, 1708, 1717, 1726, 1735, 1744, 1753, 1762, 1771, 1780.

28

**Intervenor-Defendants' Motion
for a More Definite Statement
11-cv-293-JCS**

hearing, so this Court lacks jurisdiction pursuant to FIFRA § 16(b).[17] Nor does this Court have jurisdiction over tolerances, since (like REDs) such decisions occur under an organic statute that provides for Court of Appeals review.[18]

Or perhaps Plaintiffs are referring to the dicamba website's "science reviews" section, which lists science reviews from 1990; or the "chemical details" section, which lists general information about the chemical structure of dicamba; or the "dockets" section, a link to the reregistration docket which, in turn, lists various events; or, finally, the "emergency exemptions" section, listing a single emergency exemption request that was filed and *withdrawn* in 2010.[19] Intervenor-Defendants (like the Federal Defendants and the Court) can only guess which entry is believed by Plaintiffs to be an "action" triggering EPA's ESA responsibilities—and why. Plaintiffs have not met their responsibility under Rule 8 to plainly state their claims.

These issues are not unique to dicamba. Plaintiffs cite EPA's Chemical Search webpage for *every* active ingredient covered by their amended consultation claims.[20] But nowhere do Plaintiffs identify what the affirmative agency act is that allegedly triggers a duty to consult. The Intervenor-Defendants, Federal Defendants and the Court are left to roam through websites and speculate as to what Plaintiffs intend to allege.

Similarly, in many cases, Plaintiffs cite a website that requires the user to input search terms to generate information – without providing the terms upon which Plaintiffs rely. Again using dicamba as an example, Plaintiffs cite the Pesticide Product Label System ("PPLS") and allege that "[a]ctive product registrations for this pesticide can be found" on this website. *See*

---

[17] *See* Order at 27.

[18] As noted above, challenges to tolerances must be brought in the courts of appeals. *See* 21 U.S.C. § 346a(h).

[19] As another example, there are nineteen distinct listings on one of the tabs on one of the pages that Plaintiffs cite for atrazine. *See* Am. Compl. ¶ 205. It is impossible to determine whether, by citing this website, Plaintiffs allege that items listed thereon, such as the 2010 publication of a fact sheet and a 2007 document specifying locations for monitoring sites, trigger a duty to consult.

[20] *See supra* at 5, n.13.

**Intervenor-Defendants' Motion
for a More Definite Statement
11-cv-293-JCS**

Am. Compl. ¶ 379.[21]  However, the system is only searchable by product name, company name, or EPA registration number, and different search terms yield different results.  (Examples include: "Dicamba," "Dicamba and salts," specific company names, or specific registration numbers assigned to different products.)  Plaintiffs have not explained what search terms to use or how otherwise to extract information that they believe is pertinent.  1,3-dichloropropene provides another example: there, a search of PPLS for the search term "1,3-dichloropropene" returns no results in any of three available fields.

Plaintiffs' repeated assertion, made for 38 pesticide claims, that the pesticide is found "in watersheds where susceptible species exist" or that certain watersheds "overlap the range of species that may be affected by this pesticide," as shown in Exhibit B, provides another example of the Amended Complaint's flaws.[22]  Exhibit B merely lists scores of watersheds nationwide in which various pesticides are alleged to have been found, at some unspecified level and point in time.  It does not address all of the pesticides for which Plaintiffs bring failure-to-consult claims, and it says nothing about what species occur in which watersheds – let alone whether any pesticide levels may be high enough to potentially impact a species.  Thus, it is impossible to tell which of the species listed in the Amended Complaint and Exhibit A Plaintiffs allege live in each watershed, or which of those species in each watershed Plaintiffs allege support each claim.  This pleading failure is particularly appropriate for correction under Rule 12(e).  *GNI Waterman LLC v. A/M Valve Co.*, No. CVF 07-0863 LJO TAG, 2007 WL 2669503, at *12 (E.D. Cal. Sept. 7, 2007) (granting Rule 12(e) motion where Plaintiff failed to identify which specific products, among company's large catalog of products, were at issue).

In sum, Plaintiffs moved from citing no acts in their initial complaint to referencing

---

[21]  Plaintiffs repeat this reference to PPLS verbatim 31 times:  Am. Compl. ¶¶ 119, 143, 164, 184, 208, 227, 249, 268, 290, 312, 334, 356, 379, 401, 421, 443, 466, 489, 509, 531, 552, 573, 594, 617, 638, 659, 683, 707, 728, 750, 775.

[22]  *See* Am. Compl. ¶¶ 137, 179, 201, 284, 306, 328, 350, 373, 395, 416, 438, 459, 484, 504, 612, 632, 677, 700, 745, 768, 804, 838, 859, 956, 996, 1015, 1065, 1083, 1145, 1162, 1184, 1215, 1308, 1323, 1370, 1386, 1417, 1464.

everything EPA does in their Amended Complaint, including undisclosed and ministerial acts. But Plaintiffs fail to identify which, among all of these acts, they rely on to support their consultation claims or their allegations of injury – or why this Court has jurisdiction – the proverbial "gold coin in a bucket of mud."  The Amended Complaint does not comply with the Court's April 22 Order, and does not meet the minimum requirements set forth in Rule 8(a) to provide a short and plain statement of the claims.

## II.    PLAINTIFFS HAVE FAILED TO COMPLY WITH THE COURT'S ORDER TO ALLEGE "WITH GREATER SPECIFICITY THE FACTS GIVING RISE" TO A DUTY REINITIATE CONSULTATION CORRESPONDING TO EACH PESTICIDE.

The Amended Complaint alleges a failure to reinitiate consultation with respect to 42 active ingredients.  Again, the claims are largely formulaic and repetitive.  Notwithstanding having devoted 1,064 paragraphs to these claims, *see* Am. Comp. ¶¶ 787-1506, 1786-2129, Plaintiffs still fail to comply with the Court's Order and the pleading standards of Rule 8.

The Court's April 22 Order instructed Plaintiffs to plead, with respect to each "specific pesticide, that the agency had prior consultation, and facts showing that one or more of the triggering events occurred." Order at 16.  Although the Amended Complaint includes voluminous lists of events and information, it does not cure this flaw.  Rather than stating what *specific* events or information on which Plaintiffs rely, the Amended Complaint describes or incorporates by reference every single regulatory-related event that has occurred since the relevant Biological Opinion and every piece of information currently in EPA's possession.  The Amended Complaint thus is anything but "specific."[23]

For their reinitiation claims, Plaintiffs cite to the same EPA websites and databases that

---

[23]  Plaintiffs still include the kinds of speculative and conclusory allegations the Court found unacceptable in the original Complaint.  For example, Plaintiffs generally allege that "information likely exists in the possession of the EPA, or the Services" without providing any direction on how to identify such information or whether Plaintiffs intend to rely on such information. Plaintiffs repeat this unspecific allegation verbatim 43 times:  Am. Compl. ¶¶ 810, 826, 842, 866, 881, 897, 913, 926, 942, 968, 983, 1000, 1024, 1038, 1053, 1072, 1088, 1101, 1117, 1134, 1151, 1167, 1187, 1202, 1219, 1234, 1249, 1265, 1280, 1297, 1311, 1327, 1342, 1357, 1374, 1389, 1404, 1421, 1436, 1451, 1468, 1483, 1498.

they rely on in their failure-to-consult claims. Furthermore, Plaintiffs provide long lists of

species listed since the Biological Opinion, which Plaintiffs allege "may" have been affected,

without making any allegations as to how any of the species could be impacted by the active

ingredient. Plaintiffs also rely (again) on Exhibit B to identify "watersheds where susceptible

species exist" but, as explained above, provide no information as to which species Plaintiffs

believe exist in each watershed. *See supra* at 8.

Similarly, the Amended Complaint asserts – no less than 69 times – that there is

unidentified, but allegedly relevant, information "in one or more of three databases that the EPA

maintains: AQUIRE, Terretox" and an unspecified "EPA database of ecotoxicity studies used in

registration decisions," that allegedly triggers reinitiation obligations.[24] In fact, "AQUIRE" and

"TERRETOX" no longer exist as separate databases, and the Amended Complaint provides no

indication as to where the third, unspecified, "EPA database" might be found, how to access its

information, or what material information it contains. Furthermore, the databases EPA currently

maintains contain hundreds of documents per pesticide. The Amended Complaint never

specifies which documents within these databases Plaintiffs believe contain pertinent new

information.

Based on these conclusory citations to websites and databases, Plaintiffs allege, without

further specification, that "[t]he above information reveals that triggers for reinitiation of formal

consultation have occurred." *See, e.g.*, Am. Compl. ¶ 809.[25] But Plaintiffs never actually

identify *which* specific events or pieces of information, among the hundreds listed or referenced,

are the alleged reinitiation trigger.

---

[24] *See* Am. Compl. ¶¶ 97, 112, 136, 157, 178, 200, 222, 243, 263, 283, 305, 327, 349, 372, 394, 415, 437, 458, 483, 525, 547, 568, 589, 611, 631, 654, 676, 699, 723, 744, 767, 803, 822, 837, 855, 877, 908, 937, 954, 995, 1020, 1035, 1050, 1068, 1084, 1114, 1130, 1147, 1163, 1178, 1198, 1214, 1230, 1245, 1260, 1276, 1292, 1322, 1338, 1353, 1369, 1385, 1400, 1416, 1432, 1447, 1463, 1480, 1495.

[25] Plaintiffs repeat this broad incorporation statement verbatim (except for the pesticide name) 43 times: Am. Compl. ¶¶ 809, 825, 841, 865, 880, 894, 912, 925, 941, 967, 982, 999, 1023, 1037, 1052, 1071, 1087, 1101, 1116, 1133, 1150, 1166, 1186, 1201, 1218, 1233, 1248, 1264, 1279, 1296, 1310, 1326, 1341, 1356, 1373, 1388, 1403, 1420, 1435, 1450, 1467, 1482, 1467.

-10-

Intervenor-Defendants' Motion
for a More Definite Statement
11-cv-293-JCS

1

        Further, for all the EPA actions that Plaintiffs do discuss—without ever identifying *which*

2  specific actions triggered a consultation or reinitiation obligation—the Amended Complaint does

3  not cite or acknowledge work EPA has done to complete certain effects determinations and

4  consult with the Services.  For example, Plaintiffs ignore the fact that an effects determination

5  addressing the risks of brodifacoum to the San Joaquin kit fox (and other species) was completed

6  just last year.[26]  They nevertheless assert an obligation for EPA to reinitiate consultation

7  regarding the effects of brodifacoum on the same species, *see id*. ¶¶ 890-905, Ex. B at 15-16,

8  claiming that some unspecified "trigger[s] for reinitiation of consultation [have] occurred,"

9  perhaps even since the effects determination was completed last year, *id*. ¶¶ 894, 1829.

10  Plaintiffs' discussion of EPA actions that might require reinitiation ignores relevant actions that

11  may moot their claims (because the relief sought is already completed or underway), further

12  highlighting why Defendants cannot respond to Plaintiffs' claims until Plaintiffs allege *which*

13  particular action(s), at what times, triggered obligations to reinitiate consultation.

14        Whether Plaintiffs allege that some individual fact, some combination of facts, or some

15  alternative permutation constitutes a trigger for consultation is unstated.  Thus, to respond to the

16  Amended Complaint, Intervenor-Defendants (and the Federal Defendants) would (among other

17  things) first need to guess to which "EPA database of ecotoxicity studies" the Plaintiffs refer,

18  then comb through the thousands of database entries in an attempt to divine which of the data

19  Plaintiffs are attempting to rely on for their claims, and only then turn to addressing whether

20  those data might justify reinitiation.  But only the last of these burdens is legitimately placed on

21  any of the defendants.  First, Plaintiffs must meet their obligations under Rule 8(a).  *Cf. McHenry*

22

23  ────────────────
    [26]  *See* U.S. EPA, Office of Pesticide Programs, *Risks of Brodifacoum Use to the Federally*
24       *Threatened Alameda Whipsnake, and the Federally Endangered Salt Marsh Harvest Mouse*
         *and San Joaquin Kit Fox* (Mar. 30, 2012)*, available at*
25       http://www.epa.gov/espp/litstatus/effects/redleg-frog/2012/brodifacoum/analysis.pdf.  Other
         completed effects determinations and related documents are found at U.S. EPA, *Endangered*
26       *Species Effects Determinations and Consultations and Biological Opinions*,
         http://www.epa.gov/espp/litstatus/effects/ (last visited Aug. 26, 2013), and U.S. EPA, Effects
27       Determinations for the California Red-legged Frog and other California Listed Species,
         http://www.epa.gov/espp/litstatus/effects/redleg-frog/index.html (last visited Aug. 26, 2013).
28

**Intervenor-Defendants' Motion
for a More Definite Statement
11-cv-293-JCS**

1    *v. Renne,* 84 F.3d 1172, 1176 (9th Cir. 1996).

2    **III.    PLAINTIFFS SHOULD BE REQUIRED TO REPLEAD STANDING TO
3              CONFORM TO THEIR MORE DEFINITE STATEMENT OF EACH CLAIM.**

4            In its Order, the Court noted that Plaintiffs' failure to state proper claims for each

5    pesticide "has far-reaching implications with regard to Plaintiffs' allegations of standing." *See*

6    Order at 15-16.  The Court found that Plaintiffs had not "allege[d] any facts in connection to

7    Plaintiffs' or the members' injury with regard to their interests in any particular species or

8    geographical area affected by any particular pesticide." *Id*. at 18.  The Amended Complaint does

9    not correct this flaw.

10           Instead, Plaintiffs principally repeat general and vague boilerplate language to allege

11   standing—much of which is copied from the initial complaint.[27]  But these claims of general

12   interest in unspecified endangered species have already been found insufficient.  *See id*.

13           In Exhibit A Plaintiffs purport to provide "the list of species that may be affected" by

14   each active ingredient—and state, in a conclusory manner, that their members have cognizable

15   interests in these species.  *See, e.g.,* Am. Compl. ¶ 146 (and repeated for every active ingredient).

16   But Exhibit A provides nothing more than what was filed in the initial complaint.  Plaintiffs still

17   fail to allege specific linkages between the endangered species on Exhibit A and any particular

18   injury.

19           Even allegations that, at first blush, appear to be well pleaded, fail to withstand minimal

20   scrutiny.  For example, Plaintiffs' failure to reinitiate claim for dicamba relies upon a member's

21   interest in the bonytail chub, which was part of the 1989 Biological Opinion.  *Id*. ¶ 1090.

22   However, the Biological Opinion cited only *plant* species as being potentially affected by

23   dicamba, and it expressly identified the bonytail chub as an animal species for which "it has been

24

25   [27]  As an example, *compare* Am. Compl. ¶¶ 127, 149, 170, 192, 214, 235, 255, 274, 318, 340,
              364, 385, 407, 429, 449, 474, 495, 517, 539, 560, 581, 602, 623, 646, 667, 691, 715, 736,
26            758, 781, 813, 829, 845, 869, 884, 900, 916, 929, 945, 971, 986, 1003, 1027, 1041, 1056,
              1075, 1091, 1105, 1120, 1137, 1154, 1170, 1190, 1205, 1222, 1237, 1252, 1268, 1283, 1300,
27            1314, 1330, 1345, 1360, 1377, 1392, 1407, 1424,1439, 1454, 1471, 1486, 1501, *with* Initial
              Complaint ¶ 11( third and fifth sentences).

28

determined that they are not likely to be affected by any of the pesticides" considered in the Opinion.[28] Plaintiffs' reliance on the bonytail chub to allege standing for profenofos (¶ 1359), another pesticide evaluated in the 1989 Opinion, is similarly unsupportable.

Elsewhere, Plaintiffs rely on the alleged presence of certain active ingredients in watersheds listed in Exhibit B to allege harm.[29] But Plaintiffs fail to allege what species may be in those watersheds, much less why they have an interest in each such species. *See supra* at 8. For example, Plaintiffs allege potential injury to the Higgins eye pearlymussel to support standing for aldicarb. Am. Compl. ¶ 844. But this species is known or believed to be present only in Illinois, Iowa, Minnesota, Missouri, South Dakota, and Wisconsin.[30] The watersheds listed for aldicarb in Exhibit B (at p. 5) are not found in any of those states.

Plaintiffs also fail to provide any information regarding the *levels* at which the active ingredients were detected, how those levels compare to potential adverse effect levels in any species, or *when* the sampling was conducted. Such information is necessary to support allegations about actual or potential injury. These vague allegations are entirely insufficient to support standing.

Two and a half years into this case, it is reasonable to expect Plaintiffs to do better. Plaintiffs should be required to demonstrate that they have standing with respect to each claim they assert. They should be directed to allege specific facts to establish the necessary linkages to support standing with respect to each claim. The vague, conclusory allegations and simple lists of species and watersheds in the Amended Complaint are insufficient to provide a basis for Intervenor-Defendants (or the Federal Defendants) to respond.

---

[28] U.S. Fish and Wildlife Service, U.S. EPA, *U.S. Fish and Wildlife Service Biological Opinion: On Selected Pesticides* at 84, 246 (revised Sept. 14, 1989).

[29] Am. Compl. ¶¶ 137, 179, 201, 284, 306, 328, 350, 373, 395, 416, 438, 459, 484, 504, 612, 632, 677, 700, 745, 768, 804, 838, 859, 956, 996, 1015, 1065, 1083, 1145, 1162, 1184, 1215, 1308, 1323, 1370, 1386, 1417, 1464.

[30] U.S. Fish and Wildlife Service, U.S. EPA, *U.S. Fish and Wildlife Service Species Profile, Higgins eye Lampsilis higginsii*, http://ecos.fws.gov/speciesProfile/profile/speciesProfile.action?spcode=F009 (last visited Aug. 26, 2013).

# CONCLUSION

Intervenor-Defendants concur with the Federal Defendants that the deficiencies of the Amended Complaint render the claims so vague and ambiguous that neither the Intervenor-Defendants nor the Federal Defendants could possibly frame a response. Plaintiffs' indiscriminate listings of alleged actions and websites are just as problematic as the complete absence of any alleged action in the original complaint. None of the Amended Complaint's listings complies with this Court's order to allege an "individual agency affirmative act" that corresponds to each pesticide for their consultation claims. *See* Order at 19. None describes specific "facts giving rise to the EPA's duty to reinitiate consultation regarding each of the pesticides and species." *Id*. at 17. Even after the filing of this Amended Complaint, only Plaintiffs can know what act, events, and information on which they intend to rely, if any.

The Amended Complaint's shotgun style does not satisfy minimum pleading requirements. It is not a "short and plain statement of the claim." *See* Fed. R. Civ. P. 8(a)(2). It is in all parties' interests and the interests of judicial economy to clarify the nature of Plaintiffs' claims before proceeding. "Motions for a more definite statement are … an appropriate vehicle to pare down "shotgun" pleadings." *Clark v. McDonald's Corp.*, 213 F.R.D. 198, 233 (D.N.J. 2003).

At the very least, therefore, Plaintiffs should be required to state clearly the allegations on which they purport to rely and set forth precisely which affirmative acts they allege triggered a duty to consult and reinitiate consultations—and why—so that Intervenor-Defendants can appropriately respond.[31]

---

[31] As noted above, it would alternatively be within this Court's power to dismiss the Amended Complaint with prejudice pursuant to Rule 41. *See supra* at 1 n2.

**Intervenor-Defendants' Motion
for a More Definite Statement
11-cv-293-JCS**

| | |
|---|---|
| 1 | Dated:  August 27, 2013 |

Dated:  August 27, 2013

Respectfully submitted,

/s/ William K. Rawson**

DAVID B. WEINBERG
    (D.C. Bar No. 186247)*
ROGER H. MIKSAD
    (D.C. Bar No. 996137)*
WILEY REIN LLP
    1776 K Street NW
    Washington, DC  20006
    Telephone:  (202) 719-7000
    Facsimile:   (202) 719-7049
Email: dweinberg@wileyrein.com
    rmiksad@wileyrein.com

WILLIAM K. RAWSON (D.C. Bar No. 367167)*
CLAUDIA M. O'BRIEN (D.C. Bar No. 447354)*
STACEY L. VANBELLEGHEM
    (D.C. Bar No. 988144)*
LATHAM & WATKINS LLP
    555 Eleventh Street, N.W., Suite 1000
    Washington, D.C. 20004-1304
    T: (202) 637-2200 F: (202) 637-2201
Email: william.rawson@lw.com
    claudia.o'brien@lw.com
    stacey.vanbelleghem@lw.com
ANDREA M. HOGAN (Ca. Bar No. 238209)
andrea.hogan@lw.com
    505 Montgomery Street, Suite 2000
    San Francisco, CA  94111-6538
    T: (415) 391-0600 F: (415) 395-8095

*Attorneys for Intervenor-Defendant CropLife America, et al.*

SETH GOLDBERG (CA Bar No. 153719)
sgoldberg@steptoe.com
CYNTHIA L. TAUB
    (D.C. Bar No. 445906)*
ctaub@steptoe.com
STEPTOE & JOHNSON LLP
    1330 Connecticut Avenue, NW
    Washington, DC 20036
    T: (202)429-3000 F: (202) 429-3902

*Attorneys for Intervenor-Defendant
American Chemistry Council*

J. MICHAEL KLISE
    (D.C. Bar No. 412420)*
jmklise@crowell.com
KIRSTEN L. NATHANSON (D.C. Bar
No. 463992)
DAVID MENOTTI (D.C. Bar No.
158089)
THOMAS R. LUNDQUIST
    (D.C. Bar No. 968123)
CROWELL & MORING LLP
    1001 Pennsylvania Ave., NW
    Washington, D.C. 20004-2595
    T:  202-624-2500 F:  202-628-5116

*Attorneys for Intervenor-Defendants
American Farm Bureau Federation, et al.*

THOMAS W. STOEVER, JR.
(Ca. Bar No. 150056)
Thomas.stoever@aporter.com
ARNOLD & PORTER LLP
    370 Seventeenth Street, Suite 4400
    Denver, CO 80202-1370
    T: (303) 863-1000 F: (303) 832-0428

*Attorney for Intervenor-Defendant Reckitt
Benckiser LLC*

*Admitted *pro hoc vice*

**In accord with Local Rule 5-1(i)(3), I attest that concurrence in the filing of this document has

been obtained from the other signatories who are listed on this signature page.

**Intervenor-Defendants' Motion
for a More Definite Statement
11-cv-293-JCS**