UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ENVIRONMENTAL PROTECTION AGENCY, et al.,<br><br>Defendants. | Case No. 11-cv-00293-JCS<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR MORE DEFINITE STATEMENT**<br><br>**Dkt. Nos. 168-69.** |

## I. INTRODUCTION

Before the Court are Motions for More Definite Statement ("Motions") filed by Federal Defendants and Intervenor Defendants (hereafter, "Intervenors") under Rule 12(e) of the Federal Rules of Civil Procedure. On April 22, 2013, the Court dismissed Plaintiffs' prior complaint, and Plaintiffs have since filed an Amended Complaint. Federal Defendants and Intervenors contend that the allegations in the Amended Complaint are so vague and ambiguous that they cannot reasonably respond in an answer or a motion to dismiss. The Court held a hearing on the Motions on November 22, 2013 at 9:30 a.m. For the reasons stated below, the Motions are GRANTED in part and DENIED in part.[1]

## II. BACKGROUND

### A. The Dismissal Order

Plaintiffs' previous complaint asserted one claim under the Endangered Species Act ("ESA") § 7(a)(2) regarding the Environmental Protection Agency's ("EPA") alleged failure to consult with respect to its oversight of 382 pesticide ingredients. This one claim also

---

[1] The parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c).

1  encompassed additional allegations that the EPA failed to reinitiate consultation with respect to
2  various pesticide ingredients discussed in the 1989 and 1993 Biological Opinions.

3  The Court dismissed the complaint on several grounds. *See Ctr. for Biological Diversity v.
4  E.P.A.*, No. 11-0293-JCS, 2013 WL 1729573 (N.D. Cal. Apr. 22, 2013); Dkt. No. 157 ("Dismissal
5  Order"). Most relevant for purposes of the instant Motions, the Court found that Plaintiffs had
6  failed to identify any "agency action" triggering the EPA's duty to consult under § 7, which
7  requires an allegation of both an affirmative act and the agency's discretionary control. *See Karuk
8  Tribe of California v. U.S. Forest Serv.*, 681 F.3d 1006, 1012 (9th Cir. 2012) *cert. denied*, 133 S.
9  Ct. 1579, 185 L. Ed. 2d 575 (U.S. 2013). The Court held that, with respect to each affirmative
10 action that triggers the duty to consult, Plaintiffs must also allege facts establishing standing,
11 jurisdiction and timeliness. *See id.* at 32-33.

12 The Court also dismissed Plaintiffs' allegations relating to the EPA's failure to reinitiate
13 consultation with respect to various pesticides discussed in the 1989 and 1993 Biological
14 Opinions. The Court noted that the allegations were "too general" and that Plaintiffs "must plead,
15 for a specific pesticide, that the agency had prior consultation, and facts showing that one more
16 more of the triggering events occurred." Dismissal Order at 16. The "triggering events" refer to
17 the factors listed in 50 C.F.R. § 402.16, which trigger an agency's duty to reinitiate consultation so
18 long as the agency retains discretionary control or involvement over a previous agency action. *See
19 id.* The requirement that Plaintiffs plead facts establishing standing, jurisdiction and timeliness
20 also applies to claims based on the EPA's alleged failure to reinitiate consultation. *Id.* at 32-33.

21 **B.    The Amended Complaint**

22 Plaintiffs filed an Amended Complaint that is 437 pages and contains 74 claims involving
23 50 pesticides. Claims 1 to 31 are "failure-to-consult" claims; claims 32 to 74 are "failure-to-
24 reinitiate-consultation" claims, which the Court refers to as "reinitiate" claims. Each claim relates
25 to one specific pesticide ingredient. With respect to several pesticide ingredients, Plaintiffs assert
26 both a failure-to-consult claim and a reinitiate claim.

27 In each failure-to-consult claim, Plaintiffs allege several actions undertaken by the EPA
28 with respect to the pesticide ingredient discussed in the claim. Because the allegations pertaining

2

to such actions are similar for each pesticide ingredient, the parties use particular pesticide ingredients as examples in their briefing. Specifically, Federal Defendants and Plaintiffs primarily discuss the allegations relating to the pesticide ingredient "trifluralin." For simplicity, the Court adheres to this practice and, unless otherwise noted, discusses the allegations relating to trifluralin as an example of allegations relating to all pesticide ingredients.

Trifluralin is discussed in four different parts of the Amended Complaint. These parts reflect: (1) factual allegations relating to the failure to consult on triflurain (Am. Compl. at 159-63; ¶¶ 769-86); (2) the Thirty-First Claim for Relief relating to the EPA's alleged failure to consult on trifluralin (*id*. at 399-400; ¶¶ 1777-85); (3) factual allegations relating to the failure to reinitiate consultation on triflurain (*id*. at 347-50; ¶¶ 1460-1476); and (4) the Seventy-Second Claim for Relief relating to the EPA's alleged failure to reinitiate consultation on trifluralin (*id*. at 433-34; ¶¶ 2106-13).

The factual allegations relating to EPA's alleged failure to consult on trifluralin are as follows:

> 769. EPA "affirmatively authorized" the use of trifluralin when it issued a Reregistration Eligibility Decision in August of 2004. As set forth above, EPA has discretion to influence or change registrations of pesticides for the benefit of protected species. For example, EPA may only register or reregister a pesticide if its use does not cause an unreasonable adverse effect on the environment. 7 U.S.C. § 136a(c)(5). EPA may also change, cancel, restrict, or immediately suspend registered pesticides, pesticide labeling, or particular uses at any time if it appears that the pesticide is causing an unreasonable adverse effect on the environment. 7 U.S.C. § 136d(c). Thus, EPA's registration of trifluralin is an "affirmative agency action" subject to consultation under Section 7(a)(2) of the ESA. 16 U.S.C. § 1536(a)(2).
>
> 770. Since this authorization of the use of trifluralin, EPA has retained discretionary control and involvement over this pesticide through the subsequent actions identified immediately below, as well as others which are summarized on these webpages maintained by EPA: http://www.epa.gov/oppsrrd1/reregistration/trifluralin/ (last visited May 8, 2013); http://iaspub.epa.gov/apex/pesticides/f?p=CHEMICALSEARCH:31:0::NO:1,3,31,7,12,25:P3_XCHEM ICAL_ID:4151 (last visited April 30, 2013).

771. EPA's subsequent actions on trifluralin show that EPA's registration of this pesticide is "ongoing and ha[s] a long-lasting effect," and that EPA has "continuing authority" over trifluralin regulation. Thus, EPA's continued discretionary control and involvement in the registration of trifluralin is "ongoing agency action" subject to consultation under Section 7(a)(2) of the ESA. 16 U.S.C. § 1536(a)(2). The ESA's citizen suit provision, 16 U.S.C. § 1540(g), independently authorizes a private right of action to compel EPA to comply with the ESA's consultation requirement for this action.

772. In July of 2012, EPA began reregistration review for trifluralin.

773. In August of 2004, EPA issued a TRED for trifluralin.

774. In September of 2006, EPA issued tolerances for trifluralin.

775. On October 17, 2006, EPA completed product reregistration for trifluralin. *See* http://www.epa.gov/pesticides/reregistration/product-rereg-schedule.htm (last visited April 26, 2013). Active product registrations for this pesticide can be found on EPA's Pesticide Product Label System, *available at* http://iaspub.epa.gov/apex/pesticides/f?p=PPLS:1 (last visited May 9, 2013). EPA provided no hearings or other public participation for these product registration actions.

776. As set forth above, EPA has discretion to influence or change registrations of pesticide products for the benefit of protected species. For example, EPA may only register or reregister a pesticide product if its use does not cause an unreasonable adverse effect on the environment. 7 U.S.C. § 136a(c)(5); 7 U.S.C. § 136a-1(g)(2)(C); 40 C.F.R. § 152.112; 40 C.F.R. § 152.113(a). EPA may also change, cancel, restrict, or immediately suspend registered pesticides, pesticide labeling, or particular uses at any time if it appears that the pesticide is causing an unreasonable adverse effect on the environment. 7 U.S.C. § 136d(c). Thus, EPA's completion of product reregistration and its approvals of products containing trifluralin are additional "affirmative agency actions" subject to consultation under Section 7(a)(2) of the ESA. 16 U.S.C. § 1536(a)(2).

777. EPA's final actions on products containing trifluralin do not follow a hearing and are therefore judicially reviewable by the district court under FIFRA § 16(a), 7 § U.S.C. 136n(a), as well as under the ESA's citizen suit provision, 16 U.S.C. § 1540(g).

Am. Compl. ¶¶ 769-77. Paragraphs 778 to 786 also discuss trifluralin and encompass Plaintiffs' allegations relating to standing.

The Thirty-First Claim for Relief relating to the EPA's alleged failure to consult contains the following allegations:

> 1777. All allegations set forth above in this Complaint are incorporated herein by reference.
>
> 1778. EPA "affirmatively authorized" the use of trifluralin through its registration and reregistration of the pesticide. EPA has discretion to influence or change this underlying agency activity for the benefit of protected species. For example, EPA may only register or reregister a pesticide if its use does not cause an unreasonable adverse effect on the environment. 7 U.S.C. § 136a(c)(5). EPA may also change, cancel, restrict, or immediately suspend registered pesticides, pesticide labeling, or particular uses at any time if it appears that the pesticide is causing an unreasonable adverse effect on the environment. 7 U.S.C. § 136d(c). Thus, EPA's registration of trifluralin is an "affirmative agency action" subject to consultation under Section 7(a)(2) of the ESA. 16 U.S.C. § 1536(a)(2).
>
> 1779. EPA has retained discretionary control and involvement over trifluralin through its subsequent actions set forth above in the Complaint. These subsequent actions taken by EPA on trifluralin show that registration of this pesticide has an "ongoing and long-lasting effect" and that EPA has "continuing authority" over regulation of this pesticide. Thus, EPA's continued discretionary control and involvement in the registration of trifluralin is "ongoing agency action" subject to consultation under Section 7(a)(2) of the ESA. 16 U.S.C. § 1536(a)(2).
>
> 1780. The actions subsequent to the registration, including product registration, as set forth above, constitute additional "affirmative agency actions" subject to consultation under Section 7(a)(2) of the ESA. 16 U.S.C. § 1536(a)(2).
>
> 1781. Because EPA's actions involving trifluralin "may affect" the listed species named in Exhibit A and their designated critical habitat, EPA is required to initiate consultation with the Service. 50 C.F.R. § 402.14(a); 50 C.F.R. § 402.16.
>
> 1782. EPA has not initiated consultation with the Service on the affected endangered and threatened species listed in Exhibit A or their designated critical habitat.
>
> 1783. EPA is violating Section 7(a)(2) of the ESA and its implementing regulations by failing to initiate consultation with the Service and by failing to ensure through consultation that its actions regarding trifluralin do not jeopardize the continued existence of endangered and threatened species or destroy or adversely modify

> designated critical habitat. 16 U.S.C. § 1536(a)(2); 50 C.F.R. Part 402.
>
> 1784. EPA's failure to consult on these actions constitutes violations of the ESA within the meaning of the ESA's citizen suit provision, 16 U.S.C. § 1540(g), which provides jurisdiction over this claim.
>
> 1785. In the alternative, EPA's registration of products containing trifluralin are final actions that do not follow a hearing, which are therefore judicially reviewable by the district court under FIFRA § 16(a), 7 § U.S.C. 136n(a).

Am. Compl. ¶¶ 1777-85.

With respect to the EPA's alleged failure to *reinitiate* consultation, Plaintiffs allege that "EPA's 1996 trifluralin RED notes that 'the endangered species LOC have been exceeded for birds, mammals, and semi-aquatic plants," *id*. ¶ 1461, that "Trifluralin is a known endocrine discrupter," *id*. ¶ 1462, that "Trifluralin is now known to be 'highly acutely toxic' or 'very highly acutely toxic' to … fish, amphibians, and curstaceans," *id*. ¶ 1463, that "USGS has detected trifluralin in dozens of waterways across the nation where susceptible species exist as well," *id*. ¶ 1464, that "[i]n 2006, EPA completed product reregistration for trifluralin and EPA has now issued new approvals for pesticide products since 1989," *id*. ¶ 1465, and that a variety of species and habitats (which are listed in paragraph 1466) have been listed as threatened or endangered or designated as critical since the issuance of the 1989 Biological Opinion, and may be affected by trifluralin, *id*. ¶ 1466. *See id*. ¶ 1467. These allegations purportedly give rise to Plaintiffs' Seventy-Second Claim for Relief. *See* Am. Compl. ¶¶ 2106-13.

### C. The Motions for More Definite Statement

The Federal Defendants and Intervenors filed separate Rule 12(e) Motions. Federal Defendants argue that despite referencing several actions pertaining to trifluralin, Plaintiffs do not clear specify *which* actions are intended to constitute the "affirmative act" that triggers the EPA's duty to consult. According to Federal Defendants, Plaintiffs must identify the specific affirmative acts that trigger the EPA's duty to consult, as well as the fact establishing jurisdiction, standing and timeliness for each affirmative act. Federal Defendants also challenge the fact Plaintiffs do not identify all product reregistrations, but rather cite certain websites, despite the fact Plaintiffs

appear−although ambiguously−to allege that such product reregistrations are affirmative acts triggering the duty to consult. Intervenors join the Federal Defendants in these contentions.

Federal Defendants make additional arguments, such that several of the alleged actions are either time-barred, not yet ripe, or would be subject to review provisions that limit jurisdiction to the courts of appeal. Federal Defendants state that some of the actions identified by Plaintiffs, such as product cancellations orders, cannot plausibly be said to have an adverse effect on threatened and endangered species. Federal Defendants further contend that Plaintiffs must allege an affirmative act that triggers the duty to reinitiate consultation.

Intervenors also make additional arguments. They challenge Plaintiffs' purported failure to plead more specific allegations as directed by the Court's previous order. Intervenors contend that allegations relating to standing are the same general and vague boilerplate allegations that were dismissed in the previous complaint, but are merely repeated for each pesticide ingredient in the Amended Complaint. With respect to the reinitiate claims, Intervenors argue that Plaintiffs fail to state the factors that trigger the EPA's duty to reinitate consultation, and further fail to support their conclusory allegations with specific facts relating to each trigger.

In opposition to both Motions, Plaintiffs argue that they clearly identify the affirmative acts undertaken by the EPA which triggers their duty to consult, as well as the factors that trigger the EPA's duty to reinitiate consultation. Plaintiffs contend that the arguments raised by Federal Defendants and Intervenors are improper for a Rule 12(e) motion, as they do not speak to the clarity or intelligibility of the Amended Complaint, but rather the sufficiency or merits of the allegations. Plaintiffs also accuse Federal Defendants and Intervenors of bringing these Motions in an attempt to limit the alternative theories of liability asserted in the Amended Complaint.

### III.     LEGAL STANDARD

Federal Rule of Civil Procedure 12(e) provides that a party may move for a more definite statement of a pleading that is "so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). Such a motion "must be considered in light of the liberal pleading standards set forth in Rule 8(a)(2)." *Comm. for Immigrant Rights of Sonoma County v. County of Sonoma*, 644 F. Supp. 2d 1177, 1191 (N.D. Cal. 2009). Rule 8 requires only "sufficient

allegations to put defendants fairly on notice of the claims against them." *McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991). Thus, "the proper test in evaluating a Rule 12(e) motion is whether the complaint provides the defendant with a sufficient basis to frame his responsive pleadings." *Fed. Sav. & Loan Ins. Corp. v. Musacchio*, 695 F. Supp. 1053, 1060 (N.D. Cal. 1988). "The rule is aimed at unintelligibility rather than lack of detail and is only appropriate when the defendants cannot understand the substance of the claim asserted." *Griffin v. Cedar Fair, L.P.*, 817 F. Supp. 2d 1152, 1156 (N.D. Cal. 2011). Courts are instructed not to resolve "merits issues, especially fact-sensitive questions, on Rule 12(e) motions." *One Indus., LLC v. Jim O'Neal Distrib.*, 578 F.3d 1154, 1160 (9th Cir. 2009).

## IV. DISCUSSION

Several of the arguments raised by Federal and Intervenors Defendants in the Rule 12(e) Motions go to the sufficiency and merits of Plaintiffs' allegations, and therefore, are improperly raised on a Rule 12(e) motion. *Jim O'Neal Distrib.*, 578 F.3d at 1160. Therefore, the Court will not address arguments that Plaintiffs alleged affirmative acts (1) that took place outside the statute of limitations, (2) that are not yet ripe, (3) that cannot reasonably be said to adversely affect threatened and endangered species, (4) for which the Plaintiffs do not have standing, and/or (5) give rise to exclusive jurisdiction in the courts of appeal.

The Court agrees, however, with certain arguments raised in the Motions regarding the Amended Complaint's inadequate identification of the specific affirmative agency acts which trigger the duty to consult under ESA § 7(a)(2). As the Court held in the Dismissal Order, the duty to consult is only triggered when the EPA undertakes an affirmative agency act with respect to a pesticide ingredient. Indeed, "[w]here private activity is proceeding pursuant to a vested right or to a previously issued license, an agency has no duty to consult under Section 7 if it takes no further affirmative action regarding the activity." *Karuk Tribe*, 681 F.3d at 1021. Moreover, several other questions depend on the affirmative act identified, including whether the ESA claim is timely, whether Plaintiffs have standing to bring the claim, and whether this Court has jurisdiction over that particular claim. Accordingly, clear identification of specific affirmative act or acts that trigger the duty to consult is of the utmost importance.

The Amended Complaint is vague and ambiguous in this respect. As currently pled, the Thirty-First Claim for Relief encompasses one, two, three or several affirmative acts−it is unclear. Plaintiffs allege that "EPA's registration of trifluralin is an 'affirmative agency action' subject to consultation under Section 7(a)(2) of the ESA." Am. Compl. ¶ 1778. In the same paragraph, Plaintiffs allege that "EPA 'affirmatively authorized' the use of trifluralin through its registration and reregistration of the pesticide." *Id*. Two paragraphs down, Plaintiffs allege that "actions subsequent to the registration, including product registration, as set forth above, constitutes additional 'affirmative agency actions' subject to consultation under Section 7(a)(2) of the ESA." *Id*. ¶ 1780. Presumably, this sentence incorporates the factual allegations relating trifluralin, which contain several more agency actions, including the completion of product reregistrations for all products containing trifluralin, the reregistration of each particular product containing trifluralin, or both−it is unclear. *See id*. ¶¶ 771, 775-76.

Further obscuring the Amended Complaint is the fact that some alleged affirmative acts are not even identified. In their opposition briefs, Plaintiffs clarify that the references to product reregistrations have two purposes. In addition to establishing the factual basis of the EPA's discretionary control over its prior actions, Plaintiffs also allege that the product reregistrations are themselves affirmative acts triggering the duty to consult. Opp. at 4; *see also* Am. Compl. ¶ 776 ("EPA's … approvals of products containing trifluralin are additional 'affirmative agency actions' subject to consultation under Section 7(a)(2) of the ESA."). Nevertheless, Plaintiffs fail to specify any particular product reregistration that contains trifluralin, and instead, merely reference a website that shows "[a]ctive product registrations for this pesticide…." Am. Compl. ¶ 775.

Federal Defendants and Intervenors cannot reasonably respond to such allegations. The affirmative agency actions must be clearly identified so Federal Defendants and Intervenors may fairly evaluate whether to assert a facial challenge to standing, statute of limitations or jurisdiction. The affirmative acts must also appear on the face of the Complaint. Plaintiffs contend that "for trifluralin and 14 other pesticides that have dozens of currently registered products, … it was more practical to reference the EPA's website (rather than individually list all the products reregistrations in the Amended Complaint)." Pl. Opp. to Fed. Defs' Motion at 5. This is

insufficient. If it is too difficult even for Plaintiffs to identify the particular product reregistrations which allegedly trigger the duty to consult—much less assert the facts giving rise to standing, jurisdiction and timeliness, then it is unreasonable for Federal Defendants and Intervenors to prepare a response with respect to such product reregistrations.

Accordingly, in an amended complaint, for each cause of action encompassing one or more failure-to-consult claims, Plaintiffs shall provide an exhaustive list of every affirmative act that triggered the duty to consult. Plaintiffs shall also provide the date of such affirmative act to the best of their knowledge. Plaintiffs may establish the basis for jurisdiction and standing elsewhere in the Complaint.

\*      \*      \*

Plaintiffs need not amend their reinitiate claims. Contrary to Federal Defendant's contention, the reinitiate claims are not similarly triggered by an affirmative agency action, but rather, are triggered by the factors listed in 50 C.F.R. § 402.16. The Amended Complaint identifies which § 402.16 factors trigger the agency's duty to reinitiate consultation. *See, e.g.*, Am. Compl. ¶¶ 1461-67. Moreover, unlike the unidentified product reregistrations in the failure-to-consult claims, the triggers upon which Plaintiffs seek to rely for the reinitiate claims are identified in the Amended Complaint. *See, e.g.*, Am. Compl. ¶¶ 1461-66. While Plaintiffs refer to unidentified "[a]dditional information" in the EPA's possession, they do not allege that such information *triggers* the EPA's duty to reinitiate consultation. This may be inferred from the order of the allegations. *See* Am. Compl. ¶ 1467 ("The *above* information reveals that triggers for reinitiation of formal consultation have occurred in regard to trifluralin.") (emphasis added); ¶ 1468 ("Additional information also likely exists in the possession of the EPA….").

The heart of Intervenors' argument is that Plaintiffs fail to allege sufficient facts which would show that the EPA's duty to reinitiate consultation was actually triggered. *See, e.g.*, Inter. Motion at 10 ("Plaintiffs provide long lists of species listed since the Biological Opinion, which Plaintiffs allege 'may' have been affected, without making any allegations as to *how* any of the species could be impacted by the active ingredient.") (emphasis added). This argument speaks to

10

the sufficiency of Plaintiffs' allegations, however, and will not be addressed on a Rule 12(e) motion.

## V. CONCLUSION

For the foregoing reasons, the Motions for a More Definite Statement are GRANTED in part and DENIED in part.

**IT IS SO ORDERED**.

Dated: November 25, 2013

_____
JOSEPH C. SPERO
United States Magistrate Judge
11