LATHAM & WATKINS LLP
Claudia M. O'Brien (D.C. Bar No. 447354)*
claudia.o'brien@lw.com
William K. Rawson (D.C. Bar No. 367167)*
william.rawson@lw.com
Stacey L. VanBelleghem
        (D.C. Bar No. 988144)*
stacey.vanbelleghem@lw.com
        555 Eleventh Street, NW, Suite 1000
        Washington, D.C. 20004-1304
        T: (202) 637-2200 F: (202) 637-2201

Andrea M. Hogan (Ca. Bar No. 238209)
andrea.hogan@lw.com
        505 Montgomery Street, Suite 2000
        San Francisco, CA 94111-6538
        T: (415) 391-0600 F: (415) 395-8095

WILEY REIN LLP
David B. Weinberg (D.C. Bar No. 186247)*
dweinberg@wileyrein.com
Roger H. Miksad (D.C. Bar No. 996137)*
rmiksad@wileyrein.com
        1776 K Street NW
        Washington, DC 20006
        T: (202) 719-7000 F: (202) 719-7049
*Attorneys for Intervenor-Defendants CropLife
America, et al.*

* Admitted *pro hac vice*

STEPTOE & JOHNSON LLP
Seth Goldberg (Ca. Bar No. 153719)
sgoldberg@steptoe.com
Cynthia L. Taub (D.C. Bar No. 445906)*
ctaub@steptoe.com
        1330 Connecticut Avenue, NW
        Washington, DC 20036
        T: (202) 429-3000 F: (202) 429-3902
*Attorneys for Intervenor-Defendant
American Chemistry Council*

ARNOLD & PORTER LLP
Thomas W. Stoever, Jr. (Ca. Bar No.
150056)
thomas.stoever@aporter.com
        370 Seventeenth Street, Suite 4400
        Denver, CO 80202-1370
        T: (303) 863-1000 F: (303) 832-0428
*Attorney for Intervenor-Defendant Reckitt
Benckiser LLC*

CROWELL & MORING LLP
Kirsten L. Nathanson (D.C. Bar No.
463992)*
David Menotti (D.C. Bar No. 158089)
Thomas R. Lundquist (D.C. Bar No.
968123)
        1001 Pennsylvania Ave., NW
        Washington, D.C. 20004-2595
        T: (202) 624-2500 F: (202) 628-5116
*Attorneys for Intervenor-Defendants
American Farm Bureau Federation, et al.*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, *et al.*,<br><br>                    Plaintiffs,<br><br>        v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, *et al.*,<br><br>                    Defendants,<br><br>        and<br><br>CROPLIFE AMERICA, *et al.*<br><br>                    Intervenor-Defendants. | CASE NO. 11-CV-293-JCS<br><br>**INTERVENOR-DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS AND MEMORANDUM IN SUPPORT**<br><br>(The Honorable Joseph C. Spero)<br><br>Date:    August 8, 2014<br><br>Time:  9:30 am<br><br>Place:    Courtroom G - 15th Floor |

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................. ii

NOTICE OF MOTION AND MOTION TO DISMISS ....................................................... 1

I.  INTRODUCTION ..................................................................................................... 2

II.  BACKGROUND ....................................................................................................... 4

    A.  Statutory and Regulatory Background ......................................................... 4

    B.  Procedural History ...................................................................................... 4

III.  STANDARD OF REVIEW ...................................................................................... 4

    A.  Standard of Review Under Fed. R. Civ. P. 12(b)(1)..................................... 4

    B.  Standard of Review Under Fed. R. Civ. P. 12(b)(6)..................................... 5

IV.  ARGUMENT ............................................................................................................ 5

    A.  Plaintiffs' Failure To Consult Claims Must Be Dismissed For Lack
        of Subject Matter Jurisdiction Pursuant To Fed. R. Civ. P. 12(b)(1)
        Or Failure To State A Claim Under Fed. R. Civ. P. 12(b)(6) .............................. 5

        1.  Plaintiffs' Attempts To Base Failure To Consult Claims On
            REDs And/Or "Continuing Authority" Should Be
            Dismissed Under The Law Of The Case Doctrine ...................... 6

        2.  Plaintiffs' Challenges To Individual End Product
            Approvals Are Collateral Attacks On The Underlying
            REDs And Thus Are Subject To The Exclusive Review
            Provision In FIFRA Section 16(b) ............................................. 9

    B.  All Of Plaintiffs' Failure To Reinitiate Consultation Claims Must
        Be Dismissed For Failure To State A Claim Under Fed. R. Civ. P.
        12(b)(1) And Fed. R. Civ. P. 12(b)(6) .................................................... 15

        1.  The SAC Alleges No Actions Sufficient To Support A
            Claim Under Section 402.16.................................................... 15

        2.  The Services' Regulations Are Not Binding On EPA .......................... 18

        3.  To State A Reinitiation Claim, Plaintiffs Would Have To
            Find Authority In Section 7 And Allege Sufficient Facts To
            Meet The Requirements Of *Iqbal* And *Twombly*, But The
            SAC Does Not.......................................................................... 19

V.  CONCLUSION.......................................................................................................... 21

1

## TABLE OF AUTHORITIES

2

### CASES

Page(s)

*Adams Fruit Co. v. Barrett*,
    494 U.S. 638 (1990)................................................................19

*American Bird Conservancy v. FCC*,
    545 F.3d 1190 (9th Cir. 2008) ...........................................8, 11

*AMVAC Chemical Corp. v. United States EPA*,
    653 F.2d 1260 (9th Cir. 1980) ..............................................12

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).................................................................5

*Barron v. Reich*,
    13 F.3d 1370 (9th Cir. 1994) ..................................................4

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007)......................................................5, 16, 21

*California Save Our Streams Council, Inc. v. Yeutter*,
    887 F.2d 908 (9th Cir. 1989) ......................................11, 12, 13

*California Sportfishing Protection Alliance v. FERC*,
    472 F.3d 593 (9th Cir. 2006) ...................................................8

*Chrysler Corp. v. Brown*,
    441 U.S. 281, 295 (1979).........................................................19

*City of Tacoma v. Taxpayers of Tacoma*,
    357 U.S. 320 (1958)...........................................................11, 12

*Conservation Force v. Salazar*,
    646 F.3d 1240 (9th Cir. 2011) ...........................................5, 20

*Coos County Board of County Commissioners v. Kempthorne*,
    531 F.3d 792 (9th Cir. 2008) ....................................................7

*Council for Endangered Species Act Reliability v. Jackson*,
    No. CV-10-8254-SMM, 2011 U.S. Dist. LEXIS 135635 (D. Ariz. Nov. 23, 2011) ..........7, 11

*Florida Power & Light v. Lorion*,
    470 U.S. 729 (1985).................................................................14

*Gonzales v. Oregon*,
    546 U.S. 243 (2006)..................................................................21

*Karuk Tribe of California v. United States Forest Service*,
    681 F.3d 1006 (9th Cir. 2012), *cert. denied*, 133 S. Ct. 1579 (2013)......................................8

*Lanza v. Ashcroft*,
    389 F.3d 917 (9th  Cir. 2004) ....................................................4

**Page(s)**

*Lujan v. Defenders of Wildlife,*
504 U.S. 555 (1992)........................................................................................................18, 19

*McCulloch Interstate Gas Corp. v. Federal Power Commission,*
536 F.2d 910 (10th Cir. 1976) ...............................................................................................12

*Milgard Tempering, Inc. v. Selas Corp. of America,*
902 F.2d 703 (9th Cir. 1990) ...................................................................................................2

*Moss v. United States Secret Service,*
572 F.3d 962 (9th Cir. 2009) ...................................................................................................5

*Natural Resources Defense Council v. Jewell,*
No. 09-17661, 2014 U.S. App. LEXIS 7063 (9th Cir. Apr. 16, 2014)....................................8

*Pesticide Action Network North America v. United States EPA,*
No. C 08-1814 MHP, 2008 U.S. Dist. LEXIS 98572 (N.D. Cal. Dec. 5, 2008) ................7, 11

*Pit River Home & Agricultural Cooperative Association v. United States,*
30 F.3d 1088 (9th Cir. 1994) ..........................................................................................2, 8, 9

*Plechner v. Widener College, Inc.,*
569 F.2d 1250 (3d Cir. 1977)................................................................................................10

*Public Utility Commissioner of Oregon v. Bonneville Power Administration,*
767 F.2d 622 (9th Cir. 1985) ...........................................................................................13, 14

*Republican Party of Guam v. Gutierrez,*
277 F.3d 1086 (9th Cir. 2002) ...............................................................................................10

*Safe Air for Everyone v. Meyer,*
373 F.3d 1035 (9th Cir. 2004) .................................................................................................4

*Sierra Club v. Marsh,*
816 F.2d 1376 (9th Cir. 1987) ...............................................................................................19

*Steel Co. v. Citizens for a Better Environment,*
523 U.S. 83 (1998)...................................................................................................................4

*Telecommunications Research & Action Center v. FCC,*
750 F.2d 70 (D.C. Cir. 1984) .................................................................................................14

*Tennessee Valley Authority v. Hill,*
437 U.S. 153 (1978)..................................................................................................................8

*Turtle Island Restoration Network v. United States Department of Commerce,*
438 F.3d 937 (9th Cir. 2006) ..................................................................................................11

*United Farm Workers v. EPA,*
592 F.3d 1080 (9th Cir. 2010) .................................................................................................7

*United States v. 14.02 Acres of Land More or Less in Fresno County,*
547 F.3d 943 (9th Cir. 2008) ...................................................................................................4

**Page(s)**

*United States ex rel. Lee v. Corinthian Colleges,*
    655 F.3d 984 (9th Cir. 2011) .................................................................................5, 18

*Washington Toxics Coalition v. United States Department of Interior,*
    457 F. Supp. 2d 1158 (W.D. Wash. 2006)..................................................................20

*Wind River Mining Corp. v. United States,*
    946 F.2d 710 (9th Cir. 1991) .......................................................................................7


**STATUTES, RULES, REGULATION AND LEGISLATIVE MATERIALS**

7 U.S.C. § 136(bb) ..........................................................................................................10

7 U.S.C. § 136a(a) .............................................................................................................3

7 U.S.C. § 136a(c)(4) .........................................................................................................7

7 U.S.C. § 136a(c)(5) .......................................................................................................10

7 U.S.C. § 136a(g) .............................................................................................................3

7 U.S.C. § 136n(b) .............................................................................................................7

16 U.S.C. § 1536 ..............................................................................................................16

16 U.S.C. § 1536(a)(2).................................................................................................19, 20

16 U.S.C. § 1540(f) ..........................................................................................................20

28 U.S.C. § 2401(a) ...........................................................................................................7

Agricultural Act of 2014, Pub. L. No. 113-79, 128 Stat. 649 ..........................................3

40 C.F.R. § 154.7 ...............................................................................................................4

40 C.F.R. § 155.50(b) ........................................................................................................7

40 C.F.R. § 158.130(h)(1) ...............................................................................................10

50 C.F.R. § 402.16(b) ......................................................................................................16

50 C.F.R. § 402.16(c) .......................................................................................................17

50 C.F.R. § 402.16(d) .......................................................................................................17

48 Fed. Reg. 29,990 (June 29, 1983) ..............................................................................21

51 Fed. Reg. 19,926 (June 3, 1986) ...........................................................................18, 21

Fed. R. Civ. P. 12(b)(1)......................................................................................................9

Fed. R. Civ. P. 12(b)(6)......................................................................................................9

                                                                                **Page(s)**

H.R. Rep. No. 100-928 (1988), *reprinted in* 1988 U.S.C.C.A.N. 2738 ..........................................3

### OTHER AUTHORITIES

EPA, *Interim Approaches for National-Level Pesticide Endangered Species Act
     Assessments Based on the Recommendations of the National Academy of Sciences*
     (Apr. 2013), *available at* http://www.epa.gov/oppfead1/endanger/2013/
     interagency.pdf..................................................................................................................3

EPA, *Status of Pesticides in Registration, Reregistration, and Special Review (aka
     Rainbow Report)* (Spring 1998)..................................................................................10

FWS & NMFS, *ESA Section 7 Consultation Handbook* (Mar. 1998), *available at*
     http://www.nmfs.noaa.gov/pr/pdfs/laws/esa_section7_handbook.pdf ....................................19

1

**<u>NOTICE OF MOTION AND MOTION TO DISMISS</u>**

2     Notice is hereby given that on August 8, 2014, at 9:30 a.m., or as soon thereafter as the

3   case may be heard, in the Courtroom of the Honorable Joseph C. Spero (Courtroom G - 15th

4   Floor), Intervenor-Defendants CropLife America, Responsible Industry for a Sound

5   Environment, Southern Crop Production Association, Western Plant Health Association, Mid

6   America CropLife Association, American Chemistry Council, Reckitt Benckiser LLC, American

7   Farm Bureau Federation, National Agricultural Aviation Association, National Alliance of Forest

8   Owners, National Association of Corn Growers, National Cotton Council, National Council of

9   Farmer Cooperatives, National Potato Council, Oregonians for Food and Shelter, USA Rice

10   Federation, and Washington Friends of Farms and Forests (collectively "Intervenor-Defendants")

11   will and hereby do respectfully move to dismiss Plaintiffs' Second Amended Complaint under

12   Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and under Federal

13   Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.[1]

14     This Motion is based upon the Memorandum of Points and Authorities in Support thereof

15   and all pleadings and papers filed in this action, and upon such matters the Court may entertain.

16   For the reasons set forth below, Intervenor-Defendants request that the Court grant the relief

17   requested and dismiss the case in its entirety for both lack of jurisdiction under Rule 12(b)(1) and

18   failure to state a claim under Rule 12(b)(6).

19

20

21

22

23

24

25

26

27

28

[1] Pursuant to joint stipulation approved by this Court on February 5, 2014 (ECF No. 202), Federal Defendants separately filed a Motion to Dismiss on May 5, 2014 (ECF No. 203).

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

### I.   INTRODUCTION

Plaintiffs' Second Amended Complaint ("SAC") (ECF No. 198) should be dismissed in its entirety.  Intervenor-Defendants largely agree with the reasoning set forth in the Federal Defendants' Memorandum, and thus focus here on only a few aspects of the SAC's deficiencies.

The failure to consult claims that make up the first paragraphs of the SAC continue to rely on Reregistration Eligibility Decisions ("REDs") that this Court has determined are not subject to this Court's subject matter jurisdiction or are outside the statute of limitations.  They also repeat the previously rejected theory that failure to consult claims can be based on the Environmental Protection Agency's ("EPA") "continuing authority" over each active ingredient and "continued discretionary control and involvement."  But the Court's prior ruling is the law of the case.  *See, e.g., Pit River Home & Agric. Coop. Ass'n v. United States*, 30 F.3d 1088, 1097 (9th Cir. 1994); *Milgard Tempering, Inc. v. Selas Corp. of Am.*, 902 F.2d 703, 715 (9th Cir. 1990).  Therefore, those theories cannot sustain the SAC.

In an apparent effort to circumvent this Court's prior rejection of these theories, the SAC for the first time also alleges that each of EPA's hundreds of post-RED individual product approvals is an action that requires consultation under the Endangered Species Act ("ESA") that renders jurisdiction proper in this court.  Yet, the individual product approvals implement restrictions on the active ingredients determined in the REDs.  Plaintiffs do not allege that anything more occurred here with respect to any of the active ingredients in their SAC.  Plaintiffs' allegations pertaining to individual product approvals thus are simply collateral attacks on the REDs themselves.  These latest attempts to plead around the exclusive review provision in Section 16(b) of the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA") also should be rejected.

Plaintiffs' failure to reinitiate consultation claims also fail to meet the standards of Fed. R. Civ. P. 12(b)(1) or 12(b)(6).  First, as the Federal Defendants have explained, the SAC fails to identify any EPA actions, under the Services' regulation, which were previously the subject of consultation for which consultation could be reinitiated.  Second, even if the SAC did, the

1    provisions of 50 C.F.R. § 402.16 are not binding on EPA and thus do not provide a basis on

2    which Plaintiffs could state a claim.  Consequently, to the extent Plaintiffs allege a violation of

3    Section 402.16, they have failed to plead a cognizable legal theory.  Finally, Plaintiffs'

4    reinitiation claims cannot rest on the text of ESA Section 7 alone, because the text makes no

5    reference to reinitiation and Plaintiffs have failed to allege any affirmative agency actions by

6    EPA that would trigger a duty to consult.  In considering both Intervenor-Defendants' and the

7    Federal Defendants' Motions, the Court should also keep in mind the sound policy reasons for

8    terminating this litigation once and for all.

9           EPA has made clear repeatedly its commitment to meeting its ESA obligations for

10   existing pesticide products through "Registration review"—a statutory requirement under FIFRA

11   for EPA to review pesticide registrations every 15 years.  7 U.S.C. § 136a(a), (g).[2]  That process

12   is underway with a number of registration review "dockets" already opened, as documented in

13   Federal Defendants' Motion to Dismiss.  *See* ECF No. 203 at 5 (May 5, 2014) ("EPA Motion").

14   But this litigation threatens to undermine Registration review by diverting limited Agency

15   resources.  Recognizing the critical importance of pesticide products to our economy, American

16   agriculture, and a stable and affordable food supply, Congress in 1988 directed that the ESA be

17   implemented "in a way . . . minimizing, where possible, impacts on production of agricultural

18   foods and fiber commodities."[3]  More recently, in this year's Farm Bill, Congress again directed

19   EPA and the United States Fish and Wildlife Service and the National Marine Fisheries Service

20   (the "Services") to minimize delays in accommodating the requirements of FIFRA and the ESA.[4]

21   Further, this Court has acknowledged that Plaintiffs have other avenues for raising concerns

22   regarding specific active ingredients.  Order Granting Motion to Intervene; Granting Motions to

---

[2] *See, e.g.*, EPA, Interim Approaches for National-Level Pesticide Endangered Species Act Assessments Based on the Recommendations of the National Academy of Sciences (April 2013), *available at* http://www.epa.gov/oppfead1/endanger/2013/interagency.pdf.

[3] H.R. Rep. No. 100-928, at 23-24 (1988) (Conf. Rep.), *reprinted in* 1988 U.S.C.C.A.N. 2738, 2741-42.

[4] Agricultural Act of 2014, Pub. L. No. 113-79, § 10013(a)(2), 128 Stat. 649, 951 (EPA and the Services shall submit reports to Congress on efforts "to otherwise minimize delays in integrating . . . the pesticide registration and registration review requirements of [FIFRA]; and . . . the species and habitat protection processes described in sections 7 and 10 of the [ESA]").

Case Number: 11-cv-293-JCS
Intervenor-Defendants' Motion to Dismiss

1   Dismiss and Dismissing Complaint with Leave to Amend at 31 (Apr. 22, 2013), ECF No. 157

2   ("Order") (citing 40 C.F.R. § 154.7).  Plaintiffs have had sufficient opportunity to distract EPA

3   from these obligations, and this case should now be dismissed with prejudice.

4   **II.   BACKGROUND**

5        **A.   Statutory and Regulatory Background**

6        Intervenor-Defendants incorporate by reference the statutory and regulatory background

7   presented in Federal Defendants' Motion to Dismiss.  *See* EPA Motion at 2-6.

8        **B.   Procedural History**

9        Intervenor-Defendants incorporate by reference the procedural history set forth in Federal

10  Defendants' Motion to Dismiss.  *See* EPA Motion at 6-10.

11  **III.  STANDARD OF REVIEW**

12       **A.   Standard of Review Under Fed. R. Civ. P. 12(b)(1)**

13       Where a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P.

14  12(b)(1) takes the form of a "facial attack," as here, "the challenger asserts that the allegations

15  contained in a complaint are insufficient on their face to invoke federal jurisdiction."  *Safe Air*

16  *for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  Plaintiffs bear the burden of

17  proving subject matter jurisdiction, since they are the party asserting it.  *See Lanza v. Ashcroft*,

18  389 F.3d 917, 930 (9th Cir. 2004).  "'Without jurisdiction the court cannot proceed at all in any

19  cause.'" *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (citation omitted).  The

20  Court may consider the facts alleged in the complaint as well as those of which it may take

21  judicial notice, including administrative dockets. *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir.

22  1994) (taking judicial notice of facts on facial jurisdictional attack); *United States v. 14.02 Acres*

23  *of Land More or Less in Fresno Cnty.*, 547 F.3d 943, 955 (9th Cir. 2008) (judicial notice is

24  proper for records of administrative action).

25       Moreover, recognizing that the burden is on Plaintiffs to demonstrate the basis for

26  jurisdiction, this Court has expressly admonished Plaintiffs to allege specific facts supporting

27  jurisdiction for each claim.  Order at 32 (finding that Plaintiffs "must plead facts showing how

28  this Court has jurisdiction under FIFRA § 16(a) for the affirmative actions alleged—or that the

1    specific affirmative acts fall outside the ambit of FIFRA § 16").

2        **B.    Standard of Review Under Fed. R. Civ. P. 12(b)(6)**

3        The Supreme Court has required that a plaintiff's complaint provide sufficient factual

4    "heft" to "plausibly" establish the alleged violations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

5    557 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 674, 680 (2009). This "requires more than labels

6    and conclusions." *Twombly*, 550 U.S. at 555. A plaintiff must actually plead "factual content"

7    to support its claims. *Iqbal*, 556 U.S. at 678.

8        To meet these standards, a court must determine whether the complaint "contains

9    'sufficient factual matter' that, taken as true, 'state[s] a claim for relief . . . plausible on its face.'"

10   *United States ex rel. Lee v. Corinthian Colleges*, 655 F.3d 984, 991 (9th Cir. 2011) (alterations

11   added) (quoting *Iqbal*); *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). If

12   there is "a lack of a cognizable legal theory or the absence of sufficient facts alleged under a

13   cognizable legal theory," the court must dismiss the complaint under Fed. R. Civ. P. 12(b)(6) for

14   failing to meet the requirements of Fed. R. Civ. P. 8(a). *Conservation Force v. Salazar*, 646

15   F.3d 1240, 1241-42 (9th Cir. 2011) (citations and internal quotation marks omitted).

16       In assessing a plaintiff's complaint, a court first must identify the factual elements legally

17   required to establish the plaintiff's claims. *Iqbal*, 556 U.S. at 675-77. Second, the court must

18   separate factual allegations from "pleadings that, because they are no more than conclusions, are

19   not entitled to the assumption of truth." *Id.* at 679. Third, the court must "draw upon its judicial

20   experience and common sense" to determine on a "context-specific task" whether the "well-

21   pleaded facts" rise to the level of plausibility rather than the "mere possibility of misconduct."

22   *Id.*

23   **IV.    ARGUMENT**

24       **A.    Plaintiffs' Failure To Consult Claims Must Be Dismissed For Lack of Subject
             Matter Jurisdiction Pursuant To Fed. R. Civ. P. 12(b)(1) Or Failure To State
25           A Claim Under Fed. R. Civ. P. 12(b)(6)**

26       This Court has made clear that the burden is on Plaintiffs to plead sufficient facts to

27   support jurisdiction. *See* Order at 22 ("Plaintiffs bear the burden of showing the basis for subject

28   matter jurisdiction" and if FIFRA's jurisdictional provisions apply, "Plaintiffs must show why

each particular claim is governed by FIFRA § 16(a) rather than § 16(b) to establish this Court's jurisdiction."). Plaintiffs now have had three chances to meet this standard, but have not. Plaintiffs' latest attempt to plead around FIFRA Section 16(b) and the Court's prior order raises the very concerns the Court has previously expressed about the potential for inconsistent rulings and waste of judicial resources if identical claims can be litigated in multiple courts, and should be rejected.

In fact, as the Federal Defendants have noted, Plaintiffs made very few changes to the failure to consult claims of their prior efforts in the SAC. It retains a boilerplate approach, repeating the same allegations verbatim for each active ingredient for which Plaintiffs allege a failure to consult. The SAC also restates allegations that this Court has already dismissed as outside of the Court's subject matter jurisdiction, beyond the statute of limitations, or inadequate to state a claim upon which relief can be granted.

The main difference between the consultation claims of the SAC from its predecessor is that Plaintiffs added tables listing numerous individual product reregistrations and product approvals. *See, e.g.*, SAC ¶¶120, 145, 169, 192, 217. Plaintiffs allege that these individual product approvals were "affirmative actions" that triggered ESA consultation requirements and are subject to the Court's jurisdiction under FIFRA Section 16(a). However, as explained below, Plaintiffs do no allege any claims beyond the REDs for those individual product approvals. As such, Plaintiffs' allegations regarding the product approvals are collateral challenges indistinguishable from their attacks on the REDs. Moreover, the REDs are subject to exclusive review of the courts of appeals under FIFRA Section 16(b), not before this Court.

     **1.**     **Plaintiffs' Attempts To Base Failure To Consult Claims On REDs And/Or "Continuing Authority" Should Be Dismissed Under The Law Of The Case Doctrine**

Plaintiffs continue to base their failure to consult claims in part upon REDs that were issued more than six years prior to the filing of their initial complaint and/or which followed a public hearing. *See, e.g.*, SAC ¶¶ 1566, 1576, 1586. Plaintiffs also rely upon EPA's alleged "continued discretionary control and involvement" with the active ingredient. *See, e.g.*, SAC ¶¶ 1567, 1577, 1587. This Court explained in its April 22, 2013 Order why failure to consult

1   claims based on these allegations must be dismissed (Order at 14) and the law of the case

2   doctrine requires the same action here.[5]

3       The rationale for this Court's prior rulings is straightforward and we simply summarize it

4   here.  *First*, FIFRA Section 16(b), 7 U.S.C. § 136n(b), imposes a sixty-day statute of limitations

5   for seeking judicial review of EPA actions subject to it.  That period has passed for the REDs

6   cited in the SAC.  *See* EPA Motion at 13 & n.9, Exhibit A (listing issuance dates far beyond 60

7   days of filing of the initial complaint for all REDs cited in the SAC).  And the REDs are subject

8   to FIFRA Section 16(b) because, "[i]n the case of actual controversy as to the validity of any

9   order" issued "following a public hearing," jurisdiction lies exclusively within the court of

10  appeals, and EPA's registration and reregistration decisions are "order[s]."  7 U.S.C. § 136n(b);

11  *see United Farm Workers v. EPA*, 592 F.3d 1080, 1083 (9th Cir. 2010) (holding that a decision

12  to reregister a pesticide is an order following a public hearing); *Council for Endangered Species*

13  *Act Reliability v. Jackson*, No. CV-10-8254-SMM, 2011 U.S. Dist. LEXIS 135635, at *4 (D.

14  Ariz. Nov. 23, 2011) (same); *Pesticide Action Network N. Am. v. U.S. EPA*, No. C 08-1814

15  MHP, 2008 U.S. Dist. LEXIS 98572, at *10 (N.D. Cal. Dec. 5, 2008).  Thus, as the Court held in

16  its prior order, "if the registration actions follow a public hearing as interpreted by the Ninth

17  Circuit in *United Farm Workers*, the court of appeals has exclusive jurisdiction under FIFRA §

18  16(b)."  Order at 21.

19      Plaintiffs plead no facts suggesting that any of the REDs the SAC challenges did not

20  follow a public hearing.  This is not surprising:  REDs generally are subject to public notice and

21  comment.  *See, e.g.*, 7 U.S.C. § 136a(c)(4); 40 C.F.R. § 155.50(b).  Thus, the SAC fails to assert

22  facts sufficient to overcome the Court of Appeals' jurisdiction.

23      Moreover, to the extent the SAC references REDs issued prior to January 20, 2005, those

24  claims are barred for a second reason by the statute of limitations.  As this Court recognized,

25  ESA claims are subject to the standard federal six-year statute of limitations of 28 U.S.C.

26  § 2401(a), since the ESA does not contain its own limitations period.  Order at 33; *see Coos*

27  *Cnty. Bd. of Cnty. Comm'rs v. Kempthorne*, 531 F.3d 792, 812 n.16 (9th Cir. 2008); *Wind River*

28
---
[5] *See supra* at 2.

Case Number: 11-cv-293-JCS
Intervenor-Defendants' Motion to Dismiss

1  *Mining Corp. v. United States*, 946 F.2d 710, 713 (9th Cir. 1991).  Thus, as the Federal

2  Defendants have shown, the majority of the REDs cited in Plaintiffs' SAC are beyond the six-

3  year statute of limitations, and nonjusticiable for that reason as well.  *See* EPA Motion at 13 n.9.

4       The SAC ignores these jurisdictional bars to their RED-based challenges, instead alleging

5  that this Court has jurisdiction under the ESA citizen suit provision.  *See, e.g.*, SAC ¶¶ 1573,

6  1583, 1593.  Again, however, this Court previously held that FIFRA controls jurisdiction in this

7  case.  *See* Order at 26 (citing *American Bird Conservancy v. FCC*, 545 F.3d 1190 (9th Cir.

8  2008)).  Thus, the law of the case doctrine precludes Plaintiffs from relitigating that alleged

9  jurisdictional foundation.  *See Pit River Home & Agric. Coop.*, 30 F.3d at 1097.

10      *Second*, the Ninth Circuit has held that "[a]n agency must consult under Section 7 only

11  when it makes an 'affirmative' act or authorization."  *Karuk Tribe of California v. United States*

12  *Forest Service*, 681 F.3d 1006, 1021 (9th Cir. 2012) (*en banc*), *cert. denied*, 133 S. Ct. 1579

13  (2013). [6]  This Court thus squarely rejected Plaintiffs' argument, finding "to the extent 'ongoing'

14  agency action is based upon regulatory authority or discretionary control, such ongoing agency

15  action does not trigger Section 7's consultation requirement."  Order at 14; *see also Tenn. Valley*

16  *Auth. v. Hill*, 437 U.S. 153, 186 n.32 (1978) (ESA § 7 has no "retroactive" application, rather

17  "§ 7 affects all projects which remain to be authorized, funded, or carried out" by a future federal

18  agency action); *California Sportfishing Prot. Alliance v. FERC*, 472 F.3d 593, 595 (9th Cir.

19  2006) ("The ESA . . . mandate[s] consultation with [the Services] only before an agency takes

20  some *affirmative* agency action, such as issuing a license." (emphasis added)).  Yet this theory is

21  repeated in each failure to consult claim in the SAC.  *See, e.g.*, SAC ¶¶ 1567, 1577, 1587. [7]  To

---

[6] The Ninth Circuit recently reaffirmed *Karuk Tribe* in *Natural Resources Defense Council v. Jewell*, No. 09-17661, 2014 U.S. App. LEXIS 7063 (9th Cir. Apr. 16, 2014) (*en banc*).  In that case, there was no dispute that the agency action at issue—renewal of water settlement contracts—was an affirmative act.  The question before the Court was whether the agency had any discretion to negotiate new terms when renewing those contracts, as such discretion triggers ESA consultation requirements.  *See id.* at *17-18.  There is nothing in that decision that undercuts this Court's prior interpretation of *Karuk Tribe*.

[7] Plaintiffs list issuance of tolerances, cancellation orders, and fact sheets as acts that evidence EPA's continuing authority and action.  *See, e.g.*, SAC ¶¶ 48, 143, 166-67, 215, 281, 305, 355, 1577, 1587, 1607, 1637.  Since Plaintiffs do not list these activities as independently supporting a duty to consult, *see, e.g.*, *id.* ¶¶ 1579, 1589, 1609, 1639, Intervenor-Defendants do not address them as such in this Motion.

Case Number: 11-cv-293-JCS
Intervenor-Defendants' Motion to Dismiss

the extent that Plaintiffs rely upon mere discretionary control and involvement, the Court's rejection of that theory is the law of the case. *See* Order at 15 ("Mere discretionary control and involvement will not suffice."); *Pit River Home & Agric. Coop.*, 30 F.3d at 1097.

In short, claims in the SAC that rely upon EPA's issuance of each RED must be dismissed under the law of the case doctrine or for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). Each RED either was issued too long ago or is subject to the exclusive review of the courts of appeals under FIFRA Section 16(b), or both. As recognized by the Court's prior Order, claims that rely upon Plaintiffs' erroneous theory that EPA's ongoing oversight and control over registrations constitutes an affirmative act, triggering a duty to consult, also must be rejected pursuant to Fed. R. Civ. P. 12(b)(6) and under the law of the case doctrine.

> **2.    Plaintiffs' Challenges To Individual End Product Approvals Are Collateral Attacks On The Underlying REDs And Thus Are Subject To The Exclusive Review Provision In FIFRA Section 16(b)**

The Court's prior order recognized that Plaintiffs' "core objections" in this case were to the pesticide registrations or REDs themselves. *See* Order at 18-19. That has not changed. However, Plaintiffs now attempt to circumvent Congress's carefully crafted exclusive jurisdiction provision and this Court's jurisdictional ruling by relying upon EPA's implementation of each RED. The SAC thus alleges that every one of dozens, perhaps hundreds, of post-RED individual product approvals requires EPA to consult under the ESA and renders jurisdiction proper in this Court. *See, e.g.*, SAC ¶¶ 1569, 1574, 1579, 1584. But this is nothing more than an attempt to artfully plead around FIFRA's jurisdictional requirements and must be rejected: Plaintiffs' allegations pertaining to individual product approvals are indistinguishable from their attacks on each RED.

When issuing REDs, EPA relies upon scientific data, human health studies, and ecological risk assessments to determine whether an active ingredient continues to meet the registration standard—"it will not generally cause unreasonable adverse effects on the

environment." 7 U.S.C. § 136a(c)(5).[8]  REDs specifically evaluate how active ingredients will be used in individual end products, and identify the protections or risk mitigation measures that must be employed in using those products to ensure that use of the active ingredient continues to meet the statutory standard.  These protections and risk mitigation measures might include, for example, lower application rates, buffer zones, limitations on approved uses and use conditions, and various worker protection measures.  EPA, *Status of Pesticides in Registration, Reregistration, and Special Review (aka Rainbow Re*port) at 63 (Spring 1998).[9]

In each claim, Plaintiffs make a conclusory statement that post-RED individual product approvals did not follow a public hearing.  *See, e.g.*, SAC ¶ 123 ("EPA's completion of product reregistration and its approvals of products containing 1,3- dichloropropene did not follow a hearing and are therefore judicially reviewable by the district court under FIFRA § 16(a), 7 U.S.C. § 136n(a).").  However, Plaintiffs' allegations do not raise any issues related to the product approvals that are distinct from the RED, or that could not have been raised in the RED process or a legal challenge to the RED.  On the contrary, Plaintiffs' organization of each claim shows that their attempts to state claims based on individual product approval actions are in substance a challenge to each RED.  For example, Plaintiffs state a single claim for each active ingredient.  *See, e.g.*, *id.* at 374, 376, 378.  Further, Plaintiffs' prayer for relief does not seek separate relief for any individual product.  Rather, it seeks across-the-board restrictions on all uses of each active ingredient.[10]  *See id.* at 463.

---

[8] FIFRA defines "unreasonable adverse effects on the environment" to mean "any unreasonable risk to man or the environment, taking into account the economic, social, and environmental costs and benefits of the use of any pesticide, or (2) a human dietary risk from residues that result from a use of a pesticide in or on any food inconsistent with the standard under section 408 of the Federal Food, Drug, and Cosmetic Act." 7 U.S.C. § 136(bb).  EPA requires extensive information from registrants to support the required findings, including data on environmental fate to estimate potential environmental concentrations of active ingredients in habitats where threatened or endangered species are found.  *See* 40 C.F.R. § 158.130(h)(1).

[9] *Available at* http://www.epa.gov/oppsrrd1/Rainbow/98rainbo.pdf.

[10] While the prayer for relief is not controlling, courts have explained that the relief sought "may be considered where it is relevant in determining the intent of the pleader."  *See Plechner v. Widener Coll., Inc.*, 569 F.2d 1250, 1257 (3d Cir. 1977).  A prayer for relief can be "informative regarding the thrust of [the] case."  *See Republican Party of Guam v. Gutierrez,* 277 F.3d 1086, 1089 n.1 (9th Cir. 2002).

But the SAC does not allege that EPA made any material decision in issuing the individual product approvals beyond the decisions embodied in the relevant RED.  This is not surprising since at the March 15, 2013 hearing on Defendants' and Defendant-Intervenors' Motions to Dismiss, Plaintiffs stated that, with respect to the dozens of individual end product reregistrations, "[EPA] reregisters all the products, and maybe it's a perfunctory action" on which Plaintiffs did not seek consultation.  March 15, 2013 Transcript at 19, ECF No. 156 ("Tr.").  Counsel went on to state that "[t]here's no way they would consult on each of these, you know, daily events when they carry out their registration."  *Id.* at 16.

In its prior order, the Court discussed a substantial body of Ninth Circuit case law and correctly concluded "'that a plaintiff may not escape an exclusive avenue of judicial review through artful pleading'."  Order at 24 (citation omitted). The Court relied upon the substantial precedent looking to "the nature of the claims and relief sought," *id.* at 31,[11]  and concluded that Plaintiffs' claims were reviewable under FIFRA, not the ESA, because their "'core objections' [were] to the pesticide registrations themselves."  *Id*. at 23-26.  That has not changed.

In the SAC, the "nature of their claims and relief sought" make clear that the gravamen of each claim implicates the RED.  Citing individual product approvals but making no claims with respect to them that go beyond the REDs confirms that Plaintiffs' "core objections" are to the RED.  Those objections should have been raised in the court of appeals within the timeframe specified in FIFRA Section 16(b).

Considerable precedent supports this conclusion.  For example, in *City of Tacoma v. Taxpayers of Tacoma*, the Supreme Court stated that an issue that could and should have been raised in the court of appeals under an exclusive review provision cannot later be addressed in separate litigation.  357 U.S. 320, 339 (1958).  In that case, which construed an exclusive review provision in the Federal Power Act, the Court found that the issue raised in state court had already been decided by the federal court of appeals and should not have been taken up in state

---

[11] *American Bird Conservancy*, 545 F.3d at 1193-94; *see also California Save Our Streams Council, Inc. v. Yeutter*, 887 F.2d 908 (9th Cir. 1989); *Turtle Island Restoration Network v. U.S. Dep't of Commerce*, 438 F.3d 937, 942 (9th Cir. 2006); *Pesticide Action Network N. Am.*, 2008 U.S. Dist. LEXIS 98572, at *17-18; *Council for Endangered Species Act Reliability*, 2011 U.S. Dist. LEXIS 135635, at *15-16.

1   court. *Id.* The Court also found that even if the "issue was not raised in the Court of Appeals, it

2   cannot be doubted that it could and should have been, for that was the court to which Congress

3   had given 'exclusive jurisdiction to affirm, modify, or set aside' the Commission's order." *Id.*[12];

4   *see also McCulloch Interstate Gas Corp. v. Federal Power Comm'n*, 536 F.2d 910, 913 (10th

5   Cir. 1976) ("A party may not collaterally attack the validity of a prior agency order in a

6   subsequent proceeding.").

7       As the Court previously has recognized, "sound policy reasons" also support this

8   conclusion. First, allowing Plaintiffs to circumvent Congress's carefully crafted exclusive

9   jurisdictional provision by relying on individual product approvals that merely implement each

10   RED would undermine Congress's purpose in enacting FIFRA Section 16(b)—to quickly

11   provide a final decision and prevent conflicting decisions. But "'[t]he point of creating a special

12   review procedure in the first place is to avoid duplication and inconsistency. It provides a single

13   and expeditious procedure for resolving licensing disputes.'" Order at 31 (quoting *California*

14   *Save Our Streams Council, Inc. v. Yeutter*, 887 F.2d 908, 912 (9th Cir. 1989) (alteration in

15   original)).[13] If a plaintiff could challenge an action that merely implements the terms of a RED

16   in a district court, this would undermine those policy objectives.

17       The importance of these policy objectives cannot be overstated. EPA, registrants,

18   growers, retailers and other consumers and users of pesticides rely upon the certainty and finality

19   provided through FIFRA Section 16(b). After the 60-day review period, EPA, registrants,

20   growers, municipalities, and retailers can make subsequent decisions, recognizing the finality of

21   EPA's action. Registrants must have certainty in making important decisions about production

22   and marketing. Likewise, farmers require certainty to support their planning for each growing

23   season. Growers must know what products they can use and any limitations on the use of those

24

25 [12] *See also id.* ("[T]the State may not reserve the point, for another round of piecemeal litigation, by remaining silent on the issue while its action to review and reverse the Commission's order

26 was pending in that court—which had 'exclusive jurisdiction' of the proceeding and whose judgment therein as declared by Congress 'shall be final . . . .'").

27 [13] *See generally AMVAC Chem. Corp. v. U.S. EPA*, 653 F.2d 1260, 1263 (9th Cir. 1980)

28 (Congress's intention in limiting review of agency actions made following a hearing to Circuit Courts is " (1) A desire to limit the number of conflicting decisions to the smallest possible number; (2) To obtain finality of decision as rapidly as possible.").

Case Number: 11-cv-293-JCS
Intervenor-Defendants' Motion to Dismiss

1   products in advance of planting.  Producers and retailers must commit to decisions about what

2   products will be stocked and distributed, and municipalities making purchasing decisions for

3   mosquito abatement and other public health pest control must have certainty to support their

4   planning.  Allowing a plaintiff to challenge an action implementing the RED in a district court

5   under FIFRA Section 16(a) would upset the finality of the RED and would interfere with the

6   careful planning of registrants, growers, retailers and municipalities.  A plaintiff would

7   essentially be permitted to attack uses, use rates, and mitigation measures documented in the

8   RED outside the 60-day statute of limitations.  Here, for example by challenging individual

9   product approvals, Plaintiffs attempt to open issues that in some cases were decided in REDs

10   more than ten years ago.  *See* EPA Motion at 13 n.9 (listing 12 REDs that were issued more than

11   ten years ago).

12         Further, allowing a plaintiff to attack the decisions embodied in the RED in actions

13   implementing each RED in district court could lead to duplicative or conflicting rulings.  A

14   plaintiff could challenge the RED in the court of appeals and then challenge the product

15   approvals in district court, attacking the same uses, use rates, and mitigation measures

16   determined in the RED.  Separate plaintiffs could challenge essentially identical actions in

17   different courts.[14]  Several different outcomes for identical products could result, and could put

18   EPA and the regulated community in an impossible situation.

19         Courts have long sought to avoid the potential for such duplicative or conflicting

20   decisions.  *See, e.g.*, *Yeutter*, 887 F.2d at 912; *Public Utility Comm'r of Or. v. Bonneville Power*

21   *Admin.*, 767 F.2d 622, 628 (9th Cir. 1985) (disfavoring "delay, duplication, and inconsistency

22   resulting from the additional level of possible simultaneous judicial review").  As this Court has

23   acknowledged "[t]he possibility of two simultaneous lawsuits−one in the district court and one in

---

[14] Companies often seek EPA approval for end-use products that are identical in composition to
end use products that have already been registered.  In order to increase competition and avoid
duplication of scientific data generating costs, Congress provided that companies can rely upon
data submitted to EPA by other registrants.  After payment of compensation to the original
registrant and demonstrating product equivalence to EPA, a company can obtain a "me too"
registration of an essentially identical product.  As an example, in Plaintiffs' table of alleged
product approval actions for Paraquat, Paraquat 3SL Herbicide (82866-1), Helmquat 3 SL
(74530-32), Helmquat 3SL (74530-48), and Parazone 3SL (66222-130) are essentially identical
products.  SAC ¶ 640.

the court of appeals—does not align with Congress' intent for efficient and safe resolution for pesticide registrations." Order at 31. Additionally, such duplication is a waste of judicial resources. *See Florida Power & Light v. Lorion*, 470 U.S. 729, 744 (1985) ("One crucial purpose of . . . jurisdictional provisions that place initial review in the courts of appeals is to avoid the waste attendant upon this duplication of effort.").

It is hardly surprising, then, that the Supreme Court has rejected narrow interpretations of exclusive review provisions where such an interpretation would lead to a waste of agency and judicial resources. For example, in *Florida Power & Light*, the Supreme Court considered whether the Nuclear Regulatory Commission's denial of a request to institute a proceeding to modify, suspend or revoke nuclear licenses was considered a final order reviewable exclusively in the court of appeals. *Id.* at 744-45. The Court highlighted the policy justifications for avoiding the bifurcation of judicial review of orders issued in the same proceeding in different courts. The Court acknowledged, "[i]n the absence of specific evidence of contrary congressional intent, . . . we have held that review of orders resolving issues preliminary or *ancillary* to the core issue in a proceeding should be reviewed in the same forum as the final order resolving the core issue." *Id.* at 743 (emphasis added).

The Ninth Circuit has echoed the Supreme Court's "strong preference for reviewing all preliminary or ancillary issues in a proceeding in the forum provided for the final agency order or action." *Public Utility Comm'r of Or.*, 767 F.2d at 627 (citing *Florida Power & Light*). There is a strong preference against the potential for bifurcated review because allowing separate review by each court "would . . . result[] in duplicative effort, confusion, and potential for conflicting results." *Id.*; *id.* at 625-27 (finding that an interlocutory challenge to a proceeding under the Pacific Northwest Electric Power Planning and Conservation Act, which includes a similar jurisdictional provision, must be filed in the courts of appeals); *see also Telecomms. Research & Action Ctr. v. FCC*, 750 F.2d 70, 78 (D.C. Cir. 1984) ("[E]xclusive jurisdiction eliminates duplicative and potentially conflicting review and the delay and expense incidental thereto." (citation omitted)).

As the Court found in its prior Order, the Ninth Circuit repeatedly has refused to allow collateral attacks on agency actions subject to review in courts of appeal.  *See* Order at 23-26. Plaintiffs' "new" claims focus on post-RED actions for which they allege nothing more than claims based on the REDs.  They thus are collateral attacks on the RED that are subject to FIFRA Section 16(b) and its limitations period, and must be dismissed for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).

**B.**  **All Of Plaintiffs' Failure To Reinitiate Consultation Claims Must Be Dismissed For Failure To State A Claim Under Fed. R. Civ. P. 12(b)(1) And Fed. R. Civ. P. 12(b)(6)**

Intervenor-Defendants concur with the Federal Defendants that the SAC's reinitiation claims should be dismissed under Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  EPA Motion at 2, 20-23.[15]  To the extent that the SAC grounds its reinitiation claims in 50 C.F.R. § 402.16 and the Court concludes that that regulation binds EPA, the Federal Defendants' analysis is correct:  the SAC fails to identify any EPA action subject to prior consultation for which consultation should have been reinitiated.  The REDs are the only actions alleged in the SAC to have occurred, and because the SAC is grounded on the allegation that none of these were subject to consultation, there is no basis for this Court to find EPA has anything to request to reinitiate.  Plaintiffs also may not collaterally attack the REDs by using the reinitiation regulation as a vehicle to plead around the jurisdictional requirements of FIFRA any more than they could circumvent those requirements as to their consultation claims.  However, for the reasons set forth below, Section 402.16 does not provide a basis for any claims against EPA.  Furthermore, interpreting the only other possible foundation for the SAC's reinitiation claims, the Act itself, to mandate reinitiation would be inconsistent with controlling precedent.

**1.**  **The SAC Alleges No Actions Sufficient To Support A Claim Under Section 402.16**

The Federal Defendants properly note that the basis on which the SAC alleges EPA was

---

[15] Although the text of the EPA Motion refers explicitly only to Rule 12(b)(6), that Motion's footnote 14 and the text it accompanies describe a Rule 12(b)(1) lack of subject-matter jurisdiction.

Case Number: 11-cv-293-JCS
Intervenor-Defendants' Motion to Dismiss

required to reinitiate consultation on the 43 active ingredients is "not entirely clear."[16]  The SAC

identifies only "50 C.F.R. Part 402" as the "implementing regulations" which EPA is "violating

. . . by failing to reinitiate consultation with the Service."  *See*, *e.g.*, SAC ¶ 1880.  But the text of

the SAC uses phrases that mirror several subsections of 50 C.F.R. § 402.16, so the Federal

Defendants have concluded that two of those are the basis of Plaintiffs' reinitiation claims.  EPA

Motion at 20-21.

As explained below, regardless of whether the SAC relies on Section 402.16, the

provisions of Section 402.16 are not binding on EPA and thus do not provide a basis on which

Plaintiffs could state a claim.  However, even if they could, Intervenor-Defendants agree that the

SAC alleges no actions subsequent to the original consultations sufficient to trigger Section

402.16's conditions.  For example, the SAC's first two triggers are that "information shows that

[active ingredient] may affect listed species or their critical habitat in a manner or to an extent

not previously considered" and "[a]dditional information also likely exists in the possession of

the EPA, or the Services, demonstrating . . . new information revealing effects of [active

ingredient] that may affect listed species in a manner or to an extent not previously considered."

*See, e.g.,* SAC ¶¶ 867, 868.  These allegations appear drafted to invoke the language of 50

C.F.R. § 402.16(b).[17]

However, the mere existence or possession of "information" is a condition or

circumstance, not an "affirmative agency action" sufficient to meet the requirements of *Karuk*

*Tribe* and this Court's prior Order.  However, the SAC does not even pretend to identify any

affirmative action taken by EPA to create, obtain or maintain any such information.  That

vacuum leaves the SAC without the minimum "heft" to "plausibly" establish the alleged

violations.  *Twombly*, 550 U.S. at 557.[18]

---

[16] EPA Motion at 20.

[17] Reinitiation would be triggered "[i]f new information reveals effects of the action that may affect listed species or critical habitat in a manner or to an extent not previously considered."  50 C.F.R. § 402.16(b).

[18] Even if the SAC alleged that EPA had created the alleged information, the creation of information alone is not an action that could possibly be described as "likely to jeopardize" a species. ESA § 7(a)(2), 16 U.S.C. § 1536.  Thus, the conditions to which these allegations refer, even if properly pleaded, could not implicate actions by EPA sufficient to trigger a requirement

1   Plaintiffs' third alleged trigger is that "new species have been listed or critical habitat

2   designated that may be affected by [active ingredient]."  *See, e.g.,* SAC ¶ 867.  This allegation

3   repeats the language of 50 C.F.R. § 402.16(d).[19]  Here, at least, the SAC alleges an "action."  But

4   it is not an action by EPA:  neither the listing of species nor the designation of critical habitats

5   are actions taken by EPA.  Consequently, EPA cannot have done something that triggers either

6   consultation or reinitiation.[20]

7   The SAC also alleges (albeit only once, in its general background section) that EPA's

8   "failure to implement the [reasonable and prudent] measures specified in the [1989 and 1993]

9   BiOps triggers the duty to reinitiate consultation on the pesticides and species covered by those

10   BiOps."  SAC ¶ 856.  This allegation does not parallel any provision in Section 402.16.  Again,

11   however, this is not an allegation of an affirmative action by EPA.  Nor is it supported by

12   specific factual allegations sufficient to meet the *Iqbal* and *Twombly* requirements or, indeed,

13   any specific factual allegations at all.

14   Finally, the SAC asserts that "[a]dditional information also likely exists in the possession

15   of the EPA, or the Services, demonstrating . . . modification of the [active ingredient]

16   registrations in a manner that causes an effect . . . that was not considered in the biological

17   opinion."  *See, e.g., id.* ¶ 868.  This allegation parallels the language of 50 C.F.R. § 402.16(c).[21]

18   But it, too, is unsupported by any facts.  Thus, as with all the other seemingly regulation-based

19   triggers, the SAC does not present "'sufficient factual matter' that, taken as true, 'state[s] a claim

20   for relief . . . plausible on its face,'"  and fails to meet the requirements of *Iqbal* and *Twombly*.

21   to reinitiate consultation.  Plaintiffs likewise do not identify actions by EPA that require
      reinitiation where the SAC's allegations regard information that neither EPA nor the Services
22   generated.  *See, e.g*., SAC ¶ 950 (allegations concerning documents and information produced by
      state regulatory agencies).

23   [19] Reinitiation would be triggered when "a new species is listed or critical habitat is designated
      that may be affected by the identified action."  50 C.F.R. § 402.16(d).
24

25   [20] In practice, Plaintiffs' reading of § 402.16(d) would have a particularly absurd result.  EPA
      would allegedly have been required to request the reinitiation of consultation each time the
26   Services listed a species or designated a critical habitat.  The product 2,4-D provides an example
      of the result: for it alone this reading would have resulted in as many as 108 separate requests
27   from EPA to the Services to reinitiate consultation from 1989 to 2011.

28   [21] Reinitiation would be triggered when "the identified action is subsequently modified in a
      manner that causes an effect to the listed species or critical habitat that was not considered in the
      biological opinion."  50 C.F.R. § 402.16(c).

Case Number: 11-cv-293-JCS
Intervenor-Defendants' Motion to Dismiss

1    *United States ex rel. Lee v. Corinthian Colleges*, 655 F.3d 984, 991 (9th Cir. 2011) (citation

2    omitted).

3            Thus, to the extent this Court views 50 C.F.R. § 402.16 to control EPA, the alleged

4    failures to reinitiate consultation cannot survive.

5                    **2.      The Services' Regulations Are Not Binding On EPA**

6            The Federal Defendants' analysis aside, claims based on alleged violations of 50 C.F.R.

7    § 402.16 should be dismissed as a matter of law because the Services' procedural rules are not

8    binding on EPA and are not judicially enforceable.  Four of five Supreme Court Justices reaching

9    the issue have agreed with the Solicitor General's interpretation that the Part 402 rules are "not

10   binding" on action agencies like EPA:  "Whereas in other [sections] the ESA is quite explicit as

11   to the Secretary's controlling authority, . . . with respect to consultation the initiative, and hence

12   arguably the initial responsibility for determining statutory necessity, lies with the [action]

13   agencies. . . ." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 568-69 (1992).  This reflects the

14   Solicitor General of the United States' position, on behalf of the entire Executive Branch,  that

15   Part 402 is simply "a non-binding regulation interpreting Section 7(a)(2)" and that "the Secretary

16   of the Interior cannot require another agency to consult with the Secretary about a project."

17   Principal Brief of the Petitioners at 24, *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1991) (No.

18   90-1424), 1991 WL 577003, *24 (July 12, 1991);Transcript of Oral Argument, *Id.*, 1991 WL

19   636584, at *8 (Dec. 3, 1991).

20           Indeed, the Services recognized this fact in the preamble to the ESA rules and elsewhere.

21   For example, the preamble stated that the "Service[s] perform[] strictly an advisory function

22   under section 7 by consulting," while each "Federal agency makes the ultimate decision as to

23   whether its proposed action will satisfy" ESA § 7(a)(2).  51 Fed. Reg. 19,926, 19,928 (June 3,

24   1986).  The Services expressly conceded that they "lack [the] authority to require Federal

25   agencies to reinitiate consultation if [the action agencies]choose not to do so."  51 Fed. Reg. at

26   19,956.[22]

27   _____

28   [22] The Services reiterated the non-binding nature of the reinitiation regulation in their 1998
     Consultation Handbook:  "[t]he Services[] can not require Federal agencies to reinitiate

1    Therefore, to the extent the SAC purports to ground its reinitiate claims on a failure of

2    EPA to comply with the Services' regulations, it fails to state a claim on which relief could be

3    granted.

4        The views of the Solicitor General and four Justices in *Lujan* are well-grounded in the

5    statutory text.  The ESA places "[e]ach Federal agency" in charge of determining ESA § 7(a)(2)

6    compliance for that agency's actions, and the Services have only a "consultation" role.  16

7    U.S.C. § 1536(a)(2).  Because Congress did not place the Services in charge of determining ESA

8    Section 7 compliance, the Service cannot adopt rules that dictate or change what ESA Section 7

9    requires.  "Although agency determinations within the scope of delegated authority are entitled

10   to deference, it is fundamental that an agency may not bootstrap itself into an area in which it has

11   no jurisdiction."  *Adams Fruit Co. v Barrett,* 494 U.S. 638, 649-50 (1990); *see also Chrysler*

12   *Corp. v. Brown,* 441 U.S. 281, 295, 301-06 (1979) (not every agency pronouncement creates

13   judicially enforceable duties).  The point is so firmly established that, after hearing from the

14   Solicitor General, the Supreme Court noted in *Lujan* that it "need not linger over the . . . facially

15   impracticable suggestion . . . that one agency of the Government can acquire the power to direct

16   other agencies by simply claiming that power in its own regulations."  *Lujan,* 504 U.S. at 569 n.4

17   (1992) (citation omitted); *see also Sierra Club v. Marsh*, 816 F.2d 1376, 1386 (9th Cir. 1987)

18   ("[T]he ESA does not give the [Service] the power to order other agencies to comply with its

19   requests or to veto their decision.").

20       Thus, an alleged violation of the Services' non-binding ESA § 7 regulations provides no

21   law that is judicially enforceable against EPA.  To the extent Plaintiffs' claims  are grounded in

22   the alleged violation of 50 C.F.R. § 402.16, those claims must be dismissed pursuant to Fed. R.

23   Civ. P. 12(b)(6).

24       **3.    To State A Reinitiation Claim, Plaintiffs Would Have To Find**
             **Authority In Section 7 And Allege Sufficient Facts To Meet The**
25           **Requirements Of *Iqbal* And *Twombly*, But The SAC Does Not**

26       In addition to its reference to "50 C.F.R., Part 402," the SAC might be interpreted to

27

28   consultation . . . ."  FWS & NMFS, *ESA Section 7 Consultation Handbook* at 2-11 (Mar. 1998),
     *available at* http://www.nmfs.noaa.gov/pr/pdfs/laws/esa_section7_handbook.pdf.

allege that its reinitiation claims arise directly out of Section 7(a)(2).  *See, e.g.,* SAC ¶ 1880

("EPA is violating Section 7(a)(2) of the ESA . . . by failing to reinitiate consultation with the

Service . . . .").  Indeed, in light of the law presented above, failure to interpret it in this way

would automatically require dismissal, since such a failure would mean the SAC contained no

allegations whatsoever to form the legal basis for reinitiation.  *Conservation Force v. Salazar*,

646 F.3d 1240, 1242 (9th Cir. 2011).  But even a reference to Section 7(a)(2) would not be

enough to state a cause of action for failure to reinitiate consultation, for two reasons.

First and foremost, Section 7(a)(2) does not refer to or explicitly require the "reinitiation"

of consultation.  Instead, and consistent with *Karuk Tribe* and this Court's prior Order, it refers

only to an "action" as the basis for consultation:

> Each Federal agency shall, in consultation with and with the assistance of the
> Secretary, insure that any action authorized, funded, or carried out by such agency
> (hereinafter in this section referred to as an "agency action") is not likely to
> jeopardize the continued existence of any endangered species or threatened
> species or result in the destruction or adverse modification of habitat of such
> species which is determined by the Secretary, after consultation as appropriate
> with affected States, to be critical, unless such agency has been granted an
> exemption for such action by the Committee pursuant to subsection (h) of this
> section.  In fulfilling the requirements of this paragraph each agency shall use the
> best scientific and commercial data available.

16 U.S.C. § 1536(a)(2).

In the face of the absence of any reference to reinitiation in the statutory text, there is no

basis for a reinitiation mandate, much less a cause of action for "failure to reinitiate" unless the

action agency took some new action.  Even though the ESA "authorize[s] [the Services] to

promulgate such regulations as may be appropriate to enforce" the ESA, 16 U.S.C. § 1540(f), the

Services' regulations cannot redefine the statute's requirements.  "Although it may be true that

'Congress left it to the informed discretion of the Services to define the *process of consultation*,'

Congress did not leave it to the discretion of the Services to define *consultation*."  *Washington

Toxics Coal. v. U.S. Dep't of Interior*, 457 F. Supp. 2d 1158, 1179 (W.D. Wash. 2006) (citation

omitted).  That is, the Services' regulations cannot say when consultation is required; they can

only say how their own consultation process will proceed.  The Services simply are not

1   statutorily authorized to impose new, substantive obligations on action agencies.  This

2   conclusion is, of course, fully consistent with *Karuk Tribe*:  there must be an action, by the action

3   agency, to trigger any consultation obligation.  Events (or even conditions) that have nothing to

4   do with the action agency do not meet the Ninth Circuit's mandate.  And any portions of the

5   Services' regulations that directly conflict with the controlling law would go beyond the

6   authority Congress has delegated to the Services and would not merit deference.  *Cf., e.g.,*

7   *Gonzales v. Oregon*, 546 U.S. 243, 257-58 (2006) (holding interpretive rule exceeded authority

8   granted the U.S. Attorney General by the Controlled Substances Act).  Since the text of Section

9   7(a)(2) does not contain a Congressional directive for reinitiation of consultation, in the absence

10  of a new affirmative action, the SAC states no claim.[23]

11          Moreover, the SAC fails to present any factual assertions that would justify reinitiation

12  beyond mere regurgitation of the terms used in the Services' regulations.  This is precisely the

13  sort of "formulaic recitation" of statutory or regulatory language prohibited by the Supreme

14  Court.  *Twombly*, 550 U.S. at 555.  For this reason as well, the reinitiation claims should be

15  dismissed.

16  **V.      CONCLUSION**

17          For the foregoing reasons, the Court should grant Intervenor-Defendants' Motion to

18  Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

19

20

21

22

23

24

25

26

---

27  [23] When promulgating the reinitiation regulations, in addition to "not[ing] its lack of authority to
    require Federal agencies to reinitiate consultation," the Services did not identify any statutory
28  provision that would require reinitiation absent an affirmative action by the action agency.  *See*
    48 Fed. Reg. 29,990 (June 29, 1983); 51 Fed. Reg. 19,926 (June 3, 1986).

Case Number: 11-cv-293-JCS
Intervenor-Defendants' Motion to Dismiss

Dated:  May 12, 2014                          Respectfully submitted,

/s/ Claudia M. O'Brien

DAVID B. WEINBERG                    CLAUDIA M. O'BRIEN (D.C. Bar No. 447354)*
    (D.C. Bar No. 186247)*               WILLIAM K. RAWSON (D.C. Bar No. 367167)*
ROGER H. MIKSAD                       STACEY L. VANBELLEGHEM
    (D.C. Bar No. 996137)*                 (D.C. Bar No. 988144)*
WILEY REIN LLP                         LATHAM & WATKINS LLP
    1776 K Street NW                       555 Eleventh Street, NW, Suite 1000
    Washington, DC  20006                  Washington, D.C. 20004-1304
    Telephone:  (202) 719-7000            T: (202) 637-2200 F: (202) 637-2201
    Facsimile:   (202) 719-7049          Email: william.rawson@lw.com
Email: dweinberg@wileyrein.com              claudia.o'brien@lw.com
    rmiksad@wileyrein.com                   stacey.vanbelleghem@lw.com
                                        ANDREA M. HOGAN (Ca. Bar No. 238209)
                                        andrea.hogan@lw.com
                                            505 Montgomery Street, Suite 2000
                                            San Francisco, CA  94111-6538
                                            T: (415) 391-0600 F: (415) 395-8095

*Attorneys for Intervenor-Defendant CropLife America, et al.*

SETH GOLDBERG (Ca. Bar No. 153719)    THOMAS W. STOEVER, JR.
sgoldberg@steptoe.com                  (Ca. Bar No. 150056)
CYNTHIA L. TAUB                       Thomas.stoever@aporter.com
    (D.C. Bar No. 445906)*             ARNOLD & PORTER LLP
ctaub@steptoe.com                          370 Seventeenth Street, Suite 4400
STEPTOE & JOHNSON LLP                      Denver, CO 80202-1370
    1330 Connecticut Avenue, NW            T: (303) 863-1000 F: (303) 832-0428
    Washington, DC 20036
    T: (202)429-3000 F: (202) 429-3902

                                       *Attorney for Intervenor-Defendant Reckitt*
*Attorneys for Intervenor-Defendant*    *Benckiser LLC*
*American Chemistry Council*

KIRSTEN L. NATHANSON (D.C. Bar
No. 463992)*
DAVID MENOTTI (D.C. Bar No.
158089)
THOMAS R. LUNDQUIST
    (D.C. Bar No. 968123)
CROWELL & MORING LLP
    1001 Pennsylvania Ave., NW
    Washington, D.C. 20004-2595
    T: 202-624-2500 F: 202-628-5116

*Attorneys for Intervenor-Defendants*
*American Farm Bureau Federation, et al.*          *Admitted pro hoc vice*

**In accord with Local Rule 5-1(i)(3), I attest that concurrence in the filing of this document has been obtained from the other signatories who are listed on this signature page.