**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY; PESTICIDE ACTION NETWORK NORTH AMERICA, non-profit organizations, *Plaintiffs-Appellants*, | No. 14-16977<br><br>D.C. No. 3:11-cv-00293-JCS |
| v. | OPINION |
| U.S. ENVIRONMENTAL PROTECTION AGENCY, *Defendant-Appellee*, | |
| CROPLIFE AMERICA; RESPONSIBLE INDUSTRY FOR A SOUND ENVIRONMENT ("RISE"); SOUTHERN CROP PRODUCTION ASSOCIATION; WESTERN PLANT HEALTH ASSOCIATION; MIDAMERICA CROPLIFE ASSOCIATION; AMERICAN FARM BUREAU FEDERATION; AMERICAN CHEMISTRY COUNCIL; NATIONAL AGRICULTURAL AVIATION ASSOCIATION; NATIONAL ALLIANCE OF FOREST OWNERS; NATIONAL CORN GROWERS ASSOCIATION; NATIONAL COTTON COUNCIL; NATIONAL | |

2        CTR. FOR BIOLOGICAL DIVERSITY V. EPA

COUNCIL OF FARMER
COOPERATIVES; NATIONAL
POTATO COUNCIL; OREGONIANS
FOR FOOD AND SHELTER; USA
RICE FEDERATION; WASHINGTON
FRIENDS OF FARMS AND
FORESTS,
            *Intervenor-Defendants-*
                    *Appellees.*

Appeal from the United States District Court
for the Northern District of California
Joseph C. Spero, Magistrate Judge, Presiding

Argued and Submitted May 9, 2016
San Francisco, California

Before: Kim McLane Wardlaw, Richard A. Paez,
and Carlos T. Bea, Circuit Judges.

Filed February 2, 2017

Opinion by Judge Richard A. Paez;
Dissent by Judge Bea

# SUMMARY[*]

## Environmental Law

The panel affirmed in part, and reversed in part, the district court's dismissal of plaintiffs' claims arising from their citizen suit alleging that the U.S. Environmental Protection Agency violated the Endangered Species Act ("ESA") when it registered certain pesticide active ingredients and pesticide products without undertaking consultation with the National Marine Fisheries Service and the United States Fish and Wildlife Service (collectively "the Service").

The ESA requires federal agencies to consult with the Service to ensure that their discretionary actions do not jeopardize endangered and threatened species, or adversely modify a listed species' critical habitat.  The Federal Insecticide, Fungicide and Rodenticide Act charges the EPA with the obligation to register and reregister pesticide active ingredients and pesticide products.

Plaintiffs framed thirty-one failure-to-consult claims for relief with each claim centering on one pesticide active ingredient.  With each pesticide active ingredient, plaintiffs identified four categories of agency actions which allegedly triggered the EPA's duty to consult under Section 7(a)(2) of the ESA, and these comprised the sub-claims.

---

[*] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

Concerning plaintiffs' category one sub-claims, which identified the EPA's issuance of the Reregistration Eligibility Decisions as an agency action, the panel held that all category one sub-claims were properly dismissed by the district court as either time-barred or jurisdictionally barred. Specifically, the panel held that where, as here, the plaintiffs alleged that an agency failed to comply with the ESA's procedural requirements, the general six-year statute of limitations period, set forth in 28 U.S.C. § 2401(a), applied. The panel also held that an ESA Section 7 claim raised after the EPA undertook public notice and comment must comply with the jurisdictional provisions of the Federal Insecticide, Fungicide and Rodenticide Act, and a plaintiff must file a petition for review in the court of appeals within 60 days of the entry of the contested final order.

Concerning plaintiffs' category two sub-claims, which alleged that the EPA's continued discretionary control of the pesticide's registration constituted agency action, the panel affirmed the district court's dismissal of all category two sub-claims because they failed to identify an affirmative agency action that would trigger a Section 7 consultation.

Concerning plaintiffs' category three sub-claims, which alleged that the EPA's completion of pesticide reregistration for a specific pesticide active ingredient was an agency action, the panel held that the completion of the reregistration was simply a fact, and therefore it could not trigger Section 7 consultation. The panel affirmed the dismissal of category three sub-claims.

Concerning plaintiffs' category four sub-claims, which alleged that the EPA's approval of individual pesticide products was an agency action, the panel reversed the district court's dismissal of all category four sub-claims. The panel agreed with the district court that pesticide product reregistration was an affirmative agency action, but disagreed that those claims were barred by the collateral attack doctrine. The panel remanded for further proceedings.

Judge Bea dissented in part. Judge Bea agreed with most of the majority opinion, but dissented from the conclusion that the category four sub-claims were not a collateral attack on the EPA's prior approval of the pesticides in those products. Judge Bea would affirm the district court's dismissal of the category four sub-claims.

---

## COUNSEL

Stephanie Parent (argued), Center for Biological Diversity, Portland, Oregon; Justin Augustine, Center for Biological Diversity, San Francisco, California; Collette Adkins Giese, Center for Biological Diversity, Circle Pines, Minnesota; for Plaintiffs-Appellants.

Anna Katselas (argued), Kevin McArdle, Bridget Kennedy McNeil, and Ellen J. Durkee, Attorneys; John C. Cruden, Assistant Attorney General; Environment & Natural Resources Division, United States Department of Justice, Washington, D.C., for Defendant-Appellee.

David B. Weinberg (argued), R. Steven Richardson, and Roger H. Miksad, Wiley Rein LLP, Washington, D.C.; Seth Goldberg and Cynthia L. Taub, Steptoe & Johnson LLP, Washington, D.C.; Kirsten L. Nathanson and Thomas R. Lunquist, Crowell & Moring LLP, Washington, D.C.; for Intervenor-Defendants-Appellants.

---

**OPINION**

PAEZ, Circuit Judge:

The Federal Insecticide, Fungicide and Rodenticide Act ("FIFRA") charges the Environmental Protection Agency ("EPA") with the obligation to register and reregister pesticide active ingredients and pesticide products.[1]  In this case, the Center for Biological Diversity and the Pesticide Action Network North America (collectively, "CBD") allege that the EPA violated the Endangered Species Act ("ESA") when it reregistered certain pesticide active ingredients and pesticide products without undertaking consultation with the

---

[1] The parties and the district court transpose several FIFRA terms. For example, the Second Amended Complaint uses the terms "active ingredient" and "pesticides" interchangeably to refer to chemicals used as "insecticides, herbicides, fungicides, rodenticides, fumigants, and other pesticides," but it uses the phrase "products containing pesticides" to refer to the end-user product.  7 U.S.C. § 136(u) (noting a pesticide may be "any substance or mixture of substances" intended to prevent, destroy, repel, or mitigate any pest).  Similarly, the district court interchangeably used the terms "pesticide," "product," and "pesticide product," reasoning that FIFRA also interchanges those terms. *Ctr. for Biological Diversity v. EPA*, 65 F. Supp. 3d 742, 747 (N.D. Cal. 2014).  We use "pesticide active ingredient" to refer to the chemical compound that gives a pesticide its effect, and we use "pesticide product" to refer to the end-user product.

National Marine Fisheries Service and the Fish and Wildlife Service (collectively, "the Service") as required by 16 U.S.C. § 1536(a)(2) ("ESA Section 7" or "Section 7"). The object of CBD's lawsuit is to require the EPA to undertake consultation with the Service regarding the impact of the reregistration process of pesticide active ingredients and pesticide products on endangered or threatened species.

We must decide three core issues. First, we must reconcile the disparate limitations periods and jurisdictional provisions of the ESA and FIFRA for citizen suits that challenge the EPA's failure to consult with the Service as required by ESA Section 7 when reregistering pesticide active ingredients and pesticide products. Second, we must determine whether plaintiffs alleged any affirmative agency actions by the EPA that triggered the EPA's obligation to undertake Section 7 consultation with the Service. And third, we must decide whether any of CBD's claims are barred by the collateral attack doctrine.

On each of these core issues, the district court ruled in favor of the EPA.[2] The court, however, granted CBD leave to amend to add facts that would demonstrate that the reregistration of pesticide products, although affirmative agency actions, were not simply impermissible collateral attacks on prior Reregistration Eligibility Decisions' ("RED") analyses or conclusions. CBD declined to amend. At CBD's request, however, the district court entered a final judgment

---

[2] The district court also dismissed in part, without leave to amend, Claims for Relief thirty-two through seventy-four. *Ctr. for Biological Diversity*, 65 F. Supp. 3d at 772. Those claims are not at issue in this appeal.

under Federal Rule of Civil Procedure 54(b) for the thirty-one failure-to-consult Claims for Relief.  CBD timely appealed.

Although we agree with many of the district court's rulings in this complex environmental case, we conclude that the court erred in its application of the collateral attack doctrine and in requiring CBD to amend the operative Complaint.  We therefore affirm in substantial part, reverse in part, and remand for further proceedings.

## I.

### A.

CBD filed a citizen suit in district court alleging that the EPA had failed to comply with the ESA's consultation requirement in its ongoing involvement with 382 pesticides. *Ctr. for Biological Diversity v. EPA*, No. 11-cv-00293-JCS, 2013 WL 1729573, at *4 (N.D. Cal. Apr. 22, 2013); s*ee* ESA § 7, 16 U.S.C. §§ 1536(a) (consultation requirement), 1540(g) (citizen suit provision).  Relying on the ESA's jurisdictional provisions regarding citizen suits, CBD asserted that the district court had jurisdiction over the alleged claims.  *Ctr. for Biological Diversity*, 2013 WL 1729573, at *14; 16 U.S.C. §§ 1540(g)(1) ("The district courts shall have jurisdiction . . . to enforce any [ESA] provision or regulation, or to order the Secretary to perform such act or duty . . . ."), 1540(g)(3)(A). Although CBD framed the Complaint as an enforcement action under the ESA, its Section 7 claims effectively challenged the EPA's final pesticide product reregistration decisions under FIFRA.  In the course of reregistering pesticide products, the EPA issues a RED for each pesticide active ingredient included in the pesticide product.

The EPA and Intervenors[3] (collectively, "Defendants") filed a motion to dismiss for (1) failure to state a claim under the ESA, (2) lack of subject matter jurisdiction under FIFRA, and (3) lack of Article III standing. *Ctr. for Biological Diversity*, 2013 WL 1729573, at *1. In its Complaint, CBD alleged that the "EPA retains ongoing discretionary control and involvement over all of these pesticides, which constitute[] 'agency action' subject to consultation under Section 7(a)(2) of the ESA." *Ctr. for Biological Diversity*, 65 F. Supp. 3d 742, 752 (N.D. Cal. 2014) (emphasis omitted). Dismissing the Complaint with leave to amend, the district court faulted CBD for failing to allege any affirmative agency action by the EPA, as required by *Karuk Tribe of California v. U.S. Forest Service*, 681 F.3d 1006 (9th Cir. 2012) (en banc), that would necessitate consultation with the Service. *Ctr. for Biological Diversity*, 2013 WL 1729573, at *8–10. The district court held that "[m]ere discretionary control and involvement" is not enough to trigger ESA Section 7 consultation. *Id.* at *10. The court also addressed subject matter jurisdiction, standing, and the statute of limitations, but reserved resolution of these issues until CBD filed an amended complaint. *See id.* at *12–22. The district court directed CBD to allege a specific affirmative act by the EPA

---

[3] A number of pesticide active ingredient and pesticide product registrants successfully moved to intervene. Intervenors included CropLife America, Responsible Industry for a Sound Environment, Southern Crop Production Association, Western Plant Health Association, Mid America CropLife Association, American Farm Bureau Federation, American Chemistry Council, National Agricultural Aviation Association, National Alliance of Forest Owners, National Corn Growers Association, National Cotton Council, National Council of Farmer Cooperatives, National Potato Council, Oregonians for Food and Shelter, USA Rice Federation, Washington Friends of Farms and Forests, and Reckitt Benckiser LLC. Reckitt Bensicker later withdrew.

that would trigger Section 7 consultation for each of the alleged pesticide active ingredients or pesticide products. *Id.* at *10.

Subsequently, CBD filed a hefty 437-page Amended Complaint.[4]   In response, Defendants moved for a more definite statement under Rule 12(e), asserting that they could not properly respond to the Amended Complaint because CBD's allegations were too vague and ambiguous.  Ruling on the motion, the district court agreed with Defendants that CBD's Amended Complaint was "vague and ambiguous" because it failed to specify which affirmative acts by the EPA triggered ESA Section 7 consultation.   The court ordered CBD to clarify its allegations and explained that "[t]he affirmative agency actions must be clearly identified so [Defendants] may fairly evaluate whether to assert a facial challenge to standing, statute of limitations or jurisdiction . . . [and] [t]he affirmative acts must also appear on the face of the Complaint."

In response to the court's order, CBD filed another weighty 464-page Second Amended Complaint, in which it alleged the precise actions by the EPA that required Section 7 consultation.  Defendants again moved to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief could be granted.   Defendants identified four bases for dismissal.  First, Defendants argued that the statute of limitations barred any challenge to a RED issued prior to January 20, 2005.  Second, they argued that FIFRA's jurisdictional provisions, 7 U.S.C. § 136n(a)–(b), controlled, depriving the district court of jurisdiction for any reregistration decision made after notice and comment.

---

[4] The original Complaint was a mere thirty-four pages.

Third, Defendants argued that ongoing discretionary control and involvement over pesticides do not constitute affirmative action that triggers Section 7 consultation.  Fourth, Defendants argued that CBD's allegations challenging individual product reregistrations were nothing more than an improper collateral attack on the underlying REDs, and therefore barred.  As explained below, the district court granted in part and denied in part Defendants' motion to dismiss.  *Ctr. for Biological Diversity*, 65 F. Supp. 3d at 772.

### B.

To guide our discussion of the district court's ruling as well as facilitate our own analysis, we briefly explain how CBD framed the thirty-one failure-to-consult Claims for Relief in the Second Amended Complaint.

Each claim centers on one pesticide active ingredient.[5] For each pesticide active ingredient, CBD "identif[ies] four categories of 'agency actions' which allegedly trigger the EPA's duty to consult under [S]ection 7(a)(2)."  *Ctr. for Biological Diversity*, 65 F. Supp. 3d at 755.  In our discussion below, we refer to each of these categories as a "category one, two, three, or four" sub-claim for relief.  The four categories are identical for all thirty-one Claims for Relief. Category one sub-claims identify "the EPA's issuance of the RED or amended RED" as an agency action, and provide a

---

[5] Those active ingredients include: 1,3-dichloropropene, 2,4-D, salts and esters, acephate, alachlor, atrazine, bensulide, bromadiolone, captan, carbaryl, chlorothalonil, chlorpyrifos, diazinon, dicamba and salts, diuron, ethoprop, MCPA, salts and esters, methomyl, metolachlor and isomers, metribuzin, naled, oxydemeton-methyl, oxyfluorfen, paraquat dichloride, pendimethalin, phorate, phosmet, propanil, propargite, S,S,S-tributyl phosphorotrithioate, thiobencarb, and trifluralin.

12          CTR. FOR BIOLOGICAL DIVERSITY V. EPA

date on which the EPA issued the RED or amended it. *Id.* Category two sub-claims allege that the EPA's "continued discretionary control and involvement in this [pesticide active ingredient's and pesticide product's] registration" constitute agency action. *Id.* (internal quotation marks omitted). Category three sub-claims allege that the "EPA's completion of [pesticide] product reregistration for [a] [specific] pesticide [active ingredient]" is an agency action. *Id.* (internal quotation marks omitted). Each such sub-claim provides the date for when product reregistration was completed. And, finally, category four sub-claims allege that the "EPA's approvals of [pesticide] products containing [a] pesticide [active ingredient]" constitute an agency action and provide dates for when the EPA approved each pesticide product's reregistration. *Id.* (internal quotation marks omitted). In ruling on Defendants' motion to dismiss, the district court analyzed the four categories of sub-claims separately. The court began with category one sub-claims—the issuance of the RED or amended RED—and dismissed all thirty-one as either time-barred or jurisdictionally barred. *Ctr. for Biological Diversity*, 65 F. Supp. 3d at 756–57. The district court concluded that because the ESA does not provide a limitations period for Section 7 challenges, it would apply the general six-year statute of limitations for civil actions contained in 28 U.S.C. § 2401(a). *Id.* at 756. Applying that statute of limitations, the court determined that fifteen of the thirty-one alleged REDs were time-barred.[6] *Id.*

---

[6] These were the fourth, eighth, tenth, fourteenth, sixteenth, seventeenth, eighteenth, nineteenth, twenty-second, twenty-third, twenty-fourth, twenty-seventh, twenty-eighth, thirtieth, and thirty-first Claims for Relief.

Next, the court turned to whether there was subject matter jurisdiction for the sixteen category one sub-claims that remained. *Id.* The court concluded that because CBD's claims were "'inextricably intertwined' with the EPA's pesticide actions governed under FIFRA, [they were] subject to FIFRA's more specific jurisdictional provisions . . . ." *Id.* (citation omitted); *see Am. Bird Conservancy v. Fed. Commc'ns Comm'n*, 545 F.3d 1190, 1193 (9th Cir. 2008) ("*American Bird*"). In applying FIFRA's jurisdictional provision, 7 U.S.C. § 136n(a)–(b), the court reasoned that the review of any "registration actions that follow a notice and public comment period" falls within the exclusive jurisdiction of the court of appeals, and therefore ruled that it lacked subject matter jurisdiction over the remaining sixteen Claims for Relief. *Ctr. for Biological Diversity*, 65 F. Supp. 3d at 756–57; *see United Farm Workers v. EPA*, 592 F.3d 1080, 1082–83 (9th Cir. 2010) ("*UFW*"); *see also In re Pesticide Action Network N. Am.*, 798 F.3d 809, 811 (9th Cir. 2015) (applying *UFW's* reasoning where petitioners sought to challenge the EPA's pesticide safety determinations). Because all of the remaining category one sub-claims involved REDs that the EPA issued after a period of notice and comment, the district court dismissed them for lack of subject matter jurisdiction. *Ctr. for Biological Diversity*, 65 F. Supp. 3d at 756–57.

The district court then addressed and rejected all of CBD's category two—"continued discretionary control"—sub-claims. *Id.* at 757–58. The court ruled that "[t]he retention of discretionary control is necessary but insufficient to trigger" the EPA's consultation with the Service. *Id.* at 758. The court reasoned, largely in line with our en banc opinion in *Karuk Tribe*, that although affirmative actions can be ongoing, CBD must allege an affirmative agency action

and maintaining discretionary control and involvement in a pesticide's registration is not sufficient.  *Id.* at 757–58.

Next, the district court discussed and rejected all category three—the completion of pesticide product reregistration for a particular pesticide active ingredient—sub-claims.  *Id.* at 758–59.  The court concluded that completion of pesticide product reregistration "is not an affirmative act of any sort; it is a fact."  *Id.* at 758.  The court therefore dismissed all thirty-one category three sub-claims.  *Id.* at 759.

Finally, the district court addressed CBD's category four—reregistration of pesticide products—sub-claims.  *Id.* at 759–60.  Analyzing the statute governing reregistrations of pesticide products, 7 U.S.C. § 136a-1(g)(2)(C), the district court agreed with CBD that pesticide product reregistration is an affirmative agency action that triggers ESA Section 7 consultation.  *Id.* at 760.  However, the court also held that any category four sub-claim that fell within the statute of limitations and attacked a RED's analyses or conclusions was an impermissible collateral attack on the RED and therefore barred.  *Id.* at 764.  The court granted CBD leave to amend to clarify what new actions by the EPA, aside from analyses and conclusions contained in the RED, demonstrated that pesticide product reregistrations constituted an agency action for purposes of Section 7 consultation.  *Id.* at 764.  CBD declined to amend.

Following entry of a final judgment on Claims for Relief one through thirty-one pursuant to Rule 54(b), CBD timely appealed.[7]

## II.

### A.

#### 1.

We begin with a brief description of the relevant aspects of both the ESA and FIFRA.  The ESA seeks to protect and conserve endangered and threatened species and their habitats, and it reflects "a conscious decision by Congress to give endangered species priority over the 'primary missions' of federal agencies."  *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 185 (1978); *see also Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 651 (2007) ("*Home Builders*").  It achieves that purpose, in part, by requiring federal agencies to consult with the Service to ensure their discretionary actions[8] do not jeopardize endangered and threatened species, or adversely modify a listed species' critical habitat.  16 U.S.C. § 1536(a); *see also Babbitt v. Sweet Home Chapter of Cmtys. for a Great Or.*, 515 U.S. 687,

---

[7] We review de novo dismissals for lack of subject matter jurisdiction and for failure to state a claim upon which relief may be granted, as well as whether a claim is barred by a statute of limitations.  *Johnson v. Lucent Techs. Inc.*, 653 F.3d 1000, 1005 (9th Cir. 2011); *Kahle v. Gonzales*, 487 F.3d 697, 699 (9th Cir. 2007); *Rattlesnake Coal. v. U.S. Envtl. Prot. Agency*, 509 F.3d 1095, 1100 (9th Cir. 2007).

[8] The ESA's regulations define "agency action" to include "all activities or programs of any kind authorized, funded, or carried out . . . by Federal agencies in the United States."  50 C.F.R. § 402.02.

692 (1995); *Karuk Tribe*, 681 F.3d at 1020.  The ESA's implementing regulations broadly construe "agency action" to include licensing and permitting programs, 50 C.F.R. § 402.02(c), as well as "actions directly or indirectly causing modifications to the land, water, or air."  *Id.* § 402.02(d).

Consultation allows agencies to draw on the expertise of "wildlife agencies to determine whether [an] action is likely to jeopardize a listed species" or its habitat, and "to identify reasonable and prudent alternatives" to avoid those harmful impacts.  *Karuk Tribe*, 681 F.3d at 1020 (citing *Turtle Island Restoration Network v. Nat'l Marine Fisheries Serv.*, 340 F.3d 969, 974 (9th Cir. 2003)).  An agency's duty to consult, or to reinitiate consultation, applies whether an agency action is "ongoing" or "complete."  *Cottonwood Envtl. Law Ctr. v. U.S. Forest Serv.*, 789 F.3d 1075, 1086, 1086 n.12 (9th Cir. 2015), *cert. denied*, 137 S. Ct. 293 (2016).  Agencies must review their actions "at the earliest possible time to determine whether any action may affect listed species or critical habitat," and those agencies must initiate formal consultation when such a determination is made.  50 C.F.R. § 402.14(a).  When formal consultation is required, the Service must prepare a biological opinion advising whether the proposed agency action "affects the species or its critical habitat."  *Home Builders*, 551 U.S. at 652 (citing 16 U.S.C. § 1536(b)(3)(A); 50 C.F.R. § 402.14(h)).  If the Service concludes that "the agency action would place the listed species in jeopardy or adversely modify its critical habitat," the Service must provide "reasonable and prudent alternatives" to the proposed action.  *Id.* (citing 16 U.S.C. § 1536(b)(3)(A); 50 C.F.R. § 402.14(h)(3)).

2.

FIFRA provides a comprehensive regulatory scheme for the use, sale, and labeling of pesticide active ingredients and pesticide products. *Wash. Toxics Coal. v. EPA*, 413 F.3d 1024, 1030 (9th Cir. 2005); *see* 7 U.S.C. §§ 136(a), (u) (defining "active ingredient" and "pesticide"). FIFRA establishes comprehensive procedures for the EPA's registration, reregistration, and cancellation of registration of pesticide active ingredients and pesticide products. *Wash. Toxics Coal.*, 413 F.3d at 1030; *see also* 7 U.S.C. § 136a-d; *Wis. Pub. Intervenor v. Mortier*, 501 U.S. 597, 601 (1991). No one may sell or distribute a pesticide product without the EPA's approval, 7 U.S.C. § 136a(a), and manufacturers must submit their registration applications to the EPA and obtain authorization before introducing a pesticide product to the market. 7 U.S.C. § 136a; *Wash. Toxics Coal.*, 413 F.3d at 1030.

As part of the approval process, the EPA conducts an analysis that considers the "economic, social and environmental costs and benefits of the use of any pesticide." *Headwaters, Inc. v. Talent Irrigation Dist.*, 243 F.3d 526, 532 (9th Cir. 2001) (quoting *Save Our Ecosystems v. Clark*, 747 F.2d 1240, 1248 (9th Cir. 1984)). In conducting that analysis, the EPA must consider what are known as Paragraph 5 requirements provided in 7 U.S.C. § 136a(c)(5). That statute provides the following:

> The [EPA] shall register a pesticide if [it] determines that, when considered with any restrictions imposed under subsection (d) of this section–

(A) its composition is such as to warrant the proposed claims for it;

(B) its labeling and other material required to be submitted comply with the requirements of this subchapter;

(C) it will perform its intended function without unreasonable adverse effects on the environment; and

(D) when used in accordance with widespread and commonly recognized practice it will not generally cause adverse effects on the environment.

7 U.S.C. § 136a(c)(5).  If the EPA determines that a pesticide product does not "increase the risk of unreasonable adverse effects on the environment" and satisfies the Paragraph 5 requirements,[9] the EPA "shall register" that pesticide product. 7 U.S.C. §§ 136a(c)(3)(B)(i)(I), (c)(5).

In 1988, Congress passed legislation directing the EPA to "reregister . . . each registered pesticide [product] containing

---

[9] The EPA's final pesticide product registration or reregistration decision requires the exercise of agency discretion within the meaning of Section 7.  For example, FIFRA requires the EPA to gather data to determine if the benefits of a particular pesticide product outweigh its "economic, social, and environmental costs."  7 U.S.C. § 136a(c)(3)(A), (c)(5)(C); 7 U.S.C. § 136(bb).  In some circumstances, ESA consultation may demonstrate that the "costs" of a particular pesticide product outweigh its benefits.  The EPA must then use that consultative data to inform its final decision whether to decline to register a pesticide product or to limit a pesticide product's use.

any active ingredient contained in any pesticide [product] first registered before November 1, 1984," and it detailed a multi-phase reregistration process.[10]  Pub. L. No. 100-532, 102 Stat. 2654 (Oct. 25, 1988) (codified as amended at 7 U.S.C. § 136a-1(a)).  That legislation also required pesticide registrants to notify the EPA of their intent to reregister their products, to identify "missing and inadequate data for such pesticide[]" products and to provide a proposed plan for filling any gaps in the data provided for reregistration review.[11]  7 U.S.C. §§ 136a-1(b)(2), (d)(3).  "After the

---

[10] The first phase of the reregistration process requires the EPA to list the active ingredients of the pesticide products that will be reregistered. 7 U.S.C. § 136a-1(b)(1); *see also id.* § 136a-1(c).  The second phase requires the registrant to submit to the EPA notice of its intent to seek reregistration, to identify any missing or inadequate data for that pesticide product, and to disclose how the registrant will replace that missing or inadequate data. *Id.* §§ 136a-1(b)(2), (d)(3).  The third phase requires the registrant to describe the research presented during initial registration, identify previously excluded studies, disclose new research regarding a pesticide product's adverse effects and benefits, and certify that the registrant possesses or can access the raw data used to generate that research. *Id.* §§ 136a-1(b)(3), (e).  The registrant also must summarize data from those studies and report the "chronic dosing, oncogenicity, reproductive effects, mutagenicity, neurotoxicity, teratogenicity, or residue chemistry" of any active ingredient submitted to the EPA prior to January 1, 1982. *Id.* § 136a-1(e)(1)(C).  The fourth phase requires the EPA to conduct an independent, initial review consistent with 7 U.S.C. § 136a-1(f), and if necessary, to request additional data from the registrant. *Id.* § 136a-1(b)(4).  The fifth phase includes both a "thorough examination of all data" and the actual product reregistration, which considers whether the pesticide product satisfactorily meets the requirements of Paragraph 5. *Id.* § 136a-1(g).

[11] In 1996, Congress further amended FIFRA to include periodic registration review every 15 years, so the EPA could evaluate whether new research regarding pesticide products' harms warranted restricting a pesticide product's use or canceling its registration.  Food Quality

20      C͏ᴛʀ. ꜰᴏʀ Bɪᴏʟᴏɢɪᴄᴀʟ Dɪᴠᴇʀꜱɪᴛʏ ᴠ. EPA

registrant signals its intent to reregister a pesticide [product], [the EPA] conducts science reviews, develops a risk assessment and publishes it for public comment, and issues a Reregistration Eligibility Decision (RED) [evaluating the active ingredient in the pesticide product]." U.S. EPA, *Evaluation of the U.S. Pesticide Product Reregistration Process: Opportunities for Efficiency and Innovation*, at 1-1 (2007) ("*Evaluation*").[12] The RED "summarizes the risk assessment conclusions and outlines any risk reduction measures for the pesticide [active ingredient] to continue to be registered in the U.S." *Ctr. for Biological Diversity*, 65 F. Supp. 3d at 749 (internal quotation marks omitted); *see also* 7 U.S.C. § 136a-1(g)(2)(a)). "After [the EPA] publishes a RED, it then must reregister each of the individual pesticide products that contain the active ingredient. This final step in the process [is the] pesticide product reregistration." *Evaluation* at 1-1.

## B.

Against that legal landscape, we turn to the thirty-one failure-to-consult Claims for Relief at issue in this appeal. We begin with the category one sub-claims—the issuance of REDs. We assume, but do not hold, that the EPA's issuance

---

Protection Act of 1996, Pub. L. No. 104-170, 110 Stat. 1489 (Aug. 3, 1996) (codified at 7 U.S.C. § 136a(g)); H.R. Rep. 104-669 (July 23, 1996), *reprinted at* 1996 U.S.C.C.A.N. 1268, 1270 (noting that original pesticide product registrations, and in some cases their reregistrations, were conducted "when tests for the safety of [pesticide product] residues were less sophisticated.").

[12] Report *available at* https://www.epa.gov/sites/production/files/2015-09/documents/eval-epa-pesticide-product-reregistration-process.pdf (last visited Jan. 23, 2017).

of a RED is an agency action that triggers ESA Section 7 consultation. We need not decide whether the issuance of a RED is a triggering action because we hold that all category one sub-claims were properly dismissed by the district court as either time-barred or jurisdictionally barred.

### 1.

We begin with a discussion of the EPA's statute of limitations defense. Neither FIFRA nor the ESA provides a limitations period when a Section 7 citizen suit filed in a district court challenges the EPA's decision to register or reregister a pesticide active ingredient or pesticide product. The issue of which limitations period to apply in those circumstances is a question of first impression in the Ninth Circuit. CBD argues that no limitations period applies to its claims because the EPA has a continuing duty to comply with Section 7, and its failure to initiate consultation constitutes a "continuing violation" that excuses any limitations period. We disagree.

We have held that when a statute does not specify a limitations period, federal courts must apply the general statute of limitations that most closely addresses the basis for the plaintiff's claim. For example, *United States v. Dae Rim Fishery Co.*, 794 F.2d 1392, 1394 (9th Cir. 1986), held that the limitations period for claims sounding in contract and quasi-contract was governed by the six-year statute of limitations set forth in 28 U.S.C. § 2415(a). Similarly, *Wind River Mining Corp v. United States*, 946 F.2d 710, 712–13 (9th Cir. 1991), held that the six-year statute of limitations set forth in 28 U.S.C. § 2401(a) provided the limitations period for actions brought pursuant to the Administrative Procedure Act ("APA"), *see* 5 U.S.C. §§ 701–706. *See also N. Cty.*

*Cmty. All., Inc. v. Salazar*, 573 F.3d 738, 742–43 (9th Cir. 2009) (applying *Wind River* to APA claims regarding licensing and construction); *Nw. Envtl. Advocates v. U.S. Envtl. Prot. Agency*, 537 F.3d 1006, 1018–19 (9th Cir. 2008).

Where, as here, a plaintiff alleges that an agency failed to comply with the ESA's procedural requirements, we apply the general six-year statute of limitations set forth in 28 U.S.C. § 2401(a).[13]  *Wind River*, 946 F.2d at 713 ("As a general statute of limitation, [Section 2401] should apply to actions . . . [that] challenge a [final agency decision] on the basis of procedural irregularity.").  This holding comports with our previous case law, which provides that when a plaintiff brings a substantive ESA claim under the APA, we apply the statute of limitations set forth in the substantive statute.  *See, e.g.*, *Ctr. for Biological Diversity v. Salazar*, 695 F.3d 893, 904 (9th Cir. 2012) (holding that the six-year statute of limitations applied to claims challenging the application of a regulation to a specific circumstance); *Turtle Island Restoration Network v. U.S. Dep't of Commerce*, 438 F.3d 937, 942–43, 946–49 (9th Cir. 2006) (applying the Magnuson-Stevens Act's shorter statute of limitations period to a claim challenging the "terms and conditions" of a fishery permit); *Jones v. Gordon*, 792 F.2d 821, 824–25 (9th Cir. 1986) (holding that the six-year limitations period applied to a claim that an agency "failed to comply with the procedural requirements" of an environmental statute).

Thus, we affirm the district court's dismissal of the category one sub-claims alleged in the fourth, eighth, tenth,

---

[13] Section 2401(a) provides in relevant part, "[E]very civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues."

fourteenth, sixteenth, seventeenth, eighteenth, nineteenth, twenty-second, twenty-third, twenty-fourth, thirtieth, and thirty-first Claims for Relief. The district court properly dismissed those category one sub-claims because the REDs alleged in those claims had all been issued prior to January 20, 2005, over six years prior to the filing of CBD's original Complaint. In addition, we dismiss sub-claim one of the first Claim for Relief as barred by the statute of limitations.[14]

With respect to sub-claim one of the twenty-eighth Claim for Relief, however, we remand to the district court to resolve a factual dispute. The district court dismissed this sub-claim as time-barred based on the RED's issuance date of September 2001. *Ctr. for Biological Diversity*, 65 F. Supp. 3d at 756. However, the Second Amended Complaint alleged an amendment to that RED in June of 2008. It is unclear from the record before the district court whether the amendment was sufficiently substantive to be an independent triggering action. The government acknowledged that the amendment added two minor labeling requirements, and we therefore remand sub-claim one of the twenty-eighth Claim for Relief for the district court to determine whether those

---

[14] The district court dismissed sub-claim one of the first Claim for Relief as jurisdictionally barred, but this ruling appears incorrect in light of the district court record. This sub-claim should have been dismissed as time-barred because the RED issued in September of 1998. Although the RED was updated in August of 2008, as the government explained in its motion to dismiss the Second Amended Complaint, the update was nothing more than a "fact sheet" that did not actually update the RED but merely described measures required by the RED. *Compare* https://www3.epa.gov/pesticides/chem_search/reg_actions/reregistration/ red_PC-029001_1-Sep-98.pdf (last visited Jan. 23, 2017) (RED), *with* https://archive.epa.gov/pesticides/reregistration/web/html/1,3-dichloropropene_fs.html (last visited Jan. 23, 2017) (updated RED Fact Sheet). Notably, CBD does not contest the government's explanation.

additions to the RED in 2008 constitute an affirmative agency action triggering Section 7 consultation.

## 2.

Next, we must decide whether there was subject matter jurisdiction for the district court to properly hear the sixteen remaining category one sub-claims.

Both the ESA and FIFRA contain citizen suit provisions, but those provisions offer conflicting requirements for whether a case should be filed in the district court or in the court of appeals. The ESA allows any person, including entities, to:

> commence a civil suit on his own behalf . . . to enjoin any person, including the United States and any other governmental instrumentality or agency (to the extent permitted by the eleventh amendment to the Constitution), who is alleged to be in violation of any provision of this chapter or regulation issued under the authority thereof . . . .

16 U.S.C. § 1540(g)(1). The ESA citizen suit provision also states, "The district courts shall have jurisdiction, without regard to the amount in controversy or the citizenship of the parties, to enforce any such provision or regulation, or to order the Secretary to perform such act or duty . . . ." 16 U.S.C. § 1540(g)(1).

Similarly, FIFRA allows private individuals and entities to seek judicial review of the EPA's registration and reregistration decisions, but it bifurcates which claims may be

brought before the district court and which claims must be presented to the court of appeals. When a plaintiff seeks review of "the refusal of the Administrator to cancel or suspend a registration or to change a classification not following a hearing and other final actions of the Administrator not committed to the discretion of the Administrator by law," the suit must be filed in the district court. 7 U.S.C. § 136n(a). If the claim challenges "the validity of any order issued by the Administrator following a public hearing,"[15] then a petition for review must be filed "in the United States court of appeals for the circuit wherein [the petitioner] resides or has a place of business, within 60 days after the entry of such order . . . ." *Id.* § 136n(b); *see also UFW*, 592 F.3d at 1082–84 (holding that publication of notice and comment in the Federal Register constitutes a "public hearing" for the purposes of determining FIFRA jurisdiction). Review of agency actions taken after a "public hearing" is committed to the "exclusive jurisdiction" of the courts of appeals. 7 U.S.C. § 136n(b).

We have held that "when two jurisdictional statutes draw different routes of appeal, the well-established rule is to apply only the more specific legislation." *Am. Bird*, 545 F.3d at 1194 (citing *Cal. Save Our Streams Council, Inc. v. Yeutter*, 887 F.2d 908, 911 (9th Cir. 1989) (internal quotation marks omitted)). In *American Bird*, plaintiffs filed suit in the

---

[15] Although FIFRA's statutory language does not contemplate notice and comment, beginning in 2004, the EPA adopted a public participation policy that it intended to apply during its pesticide active ingredient and pesticide product registration and reregistration review processes. 69 Fed. Reg. 26,819 (May 14, 2004) (final notice). The EPA reasoned that public participation during reregistration and review would "increase transparency and stakeholder involvement in the development of pesticide risk assessments and risk management decisions." 69 Fed. Reg. at 26,819.

district court, arguing that the Federal Communications
Commission ("FCC") had failed to engage in Section 7
consultation when it issued licenses for seven
communications towers.  545 F.3d at 1191–92.  The Federal
Communications Act and the ESA provided separate judicial
review provisions, and the Communications Act's provisions
vested federal courts of appeals with "exclusive jurisdiction"
over actions to "enjoin, set aside, annul, or suspend any order
of" the FCC.  *Id.* at 1193 (citing 47 U.S.C. § 402(a)) (internal
quotation marks omitted).

*American Bird* explained that although the plaintiffs
sought procedural relief, the heart of their claims challenged
the FCC's actions under the Communications Act.  *Id.* at
1193.  The court opined that plaintiffs' claims, although
nominally based in the ESA, challenged the FCC's grant of
cell tower licenses.  545 F.3d at 1192–95 ("American Bird
attempts to bypass Congress' . . . system of review . . . by
characterizing its suit as a challenge to the agency's
compliance with federal environmental laws rather than to the
agency's ultimate order.").  *American Bird* reasoned that
when a Section 7 claim challenges an agency order issued
pursuant to a substantive statute with a "more specific"
judicial review scheme than the ESA, courts must evaluate
the plaintiff's claims under the jurisdictional provisions of
that substantive statute.  *Id.* at 1194 (citing *Cal. Save Our
Streams Council*, 887 F.2d at 911).  Although *American Bird*
resolved jurisdictional conflicts between the ESA and the
Communications Act, its reasoning applies to the disparate
jurisdictional provisions at issue here.

When a plaintiff's claims are inextricably intertwined
between two statutes—such as the ESA and FIFRA—and
those statutes contain conflicting jurisdictional provisions,

*American Bird* requires plaintiffs to comply with the more specific statute. *Id.* at 1194–95. As the district court noted, when Section 7 consultation follows public notice and comment, that consultation informs the validity of the EPA's determination whether to reregister a pesticide. Here, CBD's Section 7 category one sub-claims inherently challenge the validity of the EPA's final registration and reregistration orders.

Thus, we hold that for the purposes of FIFRA, a Section 7 claim raised after the EPA undertakes public notice and comment must comply with FIFRA's jurisdictional provisions. A plaintiff bringing a Section 7 claim challenging "the validity of [the Administrator's FIFRA] order" after a period of notice and comment in the Federal Register must file a petition for review in the court of appeals within 60 days of the entry of the contested final order.[16]

On the basis of the district court record, we conclude that fifteen of the sixteen remaining category one sub-claims were properly dismissed by the district court for lack of subject matter jurisdiction.[17] In the second, third, fifth, sixth,

---

[16] CBD expresses concern that the ESA's 60-day pre-filing requirement appears to conflict with FIFRA's 60-day statute of limitations. *Compare* 16 U.S.C. § 1540(g)(2)(A)(i), *with* 7 U.S.C. § 136n(b). Although we do not decide the issue, *Alliance for the Wild Rockies v. U.S. Department of Agriculture*, 772 F.3d 592, 603–04 (9th Cir. 2014), which addressed a similar situation, may be useful in understanding how these two jurisdictional statutes can co-exist. *See also Washington v. Daley*, 173 F.3d 1168, 1170 n.16 (9th Cir. 1999); *Am. Bird*, 545 F.3d at 1194 n.2, 1194–95.

[17] As discussed *supra* at footnote 14, sub-claim one of the first Claim for Relief should have been dismissed as time-barred.

seventh, ninth, eleventh, twelfth, thirteenth, fifteenth, twentieth, twenty-first, twenty-fifth, twenty-sixth, and twenty-ninth Claims for Relief the issuance of the subject REDs were all preceded by a public comment and notice period published in the Federal Register. Further, sub-claim one in the twenty-seventh Claim for Relief is dismissed for lack of jurisdiction.[18]  Therefore, CBD should have filed a petition in the court of appeals to obtain judicial review of those sub-claims.

In sum, we affirm the district court's dismissal of all category one sub-claims contained in Claims for Relief one through thirty-one.

## C.

We turn to the category two sub-claims, which allege that the "continued discretionary control and involvement in [a] pesticide [active ingredient's and pesticide product]'s registration" constitute "ongoing agency action." *Ctr. for Biological Diversity*, 65 F. Supp. 3d at 755 (internal quotation marks omitted).  We disagree and therefore affirm the district court's dismissal of all category two sub-claims.

CBD argues that because the EPA has an ongoing duty to comply with the ESA, its failure to undertake Section 7 consultation serves as an "ongoing violation" of the ESA.

---

[18] The district court dismissed sub-claim one of the twenty-seventh Claim for Relief as time-barred based on the the EPA's issuance of the RED in September 2003. Although the court correctly dismissed the sub-claim, it did so for the wrong reason.  There was an amendment to the RED in March of 2006, but as the government explains, that amendment was issued after public notice and comment, thus the sub-claim was not time-barred but rather jurisdictionally barred.

CBD reasons that the EPA's "ongoing violation" provides an adequate basis for a Section 7 claim, and consequently, a plaintiff should not be required to identify a separate and affirmative discretionary action for a Section 7 claim to accrue.  As the district court noted, CBD's construction is at odds with controlling precedent, which provides that an ESA claim accrues only when an agency takes discretionary, affirmative action.  *Karuk Tribe*, 681 F.3d at 1021 ("'inaction' is not 'action' for [16 U.S.C.] Section [1536](a)(2) purposes.") (citing *W. Watersheds Project v. Matejko*, 468 F.3d 1099, 1107–08 (9th Cir. 2006)).  In *Karuk Tribe*, we held that our "'agency action' inquiry is two-fold. First, we ask whether a federal agency affirmatively authorized, funded, or carried out the underlying activity. Second, we determine whether the agency had some discretion to influence or change the activity for the benefit of a protected species." *Id.* at 1021.

CBD conflates an ongoing duty with an ongoing violation.  An agency that retains regulatory authority over a program has a continuing obligation to comply with the ESA. *Cottonwood Envtl. Law Ctr.*, 789 F.3d at 1087 (citing *Wash. Toxics Coal.*, 413 F.3d at 1030–33).  In *Washington Toxics Coalition*, we held that the EPA was not excused from complying with the ESA when it registered fifty-four pesticides without Section 7 consultation.  413 F.3d at 1033 ("Because [the] EPA has continuing authority over pesticide regulation, it has a continuing obligation to follow the requirements of the ESA."); *see also Forest Guardians v. Johanns*, 450 F.3d 455, 464–65 (9th Cir. 2006) (explaining agencies' ongoing duty to reinitiate ESA consultation). Similarly, in *Cottonwood Environmental Law Center*, we held that the U.S. Forest Service violated the ESA when it failed to reinitiate consultation after the U.S. Fish and

Wildlife Service designated critical habitat on 10,000 square miles of National Forest land.  789 F.3d at 1078, 1086–88, 1092.

Although the EPA has an ongoing duty to comply with the ESA, under *Karuk Tribe*, Section 7 consultation still must be triggered by an affirmative agency action.  *Id.*  In other words, "[t]he retention of discretionary control is necessary but insufficient to trigger an agency's duty to . . . initiate consultation."  *Ctr. for Biological Diversity*, 65 F. Supp. 3d at 758.  Moreover, as the district court noted, although affirmative agency actions can be ongoing, "the retention of discretionary control over previously issued pesticide licenses" is not such an ongoing action.  *Ctr. for Biological Diversity*, 65 F. Supp. 3d at 758 (citing *Karuk Tribe*, 681 F.3d at 1021); *see also Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 173–74 (1978).  *Karuk Tribe* squarely controls this case; because category two sub-claims fail to identify an affirmative agency action that would trigger a Section 7 consultation, we affirm the district court's dismissal of all category two sub-claims alleged in Claims for Relief one through thirty-one.  *See Karuk Tribe*, 681 F.3d at 1021.

### D.

Next, we turn to the category three sub-claims that allege that the EPA's completion of all pesticide product reregistrations for a particular pesticide active ingredient is an affirmative agency action that triggers Section 7 consultation.  *Ctr. for Biological Diversity*, 65 F. Supp. 3d at 755.  We agree with the district court that the completion of pesticide product reregistration is simply a fact, and therefore it cannot trigger Section 7 consultation.  *Id.* at 758.  The date on which all reregistrations of pesticide products that contain a

particular pesticide active ingredient have been completed, is simply that, a date. As the district court explained, CBD "may not base their failure-to-consult claims on the EPA's 'completion' of product reregistration—as opposed to the actual registration actions." *Id.* at 759. As a result, we affirm the dismissal of all category three sub-claims alleged in Claims for Relief one through thirty-one.

**E.**

This brings us to the final category four sub-claims, in which CBD contends that the EPA's approval of individual pesticide products is an affirmative agency action triggering ESA Section 7 consultation. *Id.* at 755. These category four sub-claims are complicated by the fact that Defendants contend that CBD's timely reregistration claims of pesticide products are nothing more than collateral attacks on the underlying REDs that were already dismissed, and are therefore impermissible. As detailed below, we agree with the district court that pesticide product reregistration is an affirmative agency action, but we disagree that those claims are barred by the collateral attack doctrine and require further amendments to the Second Amended Complaint.

1.

As discussed *supra* at part II.A.2 and footnote 10, the EPA uses a multi-phase reregistration process, which includes a phase-five reregistration of pesticide products. 7 U.S.C. §§ 136a-1(b), (g). At an earlier stage in the reregistration process, the EPA publishes a RED. 7 U.S.C. § 136a-1(g)(2)(A); *see also Evaluation* at 1-4. After the EPA issues the RED, it "collects both product-specific data and confirmatory data on the active ingredient as identified in the

RED." *Id.* at 1-5; *see also* 7 U.S.C. § 136a-1(g)(2)(B)(i) ("Before reregistering a pesticide, the [EPA] shall obtain any needed product-specific data regarding the pesticide . . . ."). In order to ultimately reregister a pesticide product, the EPA must weigh all of the data and determine whether each pesticide product comports with the Paragraph 5 requirements contained in Section 136a(c)(5). 7 U.S.C. § 136a-1(g)(2)(C).

The process of gathering data after a RED has issued can be lengthy; sometimes more than ten years will have elapsed between the issuance of a RED and the completion of reregistration of all pesticide products containing the RED's pesticide active ingredient. According to the *Evaluation*, "[w]ith regard to a RED, on average, it took about 47 months to reregister all products covered by a RED [and] [t]he average maximum time needed for reregistering all products covered by a RED was about 76 months." *Id.* at 3-5. Importantly, as the statute and the EPA's own process demonstrate, it is clear that publication of a RED for a pesticide active ingredient is not the agency's final decision on reregistration of a pesticide product. *Id.* at vi. A RED does not contain all the research upon which the EPA relies when reaching its final pesticide product reregistration decision. *Id.* at 1-4, 1-5. As such, the reregistration of an individual pesticide product is its own triggering action.

We note, consistent with our holding in section II.B.1–2, that any claim based on a product reregistration that occurred before January 20, 2005 would be time-barred, and any claim involving a product reregistration after public notice and comment in the Federal Register would be jurisdictionally barred. The parties do not suggest that any of the category four sub-claims for relief are barred by the statute of limitations or are jurisdictionally barred. Nonetheless, we

leave it to the district court to address any such issues the parties might raise on remand.

2.

The collateral attack doctrine prevents litigants from "relitigat[ing] the merits of . . . previous administrative proceedings" or "evading . . . established administrative procedures" by raising a claim that is "inescapably intertwined with a review of the procedures and merits surrounding" an underlying agency order. *Americopters, LLC v. FAA*, 441 F.3d 726, 736 (9th Cir. 2006) (internal quotation marks and citations omitted, alteration in original); *see also United States v. Backlund*, 689 F.3d 986, 1000 (9th Cir. 2012) (applying the collateral attack doctrine to APA claims). At its core, the doctrine prohibits a plaintiff from using a later order that implements a prior agency action as a vehicle to undo the underlying action or order. *Americopters*, 441 F.3d at 736.

As noted, Defendants argue, and the district court agreed, that the category four sub-claims alleging the reregistration of pesticide products as independent triggering actions are simply collateral attacks on the issuance of the REDs, which are time-barred or jurisdictionally barred. *Ctr. for Biological Diversity*, 65 F. Supp. 3d at 760–64. We disagree.

The collateral attack doctrine is not at issue here; CBD does not seek to unravel a prior agency order, nor does it attempt to challenge "any of the analyses or conclusions

contained in the RED[s]."[19]  *Id.* at 764.  CBD contends that the final reregistration of a pesticide product triggers the ESA's Section 7 consultation obligation because the EPA does not "rubber stamp" the pesticide product reregistration in light of the RED.  The district court agreed, detailing the differences between the EPA's process for issuing a RED and the separate process for approving a pesticide product.  *Id.* at 762–63.  As a result, the district court declined to hold that "as a matter of law, an attack on a post-RED product reregistration is a collateral attack on the RED."  *Id.* at 763. We agree; as discussed *supra*, *see* section II.A.2, under the governing statute, 7 U.S.C. § 136a-1(g), a product reregistration incorporates data not available during the process for issuing a RED, and necessarily involves a determination distinct from those made during the RED process because a pesticide active ingredient and a pesticide product are not the same.

Neither the district court nor the dissent disputes this distinction.  *Id.*; Diss. at 41.  Nonetheless, the district court and the dissent would require CBD to allege facts specific to each pesticide product demonstrating how each product reregistration raises new ESA compliance issues.  *Ctr. for Biological Diversity*, 65 F. Supp. 3d at 764; Diss. at 41–42. Such specificity is unwarranted at this stage of the proceedings.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to

---

[19] The district court's reliance on *Pacific Gas & Electric v. FERC*, 464 F.3d 861 (9th Cir. 2006), is unavailing.  *See Ctr. for Biological Diversity*, 65 F. Supp. 3d at 762–64.  The EPA's reregistration of a product is neither a clarification nor a modification of the underlying RED; it is a separate and distinct action.  *See Pac. Gas & Elec.*, 464 F.3d at 868–69.

state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Here, CBD has pled a facially valid claim under the ESA because it has demonstrated that, as a matter of fact, "the issuance of a RED is an interim step in the process of reregistering the pesticide products" and therefore the reregistering of a pesticide product involves multiple other steps, thus triggering its own consultation requirement. *Ctr. for Biological Diversity*, 65 F. Supp. 3d at 764.

CBD is not required to allege facts beyond what it already has alleged in its Second Amended Complaint. CBD notified the EPA of its intent to file suit, and the Second Amended Complaint alleges facts sufficient to support the proposition that pesticide product reregistrations are affirmative agency actions, distinct from the issuance of REDs, that trigger a Section 7 consultation obligation.[20] Neither the ESA nor FIFRA requires more. They certainly do not require CBD to remind the EPA to engage in ESA consultation at every phase of the pesticide active ingredient and pesticide product reregistration process, nor do those statutes require CBD to contest a RED to preserve failure-to-consult claims challenging final pesticide product reregistration decisions.

Consequently, in the context of this case, the collateral attack doctrine is inapposite. Accordingly, we reverse the

---

[20] The district court held that "to the extent that Plaintiffs seek to challenge any of the analyses or conclusions contained in the RED, this court has no jurisdiction to entertain such a claim." *Ctr. for Biological Diversity*, 65 F. Supp. 3d at 764. We agree, but as pled, CBD is not challenging the analyses or conclusions contained in the RED, but rather the affirmative action of reregistering a pesticide product.

district court's dismissal of all category four sub-claims alleged in Claims for Relief one through thirty-one.

### III.

We affirm the district court's order in substantial part; all category one, two, and three sub-claims alleged in Claims for Relief one through thirty-one were properly dismissed. We reverse the dismissal of all category four sub-claims alleged in Claims for Relief one through thirty-one in which the reregistration took place after January 20, 2005, and in which there was no public notice and comment in the Federal Register. We remand for further proceedings consistent with this opinion. Each party shall bear its own costs on appeal.

**AFFIRMED in part, REVERSED in part, and REMANDED.**

---

BEA, Circuit Judge, dissenting in part:

Although I agree with most of the majority opinion, I respectfully dissent from the conclusion reached in Part II.E that the category four sub-claims in the Second Amended Complaint ("SAC"), which challenge the approval of pesticide products by the Environmental Protection Agency ("EPA"), were not a collateral attack on the EPA's prior approval of the pesticides in those products. The majority focuses on the distinct processes the EPA uses to approve pesticides and to approve pesticide products. However, the category four sub-claims, *as pleaded*, are an impermissible collateral attack because those sub-claims challenge the EPA's approval of products *simply because those products*

*contain the pesticides* the SAC alleges were improperly approved previously.

Whenever the EPA considers taking an "agency action," the Endangered Species Act ("ESA") Section 7 requires the EPA to consult with the National Marine Fisheries Service and the Fish and Wildlife Service (collectively, "the Service") if that action "may affect" a listed endangered species or its habitat. *See Karuk Tribe of California v. U.S. Forest Service*, 681 F.3d 1006, 1020 (9th Cir. 2012) (citing 16 U.S.C. § 1536(a)(2) and 50 C.F.R. § 402.14(a)). In the SAC, the Center for Biological Diversity and the Pesticide Action Network North America (collectively, "CBD"), challenge the EPA's reregistration eligibility determinations ("REDs") for many different pesticides, alleging that the EPA failed to consult with the Service before issuing the REDs. According to CBD, approving the pesticides through the REDs "may affect" various listed endangered species or their habitats.

CBD structured the SAC around each challenged pesticide. Each Claim for Relief has four sub-claims. The category one sub-claim is the challenge to the RED. The category two and category three sub-claims challenge the EPA's "continued discretionary control and involvement" in the pesticide's registration and the EPA's "completion of product reregistration" for the pesticide in question. I agree with the majority that the district court properly dismissed most of the category one sub-claims as time barred or jurisdictionally barred and that the category two and three sub-claims were properly dismissed because they did not challenge affirmative agency actions.

The final part of each Claim for Relief, the category four sub-claim, challenges the EPA's approval of products

containing the particular pesticide in question.  As one of the category four sub-claims states: "[T]he following specific EPA actions on 1,3 dichloropropene are subject to this complaint and require EPA to consult under Section 7(a)(2) of the ESA, 16 U.S.C. 1536(a)(2): . . . EPA's approvals of products containing this pesticide, which are listed with dates in the table at Paragraph 120."  Notably, Paragraph 120 references all products in the EPA's online Pesticide Product Label System that contain 1,3-dichloropropene.  Thus, the category four sub-claims challenge the EPA's approval of *all products that contain a particular pesticide*.

The SAC refers to these pesticide product approvals as one of four "actions involving" a particular pesticide.  The SAC states that because *all of the four* actions "may affect the listed species in Exhibit A and their designated critical habitat, EPA is required to initiate consultation with the Service."  Unsurprisingly, Exhibit A lists endangered species "that may be affected" *by a particular pesticide*, **not** endangered species that "may be affected" by particular pesticide products.  Thus, the SAC does not differentiate between the four challenged "actions."  According to the SAC, all of those actions "may affect" endangered species or their habitats because all of those actions involve a particular pesticide that may affect endangered species or their habitats.  Therefore, the SAC does not specifically allege that the EPA's approval of particular pesticide products "may affect" endangered species or their habitats for any reason other than the fact that those products contain pesticides approved in the REDs.

I agree with the majority opinion that the EPA's approval of pesticide products is an affirmative agency action because that decision involves gathering and considering product-

specific data.  However, the majority incorrectly reverses the district court's dismissal of these sub-claims by concluding that "[t]he collateral attack doctrine is simply not at issue here" because the EPA's processes for approving pesticides and then later approving pesticide products are distinct. However, these category four sub-claims were a collateral attack on the REDs based on how these sub-claims were actually pleaded in the SAC.  Therefore, I would affirm the district court's dismissal.

The collateral attack doctrine prevents district courts from hearing claims that are "inescapably intertwined with a review of the procedures and merits" of an underlying agency order.  *Americopters, LLC v. F.A.A.*, 441 F.3d 726, 736 (9th Cir. 2006).  This doctrine prevents litigants from relitigating the merits of previous administrative procedures or evading those procedures.  *Id.*

The category four sub-claims challenge the EPA's approval of *all* products that contain specific pesticides approved in the REDs based on the theory that those very pesticides "may affect" endangered species or their habitats. Had the CBD alleged anything specific why the products qua products "may affect" endangered species, then the category four sub-claims would not be a collateral attack on the REDs. But since CBD's challenge to the product approvals is based entirely on CBD's allegation that the pesticides approved in the REDs "may affect" endangered species or their habitats, the category four sub-claims are an impermissible collateral attack on the REDs.

The district court carefully analyzed whether these sub-claims as pleaded were an improper collateral attack on the REDs.  *Ctr. for Biological Diversity v. EPA*, 65 F. Supp. 3d

742, 760–64 (N.D. Cal. 2014). The district court noted, "What is clear is what cannot be challenged: analyses and conclusions made in the RED. What is being challenged here is less clear." *Id.* at 764. The district court noted that the SAC "does not identity any facts that demonstrate the product reregistrations raised any new issues regarding the EPA's compliance with section 7 of the ESA that could not have been raised in a timely challenge to the EPA's issuance of a RED." *Id.* at 763. To cure this problem, the district court gave CBD leave to amend the SAC, *id.* at 764, which CBD declined to do.

Although CBD states in its Opening Brief that "[p]roduct formulations often contain more than one active ingredient that together cause synergistic harm," *the SAC does not allege* that particular pesticide products contain specific combinations of ingredients that cause harm to listed endangered species or their habitats. There are no allegations that the approved pesticides cause harm when they interact with other specific ingredients in particular products.[1] Thus, the category four sub-claims *as pleaded* challenge the EPA's approval of pesticide products simply because the pesticides in those products "may affect" endangered species. CBD is not entitled to a second opportunity to challenge the EPA's approval of the pesticides just because the EPA later approves products that contain those pesticides.

---

[1] The SAC does state that "[t]he ecological risk assessment [for the REDs] generally does not consider the cumulative or synergistic effects posed by multiple pesticides on wildlife or the environment . . . ." But this allegation is a general critique of the EPA's process for issuing REDs, not a challenge to the unique risks posed by particular products.

The majority misses the mark by focusing on the fact that the reregistration of a pesticide product and the issuance of a RED are distinct processes.  As the majority states, "[T]he EPA does not 'rubber stamp' the pesticide product reregistration in light of the RED."  Maj. Op. 34.  Although this observation is true because a pesticide product reregistration decision involves the consideration of data not involved in the RED and is a distinct determination, "[t]he relevant inquiry is not what the statute directs, but what the plaintiff challenges."  *Grand Canyon Trust v. Bureau of Reclamation*, 691 F.3d 1009, 1021 (9th Cir. 2012)).  As the EPA states in its brief, "The EPA does not dispute that a challenge to a product registration *could* raise new issues that would not be foreclosed by the collateral attack doctrine.  Here, however, the Center's failure to initiate claims do not raise any such issues."  For example, CBD does not allege that the pesticide product reregistrations raised new ESA compliance issues that could not have been raised in a challenge to the REDs.  CBD's category four sub-claims are inescapably intertwined with CBD's challenge to the REDs because those sub-claims challenge the EPA's approval of pesticide products on the ground that those products contain the pesticide at issue in each Claim for Relief.

The district court realized that allowing CBD to challenge every product approval simply because those products contain a particular pesticide would undermine the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA").  As the majority correctly concludes, when the EPA issues a RED after notice-and-comment procedures, FIFRA requires a plaintiff seeking to challenge that RED to file a petition for review in the courts of appeals.  Maj. Op. 27.  However, as the district court stated, "If an aggrieved party could challenge the conclusions of the RED [in a lawsuit filed in

district court] just because they were implemented in a subsequent order, as a practical matter there would be no exclusive jurisdiction in the court of appeals to consider challenges to the RED." *Ctr. for Biological Diversity*, 65 F. Supp. 3d at 764. Since CBD's claims challenging the product approvals *were based entirely on the conclusions of the REDs*, those claims were an improper attempt to evade FIFRA's requirement that CBD challenge those REDs through a petition filed in the court of appeals.

The category four sub-claims fail to allege anything particular about the products approved that required the EPA to consult with the Service. Instead, the category four sub-claims attempt to relitigate the EPA's prior approval of pesticides because the EPA later approved products that contain those pesticides. I would deny CBD's attempt to get a second chance to challenge the pesticide approvals by affirming the district court's dismissal of the category four sub-claims.