Justin Augustine (CA Bar No. 235561)
Jennifer Loda (CA Bar No. 284889)
Center for Biological Diversity
1212 Broadway, Suite 800
Oakland, CA 94612
(415) 436-9682 ext. 302
jaugustine@biologicaldiversity.org
jloda@biological diversity.org

Collette L. Adkins  (MN Bar No. 035059X)*
Center for Biological Diversity
P.O. Box 595
Circle Pines, MN  55014-0595
(651) 955-3821
cadkins@biologicaldiversity.org

Stephanie M. Parent (OR Bar No. 925908)*
Center for Biological Diversity
PO Box 11374
Portland, OR 97211-0374
 (971) 717-6404
sparent@biologicaldiversity.org

Attorneys for Plaintiffs Center for Biological Diversity and Pesticide Action Network North America
*Admitted *pro hac vice*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| **CENTER FOR BIOLOGICAL DIVERSITY**, a non-profit organization; and **PESTICIDE ACTION NETWORK NORTH AMERICA**, a non-profit organization;<br><br>        Plaintiffs,<br>   v.<br><br>**ENVIRONMENTAL PROTECTION AGENCY**; and **SCOTT PRUITT**[1], Administrator, EPA;<br><br>        Defendants,<br>and<br><br>**CROPLIFE AMERICA**, *et al.*,<br><br>        Intervenor-Defendants. | Case No. 3:11-cv-00293-JCS<br><br><br>**THIRD AMENDED AND FIRST SUPPLEMENTAL COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |

---

[1] Scott Pruitt is the successor to Gina McCarthy as EPA Administrator and is automatically substituted as a defendant pursuant to Federal Rule of Civil Procedure 25(d).

## INTRODUCTION

1.      This action challenges the failure of Defendants Environmental Protection Agency and Scott Pruitt, Administrator of the Environmental Protection Agency (collectively "EPA"), to initiate and reinitiate consultation with the United States Fish and Wildlife Service ("FWS") and National Marine Fisheries Service ("NMFS") (collectively "Service") pursuant to Section 7(a)(2) of the Endangered Species Act ("ESA"), 16 U.S.C. § 1536(a)(2), regarding EPA's pesticide product registration actions, as well as its actions in exercising continuing regulatory authority over pesticide use in the United States.  This amended and supplemental complaint follows the decision of the United States Court of Appeals for the Ninth Circuit, remanding the case for further proceedings. *Ctr. for Biological Diversity v. U.S. Envtl. Prot. Agency*, 847 F.3d 1075 (9th Cir. 2017).

2.      Despite the vast amount of data and research – including from EPA itself – demonstrating widespread and devastating impacts of toxic pesticides to wildlife, EPA, for over two decades, has refused to consult with, or reinitiate consultation with, the Service, thus abdicating its responsibilities to the nation's most vulnerable wildlife.  This litigation seeks to require EPA to consult with the Service on pesticides known to be toxic to the dozens of endangered and threatened species at issue in this case.

3.      Consultation with the Service is necessary to ensure that EPA's regulation of these toxic pesticides does not jeopardize the continued existence of endangered or threatened species, or result in the destruction or adverse modification of designated critical habitat of these species. 16 U.S.C. § 1536(a)(2).  If EPA engaged in consultation as required, the Service would assess how pesticides are affecting listed species and their habitats and, if necessary, would suggest reasonable and prudent alternatives and measures to protect the species. 16 U.S.C. § 1536(a)(3).

4.      Similarly, reinitiation of consultation is necessary for pesticides addressed in consultations completed in 1989 and 1993, which are the last significant consultations from FWS regarding pesticides.  These pesticides continue to harm and kill endangered and threatened species, such as documented deaths of the endangered San Joaquin kit fox from a rodenticide called brodifacoum.  Moreover, over the past 20 years, numerous studies, EPA findings, new data, and changes in the manner and extent of pesticide use demonstrate the need for reinitiation of consultation.

5.      The Center for Biological Diversity ("the Center") and Pesticide Action Network North America ("PANNA") (collectively "Plaintiffs" or "the Center") seek an order declaring that EPA has violated Section 7(a)(2) of the ESA by failing to undergo consultation and reinitiate consultation with the Service concerning pesticide impacts on endangered and threatened species in the United States. Plaintiffs seek an order compelling EPA to consult with the Service by a date certain.  Plaintiffs also seek an order vacating, setting aside, and enjoining EPA's authorization of pesticide uses that may result in pesticides entering occupied habitat or designated critical habitat of endangered and threatened species until the consultation process has been completed and EPA is in compliance with Section 7(a)(2).

## JURISDICTION AND VENUE

6.      The Court has jurisdiction over this action by virtue of 28 U.S.C. § 1331 because Plaintiffs allege violations of federal law.  The Court is authorized to provide declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 - 2202.  The Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C. § 136n(a), provides the district court jurisdiction over challenges to final actions of the EPA that do not follow a hearing.  The ESA's citizen suit provision, 16 U.S.C. § 1540(g), provides the district court jurisdiction to enforce the ESA and its implementing regulations.

7.      As required by the ESA, 16 U.S.C. § 1540(g)(2)(A), Plaintiffs provided EPA with at least 60 days notice of their intent to sue by sending letters to EPA on January 27, 2010; March 16, 2010; and May 20, 2010.

8.      EPA has not remedied the violations set out in the 60-day notices.

9.      Venue lies in this Court pursuant to 28 U.S.C. § 1391(e) as Plaintiffs reside in this judicial district and no real property is involved.  In addition, under 16 U.S.C. § 1540(g)(3)(A), this lawsuit may be brought in this judicial district because Defendants' violations of the ESA have occurred in this district.

## INTRADISTRICT ASSIGNMENT

10.      Pursuant to Civil Local Rules 3-2(c) and 3-2(d), this action is properly assigned to either the San Francisco or Oakland Division of this Court because Plaintiffs reside in and maintain offices in San Francisco County.

## PARTIES

11.     Plaintiff CENTER FOR BIOLOGICAL DIVERSITY is a non-profit corporation with offices in San Francisco, Joshua Tree, and Los Angeles, California; Portland, Oregon; Silver Springs, New Mexico; Tucson and Flagstaff, Arizona; Anchorage, Alaska; Seattle, Washington; Minneapolis and Duluth, Minnesota; Las Vegas, Nevada; Washington, D.C; and St. Petersburg, Florida.  The Center is actively involved in species and habitat protection issues throughout the United States, including the U.S. territories, as well as outside of the United States.  The Center has approximately 58,000 members that live throughout the United States, including in San Francisco.

12.     Plaintiff PESTICIDE ACTION NETWORK NORTH AMERICA is a non-profit, public interest organization with offices in Berkeley and Sacramento, California and Minneapolis, Minnesota.  PAN is one of five independent regional centers of Pesticide Action Network International, a network of more than 600 organizations in 90 countries.  Pesticide Action Network has 115,000 members and more than 100 organizational partners across the United States, working with those on the frontlines of the harms of industrial agriculture to challenge the global proliferation of pesticides, defend basic rights to health and environmental quality, and ensure the transition to a just and viable food system. For more than 30 years, Pesticide Action Network has fought to preserve ecosystems, biodiversity, sustainable agriculture, and community food security.

13.     Defendant ENVIRONMENTAL PROTECTION AGENCY is the federal agency charged with registering pesticides under FIFRA.  As such, EPA must ensure that the pesticide uses it authorizes will not have unreasonable adverse effects on the environment, including on endangered and threatened species and their habitats. 7 U.S.C. §§ 136-136y.  EPA also has duties to regulate and restrict pesticide uses under the Federal Food, Drug, and Cosmetic Act, as amended by the Food Quality Protection Act, 21 U.S.C. §§ 307-397.  EPA is further charged with complying with the ESA with respect to its programs, authorities, and actions. 16 U.S.C. § 1536.  Here, Plaintiffs bring claims alleging violations of the ESA only.

14.     Defendant SCOTT PRUITT is the Administrator of EPA.  He is sued in his official capacity as EPA Administrator.

# LEGAL BACKGROUND

## I.    EPA's Duties Under The Endangered Species Act

15.    Congress enacted the ESA, in part, to provide a "means whereby the ecosystems upon which endangered species and threatened species depend may be conserved . . . [and] a program for the conservation of such endangered species and threatened species . . . ." 16 U.S.C. § 1531(b).

16.    The ESA vests primary responsibility for administering and enforcing the statute with the Secretaries of Commerce and Interior.  The Secretaries of Commerce and Interior have delegated this responsibility to the NMFS and the FWS respectively.

17.    When a species has been listed as threatened or endangered under the ESA, all federal agencies – including EPA – must ensure that their programs and activities are in compliance with the ESA.

18.    To this end, Section 7(a)(2) of the ESA requires that "each federal agency shall, in consultation with and with the assistance of the [Service], insure that any action authorized, funded, or carried out by such agency [hereinafter "agency action"] is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of habitat of such species which is determined by the [Service] . . . to be critical." 16 U.S.C. § 1536(a)(2).

19.    The ESA establishes an interagency consultation process to assist federal agencies in complying with their Section 7(a)(2) duty to guard against jeopardy to listed species or destruction or adverse modification of critical habitat.  Under Section 7(a)(2), federal agencies must consult with the Service to determine whether their actions will jeopardize listed species' survival or adversely modify designated critical habitat, and if so, to identify ways to modify the action to avoid that result. 50 C.F.R. § 402.14 (2010).

20.    An agency must initiate consultation under Section 7 whenever its action "may affect" a listed species or critical habitat. 50 C.F.R. § 402.14(a). The threshold for a "may affect" determination and the required ESA section 7(a)(2) consultation is low. *See* 51 Fed. Reg. 19926, 19949 (June 3, 1986) ("Any possible effect, whether beneficial, benign, adverse or of an undetermined character, triggers the formal consultation requirement."). *See also* Endangered Specis Act Section 7 Consultation Handbook

1   at 3-13, 4-26.  Conversely, an agency is relieved of the obligation to consult on its actions only where

2   the action will have "no effect" on listed species or designated critical habitat.  "Effects determinations"

3   are based on the direct, indirect, and cumulative effects of the action when added to the environmental

4   baseline and other interrelated and interdependent actions. 50 C.F.R. § 402.02 (definition of "effects of

5   the action").

6          21.    An agency is required to review its actions "at the earliest possible time" to determine

7   whether the action may affect listed species or critical habitat.  50 C.F.R. § 402.14(a).

8          22.    The scope of agency actions subject to consultation is broadly defined to encompass "all

9   activities or programs of any kind authorized, funded, or carried out, in whole or in part, by Federal

10  agencies." 50 C.F.R. § 402.02 (definition of "action").

11         23.    Agencies must reinitiate consultation on agency actions over which the federal agency

12  retains, or is authorized to exercise, discretionary involvement or control if: the amount or extent of

13  taking specified in the incidental take statement is exceeded; new information reveals effects of the

14  action that may affect listed species or critical habitat in a manner or to an extent not previously

15  considered; the identified action is subsequently modified in a manner that causes an effect to the listed

16  species or critical habitat that was not considered in the biological opinion; or if a new species is listed

17  or critical habitat designated that may be affected by the identified action. 50 C.F.R. § 402.16

18  (reinitiation of consultation).

19         24.    Section 7(d) of the ESA, 16 U.S.C. § 1536(d), provides that once a federal agency

20  initiates consultation on an action under the ESA, the agency "shall not make any irreversible or

21  irretrievable commitment of resources with respect to the agency action which has the effect of

22  foreclosing the formulation or implementation of any reasonable and prudent alternative measures

23  which would not violate subsection (a)(2) of this section."  The purpose of Section 7(d) is to maintain

24  the environmental status quo pending the completion of consultation.  Section 7(d) prohibitions remain

25  in effect throughout the consultation period and until the federal agency has satisfied its obligations

26  under Section 7(a)(2) that the action will not result in jeopardy to the species or adverse modification of

27  its critical habitat.

28

25.     To initiate consultation, the action agency (here, EPA) must assess the impacts of the action on listed species and their habitat and provide all relevant information about such impacts to the Service.  50 C.F.R. § 402.14(c).  If the action agency determines that an action "may affect," but is "not likely to adversely affect" the listed species or its critical habitat and the Service concurs in writing with that determination, the agency does not have to undergo formal consultation. 50 C.F.R. § 402.13.

26.     If the Service does not concur, or if the action agency has determined that the action is "likely to adversely affect" the listed species, the agencies must conduct a formal consultation. *Id*. at §§ 402.02, 402.14(a).

27.     The end product of formal consultation is a biological opinion in which the Service determines whether agency action will jeopardize the survival and recovery of listed species or will destroy or adversely modify the species' critical habitat. 16 U.S.C. § 1536(b).  To make this determination, the Service must review all relevant information and provide a detailed evaluation of the action's effects, including the cumulative effects of federal and nonfederal activities in the area, on the listed species. 16 U.S.C. § 1536(b)(3)(A); 50 C.F.R. § 402.14(g)-(h).  The Service has a statutory duty to use the best available scientific information in an ESA consultation. 16 U.S.C. § 1536(a)(2); 50 C.F.R. § 402.14(g)(8).  If the Service determines that the action is likely to jeopardize the species, the biological opinion must specify "reasonable and prudent alternatives" that will avoid jeopardy. 16 U.S.C. § 1536(b); 50 C.F.R. § 402.14(h)(3).  The Service must also formulate discretionary conservation recommendations to reduce or minimize the action's impacts on listed species or critical habitat. 50 C.F.R. § 402.14(g)(6).

28.     "[R]easonable and prudent alternatives" are alternative actions identified during formal consultation that (1) can be implemented in a manner consistent with the intended purpose of the action, (2) can be implemented consistent with the scope of the action agency's legal authority, (3) are economically and technologically feasible, and (4) would avoid the likelihood of jeopardizing the continued existence of listed species and/or avert the destruction or adverse modification of critical habitat. 50 C.F.R. § 402.02.

29.     Not only does a Section 7(a)(2) consultation assist the action agency in discharging its duty to avoid jeopardy, but the biological opinion also affects the agency's obligation to avoid the

1   "take" of listed species.  Under ESA Section 9, 16 U.S.C. § 1538(a)(1)(B), it is illegal for any person –

2   whether a private or governmental entity – to "take" any endangered species of fish or wildlife listed

3   under the ESA.  "Take" is defined to mean harass, harm, pursue, hunt, shoot, wound, kill, trap, capture,

4   or collect, or attempt to engage in such conduct.  *Id*. at § 1532(19).  The Service has defined "harm" to

5   include "significant habitat modification or degradation which actually kills or injures fish or wildlife

6   by significantly impairing essential behavioral patterns, including breeding, spawning, rearing,

7   migrating, feeding or sheltering."  50 C.F.R. § 222.102.

8        30.    As part of a consultation, the Service determines whether to authorize the take of listed

9   species through the issuance of an incidental take statement.  An incidental take statement may be

10  issued only if the action can proceed without causing jeopardy.  16 U.S.C. § 1536(b)(4).  An incidental

11  take statement must: (1) specify the impact of the incidental take on the listed species; (2) specify

12  "reasonable and prudent measures" the agency considers necessary to minimize that impact; and (3) set

13  forth mandatory terms and conditions.  *Id*.

14       31.    Reasonable and prudent measures, along with terms and conditions, are nondiscretionary

15  measures included in an incidental take statement that the Service considers necessary to minimize and

16  reduce impact to listed species and avoid jeopardy.  *Id*.

17       32.    An incidental take statement insulates the federal agency from liability for a take of an

18  endangered or threatened species, provided the agency complies with the statement's terms and

19  conditions.  This insulation extends further to any entity receiving a federal permit, license,

20  authorization, or funding subject to, and in compliance with, the statement. 16 U.S.C. § 1536(o)(2).

21  **II.    EPA's Oversight Of Pesticides Under The Federal Insecticide, Fungicide, And Rodenticide**

22          **Act**

23       33.    The Environmental Protection Agency is responsible for the oversight of pesticide

24  registration and use in the United States.  Specifically, the Federal Insecticide, Fungicide, and

25  Rodenticide Act ("FIFRA") charges EPA with registration, review, and ongoing oversight of chemicals

26  for use as insecticides, herbicides, fungicides, rodenticides, fumigants, and other pesticides (collectively

27  "pesticides") in the United States. 7 U.S.C. §§ 136-136y.  Under FIFRA, a pesticide generally may not

28

1   be sold or used in the United States unless it has an EPA registration for that particular use. 7 U.S.C. §

2   136a(a).

3       34.     EPA may register a pesticide if it makes the following determinations: (1) the labeling

4   complies with FIFRA's requirements; (2) the composition claims are warranted; (3) the pesticide will

5   perform its intended function; and (4) the pesticide will not cause unreasonable adverse effects on the

6   environment. 7 U.S.C. § 136a(c)(5).

7       35.     The registration process includes EPA's approval of a label for the particular pesticide.

8   FIFRA makes it unlawful to use a pesticide in a manner inconsistent with the label, 7 U.S.C. §

9   136j(2)(G), or to make any claims that differ substantially from the label. 7 U.S.C. § 136j(1)(B).

10      36.     EPA must classify pesticides as general or restricted use pesticides, depending on the

11  risk posed to the environment.  Where necessary to guard against unreasonable adverse environmental

12  effects, EPA must classify a pesticide as restricted use. 7 U.S.C. § 136a(d)(1)(C).  Restricted use

13  pesticides are subject to additional regulatory restrictions, particularly concerning application of the

14  pesticide. *Id*.

15      37.     In 1988, amendments to FIFRA established a comprehensive reregistration scheme for

16  pesticides. 7 U.S.C. § 136a–1.  The 1988 amendments require reregistration of all pesticide active

17  ingredients initially registered before November 1, 1984.

18      38.     EPA's reregistration decisions require EPA to determine whether the pesticide causes

19  unreasonable adverse effects to people or the environment when used according to product labeling. 7

20  U.S.C. § 136a–1(g)(2)(C).  EPA has the authority to compel registrants to submit data necessary for a

21  reregistration review.  *Id*. § 136a(g)(2).  The results of EPA's review are presented in a Reregistration

22  Eligibility Decision ("RED") document.

23      39.     The RED contains a human health assessment and an ecological risk assessment.  The

24  ecological risk assessment evaluates the likelihood that exposure to that pesticide may cause harmful

25  ecological effects.  The effects can be direct (e.g. fish suffer the toxic effects from a pesticide entering

26  waterways), or indirect (e.g. birds become sick from ingesting contaminated fish).

27

28

40.     The ecological risk assessment generally does not consider the cumulative or synergistic effects posed by multiple pesticides on wildlife or the environment, nor does it address delayed effects of pesticides, referred to as "lag effects."

41.     The types of measures included in REDs to reduce risks from pesticides include: voluntary cancellation of pesticide products or deletion of uses; declaring certain uses ineligible or not yet eligible (and then proceeding with follow-up action to cancel the uses or require additional supporting data); restricting use of products to certified applicators; limiting the amount or frequency of use; improving use directions and precautions; requiring special packaging or engineering controls; requiring no-treatment buffer zones; employing ground water, surface water, or other environmental and ecological safeguards; and other measures.

42.     In 1996, Congress further amended FIFRA with the Federal Food, Drug, and Cosmetic Act ("FFDCA"), 21 U.S.C. § 346a, as amended by the Food Quality Protection Act ("FQPA"), Pub. L. 104-170, which established new safety standards for pesticide residue in food.  Under FQPA, EPA must further determine with "reasonable certainty that no harm" will come to infants, children or other sensitive individuals exposed to pesticides from food, water, and home and garden use.  EPA is satisfying FQPA's requirements by reassessing all existing "tolerances," which are maximum limits for pesticide residues in foods.  EPA is using the reregistration program to accomplish the tolerance reassessments.

43.     After EPA has issued a RED and declared a pesticide active ingredient eligible for reregistration, individual end-use products that contain pesticide active ingredients included in the case still must be reregistered.  *See* U.S. EPA, Evaluation of the U.S. Pesticide Product Reregistration Process: Opportunities for Efficiency and Innovation at 1-4 (2007), *available at* https://www.epa.gov/sites/production/files/2015-09/documents/eval-epa-pesticide-product-reregistration-process.pdf (last visited 6/26/2017).  This concluding part of the reregistration process is referred to as "product reregistration." *Id.*  In issuing a completed RED document, EPA calls in any product-specific data and revised labeling needed to make final reregistration decisions for each of the individual pesticide products covered by the RED. *Id.*  The EPA receives and evaluates the requested

1  studies from the registrants and requests additional information, as needed, and conducts a preliminary

2  label assessment. *Id*.

3      44.  Based on its review of the data and labeling, EPA registers or reregisters a product only

4  "if it was found to meet FIFRA and FFDCA standards." *Id*.  These standards include the requirement

5  that "it will perform its intended function without unreasonable adverse effects on the environment." 7

6  U.S.C. § 136a(c)(5); *see also* 7 U.S.C. § 136a-1(g)(2)(C) (explaining that the requirements of 7 U.S.C.

7  § 136a(c)(5) must be met when analyzing the product specific data); 40 C.F.R. § 152.112 ("EPA will

8  approve an application under the criteria of FIFRA section 3(c)(5) only if: . . . The Agency has

9  determined that the product will perform its intended function without unreasonable adverse effects on

10  the environment, and that, when used in accordance with widespread and commonly recognized

11  practice, the product will not generally cause unreasonable adverse effects on the environment."); 40

12  C.F.R. § 152.113(a) ("[T]he Agency may approve an application for registration or  amended

13  registration of a pesticide product, each of whose active ingredients is contained in one or more other

14  registered pesticide products, only if the Agency has determined that:  . . .  (2) Approval of the

15  application would not significantly increase the risk of any unreasonable adverse effect on the

16  environment.").

17      45.  Several outcomes are possible for a pesticide product completing this final phase of the

18  reregistration process: reregistered product, amended product, suspended product, or cancelled product.

19  The primary output of this step is a reregistration notice issued to the registrant and the stamped

20  pesticide label, which includes any revised mitigation specified in the RED or during the product

21  reregistration process.  *See* U.S. EPA, Evaluation of the U.S. Pesticide Product Reregistration Process:

22  Opportunities for Efficiency and Innovation at 1-4.

23      46.  After approving pesticide active ingredient and product registrations and reregistrations,

24  EPA retains discretionary involvement and control over them. The EPA Administrator has the authority

25  to cancel pesticide registrations or change its classification whenever "a pesticide or its labeling or

26  other material required to be submitted does not comply with the provisions of [FIFRA] or, when used

27  in accordance with widespread and commonly recognized practice, generally causes unreasonable

28  adverse effects on the environment." 7 U.S.C. § 136d(b).  The Administrator may immediately suspend

1   a pesticide registration to prevent an imminent hazard.  *Id.* § 136d(c).  EPA may change the use

2   classification of any pesticide when necessary to prevent unreasonable adverse effects on the

3   environment. 7 U.S.C. § 136a(d)(2).  Also, EPA may determine that additional data is required to

4   maintain an existing pesticide registration. 7 U.S.C. § 136a(c)(2)(B)(i).  EPA must periodically review

5   pesticide registrations with a goal of reviewing each pesticide registration every 15 years. 7 U.S.C. §

6   136a(g)(1).  Registrants are required to submit to EPA any information about registered pesticides'

7   unreasonable adverse effects on the environment. 7 U.S.C. § 136d(a)(2).  EPA considers such

8   information in reviewing and, where necessary, modifying the pesticide registrations.

9         47.  FIFRA's regulations also demonstrate EPA's discretionary control and involvement.  For

10   example, 40 CFR Part 154 (Special Review) authorizes EPA "to cancel, deny, or reclassify registration

11   of a pesticide product because uses of that product may cause unreasonable adverse effects on the

12   environment . . . .  The issuance of a Notice of Special Review means that the [EPA] has determined

13   that one or more uses of a pesticide may pose significant risks and that, following completion of the

14   Special Review process, the Agency expects to initiate formal proceedings seeking to cancel, deny,

15   reclassify, or require modifications to the registration of the product(s) in question . . . ." 40 C.F.R. §

16   154.1(a).

17         48.  For every pesticide active ingredient covered by this Complaint, EPA has taken actions

18   including reregistrations of active ingredients (REDs or Interim REDs), amendments or corrections to

19   REDs, and product registrations and reregistrations.

20   **III.   EPA's Review Of Pesticide Impacts On Listed Species**

21         49.  In 1988, EPA established the "Endangered Species Protection Program" or "ESPP" to

22   try to address its pesticide program's compliance with the ESA.

23         50.  EPA has used Endangered Species Protection Bulletins ("Bulletins") to reflect

24   geographically specific pesticide use limitations.  In November of 2005, EPA published a final notice

25   for its Field Implementation of its Endangered Species Protection Program ("ESPP").  Prior to issuance

26   of the final ESPP, these Bulletins were voluntary.  While the Bulletins are now enforceable if

27   referenced on the label, EPA has issued very few Bulletins.

28

1       51.    Despite the existence of EPA's ESPP program for over 20 years, the vast majority of

2   pesticides active ingredients and products have undergone no ESA analysis of impacts to listed species.

3   In fact, on information and belief, since 1993, there have been only a few completed consultations with

4   the Service regarding pesticide impacts to listed species, other than those imposed by court orders, as

5   discussed below.

6       52.    In April of 2013, the National Research Council of the National Academy of Science

7   released a report of a multi-year study examining scientific and technical issues related to determining

8   risks to endangered species posed by pesticides that are registered under FIFRA.  The report found that

9   "the EPA pesticide risk assessments do not directly or explicitly incorporate information on exposures

10   to environmental mixtures," "EPA seldom addresses interactions quantitatively in ecological risk

11   assessments of pesticides," and that "[l]ack of a common approach has created scientific obstacles to

12   reaching agreement between EPA and the Services during consultation." The final report recommended

13   the best available scientific approaches and data to be used in ESA consultations on pesticide uses. On

14   November 13, 2013, EPA, the Services, and the Department of Agriculture published their "Interim

15   Approaches for National-Level Pesticide Endangered Species Act Assessments Based on the

16   Recommendations of the National Academy of Scients April 2013 Report," *available at*

17   https://www.epa.gov/endangered-species/interim-approaches-pesticide-endangered-species-act-

18   assessments-based-nas-report (last visited 6/22/2017) (hereafter "Interim Approaches"). In the Interim

19   Approaches, the agencies agreed to adopt the NAS recommendations regarding Step 1 of the ESA

20   consultation process for pesticides. The NAS Report and the Interim Approaches define "Step 1" of the

21   ESA consultation process as a "no effect/may affect" determination. Under this framework, "any

22   species or critical habitat that overlaps with the action area will be considered a 'May Affect.'" Interim

23   Approaches at 4. The action area is determined by examining "potential [pesticide] use sites combined

24   with the range of off-site transport to identify the area of potential effects in and around the use sites."

25   Interim Approaches at 4-5. In other words, the agencies agreed that if there is overlap between a species

26   or its critical habitat and the places a pesticide might be used or might otherwise reach (such as through

27   drift or water transport), then consultation is required.

28

IV.    **Previous Litigation Addressing EPA's Failure To Consult With The Service Regarding Pesticide Impacts To Endangered And Threatened Species**

53.    On January 30, 2001, a coalition of environmental groups filed a lawsuit against EPA for violating the ESA when it failed to consult with the NMFS on pesticide impacts to endangered or threatened salmon and steelhead in the waters of the Pacific Northwest.  EPA admittedly did not do any such consultation, but it argued that because it complied with FIFRA in registering the pesticides, it was not bound by the ESA.  The Ninth Circuit rejected EPA's contention and held that the agency was bound by the ESA.  *Washington Toxics Coal. v. U.S. Envtl. Prot. Agency*, 413 F.3d 1024, 1033 (9th Cir. 2005).  The Ninth Circuit affirmed the district court's grant of injunctive relief, which placed restrictions on the use of certain pesticides in the habitat of listed salmon and steelhead. *Id*. at 1035.

54.    On April 2, 2002, the Center for Biological Diversity filed a lawsuit against EPA for failing to undergo consultation with the FWS regarding pesticide impacts on the California red-legged frog, in violation of Section 7(a)(2) of the ESA.  On September 19, 2005, the Court granted the Center's motion for summary judgment. *Ctr. for Biological Diversity v. Leavitt*, 2005 U.S. Dist. LEXIS 40806, at *12 (N.D. Cal. Sept. 19, 2005).  Pursuant to the Court's order, the parties on October 20, 2006 stipulated to a schedule by which EPA would determine if its actions could affect the species and which provided interim injunctive relief.

55.    On May 30, 2007, the Center for Biological Diversity filed a lawsuit against EPA for failing to undergo consultation with FWS regarding pesticide impacts on eleven San Francisco Bay Area species, in violation of Section 7(a)(2) of the ESA.  On May 17, 2010, the Court entered an Order Approving Stipulated Injunction and Order.  *Ctr. for Biological Diversity v. U.S. Envtl. Prot. Agency*, No. 07-02794-JCS, ECF No. 121.  Through this stipulation, EPA agreed to a schedule of compliance for completing consultation and an injunction to remedy its violations.

## FACTUAL BACKGROUND

I.    **Pesticide Use In The U.S.**

56.    Pesticides are toxic substances designed and manufactured to kill organisms. Widespread use of synthetic pesticides began after World War II when federal and local governments sponsored large-scale spraying programs using organochlorines such as DDT.  Although many of the

organochlorines have been phased out, they have been replaced with less persistent yet still potentially harmful chemicals such as organophosphates, carbamates, and triazines.

57.    Over one billion pounds of pesticides are used each year in this country to control weeds, insects and other living organisms.

58.    Agriculture accounts for 70 to 80 percent of total pesticide use with few measures in place to protect the environment.  Home and commercial uses also contribute significant amounts of pesticides to our environment.

## II.    Pesticide Contamination Of The Environment

### Runoff Leads To Contaminated Waterways

59.     Agricultural and urban runoff transport pesticides from their application sites to other parts of the environment.  Movement of pesticides via runoff can occur when pesticides are dissolved in the water or bound to eroding soil particles.

60.    Over the last decade, the United States Geological Survey ("USGS") has released several reports on its nationwide water quality surveys, documenting the prevalence of pesticides in our nation's waterways, particularly in streams and groundwater in basins with significant agricultural or urban development.  For example, of 186 stream sites sampled nationwide, 57 percent of 83 agricultural streams, 83 percent of 30 urban streams, and 42 percent of 65 streams with mixed-land-use watersheds had concentrations of at least one pesticide that exceeded one or more aquatic-life benchmarks during the selected year of sampling.

61.     Polluted runoff can pose acute and chronic problems to wildlife and plants. USGS noted a direct correlation between the amounts and types of pesticides used and their frequency in nearby surface waters.  USGS found pesticides in waters at concentrations exceeding harmful levels. USGS commonly found mixtures of multiple pesticides in stream samples.

### Pesticide Drift Harms Wildlife Far From Target Sites

62.     Runoff is not the only mechanism by which pesticides travel inadvertently.  Pesticide drift is any airborne movement of pesticides away from the target site.  Fine droplets generated by spray nozzles can drift long distances before settling.  EPA receives thousands of reported complaints

of off-target spray drift each year.  EPA acknowledges that some degree of spray drift will occur from nearly all pesticide applications.

63.     In addition, applications of gaseous fumigant pesticides always involve escape of the gases from the intended application site, generally through the normal (and presently legal) application process, but also through leaking equipment, containers, or tarps.

64.     Pesticide drift does not end when applications are complete.  Post-application drift also may occur over many days and even weeks after a pesticide application.  Post-application drift takes two forms.  Volatilization drift occurs because some pesticides readily volatilize from the leaf and soil surfaces on which they were initially deposited.  These pesticides might be liquids or oils when applied, but evaporate in the heat of the day, drift for a distance, and re-condense when the temperature drops or when they contact a cool surface.  This process is repeated many times as the pesticide is carried by prevailing winds.  Drift of pesticide-coated dust particles can also occur.  High winds in agricultural areas create clouds of dust from pesticide-treated fields.  This dust is eventually deposited, often a great distance from its application point.  Both volatile and non-volatile pesticides may cling to dust particles and drift in this manner.

65.     The amount of drift that occurs via pesticide use has been characterized as "considerable" by the National Research Council and is thought to vary from 5 percent (under optimal low wind conditions) to 60 percent (under more typical conditions).  Pesticides can drift for many miles.  For example, scientists have documented 2,4-D drift for 10 to 50 miles and paraquat drift for up to 20 miles in central Washington.

66.     Impacts to non-target wildlife from pesticide drift have been well documented.  For example, studies have implicated pesticide drift from the Central Valley of California in disproportional declines of several native frog species in the Sierra Nevada mountain range.  Even tadpoles collected from high in the Sierra Nevada in areas with no direct pesticide use contain pesticide residues in their systems.

1   **III.     Pesticide Classes**

2   <u>**Insecticides**</u>

3        67.     Insecticides are used in agricultural, commercial, and residential settings to control

4   arthropod and arachnid insects.  Aquatic arthropods such as crustaceans and aquatic insects are also

5   sensitive to insecticides.  Because many insecticides work by mechanisms of action that also apply in

6   mammalian, avian, fish, amphibian and reptile species, they are directly toxic to many animal taxa

7   groups.

8        68.     Insecticides can also have indirect effects on endangered species by virtue of their

9   toxicity to the food sources. For example, some fish species may not be particularly sensitive to some

10  types of insecticides, yet the aquatic insects that they rely on for a food supply can be eliminated by a

11  toxic pulse of pesticide from field runoff.

12       69.     The different classes of insecticides have differing relative toxicity to different taxa

13  groups.  The neurotoxic organochlorine, organophosphorus (e.g. chlorpyrifos, diazinon), and carbamate

14  insecticides (e.g. carbaryl) can be acutely toxic to birds, mammals, and fish.

15       70.     Broad-spectrum pesticides used to destroy pest insects can disrupt the natural balance

16  between pest and predator insects and indiscriminately kill beneficial insects needed for pollination and

17  other ecosystem services as well.

18  <u>**Herbicides**</u>

19       71.     Herbicides are used in agricultural, commercial, and residential settings to control

20  terrestrial and aquatic weeds.

21       72.     Many herbicides are water soluble with low affinity for soils and thus have potential to

22  run off into aquatic ecosystems where they may pose a risk to aquatic species.  Both runoff and spray

23  drift of herbicides into aquatic and terrestrial habitats can destroy plant cover used for habitat and food

24  for endangered animals, leading to indirect effects on endangered species.  Although generally less

25  acutely toxic than insecticides, many herbicides may cause chronic effects on reproduction through

26  disruption of the endocrine system or by other mechanisms.

27       73.     Several classes of herbicides are particularly problematic for endangered species.  Some

28  chloroacetanilide herbicides (e.g. metolachlor) are toxic to certain species of mammals, birds,

crustaceans and fish, as well as non-target plants.  Triazine herbicides (e.g. atrazine) have been associated with endocrine disruption, with effects on the reproductive and immune systems capable of compromising populations of endangered species.

**Rodenticides**

74.     Rodenticides are used to control mice, rats, gophers, other rodents, and rabbits in agricultural, residential, and commercial settings.

75.     There is potential for harm not only to endangered rodents, but also to the many predator species that depend on rodents as food.  Raptors, scavengers (such as the California condor), and mammalian predators (such as wolves and foxes) are all vulnerable from ingesting poisoned rodents.

76.     Rodenticides fall into several categories, such as first-generation anticoagulants (e.g. chlorphacinone and diphacinone) and second-generation anticoagulants (e.g. brodifacoum).  For the second-generation anticoagulants, the time between ingestion and death can be as long as five days.  Additionally, second-generation anticoagulants can persist in body tissues for nearly one year and can cause secondary poisoning to predators over extended periods of time.

**Fungicides**

77.     Fungicides (e.g. captan) are used against molds, mildews, soil pathogens, and in wood preservation.

78.     As a group, fungicides are heterogeneous and diverse and may affect a wide variety of endangered species through various mechanisms.  Acute effects to aquatic species are particularly notable for fungicides.  Endocrine disruption is also a potential effect of exposure to many fungicides, with effects on reproduction and the immune system.

**Fumigants**

79.     Fumigant pesticides (e.g. 1,3-dichloropropene) are used in pre-plant soil treatments to kill nematodes, fungal pathogens, and weed seeds.

80.     Fumigants are used at application rates between 50 and 400 pounds per acre and are all highly volatile, vaporizing to form gases that drift away from the application site and into neighboring areas.

81.     EPA has not required sufficient data for a comprehensive ecological analysis, and it has not prioritized these chemicals for ecological risk assessment, assuming that effects are minimal, although there is little data to support that conclusion.  In fact, many of these chemicals are neurotoxic and/or highly irritating. Fumigants are used at such high application rates that animals adjacent to fumigation sites find it impossible to avoid inhalation exposure at levels that could be fatal or severely damaging to the individual.  Spills of liquid fumigants into waterways can be similarly devastating to aquatic life.

**IV.     Harmful Biological Effects Of Pesticides**

82.     Pesticides are well known to have adverse effects on wildlife.  These impacts have been in the public consciousness since the mid-1950s when Rachel Carson published *Silent Spring*, which examined devastating impacts of pesticides on the environment, particularly birds.  In 2004, the Center published *Silent Spring Revisited: Pesticide Use and Endangered Species*, detailing the EPA's dismal record in protecting endangered species from pesticides.

83.     Death is the most extreme and obvious effect of exposure to pesticides, but it is not the only significant biological impact.  Sublethal effects occur at far lower concentrations than those that cause death.  Sublethal effects include impaired growth and development, malformations, reduced reproductive success, immune suppression, and more.  For example, a 2009 study found that exposure to pesticides can slow the time to metamorphosis for frog and toad species.  Such delay causes increased vulnerability to predators and may be a factor contributing to widespread amphibian declines.

84.     Aquatic species are particularly vulnerable to the harmful impacts of pesticides because pesticides are pervasive in U.S. waterways.  USGS found that "[a]lmost every sample of water and fish from streams and major rivers in all land use settings contained at least one of the pesticides that we measured. This means that, throughout the nation, almost every time and place that you observe a stream or river in a populated area you are looking at water that contains pesticides, inhabited by fish that contain pesticides."

85.     Many of the pesticides detected in U.S. waterways have been discontinued for many years, and their continued presence raises serious concerns about the long-term chronic impacts of pesticides on aquatic species.  Moreover, more recent and currently used pesticides (such as

chlorpyrifos, bensulide, pendimethalin, trifluralin, phorate, and propargite) are all predicted to have potential to accumulate in aquatic biota.

86.     Amphibians are highly susceptible to pesticides because of their permeable skins.  For example, salamanders can readily absorb the chemical chlorpyrifos through their permeable skins, especially when migrating through recently treated fields.  Numerous studies have documented significant impacts to amphibians from pesticide exposure.

87.     Wildlife can be indirectly impacted when pesticides harm food sources.  For example, a 2005 study examined the impacts on salamanders from carbaryl, which is a commonly used insecticide for home gardens, commercial agriculture, and forestry protection.  The study found that zooplankton – a primary food source for many salamanders during the aquatic life phase – was nearly eliminated by concentrations of carbaryl commonly found in the environment.  Without this food source, the study showed that mortality in salamander larvae increased, resulting in fewer salamanders ultimately reproducing and contributing to population declines.

88.     Pesticides may also have indirect effects on insectivorous birds.  In a 2010 study published in the Journal of Applied Ecology, scientists found that populations of insectivorous birds declined after application of insecticides suppressed their prey base of mosquitoes.  Other studies have shown that herbivorous insects can contain pesticide residues from eating plants sprayed with herbicides.  Insectivorous birds that ingest these insects may suffer the harmful effects of the pesticides.

89.     Similarly, rodenticides enter the food chain when non-target birds and mammals feed on targeted rodents.  In a May 2008 risk assessment for rodenticides, EPA found that widespread exposure of non-target animals is occurring wherever rodenticides are being used.  For example, EPA found in California that 71 to 84% of the 106 bobcats, mountain lions, and San Joaquin kit foxes analyzed had been exposed.  EPA suspects that the results from California are representative of non-target wildlife exposures nationwide.  In addition, FWS has found that rodenticides typically used on ground squirrels are likely to have a disproportionately adverse effect on salamanders, which can inhabit rodent burrows, are smaller than the target species, and have permeable skins.

90.     Synthetic pyrethroids (e.g. permethrin) are suspected to have reproductive effects on birds. Sub-lethal exposure to pesticides can chronically affect avian behavior, reproduction, and

nervous system function.  Birds exposed to pesticides can become more susceptible to predation, experience weight loss, and have decreased resistance to disease.  Pesticide exposure can also reduce interest in mating and defending territory and cause birds to abandon their nestlings.

91.     Even low doses of pesticides in wildlife can have drastic consequences.  This is especially true for pesticides that act as "endocrine disrupters."  Endocrine disruptors are chemicals that mimic an organism's hormones, disrupting natural processes by sending false messages, blocking real messages, preventing synthesis of the body's own hormones, and accelerating the breakdown and excretion of hormones.  Endocrine disruption affects how an organism develops and functions. Reproductive disorders, immune system dysfunction, thyroid disorders, types of cancer, birth defects and neurological effects have all been linked to endocrine disruption.  In particular, carbamate, organophosphate, and triazine pesticides have all been shown to disrupt hormone systems.  Over 60% of the poundage of agricultural herbicides applied in the United States has the potential to disrupt endocrine and/or reproductive systems in wildlife (and humans).

92.     Atrazine provides a stark example of the problem posed by endocrine disrupters. Atrazine – which is now banned in the European Union – is the most commonly detected pesticide in U.S. waters with about 75% of streamwater and 40% of groundwater containing atrazine.  A 2007 USGS report identified atrazine concentrations in watersheds exceeding the level where studies have observed altration in the development of sex characteristics in male frogs.  As a result, studies have concluded that aquatic environments across the country are at risk.

93.     As alleged below, many of the pesticides at issue in this Complaint are known endocrine disrupters, based on their inclusion in at least one of the following publications:

- Illinois EPA, *Report on Endocrine Disrupting Chemicals* (February, 1997).
- Danish EPA, *Auxiliary Matters with Estrogenic Effects* (April, 2000).
- BKH Consulting Engineers and TNO Nutrition and Food Research, *Towards the Establishment of a Priority List of Substances for Further Evaluation of Their Role in Endocrine Disruption*, Appendix 1. (June 21, 2000), *available at* http://ec.europa.eu/environment/archives/docum/pdf/bkh_main.pdf (last visited Jan. 14, 2014).
- T. Colborn. Widespread pollutants with reproductive and endocrine-disrupting effects, *available at* http://www.ourstolenfuture.org/Basics/chemlist.htm (last visited Jan. 14, 2014).

Third Amended and First Supplemental Complaint for Declaratory and Injunctive Relief
Case No. 3:11-cv-00293-JCS                                                                                          21

- • L. Keith. *Environmental Endocrine Disruptors: A Handbook of Property Data, Wiley Interscience* (1997).
- • C. Benbrook. *Growing Doubt: A Primer on Pesticides Identified as Endocrine Disruptors and/or Reproductive Toxicants, National Campaign for Pesticide Policy Reform* (1996).

94. The discussion above provides just a few examples of the harm being inflicted by widespread pesticide use, and more information on the harms from each pesticide in the Complaint is included below. These harmful impacts have been known for years. Yet EPA continues to ignore this information at the expense of numerous endangered and threatened species and their habitats. Action by EPA to ensure that registered pesticides are not jeopardizing the survival and recovery of endangered and threatened species is long overdue.

**V. Endangered And Threatened Species May Be Adversely Affected From Ongoing Exposure To Pesticides**

95. Each of the pesticide active ingredients in Exhibit A, which is attached to this Complaint and hereby fully incorporated within it, fall within one or both of the following two categories. Category 1 includes pesticides for which EPA has indicated that Estimated Environmental Concentrations are likely to exceed Levels of Concern for endangered or threatened species or may cause indirect effects on endangered species by altering habitat or food sources. Category 2 includes pesticides that are "highly acutely toxic" or "very highly acutely toxic" to one or more taxa groups. These toxicity ratings are based on LD50 or LC50 data (lethal dose to 50 percent of the test organisms or lethal concentration of 50 percent of the test organisms) in one or more of the databases that EPA possesses: e.g., AQUIRE, Terretox, and the EPA databases of ecotoxicity studies used in registration decisions.

96. Moreover, each pesticide product containing pesticide active ingredients in Exhibit A may be used in the states where each of the species it is associated with in Exhibit A live. In addition, as shown in Exhibit B, USGS has identified many of the pesticide products containing the pesticide active ingredients in this lawsuit (or their degradates) in watersheds that are within the ranges of species that may be harmed by that pesticide. Watersheds within the range of each species were identified using the NatureServe database. Toxicity was determined for the taxonomic group of each species as

discussed above in Paragraph 95. Exhibit A contains a comprehensive, but not necessarily exhaustive, list of those species that may be affected by EPA's pesticide product registration actions.

97.     In addition, for every species discussed in this lawsuit, federal agency documents or peer-reviewed journal articles document pesticide impacts to the species or its habitats.

98.     Together, this information establishes that each of the pesticide products containing pesticide active ingredients in Exhibit A "may affect" each of the species or their habitat associated with that pesticide in Exhibit A and "may affect" other species or their habitat.

99.     In total, the pesticide products containing pesticide active ingredients identified in Exhibit A may affect the following, non-exclusive list of endangered or threatened species or their critical habitats:

- **Mammals**: Amargosa vole, black-footed ferret, Buena Vista Lake ornate shrew, Carolina northern flying squirrel, Columbian white-tailed deer (Columbia River DPS), Florida salt marsh vole, Florida panther, Fresno kangaroo rat, giant kangaroo rat, gray bat, gray wolf, Indiana bat, Key Largo cotton mouse, Key Largo woodrat, killer whale (southern resident DPS), Louisiana black bear, Lower Keys rabbit, Morro Bay kangaroo rat, ocelot, Preble's meadow jumping mouse, riparian brush rabbit, riparian woodrat (=San Joaquin woodrat), San Joaquin kit fox, Stephen's kangaroo rat, Tipton kangaroo rat, West Indian manatee;

- **Birds**: Audubon's crested caracara (Florida DPS), California condor, California least tern, Coastal California gnatcatcher, Florida grasshopper sparrow, Florida scrub jay, light-footed clapper rail (U.S. DPS), northern spotted owl, piping plover, southwestern willow flycatcher, western snowy plover (Pacific DPS), wood stork (U.S. breeding DPS);

- **Fish**: Alabama cavefish, Alabama sturgeon, Atlantic salmon (Gulf of Maine DPS), blue shiner, bonytail chub, bull trout (U.S. DPS), Cape Fear shiner, Colorado pikeminnow, desert pupfish, Gulf sturgeon, North American green sturgeon (southern DPS), razorback sucker, Santa Ana sucker, shortnose sturgeon, Topeka shiner, Vermilion darter;

- **Amphibians**: arroyo toad, California tiger salamander (Central California DPS, except for Bay Area Counties), California tiger salamander (Santa Barbara County DPS), Chiricahua leopard frog, frosted flatwoods salamander, dusky gopher frog (= Mississippi gopher frog), mountain yellow-

1  legged frog (Southern California DPS), Puerto Rican crested toad, reticulated flatwoods salamander,

2  San Marcos salamander, Santa Cruz long-toed salamander, Shenandoah salamander, Texas blind

3  salamander, Wyoming toad;

4  • **Mollusks**: Alabama moccasinshell, Appalachian elktoe, Chipola slabshell, clubshell,

5  Coosa moccasinshell, Cumberlandian combshell, dwarf wedgemussel, fat threeridge, finelined

6  pocketbook, Gulf moccasinshell, heavy pigtoe (= Judge Tait's mussel, *Pleurobema taitianum*), Higgins

7  eye pearlymussel, littlewing pearlymussel, northern riffleshell, Ochlockonee moccasinshell, oval

8  pigtoe, oyster mussel, pink mucket, purple bankclimber, purple bean, rough pigtoe, shinyrayed

9  pocketbook, southern clubshell, southern combshell (= Penitent mussel, *Epioblasma penita*), southern

10  pigtoe, stirrup shell, tan rifleshell, triangular kidneyshell, Upland combshell, winged mapleleaf;

11  • **Crustaceans**: Alabama cave shrimp, conservancy fairy shrimp, Kauai Cave amphipod,

12  Nashville crayfish;

13  • **Insects**: American burying beetle, Behren's fritillary (= Behren's silverspot), Callippe

14  silverspot, Kauai cave wolf spider, Kern primrose sphinx moth, Lange's metalmark, Mitchell's satyr

15  butterfly, Myrtle's silverspot, Ohlone tiger beetle, Salt Creek tiger beetle, San Bruno elfin;

16  • **Reptiles**: Atlantic salt marsh snake, bluetail mole skink, blunt-nosed leopard lizard, bog

17  turtle (Northern DPS), desert tortoise, eastern indigo snake, giant garter snake, northern red-bellied

18  cooter (= Plymouth red-bellied cooter), sand skink.

19  **VI.   Examples of Documented Pesticide Impacts On Particular Endangered And Threatened**

20  **Species**

21      100.    Potential impacts due to pesticide exposures for particular endangered and threatened

22  species are well documented.  Again, for every species listed in Exhibit A, federal agency documents or

23  peer-reviewed journal articles document pesticide impacts on these particular species.  A few examples

24  of the risks pesticides pose to these listed species are provided below.

25

26

27

28

101.     Hoy and others (2002)[2] discuss endocrine-disrupting pesticides as possible causes of genital abnormalities in populations of male **Columbian white-tailed deer**.

102.     FWS notes: "Pesticides (including herbicides) may pose a threat to amphibians, such as the **frosted flatwoods salamander**, whose permeable eggs and skin readily absorb substances from the surrounding aquatic or terrestrial environment (Duellman and Trueb 1986, pp. 199-200).  Negative effects that commonly used pesticides and herbicides may have on amphibians include delayed metamorphosis, paralysis, reduced growth rate, and mortality (Bishop 1992, pp. 6769).  Herbicides used near frosted flatwoods salamander breeding ponds may alter the density and species composition of vegetation surrounding a breeding site and reduce the number of potential sites for egg deposition, larval development, or shelter for migrating salamanders.  Aerial spraying of herbicides over outdoor pond mesocosms (semifield approximations of ponds) has been shown to reduce zooplankton diversity, a food source for larval frosted flatwoods salamanders, and cause very high (68 to 100 percent) mortality in tadpoles and juvenile frogs (Relyea 2005, pp. 618-626).  The potential for negative effects from pesticide and herbicide use in areas adjacent to breeding ponds would be reduced by avoiding aerial spraying (Tatum 2004, p. 1047)." *Endangered and Threatened Wildlife and Plants; Proposed Endangered Status for Reticulated Flatwoods Salamander; Proposed Designation of Critical Habitat for Frosted Flatwoods Salamander and Reticulated Flatwoods Salamander*, 73 Fed. Reg. 54125, 54131 (September 18, 2008).

103.     In a final rulemaking to designate critical habitat for **North American green sturgeon**, the FWS found that the "application of pesticides may adversely affect prey resources and water quality within the bays and estuaries.  For example, in Willapa Bay and Grays Harbor, the use of carbaryl in association with aquaculture operations reduces the abundance and availability of burrowing ghost shrimp, an important prey species for green sturgeon (Moser and Lindley 2007; Dumbauld et al. 2008).  In the San Francisco, San Pablo, and Suisun bays, several pesticides have been detected at levels exceeding national benchmarks for the protection of aquatic life (Domagalski et al. 2000).  These

---

[2] J.A. Hoy, R. Hoy, D. Seba, and T.H. Kerstetter,  *Genital Abnormalities in White-tailed Deer (Odocoileus virginianus) in West-central Montana: Pesticide Exposure as a Possible Cause*, 23  J. Environ. Biol. 189 (2002).

1   pesticides pose a water quality issue and may affect the abundance and health of prey items as well as

2   the growth and reproductive health of Southern DPS green sturgeon through bioaccumulation." 74 Fed.

3   Reg. 52300 (October 9, 2009).

4       104.   FWS has stated that the surviving population of the **Vermillion darter** is currently

5   threatened by pesticides that wash into streams from runoff. *Final Rule to List the Vermillion Darter as*

6   *Endangered*, 66 Fed. Reg. 59367 (Nov. 28, 2001).  FWS cited to a study (Swann 2000) that attributed a

7   past fish kill to pesticide runoff from urban use. *Id*.

8       105.   In a five-year review for the **Alabama cave shrimp** conducted by the FWS, it was

9   stated that urbanization may have caused contamination of the aquifers containing this species.  FWS

10  states that groundwater contamination may result from "sewage leakage, industrial contaminants, road

11  and highway runoff, toxic spills, pesticides, and siltation" and that this is likely the greatest threat to

12  populations of this shrimp.

13  **VII.   EPA's Control Over And Involvement With Pesticides At Issue In Consultation Claims**

14      106.   All of the following pesticide active ingredients/pesticide groups (also listed in Exhibit

15  A) are currently registered for use by EPA:  1,3-Dichloropropene (Telone); 2,4-D, salts and esters;

16  Acephate; Atrazine; Bensulide; Brodifacoum; Bromadiolone; Captan; Carbaryl; Chlorothalonil;

17  Chlorpyrifos; Diazinon; Dicamba and salts; Dimethoate; Diuron; Ethoprop; MCPA salts and esters;

18  Mancozeb; Methomyl; Metolachlor and isomers; Metribuzin; Naled; Oxyfluorfen; Paraquat Dichloride;

19  Pendimethalin; Phorate; Phosmet; Propanil; Propargite; S,S,S-tributyl phosphorotrithioate (Tribufos or

20  DEF); Simazine; Thiobencarb; Trifluralin; Warfarin; and Zinc Phosphide.

21      107.   Details on EPA's authorization of pesticide active ingredients and pesticide products is

22  provided immediately below.

23

24

25

26

27

28

**1,3-Dichloropropene**[3]

108.    Exhibit A contains a comprehensive, but not necessarily exhaustive, list of endangered and threatened species for which 1,3-dichloropropene is known to be harmful to the taxonomic group of that species and is used in the state where that species lives.

109.    1,3-dichloropropene is a pesticide for which the EPA has indicated that estimated environmental concentrations (EECs) are likely to exceed the Levels of Concern (LOCs) for endangered species, and/or may cause indirect effects on endangered species by altering habitat or food sources.  Specifically, EECs of 1,3-dichloropropene are likely to exceed the LOCs for the following taxonomic groups:  fish, amphibians, and crustaceans.

110.    1,3-dichloropropene is a pesticide that is "highly acutely toxic" or "very highly acutely toxic" to the following taxonomic groups:  fish, amphibians, and crustaceans. These toxicity rankings are based on LD50 or LC50 data (lethal dose to 50 percent of the test organisms or lethal concentration for 50 percent of the test organisms) that EPA possesses.

111.    EPA "affirmatively authorized" the continued use of the active ingredient 1,3-dichloropropene when it issued a Reregistration Eligibility Decision in September of 1998.

112.    The RED for 1,3-dichloropropene states: "The results of the GENEEC model indicate that aquatic acute high risk, restricted use, and endangered species levels of concern are exceeded for freshwater fish at application rates equal to or above 177 lbs a.i./acre. . . . The results indicate that aquatic acute high risk, restricted use, and endangered species levels of concern are exceeded for freshwater invertebrates at application rates equal to or above 177 lbs a.i./acre from the GENEEC model."

113.    On September 16, 2008, EPA completed product reregistration for 1,3-dichloropropene. *See* https://www.epa.gov/pesticide-reevaluation/pesticides-have-completed-product-reregistration (last visited 6/26/2017).

---

[3] The current EPA Case Number and EPA PC Code for 1,3-dichloropropene are 0328, 029001.  The Case Numbers and PC Codes for each pesticide group/pesticide at issue in this case can also be found at the end of Exhibit A.

114.    Active product registrations for this pesticide can be found on EPA's Pesticide Product Label System, *available at* http://iaspub.epa.gov/apex/pesticides/f?p=PPLS:1 (last visited 6/26/2017).

115.    Specifically, EPA's online Pesticide Product Label System lists the following pesticide products containing 1,3-dichloropropene that EPA affirmatively authorized by product reregistration or new product registration since January 20, 2005[4]:

| Product Name | Date | Registration Number | Action |
|---|---|---|---|
| TRI-CAL TRILONE II | 12/19/2007 | 11220-1 | Reregistration |
| TRI-FORM 60 | 2/26/2008 | 11220-15 | Reregistration |
| TELONE C-15 | 6/21/2007; 12/21/2011 | 11220-20 | Reregistration |
| TRI-FORM 30 | 6/28/2007; 12/21/2011 | 11220-21 | Reregistration |
| TRI-FORM 35 | 6/21/2007; 12/21/2011 | 11220-22 | Reregistration |
| TRI-FORM 60 EC | 3/1/2013 | 11220-33 | Registration |
| TRI-FORM 40 EC | 3/1/2013 | 11220-34 | Registration |
| TRI-FORM 80 EC | 12/5/2013 | 11220-35 | Registration |
| TRI-FORM 80 | 12/4/2013 | 11220-36 | Registration |
| TRI-FORM 40 | 12/5/2013 | 11220-37 | Registration |
| TRI-FORM 70 EC | 12/5/2013 | 11220-38 | Registration |
| TRI-FORM 70 | 12/5/2013 | 11220-39 | Registration |
| TELONE C-17 | 2/6/2006; 12/21/2011 | 62719-12 | Reregistration |
| TELONE C-35 | 2/6/2006; 12/21/2011 | 62719-302 | Reregistration |
| TELONE II | 2/6/2006 | 62719-32 | Reregistration |
| TELONE EC | 2/6/2006 | 62719-321 | Reregistration |
| INLINE | 2/6/2006; 1/3/2012 | 62719-348 | Reregistration |
| CORDON | 2/1/2008 | 62719-363 | Registration |
| PIC-CLOR 15 | 6/21/2007; 12/21/2011 | 8536-21 | Reregistration |
| PIC-CLOR 30 | 6/21/2007; 12/21/2011 | 8536-22 | Reregistration |

---

[4] Where two dates are included, the first date appears to be the EPA documentation of product reregistration in EPA's Pesticide Product Label System prior to the September 16, 2008 completion of product reregistration. The second date appears to be EPA documention of additional label amendments pursuant to the RED.

| PIC-CLOR 40 EC | 11/30/2007 | 8536-42 | Registration |
| PIC-CLOR 60 EC | 11/28/2007 | 8536-43 | Registration |
| PIC-CLOR 60 | 2/21/2008 | 8536-8 | Reregistration |

116.   Upon information and belief, EPA provided no hearings or other public participation for these product registration actions.

117.   As set forth above, EPA has discretion to influence or change registrations of pesticide products for the benefit of protected species.  For example, EPA may only register or reregister a pesticide product if its use does not cause an unreasonable adverse effect on the environment.  7 U.S.C. § 136a(c)(5); 7 U.S.C. § 136a-1(g)(2)(C); 40 C.F.R. § 152.112; 40 C.F.R. § 152.113(a).   EPA may also change, cancel, restrict, or immediately suspend registered pesticides, pesticide labeling, or particular uses at any time if it appears that the pesticide is causing an unreasonable adverse effect on the environment.  7 U.S.C. § 136d(c).   Thus, EPA's product reregistration and its approvals of products containing 1,3-dichloropropene constitute "affirmative agency actions" subject to consultation under Section 7(a)(2) of the ESA.  16 U.S.C. § 1536(a)(2).

118.   Plaintiffs' members live, work, visit, recreate, and otherwise enjoy areas across the nation that may be impacted by products containing 1,3-dichloropropene.  Plaintiffs' members derive professional, aesthetic, spiritual, recreational, economic, and educational benefits from the endangered and threatened species that live in these areas and may be impacted by products containing 1,3-dichloropropene.  The list of species that may be affected by products containing 1,3-dichloropropene is provided in Exhibit A, and Plaintiffs' members have cognizable interests in these species.

119.   For example, products containing 1,3-dichloropropene may affect the Santa Cruz long-toed salamander, and a member of Plaintiffs' organizations has a cognizable interest in this species based on, among other things, efforts to observe the species during frequent visits to habitats where the species can be found and may be affected by products containing 1,3-dichloropropene.

120.   In the recovery plan for the Santa Cruz long-toed salamander, FWS explains: "Pesticide use for agricultural and mosquito control purposes remains a concern."  In addition, in the 1989 Biological Opinion, FWS found that many pesticides can adversely affect the salamander.  1,3-dichloropropene is used as a component in formulations for soil fumigants.

121.    Plaintiffs' members engage in wildlife observation, research, photography, restoration activities, and educational programs involving endangered and threatened species that may be impacted by products containing 1,3-dichloropropene.  Plaintiffs' members will continue to maintain an interest in the species and areas that may be impacted by products containing 1,3-dichloropropene in the future.

122.    The above-described interests of Plaintiffs and their members have been and are being adversely affected by EPA's reregistration, registration and authorization of the use of products containing 1,3-dichloropropene, which is a pesticide that may harm endangered and threatened species and their habitats.  As alleged in the Complaint, products containing 1,3-dichloropropene may affect the species identified in Exhibit A, as well as their designated critical habitat.

123.    EPA's failure to ensure that products containing 1,3-dichloropropene do not impact endangered species and their habitats harms Plaintiffs' members' interests in the species and their habitats affected by products containing 1,3-dichloropropene.  For example, EPA's failure to consult on products containing 1,3-dichloropropene may impair recovery of species impacted by products containing 1,3-dichloropropene and may make it more likely that these species would suffer population declines.  Species declines and impaired recovery harm the interests that Plaintiffs' members have in the existence of these rare animals, such as by limiting their ability to observe the species.  Consultation on products containing 1,3-dichloropropene is necessary to ensure that Plaintiffs' members' interests in the species affected by 1,3-dichloropropene are preserved and remain free from injury.

124.    EPA must register and authorize pesticide products before they can be used and has an ongoing responsibility to ensure that registered pesticides do not have unreasonable adverse effects on the environment.  Absent EPA's continuing registration and discretionary control and involvement in products containing 1,3-dichloropropene, this pesticide could not be used and could not negatively impact the listed species named in Exhibit A and their habitats.

125.    If this Court orders EPA to engage in consultation as required, the Service would analyze the extent to which products containing 1,3-dichloropropene affect listed species and their habitats and, if necessary, would suggest reasonable and prudent alternatives or measures to protect the species, which would protect Plaintiffs' members' interests in the species.  16 U.S.C. § 1536(a)(3).  Unless the requested relief is granted, Plaintiffs' interests will continue to be injured by EPA's failure to consult

1    on products containing 1,3-dichloropropene with the Service, as well as by the potential ongoing harm

2    to the species named in Exhibit A and their habitats as a result of ongoing use of products containing

3    1,3-dichloropropene.

4        126.    The injuries described above are actual, concrete injuries that are presently suffered by

5    Plaintiffs and their members and will continue to occur unless relief is granted by this Court.  These

6    injuries are directly caused by the Defendants' failure to consult with the Service to ensure that EPA's

7    actions relating to products containing 1,3-dichloropropene do not affect listed species and Plaintiffs'

8    members' cognizable interests in these species.  The relief sought herein, EPA's compliance with the

9    ESA, would redress Plaintiffs' injuries.  Plaintiffs have no other adequate remedy at law, and they bring

10   this action on behalf of their adversely affected members.

11   **2,4-D, Salts and Esters**[5]

12       127.    Exhibit A contains a comprehensive, but not necessarily exhaustive, list of endangered

13   and threatened species for which the 2,4-D, salts and esters are known to be harmful to the taxonomic

14   group of that species and is used in the state where that species lives.

15       128.    The 2,4-D, salts and esters are known endocrine disrupters.  As explained above,

16   endocrine disrupters have effects on the reproductive and immune systems capable of compromising

17   populations of endangered species.

18       129.    The 2,4-D, salts and esters are pesticides for which the EPA has indicated that estimated

19   environmental concentrations (EECs) are likely to exceed the Levels of Concern (LOCs) for

20   endangered species, and/or may cause indirect effects on endangered species by altering habitat or food

21   sources.  Specifically, EECs of the 2,4-D, salts and esters are likely to exceed the LOCs for the

22   following taxonomic groups:  mammals, birds, fish, amphibians, mollusks, crustaceans, and reptiles.

23       130.    The 2,4-D, salts and esters are pesticides that are "highly acutely toxic" or "very highly

24   acutely toxic" to the following taxonomic groups:  mammals, birds, fish, amphibians, crustaceans, and

25

26   [5] 2,4-D, salts and esters refers to the following, which also shows the current EPA Case Number and
     EPA PC Code: 2,4-D (0073, 030001); 2,4-D, 2-ethylhexyl ester (0073, 030063); 2,4-D, butoxyethanol
27   ester (0073, 030053); 2,4-D, choline salt (0073, 051505); 2,4-D, diethanolamine salt (0073, 030016);
     2,4-D, dimethylamine salt (0073, 030019); 2,4-D, isooctyl ester (0073, 030064); 2,4-D, isopropyl ester
28   (0073, 030066); 2,4-D, isopropylamine salt (0073, 030025); 2,4-D, methyamine salt (0073, 030027);
     2,4-D, sodium salt (0073, 030004); 2,4-D, triisopropanolamine salt (0073, 030035).

Third Amended and First Supplemental Complaint for Declaratory and Injunctive Relief
Case No. 3:11-cv-00293-JCS                                                              31

1    reptiles.  These toxicity rankings are based on LD50 or LC50 data (lethal dose to 50 percent of the test

2    organisms or lethal concentration for 50 percent of the test organisms) that EPA possesses.

3        131.    The USGS has detected 2,4-D, salts and esters in dozens of watersheds across the nation,

4    as documented in reports on its nationwide water quality surveys.  As shown in Exhibit B, some of

5    these watersheds overlap the range of species that may be affected by this pesticide.

6        132.    EPA "affirmatively authorized" the continued use of the active ingredients 2,4-D, salts

7    and esters when it issued a Reregistration Eligibility Decision in June of 2005.  In its 2005 RED for

8    2,4-D, EPA states: "The Agency's level of concern for endangered and threatened freshwater fish and

9    invertebrates, estuarine invertebrates, birds, mammals, aquatic vascular plants, and terrestrial non-target

10   plants is exceeded for the use of 2,4-D."

11       133.    In its June 29, 2016 Ecological Risk Assessment for the Registration Review of 2,4-D

12   Acid, Salts, and Esters, EPA states: "This risk assessment for 2,4-D indicates potential risks of direct

13   effects to listed terrestrial plants, birds, reptiles, terrestrial-phase amphibians, mammals, terrestrial

14   invertebrates, fish, aquatic invertebrates, and aquatic plants on some of its registered use sites. Listed

15   species of all taxa may also be affected through indirect effects because of the potential for direct

16   effects on listed and non-listed species upon which such species may rely. Potential direct effects on

17   listed terrestrial plants, birds, reptiles, terrestrial-phase amphibians, mammals, terrestrial invertebrates,

18   fish, aquatic invertebrates, and aquatic plants from the use of 2,4-D may be associated with

19   modification of Primary Constituent Elements (PCEs) of designated critical habitats, where such

20   designations have been made."

21       134.    On March 16, 2012, EPA completed product reregistration for the 2,4-D, salts and esters.

22   *See* https://www.epa.gov/pesticide-reevaluation/pesticides-have-completed-product-reregistration (last

23   visited 6/26/2017).

24       135.    Active product registrations for this pesticide can be found on EPA's Pesticide Product

25   Label System, *available at* http://iaspub.epa.gov/apex/pesticides/f?p=PPLS:1 (last visited 6/26/2017).

26       136.    Specifically, the EPA's online Pesticide Product Label System lists the following

27   pesticide products containing 2,4-D, salts and esters that EPA affirmatively authorized by product

28   reregistration or new product registration since January 20, 2005:

| Product Name | Date | Registration Number | Action |
|---|---|---|---|
| NON-SELECTIVE HERBICIDE AEROSOL | 9/15/2008 | 10088-114 | Reregistration |
| SELECTIVE HERBICIDE #1 BROADLEAF WEED KILLER | 6/16/2009 | 10088-16 | Reregistration |
| NON-SELECTIVE HERBICIDE #1 | 12/23/2008 | 10088-2 | Reregistration |
| SELECTIVE HERBICIDE #3 BROADLEAF WEED KILLER | 11/3/2008 | 10088-5 | Reregistration |
| NON-SELECTIVE HERBICIDE #2 | 9/15/2008 | 10088-68 | Reregistration |
| SELECTIVE HERBICIDE #4 | 7/14/2008 | 10088-99 | Reregistration |
| LESCO THREE-WAY SELECTIVE HERBICIDE | 2/10/2008 | 10404-43 | Reregistration |
| LESCO THREE-WAY BENTGRASS SELECTIVE HERBICIDE | 2/10/2009 | 10404-44 | Reregistration |
| MISTY REPCO KILL LF | 11/14/2008 | 10807-204 | Reregistration |
| MISTY REPCO KILL III | 11/14/2008 | 10807-205 | Reregistration |
| CORNBELT SALVAN | 9/18/2008 | 11773-16 | Reregistration |
| CORNBELT 4LB. AMINE HERBICIDE | 5/27/2008 | 11773-2 | Reregistration |
| CORNBELT METRO | 7/3/2008 | 11773-20 | Reregistration |
| CORNBELT 4 LB. LOVOL ESTER | 9/22/2008 | 11773-3 | Reregistration |
| CORNBELT 6LB. LOVOL ESTER | 9/22/2008 | 11773-4 | Reregistration |
| 2,4-D LV6 | 5/12/2008 | 1381-101 | Reregistration |
| 2,4-D LV4 | 4/30/2008 | 1381-102 | Reregistration |
| 2,4-D AMINE 4 | 7/11/2008 | 1381-103 | Reregistration |
| E-99 | 8/18/2008 | 1381-195 | Reregistration |
| BRASH | 3/3/2008 | 1381-202 | Reregistration |
| RUGGED HERBICIDE | 8/25/2011 | 1381-247 | Registration |
| SHREDDER 2,4-D LV6 | 5/25/2012 | 1381-250 | Registration |
| SADDLE-UP | 6/15/2015 | 1381-255 | Registration |
| KOCHIAVORE | 3/31/2016 | 1381-258 | Registration |
| DREXEL LV6 WEED KILLER | 11/14/2008 | 19713-337 | Reregistration |
| DREXEL AMINE-4 | 8/19/2008 | 19713-339 | Reregistration |
| DREXEL DE-ESTER LV4 HERBICIDE | 10/31/2008 | 19713-345 | Reregistration |
| DREXEL D-AMINE 4 | 11/16/2010 | 19713-626 | Registration |
| DREXEL IMITATOR + 2,4-D | 12/21/2011 | 19713-635 | Registration |
| DREXEL 2,4-D TECHNICAL | 12/21/2011 | 19713-641 | Registration |
| DREXEL 2, 4-D ESTER MUP | 2/7/2013 | 19713-647 | Registration |
| DREXEL DE-AMINE 4 | 4/18/2013 | 19713-650 | Registration |
| DREXEL DE-AMINE 6 | 5/17/2013 | 19713-651 | Registration |
| DREXEL DE-ESTER LV6 | 9/13/2013 | 19713-655 | Registration |
| DREXEL DICAMBA 2,4 DE-AMINE | 3/23/2016 | 19713-678 | Registration |

| Name | Date | Number | Type |
|---|---|---|---|
| DICAMBA DE-AMINE HERBICIDE | 5/10/2016 | 19713-680 | Registration |
| EH-1574 HERBICIDE | 9/22/2015 | 2217-1009 | Registration |
| EH-1573 HERBICIDE | 9/22/2015 | 2217-1010 | Registration |
| EH-1568 HERBICIDE | 3/30/2016 | 2217-1014 | Registration |
| EH-1567 HERBICIDE | 3/30/2016 | 2217-1015 | Registration |
| EH-1492 CONSUMER | 8/17/2016 | 2217-1017 | Registration |
| AMINE 400 2,4-D WEED KILLER | 3/27/2009 | 2217-2 | Reregistration |
| 600 LV 2,4-D WEED KILLER A LOW VOLATILE ESTER | 9/12/2008 | 2217-413 | Reregistration |
| 2,4-DICHLOROPHENOXYACETIC ACID | 9/16/2011 | 2217-455 | Reregistration |
| TRIMEC 873 HERBICIDE | 12/29/2008 | 2217-488 | Reregistration |
| TRIMEC 869 HERBICIDE | 3/25/2009 | 2217-493 | Reregistration |
| GORDON'S BROADLEAF & DANDELION LAWN WEED KILLER | 10/9/2009 | 2217-507 | Reregistration |
| TRIMEC 13 WEED'N-FEED | 10/22/2009 | 2217-532 | Reregistration |
| GORDON'S BROADLEAF WEED & BRUSH KILLER 879 | 3/27/2009 | 2217-536 | Reregistration |
| GORDON'S BL 6000 LAWN WEED KILLER | 3/20/2009 | 2217-540 | Reregistration |
| TRIMEC HERBICIDE | 4/3/2009 | 2217-543 | Reregistration |
| GORDON'S TRIMEC WEED AND FEED 4 | 6/29/2009 | 2217-559 | Reregistration |
| WEED-'N-FEED 5 | 10/23/2009 | 2217-560 | Reregistration |
| GORDON'S TRIMEC WEED & FEED 15 | 9/16/2011 | 2217-563 | Reregistration |
| TRIMEC D.M.B. #2 TURF HERBICIDE | 8/18/2010 | 2217-566 | Reregistration |
| GORDON'S TRIMEC ST. AUGUSTINE GRASS BROADLEAF HERBICIDE | 5/13/2009 | 2217-570 | Reregistration |
| GORDON'S TRIMEC WEED & FEED 30 24-4-8 | 3/19/2010 | 2217-579 | Reregistration |
| GORDON'S TRIMEC WEED & FEED 20 | 4/4/2011 | 2217-580 | Reregistration |
| GORDON'S TRIMEC WEED & FEED 24 | 3/24/2011 | 2217-581 | Reregistration |
| GORDON'S TRIMEC WEED & FEED FOR SENSITIVE GRASSES | 4/9/2009 | 2217-603 | Reregistration |
| GORDON'S TRIMEC WEEDER GRANULES L | 7/23/2010 | 2217-657 | Reregistration |
| GORDON'S TRIMEC WEED AND FEED 27 | 2/25/2010 | 2217-658 | Reregistration |
| GORDON'S TRIMEC WEED & FEED FOR SOUTHERN LAWNS | 2/25/2010 | 2217-661 | Reregistration |
| GORDON'S AMINE 600 2,4-D WEED KILLER | 7/14/2008 | 2217-668 | Reregistration |

| | | | |
|---|---|---|---|
| TRIMEC LAWN WEED KILLER FOR SOUTHERN OR NORTHERN GRASSES | 8/5/2009 | 2217-695 | Reregistration |
| GORDON'S 2,4-D WEED & FEED | 10/19/2009 | 2217-697 | Reregistration |
| ACME HI-DEP HERBICIDE | 9/16/2008 | 2217-703 | Reregistration |
| QUADMEC TURF HERBICIDE | 5/22/2012 | 2217-709 | Reregistration |
| TRIMEC LIQUID WEED & FEED FOR SENSITIVE GRASSES | 10/28/2009 | 2217-716 | Reregistration |
| TRIMEC NORTHERN LIQUID WEED & FEED 25-0-0 | 9/11/2009 | 2217-724 | Reregistration |
| DM 896 | 11/25/2008 | 2217-739 | Reregistration |
| TRIMEC 932 TURF HERBICIDE | 8/2/2011 | 2217-749 | Reregistration |
| DM 969 LIQUID WEED & FEED | 3/27/2009 | 2217-752 | Reregistration |
| TRIMEC 970 WEED & FEED | 10/28/2009 | 2217-753 | Reregistration |
| TRIMEC 973 WEED & FEED | 11/5/2009 | 2217-754 | Reregistration |
| LV 400 2,4-D WEED KILLER | 9/11/2008 | 2217-77 | Reregistration |
| EH 1068 TRIMEC ESTER | 10/1/2009 | 2217-774 | Reregistration |
| EH 1073 TRIMEC ESTER | 6/30/2009 | 2217-775 | Reregistration |
| GORDON'S TRI-GUARD | 11/10/2009 | 2217-793 | Reregistration |
| GORDON'S GRANULAR 33 1/2 | 7/13/2011 | 2217-794 | Reregistration |
| GORDON'S TRIPLEX 24-4-8 | 9/8/2010 | 2217-795 | Reregistration |
| EH1148 HERBICIDE | 12/2/2008 | 2217-796 | Reregistration |
| GORDON'S TRIMEC WEED & FEED 2001 | 11/16/2009 | 2217-801 | Reregistration |
| GORDON'S TRIPLE PLAY | 11/5/2009 | 2217-805 | Reregistration |
| GORDON'S TRIMEC DMA HERBICIDE + TURF FERTILIZER | 10/23/2009 | 2217-806 | Reregistration |
| EH1328 WEED AND FEED | 10/22/2009 | 2217-811 | Reregistration |
| EH 1329 WEED AND FEED | 10/23/2009 | 2217-812 | Reregistration |
| EH 1330 HERBICIDE | 3/13/2009 | 2217-813 | Reregistration |
| EH1350 WEED AND FEED | 10/23/2009 | 2217-817 | Reregistration |
| EH1351 WEED AND FEED | 10/23/2009 | 2217-818 | Reregistration |
| EH1352 WEED & FEED | 10/22/2009 | 2217-819 | Reregistration |
| EH-1396 HERBICIDE | 3/3/2008 | 2217-848 | Reregistration |
| EH-1395 HERBICIDE | 6/17/2009 | 2217-849 | Reregistration |
| EH-1411 HERBICIDE | 5/24/2005 | 2217-874 | Registration |
| EH-1416 HERBICIDE | 3/24/2008 | 2217-875 | Reregistration |
| EH-1418 HERBICIDE | 3/28/2008 | 2217-876 | Reregistration |
| EH-1419 HERBICIDE | 4/15/2005 | 2217-877 | Registration |
| EH-1412 HERBICIDE | 3/17/2005 | 2217-878 | Registration |
| EH-1413 HERBICIDE | 7/22/2005 | 2217-879 | Registration |
| EH-1415 ORP | 8/25/2009 | 2217-882 | Reregistration |
| EH-1415 WEED AND FEED | 8/25/2009 | 2217-883 | Reregistration |
| EH-1414 WEED AND FEED | 8/25/2009 | 2217-884 | Reregistration |

| | | | |
|---|---|---|---|
| EH-1426 HERBICIDE | 1/18/2006 | 2217-885 | Registration |
| EH-1427 HERBICIDE | 3/28/2008 | 2217-886 | Reregistration |
| EH-1425 HERBICIDE | 12/8/2008 | 2217-888 | Reregistration |
| EH-1412 PROFESSIONAL | 9/16/2005 | 2217-889 | Registration |
| EH-1433 WEED AND FEED | 10/28/2005 | 2217-890 | Registration |
| EH-1421 HERBICIDE | 3/23/2006 | 2217-891 | Registration |
| EH-1422 HERBICIDE | 3/22/2006 | 2217-892 | Registration |
| EH-1423 HERBICIDE | 3/22/2006 | 2217-893 | Registration |
| EH-1432 HERBICIDE | 4/2/2008 | 2217-894 | Reregistration |
| EH-1413 PROFESSIONAL | 10/1/2009 | 2217-895 | Reregistration |
| EH-1438 HERBICIDE | 9/22/2006 | 2217-897 | Registration |
| EH-1442 HERBICIDE | 11/10/2009 | 2217-898 | Reregistration |
| EH-1441 HERBICIDE | 11/10/2009 | 2217-899 | Reregistration |
| EH-1440 HERBICIDE | 11/16/2009 | 2217-900 | Reregistration |
| EH-1434 HERBICIDE | 1/30/2007 | 2217-901 | Registration |
| EH-1446 HERBICIDE | 5/4/2007 | 2217-903 | Registration |
| EH-1447 HERBICIDE | 7/23/2010 | 2217-904 | Reregistration |
| EH-1448 HERBICIDE | 9/21/2011 | 2217-905 | Reregistration |
| EH-1449 HERBICIDE | 8/31/2009 | 2217-906 | Reregistration |
| EH-1369 PROFESSIONAL | 8/25/2010 | 2217-907 | Reregistration |
| EH-1459 LIQUID WEED AND FEED | 6/11/2008 | 2217-911 | Registration |
| EH-1451 PROFESSIONAL | 8/5/2008 | 2217-912 | Registration |
| EH-1451 WEED & FEED | 8/5/2008 | 2217-913 | Registration |
| DM 899 LIQUID WEED AND FEED II | 3/21/2011 | 2217-916 | Reregistration |
| EH-1465 HERBICIDE | 12/17/2008 | 2217-919 | Registration |
| EH-1466 HERBICIDE | 1/15/2009 | 2217-920 | Registration |
| EH-1467 HERBICIDE | 1/27/2009 | 2217-921 | Registration |
| EH-1352 HERBICIDE LIGHT | 4/3/2009 | 2217-925 | Registration |
| EH-1470 WEED & FEED | 8/11/2009 | 2217-926 | Registration |
| EH-1470 PROFESSIONAL | 8/11/2009 | 2217-927 | Registration |
| EH-1471 HERBICIDE | 12/11/2009 | 2217-930 | Registration |
| EH-1473 HERBICIDE | 3/19/2010 | 2217-931 | Registration |
| EH-1477 HERBICIDE | 3/25/2010 | 2217-933 | Registration |
| EH-1475 HERBICIDE | 4/12/2010 | 2217-934 | Registration |
| EH-1487 HERBICIDE | 5/25/2010 | 2217-936 | Registration |
| EH-1479 HERBICIDE | 9/29/2010 | 2217-938 | Registration |
| EH-1480 HERBICIDE | 9/29/2010 | 2217-939 | Registration |
| EH-1488 HERBICIDE | 2/4/2011 | 2217-944 | Registration |
| EH-1489 BROADLEAF HERBICIDE | 6/13/2011 | 2217-947 | Registration |
| EH-1490 BROADLEAF HERBICIDE | 6/13/2011 | 2217-948 | Registration |
| EH-1491 HERBICIDE | 7/22/2011 | 2217-949 | Registration |
| EH-1493 HERBICIDE | 7/22/2011 | 2217-951 | Registration |

Third Amended and First Supplemental Complaint for Declaratory and Injunctive Relief
Case No. 3:11-cv-00293-JCS

| | | | |
|---|---|---|---|
| EH-1494 HERBICIDE | 7/22/2011 | 2217-952 | Registration |
| EH-1518 HERBICIDE | 9/15/2011 | 2217-959 | Registration |
| EH-1513 WEED AND FEED | 2/23/2012 | 2217-963 | Registration |
| EH-1513 ORP | 2/23/2012 | 2217-964 | Registration |
| EH-1523 WEED AND FEED | 7/18/2012 | 2217-972 | Registration |
| EH-1524 HERBICIDE | 7/18/2012 | 2217-973 | Registration |
| EH 1520 HERBICIDE | 11/15/2012 | 2217-974 | Registration |
| EH 1528 HERBICIDE | 12/21/2012 | 2217-975 | Registration |
| EH 1527 HERBICIDE | 12/21/2012 | 2217-976 | Registration |
| EH-1531 HERBICIDE | 8/26/2013 | 2217-979 | Registration |
| EH 1532 HERBICIDE | 8/26/2013 | 2217-980 | Registration |
| EH 1533 HERBICIDE | 9/3/2013 | 2217-981 | Registration |
| EH 1534 HERBICIDE | 8/26/2013 | 2217-982 | Registration |
| EH-1538 HERBICIDE | 8/8/2013 | 2217-983 | Registration |
| EH 1540 HERBICIDE | 11/18/2013 | 2217-985 | Registration |
| EH 1541 HERBICIDE | 11/21/2013 | 2217-986 | Registration |
| EH 1542 HERBICIDE | 11/21/2013 | 2217-988 | Registration |
| EH 1544 HERBICIDE | 12/11/2013 | 2217-989 | Registration |
| EH 1543 HERBICIDE | 12/11/2013 | 2217-990 | Registration |
| EH 1449 READY-TO-USE | 12/10/2013 | 2217-991 | Registration |
| EH-1523 ORP | 2/27/2014 | 2217-992 | Registration |
| EH 1529 HERBICIDE | 6/10/2014 | 2217-995 | Registration |
| EH-1552 HERBICIDE | 10/14/2014 | 2217-996 | Registration |
| EH-1558 WEED AND FEED | 8/11/2014 | 2217-997 | Registration |
| RIVERDALE SOLUTION EMULSIBLE | 3/25/2009 | 228-126 | Reregistration |
| 2,4-D L.V. 4 ESTER | 2/10/2009 | 228-139 | Reregistration |
| WEEDESTROY AM-40 AMINE SALT | 6/17/2008 | 228-145 | Reregistration |
| FERTILIZER PLUS 2,4-D X-X-X | 12/1/2008 | 228-153 | Reregistration |
| RIVERDALE WEEDESTROY WEED AND FEED | 9/17/2008 | 228-164 | Reregistration |
| TURF WEED AND BRUSH CONTROL | 8/5/2009 | 228-167 | Reregistration |
| TRIAMINE | 6/15/2009 | 228-178 | Reregistration |
| RIVERDALE TRIAMINE LAWN WEED KILLER | 4/29/2011 | 228-181 | Reregistration |
| TRIAMINE 8000 LAWN WEED KILLER | 3/19/2010 | 228-239 | Reregistration |
| RIVERDALE 2, 4-D 6 AMINE | 10/22/2009 | 228-242 | Reregistration |
| SOLUTION WATER SOLUBLE | 9/18/2008 | 228-260 | Reregistration |
| RIVERDALE TRIPLET SELECTIVE HERBICIDE | 5/15/2009 | 228-264 | Reregistration |
| RIVERDALE DISSOLVE WEED AND FEED | 7/6/2009 | 228-281 | Reregistration |
| RIVERDALE DISSOLVE (R) 4000 WEED AND FEED | 10/23/2009 | 228-293 | Reregistration |

| | | | |
|---|---|---|---|
| VETERAN 720 HERBICIDE | 3/19/2009 | 228-295 | Reregistration |
| RIVERDALE DISSOLVE (R) GRANULAR WEED KILLER | 6/30/2009 | 228-305 | Reregistration |
| TRIPLET SF | 10/1/2009 | 228-312 | Reregistration |
| RIVERDALE 2,4-D ACID | 12/4/2009 | 228-314 | Reregistration |
| TURFLON II AMINE | 5/12/2009 | 228-316 | Reregistration |
| RIVERDALE DRI-CLEAN C HERBICIDE | 12/8/2008 | 228-329 | Reregistration |
| RIVERDALE 2,4-D AMINE WEED AND FEED | 11/14/2008 | 228-331 | Reregistration |
| DISSOLVE PREMIUM GRANULAR WEED KILLER | 6/30/2009 | 228-342 | Reregistration |
| DISSOLVE LBN WEED AND FEED | 6/30/2009 | 228-348 | Reregistration |
| FORMULA 40 | 10/31/2008 | 228-357 | Reregistration |
| RIVERDALE AQUA-KLEEN | 6/29/2009 | 228-378 | Reregistration |
| SWEET SIXTEEN WEED AND FEED WITH VIPER | 3/19/2010 | 228-401 | Reregistration |
| RIVERDALE SWEET SIXTEEN WEED AND FEED WITH DTDA | 3/14/2008 | 228-402 | Reregistration |
| RIVERDALE DTDA GRANULAR WEED KILLER | 5/16/2008 | 228-403 | Reregistration |
| DTDA 10000 LAWN WEED KILLER | 1/25/2005 | 228-405 | Registration |
| DTDA SPOT WEED KILLER | 1/25/2005 | 228-407 | Registration |
| ESCALADE LOW ODOR FOR SELECTIVE BROADLEAF WEED CONTROL | 4/2/2008 | 228-416 | Reregistration |
| RIVERDALE ESCALADE | 3/24/2008 | 228-417 | Reregistration |
| RIVERDALE MOMENTUM FX | 5/16/2008 | 228-418 | Reregistration |
| RIVERDALE STRIKE THREE ULTRA 2 SELECTIVE HERBICIDE | 10/6/2009 | 228-421 | Reregistration |
| DQD SELECTIVE HERBICIDE | 7/10/2009 | 228-423 | Reregistration |
| RIVERDALE ESCALADE WEED AND FEED (18#/5M) | 5/22/2009 | 228-425 | Reregistration |
| RIVERDALE ESCALADE WEED AND FEED (16#/5M) | 4/29/2005 | 228-426 | Registration |
| ESCALADE2 HERBICIDE | 4/4/2008 | 228-442 | Reregistration |
| RIVERDALE ESCALADE LOW ODOR II | 4/4/2008 | 228-444 | Reregistration |
| MOMENTUM FX2 HERBICIDE | 3/24/2008 | 228-447 | Reregistration |
| STRIKE 3 ULTRA 3 SELECTIVE HERBICIDE | 3/24/2008 | 228-455 | Reregistration |
| TRIPLET LOW ODOR PREMIUM LAWN WEED KILLER CONCENTRATE | 8/8/2006 | 228-489 | Registration |

| | | | |
|---|---|---|---|
| TRIPLET LOW ODOR PREMIUM WEED AND FEED | 8/8/2006 | 228-490 | Registration |
| TRIPLET LOW ODOR PREMIUM GRANULAR WEED KILLER | 9/8/2006 | 228-492 | Registration |
| TRIPLET LOW ODOR L.A. GRANULAR WEED KILLER | 9/8/2006 | 228-493 | Registration |
| NUP05018 HERBICIDE | 9/8/2011 | 228-499 | Reregistration |
| TRIPLET LOW ODOR PREMIUM WEED AND FEED (18/5) | 10/23/2006 | 228-503 | Registration |
| TRIPLET LOW ODOR PREMIUM WEED AND FEED (20/5) | 10/23/2006 | 228-504 | Registration |
| TRIPLET LOW ODOR L.A. PREMIUM WEED AND FEED (16/5) | 10/23/2006 | 228-505 | Registration |
| TRIPLET LOW ODOR L.A. PREMIUM WEED AND FEED (18/5) | 10/23/2006 | 228-506 | Registration |
| TRIPLET LOW ODOR L.A. PREMIUM WEED AND FEED (20/5) | 10/23/2006 | 228-507 | Registration |
| TRIPLET LOW ODOR PREMIUM 8000 LAWN WEED KILLER CONCENTRATE | 10/27/2006 | 228-508 | Registration |
| TRIPLET LOW ODOR PREMIUM SPOT LAWN WEED KILLER READY-TO-SPRAY | 11/22/2006 | 228-511 | Registration |
| MANPOWER HERBICIDE | 8/17/2007 | 228-530 | Registration |
| QUINCEPT HERBICIDE | 9/16/2011 | 228-531 | Reregistration |
| NUP 06237 HERBICIDE | 10/23/2009 | 228-551 | Reregistration |
| LAZER PREMIUM LAWN WEED KILLER CONCENTRATE | 10/1/2009 | 228-553 | Reregistration |
| LAZER 8000 LAWN WEED KILLER CONCENTRATE | 12/18/2007 | 228-554 | Registration |
| LAZER RTU LAWN WEED KILLER | 8/18/2010 | 228-555 | Reregistration |
| CANDOR HERBICIDE | 3/27/2008 | 228-565 | Registration |
| TROOPER EXTRA SELECTIVE HERBICIDE | 11/19/2008 | 228-586 | Registration |
| 4-SPEED XT SELECTIVE HERBICIDE | 12/19/2008 | 228-590 | Registration |
| NUP-08041 READY-TO-USE | 2/12/2009 | 228-593 | Registration |
| QUINCEPT HERBICIDE READY TO USE | 11/3/2008 | 228-594 | Registration |
| QUINCEPT HERBICIDE PREMIUM LAWN WEED KILLER CONCENTRATE | 11/3/2008 | 228-595 | Registration |
| RIVERDALE 2,4-D GRANULES | 7/28/2008 | 228-61 | Reregistration |
| QUINCEPT LT HERBICIDE READY-TO-USE | 5/6/2010 | 228-703 | Registration |

| | | | |
|---|---|---|---|
| QUINCEPT LT HERBICIDE PREMIUM LAWN WEED KILLER CONCENTRATE | 5/6/2010 | 228-704 | Registration |
| NUP-09066 HERBICIDE | 5/19/2010 | 228-705 | Registration |
| QUINCEPT LT MC | 5/19/2010 | 228-706 | Registration |
| ELLIPTICAL HERBICIDE | 5/5/2010 | 228-707 | Registration |
| SOLUTION WSG HERBICIDE | 5/8/2013 | 228-715 | Registration |
| NAVIGATE DMA AQUATIC HERBICIDE | 6/21/2016 | 228-732 | Registration |
| Viper Weed and Feed (37.5#/5M) | 11/30/2016 | 228-738 | Registration |
| 2,4-D L.V. 6 ESTER | 12/8/2008 | 228-95 | Reregistration |
| WEED B-GON SPOT WEED KILLER CONCENTRATE | 6/24/2009 | 239-2690 | Reregistration |
| OASIS HERBICIDE | 6/20/2008 | 241-409 | Reregistration |
| F6119 EC HERBICIDE | 3/14/2008 | 279-3316 | Reregistration |
| F6119 TURF AND IVM HERBICIDE | 11/8/2010 | 279-9546 | Registration |
| LV 4 | 1/14/2009 | 2935-511 | Reregistration |
| AMINE 4 D | 9/2/2008 | 2935-512 | Reregistration |
| BASE CAMP LV 6 | 1/31/2011 | 2935-553 | Registration |
| SENTRY LV-4 HERBICIDE | 9/9/2013 | 33270-20 | Registration |
| SENTRY AMINE 4 HERBICIDE | 9/9/2013 | 33270-21 | Registration |
| SENTRY LV-6 HERBICIDE | 9/23/2014 | 33270-22 | Registration |
| QUICKSILVER | 8/25/2015 | 33270-39 | Registration |
| COLT + SALVO | 4/14/2008 | 34704-1010 | Reregistration |
| STARANE + SABER | 9/25/2008 | 34704-1012 | Reregistration |
| WHITEOUT 2,4-D | 12/22/2009 | 34704-1032 | Registration |
| LPI 6310-20 HERBICIDE | 1/25/2011 | 34704-1053 | Registration |
| LOW VOL ESTER 4 WEED KILLER | 1/9/2009 | 34704-124 | Reregistration |
| LOW VOL 6 ESTER WEED KILLER | 2/6/2009 | 34704-125 | Reregistration |
| SAVAGE | 7/11/2008 | 34704-606 | Reregistration |
| SALVO | 12/8/2008 | 34704-609 | Reregistration |
| AMINE 6 2,4-D HERBICIDE | 9/17/2008 | 34704-646 | Reregistration |
| SHOTGUN FLOWABLE HERBICIDE | 7/14/2008 | 34704-728 | Reregistration |
| SABER HERBICIDE | 9/16/2008 | 34704-803 | Reregistration |
| APHD HERBICIDE | 12/8/2008 | 34704-817 | Reregistration |
| SAVANA | 3/18/2009 | 34704-847 | Reregistration |
| RIFLE-D HERBICIDE | 3/30/2009 | 34704-869 | Reregistration |
| CHASER TURF HERBICIDE | 7/1/2008 | 34704-928 | Reregistration |
| CHASER 2 AMINE | 5/3/2010 | 34704-930 | Reregistration |
| AGSCO 400 HERBICIDE | 3/30/2009 | 34704-991 | Reregistration |
| AGSCO B-4 HERBICIDE | 6/17/2008 | 34704-996 | Reregistration |
| 2,4-D AMINE NO.6 (UNSEQUESTERED) | 11/16/2009 | 35935-11 | Reregistration |
| 2,4-D ISOPROPYL ESTER | 8/14/2009 | 35935-13 | Reregistration |
| ALPHASET IPE | 2/6/2009 | 35935-21 | Reregistration |

| | | | |
|---|---|---|---|
| 2,4-DICHLOROPHENOXY ACETIC ACID FLAKE | 3/30/2009 | 35935-27 | Reregistration |
| 2,4-D TIPA MANUFACTURING CONCENTRATE | 7/6/2009 | 35935-31 | Reregistration |
| 2,4-D LV-6 | 2/24/2009 | 35935-6 | Reregistration |
| MILLENNIUM ULTRA MC | 6/27/2011 | 35935-84 | Registration |
| VIPER MC | 7/8/2011 | 35935-86 | Registration |
| LAZER MC | 8/1/2011 | 35935-87 | Registration |
| TRIAMINE OPTICAL MC | 8/2/2011 | 35935-88 | Registration |
| ESCALADE W&F MC | 8/1/2011 | 35935-90 | Registration |
| DISSOLVE OPTICAL MC | 8/3/2011 | 35935-91 | Registration |
| KNOCK-OUT NON-SELECTIVE WEED KILLER | 5/19/2008 | 3862-143 | Reregistration |
| ST. AUGUSTINE GRASS BROADLEAF HERBICIDE | 4/14/2009 | 3862-145 | Reregistration |
| DOUBLE KILL | 3/18/2008 | 3862-92 | Reregistration |
| NO. 1117 HILCO-X WEED KILLER | 3/24/2008 | 402-98 | Reregistration |
| BW II | 6/9/2006 | 42750-100 | Registration |
| PD 2 | 8/6/2009 | 42750-107 | Reregistration |
| TRICLOPYR BEE + 2,4-D BEE | 4/17/2008 | 42750-124 | Reregistration |
| BW III | 9/17/2009 | 42750-144 | Reregistration |
| ALBAUGH 2,4-D LV4 | 3/3/2008 | 42750-15 | Reregistration |
| 2,4-D AMINE 4 | 3/24/2008 | 42750-19 | Reregistration |
| 2,4-D LV 6 | 7/23/2008 | 42750-20 | Reregistration |
| FLUROXYPYR + 2,4-D | 9/23/2009 | 42750-203 | Registration |
| 2,4-D AMINE 6 | 3/14/2008 | 42750-21 | Reregistration |
| SOLVE 2,4-D | 9/15/2008 | 42750-22 | Reregistration |
| STAR 650 | 10/3/2011 | 42750-232 | Registration |
| DMD 3-WAY | 11/6/2014 | 42750-272 | Registration |
| RANGE STAR EW | 3/26/2015 | 42750-286 | Registration |
| B3-WAY-001 | 8/13/2015 | 42750-294 | Registration |
| ALBAUGH D-638 | 7/23/2008 | 42750-36 | Reregistration |
| FIVE-STAR | 3/24/2008 | 42750-49 | Reregistration |
| ALBAUGH LAND STAR | 5/12/2008 | 42750-62 | Reregistration |
| OUTLAW | 8/6/2009 | 42750-68 | Reregistration |
| THUNDERMASTER | 8/6/2009 | 42750-76 | Reregistration |
| PICLORAM + 2,4-D RANGELAND | 7/28/2008 | 42750-80 | Reregistration |
| PICLORAM + 2,4-D IVM | 5/7/2008 | 42750-82 | Reregistration |
| PICLORAM + 2,4-D RTU | 3/18/2008 | 42750-83 | Reregistration |
| CLOPYRALID MEA+2,4-D | 7/7/2008 | 42750-92 | Reregistration |
| CIMARRON MAX HERBICIDE | 3/2/2010 | 432-1555 | Reregistration |
| BONIDE LAWN WEED KILLER | 5/12/2009 | 4-400 | Reregistration |

| BONIDE LAWN WEED KILLER W/TRIMEC | 5/13/2009 | 4-401 | Reregistration |
|---|---|---|---|
| DOOM WEED KILLER SPRAY | 4/28/2008 | 44446-61 | Reregistration |
| BONIDE WEED BEATER PLUS CRABGRASS & BROADLEAF WEED KILLER READY TO SPRAY | 5/20/2009 | 4-466 | Reregistration |
| REAL-KILL BROADLEAF WEED KILLER | 4/4/2011 | 478-121 | Reregistration |
| TORAM 101 | 2/6/2009 | 48273-15 | Reregistration |
| AMINE 4 D | 9/29/2008 | 48273-4 | Reregistration |
| AMINE 6D WEED KILLER | 7/14/2008 | 48273-5 | Reregistration |
| A.C. AQUACIDE PELLETS | 4/17/2008 | 5080-2 | Reregistration |
| LANDMASTER BW HERBICIDE | 8/19/2008 | 524-351 | Reregistration |
| LANDMASTER II HERBICIDE | 8/18/2008 | 524-376 | Reregistration |
| RT MASTER | 3/3/2008 | 524-531 | Reregistration |
| TURF BUILDER PRE/POST 2 | 9/17/2009 | 538-299 | Reregistration |
| EDISON | 12/22/2009 | 538-314 | Registration |
| TURF FERTILIZER AND WEED CONTROL | 4/3/2014 | 538-326 | Registration |
| LIQUID TB WEED CONTROL | 1/4/2016 | 538-328 | Registration |
| PICLORAM 10.2 HERBICIDE | 2/12/2009 | 53883-255 | Registration |
| QUALI-PRO 2TQ | 7/29/2013 | 53883-332 | Registration |
| QUALI-PRO-2DQ | 5/21/2013 | 53883-334 | Registration |
| QUALI-PRO THREE-D | 8/8/2013 | 53883-342 | Registration |
| QUALI-PRO 3-D HERBICIDE | 10/25/2010 | 53883-378 | Registration |
| ALCO CITRUS FIX PLANT GROWTH REGULATOR | 10/19/2009 | 5481-145 | Reregistration |
| HIVOL 44 | 8/14/2009 | 5481-509 | Reregistration |
| SOLUTION BULK PRODUCT | 9/9/2013 | 55146-131 | Registration |
| TENKOZ LO-VOL 4 HERBICIDE | 11/24/2009 | 55467-11 | Registration |
| TENKOZ LO-VOL 6 HERBICIDE | 11/24/2009 | 55467-12 | Registration |
| TENKOZ AMINE 4 HERBICIDE | 12/2/2009 | 55467-14 | Registration |
| WEEDEX DANDELION STICK | 7/7/2008 | 58501-2 | Reregistration |
| WEED RHAP A-4D | 7/14/2008 | 5905-501 | Reregistration |
| WEED-RHAP A-6D HERBICIDE 2,4-D AMINE | 6/20/2008 | 5905-503 | Reregistration |
| WEED-RHAP LV-6D | 7/1/2008 | 5905-508 | Reregistration |
| BARRAGE HF | 7/1/2008 | 5905-529 | Reregistration |
| HM-2010 | 8/14/2008 | 5905-542 | Reregistration |
| HARDBALL | 3/3/2008 | 5905-549 | Reregistration |
| DOUBLE UP B+D | 10/1/2009 | 5905-552 | Reregistration |
| LATIGO | 8/2/2010 | 5905-564 | Reregistration |
| HM-0339 | 6/21/2007 | 5905-565 | Registration |

| | | | |
|---|---|---|---|
| BRUSH RHAP | 8/5/2009 | 5905-568 | Reregistration |
| HELENA OUTLAW | 2/27/2008 | 5905-574 | Registration |
| HELENA BW-III | 2/27/2008 | 5905-575 | Registration |
| TRUMPCARD | 5/20/2009 | 5905-581 | Registration |
| WEED RHAP LV-4 | 10/3/2016 | 5905-600 | Registration |
| 2,4-D LV ESTER 4 | 7/28/2008 | 5905-90 | Reregistration |
| NUFARM USA, 2,4-D ACID | 11/17/2009 | 61272-3 | Reregistration |
| 2,4-D AMINE – 1 | 1/27/2009 | 62575-1 | Reregistration |
| BIESTERFELD 2,4-D ESTER LV | 3/16/2012 | 62575-5 | Reregistration |
| 2,4-D AMINE - 6 HERBICIDE | 2/10/2009 | 62575-8 | Reregistration |
| FORMULA 40 HERBICIDE | 9/16/2008 | 62719-1 | Reregistration |
| TIPA-4 HERBICIDE | 7/29/2008 | 62719-180 | Reregistration |
| GRAZON P+D | 8/18/2008 | 62719-182 | Reregistration |
| DMA 6 WEED KILLER | 9/11/2008 | 62719-2 | Reregistration |
| XRM-5202 | 6/17/2008 | 62719-217 | Reregistration |
| STATESMAN HERBICIDE | 8/15/2008 | 62719-218 | Reregistration |
| 2,4-DICHLOROPHENOXY ACETIC ACID FLAKE | 6/17/2008 | 62719-25 | Reregistration |
| 2,4-D 2-ETHYLHEXYL ESTER | 8/11/2009 | 62719-26 | Reregistration |
| CROSSBOW | 5/27/2008 | 62719-260 | Reregistration |
| DMA 6 UNSEQUESTERED | 3/24/2008 | 62719-27 | Reregistration |
| DMA 4 HERBICIDE | 9/17/2008 | 62719-3 | Reregistration |
| IPA-4 | 6/20/2008 | 62719-303 | Reregistration |
| TORDON 101R | 5/27/2008 | 62719-31 | Reregistration |
| ESTERON 638 | 7/11/2008 | 62719-330 | Reregistration |
| E-99 | 7/16/2008 | 62719-365 | Reregistration |
| GLYMIX MT | 6/23/2009 | 62719-366 | Reregistration |
| CURTAIL | 6/17/2008 | 62719-48 | Reregistration |
| TORDON 101 MIXTURE | 9/15/2008 | 62719-5 | Reregistration |
| 2,4-D BEE-4 | 9/23/2008 | 62719-50 | Reregistration |
| DMA-6 SEQUESTERED | 4/16/2008 | 62719-52 | Reregistration |
| FOREFRONT R&P | 6/23/2008 | 62719-524 | Reregistration |
| ESTERON SL HERBICIDE | 7/7/2008 | 62719-551 | Reregistration |
| EF-1383 | 9/28/2011 | 62719-558 | Registration |
| GRAZON PD2 | 9/25/2009 | 62719-571 | Reregistration |
| GF-2003 | 10/2/2007 | 62719-579 | Registration |
| GRAZONNEXT | 2/12/2008 | 62719-587 | Registration |
| PENOXSULAM 2 FERT | 11/19/2008 | 62719-589 | Registration |
| PENOXSULAM 3 FERT | 11/19/2008 | 62719-590 | Registration |
| GF-2121 | 7/21/2008 | 62719-599 | Registration |
| GF-2122 | 7/21/2008 | 62719-600 | Registration |
| GrazonNext HL | 3/10/2011 | 62719-628 | Registration |

| | | | |
|---|---|---|---|
| PASTURALL HL | 3/10/2011 | 62719-629 | Registration |
| FOREFRONT HL | 3/10/2011 | 62719-630 | Registration |
| GF-2668 MUP | 3/24/2011 | 62719-632 | Registration |
| GF-2654 | 4/14/2011 | 62719-634 | Registration |
| GF-2727 | 6/27/2011 | 62719-640 | Registration |
| Grazon HL | 3/7/2013 | 62719-653 | Registration |
| TURFLON D | 5/27/2008 | 62719-67 | Reregistration |
| GF-2726 SR | 4/2/2013 | 62719-673 | Registration |
| GF-3335 | 1/31/2017 | 62719-695 | Registration |
| ESTERON 6E HERBICIDE | 2/24/2009 | 62719-8 | Reregistration |
| WEED KILLER 4D | 2/10/2009 | 62719-9 | Reregistration |
| MANA 2,4-D ESTER 4 | 7/27/2010 | 66222-219 | Registration |
| MANA 2,4-D ESTER 6 | 7/27/2010 | 66222-220 | Registration |
| MANA 2,4-D AMINE 4 | 7/23/2010 | 66222-221 | Registration |
| 2,4-D Acid Flake | 11/30/2016 | 66222-267 | Registration |
| BANVEL + 2,4-D | 2/10/2009 | 66330-287 | Reregistration |
| SP1304 | 4/22/2009 | 67690-49 | Registration |
| SP1037 | 4/22/2009 | 67690-50 | Registration |
| PC HERBICIDE CONCENTRATE | 9/21/2009 | 69526-11 | Reregistration |
| PC RTU HERBICIDE | 4/22/2008 | 69526-12 | Registration |
| PC HERBICIDE CONCENTRATE PLUS | 5/26/2009 | 69526-15 | Registration |
| PC HERBICIDE RTU PLUS | 5/21/2009 | 69526-16 | Registration |
| TERNSTYLE | 12/11/2009 | 70506-285 | Registration |
| TERNSTYLE G | 3/18/2011 | 70506-290 | Registration |
| CHINOOK | 8/10/2016 | 70506-321 | Registration |
| WEEDONE LV4 IOE BROADLEAF HERBICIDE | 6/24/2009 | 71368-10 | Reregistration |
| NUP-12004 HERBICIDE | 12/18/2012 | 71368-107 | Registration |
| BURNMASTER HERBICIDE | 1/7/2014 | 71368-108 | Registration |
| SPITFIRE HERBICIDE | 1/23/2014 | 71368-109 | Registration |
| WEEDONE LV6 EC | 3/20/2009 | 71368-11 | Reregistration |
| Panther Duo Herbicide | 6/18/2015 | 71368-115 | Registration |
| Panther Trio Herbicide | 7/23/2015 | 71368-116 | Registration |
| Scorch | 3/30/2016 | 71368-117 | Registration |
| WEEDAR IVM 44 BROADLEAF HERBICIDE | 7/1/2008 | 71368-13 | Reregistration |
| WEEDONE LV4 BROADLEAF HERBICIDE | 3/14/2008 | 71368-14 | Reregistration |
| NUFARM/2,4-D SODIUM SALT HERBICIDE | 8/10/2009 | 71368-22 | Reregistration |
| WEEDONE 638 BROADLEAF HERBICIDE | 4/29/2011 | 71368-3 | Reregistration |
| CREDIT MASTER HERBICIDE | 3/20/2009 | 71368-31 | Reregistration |

| | | | |
|---|---|---|---|
| NUFARM KAMBAMASTER HERBICIDE | 7/29/2008 | 71368-34 | Reregistration |
| RECOIL BROAD SPECTRUM HERBICIDE | 8/26/2010 | 71368-35 | Reregistration |
| MAESTRO D HERBICIDE | 3/18/2008 | 71368-39 | Reregistration |
| AQUA-KLEEN | 6/24/2009 | 71368-4 | Reregistration |
| NUFARM NUL 0365 BROADLEAF HERBICIDE | 2/10/2009 | 71368-42 | Reregistration |
| WEEDHAWK DRY FLOWABLE HERBICIDE | 3/18/2008 | 71368-50 | Reregistration |
| WEEDONE LV6 EMULSIFIABLE BROADLEAF HERBICIDE | 6/24/2009 | 71368-6 | Reregistration |
| CLEANSWEEP D HERBICIDE | 4/8/2009 | 71368-90 | Registration |
| NUP-08131 SELECTIVE HERBICIDE | 11/19/2009 | 71368-93 | Registration |
| CRAZE HERBICIDE | 5/13/2011 | 71711-35 | Registration |
| RD 1645 HERBICIDE | 7/6/2005 | 71995-41 | Registration |
| RD 1644 HERBICIDE | 7/6/2005 | 71995-42 | Registration |
| RD 1646 | 7/6/2005 | 71995-43 | Registration |
| LAWN 3FL2 HERBICIDE CONCENTRATE/READY-TO-SPRAY | 4/26/2011 | 72155-104 | Registration |
| LAWN 3FL2 HERBICIDE READY-TO-USE | 6/13/2011 | 72155-105 | Registration |
| Lawn 3FL Herbicide Concentrate/Ready-to-spray | 7/26/2010 | 72155-89 | Registration |
| Lawn 3FL Herbicide Ready-to-use | 7/26/2010 | 72155-90 | Registration |
| SWISS FARMS WEED & FEED (ZERO P) | 5/15/2009 | 73327-2 | Registration |
| LILLY/MILLER DANDELION KILLER | 7/3/2008 | 802-146 | Reregistration |
| LILLY/MILLER LAWN WEED KILLER | 12/4/2009 | 802-485 | Reregistration |
| LILLY/MILLER READY-TO-USE LAWN WEED KILLER | 5/29/2009 | 802-580 | Reregistration |
| LILLY/MILLER ULTRAGREEN WEED & FEED WITH TRIMEC HERBICIDE | 12/4/2009 | 802-588 | Reregistration |
| LILLY/MILLER 5M WEED & FEED | 10/9/2009 | 802-597 | Reregistration |
| ALLIGARE PICLORAM+D | 8/31/2007 | 81927-16 | Registration |
| ALLIGARE CODY HERBICIDE | 6/24/2008 | 81927-28 | Registration |
| ALLIGARE EVERETT HERBICIDE | 6/24/2008 | 81927-29 | Registration |
| ALLIGARE 2,4-D AMINE | 7/16/2009 | 81927-38 | Registration |
| ALLIGARE 2,4-D LV 6 | 7/16/2009 | 81927-39 | Registration |
| ALLIGARE DICAMBA + 2,4-D DMA | 6/3/2010 | 81927-42 | Registration |
| Dicamba DMA + 2,4-D DMA SL | 1/29/2016 | 83100-45 | Registration |
| DICAMBA + 2,4-D | 7/26/2011 | 83520-12 | Reregistration |
| 2,4-D AMINE 4 | 6/10/2008 | 83520-13 | Registration |

| | | | |
|---|---|---|---|
| 2,4-D ESTER 4 | 11/21/2008 | 83520-20 | Registration |
| 2,4-D ESTER 6 | 12/17/2008 | 83520-21 | Registration |
| 2,4-D AMINE WEED KILLER | 6/29/2010 | 84009-4 | Reregistration |
| UNICO 2,4-D LO-V ESTER WEED KILLER | 9/15/2008 | 84009-5 | Reregistration |
| 2,4-D LO-V ESTER 6E | 8/18/2010 | 84009-9 | Reregistration |
| ARMORTECH (R) THREESOME(TM) | 12/16/2009 | 86064-5 | Registration |
| WILLOWOOD 2,4-D AMINE | 2/20/2014 | 87290-45 | Registration |
| WILLOWOOD 2,4-D ESTER 4 | 3/10/2014 | 87290-49 | Registration |
| WILLOWOOD 2,4-D ESTER 6 | 2/27/2014 | 87290-50 | Registration |
| 2,4-D ACID TECHNICAL | 11/2/2007 | 87427-7 | Registration |
| 2,4-D AMINE MANUFACTURING CONCENTRATE | 7/7/2008 | 87427-8 | Registration |
| 2,4-D ESTER MANUFACTURING CONCENTRATE | 7/23/2008 | 87427-9 | Registration |
| Dee-Cam Herbicide | 4/17/2017 | 87845-8 | Registration |
| AX LV 4 2,4-D HERBICIDE | 11/13/2012 | 89167-13 | Registration |
| AX AMINE 4 2,4-D BROADLEAF HERBICIDE | 11/13/2012 | 89167-2 | Registration |
| AX 24DE-BROMOX-FLUROX | 3/26/2015 | 89167-49 | Registration |
| AX-DICAMBA 2,4-D-ESTER | 7/15/2015 | 89167-52 | Registration |
| DICAMBA + 2,4-D DMA | 6/9/2010 | 89168-2 | Registration |
| LIBERTY 2.4-D LV 6 ESTER NS | 12/9/2014 | 89168-40 | Registration |
| LIBERTY 2,4-D ESTER 6 | 10/14/2010 | 89168-5 | Registration |
| LIBERTY 2, 4-D ESTER 4 | 10/14/2010 | 89168-6 | Registration |
| LIBERTY SFO | 12/7/2016 | 89168-61 | Registration |
| LIBERTY 2,4-D AMINE 4 | 10/14/2010 | 89168-7 | Registration |
| TRIAD SELECT HERBICIDE | 3/26/2015 | 89442-22 | Registration |
| CrossCut Select | 3/20/2017 | 89442-31 | Registration |
| 2,4-D AMINE WEED KILLER | 4/7/2017 | 91543-2 | Registration |
| THE ANDERSONS WEED & FEED | 3/28/2008 | 9198-70 | Reregistration |
| LAWN HERBICIDE JD READY-TO-USE | 4/29/2011 | 92564-2 | Reregistration |
| LAWN HERBICIDE 3F CONCENTRATE | 10/19/2009 | 92564-34 | Reregistration |
| LAWN HERBICIDE 3F READY-TO-USE | 5/18/2007 | 92564-35 | Registration |
| LAWN HERBICIDE JD CONCENTRATE | 8/5/2009 | 92564-4 | Reregistration |
| LAWN HERBICIDE 2Q READY-TO-USE | 6/29/2009 | 92564-41 | Reregistration |
| LAWN HERBICIDE 2Q CONCENTRATE READY-TO-SPRAY | 3/26/2008 | 92564-42 | Registration |
| LAWN 3IP HERBICIDE CONCENTRATE/READY-TO-SPRAY | 4/30/2009 | 92564-43 | Registration |
| LAWN 3IP HERBICIDE READY-TO-USE | 4/30/2009 | 92564-44 | Registration |
| LAWN 3IP HERBICIDE GRANULE | 8/12/2011 | 92564-56 | Registration |

| LEBANON FERTILIZER PLUS CONFRONT TR BRAND HERBICIDE | 9/24/2008 | 961-394 | Reregistration |
|---|---|---|---|
| CONFRONT III + FERTILIZER | 1/25/2005 | 961-395 | Registration |
| CONFRONT* IV + FERTILIZER | 9/26/2006 | 961-406 | Registration |
| TURF FERTILIZER PLUS TRIMEC DMB WEED CONTROL | 6/3/2010 | 961-413 | Registration |
| TURF FERTILIZER PLUS TRIMEC ESTER WEED CONTROL | 6/7/2010 | 961-415 | Registration |
| TURF BROADLEAF WEED CONTROL | 7/14/2011 | 961-418 | Registration |
| TURF FERTILIZER BROADLEAF PLUS DIMENSION WEED CONTROL | 7/14/2011 | 961-419 | Registration |
| TURF FERTILIZER WITH LOCKUP PLUS DIMENSION WEED CONTROL | 7/18/2012 | 961-420 | Registration |
| CHEMSICO SPOT WEED KILLER A | 4/14/2009 | 9688-109 | Reregistration |
| CHEMSICO HERBICIDE WSG RTU | 8/10/2006 | 9688-243 | Registration |
| CHEMSICO HERBICIDE 2XG | 10/9/2009 | 9688-261 | Reregistration |
| EH-1460 HERBICIDE | 8/13/2009 | 9688-268 | Reregistration |
| CHEMSICO BRUSH KILLER CONCENTRATE II | 11/10/2010 | 9688-286 | Registration |
| CHEMSICO PESTICIDE CONCENTRATE WI-N | 5/19/2011 | 9688-289 | Registration |
| CHEMSICO PESTICIDE CONCENTRATE WI-S | 5/19/2011 | 9688-290 | Registration |
| CHEMSICO SPOT WEED KILLER TFA | 8/2/2011 | 9688-292 | Registration |
| CHEMSICO PESTICIDE GRANULES WI-N | 12/18/2012 | 9688-310 | Registration |
| CHEMSICO PESTICIDE GRANULES WI-S | 12/18/2012 | 9688-311 | Registration |

137.    Upon information and belief, EPA provided no hearings or other public participation for these product registration actions.

138.    As set forth above, EPA has discretion to influence or change registrations of pesticide products for the benefit of protected species.  For example, EPA may only register or reregister a pesticide product if its use does not cause an unreasonable adverse effect on the environment.  7 U.S.C. § 136a(c)(5); 7 U.S.C. § 136a-1(g)(2)(C); 40 C.F.R. § 152.112; 40 C.F.R. § 152.113(a).   EPA may also change, cancel, restrict, or immediately suspend registered pesticides, pesticide labeling, or particular uses at any time if it appears that the pesticide is causing an unreasonable adverse effect on the environment.  7 U.S.C. § 136d(c).   Thus, EPA's product reregistration and its approvals of products

1    containing 2,4-D, salts and esters are "affirmative agency actions" subject to consultation under Section

2    7(a)(2) of the ESA. 16 U.S.C. § 1536(a)(2).

3          139.    Plaintiffs' members live, work, visit, recreate, and otherwise enjoy areas across the

4    nation that may be impacted by products containing 2,4-D, salts and esters.  Plaintiffs' members derive

5    professional, aesthetic, spiritual, recreational, economic, and educational benefits from the endangered

6    and threatened species that live in these areas and may be impacted by products containing 2,4-D, salts

7    and esters.  The list of species that may be affected by products containing 2,4-D, salts and esters is

8    provided in Exhibit A, and Plaintiffs' members have cognizable interests in these species.

9          140.    For example, products containing 2,4-D, salts and esters may affect the Puerto Rican

10   crested toad, and a member of Plaintiffs' organizations has a cognizable interest in this species based

11   on, among other things, efforts to observe the species during frequent visits to habitats where the

12   species can be found and may be affected by products containing 2,4-D, salts and esters.

13         141.    In the Recovery Plan for the Puerto Rican crested toad, the FWS explains: "Ponds in

14   Quebradillas are found in areas used for cattle since the 1950's. These areas are regularly sprayed with

15   herbicides and chemical fertilizers, which could affect the toads when rain and runoff from pastures fill

16   cattle troughs constructed to take advantage of natural drainage channels. These cattle troughs are used

17   by the toads for breeding."  In addition, in its 1989 Biological Opinion, FWS found that the Puerto

18   Rican crested toad may be adversely affected by numerous pesticides.

19         142.    Plaintiffs' members engage in wildlife observation, research, photography, restoration

20   activities, and educational programs involving endangered and threatened species that may be impacted

21   by products containing 2,4-D, salts and esters.  Plaintiffs' members will continue to maintain an interest

22   in the species and areas that may be impacted by products containing 2,4-D, salts and esters in the

23   future.

24         143.    The above-described interests of Plaintiffs and their members have been and are being

25   adversely affected by EPA's reregistration, registration and authorization of the use of products

26   containing 2,4-D, salts and esters, which are pesticides that may harm endangered and threatened

27   species and their habitats.  As alleged in the Complaint, products containing 2,4-D, salts and esters may

28   affect the species identified in Exhibit A, as well as their designated critical habitat.

144.    EPA's failure to ensure that products containing 2,4-D, salts and esters do not impact endangered species and their habitats harms Plaintiffs' members' interests in the species and their habitats affected by products containing 2,4-D, salts and esters.  For example, EPA's failure to consult on products containing 2,4-D, salts and esters may impair recovery of species impacted by products containing 2,4-D, salts and esters and may make it more likely that these species would suffer population declines.  Species declines and impaired recovery harm the interests that Plaintiffs' members have in the existence of these rare animals, such as by limiting their ability to observe the species.  Consultation on products containing 2,4-D, salts and esters is necessary to ensure that Plaintiffs' members' interests in the species affected by products containing 2,4-D, salts and esters are preserved and remain free from injury.

145.    EPA must register and authorize pesticide products before they can be used and has an ongoing responsibility to ensure that registered pesticides do not have unreasonable adverse effects on the environment.  Absent EPA's continuing registration and discretionary control and involvement in products containing 2,4-D, salts and esters, these pesticides could not be used and could not be negatively impacting the listed species named in Exhibit A and their habitats.

146.    If this Court orders EPA to engage in consultation as required, the Service would analyze the extent to which the products containing 2,4-D, salts and esters affect listed species and their habitats and, if necessary, would suggest reasonable and prudent alternatives or measures to protect the species, which would protect Plaintiffs' members' interests in the species.  16 U.S.C. § 1536(a)(3).  Unless the requested relief is granted, Plaintiffs' interests will continue to be injured by EPA's failure to consult on products containing 2,4-D, salts and esters with the Service, as well as by the potential ongoing harm to the species named in Exhibit A and their habitats as a result of ongoing use of products containing 2,4-D, salts and esters.

147.    The injuries described above are actual, concrete injuries that are presently suffered by Plaintiffs and their members and will continue to occur unless relief is granted by this Court.  These injuries are directly caused by the Defendants' failure to consult with the Service to ensure that EPA's actions relating to products containing 2,4-D, salts and esters do not affect listed species and Plaintiffs' members' cognizable interests in these species.  The relief sought herein, EPA's compliance with the

1  ESA, would redress Plaintiffs' injuries.  Plaintiffs have no other adequate remedy at law, and they bring

2  this action on behalf of their adversely affected members.

3  **Acephate**[6]

4      148.    Exhibit A contains a comprehensive, but not necessarily exhaustive, list of endangered

5  and threatened species for which acephate is known to be harmful to the taxonomic group of that

6  species and is used in the state where that species lives.

7      149.    Acephate is a pesticide for which the EPA has indicated that estimated environmental

8  concentrations (EECs) are likely to exceed the Levels of Concern (LOCs) for endangered species,

9  and/or may cause indirect effects on endangered species by altering habitat or food sources.

10  Specifically, EECs of acephate are likely to exceed the LOCs for the following taxonomic groups:

11  mammals, birds, fish, amphibians, mollusks, crustaceans, insects, and reptiles.

12      150.    Acephate is a pesticide that is "highly acutely toxic" or "very highly acutely toxic" to the

13  following taxonomic groups:  crustaceans, insects, fish, and amphibians.  These toxicity rankings are

14  based on LD50 or LC50 data (lethal dose to 50 percent of the test organisms or lethal concentration for

15  50 percent of the test organisms) that EPA possesses.

16      151.    In its 2006 RED for acephate, EPA states: "Endangered species LOCs except for fish

17  (estuarine and freshwater) and estuarine invertebrates are exceeded for all uses of acephate. In addition,

18  LOCs are exceeded for endangered species of mammals, amphibians, birds, reptiles, insects, and

19  freshwater invertebrates for the degradate methamidophos formed from all uses of acephate."

20      152.    EPA "affirmatively authorized" the continued use of the active ingredient acephate when

21  it issued a Reregistration Eligibility Decision in July of 2006.

22      153.    On October 14, 2008, EPA completed product reregistration for acephate.  *See*

23  https://www.epa.gov/pesticide-reevaluation/pesticides-have-completed-product-reregistration (last

24  visited 6/26/2017).

25      154.    Active product registrations for this pesticide can be found on EPA's Pesticide Product

26  Label System, *available at* http://iaspub.epa.gov/apex/pesticides/f?p=PPLS:1 (last visited 6/26/2017).

27

28

---

[6] The current EPA Case Number and EPA PC Code for acephate are 0042, 103301.

Third Amended and First Supplemental Complaint for Declaratory and Injunctive Relief
Case No. 3:11-cv-00293-JCS                                                              50

155.    Specifically, the EPA's online Pesticide Product Label System lists the following products containing acephate that EPA affirmatively authorized by product reregistration or new product registration since January 20, 2005:

| Product Name | Date | Registration Number | Action |
|---|---|---|---|
| BRACKET 90 WSP | 7/2/2008 | 1381-238 | Registration |
| DEXOL SYSTEMIC GRANULES FOR PLANT INSECT CONTROL | 3/29/2007 | 192-210 | Reregistration |
| DEXOL SYSTEMIC PLANT CARE | 3/29/2007 | 192-211 | Reregistration |
| DREXEL ACEPHATE 75 WSP | 9/27/2007 | 19713-400 | Reregistration |
| DREXEL ACEPHATE 80 SEED PROTECTANT | 2/22/2017 | 19713-408 | Reregistration |
| DREXEL ACEPHATE PCO SP INSECTICIDE | 8/16/2007 | 19713-495 | Reregistration |
| DREXEL ACEPHATE 75SP HOMEOWNER | 9/13/2007 | 19713-497 | Reregistration |
| ORTHENE SYSTEMIC INSECT CONTROL | 9/27/2007 | 239-2461 | Reregistration |
| ORTHENE FIRE ANT KILLER II | 9/13/2007 | 239-2632 | Reregistration |
| ACEPHATE 90 WDG | 1/28/2010 | 34704-1051 | Registration |
| ACEPHATE 90SP INSECTICIDE | 8/16/2005 | 34704-880 | Registration |
| ACEPHATE 97 EG | 2/15/2006 | 34704-903 | Registration |
| ACECAP SYSTEMIC INSECTICIDE IMPLANTS | 4/19/2007 | 37979-1 | Reregistration |
| BONIDE SYSTEMIC INSECT CONTROL | 11/18/2015 | 4-490 | Registration |
| WHITMIRE PT 289 ORTHENE | 9/10/2007 | 499-373 | Reregistration |
| WHITMIRE MICRO-GEN PT 1320 TR | 7/24/2007 | 499-421 | Reregistration |
| WHITMIRE TC 136 | 9/10/2007 | 499-441 | Reregistration |
| ACEPHATE 75 SP AGRICULTURAL & FIRE ANT INSECTICIDE | 7/19/2011 | 53883-133 | Reregistration |
| ACEPHATE 50 FIRE ANT INSECTICIDE | 11/16/2006 | 53883-203 | Registration |
| ACEPHATE 90% PRILLS | 4/1/2009 | 53883-253 | Registration |
| ORTHENE 75 S SOLUBLE POWDER | 4/9/2007 | 5481-8971 | Reregistration |
| ORTHENE TOBACCO INSECT SPRAY | 6/20/2007 | 5481-8972 | Reregistration |
| ORTHENE PCO FORMULA II | 8/16/2007 | 5481-8973 | Reregistration |
| ORTHENE 90S | 6/20/2007 | 5481-8974 | Reregistration |
| PAYLOAD 15 GRANULAR | 3/29/2007 | 5481-8976 | Reregistration |
| ORTHENE TURFGRASS & CONTAINER GROWN NURSERY STOCK 15 GRANULAR | 3/29/2007 | 5481-8977 | Reregistration |

| ORTHENE 97 PELLETS | 4/25/2007 | 5481-8978 | Reregistration |
|---|---|---|---|
| ARBOR X THENE | 5/2/2007 | 64014-1 | Reregistration |
| ACEPHATE 97 WDG | 10/20/2016 | 66222-266 | Registration |
| ACEPHATE 75SP | 9/27/2007 | 66330-354 | Reregistration |
| ACEPHATE PCO SP INSECTICIDE | 9/13/2007 | 66330-355 | Reregistration |
| ACEPHATE 90SP | 9/24/2007 | 66330-356 | Reregistration |
| ACEPHATE 75SP HOMEOWNER | 9/10/2007 | 66330-358 | Reregistration |
| ACEPHATE 80S SEED TREATER | 8/16/2007 | 66330-359 | Reregistration |
| ACEPHATE 97 EG | 9/24/2007 | 66330-360 | Reregistration |
| ACEPHATE 90EG | 12/19/2007 | 66330-370 | Registration |
| ACEPHATE 75 SP | 7/18/2007 | 70506-1 | Reregistration |
| ACEPHATE 90 SP | 7/9/2007 | 70506-2 | Reregistration |
| LANCER GOLD INSECTICIDE | 10/5/2011 | 70506-242 | Registration |
| AVATAR PLX | 3/3/2015 | 70506-313 | Registration |
| ACEPHATE 90 DF INSECTICIDE | 4/13/2006 | 70506-76 | Registration |
| ACEPHATE 97UP INSECTICIDE | 11/28/2007 | 70506-8 | Reregistration |
| EXCEL SYSTEMIC INSECT CONTROL GRANULES | 8/23/2005 | 71376-2 | Registration |
| ACE-JET | 7/21/2005 | 74578-2 | Registration |
| ACEPHATE INFUSIBLE INSECTICIDE | 3/7/2007 | 74779-5 | Registration |
| ACEPHATE SYSTEMIC TREE & ORNAMENTAL INSECTICIDE | 6/27/2007 | 74779-6 | Registration |
| BORER-STOP ECOTAB | 7/20/2005 | 75748-1 | Registration |
| TIDE ACEPHATE 90 WSG | 7/31/2014 | 80697-12 | Registration |
| TIDE ACEPHATE 97 SG | 9/18/2014 | 80697-13 | Registration |
| ACEPHATE 90% SP | 1/25/2006 | 81964-3 | Registration |
| ACEPHATE 90% WSP | 5/10/2007 | 83222-2 | Registration |
| ACEPHATE 97% PRILLS | 4/16/2010 | 83222-31 | Registration |
| TIDE ACEPHATE 90 WDG | 11/25/2009 | 84229-7 | Registration |
| PRECISE ACEPHATE | 9/13/2007 | 84886-1 | Reregistration |
| PRECISE ACEPHATE GREENHOUSE AND NURSERY SYSTEMIC INSECTICIDE | 1/20/2006 | 84886-2 | Registration |
| AX ACEPHATE 90 WDG | 1/2/2013 | 89167-27 | Registration |
| AX ACEPHATE 97 | 9/16/2013 | 89167-35 | Registration |

156.    Upon information and belief, EPA provided no hearings or other public participation for these product registration actions.

157.    As set forth above, EPA has discretion to influence or change registrations of pesticide products for the benefit of protected species.  For example, EPA may only register or reregister a pesticide product if its use does not cause an unreasonable adverse effect on the environment.  7 U.S.C.

§ 136a(c)(5); 7 U.S.C. § 136a-1(g)(2)(C); 40 C.F.R. § 152.112; 40 C.F.R. § 152.113(a).   EPA may also change, cancel, restrict, or immediately suspend registered pesticides, pesticide labeling, or particular uses at any time if it appears that the pesticide is causing an unreasonable adverse effect on the environment. 7 U.S.C. § 136d(c).   Thus, EPA's product reregistration and its approvals of products containing acephate are "affirmative agency actions" subject to consultation under Section 7(a)(2) of the ESA. 16 U.S.C. § 1536(a)(2).

158.    Plaintiffs' members live, work, visit, recreate, and otherwise enjoy areas across the nation that may be impacted by products containing acephate.  Plaintiffs' members derive professional, aesthetic, spiritual, recreational, economic, and educational benefits from the endangered and threatened species that live in these areas and may be impacted by products containing acephate.  The list of species that may be affected by products containing acephate is provided in Exhibit A, and Plaintiffs' members have cognizable interests in these species.

159.    For example, products containing acephate may affect the Mississippi gopher frog (dusky gopher frog), and a member of Plaintiffs' organizations has a cognizable interest in this species based on, among other things, efforts to observe the species during frequent visits to habitats where the species can be found and may be affected by products containing acephate.

160.    In the rule listing the Mississippi gopher frog, FWS cites numerous studies recognizing the multiple impacts pesticides have on frogs throughout their life cycle. *Final Rule to List the Mississippi Gopher Frog Distinct Population Segment of the Dusky Gopher Frog as Endangered*, 66 Fed. Reg. 62993 (December 4, 2001).  FWS explains: "Pesticides and herbicides pose a threat to amphibians such as the Mississippi gopher frog, because their permeable eggs and skin readily absorb substances from the surrounding aquatic or terrestrial environment (Duellman and Trueb 1986)."  In addition, in the Fact Sheet for the frog, FWS explains: "Some chemicals used as herbicides and pesticides are known to be toxic to aquatic amphibians. Since there is only one remaining pond for the Mississippi gopher frog population, any sedimentation or toxic run-off that reaches the pond could destroy the pond and injure or kill tadpoles and adult frogs."

161.    Plaintiffs' members engage in wildlife observation, research, photography, restoration activities, and educational programs involving endangered and threatened species that may be impacted

1    by products containing acephate.  Plaintiffs' members will continue to maintain an interest in the

2    species and areas that may be impacted by products containing acephate in the future.

3        162.   The above-described interests of Plaintiffs and their members have been and are being

4    adversely affected by EPA's reregistration, registration and authorization of the use of products

5    containing acephate, which is a pesticide that may harm endangered and threatened species and their

6    habitats.  As alleged in the Complaint, products containing acephate may affect the species identified in

7    Exhibit A, as well as their designated critical habitat.

8        163.   EPA's failure to ensure that products containing acephate do not impact endangered

9    species and their habitats harms Plaintiffs' members' interests in the species and their habitats affected

10    by products containing acephate.  For example, EPA's failure to consult on products containing

11    acephate may impair recovery of species impacted by products containing acephate and may make it

12    more likely that these species would suffer population declines.  Species declines and impaired

13    recovery harm the interests that Plaintiffs' members have in the existence of these rare animals, such as

14    by limiting their ability to observe the species.  Consultation on products containing acephate is

15    necessary to ensure that Plaintiffs' members' interests in the species affected by products containing

16    acephate are preserved and remain free from injury.

17        164.   EPA must register and authorize pesticide products before they can be used and has an

18    ongoing responsibility to ensure that registered pesticides do not have unreasonable adverse effects on

19    the environment.  Absent EPA's continuing registration and discretionary control and involvement in

20    products containing acephate, this pesticide could not be used and could not negatively impact the

21    listed species named in Exhibit A and their habitats.

22        165.   If this Court orders EPA to engage in consultation as required, the Service would analyze

23    the extent to which products containing acephate affect listed species and their habitats and, if

24    necessary, would suggest reasonable and prudent alternatives or measures to protect the species, which

25    would protect Plaintiffs' members' interests in the species.  16 U.S.C. § 1536(a)(3).  Unless the

26    requested relief is granted, Plaintiffs' interests will continue to be injured by EPA's failure to consult

27    on products containing acephate with the Service, as well as by the potential ongoing harm to the

28

species named in Exhibit A and their habitats as a result of ongoing use of products containing acephate.

166.    The injuries described above are actual, concrete injuries that are presently suffered by Plaintiffs and their members and will continue to occur unless relief is granted by this Court.  These injuries are directly caused by the Defendants' failure to consult with the Service to ensure that EPA's actions relating to products containing acephate do not affect listed species and Plaintiffs' members' cognizable interests in these species.  The relief sought herein, EPA's compliance with the ESA, would redress Plaintiffs' injuries.  Plaintiffs have no other adequate remedy at law, and they bring this action on behalf of their adversely affected members.

**Atrazine**[7]

167.    Exhibit A contains a comprehensive, but not necessarily exhaustive, list of endangered and threatened species for which atrazine is known to be harmful to the taxonomic group of that species and is used in the state where that species lives.

168.    Atrazine is a pesticide for which the EPA has indicated that estimated environmental concentrations (EECs) are likely to exceed the Levels of Concern (LOCs) for endangered species, and/or may cause indirect effects on endangered species by altering habitat or food sources.  Specifically, EECs of atrazine are likely to exceed the LOCs for the following taxonomic groups: mammals, birds, fish, amphibians, mollusks, crustaceans, and reptiles.

169.    Atrazine is a pesticide that is "highly acutely toxic" or "very highly acutely toxic" to the following taxonomic groups: fish, amphibians, mollusks, crustaceans, and insects.  These toxicity rankings are based on LD50 or LC50 data (lethal dose to 50 percent of the test organisms or lethal concentration for 50 percent of the test organisms) that EPA possesses.

170.    Atrazine is present across the country in concentrations harmful to species.  The USGS has detected atrazine in dozens of waterways across the nation, as documented in reports on its nationwide water quality surveys.  It is the most commonly detected pesticide in U.S. waters with about 75% of streamwater and 40% of groundwater containing atrazine.  As shown in Exhibit B, some of these watersheds overlap the range of species that may be affected by this pesticide.

---

[7] The current EPA Case Number and EPA PC Code for atrazine are 0062, 080803.

1    171.    Atrazine is a known endocrine disrupter.  Endocrine disrupters have effects on the

2    reproductive and immune systems capable of compromising populations of endangered species.  At just

3    0.1 ppb – far below the level established by EPA as safe for aquatic organisms – atrazine can alter the

4    development of sex characteristics in male frogs.  As a result, studies have concluded that due to the

5    pervasive nature of atrazine at levels that can disrupt sexual development, aquatic environments across

6    the country are at risk.

7    172.    In its 2006 RED for atrazine, EPA states: "Endangered species LOCs are exceeded for

8    terrestrial plants, birds and small mammals from the agricultural uses of atrazine. Acute risks to

9    endangered freshwater invertebrates and aquatic vascular plants are exceeded for all crop uses except

10   for the typical use rate on corn (1.1 lb ai/A). Chronic levels of concern for endangered species are

11   exceeded for fish and aquatic invertebrate reproduction for all use rates, except for corn and the typical

12   use rate on sorghum."

13   173.    In its April 12, 2016 Refined Ecological Risk Assessment for Atrazine, EPA states:

14   "Based on the results from hundreds of toxicity studies on the effects of atrazine on plants and animals,

15   over 20 years of surface water monitoring data, and higher tier aquatic exposure models, this risk

16   assessment concludes that aquatic plant communities are impacted in many areas where atrazine use is

17   the heaviest, and there is potential chronic risk to fish, amphibians, and aquatic invertebrates in these

18   same locations." EPA further states: "For aquatic phase amphibians, a weight of evidence analysis

19   concluded there is potential for chronic risks to amphibians based on multiple effects endpoint

20   concentrations compared to measured and predicted surface water concentrations. The breadth of

21   terrestrial plant species and families potentially impacted by atrazine use at current labeled rates, as

22   well as reduced rates of 0.5 and 0.25 lbs. a.i./A, suggest that terrestrial plant biodiversity and

23   communities are likely to be impacted from off-field exposures via runoff and spray drift." And, EPA

24   further states: :  "Average atrazine concentrations in water at or above 5 ug/L for several weeks are

25   predicted to lead to reproductive effects in fish, while a 60-day average of 3.4 ug/L has a high

26   probability of impacting aquatic plant community primary productivity, structure and function."

27   174.    EPA "affirmatively authorized" the continued use of the active ingredient atrazine when

28   it issued a Reregistration Eligibility Decision in April of 2006.

175.    On June 26, 2008, EPA completed product reregistration for atrazine.  *See* https://www.epa.gov/pesticide-reevaluation/pesticides-have-completed-product-reregistration (last visited 6/26/2017).

176.    Active product registrations for this pesticide can be found on EPA's Pesticide Product Label System, *available at* http://iaspub.epa.gov/apex/pesticides/f?p=PPLS:1 (last visited 6/26/2017).

177.    Specifically, the EPA's online Pesticide Product Label System lists the following pesticide products containing atrazine that EPA affirmatively authorized by product reregistration or new product registration since January 20, 2005[8]:

| Product Name | Date | Registration Number | Action |
|---|---|---|---|
| LUMAX SELECTIVE HERBICIDE | 7/19/2007 | 100-1152 | Reregistration |
| EXPERT HERBICIDE | 7/16/2007 | 100-1161 | Reregistration |
| LEXAR HERBICIDE | 2/7/2012 | 100-1201 | Reregistration |
| BICEP LITE II MAGNUM MANUFACTURING USE PRODUCT | 7/21/2005 | 100-1213 | Registration |
| SYN-AI7227 | 11/10/2009 | 100-1356 | Registration |
| CALLISTO XTRA | 1/12/2010 | 100-1359 | Registration |
| LEXAR EZ HERBICIDE | 12/14/2011 | 100-1414 | Registration |
| Lumax EZ Herbicide | 8/2/2012 | 100-1442 | Registration |
| ACURON HERBICIDE | 4/24/2015 | 100-1466 | Registration |
| AATREX 4L HERBICIDE |  | 100-497 | Reregistration |
| AATREX NINE-O HERBICIDE | 4/30/2007 | 100-585 | Reregistration |
| BICEP II MAGNUM HERBICIDE | 7/16/2007 | 100-817 | Reregistration |
| BICEP LITE II MAGNUM HERBICIDE | 3/19/2008 | 100-827 | Reregistration |
| BICEP MAGNUM | 10/1/2007 | 100-886 | Reregistration |
| LESCO ATRAZINE 0.76% PLUS FERTILIZER | 4/3/2007 | 10404-39 | Reregistration |
| LESCO ATRAZINE 1.05% PLUS FERTILIZER | 4/3/2007 | 10404-94 | Reregistration |
| LESCO ATRAZINE 0.45% PLUS FERTILIZER | 4/3/2007 | 10404-95 | Reregistration |
| LESCO ATRAZINE 0.92% PLUS FERTILIZER | 4/3/2007 | 10404-96 | Reregistration |
| CORNBELT ATRAZINE 4L | 4/1/2008 | 11773-1 | Reregistration |
| CORNBELT ATRAZINE 90 DF | 6/10/2008 | 11773-13 | Reregistration |

---

[8] Where a date is not included, the EPA documentation of product reregistration did not appear on EPA's Pesticide Product Label System. However, product reregistration should have occurred between the April  2006 RED and the June 26, 2008 completion of product reregistration.

| | | | |
|---|---|---|---|
| ATRAZINE 4L | 4/12/2007 | 1381-158 | Reregistration |
| CHARGER MAX ATZ | 2/9/2006 | 1381-199 | Registration |
| CHARGER MAX ATZ LITE | 11/20/2006 | 1381-208 | Registration |
| DREXEL ATRAZINE 4L | 9/29/2005 | 19713-11 | Reregistration |
| DREXEL SIMAZAT 4L HERBICIDE | 4/19/2007 | 19713-171 | Reregistration |
| DREXEL ATRAZINE 5L HERBICIDE | 3/28/2007 | 19713-291 | Reregistration |
| DREXEL ATRAZINE 4F | 9/29/2005 | 19713-498 | Reregistration |
| DREXAL ATRAZINE 90DP | 10/18/2005 | 19713-499 | Reregistration |
| DREXEL ACETOCHLOR PLUS ATRAZINE | | 19713-513 | Reregistration |
| DREXEL TRIZMET II | | 19713-547 | Reregistration |
| DREXEL AUGUZINE | 6/22/2005 | 19713-567 | Registration |
| DREXEL TRIZMET LITE | 7/10/2014 | 19713-663 | Registration |
| DREXEL TRIZAR HERBICIDE | 10/19/2016 | 19713-686 | Registration |
| TRIZMAX HERBICIDE | 1/3/2017 | 19713-688 | Registration |
| DREXEL ATRAZINE 90 DF | 10/18/2005 | 19713-76 | Reregistration |
| ATRA-5 | 3/28/2007 | 19713-80 | Reregistration |
| F9316-2 | 11/9/2012 | 279-3449 | Registration |
| ATRAZINE 4L | 9/20/2007 | 33270-10 | Reregistration |
| TREMOR AT | 5/2/2005 | 33270-13 | Registration |
| TREMOR AT LITE | 5/2/2005 | 33270-14 | Registration |
| TREMOR ATZ NXT | 11/21/2013 | 33270-24 | Registration |
| TREMOR ATZ LITE NXT | 11/21/2013 | 33270-25 | Registration |
| ATRAZINE 90DF | 9/20/2007 | 33270-9 | Reregistration |
| STRATOS DICAMBA+ATRAZINE AGRICULTURAL HERBICIDE | 4/30/2007 | 33658-31 | Reregistration |
| SLIDER ATZ | 9/30/2009 | 34704-1041 | Registration |
| SLIDER ATZ LITE | 9/30/2009 | 34704-1042 | Registration |
| LPI S-METOLACHLOR +ATRAZINE | 1/8/2013 | 34704-1070 | Registration |
| LPI METOLACHLOR + ATRAZINE HERBICIDE | 1/8/2013 | 34704-1072 | Registration |
| CADENCE ATZ NXT HERBICIDE | 9/10/2013 | 34704-1081 | Registration |
| CADENCE LA NXT HERBICIDE | 9/10/2013 | 34704-1082 | Registration |
| ATRAZINE 90 WDG HERBICIDE | 4/16/2007 | 34704-622 | Reregistration |
| CONIFER 90 HERBICIDE | 4/16/2007 | 34704-689 | Reregistration |
| ATRAZINE 4L | 3/28/2007 | 34704-69 | Reregistration |
| CLEAN CROP ATRAZINE 4L TURF & CONIFER HERBICIDE | 3/28/2007 | 34704-690 | Reregistration |
| SHOTGUN FLOWABLE HERBICIDE | 7/14/2008 | 34704-728 | Reregistration |
| RIFLE PLUS HERBICIDE | 9/9/2009 | 34704-860 | Reregistration |
| BROZINE | 9/22/2005 | 34704-892 | Registration |
| CADENCE ATZ HERBICIDE | 8/7/2006 | 34704-950 | Reregistration |

| | | | |
|---|---|---|---|
| BASIS GOLD HERBICIDE | 8/30/2007 | 352-585 | Reregistration |
| DPX-MX670 MT | | 352-600 | Reregistration |
| DUPONT STEADFAST ATZ HERBICIDE | 7/21/2005 | 352-619 | Reregistration |
| DUPONT CINCH ATZ LITE HERBICIDE | 6/26/2008 | 352-623 | Reregistration |
| DUPONT CINCH ATZ HERBICIDE | 8/2/2007 | 352-624 | Reregistration |
| DUPONT BREAKFREE ATZ LITE | 11/1/2006 | 352-723 | Registration |
| DUPONT BREAKFREE ATZ HERBICIDE | 11/1/2006 | 352-724 | Registration |
| DUPONT BREAKFREE NXT ATZ HERBICIDE | 5/8/2014 | 352-893 | Registration |
| DUPONT BREAKFREE NXT LITE HERBICIDE | 5/8/2014 | 352-895 | Registration |
| TURF PRIDE WEEDER | 3/28/2007 | 35512-14 | Reregistration |
| TURF PRIDE 92 WEED & FEED | 4/18/2007 | 35512-46 | Reregistration |
| TURF PRIDE 115 WEED & FEED | 4/18/2007 | 35512-48 | Reregistration |
| ATRAZINE 90 HERBICIDE | 4/30/2007 | 35915-3 | Reregistration |
| ATRAZINE 4L HERBICIDE | 10/29/2007 | 35915-4 | Reregistration |
| ACETOCHLOR 4.3 + ATZ 1.7 | 12/14/2005 | 42750-106 | Registration |
| ACETOCHLOR 3.1 + ATZ 2.5 | 12/22/2005 | 42750-108 | Registration |
| DICAMBAZINE | 8/27/2009 | 42750-41 | Reregistration |
| ATRAZINE 4L | 8/29/2005 | 42750-44 | Reregistration |
| WEED PRO ATRAZINE 4L HERBICIDE | 8/29/2005 | 42750-45 | Reregistration |
| BROX-AT HERBICIDE | 9/27/2005 | 42750-50 | Reregistration |
| ALBAUGH ATRAZINE 90 DF | 11/5/2007 | 42750-53 | Reregistration |
| HARNESS XTRA HERBICIDE | 1/2/2008 | 524-480 | Reregistration |
| HARNESS XTRA 5.6L HERBICIDE PREMIX FOR CORN | 5/17/2006 | 524-485 | Reregistration |
| MON 58442 HERBICIDE | 9/20/2007 | 524-497 | Reregistration |
| MON 78088 HERBICIDE | 5/17/2006 | 524-509 | Reregistration |
| MON 58494 | 5/17/2006 | 524-511 | Reregistration |
| SCOTTS BONUS S | 4/12/2007 | 538-18 | Reregistration |
| SUPER BONUS S LAWN WEED CONTROL PLUS FERTILIZER | 4/12/2007 | 538-229 | Reregistration |
| WEED CONTROL WITH FERTILIZER | 3/28/2007 | 538-234 | Reregistration |
| SCOTTS SOUTHERNMAX | 2/6/2007 | 538-301 | Registration |
| SOUTHERNMAX PRO | 3/6/2008 | 538-302 | Registration |
| SOUTHERN FERTILIZER WITH WEED AND INSECT CONTROL | 5/12/2009 | 538-307 | Registration |
| BONUS S SUPER | 5/26/2009 | 538-310 | Registration |
| EDISON SOUTH | 3/15/2010 | 538-315 | Registration |

| | | | |
|---|---|---|---|
| TENKOZ ATRAZINE 4L HERBICIDE | 11/23/2009 | 55467-13 | Registration |
| VOLLEY ATZ LITE TENKOZ HERBICIDE | 12/20/2007 | 55467-6 | Reregistration |
| VOLLEY ATZ TENKOZ HERBICIDE | 7/10/2007 | 55467-7 | Reregistration |
| ATRAZINE 4L | 9/26/2005 | 5905-470 | Reregistration |
| ATRAZINE 90DF | 11/19/2007 | 5905-522 | Reregistration |
| PRO-MATE ATRAZINE 0.5% WITH FERTILIZER | 7/17/2006 | 5905-562 | Registration |
| ATRAZINE 1.055% GRANULAR HERBICIDE PLUS LAWN FERTILIZER | 3/29/2007 | 5905-8613 | Reregistration |
| PENNGREEN WEED & FEED WITH ATRAZINE | 4/12/2007 | 59144-32 | Reregistration |
| ATRAZINE 90 DF HERBICIDE | 10/4/2007 | 59639-106 | Reregistration |
| STALWART XTRA | 10/4/2007 | 60063-23 | Reregistration |
| STALWART XTRA LITE HERBICIDE | 1/24/2012 | 60063-48 | Registration |
| ATRAZINE 90 DF | 10/20/2008 | 62575-12 | Registration |
| KEYSTONE HERBICIDE | 12/26/2007 | 62719-368 | Reregistration |
| FULTIME HERBICIDE | 8/2/2007 | 62719-371 | Reregistration |
| KEYSTONE LA HERBICIDE | 12/26/2007 | 62719-479 | Reregistration |
| GF-2836 | 2/7/2012 | 62719-646 | Registration |
| FulTimeNXT | 4/4/2013 | 62719-668 | Registration |
| KEYSTONE LA NXT | 4/4/2013 | 62719-670 | Registration |
| KEYSTONE NXT | 4/3/2013 | 62719-671 | Registration |
| TRIANGLE HERBICIDE | 7/19/2005 | 66222-131 | Registration |
| PARALLEL PLUS | 11/15/2005 | 66222-132 | Registration |
| MANA ATRAZINE 90DF | 12/30/2010 | 66222-229 | Registration |
| ATRAZINE 4L | 4/12/2007 | 66222-36 | Reregistration |
| ATRAZINE 90DF | 8/29/2005 | 66222-37 | Reregistration |
| BANVEL + ATRAZINE | 3/22/2007 | 66330-286 | Reregistration |
| SWISS FARMS CENTIPEDE WEED & FEED | 5/11/2009 | 73327-1 | Registration |
| SWISS FARMS ST. AUGUSTINE WEED & FEED | 5/11/2009 | 73327-3 | Registration |
| FERTI-LOME ST. AUGUSTINE WEED & FEED | 2/14/2007 | 7401-336 | Reregistration |
| MARKSMAN HERBICIDE | 11/5/2007 | 7969-136 | Reregistration |
| GUARDSMAN MAX HERBICIDE | 7/19/2007 | 7969-192 | Reregistration |
| Alligare Atrazine 4L | 1/17/2017 | 81927-59 | Registration |
| GROWSTAR ATRAZINE 1.05% PLUS FERTILIZER | 5/2/2007 | 82757-1 | Registration |
| GROWSTAR ATRAZINE 0.92% PLUS FERTILIZER | 5/2/2007 | 82757-2 | Registration |

| GROWSTAR ATRAZINE 0.76% PLUS FERTILIZER | 5/2/2007 | 82757-3 | Registration |
|---|---|---|---|
| Rotam Metolachlor+Atrazine+Mesotrione | 12/22/2016 | 83100-47 | Registration |
| Rotam Metolachlor 19% + Atrazine 18.6% + Mesotrione 2.44% | 3/8/2017 | 83100-50 | Registration |
| ARC-METOLAZINE HERBICIDE | 12/28/2010 | 84930-23 | Registration |
| HERBICIDE GRANULES FORMULA A | 9/26/2005 | 8660-12 | Reregistration |
| AX-ATZ 4L | 10/18/2012 | 89167-10 | Registration |
| AX ACETOZINE 2 NG | 12/24/2013 | 89167-30 | Registration |
| AX ACETOZINE NG | 12/4/2013 | 89167-32 | Registration |
| AX ATZ 4L-2 HERBICIDE | 3/20/2014 | 89167-38 | Registration |
| AX ATZ S-MET HERBICIDE | 5/29/2014 | 89167-41 | Registration |
| AX ATRACHLOR | 10/18/2012 | 89167-9 | Registration |
| LIBERTY ATRAZINE 4L HERBICIDE | 12/4/2013 | 89168-29 | Registration |
| LIBERTY ATRAZINE 90 HERBICIDE | 11/27/2013 | 89168-32 | Registration |
| LIBERTY ATZ 4L | 9/4/2014 | 89168-35 | Registration |
| SUNNILAND WEEDER-FEEDER | 4/30/2007 | 9404-51 | Reregistration |
| SUNNILAND OUR BEST QUALITY WEED & FEED | 4/26/2007 | 9404-55 | Reregistration |
| SUNNILAND WEED & FEED FOR ST. AUGUSTINE LAWNS | 4/30/2007 | 9404-56 | Reregistration |
| WEED & FEED WITH 0.57% ATRAZINE FOR ST. AUGUSTINE LAWNS | 4/16/2007 | 9404-80 | Reregistration |
| WEED & FEED WITH 1.15% ATRAZINE FOR ST. AUGUSTINE LAWNS | 4/30/2007 | 9404-82 | Reregistration |
| CHEMSICO HERBICIDE GRANULES AN | 3/30/2005 | 9688-227 | Registration |
| CHEMSICO HERBICIDE CONCENTRATE 48A | 8/2/2007 | 9688-263 | Registration |
| CHEMSICO GRANULES LAH | 12/16/2008 | 9688-274 | Registration |
| ATRAZINE 90DF | 4/11/2007 | 9779-253 | Reregistration |

178. Upon information and belief, EPA provided no hearings or other public participation for these product registration actions.

179. As set forth above, EPA has discretion to influence or change registrations of pesticide products for the benefit of protected species. For example, EPA may only register or reregister a pesticide product if its use does not cause an unreasonable adverse effect on the environment. 7 U.S.C. § 136a(c)(5); 7 U.S.C. § 136a-1(g)(2)(C); 40 C.F.R. § 152.112; 40 C.F.R. § 152.113(a). EPA may also

1    change, cancel, restrict, or immediately suspend registered pesticides, pesticide labeling, or particular

2    uses at any time if it appears that the pesticide is causing an unreasonable adverse effect on the

3    environment.  7 U.S.C. § 136d(c).   Thus, EPA's product reregistration and its approvals of products

4    containing atrazine are "affirmative agency actions" subject to consultation under Section 7(a)(2) of the

5    ESA.  16 U.S.C. § 1536(a)(2).

6         180.    Plaintiffs' members live, work, visit, recreate, and otherwise enjoy areas across the

7    nation that may be impacted by products containing atrazine.  Plaintiffs' members derive professional,

8    aesthetic, spiritual, recreational, economic, and educational benefits from the endangered and

9    threatened species that live in these areas and may be impacted by products containing atrazine.  The

10   list of species that may be affected by products containing atrazine is provided in Exhibit A, and

11   Plaintiffs' members have cognizable interests in these species.

12        181.    For example, products containing atrazine may affect the arroyo toad, and a member of

13   Plaintiffs' organizations has a cognizable interest in this species based on, among other things, efforts

14   to observe the species during frequent visits to habitats where the species can be found and may be

15   affected by products containing atrazine.

16        182.    In the rule designating critical habitat for the arroyo toad, the FWS explains that

17   "pesticides and herbicides" are threats to the toads, which can be found in agricultural fields.

18   *Designation of Critical Habitat for the Arroyo Toad*, 66 Fed. Reg. 9414, 9415 (Feb. 7, 2001).  FWS

19   noted that these habitats are probably sinks where mortality exceeds reproduction over the long term

20   due to "pesticide and fertilizer applications."  FWS went on to state that the use of pesticides and

21   herbicides within or adjacent to arroyo toad habitat may cause adverse impacts.

22        183.    Plaintiffs' members engage in wildlife observation, research, photography, restoration

23   activities, and educational programs involving endangered and threatened species that may be impacted

24   by products containing atrazine.  Plaintiffs' members will continue to maintain an interest in the species

25   and areas that may be impacted by products containing atrazine in the future.

26        184.    The above-described interests of Plaintiffs and their members have been and are being

27   adversely affected by EPA's reregistration, registration and authorization of the use of atrazine, which

28   is a pesticide that may harm endangered and threatened species and their habitats.  As alleged in the

Complaint, products containing atrazine may affect the species identified in Exhibit A, as well as their designated critical habitat.

185.   EPA's failure to ensure that products containing atrazine do not impact endangered species and their habitats harms Plaintiffs' members' interests in the species and their habitats affected by atrazine.  For example, EPA's failure to consult on products containing atrazine may impair recovery of species impacted by products containing atrazine and may make it more likely that these species would suffer population declines.  Species declines and impaired recovery harm the interests that Plaintiffs' members have in the existence of these rare animals, such as by limiting their ability to observe the species.  Consultation on products containing atrazine is necessary to ensure that Plaintiffs' members' interests in the species affected by products containing atrazine are preserved and remain free from injury.

186.   EPA must register and authorize pesticide products before they can be used and has an ongoing responsibility to ensure that registered pesticides do not have unreasonable adverse effects on the environment.  Absent EPA's continuing registration and discretionary control and involvement in products containing atrazine, this pesticide could not be used and could not negatively impact the listed species named in Exhibit A and their habitats.

187.   If this Court orders EPA to engage in consultation as required, the Service would analyze the extent to which products containing atrazine affect listed species and their habitats and, if necessary, would suggest reasonable and prudent alternatives or measures to protect the species, which would protect Plaintiffs' members' interests in the species.  16 U.S.C. § 1536(a)(3).  Unless the requested relief is granted, Plaintiffs' interests will continue to be injured by EPA's failure to consult on products containing atrazine with the Service, as well as by the potential ongoing harm to the species named in Exhibit A and their habitats as a result of ongoing use of products containing atrazine.

188.   The injuries described above are actual, concrete injuries that are presently suffered by Plaintiffs and their members and will continue to occur unless relief is granted by this Court.  These injuries are directly caused by the Defendants' failure to consult with the Service to ensure that EPA's actions relating to products containing atrazine do not affect listed species and Plaintiffs' members' cognizable interests in these species.  The relief sought herein, EPA's compliance with the ESA, would

1   redress Plaintiffs' injuries.  Plaintiffs have no other adequate remedy at law, and they bring this action

2   on behalf of their adversely affected members.

3   **Bensulide**[9]

4   189.   Exhibit A contains a comprehensive, but not necessarily exhaustive, list of endangered

5   and threatened species for which bensulide is known to be harmful to the taxonomic group of that

6   species and is used in the state where that species lives.

7   190.   Bensulide is a pesticide for which the EPA has indicated that estimated environmental

8   concentrations (EECs) are likely to exceed the Levels of Concern (LOCs) for endangered species,

9   and/or may cause indirect effects on endangered species by altering habitat or food sources.

10  Specifically, EECs of bensulide are likely to exceed the LOCs for the following taxonomic groups:

11  fish, amphibians, and crustaceans.

12  191.   Bensulide is a pesticide that is "highly acutely toxic" or "very highly acutely toxic" to

13  the following taxonomic groups:  fish, amphibians, and crustaceans. These toxicity rankings are based

14  on LD50 or LC50 data (lethal dose to 50 percent of the test organisms or lethal concentration for 50

15  percent of the test organisms) that EPA possesses.

16  192.   In its 2006 RED for bensulide, EPA states: "In general, the acute levels of concern for

17  bensulide are exceeded for freshwater fish, including those for threatened or endangered species, and

18  for freshwater invertebrates."

19  193.   In June of 2008, EPA began reregistation review for bensulide.  In its February 18, 2016

20  analysis "Bensulide: Preliminary Ecological Risk Assessment for Registration Review," the EPA

21  concludes that the continuing use of bensulide would  result in direct and/or indirect risks of concern

22  for the following taxa of listed and non-listed species: Birds, reptiles, terrestrial-phase amphibians,

23  mammals, terrestrial invertebrates, terrestrial (upland and semi-aquatic) plants – monocots, terrestrial

24  (upland and semi-aquatic) plants – dicots, freshwater fish, aquatic-phase amphibians, marine/estuarine

25  fish,  freshwater invertebrates, and aquatic vascular plants.

26  194.   EPA "affirmatively authorized" the continued use of the active ingredient bensulide

27  when it issued a Reregistration Eligibility Decision in July of 2006.

28

---

[9] The current EPA Case Number and EPA PC Code for bensulide are 2035, 009801.
Third Amended and First Supplemental Complaint for Declaratory and Injunctive Relief
Case No. 3:11-cv-00293-JCS                                                                                     64

1        195.    On October 12, 2006, EPA completed product reregistration for bensulide. *See*

2 https://www.epa.gov/pesticide-reevaluation/pesticides-have-completed-product-reregistration (last

3 visited 6/26/2017).

4        196.    Active product registrations for this pesticide can be found on EPA's Pesticide Product

5 Label System, *available at* http://iaspub.epa.gov/apex/pesticides/f?p=PPLS:1 (last visited 6/26/2017).

6        197.    Specifically, EPA's online Pesticide Product Label System lists the following active

7 pesticide products containing bensulide that EPA affirmatively authorized by product reregistration or

8 new product registration since January 20, 2005[10]:

| Product Name | Date | Registration Number | Action |
|---|---|---|---|
| BETASAN 4-E SELECTIVE HERBICIDE | 8/8/2005 | 10163-196 | Reregistration |
| BETASAN 12.5 G | | 10163-198 | Reregistration |
| BETASAN 3.6G | | 10163-199 | Reregistration |
| PREFAR 4-E HERBICIDE | | 10163-200 | Reregistration |
| BETASAN 7-G SELECTIVE HERBICIDE | | 10163-204 | Reregistration |
| HANDY SPRAY BETASAN CRABGRASS PREVENTER | 8/8/2005 | 10163-205 | Reregistration |
| BETAMEC 4 PRE-EMERGENCE GRASS KILLER | | 2217-696 | Reregistration |
| PRE-SAN 7G | | 2217-778 | Reregistration |
| BETASAN 3.6G | | 2217-838 | Reregistration |
| ANDERSON'S WEEDGRASS PREVENTER | | 9198-172 | Reregistration |
| ANDERSON'S GOOSEGRASS/CRABGRASS CONTROL | 9/22/2006 | 9198-176 | Reregistration |

20        198.    Upon information and belief, EPA provided no hearings or other public participation for

21 these product registration actions.

22        199.    As set forth above, EPA has discretion to influence or change registrations of pesticide

23 products for the benefit of protected species. For example, EPA may only register or reregister a

24 pesticide product if its use does not cause an unreasonable adverse effect on the environment. 7 U.S.C.

25 § 136a(c)(5); 7 U.S.C. § 136a-1(g)(2)(C); 40 C.F.R. § 152.112; 40 C.F.R. § 152.113(a). EPA may also

---

[10] Where a date is not included, the EPA documentation of product reregistration did not appear on EPA's Pesticide Product Label System. However, final product reregistration should have occurred between the July, 2006 RED and the October 12, 2006 completion of product reregistration.

Third Amended and First Supplemental Complaint for Declaratory and Injunctive Relief

1   change, cancel, restrict, or immediately suspend registered pesticides, pesticide labeling, or particular

2   uses at any time if it appears that the pesticide is causing an unreasonable adverse effect on the

3   environment.  7 U.S.C. § 136d(c).   Thus, EPA's product reregistration and its approvals of products

4   containing bensulide constitute "affirmative agency actions" subject to consultation under Section

5   7(a)(2) of the ESA. 16 U.S.C. § 1536(a)(2).

6   200.   Plaintiffs' members live, work, visit, recreate, and otherwise enjoy areas across the

7   nation that may be impacted by products containing bensulide.  Plaintiffs' members derive

8   professional, aesthetic, spiritual, recreational, economic, and educational benefits from the endangered

9   and threatened species that live in these areas and may be impacted by products containing bensulide.

10  The list of species that may be affected by products containing bensulide is provided in Exhibit A, and

11  Plaintiffs' members have cognizable interests in these species.

12  201.   For example, products containing bensulide may affect the California tiger salamander,

13  and a member of Plaintiffs' organizations has a cognizable interest in this species based on, among

14  other things, efforts to observe the species during frequent visits to habitats where the species can be

15  found and may be affected by products containing bensulide.

16  202.   In the listing document for the Central California DPS of the California tiger salamander,

17  the U.S. Fish and Wildlife Service explains: "We believe that California tiger salamanders may be at

18  risk from the use of pesticides because salamanders occur in the vicinity of agricultural lands where

19  pesticides are often used (e.g., along the east side of the San Joaquin Valley).".."

20  203.   Plaintiffs' members engage in wildlife observation, research, photography, restoration

21  activities, and educational programs involving endangered and threatened species that may be impacted

22  by products containing bensulide.  Plaintiffs' members will continue to maintain an interest in the

23  species and areas that may be impacted by products containing bensulide in the future.

24  204.   The above-described interests of Plaintiffs and their members have been and are being

25  adversely affected by EPA's registration and authorization of the use of products containing bensulide,

26  which is a pesticide that may harm endangered and threatened species and their habitats.  As alleged in

27  the Complaint, products containing bensulide may affect the species identified in Exhibit A, as well as

28  their designated critical habitat.

205.    EPA's failure to ensure that products containing bensulide do not impact endangered species and their habitats harms Plaintiffs' members' interests in the species and their habitats affected by bensulide.  For example, EPA's failure to consult on products containing bensulide may impair recovery of species impacted by bensulide and may make it more likely that these species would suffer population declines.  Species declines and impaired recovery harm the interests that Plaintiffs' members have in the existence of these rare animals, such as by limiting their ability to observe the species.  Consultation on products containing bensulide is necessary to ensure that Plaintiffs' members' interests in the species affected by products containing bensulide are preserved and remain free from injury.

206.    EPA must register and authorize pesticide products before they can be used and has an ongoing responsibility to ensure that registered pesticides do not have unreasonable adverse effects on the environment.  Absent EPA's continuing registration and discretionary control and involvement in products containing bensulide, this pesticide could not be used and could not negatively impact the listed species named in Exhibit A and their habitats.

207.    If this Court orders EPA to engage in consultation as required, the Service would analyze the extent to which products containing bensulide affect listed species and their habitats and, if necessary, would suggest reasonable and prudent alternatives or measures to protect the species, which would protect Plaintiffs' members' interests in the species.  16 U.S.C. § 1536(a)(3).  Unless the requested relief is granted, Plaintiffs' interests will continue to be injured by EPA's failure to consult on products containing bensulide with the Service, as well as by the potential ongoing harm to the species named in Exhibit A and their habitats as a result of ongoing use of products containing bensulide.

208.    The injuries described above are actual, concrete injuries that are presently suffered by Plaintiffs and their members and will continue to occur unless relief is granted by this Court.  These injuries are directly caused by the Defendants' failure to consult with the Service to ensure that EPA's actions relating to products containing bensulide do not affect listed species and Plaintiffs' members' cognizable interests in these species.  The relief sought herein, EPA's compliance with the ESA, would

1  redress Plaintiffs' injuries.  Plaintiffs have no other adequate remedy at law, and they bring this action

2  on behalf of their adversely affected members.

3  **Brodifacoum[11]**

4      209.   Exhibit A contains a comprehensive, but not necessarily exhaustive, list of endangered

5  and threatened species for which brodifacoum is known to be harmful to the taxonomic group of that

6  species and is used in the state where that species lives.

7      210.   Brodifacoum is a pesticide for which the EPA has indicated that estimated environmental

8  concentrations (EECs) are likely to exceed the Levels of Concern (LOCs) for endangered species,

9  and/or may cause indirect effects on endangered species by altering habitat or food sources.

10 Specifically, EECs of brodifacoum are likely to exceed the LOCs for the following taxonomic groups:

11 mammals, birds, and reptiles.

12      211.   Brodifacoum is a pesticide that is "highly acutely toxic" or "very highly acutely toxic" or

13 othwerwise harmful to the following taxonomic groups:  mammals, birds, and reptiles.  These toxicity

14 rankings are based on LD50 or LC50 data (lethal dose to 50 percent of the test organisms or lethal

15 concentration for 50 percent of the test organisms) that EPA possesses.

16      212.   EPA "affirmatively authorized" the continued use of the active ingredient brodifacoum

17 when it issued a Reregistration Eligibility Decision in July of 1998.

18      213.   In its 2004 In "Potential Risks of Nine Rodenticides to Birds and Non Target Mammals:

19 a Comparative Approach," the EPA concluded that brodifacoum poses significant risks to non-target

20 wildlife, and that secondary exposure to second-generation anticoagulants is "particularly problematic"

21 due to "high toxicity and long persistence in dietary tissues."  In its 2008 Risk Mitigation Decision for

22 Ten Rodenticides, EPA states that brodifacoum poses "particularly signicant risks to non-target

23 wildlife." A 2013 California Department of Pesticide Regulation report found that data indicate that

24 anticoagulant rodenticides impact reptiles and amphibians.

25      214.   On January 1, 2015, EPA completed product reregistration for brodifacuom.  *See*

26 https://www.epa.gov/pesticide-reevaluation/pesticides-have-completed-product-reregistration (last

27 visited 6/26/2017).

28

---

[11] The current EPA Case Number and EPA PC Code for brodifacoum are 2755, 112701.

215.   Active product registrations for this pesticide can be found on EPA's Pesticide Product Label System, *available at* http://iaspub.epa.gov/apex/pesticides/f?p=PPLS:1 (last visited 6/26/2017). Specifically, the EPA's online Pesticide Product Label System lists the following pesticide products containing brodifacoum that EPA affirmatively authorized by product reregistration or new product registration since January 20, 2005:

| Product Name | Date | Registration Number | Action |
|---|---|---|---|
| TALON-G RODENTICIDE BAIT PACK MINI-PELLETS WITH BITREX | 3/29/2010 | 100-1050 | Reregistration |
| TALCON-G RODENTICIDE PELLETS WITH BITREX | 3/29/2010 | 100-1052 | Reregistration |
| HAVOC RODENTICIDE BAIT PACK PELLETS WITH BITREX | 3/29/2010 | 100-1053 | Reregistration |
| HAVOC RODENTICIDE BAIT PACK MINI-PELLETS WITH BITREX | 3/29/2010 | 100-1054 | Reregistration |
| TALON WEATHERBLOK XT | 3/29/2010 | 100-1055 | Reregistration |
| HAVOC RODENTICIDE BAIT PACK PELLETS WITH BITREX | 3/29/2010 | 100-1056 | Reregistration |
| WEATHER BLOK AG BAIT WITH BITREX | 4/15/2010 | 100-1368 | Registration |
| FORMUS ALL-WEATHER BLOX | 5/20/2009 | 12455-108 | Registration |
| Final Soft Bait | 7/26/2012 | 12455-139 | Registration |
| FINAL ALL-WEATHER BLOX | 3/31/2009 | 12455-89 | Reregistration |
| FINAL RODENTICIDE | 9/26/2007 | 12455-90 | Reregistration |
| FINAL RODENTICIDE READY-TO-USE PLACE PACS | 4/3/2009 | 12455-91 | Reregistration |
| FINAL RODENTICIDE PLACE PACS | 4/3/2009 | 12455-94 | Reregistration |
| d-CON® Farm, Ranch & Home | 5/29/2014 | 3282-112 | Registration |
| BRODIFACOUM 25W CONSERVATION | 3/18/2008 | 56228-36 | Registration |
| BRODIFACOUM 25D CONSERVATION | 3/18/2008 | 56228-37 | Registration |
| BDF CHUNKS | 4/3/2009 | 61282-27 | Reregistration |
| BDF RODENTICIDE BAIT | 6/16/2009 | 61282-28 | Reregistration |

216.   Upon information and belief, EPA provided no hearings or other public participation for these product registration actions.

217.   As set forth above, EPA has discretion to influence or change registrations of pesticide products for the benefit of protected species.  For example, EPA may only register or reregister a pesticide product if its use does not cause an unreasonable adverse effect on the environment.  7 U.S.C.

§ 136a(c)(5); 7 U.S.C. § 136a-1(g)(2)(C); 40 C.F.R. § 152.112; 40 C.F.R. § 152.113(a).   EPA may also change, cancel, restrict, or immediately suspend registered pesticides, pesticide labeling, or particular uses at any time if it appears that the pesticide is causing an unreasonable adverse effect on the environment. 7 U.S.C. § 136d(c).   Thus, EPA's product reregistration and its approvals of products containing brodifacoum are "affirmative agency actions" subject to consultation under Section 7(a)(2) of the ESA. 16 U.S.C. § 1536(a)(2).

218.   Plaintiffs' members live, work, visit, recreate, and otherwise enjoy areas across the nation that may be impacted by products containing brodifacuom.  Plaintiffs' members derive professional, aesthetic, spiritual, recreational, economic, and educational benefits from the endangered and threatened species that live in these areas and may be impacted by products containing brodifacuom.  The list of species that may be affected by products containing brodifacuom is provided in Exhibit A, and Plaintiffs' members have cognizable interests in these species.

219.   For example, products containing brodifacuom may affect the San Joaquin kit fox, and a member of Plaintiffs' organizations has a cognizable interest in this species based on, among other things, efforts to observe the species during frequent visits to habitats where the species can be found and may be affected by products containing brodifacuom.

220.   A 2013 compilation of wildlife mortality incident reports showed brodifacoum in San Joaquin kit fox, as well as death to San Joaquin kit fox, in 1987, 1999, 2000, 2002, 2003, 2007, 2011. In a 2013 Department of Pesticide Regulation report, data in California showed brodifacoum residues were found in approximately 69% of the 492 animals tested, brodifacoum was likely involved in 13% of animal mortalities. In "Potential Risks of Nine Rodenticides to Birds and Non Target Mammals: a Comparative Approach," the EPA explained: "In California, second-generation anticoagulants were detected in 71 to 84% of the 106 bobcats, mountain lions, and San Joaquin kit foxes analyzed."  In addition, in the 1993 Biological Opinion, the FWS specified reasonable and prudent alternatives to avoid jeopardy to the San Joaquin kit fox.

221.   Plaintiffs' members engage in wildlife observation, research, photography, restoration activities, and educational programs involving endangered and threatened species that may be impacted

1    by products containing brodifacuom.  Plaintiffs' members will continue to maintain an interest in the

2    species and areas that may be impacted by products containing brodifacuom in the future.

3          222.   The above-described interests of Plaintiffs and their members have been and are being

4    adversely affected by EPA's reregistration, registration and authorization of the use of products

5    containing brodifacuom, which are pesticides that may harm endangered and threatened species and

6    their habitats.  As alleged in the Complaint, products containing brodifacuom may affect the species

7    identified in Exhibit A, as well as their designated critical habitat.

8          223.   EPA's failure to ensure that products containing brodifacuom do not impact endangered

9    species and their habitats harms Plaintiffs' members' interests in the species and their habitats affected

10   by products containing brodifacuom.  For example, EPA's failure to consult on products containing

11   brodifacuom may impair recovery of species impacted by products containing brodifacuom and may

12   make it more likely that these species would suffer population declines.  Species declines and impaired

13   recovery harm the interests that Plaintiffs' members have in the existence of these rare animals, such as

14   by limiting their ability to observe the species.  Consultation on products containing brodifacuom is

15   necessary to ensure that Plaintiffs' members' interests in the species affected by products containing

16   brodifacuom are preserved and remain free from injury.

17         224.   EPA must register and authorize pesticide products before they can be used and has an

18   ongoing responsibility to ensure that registered pesticides do not have unreasonable adverse effects on

19   the environment.  Absent EPA's continuing registration and discretionary control and involvement in

20   products containing brodifacuom, these pesticides could not be used and could not be negatively

21   impacting the listed species named in Exhibit A and their habitats.

22         225.   If this Court orders EPA to engage in consultation as required, the Service would analyze

23   the extent to which the products containing brodifacuom affect listed species and their habitats and, if

24   necessary, would suggest reasonable and prudent alternatives or measures to protect the species, which

25   would protect Plaintiffs' members' interests in the species.  16 U.S.C. § 1536(a)(3).  Unless the

26   requested relief is granted, Plaintiffs' interests will continue to be injured by EPA's failure to consult

27   on products containing brodifacuom with the Service, as well as by the potential ongoing harm to the

28

1   species named in Exhibit A and their habitats as a result of ongoing use of products containing

2   brodifacuom.

3          226.   The injuries described above are actual, concrete injuries that are presently suffered by

4   Plaintiffs and their members and will continue to occur unless relief is granted by this Court.  These

5   injuries are directly caused by the Defendants' failure to consult with the Service to ensure that EPA's

6   actions relating to products containing brodifacoum do not affect listed species and Plaintiffs'

7   members' cognizable interests in these species.  The relief sought herein, EPA's compliance with the

8   ESA, would redress Plaintiffs' injuries.  Plaintiffs have no other adequate remedy at law, and they bring

9   this action on behalf of their adversely affected members.

10  **Bromadiolone**[12]

11         227.   Exhibit A contains a comprehensive, but not necessarily exhaustive, list of endangered

12  and threatened species for which bromadiolone is known to be harmful to the taxonomic group of that

13  species and is used in the state where that species lives.

14         228.   Bromadiolone is a pesticide for which the EPA has indicated that estimated

15  environmental concentrations (EECs) are likely to exceed the Levels of Concern (LOCs) for

16  endangered species, and/or may cause indirect effects on endangered species by altering habitat or food

17  sources.  Specifically, EECs of bromadiolone are likely to exceed the LOCs for the following

18  taxonomic groups:  mammals, birds, and reptiles.

19         229.   Bromadiolone is a pesticide that is "highly acutely toxic" or "very highly acutely toxic"

20  to the following taxonomic groups:  mammals, birds, and reptiles. These toxicity rankings are based on

21  LD50 or LC50 data (lethal dose to 50 percent of the test organisms or lethal concentration for 50

22  percent of the test organisms) that EPA possesses.

23         230.   EPA "affirmatively authorized" the continued use of the active ingredient bromadiolone

24  when it issued a Reregistration Eligibility Decision in July of 1998.

25         231.   On June 29, 2011, EPA completed product reregistration for bromadiolone.  *See*

26  https://www.epa.gov/pesticide-reevaluation/pesticides-have-completed-product-reregistration (last

27  visited 6/26/2017).

28
_____

[12] The current EPA Case Number and EPA PC Code for bromadiolone are 2760, 112001.

232.    Active product registrations for this pesticide can be found on EPA's Pesticide Product Label System, *available at* http://iaspub.epa.gov/apex/pesticides/f?p=PPLS:1 (last visited 6/26/2017).

233.    Specifically, the EPA's online Pesticide Product Label System lists the following pesticide products containing bromadiolone that EPA affirmatively authorized by product reregistration or new product registration since January 20, 2005:

| Product Name | Date | Registration Number | Action |
|---|---|---|---|
| CONTRAC WITH LUMITRACK | 12/21/2010 | 12455-133 | Registration |
| CONTRAC SOFT BAIT | 2/14/2017 | 12455-146 | Registration |
| CONTRAC ALL-WEATHER CAKE | 3/18/2009 | 12455-34 | Reregistration |
| CONTRAC RAT & MOUSE BAIT | 3/18/2009 | 12455-36 | Reregistration |
| CONTRAC RODENTICIDE | 4/3/2009 | 12455-69 | Reregistration |
| CONTRAC RAT AND MOUSE BAIT READY TO USE PLACE PACS | 3/18/2009 | 12455-75 | Reregistration |
| CONTRAC RODENTICIDE READY TO USE PLACE PACS | 3/18/2009 | 12455-76 | Reregistration |
| CONTRAC ALL-WEATHER BLOX | 3/18/2009 | 12455-79 | Reregistration |
| CONTRAC SUPER-SIZE BLOX | 3/18/2009 | 12455-82 | Reregistration |
| CONTRAC RODENTICIDE PLACE PACS | 3/18/2009 | 12455-86 | Reregistration |
| RAT-A-REST PELLETS | 6/29/2011 | 61282-71 | Reregistration |
| MOUSE-A-REST PELLETS | 6/29/2011 | 61282-72 | Reregistration |
| RAT/MOUSE-A-REST PLACE PACK | 6/29/2011 | 61282-73 | Reregistration |
| MAKI RODENTICIDE 1.0% DRY CONCENTRATE | 9/29/2008 | 7173-173 | Reregistration |
| MAKI PARAFFINIZED PELLETS | 7/15/2010 | 7173-187 | Reregistration |
| MAKI RAT AND MOUSE BAIT PACKS (PELLETS) | 8/17/2010 | 7173-188 | Reregistration |
| MAKI PARAFFIN BLOCKS | 8/17/2010 | 7173-189 | Reregistration |
| MAKI MINI BLOCKS | 8/17/2010 | 7173-202 | Reregistration |
| MAKI RODENTICIDE BAIT PACKS (PELLETS) | 8/17/2010 | 7173-208 | Reregistration |
| MAKI RODENTICIDE PELLETS | 8/17/2010 | 7173-212 | Reregistration |
| MAKI RODENTICIDE MINI BLOCKS | 8/17/2010 | 7173-215 | Reregistration |
| BROMADIOLONE PASTE 0901 | 8/1/2011 | 7173-297 | Registration |
| SMACKER BAIT | 8/2/2010 | 72500-19 | Registration |
| RATIMOR WAX BLOCK | 9/20/2007 | 82744-1 | Registration |
| RATIMOR SOFT BAIT | 9/20/2007 | 82744-2 | Registration |
| BRIGAND SB SOFT BAIT RODENTICIDE | 7/19/2010 | 87235-1 | Registration |

| BRIGAND WB WAX BLOCK RODENTICIDE | 8/16/2010 | 87235-2 | Registration |
|---|---|---|---|

234.    Upon information and belief, EPA provided no hearings or other public participation for these product registration actions.

235.    As set forth above, EPA has discretion to influence or change registrations of pesticide products for the benefit of protected species.  For example, EPA may only register or reregister a pesticide product if its use does not cause an unreasonable adverse effect on the environment.  7 U.S.C. § 136a(c)(5); 7 U.S.C. § 136a-1(g)(2)(C); 40 C.F.R. § 152.112; 40 C.F.R. § 152.113(a).   EPA may also change, cancel, restrict, or immediately suspend registered pesticides, pesticide labeling, or particular uses at any time if it appears that the pesticide is causing an unreasonable adverse effect on the environment.  7 U.S.C. § 136d(c).   Thus, EPA's product reregistration and its approvals of products containing bromadiolone are "affirmative agency actions" subject to consultation under Section 7(a)(2) of the ESA. 16 U.S.C. § 1536(a)(2).

236.    Plaintiffs' members live, work, visit, recreate, and otherwise enjoy areas across the nation that may be impacted by products containing bromadiolone.  Plaintiffs' members derive professional, aesthetic, spiritual, recreational, economic, and educational benefits from the endangered and threatened species that live in these areas and may be impacted by products containing bromadiolone.  The list of species that may be affected by products containing bromadiolone is provided in Exhibit A, and Plaintiffs' members have cognizable interests in these species.

237.    For example, products containing bromadiolone may affect the San Joaquin kit fox, and a member of Plaintiffs' organizations has a cognizable interest in this species based on, among other things, efforts to observe the species during frequent visits to habitats where the species can be found and may be affected by products containing bromadiolone.

238.    In "Potential Risks of Nine Rodenticides to Birds and Non Target Mammals: a Comparative Approach," the EPA explained: "In California, second-generation anticoagulants were detected in 71 to 84% of the 106 bobcats, mountain lions, and San Joaquin kit foxes analyzed."  In addition, in the 1993 Biological Opinion, the FWS explained that the kit fox may be exposed to bromadiolone because it occupies urban and quasi-urban settings.  The FWS specified reasonable and prudent alternatives to avoid jeopardy to the San Joaquin kit fox.

239.   Plaintiffs' members engage in wildlife observation, research, photography, restoration activities, and educational programs involving endangered and threatened species that may be impacted by products containing bromadiolone.  Plaintiffs' members will continue to maintain an interest in the species and areas that may be impacted by products containing bromadiolone in the future.

240.   The above-described interests of Plaintiffs and their members have been and are being adversely affected by EPA's reregistration, registration and authorization of the use of products containing bromadiolone, which is a pesticide that may harm endangered and threatened species and their habitats.  As alleged in the Complaint, products containing bromadiolone may affect the species identified in Exhibit A, as well as their designated critical habitat.

241.   EPA's failure to ensure that products containing bromadiolone do not impact endangered species and their habitats harms Plaintiffs' members' interests in the species and their habitats affected by bromadiolone.  For example, EPA's failure to consult on products containing bromadiolone may impair recovery of species impacted by products containing bromadiolone and may make it more likely that these species would suffer population declines.  Species declines and impaired recovery harm the interests that Plaintiffs' members have in the existence of these rare animals, such as by limiting their ability to observe the species.  Consultation on products containing bromadiolone is necessary to ensure that Plaintiffs' members' interests in the species affected by products containing bromadiolone are preserved and remain free from injury.

242.   EPA must register and authorize pesticide productss before they can be used and has an ongoing responsibility to ensure that registered pesticides do not have unreasonable adverse effects on the environment.  Absent EPA's continuing registration and discretionary control and involvement in products containing bromadiolone, this pesticide could not be used and could not negatively impact the listed species named in Exhibit A and their habitats.

243.   If this Court orders EPA to engage in consultation as required, the Service would analyze the extent to which products containing bromadiolone affect listed species and their habitats and, if necessary, would suggest reasonable and prudent alternatives or measures to protect the species, which would protect Plaintiffs' members' interests in the species.  16 U.S.C. § 1536(a)(3).  Unless the requested relief is granted, Plaintiffs' interests will continue to be injured by EPA's failure to consult

1    on products containing bromadiolone with the Service, as well as by the potential ongoing harm to the

2    species named in Exhibit A and their habitats as a result of ongoing use of products containing

3    bromadiolone.

4          244.    The injuries described above are actual, concrete injuries that are presently suffered by

5    Plaintiffs and their members and will continue to occur unless relief is granted by this Court.  These

6    injuries are directly caused by the Defendants' failure to consult with the Service to ensure that EPA's

7    actions relating to products containing bromadiolone do not affect listed species and Plaintiffs'

8    members' cognizable interests in these species.  The relief sought herein, EPA's compliance with the

9    ESA, would redress Plaintiffs' injuries.  Plaintiffs have no other adequate remedy at law, and they bring

10   this action on behalf of their adversely affected members.

11   **Captan**[13]

12         245.    Exhibit A contains a comprehensive, but not necessarily exhaustive, list of endangered

13   and threatened species for which captan is known to be harmful to the taxonomic group of that species

14   and is used in the state where that species lives.

15         246.    Captan is a pesticide for which the EPA has indicated that estimated environmental

16   concentrations (EECs) are likely to exceed the Levels of Concern (LOCs) for endangered species,

17   and/or may cause indirect effects on endangered species by altering habitat or food sources.

18   Specifically, EECs of captan are likely to exceed the LOCs for the following taxonomic groups:

19   mammals, birds, fish, amphibians, mollusks, crustaceans, and reptiles.

20         247.    Captan is a pesticide that is "highly acutely toxic" or "very highly acutely toxic" to the

21   following taxonomic groups:  fish, amphibians, and crustaceans. These toxicity rankings are based on

22   LD50 or LC50 data (lethal dose to 50 percent of the test organisms or lethal concentration for 50

23   percent of the test organisms) that EPA possesses.

24         248.    EPA "affirmatively authorized" the continued use of the active ingredient captan when it

25   issued a Reregistration Eligibility Decision in November of 2004.

26

27

28

---

[13] The current EPA Case Number and EPA PC Code for captan are 0120, 081301.
Third Amended and First Supplemental Complaint for Declaratory and Injunctive Relief

249.    On September 20, 2007, EPA completed product reregistration for captan.  *See* https://www.epa.gov/pesticide-reevaluation/pesticides-have-completed-product-reregistration (last visited 6/26/2017).

250.    Active product registrations for this pesticide can be found on EPA's Pesticide Product Label System, *available at* http://iaspub.epa.gov/apex/pesticides/f?p=PPLS:1 (last visited 6/26/2017).

251.    Specifically, the EPA's online Pesticide Product Label System lists the following pesticide products containing captan that EPA affirmatively authorized by product reregistration or new product registration since January 20, 2005[14]:

| Product Name | Date | Registration Number | Action |
|---|---|---|---|
| MERPAN CAPTAN TECHNICAL | 7/8/2005 | 11678-1 | Reregistration |
| DREXEL CAPTAN 4L FUNGICIDE | 7/30/2007 | 19713-156 | Reregistration |
| DREXEL CAPTAN 4 FLOWABLE SEED PROTECTANT | 8/31/2007 | 19713-161 | Reregistration |
| DREXEL CAPTAN 50W | 3/29/2007 | 19713-235 | Reregistration |
| DREXEL CAPTAN TECHNICAL | 8/16/2007 | 19713-258 | Reregistration |
| DREXEL CAPTAN-75 SEED PROTECTANT | 8/31/2007 | 19713-260 | Reregistration |
| DREXEL CAPTAN 50/10 | 8/17/2007 | 19713-261 | Reregistration |
| KAPTAN 50W | 8/31/2007 | 19713-268 | Reregistration |
| DREXEL CAPTAN 80 EDF | 7/9/2007 | 19713-405 | Reregistration |
| CAPTAN TECHNICAL TWO | 2/22/2007 | 19713-500 | Reregistration |
| DREXEL CAPTAN TECHNICAL 97% | 8/18/2011 | 19713-631 | Registration |
| DCC CAPTAN 4L | 10/23/2012 | 19713-644 | Registration |
| DCC CAPTAN 4 FLOWABLE | 10/23/2012 | 19713-645 | Registration |
| DREXEL CAPTAN 50W FUNGICIDE | 10/23/2012 | 19713-646 | Registration |
| CAPTAN-75 SP | 1/3/2013 | 19713-648 | Registration |
| DREXEL CAPTAN 80 WDG | 5/14/2013 | 19713-652 | Registration |
| FOUR WAY PEANUT SEED TREATMENT FUNGICIDE | 6/10/2005 | 264-998 | Registration |
| CAPTAN 4000 FLOWABLE SEED PROTECTANT | 3/1/2007 | 2935-484 | Reregistration |
| CLEAN CROP CAPTAN 7.5 DUST FUNGICIDE | 3/1/2007 | 2935-536 | Reregistration |

---

[14] Where a date is not included, the EPA documentation of product reregistration did not appear on EPA's Pesticide Product Label System. However, product reregistration should have occurred between the November, 2004 RED and the September 20, 2007 completion of product reregistration.

| | | | |
|---|---|---|---|
| CAPTAN 80 WDG | 4/10/2013 | 34704-1075 | Registration |
| CAPTAN 4L | 4/15/2013 | 34704-1076 | Registration |
| CAPTAN 50-W FUNGICIDE | 2/9/2007 | 34704-427 | Reregistration |
| CAPTAN 50 + MOLY-LUBE PLANTER BOX SEED TREATER | 2/5/2007 | 34704-676 | Reregistration |
| DYNA-SHIELD CAPTAN FUNGICIDE | 7/13/2006 | 34704-935 | Registration |
| ENHANCE | 12/15/2008 | 400-554 | Reregistration |
| HI-MOLY/CAPTAN-D | 7/30/2007 | 400-557 | Reregistration |
| BEAN GUARD/ALLEGIANCE | 7/12/2010 | 400-561 | Reregistration |
| ENHANCE AW | 8/19/2008 | 400-567 | Registration |
| ENHANCE PLUS | 4/21/2009 | 400-568 | Registration |
| CAPTAN TECHNICAL | 2/9/2007 | 400-583 | Reregistration |
| BONIDE A COMPLETE FRUIT TREE SPRAY | 6/5/2009 | 4-122 | Reregistration |
| CAPTAN TECHNICAL | 11/17/2011 | 42750-230 | Registration |
| CAPTAN 80 DF | 11/17/2011 | 42750-231 | Registration |
| CAPTAN 50% WP | 1/30/2012 | 42750-235 | Registration |
| CAPTAN 38.75% FL | 2/7/2012 | 42750-236 | Registration |
| CAPTAN 4L ST | 7/9/2013 | 42750-253 | Registration |
| BONIDE CAPTAN WETTABLE | | 4-459 | Reregistration |
| CAPTAN 50-WP | 9/19/2007 | 66222-1 | Reregistration |
| CAPTAN GOLD 4L | 1/30/2014 | 66222-257 | Registration |
| CAPTAN 80WDG | 10/12/2006 | 66222-58 | Reregistration |
| CAPTAN 80W | 7/27/2006 | 66330-209 | Registration |
| CAPTAN 50 WETTABLE POWDER | 3/1/2007 | 66330-234 | Reregistration |
| CAPTAN 4 FLOWABLE | 3/1/2007 | 66330-235 | Reregistration |
| CAPTAN 4 FLOWABLE SEED PROTECTANT | 3/2/2007 | 66330-238 | Reregistration |
| CAPTEC 4L CAPTAN FLOWABLE FUNGICIDE | 7/10/2007 | 66330-239 | Reregistration |
| CAPTAN 4 FLOWABLE | 12/4/2006 | 66330-24 | Reregistration |
| CAPTAN 50 WP | 12/4/2006 | 66330-26 | Reregistration |
| CAPTAN GARDEN SPRAY | 8/16/2007 | 66330-27 | Registration |
| CAPTAN 80 WDG | 12/4/2006 | 66330-29 | Reregistration |
| UPI CAPTAN 50 WP | 5/22/2012 | 70506-292 | Registration |
| UPI CAPTAN 80 WDG | 5/22/2012 | 70506-293 | Registration |
| CAPTAN 80 WDG | 8/5/2013 | 70506-299 | Registration |
| CAPTAN 4L | 6/14/2011 | 85678-13 | Registration |
| CAPTAN 80 WDG | 6/14/2011 | 85678-14 | Registration |
| CAPTAN TECHNICAL II | 1/3/2013 | 85678-28 | Registration |
| CAPTAN TECHNICAL | 12/14/2010 | 85678-8 | Registration |

1   252.   Upon information and belief, EPA provided no hearings or other public participation for

2   these product registration actions.

3   253.   As set forth above, EPA has discretion to influence or change registrations of pesticide

4   products for the benefit of protected species.  For example, EPA may only register or reregister a

5   pesticide product if its use does not cause an unreasonable adverse effect on the environment.  7 U.S.C.

6   § 136a(c)(5); 7 U.S.C. § 136a-1(g)(2)(C); 40 C.F.R. § 152.112; 40 C.F.R. § 152.113(a).   EPA may also

7   change, cancel, restrict, or immediately suspend registered pesticides, pesticide labeling, or particular

8   uses at any time if it appears that the pesticide is causing an unreasonable adverse effect on the

9   environment.  7 U.S.C. § 136d(c).   Thus, EPA's product reregistrations and its approvals of products

10   containing captan are "affirmative agency actions" subject to consultation under Section 7(a)(2) of the

11   ESA. 16 U.S.C. § 1536(a)(2).

12   254.   Plaintiffs' members live, work, visit, recreate, and otherwise enjoy areas across the

13   nation that may be impacted by products containing captan.  Plaintiffs' members derive professional,

14   aesthetic, spiritual, recreational, economic, and educational benefits from the endangered and

15   threatened species that live in these areas and may be impacted by products containing captan.  The list

16   of species that may be affected by products containing captan is provided in Exhibit A, and Plaintiffs'

17   members have cognizable interests in these species.

18   255.   For example, products containing captan may affect the Cape Fear shiner, and a member

19   of Plaintiffs' organizations has a cognizable interest in this species based on, among other things,

20   efforts to observe the species during frequent visits to habitats where the species can be found and may

21   be affected by products containing captan.

22   256.   As the FWS explained in its Fact Sheet for the Cape Fear shiner: "The Cape Fear shiner

23   is sensitive to chemicals found in fertilizers, pesticides, and other sources that pollute water.  These and

24   other pollutants include water runoff from farms, municipalities and businesses and their associated

25   infrastructure."

26   257.   Plaintiffs' members engage in wildlife observation, research, photography, restoration

27   activities, and educational programs involving endangered and threatened species that may be impacted

28

1    by products containing captan.  Plaintiffs' members will continue to maintain an interest in the species

2    and areas that may be impacted by products containing captan in the future.

3           258.    The above-described interests of Plaintiffs and their members have been and are being

4    adversely affected by EPA's reregistration, registration and authorization of the use of products

5    containing captan, which is a pesticide that may harm endangered and threatened species and their

6    habitats.  As alleged in the Complaint, products containing captan may affect the species identified in

7    Exhibit A, as well as their designated critical habitat.

8           259.    EPA's failure to ensure that products containing captan do not impact endangered

9    species and their habitats harms Plaintiffs' members' interests in the species and their habitats affected

10   by products containing captan.  For example, EPA's failure to consult on products containing captan

11   may impair recovery of species impacted by products containing captan and may make it more likely

12   that these species would suffer population declines.  Species declines and impaired recovery harm the

13   interests that Plaintiffs' members have in the existence of these rare animals, such as by limiting their

14   ability to observe the species.  Consultation on products containing captan is necessary to ensure that

15   Plaintiffs' members' interests in the species affected by products containing captan are preserved and

16   remain free from injury.

17          260.    EPA must register and authorize pesticide products before they can be used and has an

18   ongoing responsibility to ensure that registered pesticides do not have unreasonable adverse effects on

19   the environment.  Absent EPA's continuing registration and discretionary control and involvement in

20   products containing captan, this pesticide could not be used and could not negatively impact the listed

21   species named in Exhibit A and their habitats.

22          261.    If this Court orders EPA to engage in consultation as required, the Service would analyze

23   the extent to which products containing captan affect listed species and their habitats and, if necessary,

24   would suggest reasonable and prudent alternatives or measures to protect the species, which would

25   protect Plaintiffs' members' interests in the species.  16 U.S.C. § 1536(a)(3).  Unless the requested

26   relief is granted, Plaintiffs' interests will continue to be injured by EPA's failure to consult on products

27   containing captan with the Service, as well as by the potential ongoing harm to the species named in

28   Exhibit A and their habitats as a result of ongoing use of products containing captan.

262.    The injuries described above are actual, concrete injuries that are presently suffered by Plaintiffs and their members and will continue to occur unless relief is granted by this Court.  These injuries are directly caused by the Defendants' failure to consult with the Service to ensure that EPA's actions relating to products containing captan do not affect listed species and Plaintiffs' members' cognizable interests in these species.  The relief sought herein, EPA's compliance with the ESA, would redress Plaintiffs' injuries.  Plaintiffs have no other adequate remedy at law, and they bring this action on behalf of their adversely affected members.

**Carbaryl**[15]

263.    Exhibit A contains a comprehensive, but not necessarily exhaustive, list of endangered and threatened species for which carbaryl is known to be harmful to the taxonomic group of that species and is used in the state where that species lives.

264.    Carbaryl is a known endocrine disrupter.  As explained above, endocrine disrupters have effects on the reproductive and immune systems capable of compromising populations of endangered species.

265.    Carbaryl is a pesticide for which the EPA has indicated that estimated environmental concentrations (EECs) are likely to exceed the Levels of Concern (LOCs) for endangered species, and/or may cause indirect effects on endangered species by altering habitat or food sources. Specifically, EECs of carbaryl are likely to exceed the LOCs for the following taxonomic groups: mammals, birds, fish, amphibians, mollusks, crustaceans, insects, and reptiles.

266.    Carbaryl is a pesticide that is "highly acutely toxic" or "very highly acutely toxic" to the following taxonomic groups: fish, amphibians, mollusks, crustaceans, and insects. These toxicity rankings are based on LD50 or LC50 data (lethal dose to 50 percent of the test organisms or lethal concentration for 50 percent of the test organisms) that EPA possesses.

267.    The USGS has detected carbaryl in dozens of waterways across the nation, as documented in reports on its nationwide water quality surveys. As shown in Exhibit B, some of these watersheds overlap the range of species that may be affected by this pesticide.

---

[15] The current EPA Case Number and EPA PC Code for carbaryl are 0080, 056801.

268.    EPA "affirmatively authorized" the continued use of the active ingredient carbaryl when it issued a Reregistration Eligibility Decision in September of 2007.

269.    On October 28, 2009, EPA completed product reregistration for carbaryl.  *See* https://www.epa.gov/pesticide-reevaluation/pesticides-have-completed-product-registration (last visited 6/26/2017).

270.    Active product registrations for this pesticide can be found on EPA's Pesticide Product Label System, *available at* http://iaspub.epa.gov/apex/pesticides/f?p=PPLS:1 (last visited 6/26/2017).

271.    Specifically, the EPA's online Pesticide Product Label System lists the following products containing carbaryl that EPA affirmatively authorized by product reregistration or new product registration since January 20, 2005[16]:

| Product Name | Date | Registration Number | Action |
|---|---|---|---|
| LESCO 6.3% SEVIN(R) BRAND GRANULAR CARBARYL INSECTICIDE | 12/8/2009 | 10404-61 | Reregistration |
| LESCO SEVIN 4% PLUS FERTILIZER | 8/28/2009 | 10404-62 | Reregistration |
| DREXEL CARBARYL 10D (10% SEVIN DUST) | | 19713-212 | Reregistration |
| DREXEL CARBARYL 5D (5% SEVIN DUST) | | 19713-213 | Reregistration |
| DREXEL CARBARYL 80 DUST BASE | 7/16/2009 | 19713-244 | Reregistration |
| DREXEL CARBARYL 85 SPRAYABLE | 10/15/2009 | 19713-363 | Reregistration |
| DREXEL CARBARYL 4L | 9/30/2009 | 19713-49 | Reregistration |
| DREXEL CARBARYL 80S | 10/9/2009 | 19713-50 | Reregistration |
| DREXEL CARBARYL 10D | | 19713-53 | Reregistration |
| DREXEL CARBARYL 5% BAIT | 9/28/2010 | 19713-627 | Registration |
| DREXEL CARBARYL 2% BAIT GRANULE | 4/18/2011 | 19713-630 | Registration |
| DREXEL CARBARYL TECHNICAL | 7/16/2009 | 19713-75 | Reregistration |
| DREXEL CARBARYL 95 SPRAYABLE | | 19713-84 | Reregistration |
| DREXEL CARBARYL 2L | 9/15/2009 | 19713-89 | Reregistration |
| SEVIN BRAND 80% DUST BASE | 7/16/2009 | 264-328 | Reregistration |

---

[16] Where a date is not included, the EPA documentation of product reregistration did not appear on EPA's Pesticide Product Label System. However, product reregistration should have occurred between the September, 2007RED and the October 28, 2009 completion of product reregistration.

Third Amended and First Supplemental Complaint for Declaratory and Injunctive Relief
Case No. 3:11-cv-00293-JCS                                                                            82

| | | | |
|---|---|---|---|
| SEVIN BRAND RP2 CARBARYL INSECTICIDE | 7/31/2009 | 264-334 | Reregistration |
| SEVIN BRAND RP4 CARBARYL INSECTICIDE | 9/1/2009 | 264-335 | Reregistration |
| SEVIN BRAND GRANULAR CARBARYL INSECTICIDE | 9/8/2009 | 264-429 | Reregistration |
| SEVIN 5 BAIT | 9/8/2009 | 2935-366 | Reregistration |
| 2% SEVIN BAIT | 3/13/2012 | 2935-556 | Registration |
| CARBARYL CUTWORM BAIT | 9/8/2009 | 34704-1021 | Reregistration |
| 10% SEVIN GRANULES | 9/15/2009 | 34704-289 | Reregistration |
| CARBARYL 4L | 9/22/2009 | 34704-447 | Reregistration |
| APICIDE | 7/31/2009 | 36272-14 | Reregistration |
| BONIDE A COMPLETE FRUIT TREE SPRAY | 6/5/2009 | 4-122 | Reregistration |
| GRUBTOX LAWN GRUB AND INSECT CONTROL | | 4-142 | Reregistration |
| BONIDE SEVIN 5% DUST INSECTICIDE | | 4-143 | Reregistration |
| R & M GARDEN DUST 5% | 7/31/2009 | 432-1209 | Reregistration |
| R & M GARDEN DUST 10% | 7/31/2009 | 432-1210 | Reregistration |
| CP CARBARYL INSECTICIDE SPRAY – RTU | 6/25/2009 | 432-1211 | Reregistration |
| SEVIN GRUB KILLER GRANULES (2% SEVIN) | 6/25/2009 | 432-1212 | Reregistration |
| SEVIN GRANULES (1% SEVIN) ANT, FLEA, TICK & GRUB KILLER | 7/3/2009 | 432-1213 | Reregistration |
| SEVIN 80 WSP CARBARYL INSECTICIDE | 9/30/2009 | 432-1226 | Reregistration |
| SEVIN SL CARBARYL INSECTICIDE | 6/16/2009 | 432-1227 | Reregistration |
| SEVIN 4MC MANUFACTURING USE CONCENTRATE INSECTICIDE | 10/13/2009 | 432-1511 | Registration |
| SEVIN BRAND CARBARYL TECHNICAL | 3/27/2012 | 432-1525 | Registration |
| SEVIN BRAND GRANULAR CARBARYL INSECTICIDE | 7/31/2009 | 432-885 | Reregistration |
| SEVIN BRAND 97.5% INSECTICIDE | 6/24/2009 | 432-982 | Reregistration |
| SEVIN GARDEN DUST | | 4-413 | Reregistration |
| COPPER DRAGON TOMATO & VEGETABLE DUST | | 4-458 | Reregistration |
| BONIDE VEGETABLE-FLORAL DUST | 2/26/2009 | 4-474 | Registration |
| SEVIN BRAND 85 SPRAYABLE CARBARYL INSECTICIDE | 10/9/2009 | 61842-33 | Reregistration |

| | | | |
|---|---|---|---|
| SEVIN 80 SOLUPAK | 9/25/2009 | 61842-34 | Reregistration |
| SEVIN BRAND TECHNICAL CARBARYL INSECTICIDE | 7/16/2009 | 61842-35 | Reregistration |
| CARBARYL 97.5% MANUFACTURING USE CONCENTRATE INSECTICIDE | 7/16/2009 | 61842-36 | Reregistration |
| SEVIN XLR PLUS CARBARYL INSECTICIDE | 9/16/2009 | 61842-37 | Reregistration |
| SEVIN BRAND 4F CARBARYL INSECTICIDE | 9/16/2009 | 61842-38 | Reregistration |
| SEVIN BRAND 80 WSP CARBARYL INSECTICIDE | 2/22/2013 | 61842-39 | Reregistration |
| GET-A-BUG SNAIL, SLUG & INSECT KILLER | 5/23/2011 | 71096-18 | Reregistration |
| AGRISEL CARBAIT 5 | 2/17/2009 | 72159-13 | Registration |
| HI-YIELD 10% CARBARYL GARDEN DUST | | 7401-166 | Reregistration |
| FERTI-LOME LIQUID CARBARYL HOME GARDEN SPRAY | 9/15/2009 | 7401-38 | Reregistration |
| FERTI LOME GARDEN DUST | 8/28/2009 | 7401-69 | Reregistration |
| LILLY/MILLER GRASSHOPPER & EARWIG BAIT | 6/19/2009 | 802-493 | Reregistration |
| CORRY'S SLUG, SNAIL & INSECT KILLER | 6/17/2011 | 8119-5 | Reregistration |
| SA-50 BRAND SEVIN 5% DUST | 7/31/2009 | 829-128 | Reregistration |
| CUTWORM & CRICKET BAIT | 8/20/2009 | 829-285 | Reregistration |
| SHAW'S SEVIN 430 TURF INSECT GRANULES + FERTILIZER | 5/21/2009 | 8378-31 | Reregistration |
| SHAW'S SEVIN 143 TURF INSECT GRANULES + FERTILIZER | 5/21/2009 | 8378-36 | Reregistration |
| THE ANDERSONS 8.0% GRANULAR CARBARYL | 9/25/2009 | 9198-146 | Reregistration |
| THE ANDERSONS BICARB LAWN INSECT KILLER GRANULES | 11/6/2006 | 9198-234 | Registration |
| THE ANDERSONS BICARB INSECTICIDE + FERTILIZER | 11/6/2006 | 9198-235 | Registration |

272.   Upon information and belief, EPA provided no hearings or other public participation for these product registration actions.

273.   As set forth above, EPA has discretion to influence or change registrations of pesticide products for the benefit of protected species.  For example, EPA may only register or reregister a pesticide product if its use does not cause an unreasonable adverse effect on the environment.  7 U.S.C.

§ 136a(c)(5); 7 U.S.C. § 136a-1(g)(2)(C); 40 C.F.R. § 152.112; 40 C.F.R. § 152.113(a).   EPA may also change, cancel, restrict, or immediately suspend registered pesticides, pesticide labeling, or particular uses at any time if it appears that the pesticide is causing an unreasonable adverse effect on the environment. 7 U.S.C. § 136d(c).   Thus, EPA's product reregistration and its approvals of products containing carbaryl are "affirmative agency actions" subject to consultation under Section 7(a)(2) of the ESA. 16 U.S.C. § 1536(a)(2).

274.    Plaintiffs' members live, work, visit, recreate, and otherwise enjoy areas across the nation that may be impacted by products containing carbaryl.  Plaintiffs' members derive professional, aesthetic, spiritual, recreational, economic, and educational benefits from the endangered and threatened species that live in these areas and may be impacted by products containing carbaryl.  The list of species that may be affected by products containing carbaryl is provided in Exhibit A, and Plaintiffs' members have cognizable interests in these species.

275.    For example, products containing carbaryl may affect the mountain yellow-legged frog, and a member of Plaintiffs' organizations has a cognizable interest in this species based on, among other things, his efforts to observe the species during frequent visits to habitats where the species can be found and may be affected by products containing carbaryl.

276.    Peer-reviewed scientific studies have implicated pesticides in the decline of mountain yellow-legged frogs.  *See, e.g.*, Carlos Davidson, et al., *Spatial Tests of the Pesticide Drift, Habitat Destruction, UV-B, and Climate Change Hypotheses for California Amphibian Declines*, Conservation Biology (6):1588-1601 (2002).

277.    Plaintiffs' members engage in wildlife observation, research, photography, restoration activities, and educational programs involving endangered and threatened species that may be impacted by products containing carbaryl.  Plaintiffs' members will continue to maintain an interest in the species and areas that may be impacted by products containing carbaryl in the future.

278.    The above-described interests of Plaintiffs and their members have been and are being adversely affected by EPA's reregistration, registration and authorization of the use of products containing carbaryl, which is a pesticide that may harm endangered and threatened species and their

1    habitats.  As alleged in the Complaint, products containing carbaryl may affect the species identified in

2    Exhibit A, as well as their designated critical habitat.

3        279.   EPA's failure to ensure that products containing carbaryl do not impact endangered

4    species and their habitats harms Plaintiffs' members' interests in the species and their habitats affected

5    by products containing carbaryl.  For example, EPA's failure to consult on products containing carbaryl

6    may impair recovery of species impacted by products containing carbaryl and may make it more likely

7    that these species would suffer population declines.  Species declines and impaired recovery harm the

8    interests that Plaintiffs' members have in the existence of these rare animals, such as by limiting their

9    ability to observe the species.  Consultation on products containing carbaryl is necessary to ensure that

10   Plaintiffs' members' interests in the species affected by carbaryl are preserved and remain free from

11   injury.

12       280.   EPA must register and authorize pesticide products before they can be used and has an

13   ongoing responsibility to ensure that registered pesticides do not have unreasonable adverse effects on

14   the environment.  Absent EPA's continuing registration and discretionary control and involvement in

15   products containing carbaryl, this pesticide could not be used and could not negatively impact the listed

16   species named in Exhibit A and their habitats.

17       281.   If this Court orders EPA to engage in consultation as required, the Service would analyze

18   the extent to which products containing carbaryl affect listed species and their habitats and, if

19   necessary, would suggest reasonable and prudent alternatives or measures to protect the species, which

20   would protect Plaintiffs' members' interests in the species.  16 U.S.C. § 1536(a)(3).  Unless the

21   requested relief is granted, Plaintiffs' interests will continue to be injured by EPA's failure to consult

22   on products containing carbaryl with the Service, as well as by the potential ongoing harm to the

23   species named in Exhibit A and their habitats as a result of ongoing use of products containing carbaryl.

24       282.   The injuries described above are actual, concrete injuries that are presently suffered by

25   Plaintiffs and their members and will continue to occur unless relief is granted by this Court.  These

26   injuries are directly caused by the Defendants' failure to consult with the Service to ensure that EPA's

27   actions relating to products containing carbaryl do not affect listed species and Plaintiffs' members'

28   cognizable interests in these species.  The relief sought herein, EPA's compliance with the ESA, would

1    redress Plaintiffs' injuries.  Plaintiffs have no other adequate remedy at law, and they bring this action

2    on behalf of their adversely affected members.

3    **Chlorothalonil**[17]

4        283.    Exhibit A contains a comprehensive, but not necessarily exhaustive, list of endangered

5    and threatened species for which chlorothalonil is known to be harmful to the taxonomic group of that

6    species and is used in the state where that species lives.

7        284.    Chlorothalonil is a known endocrine disrupter.  As explained above, endocrine disrupters

8    have effects on the reproductive and immune systems capable of compromising populations of

9    endangered species.

10        285.    Chlorothalonil is a pesticide for which the EPA has indicated that estimated

11    environmental concentrations (EECs) are likely to exceed the Levels of Concern (LOCs) for

12    endangered species, and/or may cause indirect effects on endangered species by altering habitat or food

13    sources.  Specifically, EECs of chlorothalonil are likely to exceed the LOCs for the following

14    taxonomic groups:  mammals, birds, fish, amphibians, mollusks, crustaceans, and reptiles.

15        286.    Chlorothalonil is a pesticide that is "highly acutely toxic" or "very highly acutely toxic"

16    to the following taxonomic groups: fish, amphibians, and crustaceans.  These toxicity rankings are

17    based on LD50 or LC50 data (lethal dose to 50 percent of the test organisms or lethal concentration for

18    50 percent of the test organisms) that EPA possesses.

19        287.    The USGS has detected chlorothalonil in dozens of waterways across the nation, as

20    documented in reports on its nationwide water quality surveys. As shown in Exhibit B, some of these

21    watersheds overlap the range of species that may be affected by this pesticide.

22        288.    In its 1999 RED for chlorothalonil, EPA states: "The registered uses of chlorothalonil

23    may adversely affect endangered species of birds (chronically), mammals (chronically), freshwater fish

24    (acutely and chronically), freshwater invertebrates (acutely) and aquatic plants. Mollusks which may be

25    at risk include freshwater mussels (a phylum that includes numerous freshwater endangered species)."

26        289.    EPA "affirmatively authorized" the continued use of the active ingredient chlorothalonil

27    when it issued a Reregistration Eligibility Decision in April of 1999.

28

---

[17] The current EPA Case Number and EPA PC Code for chlorothalonil are 0097, 081901.

290.    On March 11, 2009, EPA completed product reregistration for chlorothalonil.  *See* https://www.epa.gov/pesticide-reevaluation/pesticides-have-completed-product-reregistration (last visited 6/26/2017).

291.    Active product registrations for this pesticide can be found on EPA's Pesticide Product Label System, *available at* http://iaspub.epa.gov/apex/pesticides/f?p=PPLS:1 (last visited 6/26/2017).

292.    Specifically, the EPA's online Pesticide Product Label System lists the following pesticide products containing chlorothalonil that EPA affirmatively authorized by product reregistration or new product registration since January 20, 2005:

| Product Name | Date | Registration Number | Action |
|---|---|---|---|
| REVUS OPTI | 2/20/2008 | 100-1279 | Registration |
| RENOWN FUNGICIDE | 1/29/2009 | 100-1315 | Registration |
| CONCERT II | 5/21/2009 | 100-1347 | Registration |
| DACONIL ACTION | 4/12/2011 | 100-1364 | Registration |
| CHLOROTHALONIL FLOWABLE 720 | 1/20/2011 | 100-1394 | Registration |
| CHLOROTHALONIL 82.5 SDG | 1/20/2011 | 100-1395 | Registration |
| BRAVO TOP | 10/31/2012 | 100-1441 | Registration |
| Orondis Opti | 9/7/2016 | 100-1591 | Registration |
| SPECTRO 90 WDG | 9/24/2008 | 1001-72 | Reregistration |
| CULVER TURF AND ORNAMENTAL FUNGICIDE | 2/23/2009 | 1001-85 | Reregistration |
| Zing! | 12/10/2014 | 10163-331 | Reregistration |
| STA-BRITE D | 5/25/2005 | 1022-546 | Reregistration |
| DENSIL C40 ANTIMICROBIAL | 2/12/2016 | 1258-1367 | Registration |
| CHLOROTHALONIL 720 | 12/21/2016 | 19713-690 | Registration |
| NUFARM CTN 82.5 | 2/3/2009 | 228-601 | Registration |
| NUFARM TM + CTN SPC 66.6 WDG FUNGICIDE | 12/7/2006 | 228-638 | Registration |
| TM + CTN E-PRO 90 WDG FUNGICIDE | 12/7/2006 | 228-639 | Registration |
| NUFARM CTN SPC 720 FUNGICIDE | 4/18/2007 | 228-647 | Registration |
| ORTHO DACONIL 2787 MULTIPURPOSE FUNGICIDE | 9/6/2007 | 239-2522 | Reregistration |
| KRD-1501 | 8/5/2016 | 3008-125 | Registration |
| INITIATE ZN | 3/16/2010 | 34704-1050 | Registration |
| APPLAUSE DF FUNGICIDE | 3/30/2005 | 34704-874 | Registration |
| CHLOROTHALONIL 90DF | 4/29/2005 | 34704-878 | Registration |
| INITIATE 720 FLOWABLE FUNGICIDE | 8/4/2005 | 34704-881 | Registration |
| CHLOROTHALONIL 825 AGRICULTURAL FUNGICIDE | 4/13/2006 | 34704-914 | Registration |

| | | | |
|---|---|---|---|
| ENSIGN 82.5% | 11/21/2006 | 34704-965 | Registration |
| ENSIGN 720 FLOWABLE FUNGICIDE | 11/21/2006 | 34704-966 | Registration |
| DuPont Treoris Fungicide | 2/29/2012 | 352-833 | Registration |
| Tetraconazole + Chlorothalonil | 8/31/2016 | 35915-18 | Registration |
| VITALONIL | 8/13/2008 | 42519-30 | Registration |
| CATAMARAN | 8/8/2008 | 42519-31 | Registration |
| CONSYST WDG | 9/29/2008 | 48234-7 | Reregistration |
| BRAVO ZN | 9/19/2005 | 50534-204 | Reregistration |
| DACONIL ZN FLOWABLE FUNGICIDE | 2/20/2007 | 50534-211 | Reregistration |
| CHLOROTHALONIL FB | 7/2/2008 | 50534-229 | Registration |
| CHLOROTHALONIL FLOWABLE 2.88 MANUFACTURING USE PRODUCT | 8/12/2005 | 50534-33 | Reregistration |
| BRAVO 500 | 11/10/2005 | 50534-8 | Reregistration |
| CONCORDE P-40 | 3/10/2006 | 53883-186 | Registration |
| CONCORDE P-960 | 6/14/2010 | 53883-187 | Registration |
| CONCORDE P-40M | 7/11/2006 | 53883-192 | Registration |
| QUALI-PRO ENCLAVE 5.3F | 11/16/2012 | 53883-309 | Registration |
| QUALI-PRO CHLOROTHALONIL 720 SFT | 10/10/2012 | 53883-310 | Registration |
| QUALI-PRO CHLOROTHALONIL DF | 10/25/2012 | 53883-313 | Registration |
| QUALI-PRO CHLOROTHALONIL 500 ZN | 10/23/2012 | 53883-317 | Registration |
| THE ANDERSONS 3-WAY SNOW MOLD FUNGICIDE | 9/27/2005 | 5481-614 | Registration |
| OMNI BRAND CHLOROTHALONIL | 11/10/2016 | 5905-601 | Registration |
| HMO-1601 FUNGICIDE | 4/12/2017 | 5905-602 | Registration |
| ECHO RTU | 3/7/2007 | 60063-30 | Registration |
| ECHO ULTIMATE ETQ | 1/12/2009 | 60063-36 | Registration |
| ADVAN ECHO 6F ETQ | 1/12/2009 | 60063-37 | Registration |
| ECHO ZN ETQ | 6/23/2011 | 60063-44 | Registration |
| ECHO 378/CYMOXANIL 50 | 1/10/2012 | 60063-47 | Registration |
| MUSCLE ADV | 7/3/2012 | 60063-49 | Registration |
| E-SCAPE TURF & ORNAMENTAL FUNGICIDE | 7/3/2012 | 60063-50 | Registration |
| ECHO 459/CYMOXANIL 61 | 3/7/2013 | 60063-53 | Registration |
| CTL + IPRO TURF AND ORNAMENTAL FUNGICIDE | 6/8/2015 | 60063-55 | Registration |
| ARIUS ADV FUNGICIDE | 6/17/2016 | 60063-57 | Registration |
| ANTIBLU MC-30 | 9/14/2009 | 62190-30 | Registration |
| ARCH CTL F500 | 1/13/2012 | 62190-36 | Registration |
| DISARM C FUNGICIDE | 6/17/2008 | 66330-379 | Registration |
| ACTICIDE PM FLOWABLE | 12/4/2007 | 67071-15 | Reregistration |
| PEREGRINE | 9/19/2006 | 70506-254 | Registration |

| PEGASUS 6L | 8/30/2007 | 70506-262 | Registration |
|---|---|---|---|
| PEGASUS 82.5 DF | 12/18/2008 | 70506-271 | Registration |
| PEGASUS DFX | 7/22/2008 | 70506-272 | Registration |
| PEGASUS HPX | 7/22/2008 | 70506-273 | Registration |
| ELIXIR FUNGICIDE | 6/27/2013 | 70506-298 | Registration |
| NAI-301 4 SE FUNGICIDE | 10/13/2005 | 71711-24 | Registration |
| CHLOROSEL PRO 720 FUNGICIDE | 2/18/2009 | 72159-5 | Registration |
| CLORTRAM F-54 | 11/30/2006 | 72304-8 | Registration |
| Encartis Fungicide | 11/1/2012 | 7969-348 | Registration |
| M14360D | 12/15/2016 | 80289-22 | Registration |
| MAZINGA FUNGICIDE | 2/19/2016 | 83070-12 | Registration |
| ARMORTECH CLT 825 DF | 6/1/2009 | 86064-1 | Registration |
| ARMOR TECH CLT 720 FL | 6/1/2009 | 86064-2 | Registration |
| CHLOROTHALONIL 82.5DF SELECT | 12/17/2012 | 89442-6 | Registration |
| CHLOROTHALONIL 720 SELECT | 12/17/2012 | 89442-9 | Registration |
| THE ANDERSONS 3-WAY SNOW MOLD FUNGICIDE | 9/27/2005 | 9198-227 | Registration |
| CHLOROTHALONIL TECHNICAL | 6/13/2007 | 92044-1 | Registration |
| CHLOROTHALONIL 720SC | 6/13/2007 | 92044-2 | Registration |
| CHLOROTHALONIL 82.5 WDG | 8/23/2008 | 92044-3 | Registration |

293.    Upon information and belief, EPA provided no hearings or other public participation for these product registration actions.

294.    As set forth above, EPA has discretion to influence or change registrations of pesticide products for the benefit of protected species.  For example, EPA may only register or reregister a pesticide product if its use does not cause an unreasonable adverse effect on the environment.  7 U.S.C. § 136a(c)(5); 7 U.S.C. § 136a-1(g)(2)(C); 40 C.F.R. § 152.112; 40 C.F.R. § 152.113(a).   EPA may also change, cancel, restrict, or immediately suspend registered pesticides, pesticide labeling, or particular uses at any time if it appears that the pesticide is causing an unreasonable adverse effect on the environment.  7 U.S.C. § 136d(c).   Thus, EPA's product reregistration and its approvals of products containing chlorothalonil are "affirmative agency actions" subject to consultation under Section 7(a)(2) of the ESA. 16 U.S.C. § 1536(a)(2).

295.    Plaintiffs' members live, work, visit, recreate, and otherwise enjoy areas across the nation that may be impacted by products containing chlorothalonil.  Plaintiffs' members derive professional, aesthetic, spiritual, recreational, economic, and educational benefits from the endangered and threatened species that live in these areas and may be impacted by products containing

1  chlorothalonil.  The list of species that may be affected by products containing chlorothalonil is

2  provided in Exhibit A, and Plaintiffs' members have cognizable interests in these species.

3  296.  For example, products containing chlorothalonil may affect the blue shiner, and a

4  member of Plaintiffs' organizations has a cognizable interest in this species based on, among other

5  things, his efforts to observe the species during frequent visits to habitats where the species can be

6  found and may be affected by products containing chlorothalonil.

7  297.  In the recovery plan for the blue shiner, FWS explains: "Any actions that would likely

8  affect water quality or quantity could affect the blue shiner. These include: timber cutting, road, bridge,

9  or dam construction, instream gravel mining, and pesticide spraying."

10  298.  Plaintiffs' members engage in wildlife observation, research, photography, restoration

11  activities, and educational programs involving endangered and threatened species that may be impacted

12  by products containing chlorothalonil.  Plaintiffs' members will continue to maintain an interest in the

13  species and areas that may be impacted by products containing chlorothalonil in the future.

14  299.  The above-described interests of Plaintiffs and their members have been and are being

15  adversely affected by EPA's reregistration, registration and authorization of the use of products

16  containing chlorothalonil, which is a pesticide that may harm endangered and threatened species and

17  their habitats.  As alleged in the Complaint, products containing chlorothalonil may affect the species

18  identified in Exhibit A, as well as their designated critical habitat.

19  300.  EPA's failure to ensure that products containing chlorothalonil do not impact endangered

20  species and their habitats harms Plaintiffs' members' interests in the species and their habitats affected

21  by products containing chlorothalonil.  For example, EPA's failure to consult on products containing

22  chlorothalonil may impair recovery of species impacted by products containing chlorothalonil and may

23  make it more likely that these species would suffer population declines.  Species declines and impaired

24  recovery harm the interests that Plaintiffs' members have in the existence of these rare animals, such as

25  by limiting their ability to observe the species.  Consultation on products containing chlorothalonil is

26  necessary to ensure that Plaintiffs' members' interests in the species affected by products containing

27  chlorothalonil are preserved and remain free from injury.

28

301.    EPA must register and authorize pesticide products before they can be used and has an ongoing responsibility to ensure that registered pesticides do not have unreasonable adverse effects on the environment.  Absent EPA's continuing registration and discretionary control and involvement in products containing chlorothalonil, this pesticide could not be used and could not negatively impact the listed species named in Exhibit A and their habitats.

302.    If this Court orders EPA to engage in consultation as required, the Service would analyze the extent to which products containing chlorothalonil affect listed species and their habitats and, if necessary, would suggest reasonable and prudent alternatives or measures to protect the species, which would protect Plaintiffs' members' interests in the species.  16 U.S.C. § 1536(a)(3).  Unless the requested relief is granted, Plaintiffs' interests will continue to be injured by EPA's failure to consult on products containing chlorothalonil with the Service, as well as by the potential ongoing harm to the species named in Exhibit A and their habitats as a result of ongoing use of products containing chlorothalonil.

303.    The injuries described above are actual, concrete injuries that are presently suffered by Plaintiffs and their members and will continue to occur unless relief is granted by this Court.  These injuries are directly caused by the Defendants' failure to consult with the Service to ensure that EPA's actions relating to products containing chlorothalonil do not affect listed species and Plaintiffs' members' cognizable interests in these species.  The relief sought herein, EPA's compliance with the ESA, would redress Plaintiffs' injuries.  Plaintiffs have no other adequate remedy at law, and they bring this action on behalf of their adversely affected members.

**Chlorpyrifos**[18]

304.    Exhibit A contains a comprehensive, but not necessarily exhaustive, list of endangered and threatened species for which chlorpyrifos is known to be harmful to the taxonomic group of that species and is used in the state where that species lives.

305.    Chlorpyrifos is a known endocrine disrupter.  As explained above, endocrine disrupters have effects on the reproductive and immune systems capable of compromising populations of endangered species.

---

[18] The current EPA Case Number and EPA PC Code for chlorpyrifos are 0100, 059101.
Third Amended and First Supplemental Complaint for Declaratory and Injunctive Relief
Case No. 3:11-cv-00293-JCS                                                                 92

306.    Chlorpyrifos is a pesticide for which the EPA has indicated that estimated environmental concentrations (EECs) are likely to exceed the Levels of Concern (LOCs) for endangered species, and/or may cause indirect effects on endangered species by altering habitat or food sources. Specifically, EECs of chlorpyrifos are likely to exceed the LOCs for the following taxonomic groups: mammals, birds, fish, amphibians, mollusks, crustaceans, insects, and reptiles.

307.    Chlorpyrifos is a pesticide that is "highly acutely toxic" or "very highly acutely toxic" to the following taxonomic groups:  mammals, birds, fish, amphibians, mollusks, crustaceans, insects, and reptiles.  These toxicity rankings are based on LD50 or LC50 data (lethal dose to 50 percent of the test organisms or lethal concentration for 50 percent of the test organisms) that EPA possesses.

308.    The USGS has detected chlorpyrifos in dozens of waterways across the nation, as documented in reports on its nationwide water quality surveys. As shown in Exhibit B, some of these watersheds overlap the range of species that may be affected by this pesticide.

309.    EPA "affirmatively authorized" the continued use of the active ingredient chlorpyrifos when it issued a Reregistration Eligibility Decision in July of 2006.

310.    On January 10, 2008, EPA completed product reregistration for chlorpyrifos.  *See* https://www.epa.gov/pesticide-reevaluation/pesticides-have-completed-product-reregistration (last visited 6/26/2017).

311.    Active product registrations for this pesticide can be found on EPA's Pesticide Product Label System, *available at* http://iaspub.epa.gov/apex/pesticides/f?p=PPLS:1 (last visited 6/26/2017).

312.    Specifically, the EPA's online Pesticide Product Label System lists the following pesticide products containing chlorpyrifos that EPA affirmatively authorized by product reregistration or new product registration since January 20, 2005:

| Product Name | Date | Registration Number | Action |
|---|---|---|---|
| LESCO 1% DURSBAN GRANULAR BAIT | 9/11/2007 | 10404-67 | Reregistration |
| PYRINEX CHLORPYRIFOS INSECTICIDE | 12/19/2007 | 11678-58 | Reregistration |
| RAINBOW FIRE ANT KILLER | 12/28/2007 | 13283-14 | Reregistration |
| FIRE ANT KILLER GRANULES | 12/12/2008 | 13283-37 | Registration |
| TUNDRA SUPREME | 9/16/2010 | 1381-243 | Registration |
| CHLORPYRIFOS 4 WOOD | 1/14/2008 | 19713-300 | Reregistration |

| | | | |
|---|---|---|---|
| DREXEL CHLORPYRIFOS 15G | 1/8/2008 | 19713-505 | Reregistration |
| DREXEL CHLORPYRIFOS 4EC | 12/17/2007 | 19713-517 | Reregistration |
| DREXEL CHLORPYRIFOS CONCENTRATE | 3/30/2007 | 19713-518 | Reregistration |
| DREXEL CHLORPYRIFOS 4E-AG | 8/27/2007 | 19713-520 | Reregistration |
| DREXEL CHLORPYRIFOS 15GR | 1/10/2008 | 19713-521 | Reregistration |
| DREXEL CHLOR-PY-REX CHLORPYRIFOS INSECTICIDE | 1/7/2008 | 19713-527 | Reregistration |
| DREXEL CHLORPYRIFOS TECHNICAL | 3/1/2005 | 19713-573 | Registration |
| DREXEL CHLORPYRIFOS 99% TECHNICAL | 3/1/2005 | 19713-575 | Registration |
| DREXEL CHLORPYRIFOS 4E-AG2 | 11/6/2006 | 19713-599 | Registration |
| DREXEL LAMBDAFOS INSECTICIDE | 11/10/2015 | 19713-671 | Registration |
| NUFOS 4E | 1/24/2008 | 279-3538 | Reregistration |
| BOLTON INSECTICIDE | 1/19/2012 | 279-3581 | Registration |
| F9047-2 EC INSECTICIDE | 1/21/2011 | 279-9545 | Registration |
| GAT CHLORPYRIFOS CS | 12/23/2009 | 279-9572 | Registration |
| CHLORPYRIFOS 42 CS | 4/4/2013 | 279-9574 | Registration |
| CHLORPYRIFOS TECHNICAL | 12/19/2007 | 33658-17 | Reregistration |
| PILOT 4E CHLORPYRIFOS AGRICULTURAL INSECTICIDE | 1/15/2008 | 33658-26 | Reregistration |
| PILOT 15G CHLORPYRIFOS AGRICULTURAL INSECTICIDE | 12/31/2007 | 33658-27 | Reregistration |
| WARHAWK CLEARFORM | 5/22/2013 | 34704-1077 | Reregistration |
| MATCH-UP INSECTICIDE | 1/27/2014 | 34704-1086 | Reregistration |
| WARRIOR INSECTICIDE CATTLE EAR TAGS | 12/28/2006 | 39039-6 | Reregistration |
| INSECTA | 12/12/2007 | 45600-1 | Reregistration |
| CHLORPYRIFOS TECHNICAL | 12/28/2007 | 4787-40 | Reregistration |
| NUFOS TECHNICAL | 12/26/2007 | 4787-41 | Reregistration |
| CHLORPYRIFOS TECHNICAL II | 9/29/2011 | 4787-62 | Registration |
| WHITMIRE PT 275 DUR-O-CAP MICROENCAPSULATED CHLORPYRIFOS | 2/6/2008 | 499-367 | Reregistration |
| WHITMIRE PT 1920 TOTAL RELEASE INSECTICIDE | 5/10/2007 | 499-405 | Reregistration |
| DURATION PT 275 MC MICROENCAPSULATED DURSBAN LIQUID CONCENTRATE | 2/7/2008 | 499-419 | Reregistration |
| CSI 1.5 ULV | 12/3/2008 | 53883-251 | Registration |
| CSI CHLORPYRIFOS CS | 12/23/2009 | 53883-264 | Registration |
| CSI CHLORPYRIFOS 42 CS INSECTICIDE | 4/4/2013 | 53883-331 | Registration |

| | | | |
|---|---|---|---|
| CSI CHLORPYRIFOS CS | 4/30/2015 | 53883-355 | Registration |
| CSI 16-150 Chlorpyrifos 42 | 2/10/2017 | 53883-394 | Registration |
| LORSBAN 15G SMARTBOX | 3/10/2006 | 5481-525 | Registration |
| LORSBAN-4E | 11/20/2007 | 62719-220 | Reregistration |
| LORSBAN 50W IN WATER SOLUBLE PACKETS | 12/28/2007 | 62719-221 | Reregistration |
| DURSBAN 4E-N | 12/31/2007 | 62719-254 | Reregistration |
| LORSBAN 75WG | 12/19/2007 | 62719-301 | Reregistration |
| LORSBAN 15G | 12/10/2007 | 62719-34 | Reregistration |
| DURSBAN F INSECTICIDAL CHEMICAL | 11/2/2007 | 62719-353 | Reregistration |
| DURSBAN R INSECTICIDAL CHEMICAL | 11/1/2007 | 62719-355 | Reregistration |
| LORSBAN ADVANCED | 6/6/2008 | 62719-591 | Registration |
| Cobalt Advanced | 5/5/2010 | 62719-615 | Registration |
| DURSBAN 50W IN WATER SOLUBLE PACKETS | 12/18/2007 | 62719-72 | Reregistration |
| LOCK-ON | 12/31/2007 | 62719-79 | Reregistration |
| CHLORPYRIFOS 15G | 12/14/2007 | 66222-18 | Reregistration |
| CHLORPYRIFOS 4E AG | 12/19/2007 | 66222-19 | Reregistration |
| VULCAN | 11/30/2011 | 66222-233 | Registration |
| MANA 24301 | 4/28/2014 | 66222-259 | Registration |
| PYRINEX 4 EC | 12/14/2007 | 66222-3 | Reregistration |
| CHLORPYRIFOS 1% MOLE CRICKET BAIT | 12/4/2007 | 829-291 | Reregistration |
| CHLORPYRIFOS 2.5% | 12/4/2007 | 829-292 | Reregistration |
| CPF 4E | 12/15/2009 | 83222-20 | Registration |
| CPF 15G | 3/4/2011 | 83222-34 | Registration |
| MOSQUITOMIST TWO U.L.V. | 8/7/2007 | 8329-18 | Reregistration |
| MOSQUITOMIST 1.5 U.L.V. | 8/7/2007 | 8329-20 | Reregistration |
| MOSQUITOMIST ONE U.L.V. | 8/7/2007 | 8329-24 | Reregistration |
| ULV MOSQUITO MASTER 412 | 11/25/2009 | 8329-36 | Reregistration |
| ULV MOSQUITO MASTER 2+6 | 4/19/2007 | 8329-73 | Registration |
| CHLORPYRIFOS 4 EC | 1/21/2011 | 84229-20 | Registration |
| CHLORPYRIFOS 4E AG | 1/8/2008 | 84229-25 | Reregistration |
| CHLORPYRIFOS 15G | 12/31/2007 | 84229-26 | Reregistration |
| CHLORPYRIFOS 61.5% MUP | 12/27/2007 | 84229-27 | Reregistration |
| BIFENCHLOR | 9/13/2011 | 86363-11 | Registration |
| LIBERTY CHLORPYRIFOS BIFENTHRIN | 12/19/2012 | 89168-20 | Registration |
| LIBERTY CHLORPYRIFOS 4E | 4/3/2013 | 89168-24 | Registration |
| LIBERTY GRANULAR INSECTICIDE | 4/19/2016 | 89168-47 | Registration |
| EQUIL PYRIFOS | 10/2/2012 | 89459-69 | Registration |

| EQUIL CHLORPYRIFOS ULV 1 | 4/10/2013 | 89459-72 | Registration |
|---|---|---|---|
| EQUIL CHLORPYRIFOS ULV 2 | 4/10/2013 | 89459-73 | Registration |
| ANDERSONS GOLF PRODUCTS INSECTICIDE III | 12/14/2007 | 9198-167 | Reregistration |
| CHEMSICO ROACH CONTROL | 12/11/2007 | 9688-67 | Reregistration |

313.   Upon information and belief, EPA provided no hearings or other public participation for these product registration actions.

314.   As set forth above, EPA has discretion to influence or change registrations of pesticide products for the benefit of protected species.  For example, EPA may only register or reregister a pesticide product if its use does not cause an unreasonable adverse effect on the environment.  7 U.S.C. § 136a(c)(5); 7 U.S.C. § 136a-1(g)(2)(C); 40 C.F.R. § 152.112; 40 C.F.R. § 152.113(a).   EPA may also change, cancel, restrict, or immediately suspend registered pesticides, pesticide labeling, or particular uses at any time if it appears that the pesticide is causing an unreasonable adverse effect on the environment.  7 U.S.C. § 136d(c).   Thus, EPA's product reregistration and its approvals of products containing chlorpyrifos are "affirmative agency actions" subject to consultation under Section 7(a)(2) of the ESA. 16 U.S.C. § 1536(a)(2).

315.   Plaintiffs' members live, work, visit, recreate, and otherwise enjoy areas across the nation that may be impacted by products containing chlorpyrifos.  Plaintiffs' members derive professional, aesthetic, spiritual, recreational, economic, and educational benefits from the endangered and threatened species that live in these areas and may be impacted by products containing chlorpyrifos.  The list of species that may be affected by products containing chlorpyrifos is provided in Exhibit A, and Plaintiffs' members have cognizable interests in these species.

316.   For example, products containing chlorpyrifos may affect the American burying beetle, and a member of Plaintiffs' organizations has a cognizable interest in this species based on, among other things, his efforts to observe the species during frequent visits to habitats where the species can be found and may be affected by products containing chlorpyrifos.

317.   In its factsheet for the American burying beetle, FWS explains: "Widespread use of pesticides may have caused local populations to disappear."

318.   Plaintiffs' members engage in wildlife observation, research, photography, restoration activities, and educational programs involving endangered and threatened species that may be impacted

1   by products containing chlorpyrifos.  Plaintiffs' members will continue to maintain an interest in the

2   species and areas that may be impacted by products containing chlorpyrifos in the future.

3   319.   The above-described interests of Plaintiffs and their members have been and are being

4   adversely affected by EPA's reregistration, registration and authorization of the use of products

5   containing chlorpyrifos, which is a pesticide that may harm endangered and threatened species and their

6   habitats.  As alleged in the Complaint, products containing chlorpyrifos may affect the species

7   identified in Exhibit A, as well as their designated critical habitat.

8   320.   EPA's failure to ensure that products containing chlorpyrifos do not impact endangered

9   species and their habitats harms Plaintiffs' members' interests in the species and their habitats affected

10   by products containing chlorpyrifos.  For example, EPA's failure to consult on products containing

11   chlorpyrifos may impair recovery of species impacted by products containing chlorpyrifos and may

12   make it more likely that these species would suffer population declines.  Species declines and impaired

13   recovery harm the interests that Plaintiffs' members have in the existence of these rare animals, such as

14   by limiting their ability to observe the species.  Consultation on products containing chlorpyrifos is

15   necessary to ensure that Plaintiffs' members' interests in the species affected by products containing

16   chlorpyrifos are preserved and remain free from injury.

17   321.   EPA must register and authorize pesticide products before they can be used and has an

18   ongoing responsibility to ensure that registered pesticides do not have unreasonable adverse effects on

19   the environment.  Absent EPA's continuing registration and discretionary control and involvement in

20   products containing chlorpyrifos, this pesticide could not be used and could not negatively impact the

21   listed species named in Exhibit A and their habitats.

22   322.   If this Court orders EPA to engage in consultation as required, the Service would analyze

23   the extent to which products containing chlorpyrifos affect listed species and their habitats and, if

24   necessary, would suggest reasonable and prudent alternatives or measures to protect the species, which

25   would protect Plaintiffs' members' interests in the species.  16 U.S.C. § 1536(a)(3).  Unless the

26   requested relief is granted, Plaintiffs' interests will continue to be injured by EPA's failure to consult

27   on products containing chlorpyrifos with the Service, as well as by the potential ongoing harm to the

28

1   species named in Exhibit A and their habitats as a result of ongoing use of products containing

2   chlorpyrifos.

3        323.   The injuries described above are actual, concrete injuries that are presently suffered by

4   Plaintiffs and their members and will continue to occur unless relief is granted by this Court.  These

5   injuries are directly caused by the Defendants' failure to consult with the Service to ensure that EPA's

6   actions relating to products containing chlorpyrifos do not affect listed species and Plaintiffs' members'

7   cognizable interests in these species.  The relief sought herein, EPA's compliance with the ESA, would

8   redress Plaintiffs' injuries.  Plaintiffs have no other adequate remedy at law, and they bring this action

9   on behalf of their adversely affected members.

10  **Diazinon**[19]

11       324.   Exhibit A contains a comprehensive, but not necessarily exhaustive, list of endangered

12  and threatened species for which diazinon is known to be harmful to the taxonomic group of that

13  species and is used in the state where that species lives.

14       325.   Diazinon is a known endocrine disrupter.  As explained above, endocrine disrupters have

15  effects on the reproductive and immune systems capable of compromising populations of endangered

16  species.

17       326.   Diazinon is a pesticide for which the EPA has indicated that estimated environmental

18  concentrations (EECs) are likely to exceed the Levels of Concern (LOCs) for endangered species,

19  and/or may cause indirect effects on endangered species by altering habitat or food sources.

20  Specifically, EECs of diazinon are likely to exceed the LOCs for the following taxonomic groups:

21  birds, fish, amphibians, mollusks, crustaceans, and reptiles.

22       327.   Diazinon is a pesticide that is "highly acutely toxic" or "very highly acutely toxic" to the

23  following taxonomic groups: mammals, birds, fish, amphibians, mollusks, crustaceans, insects, and

24  reptiles.  These toxicity rankings are based on LD50 or LC50 data (lethal dose to 50 percent of the test

25  organisms or lethal concentration for 50 percent of the test organisms) that EPA possesses.

26

27

28

---

[19] The current EPA Case Number and EPA PC Code for diazinon are 0238, 057801.

328.    The USGS has detected diazinon in dozens of waterways across the nation, as documented in reports on its nationwide water quality surveys. As shown in Exhibit B, some of these watersheds overlap the range of species that may be affected by this pesticide.

329.    EPA "affirmatively authorized" the continued use of the active ingredient diazinon when it issued a Reregistration Eligibility Decision in July of 2006.

330.    On July 16, 2007, EPA completed product reregistration for diazinon.  *See* https://www.epa.gov/pesticide-reevaluation/pesticides-have-completed-product-reregistration (last visited 6/26/2017).

331.    Active product registrations for this pesticide can be found on EPA's Pesticide Product Label System, *available at* http://iaspub.epa.gov/apex/pesticides/f?p=PPLS:1 (last visited 6/26/2017). EPA provided no hearings or other public participation for these product registration actions.

332.    Specifically, EPA's online Pesticide Product Label System lists the followingpesticide products containing diazinon that EPA affirmatively authorized by product reregistration or new product registration since January 20, 2005:

| Product Name | Date | Registration Number | Action |
| --- | --- | --- | --- |
| DIAZOL DIAZINON TECHNICAL STABILIZED AG | 12/7/2006 | 11678-61 | Reregistration |
| DIAZOL(DIAZINON) STABILIZED OIL CONCENTRATE AG | 12/7/2006 | 11678-63 | Reregistration |
| DREXEL DIAZINON 50WP INSECTICIDE | 12/7/2006 | 19713-492 | Reregistration |
| DREXEL DIAZINON TECHNICAL AG | 12/7/2006 | 19713-523 | Reregistration |
| DREXEL DIAZINON INSECTICIDE | 12/7/2006 | 19713-91 | Reregistration |
| DIAZINON AG500 INSECTICIDE | 1/17/2007 | 5905-248 | Reregistration |
| DIAZINON 50W | 1/36/2007 | 66222-10 | Reregistration |
| DIAZINON AG600 | 12/7/2006 | 66222-103 | Reregistration |
| DIAZINON AG500 | 1/3/2007 | 66222-9 | Reregistration |

333.    Upon information and belief, EPA provided no hearings or other public participation for these product registration actions.

334.    As set forth above, EPA has discretion to influence or change registrations of pesticide products for the benefit of protected species.  For example, EPA may only register or reregister a pesticide product if its use does not cause an unreasonable adverse effect on the environment.  7 U.S.C.

§ 136a(c)(5); 7 U.S.C. § 136a-1(g)(2)(C); 40 C.F.R. § 152.112; 40 C.F.R. § 152.113(a).   EPA may also change, cancel, restrict, or immediately suspend registered pesticides, pesticide labeling, or particular uses at any time if it appears that the pesticide is causing an unreasonable adverse effect on the environment. 7 U.S.C. § 136d(c).   Thus, EPA's product reregistration and its approvals of products containing diazinon constitute "affirmative agency actions" subject to consultation under Section 7(a)(2) of the ESA. 16 U.S.C. § 1536(a)(2).

335.   Plaintiffs' members live, work, visit, recreate, and otherwise enjoy areas across the nation that may be impacted by products containing diazinon.  Plaintiffs' members derive professional, aesthetic, spiritual, recreational, economic, and educational benefits from the endangered and threatened species that live in these areas and may be impacted by products containing diazinon.  The list of species that may be affected by products containing diazinon is provided in Exhibit A, and Plaintiffs' members have cognizable interests in these species.

336.   For example, products containing diazinon may affect the southwestern willow flycatcher, and a member of Plaintiffs' organizations has a cognizable interest in this species based on, among other things, his efforts to observe the species during frequent visits to habitats where the species can be found and may be affected by products containing diazinon.

337.   In the rule listing the southwestern willow flycatcher, FWS explains: "The southwestern willow flycatcher's preference for, and former abundance in, floodplain areas that are now largely agricultural may indicate a potential threat from pesticides. Where flycatcher populations remain, they are sometimes in proximity to agricultural areas, with the associated pesticides and herbicides. Without appropriate precautions, these agents may potentially affect the southwestern willow flycatcher through direct toxicity or effects on their insect food base." *Final Rule Determining Endangered Status for the Southwestern Willow Flycatcher*, 60 Fed. Reg. 10694, 10713 (Feb. 27, 1995).

338.   Plaintiffs' members engage in wildlife observation, research, photography, restoration activities, and educational programs involving endangered and threatened species that may be impacted by products containing diazinon.  Plaintiffs' members will continue to maintain an interest in the species and areas that may be impacted by products containing diazinon in the future.

339.    The above-described interests of Plaintiffs and their members have been and are being adversely affected by EPA's reregistration, registration and authorization of the use of products containing diazinon, which is a pesticide that may harm endangered and threatened species and their habitats.  As alleged in the Complaint, products containing diazinon may affect the species identified in Exhibit A, as well as their designated critical habitat.

340.    EPA's failure to ensure that products containing diazinon do not impact endangered species and their habitats harms Plaintiffs' members' interests in the species and their habitats affected by products containing diazinon.  For example, EPA's failure to consult on products containing diazinon may impair recovery of species impacted by products containing diazinon and may make it more likely that these species would suffer population declines.  Species declines and impaired recovery harm the interests that Plaintiffs' members have in the existence of these rare animals, such as by limiting their ability to observe the species.  Consultation on products containing diazinon is necessary to ensure that Plaintiffs' members' interests in the species affected by products containing diazinon are preserved and remain free from injury.

341.    EPA must register and authorize pesticide products before they can be used and has an ongoing responsibility to ensure that registered pesticides do not have unreasonable adverse effects on the environment.  Absent EPA's continuing registration and discretionary control and involvement in products containing diazinon, this pesticide could not be used and could not negatively impact the listed species named in Exhibit A and their habitats.

342.    If this Court orders EPA to engage in consultation as required, the Service would analyze the extent to which products containing diazinon affect listed species and their habitats and, if necessary, would suggest reasonable and prudent alternatives or measures to protect the species, which would protect Plaintiffs' members' interests in the species.  16 U.S.C. § 1536(a)(3).  Unless the requested relief is granted, Plaintiffs' interests will continue to be injured by EPA's failure to consult on products containing diazinon with the Service, as well as by the potential ongoing harm to the species named in Exhibit A and their habitats as a result of ongoing use of products containing diazinon.

1    343.    The injuries described above are actual, concrete injuries that are presently suffered by

2    Plaintiffs and their members and will continue to occur unless relief is granted by this Court.  These

3    injuries are directly caused by the Defendants' failure to consult with the Service to ensure that EPA's

4    actions relating to products containing diazinon do not affect listed species and Plaintiffs' members'

5    cognizable interests in these species.  The relief sought herein, EPA's compliance with the ESA, would

6    redress Plaintiffs' injuries.  Plaintiffs have no other adequate remedy at law, and they bring this action

7    on behalf of their adversely affected members.

8    **Dicamba and Salts**[20]

9    344.    Exhibit A contains a comprehensive, but not necessarily exhaustive, list of endangered

10    and threatened species for which dicamba and salts are known to be harmful to the taxonomic group of

11    that species and is used in the state where that species lives.

12    345.    Dicamba and salts are pesticides for which the EPA has indicated that estimated

13    environmental concentrations (EECs) are likely to exceed the Levels of Concern (LOCs) for

14    endangered species, and/or may cause indirect effects on endangered species by altering habitat or food

15    sources.  Specifically, EECs of dicamba and salts are likely to exceed the LOCs for the following

16    taxonomic groups:  mammals, birds, and reptiles.

17    346.    The dicamba and salts are pesticides that are "highly acutely toxic" or "very highly

18    acutely toxic" to the following taxonomic groups:  fish, amphibians, and crustaceans.  These toxicity

19    rankings are based on LD50 or LC50 data (lethal dose to 50 percent of the test organisms or lethal

20    concentration for 50 percent of the test organisms) that EPA possesses.

21    347.    The USGS has detected dicamba and salts in dozens of waterways across the nation, as

22    documented in reports on its nationwide water quality surveys. As shown in Exhibit B, some of these

23    watersheds overlap the range of species that may be affected by this pesticide.

24

25

26

27

28

---

[20] Dicamba and salts refers to the following, which also shows the current EPA Case Number and EPA PC Code: dicamba (0065, 029801); dicamba, diethanolamine salt (0065, 029803); dicamba, diglycolamine salt (0065, 128931); dicamba, dimethylamine salt (0065, 029802); dicamba, isopropylamine salt (0065, 128944); dicamba, potassium salt (0065, 129043), dicamba, sodium salt (0065, 029806).

348.    EPA "affirmatively authorized" the continued use of the active ingredient dicamba and salts when it issued a Reregistration Eligibility Decision in June of 2006.

349.    On September 27, 2011, EPA completed product reregistration for the dicamba and salts. *See* https://www.epa.gov/pesticide-reevaluation/pesticides-have-completed-product-reregistration (last visited 6/26/2017).

350.    Active product registrations for this pesticide can be found on EPA's Pesticide Product Label System, *available at* http://iaspub.epa.gov/apex/pesticides/f?p=PPLS:1 (last visited 6/26/2017).

351.    Specifically, the EPA's online Pesticide Product Label System lists the following pesticide products containing dicamba and salts that EPA affirmatively authorized by product reregistration or new product registration since January 20, 2005:

| Product Name | Date | Registration Number | Action |
|---|---|---|---|
| PULSAR HERBICIDE | 6/29/2009 | 100-1343 | Registration |
| Diquat/Fluazifop-p-butyl/Dicamba ME Concentrate | 7/20/2009 | 100-1344 | Registration |
| Dicamba ME Ready To Use | 7/16/2009 | 100-1345 | Registration |
| Dicamba MUP | 10/28/2015 | 100-1567 | Registration |
| VANQUISH HERBICIDE | 7/26/2011 | 100-884 | Reregistration |
| NORTHSTAR HERBICIDE | 7/15/2010 | 100-923 | Reregistration |
| RAVE HERBICIDE | 8/20/2009 | 100-927 | Reregistration |
| LESCO THREE-WAY SELECTIVE HERBICIDE | 2/10/2009 | 10404-43 | Reregistration |
| LESCO THREE-WAY BENTGRASS SELECTIVE HERBICIDE | 2/10/2009 | 10404-44 | Reregistration |
| STERLING | 7/23/2010 | 1381-190 | Reregistration |
| BRASH | 5/30/2006 | 1381-202 | Registration |
| STERLING BLUE | 7/14/2011 | 1381-248 | Registration |
| SADDLE-UP | 6/15/2015 | 1381-255 | Registration |
| STRIKE 3 | 9/17/2008 | 14774-2 | Reregistration |
| DREXEL DICAMBA HERBICIDE | 3/3/2010 | 19713-624 | Registration |
| DREXEL DICAMBA 2,4 DE-AMINE | 3/23/2016 | 19713-678 | Registration |
| DICAMBA DE-AMINE HERBICIDE | 5/10/2016 | 19713-680 | Registration |
| DICAMBA DGA HERBICIDE | 12/19/2016 | 19713-687 | Registration |
| EH-1554 ORP | 2/23/2015 | 2217-1000 | Registration |
| EH-1557 WEED & FEED | 4/8/2015 | 2217-1003 | Registration |
| EH-1557-ORP | 4/8/2015 | 2217-1004 | Registration |
| EH-1574 HERBICIDE | 9/22/2015 | 2217-1009 | Registration |
| EH-1573 HERBICIDE | 9/22/2015 | 2217-1010 | Registration |

| EH-1568 HERBICIDE | 3/30/2016 | 2217-1014 | Registration |
|---|---|---|---|
| EH-1567 HERBICIDE | 3/30/2016 | 2217-1015 | Registration |
| EH-1492 CONSUMER | 8/17/2016 | 2217-1017 | Registration |
| TRIMEC 873 HERBICIDE | 12/29/2008 | 2217-488 | Reregistration |
| TRIMEC 869 HERBICIDE | 3/25/2009 | 2217-493 | Reregistration |
| GORDON'S BROADLEAF & DANDELION LAWN WEED KILLER | 10/9/2009 | 2217-507 | Reregistration |
| TRIMEC 891 BROADLEAF HERBICIDE | 2/6/2009 | 2217-517 | Reregistration |
| TRIMEC BROADLEAF HERBICIDE BENTGRASS FORMULA | 2/10/2009 | 2217-529 | Reregistration |
| TRIMEC 848 HERBICIDE | 7/28/2008 | 2217-531 | Reregistration |
| TRIMEC 13 WEED'N-FEED | 10/22/2009 | 2217-532 | Reregistration |
| GORDON'S BROADLEAF WEED & BRUSH KILLER 879 | 3/27/2009 | 2217-536 | Reregistration |
| GORDON'S TRIMEC SPOT WEEDER | 2/10/2009 | 2217-537 | Reregistration |
| GORDON'S BL 8000 LAWN WEED KILLER | 2/6/2009 | 2217-539 | Reregistration |
| GORDON'S BL 6000 LAWN WEED KILLER | 3/20/2009 | 2217-540 | Reregistration |
| TRIMEC HERBICIDE | 4/8/2009 | 2217-543 | Reregistration |
| GORDON'S TRIMEC WEED AND FEED 4 | 6/29/2009 | 2217-559 | Reregistration |
| WEED-'N-FEED 5 | 10/23/2009 | 2217-560 | Reregistration |
| GORDON'S TRIMEC WEED & FEED 15 | 9/16/2011 | 2217-563 | Reregistration |
| TRIMEC D.M.B. #2 TURF HERBICIDE | 8/18/2010 | 2217-566 | Reregistration |
| GORDON'S TRIMEC ST. AUGUSTINEGRASS BROADLEAF HERBICIDE | 5/13/2009 | 2217-570 | Reregistration |
| GORDON'S TRIMEC WEED & FEED 30 24-4-8 | 3/19/2010 | 2217-579 | Reregistration |
| GORDON'S TRIMEC WEED & FEED 20 | 4/4/2011 | 2217-580 | Reregistration |
| GORDON'S TRIMEC WEED & FEED 24 | 3/24/2011 | 2217-581 | Reregistration |
| GORDON'S BROADLEAF AND POISON IVY SPOT-WEEDER | 2/6/2009 | 2217-585 | Reregistration |
| GORDON'S TRIMEC 849 GENERAL BROADLEAF LAWN HERBICIDE | 7/7/2010 | 2217-597 | Reregistration |
| TRIMEC HERBICIDE FOR TRANSITION TURFGRASSES | 11/3/2008 | 2217-602 | Reregistration |
| GORDON'S TRIMEC WEED & FEED FOR SENSITIVE GRASSES | 4/9/2009 | 2217-603 | Reregistration |
| TRIMEC 875 HERBICIDE | 9/29/2008 | 2217-639 | Reregistration |
| GORDON'S TRIMEC WEEDER GRANULES | 1/14/2009 | 2217-640 | Reregistration |

| | | | |
|---|---|---|---|
| GORDON'S TRIMEC WEED & FEED 24B | 3/27/2009 | 2217-643 | Reregistration |
| TRIMEC 800 HERBICIDE | 1/12/2009 | 2217-651 | Reregistration |
| GORDON'S TRIMEC BROADLEAF HERBICIDE FOR SENSITIVE GRASSES | 11/25/2008 | 2217-655 | Reregistration |
| TRIMEC 992 BROADLEAF HERBICIDE | 2/10/2009 | 2217-656 | Reregistration |
| GORDON'S TRIMEC WEEDER GRANULES L | 7/23/2010 | 2217-657 | Reregistration |
| GORDON'S TRIMEC WEED AND FEED 27 | 2/25/2010 | 2217-658 | Reregistration |
| GORDON'S TRIMEC WEED & FEED FOR SOUTHERN LAWNS | 2/25/2010 | 2217-661 | Reregistration |
| TRIMEC LIQUID WEED & FEED | 11/4/2008 | 2217-681 | Reregistration |
| TRIMEC 899 BROADLEAF HERBICIDE | 2/10/2009 | 2217-694 | Reregistration |
| TRIMEC LAWN WEED KILLER FOR SOUTHERN OR NORTHERN GRASSES | 8/5/2009 | 2217-695 | Reregistration |
| QUADMEC TURF HERBICIDE | 11/25/2008 | 2217-709 | Reregistration |
| TRIMEC LAF 637 BROADLEAF HERBICIDE | 2/24/2009 | 2217-710 | Reregistration |
| TRIMEC LIQUID WEED & FEED FOR SENSITIVE GRASSES | 10/28/2009 | 2217-716 | Reregistration |
| TRIMEC NORTHERN LIQUID WEED & FEED 25-0-0 | 9/11/2009 | 2217-724 | Reregistration |
| TRIMEC SOUTHERN LIQUID WEED & FEED 25-0-0 | 11/3/2008 | 2217-725 | Reregistration |
| TRIMEC 932 TURF HERBICIDE | 8/2/2011 | 2217-749 | Reregistration |
| TRIMEC 970 WEED & FEED | 10/28/2009 | 2217-753 | Reregistration |
| TRIMEC 973 WEED & FEED | 11/5/2009 | 2217-754 | Reregistration |
| TRIMEC 937 HERBICIDE | 5/29/2009 | 2217-758 | Reregistration |
| TRIMEC 959 BROADLEAF HERBICIDE | 4/9/2009 | 2217-773 | Reregistration |
| EH 1068 TRIMEC ESTER | 10/1/2009 | 2217-774 | Reregistration |
| EH 1073 TRIMEC ESTER | 6/30/2009 | 2217-775 | Reregistration |
| GORDON'S TRI-GUARD | 10/10/2009 | 2217-793 | Reregistration |
| GORDON'S GRANULAR 33 1/2 | 7/13/2011 | 2217-794 | Reregistration |
| GORDON'S TRIPLEX 24-4-8 | 9/8/2010 | 2217-795 | Reregistration |
| EH1148 HERBICIDE | 12/2/2008 | 2217-796 | Reregistration |
| EH1153 WEED AND FEED 21-3-5 | 7/6/2009 | 2217-798 | Reregistration |
| EH-1154 WEED AND FEED 21-3-5 | 7/6/2009 | 2217-799 | Reregistration |
| GORDON'S TRIMEC WEED & FEED 2001 | 11/16/2009 | 2217-801 | Reregistration |
| EH1180 HERBICIDE | 8/11/2009 | 2217-803 | Reregistration |
| GORDON'S TRIPLE PLAY | 11/5/2009 | 2217-805 | Reregistration |

| | | | |
|---|---|---|---|
| GORDON'S TRIMEC DMA HERBICIDE + TURF FERTILIZER | 10/23/2009 | 2217-806 | Reregistration |
| EH1328 WEED AND FEED | 10/22/2009 | 2217-811 | Reregistration |
| EH 1329 WEED AND FEED | 10/23/2009 | 2217-812 | Reregistration |
| EH1314 HERBICIDE | 3/10/2009 | 2217-814 | Reregistration |
| EH1346 HERBICIDE | 10/2/2008 | 2217-816 | Reregistration |
| EH1350 WEED AND FEED | 10/23/2009 | 2217-817 | Reregistration |
| EH1351 WEED AND FEED | 10/23/2009 | 2217-818 | Reregistration |
| EH1352 WEED & FEED | 10/22/2009 | 2217-819 | Reregistration |
| EH1149 HERBICIDE | 11/3/2008; 7/28/2008 | 2217-820 | Reregistration |
| EH-1349 HERBICIDE | 5/1/2008 | 2217-823 | Reregistration |
| 3-D BRUSH KILLER | 3/27/2009 | 2217-824 | Reregistration |
| EH1377 HERBICIDE | 3/10/2009 | 2217-829 | Reregistration |
| SPEED ZONE BROADLEAF HERBICIDE | 9/19/2008 | 2217-833 | Reregistration |
| POWER ZONE BROADLEAF HERBICIDE FOR TURF | 10/22/2009 | 2217-834 | Reregistration |
| SPEED ZONE ST.AUGUSTINE FORMULA BROADLEAF HERBICIDE | 9/23/2008 | 2217-835 | Reregistration |
| EH-1396 HERBICIDE | 3/3/2008 | 2217-848 | Reregistration |
| EH-1395 HERBICIDE | 6/17/2009 | 2217-849 | Reregistration |
| EH-1397 HERBICIDE | 8/29/2008 | 2217-851 | Reregistration |
| 1382 EC RESIDENTIAL HERBICIDE | 9/4/2008 | 2217-855 | Reregistration |
| EH-1400 HERBICIDE | 6/20/2006 | 2217-856 | Reregistration |
| EH-1401 HERBICIDE | 6/30/2008 | 2217-859 | Reregistration |
| EH-1403 HERBICIDE | 8/20/2009 | 2217-863 | Reregistration |
| 1381 EC RESIDENTIAL | 12/1/2008 | 2217-864 | Reregistration |
| EH 1404 HERBICIDE | 10/1/2009 | 2217-865 | Reregistration |
| EH-1405 HERBICIDE | 8/22/2008 | 2217-866 | Reregistration |
| EH-1406 HERBICIDE | 5/7/2008 | 2217-867 | Reregistration |
| EH-1407 HERBICIDE | 6/23/2008 | 2217-868 | Reregistration |
| MUP CODE 243 | 12/8/2008 | 2217-870 | Reregistration |
| EH-1411 HERBICIDE | 5/24/2005 | 2217-874 | Registration |
| EH-1416 HERBICIDE | 3/24/2008 | 2217-875 | Reregistration |
| EH-1418 HERBICIDE | 3/28/2008 | 2217-876 | Reregistration |
| EH-1419 HERBICIDE | 4/15/2005 | 2217-877 | Registration |
| EH-1412 HERBICIDE | 3/17/2005 | 2217-878 | Registration |
| EH-1413 HERBICIDE | 7/22/2005 | 2217-879 | Registration |
| EH-1417 HERBICIDE | 8/18/2008 | 2217-880 | Reregistration |
| EH-1415 ORP | 7/26/2005 | 2217-882 | Registration |
| EH-1415 WEED AND FEED | 7/27/2005 | 2217-883 | Registration |
| EH-1414 WEED AND FEED | 8/25/2009 | 2217-884 | Reregistration |

| EH-1426 HERBICIDE | 1/18/2006 | 2217-885 | Registration |
| EH-1427 HERBICIDE | 1/18/2006 | 2217-886 | Registration |
| EH-1428 HERBICIDE | 1/18/2006 | 2217-887 | Registration |
| EH-1425 HERBICIDE | 1/18/2006 | 2217-888 | Registration |
| EH-1412 PROFESSIONAL | 9/16/2005 | 2217-889 | Registration |
| EH-1433 WEED AND FEED | 10/28/2008 | 2217-890 | Registration |
| EH-1421 HERBICIDE | 3/23/2006 | 2217-891 | Registration |
| EH-1422 HERBICIDE | 3/22/2006 | 2217-892 | Registration |
| EH-1423 HERBICIDE | 3/22/2006 | 2217-893 | Registration |
| EH-1432 HERBICIDE | 4/21/2006 | 2217-894 | Registration |
| EH-1413 PROFESSIONAL | 12/7/2005 | 2217-895 | Registration |
| EH-1437 HERBICIDE | 3/21/2008 | 2217-896 | Reregistration |
| EH-1438 HERBICIDE | 9/22/2006 | 2217-897 | Registration |
| EH-1442 HERBICIDE | 10/6/2006 | 2217-898 | Registration |
| EH-1441 HERBICIDE | 10/6/2006 | 2217-899 | Registration |
| EH-1440 HERBICIDE | 10/6/2006 | 2217-900 | Registration |
| EH-1434 HERBICIDE | 1/30/2007 | 2217-901 | Registration |
| EH-1446 HERBICIDE | 5/4/2007 | 2217-903 | Registration |
| EH-1447 HERBICIDE | 5/4/2007 | 2217-904 | Registration |
| EH-1448 HERBICIDE | 5/4/2007 | 2217-905 | Registration |
| EH-1449 HERBICIDE | 8/27/2007 | 2217-906 | Registration |
| EH-1458 HERBICIDE | 10/9/2009 | 2217-910 | Reregistration |
| EH-1451 PROFESSIONAL | 8/5/2008 | 2217-912 | Registration |
| EH-1451 WEED & FEED | 8/5/2008 | 2217-913 | Registration |
| EH-1456 HERBICIDE | 9/17/2008 | 2217-914 | Registration |
| EH-1455 HERBICIDE | 9/17/2008 | 2217-915 | Registration |
| EH-1462 HERBICIDE | 10/2/2008 | 2217-917 | Registration |
| EH-1464 HERBICIDE | 10/2/2008 | 2217-918 | Registration |
| EH-1465 HERBICIDE | 12/17/2008 | 2217-919 | Registration |
| EH-1466 HERBICIDE | 1/15/2009 | 2217-920 | Registration |
| EH-1467 HERBICIDE | 1/27/2009 | 2217-921 | Registration |
| EH-1352 HERBICIDE LIGHT | 4/2/2009 | 2217-925 | Registration |
| EH-1470 WEED & FEED | 8/11/2009 | 2217-926 | Registration |
| EH-1470 PROFESSIONAL | 8/11/2009 | 2217-927 | Registration |
| EH-1471 HERBICIDE | 12/11/2009 | 2217-930 | Registration |
| EH-1473 HERBICIDE | 3/19/2010 | 2217-931 | Registration |
| EH-1477 HERBICIDE | 3/25/2010 | 2217-933 | Registration |
| EH-1475 HERBICIDE | 4/12/2010 | 2217-934 | Registration |
| EH-1479 HERBICIDE | 9/29/2010 | 2217-938 | Registration |
| EH-1480 HERBICIDE | 9/29/2010 | 2217-939 | Registration |
| EH-1484 HERBICIDE | 8/6/2010 | 2217-940 | Registration |
| EH-1483 HERBICIDE | 8/6/2010 | 2217-941 | Registration |

Third Amended and First Supplemental Complaint for Declaratory and Injunctive Relief
Case No. 3:11-cv-00293-JCS

| | | | |
|---|---|---|---|
| EH-1488 HERBICIDE | 2/4/2011 | 2217-944 | Registration |
| EH-1482 HERBICIDE | 4/29/2011 | 2217-945 | Registration |
| EH-1485 HERBICIDE | 1/21/2011 | 2217-946 | Registration |
| EH-1489 BROADLEAF HERBICIDE | 6/13/2011 | 2217-947 | Registration |
| EH-1491 HERBICIDE | 7/22/2011 | 2217-949 | Registration |
| EH-1492 HERBICIDE | 7/22/2011 | 2217-950 | Registration |
| EH-1493 HERBICIDE | 7/22/2011 | 2217-951 | Registration |
| EH-1494 HERBICIDE | 7/22/2011 | 2217-952 | Registration |
| EH-1497 HERBICIDE | 9/15/2011 | 2217-953 | Registration |
| EH-1457 HERBICIDE | 9/15/2011 | 2217-954 | Registration |
| EH-1506 HERBICIDE | 7/14/2011 | 2217-958 | Registration |
| EH-1518 HERBICIDE | 9/15/2011 | 2217-959 | Registration |
| EH-1516 HERBICIDE | 10/11/2011 | 2217-961 | Registration |
| EH-1517 HERBICIDE | 10/11/2011 | 2217-962 | Registration |
| EH-1513 WEED AND FEED | 2/23/2012 | 2217-963 | Registration |
| EH-1513 ORP | 2/23/2012 | 2217-964 | Registration |
| EH-1515 HERBICIDE | 2/7/2012 | 2217-965 | Registration |
| EH-1514 HERBICIDE | 5/7/2012 | 2217-966 | Registration |
| EH-1500 WEED & FEED | 6/8/2012 | 2217-967 | Registration |
| EH-1501 WEED & FEED | 6/8/2012 | 2217-968 | Registration |
| EH-1503 WEED & FEED | 8/23/2012 | 2217-969 | Registration |
| EH-1502 WEED & FEED | 8/23/2012 | 2217-970 | Registration |
| EH 1509 HERBICIDE | 8/28/2012 | 2217-971 | Registration |
| EH-1523 WEED AND FEED | 7/18/2012 | 2217-972 | Registration |
| EH 1524 HERBICIDE | 7/18/2012 | 2217-973 | Registration |
| EH 1520 HERBICIDE | 11/15/2012 | 2217-974 | Registration |
| EH 1528 HERBICIDE | 12/21/2012 | 2217-975 | Registration |
| EH 1527 HERBICIDE | 12/21/2012 | 2217-976 | Registration |
| EH-1525 HERBICIDE | 1/15/2013 | 2217-977 | Registration |
| EH-1526 HERBICIDE | 1/15/2013 | 2217-978 | Registration |
| EH 1449 READY-TO-USE | 12/20/2013 | 2217-991 | Registration |
| EH-1523 ORP | 2/27/2014 | 2217-992 | Registration |
| EH-1505 HERBICIDE | 8/1/2014 | 2217-993 | Registration |
| EH 1507 HERBICIDE | 9/10/2014 | 2217-994 | Registration |
| EH 1529 HERBICIDE | 6/10/2014 | 2217-995 | Registration |
| EH-1552 HERBICIDE | 10/14/2014 | 2217-996 | Registration |
| EH-1558 WEED AND FEED | 8/11/2014 | 2217-997 | Registration |
| EH-1554 WEED & FEED | 2/23/2015 | 2217-999 | Registration |
| TRI-POWER SELECTIVE HERBICIDE | 8/6/2009 | 228-262 | Reregistration |
| RIVERDALE TRIPLET SELECTIVE HERBICIDE | 5/15/2009 | 228-264 | Reregistration |
| RIVERDALE TRI-POWER (R) WEED AND FEED | 8/6/2009 | 228-270 | Reregistration |

| | | | |
|---|---|---|---|
| RIVERDALE TRI-POWER (R) LIQUID WEED AND FEED | 8/2/2011 | 228-276 | Reregistration |
| TRI-POWER PREMIUM LIQUID WEED AND FEED | 8/18/2010 | 228-277 | Reregistration |
| TRI-POWER (R) JET-SPRAY SPOT WEED KILLER | 1/28/2008 | 228-284 | Reregistration |
| RIVERDALE TRI-POWER L.A. WEED AND FEED | 5/3/2010 | 228-286 | Reregistration |
| VETERAN 720 HERBICIDE | 3/19/2009 | 228-295 | Reregistration |
| RIVERDALE VETERAN 2010 HERBICIDE | 8/10/2009 | 228-296 | Reregistration |
| TRI-POWER (R) GRANULAR WEED KILLER | 8/24/2009 | 228-303 | Reregistration |
| 3-WAY WEED AND FEED WITH TRI-POWER (R) | 8/24/2009 | 228-304 | Reregistration |
| TRIPLET SF | 10/1/2009 | 228-312 | Reregistration |
| HORSEPOWER SELECTIVE HERBICIDE | 1/11/2008 | 228-313 | Reregistration |
| COOL POWER SELECTIVE HERBICIDE | 9/11/2009 | 228-317 | Reregistration |
| RIVERDALE TRUPOWER SELECTIVE HERBICIDE | 10/3/2007 | 228-323 | Reregistration |
| RIVERDALE SWEET SIXTEEN XL WEED AND FEED WITH HORSEPOWER | 6/16/2009 | 228-324 | Reregistration |
| RIVERDALE SWEET SIXTEEN WEED AND FEED WITH HORSEPOWER | 11/5/2007 | 228-325 | Reregistration |
| HORSEPOWER WEED AND FEED | 10/23/2007 | 228-326 | Reregistration |
| RIVERDALE HORSEPOWER L.A. WEED AND FEED | 1/30/2008 | 228-327 | Reregistration |
| HORSEPOWER GRANULAR WEED KILLER | 8/6/2009 | 228-328 | Reregistration |
| TRI-POWER N.Y. WEED AND FEED | 8/20/2009 | 228-330 | Reregistration |
| MILLENNIUM ULTRA 2 | 7/14/2008 | 228-332 | Reregistration |
| RIVERDALE MCDA L.A.C. SELECTIVE HERBICIDE | 10/23/2007 | 228-333 | Reregistration |
| RIVERDALE HORSEPOWER LAWN WEED KILLER | 10/23/2007 | 228-334 | Reregistration |
| RIVERDALE HORSEPOWER 8000 LAWN WEED KILLER | 1/31/2008 | 228-335 | Reregistration |
| HORSEPOWER SPOT WEED KILLER | 8/6/2009 | 228-336 | Reregistration |
| MILLENNIUM ULTRA WEED AND FEED | 9/19/2008 | 228-343 | Reregistration |
| MILLENNIUM ULTRA GRANULAR WEED KILLER | 9/19/2008 | 228-344 | Reregistration |

| RIVERDALE ENTERPRISE SELECTIVE HERBICIDE | 9/23/2008 | 228-355 | Reregistration |
|---|---|---|---|
| DTDA/DMA-TEA-DMA SELECTIVE HERBICIDE | 8/18/2008 | 228-356 | Reregistration |
| DIABLO HERBICIDE | 9/27/2011 | 228-379 | Reregistration |
| PROGENY HERBICIDE | 7/1/2008 | 228-395 | Reregistration |
| VANQUISH HERBICIDE | 5/5/2011 | 228-397 | Reregistration |
| SWEET SIXTEEN WEED AND FEED WITH VIPER | 3/19/2010 | 228-401 | Reregistration |
| RIVERDALE SWEET SIXTEEN WEED AND FEED WITH DTDA | 3/14/2008 | 228-402 | Reregistration |
| RIVERDALE DTDA GRANULAR WEED KILLER | 5/16/2008 | 228-403 | Reregistration |
| RIVERDATE DTDA 12800 LAWN WEED KILLER | 9/8/2008 | 228-404 | Reregistration |
| DTDA 10000 LAWN WEED KILLER | 1/25/2005 | 228-405 | Registration |
| RIVERDALE DTDA 8000 LAWN WEED KILLER | 5/16/2008 | 228-406 | Reregistration |
| DTDA SPOT WEED KILLER | 1/25/2005 | 228-407 | Registration |
| TRIPLET LOW ODOR PREMIUM SELECTIVE HERBICIDE | 11/21/2008 | 228-409 | Reregistration |
| VIPER WEED AND FEED (18#/5M) | 9/12/2008 | 228-412 | Reregistration |
| VIPER WEED AND FEED (20#/5M) | 6/30/2008 | 228-413 | Reregistration |
| RIVERDALE VETERAN 3010 HERBICIDE | 7/9/2008 | 228-414 | Reregistration |
| ESCALADE LOW ODOR FOR SELECTIVE BROADLEAF WEED CONTROL | 4/2/2008 | 228-416 | Reregistration |
| RIVERDALE ESCALADE | 3/24/2008 | 228-417 | Reregistration |
| TRUPOWER 2 SELECTIVE HERBICIDE | 9/11/2009 | 228-419 | Reregistration |
| DQD SELECTIVE HERBICIDE | 7/10/2009 | 228-423 | Reregistration |
| RIVERDALE ESCALADE WEED AND FEED (18#/5M) | 11/4/2008 | 228-425 | Reregistration |
| RIVERDALE ESCALADE WEED AND FEED (16#/5M) | 4/29/2005 | 228-426 | Reregistration |
| ESCALADE WEED AND FEED (20#5M) | 4/29/2005 | 228-427 | Registration |
| RIVERDALE LAZER WEED AND FEED X-X-X FORMULA FIVE | 7/11/2008 | 228-428 | Reregistration |
| LAZER WEED AND FEED X-X-X FORMULA FOUR | 7/9/2008 | 228-429 | Reregistration |
| RIVERDALE LAZER WEED AND FEED X-X-X FORMULA THREE | 6/20/2008 | 228-430 | Reregistration |

| | | | |
|---|---|---|---|
| RIVERDALE LAZER WEED AND FEED X-X-X FORMULA TWO | 8/29/2008 | 228-431 | Reregistration |
| RIVERDALE LAZER WEED AND FEED X-X-X FORMULA ONE | 9/12/2008 | 228-432 | Reregistration |
| ESCALADE2 HERBICIDE | 5/26/2005 | 228-442 | Registration |
| RIVERDALE ESCALADE LOW ODOR II | 5/17/2005 | 228-444 | Registration |
| CHANGE UP SELECTIVE HERBICIDE | 5/19/2005 | 228-445 | Registration |
| TRIPLET LOW ODOR PREMIUM LAWN WEED KILLER CONCENTRATE | 8/8/2006 | 228-489 | Registration |
| TRIPLET LOW ODOR PREMIUM WEED AND FEED | 8/8/2006 | 228-490 | Registration |
| TRIPLET LOW ODOR PREMIUM GRANULAR WEED KILLER | 9/8/2006 | 228-492 | Registration |
| TRIPLET LOW ODOR L.A. GRANULAR WEED KILLER | 9/8/2006 | 228-493 | Registration |
| NUP05018 HERBICIDE | 9/15/2006 | 228-499 | Registration |
| TRIPLET LOW ODOR PREMIUM WEED AND FEED (18/5) | 10/23/2006 | 228-503 | Registration |
| TRIPLET LOW ODOR PREMIUM WEED AND FEED (20/5) | 10/23/2006 | 228-504 | Registration |
| TRIPLET LOW ODOR L.A. PREMIUM WEED AND FEED (16/5) | 10/23/2006 | 228-505 | Registration |
| TRIPLET LOW ODOR L.A. PREMIUM WEED AND FEED (18/5) | 10/23/2006 | 228-506 | Registration |
| TRIPLET LOW ODOR L.A. PREMIUM WEED AND FEED (20/5) | 10/23/2006 | 228-507 | Registration |
| TRIPLET LOW ODOR PREMIUM 8000 LAWN WEED KILLER CONCENTRATE | 10/27/2006 | 228-508 | Registration |
| TRIPLET LOW ODOR PREMIUM SPOT LAWN WEED KILLER READY-TO-SPRAY | 11/22/2006 | 228-511 | Registration |
| QUINCEPT HERBICIDE | 8/24/2007 | 228-531 | Registration |
| NUP 06237 HERBICIDE | 12/13/2007 | 228-551 | Registration |
| LAZER PREMIUM LAWN WEED KILLER CONCENTRATE | 12/17/2007 | 228-553 | Registration |
| LAZER 8000 LAWN WEED KILLER CONCENTRATE | 12/18/2007 | 228-554 | Registration |
| LAZER RTU LAWN WEED KILLER | 12/18/2007 | 228-555 | Registration |
| TROOPER EXTRA SELECTIVE HERBICIDE | 11/19/2008 | 228-586 | Registration |
| 4-SPEED SELECTIVE HERBICIDE | 12/19/2008 | 228-589 | Registration |
| 4-SPEED XT SELECTIVE HERBICIDE | 12/19/2008 | 228-590 | Registration |
| NUP-08041 READY-TO-USE | 2/12/2009 | 228-593 | Registration |

| QUINCEPT HERBICIDE READY TO USE | 11/3/2008 | 228-594 | Registration |
|---|---|---|---|
| QUINCEPT HERBICIDE PREMIUM LAWN WEED KILLER CONCENTRATE | 11/3/2008 | 228-595 | Registration |
| CLASH SELECTIVE HERBICIDE | 9/15/2009 | 228-615 | Registration |
| QUINCEPT LT HERBICIDE READY-TO-USE | 5/6/2010 | 228-703 | Registration |
| QUINCEPT LT HERBICIDE PREMIUM LAWN WEED KILLER CONCENTRATE | 5/6/2010 | 228-704 | Registration |
| NUP-09066 HERBICIDE | 5/19/2010 | 228-705 | Registration |
| QUINCEPT LT MC | 5/19/2010 | 228-706 | Registration |
| ELLIPTICAL HERBICIDE | 5/5/2010 | 228-707 | Registration |
| NUP-08040 PREMIUM 8000 LAWN WEED KILLER CONCENTRATE | 2/18/2011 | 228-712 | Registration |
| NUP-11032 HERBICIDE | 10/11/2012 | 228-716 | Registration |
| LAST CALL SELECTIVE HERBICIDE | 1/17/2014 | 228-719 | Registration |
| Viper Weed and Feed (37.5#/5M) | 11/30/2016 | 228-738 | Registration |
| WEED B GON LAWN WEED KILLER3 | 9/22/2008 | 239-2665 | Reregistration |
| WEED-B-GON READY-SPRAY ISOMER FORMULA | 9/19/2008 | 239-2666 | Reregistration |
| EH-1398 HERBICIDE | 9/26/2008 | 239-2682 | Reregistration |
| LAWN CRABGRASS AND WEED KILLER | 6/30/2008 | 239-2689 | Reregistration |
| LIGHTNING D HERBICIDE | 11/3/2009 | 241-384 | Reregistration |
| DIFLEXX HERBICIDE | 1/13/2015 | 264-1173 | Registration |
| DIFLEXX DUO | 2/17/2016 | 264-1184 | Registration |
| DICAMBA DGA | 1/24/2012 | 33270-29 | Registration |
| QUICKSILVER | 8/25/2015 | 33270-39 | Registration |
| GHARDA DIMETHYLAMINE SALT OF DICAMBA | 6/30/2009 | 33658-29 | Reregistration |
| ORACLE DICAMBA AGRICULTURAL HERBICIDE | 8/25/2009 | 33658-30 | Reregistration |
| STRATOS DICAMBA+ATRAZINE AGRICULTURAL HERBICIDE | 4/8/2010 | 33658-31 | Reregistration |
| GHARDA DICAMBA + 2,4-D DMA HERBICIDE | 7/28/2008 | 33658-32 | Reregistration |
| GHARDA DICAMBA SODIUM | 10/16/2014 | 33658-35 | Registration |
| STRUT HERBICIDE | 11/9/2009 | 34704-1043 | Registration |
| MEC AMINE-D | 9/23/2008 | 34704-239 | Reregistration |
| RIFLE PLUS HERBICIDE | 9/9/2009 | 34704-860 | Reregistration |
| RIFLE HERBICIDE | 10/9/2009 | 34704-861 | Reregistration |
| RIFLE-D HERBICIDE | 3/30/2009 | 34704-869 | Reregistration |

| Name | Date | Number | Type |
|---|---|---|---|
| DUPONT AGILITY SG HERBICIDE (WITH TOTALSOL SOLUBLE GRANULES) | 8/2/2007 | 352-751 | Registration |
| DUPONT DPX-QFU31 (MP) HERBICIDE | 1/9/2008 | 352-761 | Reregistration |
| DUPONT REQUIRE Q HERBICIDE | 10/7/2008 | 352-778 | Registration |
| DUPONT FEXAPAN HERBICIDE | 7/23/2015 | 352-913 | Registration |
| DUPONT D1691 HERBICIDE | 7/23/2015 | 352-914 | Registration |
| MILLENNIUM ULTRA MC | 7/27/2011 | 35935-84 | Registration |
| TRI-POWER OPTICAL MC | 6/30/2011 | 35935-85 | Registration |
| VIPER MC | 7/8/2011 | 35935-86 | Registration |
| LAZER MC | 8/1/2011 | 35935-87 | Registration |
| TRI-POWER OPTICAL NY MC | 8/2/2011 | 35935-89 | Registration |
| ESCALADE W&F MC | 8/1/2011 | 35935-90 | Registration |
| ST. AUGUSTINE GRASS BROADLEAF HERBICIDE | 4/14/2009 | 3862-145 | Reregistration |
| BW II | 10/9/2006 | 42750-100 | Registration |
| PD 2 | 12/16/2005 | 42750-107 | Registration |
| BW III | 8/9/2007 | 42750-144 | Registration |
| DICAMBA DMA MUP | 1/6/2009 | 42750-205 | Registration |
| DICAMBA DGA 4SC | 12/30/2009 | 42750-209 | Registration |
| DICAMBA 70% SG | 10/7/2014 | 42750-271 | Registration |
| RANGE STAR EW | 3/26/2015 | 42750-286 | Registration |
| B3-WAY-001 | 8/13/2015 | 42750-294 | Registration |
| ALBAUGH DICAMBA DMA SALT | 5/12/2010 | 42750-40 | Reregistration |
| DICAMBAZINE | 8/27/2009 | 42750-41 | Reregistration |
| RANGE STAR | 5/13/2008 | 42750-55 | Reregistration |
| ALLOW STAR | 10/20/2009 | 42750-63 | Reregistration |
| OUTLAW | 8/6/2009 | 42750-68 | Reregistration |
| THUNDERMASTER | 5/7/2008 | 42750-76 | Registration |
| ALB 40 | 6/3/2005 | 42750-98 | Registration |
| CELSIUS WG | 10/22/2009 | 432-1507 | Registration |
| CIMARRON MAX PART B HERBICIDE | 5/7/2008 | 432-1554 | Reregistration |
| CIMARRON MAX HERBICIDE | 3/2/2010 | 432-1555 | Reregistration |
| BONIDE LAWN WEED KILLER | 5/12/2009 | 4-400 | Reregistration |
| BONIDE LAWN WEED KILLER W/TRIMEC | 5/13/2009 | 4-401 | Reregistration |
| BONIDE WEED BEATER PLUS CRABGRASS & BROADLEAF WEED KILLER READY TO SPRAY | 2/8/2008 | 4-466 | Registration |
| REAL-KILL BROADLEAF WEED KILLER | 4/4/2011 | 478-121 | Reregistration |
| FALLOW MASTER BROADSPECTRUM HERBICIDE | 8/31/2009 | 524-507 | Reregistration |

| | | | |
|---|---|---|---|
| M1691 HERBICIDE | 10/15/2008 | 524-582 | Registration |
| M1750 Herbicide | 2/14/2013 | 524-610 | Registration |
| M1769 PREMIX HERBICIDE | 4/22/2014 | 524-616 | Registration |
| Dicamba 4DGA MP | 2/6/2015 | 524-621 | Registration |
| SUPER PLUS 2 FOR GRASS | 4/10/2009 | 538-175 | Reregistration |
| QUALI-PRO-2DQ | 5/21/2013 | 53883-334 | Registration |
| QUALI-PRO THREE-D | 8/8/2013 | 53883-342 | Registration |
| QUALI-PRO 3-D HERBICIDE | 10/25/2010 | 53883-378 | Registration |
| Fahrenheit | 12/29/2016 | 53883-387 | Registration |
| SCOTTS LAWN WEED CONTROL | 3/27/2009 | 538-9 | Reregistration |
| LATIGO | 3/9/2007 | 5905-564 | Registration |
| BRUSH RHAP | 10/11/2007 | 5905-568 | Registration |
| HELENA OUTLAW | 2/27/2008 | 5905-574 | Registration |
| HELENA BW-III | 2/27/2008 | 5905-575 | Registration |
| HELENA VISION | 2/3/2008 | 5905-576 | Registration |
| HM-1410 HERBICIDE | 2/1/2016 | 5905-597 | Registration |
| GRAZON PD2 | 4/20/2007 | 62719-571 | Registration |
| PENOXSULAM S FERT | 11/19/2008 | 62719-588 | Registration |
| PENOXSULAM 3 FERT | 11/19/2008 | 62719-590 | Registration |
| GF-2122 | 7/21/2008 | 62719-600 | Registration |
| DICAMBA DMA 4# AG | 9/11/2009 | 66330-276 | Reregistration |
| DICAMBA DMA 2# AG | 10/6/2009 | 66330-277 | Reregistration |
| BANVEL + ATRAZINE | 3/22/2007 | 66330-286 | Reregistration |
| BANVEL + 2,4-D | 2/10/2009 | 66330-287 | Reregistration |
| ARY-0484-101 | 5/21/2014 | 66330-421 | Registration |
| ARY-0484-205 | 8/6/2014 | 66330-423 | Registration |
| DICAMBA 4 LB HERBICIDE | 3/11/2015 | 66330-425 | Registration |
| REPAR WEED AND FEED | 5/19/2011 | 69361-2 | Reregistration |
| REPAR BROAD SPECTRUM WEED AND FEED | 6/16/2011 | 69361-3 | Reregistration |
| CANON DICAMBA HERBICIDE | 3/13/2014 | 69361-44 | Registration |
| PC HERBICIDE CONCENTRATE | 4/7/2008 | 69526-11 | Registration |
| PC RTU HERBICIDE | 4/22/2008 | 69526-12 | Registration |
| PC HERBICIDE CONCENTRATE PLUS | 5/26/2009 | 69526-15 | Registration |
| PC HERBICIDE RTU PLUS | 5/21/2009 | 69526-16 | Registration |
| UPI DICAMBA | 10/5/2011 | 70506-244 | Registration |
| BURNMASTER HERBICIDE | 1/7/2014 | 71368-108 | Registration |
| SPITFIRE HERBICIDE | 1/23/2014 | 71368-109 | Registration |
| Panther Trio Herbicide | 7/23/2015 | 71368-116 | Registration |
| Scorch | 3/30/2016 | 71368-117 | Registration |
| GLYKAMBA BROADSPECTRUM HERBICIDE | 3/31/2011 | 71368-30 | Reregistration |
| NUFARM KAMBAMASTER HERB. | 7/29/2008 | 71368-34 | Reregistration |

| | | | |
|---|---|---|---|
| RD 1645 HERBICIDE | 6/6/2005 | 71995-41 | Registration |
| RD 1644 HERBICIDE | 6/6/2005 | 71995-42 | Registration |
| RD 1646 | 6/6/2005 | 71995-43 | Registration |
| LAWN 3FL2 HERBICIDE CONCENTRATE/READY-TO-SPRAY | 4/26/2011 | 72155-104 | Registration |
| LAWN 3FL2 HERBICIDE READY-TO-USE | 6/13/2011 | 72155-105 | Registration |
| Lawn 3FL Herbicide Concentrate/Ready-to-spray | 7/26/2010 | 72155-89 | Registration |
| Lawn 3FL Herbicide Ready-to-use | 7/26/2010 | 72155-90 | Registration |
| SWISS FARMS WEED & FEED (ZERO P) | 5/15/2009 | 73327-2 | Registration |
| BAS 183 06H HERBICIDE | 8/10/2009 | 7969-131 | Reregistration |
| BAS 452 18H HERBICIDE | 9/17/2008 | 7969-133 | Reregistration |
| DICAMBA DMA MUP | 8/5/2009 | 7969-134 | Reregistration |
| BAS 183 10H HERBICIDE | 8/20/2009 | 7969-135 | Reregistration |
| MARKSMAN HERBICIDE | 5/11/2009 | 7969-136 | Reregistration |
| CLARITY HERBICIDE | 4/1/2011 | 7969-137 | Reregistration |
| IPA SALT OF DICAMBA | 9/11/2009 | 7969-138 | Reregistration |
| DICAMBA K HERBICIDE | 7/13/2011 | 7969-139 | Reregistration |
| SAN845H HERBICIDE | 6/19/2009 | 7969-140 | Reregistration |
| SAN 821 H 600 HERBICIDE | 9/11/2009 | 7969-142 | Reregistration |
| BAS 661 00 H | 5/18/2009 | 7969-148 | Reregistration |
| DISTINCT HERBICIDE | 3/19/2010 | 7969-150 | Reregistration |
| STATUS HERBICIDE | 12/15/2006 | 7969-242 | Registration |
| ONETIME HERBICIDE | 2/14/2008 | 7969-267 | Registration |
| Dyvel WG Herbicide | 7/28/2011 | 7969-323 | Registration |
| LILLY/MILLER LAWN WEED KILLER | 12/4/2009 | 802-485 | Reregistration |
| LILLY/MILLER READY-TO-USE LAWN WEED KILLER | 5/29/2009 | 802-580 | Reregistration |
| LILLY/MILLER HOSE 'N GO WEED AND FEED | 12/8/2008 | 802-586 | Reregistration |
| LILLY/MILLER ULTRAGREEN WEED & FEED WITH TRIMEC HERBICIDE | 12/4/2009 | 802-588 | Reregistration |
| LILLY/MILLER 5M WEED & FEED | 10/9/2009 | 802-597 | Reregistration |
| YUKON HERBICIDE | 2/2/2006 | 81880-6 | Registration |
| CRUISE CONTROL | 2/13/2008 | 81927-27 | Registration |
| ALLIGARE DICAMBA + 2,4-D DMA | 6/3/2010 | 81927-42 | Registration |
| ALLIGARE DICAMBA DGA 4SC | 1/20/2011 | 81927-47 | Registration |
| ALLIGARE DICAMBA 4 | 4/23/2015 | 81927-55 | Registration |
| TOPEKA | 6/5/2012 | 83100-34 | Registration |
| DICAMBA 700 SG | 7/2/2014 | 83100-36 | Registration |
| DICAMBA 600 + NICO 150 SG | 10/21/2014 | 83100-37 | Registration |

| Dicamba DMA + 2,4-D DMA SL | 1/29/2016 | 83100-45 | Registration |
|---|---|---|---|
| DICAMBA 4 DMA | 10/25/2007 | 83520-10 | Registration |
| DICAMBA + 2,4-D | 6/10/2008 | 83520-12 | Registration |
| DICAMBA DGA 4 | 1/29/2014 | 83529-35 | Registration |
| AGSAVER DICAMBA DMA SALT | 10/28/2014 | 83772-11 | Registration |
| G7840 HERBICIDE | 3/31/2015 | 84836-19 | Registration |
| REGATTA 70 SG HERBICIDE | 8/22/2016 | 84836-20 | Registration |
| ARMORTECH (R) THREESOME(TM) | 12/16/2009 | 86064-5 | Registration |
| WILLOWOOD DICAMBA 4 | 3/10/2014 | 87290-51 | Registration |
| Dee-Cam Herbicide | 4/17/2017 | 87845-8 | Registration |
| Dicamba 48% SL | 9/21/2016 | 87895-5 | Registration |
| AX DIFLU-DICAMBA | 4/21/2015 | 89167-50 | Registration |
| AX-DICAMBA 2,4-D-ESTER | 7/15/2015 | 89167-52 | Registration |
| AX DGCA | 11/9/2012 | 89167-6 | Registration |
| DICAMBA + 2,4-D DMA | 12/6/2012 | 89168-2 | Registration |
| LIBERTY DICAMBA 4 DMA | 6/10/2010 | 89168-3 | Registration |
| LIBERTY SFO | 12/7/2016 | 89168-61 | Registration |
| TRIAD SELECT HERBICIDE | 3/26/2015 | 89442-22 | Registration |
| ANDERSONS GOLF PRODUCTS KOG WEED CONTROL | 8/2/2011 | 9198-184 | Reregistration |
| LAWN HERBICIDE JD READY-TO-USE | 4/29/2011 | 92564-2 | Reregistration |
| LAWN HERBICIDE 3F CONCENTRATE | 5/18/2007 | 92564-34 | Registration |
| LAWN HERBICIDE 3F READY-TO-USE | 5/18/2007 | 92564-35 | Registration |
| LAWN HERBICIDE JD CONCENTRATE | 8/5/2009 | 92564-4 | Reregistration |
| LAWN HERBICIDE 2Q READY-TO-USE | 4/14/2008 | 92564-41 | Registration |
| LAWN HERBICIDE 2Q CONCENTRATE READY-TO-SPRAY | 3/26/2008 | 92564-42 | Registration |
| LAWN 3IP HERBICIDE CONCENTRATE/READY-TO-SPRAY | 4/30/2009 | 92564-43 | Registration |
| LAWN 3IP HERBICIDE READY-TO-USE | 4/30/2009 | 92564-44 | Registration |
| LAWN 3FL HERBICIDE GRANULE | 7/26/2010 | 92564-45 | Registration |
| LAWN 3IP HERBICIDE GRANULE | 8/12/2011 | 92564-56 | Registration |
| LAWN 3FL2 HERBICIDE GR | 4/27/2012 | 92564-57 | Registration |
| 3 IN 1 WEED & FEED FOR SOUTHERN LAWNS | 4/21/2015 | 92564-61 | Registration |
| 3FL1A HERBICIDE GRANULE | 4/21/2015 | 92564-61 | Registration |
| 3FL1B HERBICIDE GRANULE | 4/21/2015 | 92564-62 | Registration |
| TURF FERTILIZER PLUS TRIMEC DMB WEED CONTROL | 6/3/2010 | 961-413 | Registration |
| TURF FERTILIZER PLUS TRIMEC ESTER WEED CONTROL | 6/7/2010 | 961-415 | Registration |
| TURF BROADLEAF WEED CONTROL | 7/14/2011 | 961-418 | Registration |

| | | | |
|---|---|---|---|
| TURF FERTILIZER BROADLEAF PLUS DIMENSION WEED CONTROL | 7/14/2011 | 961-419 | Registration |
| TURF FERTILIZER WITH LOCKUP PLUS DIMENSION WEED CONTROL | 7/18/2012 | 961-420 | Registration |
| CHEMSICO SPOT WEED KILLER A | 4/14/2009 | 9688-109 | Reregistration |
| CHEMSICO HERBICIDE CONCENTRATE DFC (ALTERNATE II) | 1/4/2009 | 9688-206 | Reregistration |
| CHEMSICO HERBICIDE RTU DFC | 7/28/2008 | 9688-208 | Reregistration |
| CHEMSICO HERBICIDE WSG RTU | 8/10/2006 | 9688-243 | Registration |
| CHEMSICO HERBICIDE TSG RTU | 8/2/2006 | 9688-244 | Registration |
| CHEMSICO HERBICIDE TSA | 11/20/2006 | 9688-248 | Registration |
| CHEMSICO HERBICIDE CONCENTRATE 4A | 11/8/2007 | 9688-259 | Registration |
| CHEMSICO HERBICIDE 2XG | 8/24/2007 | 9688-261 | Registration |
| CHEMSICO HERBICIDE RTU 4A | 12/3/2007 | 9688-264 | Registration |
| CHEMSICO HERBICIDE CONCENTRATE 3A | 12/3/2007 | 9688-265 | Registration |
| EH-1460 HERBICIDE | 3/17/2008 | 9688-268 | Registration |
| CHEMSICO HERBICIDE CONCENTRATE 1455 | 3/25/2010 | 9688-278 | Registration |
| CHEMSICO RTU HERBICIDE 1456 | 3/25/2010 | 9688-279 | Registration |
| CHEMSICO RTU HERBICIDE 1462 | 3/25/2010 | 9688-280 | Registration |
| CHEMSICO HERBICIDE CONCENTRATE 1464 | 3/25/2010 | 9688-281 | Registration |
| HERBICIDE CONCENTRATE 4B | 4/30/2010 | 9688-283 | Registration |
| CHEMSICO HERBICIDE RTU 4B | 5/6/2010 | 9688-284 | Registration |
| CHEMSICO BRUSH KILLER CONCENTRATE II | 11/10/2010 | 9688-286 | Registration |
| CHEMSICO PESTICIDE CONCENTRATE WI-N | 5/19/2011 | 9688-289 | Registration |
| CHEMSICO PESTICIDE CONCENTRATE WI-S | 5/19/2011 | 9688-290 | Registration |
| CHEMSICO SPOT WEED KILLER TFA | 8/2/2011 | 9688-292 | Registration |
| CHEMSICO GRASS & WEED KILLER RTU 3A | 5/13/2011 | 9688-293 | Registration |
| CHEMSICO PESTICIDE GRANULES WI-N | 12/18/2012 | 9688-310 | Registration |
| CHEMSICO PESTICIDE GRANULES WI-S | 12/18/2012 | 9688-311 | Registration |
| CHEMSICO HERBICIDE GWE | 12/17/2013 | 9688-318 | Registration |

352.   Upon information and belief, EPA provided no hearings or other public participation for these product registration actions.

Third Amended and First Supplemental Complaint for Declaratory and Injunctive Relief
Case No. 3:11-cv-00293-JCS                                                          117

353.   As set forth above, EPA has discretion to influence or change registrations of pesticide products for the benefit of protected species.  For example, EPA may only register or reregister a pesticide product if its use does not cause an unreasonable adverse effect on the environment.  7 U.S.C. § 136a(c)(5); 7 U.S.C. § 136a-1(g)(2)(C); 40 C.F.R. § 152.112; 40 C.F.R. § 152.113(a).   EPA may also change, cancel, restrict, or immediately suspend registered pesticides, pesticide labeling, or particular uses at any time if it appears that the pesticide is causing an unreasonable adverse effect on the environment.  7 U.S.C. § 136d(c).   Thus, EPA's product reregistration and its approvals of products containing dicamba and salts are "affirmative agency actions" subject to consultation under Section 7(a)(2) of the ESA. 16 U.S.C. § 1536(a)(2).

354.   Plaintiffs' members live, work, visit, recreate, and otherwise enjoy areas across the nation that may be impacted by products containing dicamba and salts.  Plaintiffs' members derive professional, aesthetic, spiritual, recreational, economic, and educational benefits from the endangered and threatened species that live in these areas and may be impacted by products containing dicamba and salts.  The list of species that may be affected by products containing dicamba and salts is provided in Exhibit A, and Plaintiffs' members have cognizable interests in these species.

355.   For example, products containing dicamba and salts may affect the San Marco salamander, and a member of Plaintiffs' organizations has a cognizable interest in this species based on, among other things, efforts to observe the species during frequent visits to habitats where the species can be found and may be affected byby products containing dicamba and salts.

356.   In the recovery plan covering the San Marcos Salamander (San Marcos & Comal Springs & Associated Aquatic Ecosystems (Revised) Recovery Plan, February 14, 1996), the U.S. Fish and Wildlife Service explains: "Pesticides, herbicides, and other chemical compounds could negatively impact the San Marcos and Comal aquatic ecosystems' biota in degrees of severity rangingfrom subtle to catastrophic."

357.   Plaintiffs' members engage in wildlife observation, research, photography, restoration activities, and educational programs involving endangered and threatened species that may be impacted by products containing dicamba and salts.  Plaintiffs' members will continue to maintain an interest in the species and areas that may be impacted by products containing dicamba and salts in the future.

358.     The above-described interests of Plaintiffs and their members have been and are being adversely affected by EPA's reregistration, registration and authorization of the use of products containing dicamba and salts, which is a pesticide that may harm endangered and threatened species and their habitats.  As alleged in the Complaint, dicamba and salts may affect the species identified in Exhibit A, as well as their designated critical habitat.

359.     EPA's failure to ensure that products containing dicamba and salts do not impact endangered species and their habitats harms Plaintiffs' members' interests in the species and their habitats affected by products containing dicamba and salts.  For example, EPA's failure to consult on dicamba and salts may impair recovery of species impacted by products containing dicamba and salts and may make it more likely that these species would suffer population declines.  Species declines and impaired recovery harm the interests that Plaintiffs' members have in the existence of these rare animals, such as by limiting their ability to observe the species.  Consultation on products containing dicamba and salts is necessary to ensure that Plaintiffs' members' interests in the species affected by products containing dicamba and salts are preserved and remain free from injury.

360.     EPA must register and authorize pesticide products before they can be used and has an ongoing responsibility to ensure that registered pesticides do not have unreasonable adverse effects on the environment.  Absent EPA's continuing registration and discretionary control and involvement in products containing dicamba and salts, this pesticide could not be used and could not negatively impact the listed species named in Exhibit A and their habitats.

361.     If this Court orders EPA to engage in consultation as required, the Service would analyze the extent to which products containing dicamba and salts affect listed species and their habitats and, if necessary, would suggest reasonable and prudent alternatives or measures to protect the species, which would protect Plaintiffs' members' interests in the species.  16 U.S.C. § 1536(a)(3).  Unless the requested relief is granted, Plaintiffs' interests will continue to be injured by EPA's failure to consult on products containing dicamba and salts with the Service, as well as by the potential ongoing harm to the species named in Exhibit A and their habitats as a result of ongoing use of products containing dicamba and salts.

362.    The injuries described above are actual, concrete injuries that are presently suffered by Plaintiffs and their members and will continue to occur unless relief is granted by this Court.  These injuries are directly caused by the Defendants' failure to consult with the Service to ensure that EPA's actions relating to products containing dicamba and salts do not affect listed species and Plaintiffs' members' cognizable interests in these species.  The relief sought herein, EPA's compliance with the ESA, would redress Plaintiffs' injuries.  Plaintiffs have no other adequate remedy at law, and they bring this action on behalf of their adversely affected members.

**Dimethoate[21]**

363.    Exhibit A contains a comprehensive, but not necessarily exhaustive, list of endangered and threatened species for which dimethoate is known to be harmful to the taxonomic group of that species and is used in the state where that species lives.

364.    In its Tier 1 assay for endocrine disrupting compounds, EPA determined that dimethoate potentially interacted with the thyroid pathway. The dose at which thyroid effects were seen was almost identical to the point of departure (POD) derived from AChE inhibition. This led the EPA to conclude that "…there is a concern that the POD may not be protective of potential thyroid toxicity in the young." As explained above, endocrine disrupters have effects on the reproductive and immune systems capable of compromising populations of endangered species.

365.    Dimethoate is a pesticide for which the EPA has indicated that estimated environmental concentrations (EECs) are likely to exceed the Levels of Concern (LOCs) for endangered species, and/or may cause indirect effects on endangered species by altering habitat or food sources. Specifically, EECs of dimethoate are likely to exceed the LOCs for the following taxonomic groups: freshwater, estuarine/marine, and terrestrial invertebrates; birds; and mammals. Acute LOCs for honeybees were exceeded by more than four orders of magnitude for certain uses.

366.    Dimethoate is a pesticide that is "highly acutely toxic" or "very highly acutely toxic" to the following taxonomic groups:  birds, fish, amphibians, mollusks, crustaceans, insects, and reptiles. These toxicity rankings are based on LD50 or LC50 data (lethal dose to 50 percent of the test organisms or lethal concentration for 50 percent of the test organisms) that EPA possesses.

---

[21] The current EPA Case Number and EPA PC Code for dimethoate are 0088, 035001.

367.   EPA "affirmatively authorized" the continued use of the active ingredient dimethoate when it issued a Reregistration Eligibility Decision in July of 2006.

368.   EPA issued a revised Interim RED in August 20, 2008.  EPA's 2007 IRED explains that its "preliminary risk assessment for endangered species indicates that RQs exceed the endangered species LOC for birds and mammals. Further, potential indirect effects to any species dependent upon a species that experiences effects from use of dimethoate, can not be precluded based on the screening level ecological risk assessment. . . ." After a single application of 0.16 lbs a.i./A, the endangered species acute and chronic risk LOCs are exceeded for birds and mammals for some use sites.

369.   EPA's 2015 preliminary ecological risk assessment for dimethoate states that the EPA's "screening-level risk assessment for dimethoate indicates potential risks of direct effects to listed freshwater and estuarine/marine invertebrates, avian species and mammals on some of its registered use sites."

370.   On September 24, 2014, EPA completed product reregistration for dimethoate.  *See* https://www.epa.gov/pesticide-reevaluation/pesticides-have-completed-product-reregistration (last visited 6/26/2017).

371.   Active product registrations for this pesticide can be found on EPA's Pesticide Product Label System, *available at* http://iaspub.epa.gov/apex/pesticides/f?p=PPLS:1 (last visited 6/26/2017). Specifically, the EPA's online Pesticide Product Label System lists the following pesticide products containing dimethoate that EPA affirmatively authorized by product reregistration or new product registration since January 20, 2005:

| Product Name | Date | Registration Number | Action |
|---|---|---|---|
| GOWAN DIMETHOATE E267 | 4/11/2013 | 10163-56 | Reregistration |
| DREXEL DIMETHOATE TECHNICAL | 7/5/2011 | 19713-209 | Reregistration |
| DREXEL DIMETHOATE 4EC | 5/23/2012 | 19713-231 | Reregistration |
| DREXEL DIMETHOATE 2.67 | 12/6/2011 | 19713-232 | Reregistration |
| DREXEL DIMETHOATE TECHNICAL | 7/5/2011 | 19713-525 | Reregistration |
| DREXEL DIMETHOATE TECH II | 7/3/2012 | 19713-639 | Registration |
| DREXEL DIMETHOATE LV-2.67 | 9/24/2015 | 19713-664 | Registration |
| DREXEL DIMETHOATE LV-4 | 9/24/2015 | 19713-665 | Registration |
| DIMETHOATE 4E | 1/29/2013 | 279-3541 | Reregistration |
| DIMETHOATE 400 | 2/6/2013 | 279-3586 | Registration |
| DIMETHOATE 480 G/L | 12/10/2014 | 279-3595 | Registration |

| DIMETHOATE 400 | 2/6/2014 | 34704-207 | Reregistration |
|---|---|---|---|
| DIMETHOATE 2.67 EC | 7/20/2011 | 34704-489 | Reregistration |
| CHEMATHOATE TECHNICAL | 4/7/2011 | 4787-7 | Reregistration |
| DIMETHOATE 4E | 5/4/2011 | 66330-223 | Reregistration |
| DIMETHOATE 25 WP | 11/17/2010 | 66330-237 | Reregistration |
| DIMETHOATE 2.67 EC | 5/4/2011 | 66330-244 | Reregistration |
| CYMATE 267 | 7/6/2011 | 66330-245 | Reregistration |
| PERFEKTHION MANUFACTURER'S CONCENTRATE | 4/2/2012 | 7969-32 | Reregistration |
| DIMATE 4E | 8/7/2012 | 9779-273 | Reregistration |

372.    Upon information and belief, EPA provided no hearings or other public participation for these product registration actions.

373.    As set forth above, EPA has discretion to influence or change registrations of pesticide products for the benefit of protected species.  For example, EPA may only register or reregister a pesticide product if its use does not cause an unreasonable adverse effect on the environment.  7 U.S.C. § 136a(c)(5); 7 U.S.C. § 136a-1(g)(2)(C); 40 C.F.R. § 152.112; 40 C.F.R. § 152.113(a).   EPA may also change, cancel, restrict, or immediately suspend registered pesticides, pesticide labeling, or particular uses at any time if it appears that the pesticide is causing an unreasonable adverse effect on the environment.  7 U.S.C. § 136d(c).  Thus, EPA's product reregistration and its approvals of products containing dimethoate are "affirmative agency actions" subject to consultation under Section 7(a)(2) of the ESA. 16 U.S.C. § 1536(a)(2).

374.    Plaintiffs' members live, work, visit, recreate, and otherwise enjoy areas across the nation that may be impacted by products containing dimethoate.  Plaintiffs' members derive professional, aesthetic, spiritual, recreational, economic, and educational benefits from the endangered and threatened species that live in these areas and may be impacted by products containing dimethoate. The list of species that may be affected by products containing dimethoate is provided in Exhibit A, and Plaintiffs' members have cognizable interests in these species.

375.    For example, products containing dimethoate may affect the tan riffleshell, and a member of Plaintiffs' organizations has a cognizable interest in this species based on, among other things, efforts to observe the species during frequent visits to habitats where the species can be found and may be affected by products containing dimethoate.

376.    In the tan riffleshell's recovery plan (dated Oct. 22, 1984), the U.S. Fish and Wildlife Service discusses the importance of good water quality and notes presence of pesticides in its waterways. Moreover, the 1989 Biological Opinion made a jeopardy finding for the tan riffleshell.

377.    Plaintiffs' members engage in wildlife observation, research, photography, restoration activities, and educational programs involving endangered and threatened species that may be impacted by products containing dimethoate.  Plaintiffs' members will continue to maintain an interest in the species and areas that may be impacted by products containing dimethoate in the future.

378.    The above-described interests of Plaintiffs and their members have been and are being adversely affected by EPA's reregistration, registration and authorization of the use of products containing dimethoate, which are pesticides that may harm endangered and threatened species and their habitats.  As alleged in the Complaint, products containing dimethoate may affect the species identified in Exhibit A, as well as their designated critical habitat.

379.    EPA's failure to ensure that products containing dimethoate do not impact endangered species and their habitats harms Plaintiffs' members' interests in the species and their habitats affected by products containing dimethoate.  For example, EPA's failure to consult on products containing dimethoate may impair recovery of species impacted by products containing dimethoate and may make it more likely that these species would suffer population declines.  Species declines and impaired recovery harm the interests that Plaintiffs' members have in the existence of these rare animals, such as by limiting their ability to observe the species.  Consultation on products containing dimethoate is necessary to ensure that Plaintiffs' members' interests in the species affected by products containing dimethoate are preserved and remain free from injury.

380.    EPA must register and authorize pesticide products before they can be used and has an ongoing responsibility to ensure that registered pesticides do not have unreasonable adverse effects on the environment.  Absent EPA's continuing registration and discretionary control and involvement in products containing dimethoate, these pesticides could not be used and could not be negatively impacting the listed species named in Exhibit A and their habitats.

381.    If this Court orders EPA to engage in consultation as required, the Service would analyze the extent to which the products containing dimethoate affect listed species and their habitats and, if

1    necessary, would suggest reasonable and prudent alternatives or measures to protect the species, which

2    would protect Plaintiffs' members' interests in the species.  16 U.S.C. § 1536(a)(3).  Unless the

3    requested relief is granted, Plaintiffs' interests will continue to be injured by EPA's failure to consult

4    on products containing dimethoate with the Service, as well as by the potential ongoing harm to the

5    species named in Exhibit A and their habitats as a result of ongoing use of products containing

6    dimethoate.

7         382.    The injuries described above are actual, concrete injuries that are presently suffered by

8    Plaintiffs and their members and will continue to occur unless relief is granted by this Court.  These

9    injuries are directly caused by the Defendants' failure to consult with the Service to ensure that EPA's

10   actions relating to products containing dimethoate do not affect listed species and Plaintiffs' members'

11   cognizable interests in these species.  The relief sought herein, EPA's compliance with the ESA, would

12   redress Plaintiffs' injuries.  Plaintiffs have no other adequate remedy at law, and they bring this action

13   on behalf of their adversely affected members.

14   **Diuron**[22]

15        383.    Exhibit A contains a comprehensive, but not necessarily exhaustive, list of endangered

16   and threatened species for which diuron is known to be harmful to the taxonomic group of that species

17   and is used in the state where that species lives.

18        384.    Diuron is a known endocrine disrupter.  As explained above, endocrine disrupters have

19   effects on the reproductive and immune systems capable of compromising populations of endangered

20   species.

21        385.    Diuron is a pesticide for which the EPA has indicated that estimated environmental

22   concentrations (EECs) are likely to exceed the Levels of Concern (LOCs) for endangered species,

23   and/or may cause indirect effects on endangered species by altering habitat or food sources.

24   Specifically, EECs of diuron are likely to exceed the LOCs for the following taxonomic groups:

25   mammals, birds, fish, amphibians, mollusks, crustaceans, and reptiles.

26        386.    Diuron is a pesticide that is "highly acutely toxic" or "very highly acutely toxic" to the

27   following taxonomic groups:  fish, amphibians, and crustaceans. These toxicity rankings are based on

28

---

[22] The current EPA Case Number and EPA PC Code for diuron are 0046, 035505.
Third Amended and First Supplemental Complaint for Declaratory and Injunctive Relief
Case No. 3:11-cv-00293-JCS                                                          124

LD50 or LC50 data (lethal dose to 50 percent of the test organisms or lethal concentration for 50

percent of the test organisms) that EPA possesses.

387.   The USGS has detected diuron in dozens of waterways across the nation, as documented

in reports on its nationwide water quality surveys. As shown in Exhibit B, some of these watersheds

overlap the range of species that may be affected by this pesticide.

388.   EPA "affirmatively authorized" the continued use of the active ingredient diuron when it

issued a Reregistration Eligibility Decision in September of 2003.

389.   On September 18, 2008, EPA completed product reregistration for diuron.  *See*

https://www.epa.gov/pesticide-reevaluation/pesticides-have-completed-product-reregistration (last

visited 6/26/2017).

390.   Active product registrations for this pesticide can be found on EPA's Pesticide Product

Label System, *available at* http://iaspub.epa.gov/apex/pesticides/f?p=PPLS:1 (last visited 6/26/2017).

391.   Specifically, the EPA's online Pesticide Product Label System lists the following

pesticide products containing diuron that EPA affirmatively authorized by product reregistration or new

product registration since January 20, 2005:

| Product Name | Date | Registration Number | Action |
|---|---|---|---|
| MISTY 2 PLUS 2 | 9/18/2008 | 10807-149 | Reregistration |
| RAINBOW WEED KILLER 4037 | 11/20/2007 | 13283-18 | Reregistration |
| RAINBOW WEED KILLER 4031 | 7/12/2007 | 13283-19 | Reregistration |
| RAINBOW WEED KILLER 4049 | 7/9/2007 | 13283-21 | Reregistration |
| DREXEL DIURON 80 | 6/5/2007 | 19713-274 | Reregistration |
| DREXEL DIURON 4L HERBICIDE | 7/3/2007 | 19713-36 | Reregistration |
| DIUMATE | 12/11/2007 | 19713-528 | Reregistration |
| DIBRO 2+2 | 10/29/2007 | 228-227 | Reregistration |
| DIBRO 4+2 | 5/15/2008 | 228-386 | Reregistration |
| NUFARM IMAZURON HERBICIDE | 5/3/2007 | 228-654 | Registration |
| NUFARM TDZ + DIURON SC COTTON DEFOLIANT | 5/6/2008 | 228-678 | Registration |
| TOPSITE 2.5G HERBICIDE | 8/28/2007 | 241-344 | Reregistration |
| SAHARA DG HERBICIDE | 1/26/201 | 241-372 | Reregistration |
| GINSTAR EC COTTON DEFOLIANT | 5/30/2007 | 264-634 | Reregistration |
| POND BLOCK | 8/2/2010 | 33034-1 | Reregistration |
| NO MORE ALGAE | 6/27/2008 | 33034-2 | Reregistration |
| NO MORE ALGAE LIQUID | 6/12/2008 | 33034-3 | Reregistration |

| | | | |
|---|---|---|---|
| WEED AND GRASS KILLER | 7/1/2008 | 33560-46 | Reregistration |
| WEED BLAST RESIDUAL WEED CONTROL | 8/28/2007 | 34704-576 | Reregistration |
| DIURON 80 WDG WEED KILLER | 9/20/2007 | 34704-648 | Reregistration |
| DIURON NC | 4/1/2008 | 34704-770 | Reregistration |
| DIURON 4L HERBICIDE | 10/29/2007 | 34704-854 | Reregistration |
| GINMASTER COTTON DEFOLIANT | 8/15/2007 | 34704-872 | Reregistration |
| SPRAKIL SK-13 GRANULAR WEED KILLER | 6/5/2007 | 34913-15 | Reregistration |
| SPRAKIL SK-26 GRANULAR WEED KILLER | 6/5/2007 | 34913-16 | Reregistration |
| WEED BLAST 4-G WEED KILLER | 6/5/2007 | 34913-19 | Reregistration |
| WEED BLAST 8-G WEED KILLER | 6/5/2007 | 34913-20 | Reregistration |
| TOPSITE 2.5G HERBICIDE | 6/5/2007 | 34913-22 | Reregistration |
| DUPONT DIURON 80 DRY HERBICIDE | 12/27/2010 | 352-849 | Registration |
| KROVAR I DF HERBICIDE | 8/2/2007 | 432-1551 | Reregistration |
| DIURON 4L ALGAECIDE | 3/6/2009 | 53883-245 | Registration |
| LAYBY PRO HERBICIDE | 8/30/2007 | 61842-20 | Reregistration |
| DUPONT K-4 HERBICIDE | 8/2/2007 | 61842-42 | Reregistration |
| DUPONT VELPAR ALFAMAX MP HERBICIDE | 5/18/2010 | 61842-43 | Reregistration |
| DUPONT VELPAR K-4 MAX HERBICIDE | 10/27/2005 | 61842-44 | Registration |
| VELPAR ALFAMAX | 12/8/2005 | 61842-45 | Registration |
| VELPAR ALFAMAX GOLD | 7/7/2016 | 61842-46 | Registration |
| DIURON 80 DRY II | 10/10/2015 | 61842-50 | Registration |
| BIESTERFELD DIURON 80 | 10/24/2007 | 62575-9 | Reregistration |
| REDI-PIK 1.5EC COTTON DEFOLIANT | 5/17/2011 | 66222-137 | Registration |
| DIURON MUP | 6/20/2007 | 66222-142 | Registration |
| MOHAVE 70 EG BAREGROUND VEGETATION CONTROL | 9/18/2006 | 66222-171 | Registration |
| SWEEP | 11/5/2008 | 66222-173 | Registration |
| DUPONT DIREX 4L | 8/30/2007 | 66222-237 | Reregistration |
| MANA KARMEX XP HERBICIDE | 6/6/2007 | 66222-238 | Reregistration |
| DIURON 80DF | 5/17/2007 | 66222-51 | Reregistration |
| DIURON 4L | 5/29/2007 | 66222-54 | Reregistration |
| PRAMITOL 2L-DIURON 2L | 5/17/2007 | 66222-55 | Reregistration |
| DIURON 90DF | 5/17/2007 | 66222-96 | Reregistration |
| THIDIAZURON-DIURON EC | 8/15/2007 | 66330-333 | Reregistration |
| THIDIAZURON-DIURON SC | 7/13/2006 | 66330-344 | Registration |
| THIDIAZURON-DIURON 4.55C | 9/21/2007 | 66330-364 | Registration |
| ACTICIDE PM FLOWABLE | 12/4/2007 | 67071-15 | Reregistration |
| ALLIGARE DIURON 80DF | 5/22/2007 | 81927-12 | Registration |

| ALLIGARE MOJAVE 70 EG | 11/14/2007 | 81927-25 | Registration |
|---|---|---|---|
| BROMACIL/DIURON 40/40 | 9/26/2005 | 81927-3 | Registration |
| ALLIGARE DIURON 4L | 8/2/2010 | 81927-44 | Registration |
| DIURON 80 DF | 1/18/2012 | 83222-38 | Registration |
| DIURON 4L | 1/18/2012 | 83222-39 | Registration |
| DIURON 4L | 1/10/2012 | 85678-24 | Registration |
| AX THI-DI | 8/13/2014 | 89167-44 | Registration |
| LIBERTY DIURON 4SC | 9/20/2012 | 89168-12 | Registration |
| LIBERTY DIURON 80DF | 9/20/2012 | 89168-15 | Registration |
| DIURON 80DF | 8/2/2007 | 9779-318 | Reregistration |
| DIURON 4L | 9/20/2007 | 9779-329 | Reregistration |

392.   Upon information and belief, EPA provided no hearings or other public participation for these product registration actions.

393.   As set forth above, EPA has discretion to influence or change registrations of pesticide products for the benefit of protected species.  For example, EPA may only register or reregister a pesticide product if its use does not cause an unreasonable adverse effect on the environment.  7 U.S.C. § 136a(c)(5); 7 U.S.C. § 136a-1(g)(2)(C); 40 C.F.R. § 152.112; 40 C.F.R. § 152.113(a).   EPA may also change, cancel, restrict, or immediately suspend registered pesticides, pesticide labeling, or particular uses at any time if it appears that the pesticide is causing an unreasonable adverse effect on the environment.  7 U.S.C. § 136d(c).   Thus, EPA's product reregistration and its approvals of products containing diuron are "affirmative agency actions" subject to consultation under Section 7(a)(2) of the ESA. 16 U.S.C. § 1536(a)(2).

394.   Plaintiffs' members live, work, visit, recreate, and otherwise enjoy areas across the nation that may be impacted by products containing diuron.  Plaintiffs' members derive professional, aesthetic, spiritual, recreational, economic, and educational benefits from the endangered and threatened species that live in these areas and may be impacted by products containing diuron.  The list of species that may be affected by products containing diuron is provided in Exhibit A, and Plaintiffs' members have cognizable interests in these species.

395.   For example, products containing diuron may affect the conservancy fairy shrimp, and a member of Plaintiffs' organizations has a cognizable interest in this species based on, among other things, his efforts to observe the species during frequent visits to habitats where the species can be found and may be affected by products containing diuron.

396.    In the 5-year review of the conservancy fairy shrimp, FWS explains: "Because pesticides can be transported through the variety of methods . . ., and the high prevalence of pesticide use throughout the Central Valley, we believe it is likely that vernal pools containing Conservancy fairy shrimp have been exposed to harmful pesticides to some degree." And FWS lists "pesticide use" as a threat to the species.

397.    Plaintiffs' members engage in wildlife observation, research, photography, restoration activities, and educational programs involving endangered and threatened species that may be impacted by products containing diuron.  Plaintiffs' members will continue to maintain an interest in the species and areas that may be impacted by products containing diuron in the future.

398.    The above-described interests of Plaintiffs and their members have been and are being adversely affected by EPA's reregistration, registration and authorization of the use of products containing diuron, which is a pesticide that may harm endangered and threatened species and their habitats.  As alleged in the Complaint, products containing diuron may affect the species identified in Exhibit A, as well as their designated critical habitat.

399.    EPA's failure to ensure that products containing diuron do not impact endangered species and their habitats harms Plaintiffs' members' interests in the species and their habitats affected by products containing diuron.  For example, EPA's failure to consult on products containing diuron may impair recovery of species impacted by products containing diuron and may make it more likely that these species would suffer population declines.  Species declines and impaired recovery harm the interests that Plaintiffs' members have in the existence of these rare animals, such as by limiting their ability to observe the species.  Consultation on products containing diuron is necessary to ensure that Plaintiffs' members' interests in the species affected by products containing diuron are preserved and remain free from injury.

400.    EPA must register and authorize pesticide products before they can be used and has an ongoing responsibility to ensure that registered pesticides do not have unreasonable adverse effects on the environment.  Absent EPA's continuing registration and discretionary control and involvement in products containing diuron, this pesticide could not be used and could not negatively impact the listed species named in Exhibit A and their habitats.

401.   If this Court orders EPA to engage in consultation as required, the Service would analyze the extent to which products containing diuron affect listed species and their habitats and, if necessary, would suggest reasonable and prudent alternatives or measures to protect the species, which would protect Plaintiffs' members' interests in the species.  16 U.S.C. § 1536(a)(3).  Unless the requested relief is granted, Plaintiffs' interests will continue to be injured by EPA's failure to consult on products containing diuron with the Service, as well as by the potential ongoing harm to the species named in Exhibit A and their habitats as a result of ongoing use of products containing diuron.

402.   The injuries described above are actual, concrete injuries that are presently suffered by Plaintiffs and their members and will continue to occur unless relief is granted by this Court.  These injuries are directly caused by the Defendants' failure to consult with the Service to ensure that EPA's actions relating to products containing diuron do not affect listed species and Plaintiffs' members' cognizable interests in these species.  The relief sought herein, EPA's compliance with the ESA, would redress Plaintiffs' injuries.  Plaintiffs have no other adequate remedy at law, and they bring this action on behalf of their adversely affected members.

**Ethoprop**[23]

403.   Exhibit A contains a comprehensive, but not necessarily exhaustive, list of endangered and threatened species for which ethoprop is known to be harmful to the taxonomic group of that species and is used in the state where that species lives.

404.   Ethoprop is a pesticide for which the EPA has indicated that estimated environmental concentrations (EECs) are likely to exceed the Levels of Concern (LOCs) for endangered species, and/or may cause indirect effects on endangered species by altering habitat or food sources.  Specifically, EECs of ethoprop are likely to exceed the LOCs for the following taxonomic groups: mammals, birds, fish, amphibians, mollusks, crustaceans, and reptiles.

405.   In its September 18, 2015 Environmental Fate and Ecological Risk Assessment for the Registration Review of Ethoprop, EPA states: "Based on current uses and potential aquatic exposure levels, acute and chronic risk above the established levels of concern was identified for all aquatic taxa except for plants in both freshwater and estuarine/marine environments." EPA further states:

---

[23] The current EPA Case Number and EPA PC Code for ethoprop are 0106, 041101.

1  "Environmental fate modeling and risk quotient determination indicate potential adverse effects on

2  aquatic animal taxa. Acute and chronic risk to freshwater fish, estuarine/marine fish, freshwater

3  invertebrates, and estuarine/marine invertebrates, and both freshwater and estuarine sediment

4  invertebrates was identified." EPA further states, : "LD50 per square foot analysis indicated that there

5  is acute risk to both birds and mammals from granular formulations. There was also acute dose based

6  and acute dietary based risk as well as chronic dietary risk to birds associated from EC applications.

7  Similarly, there was acute and chronic dose based risk as well as chronic dietary based risk to mammals

8  from EC applications. Both bird and mammals are predicted to be adversely affected by consumption

9  of fish contaminated with ethoprop. Modeling predicted risk to birds from acute dose based, acute

10  dietary based and chronic dietary based exposure to contaminated fish. Mammals are also predicted to

11  be at risk from acute dose based as well as chronic dose based and dietary based exposure to

12  contaminated fish. Other indirect routes of exposure may include consumption of contaminated

13  earthworms in treated fields. Modeling indicated acute avian risk from both dose-based and dietary

14  exposure as well as chronic risk from dietary exposure ." And, EPA further states: "Risk to terrestrial

15  invertebrates is predicted from Bee-REX modeling if exposure occurs to pollinators foraging on fields

16  during the time of application."

17       406.    Ethoprop is a pesticide that is "highly acutely toxic" or "very highly acutely toxic" to the

18  following taxonomic groups:  birds, fish, amphibians, crustaceans, and reptiles. These toxicity rankings

19  are based on LD50 or LC50 data (lethal dose to 50 percent of the test organisms or lethal concentration

20  for 50 percent of the test organisms) that EPA possesses.

21       407.    The USGS has detected ethoprop in dozens of waterways across the nation, as

22  documented in reports on its nationwide water quality surveys. As shown in Exhibit B, some of these

23  watersheds overlap the range of species that may be affected by this pesticide.

24       408.    EPA "affirmatively authorized" the continued use of the active ingredient ethoprop when

25  it issued a Reregistration Eligibility Decision in July of 2006.

26       409.    On December 13, 2006, EPA completed product reregistration for ethoprop.  *See*

27  https://www.epa.gov/pesticide-reevaluation/pesticides-have-completed-product-reregistration (last

28  visited 6/26/2017).

410.     Active product registrations for this pesticide can be found on EPA's Pesticide Product Label System, *available at* http://iaspub.epa.gov/apex/pesticides/f?p=PPLS:1 (last visited 6/26/2017).

411.     Specifically, EPA's online Pesticide Product Label System lists the following pesticide products containing ethoprop that EPA affirmatively authorized by product reregistration or new product registration since January 20, 2005:

| Product Name | Date | Registration Number | Action |
|---|---|---|---|
| MOCAP 15% GRANULAR NEMATICIDE – INSECTICIDE | 9/25/2006 | 5481-9040 | Reregistration |
| MOCAP EC NEMATICIDE – INSECTICIDE | 9/25/2006 | 5481-9041 | Reregistration |
| MOCAP 20% GRANULAR LOCK 'N LOAD NEMATICIDE-INSECTICIDE | 9/25/2006 | 5481-9042 | Reregistration |
| ETHOPROP TECHNICAL | 9/24/2015 | 5481-9043 | Reregistration |

412.     Upon information and belief, EPA provided no hearings or other public participation for these product registration actions.

413.     As set forth above, EPA has discretion to influence or change registrations of pesticide products for the benefit of protected species.  For example, EPA may only register or reregister a pesticide product if its use does not cause an unreasonable adverse effect on the environment.  7 U.S.C. § 136a(c)(5); 7 U.S.C. § 136a-1(g)(2)(C); 40 C.F.R. § 152.112; 40 C.F.R. § 152.113(a).   EPA may also change, cancel, restrict, or immediately suspend registered pesticides, pesticide labeling, or particular uses at any time if it appears that the pesticide is causing an unreasonable adverse effect on the environment.  7 U.S.C. § 136d(c).   Thus, EPA's product reregistration and its approvals of products containing ethoprop constitute "affirmative agency actions" subject to consultation under Section 7(a)(2) of the ESA. 16 U.S.C. § 1536(a)(2).

414.     Plaintiffs' members live, work, visit, recreate, and otherwise enjoy areas across the nation that may be impacted by products containing ethoprop.  Plaintiffs' members derive professional, aesthetic, spiritual, recreational, economic, and educational benefits from the endangered and threatened species that live in these areas and may be impacted by products containing ethoprop.  The list of species that may be affected by products containing ethoprop is provided in Exhibit A, and Plaintiffs' members have cognizable interests in these species.

415.    For example, products containing ethoprop may affect the reticulated flatwoods salamander, and a member of Plaintiffs' organizations has a cognizable interest in this species based on, among other things, efforts to observe the species during frequent visits to habitats where the species can be found and may be affected by by products containing ethoprop.

416.    In the listing document for the reticulated flatwoods salamander, the U.S. Fish and Wildlife Service explains: "Pesticides (including herbicides) may pose a threat to amphibians, such as the reticulated flatwoods salamander, because their permeable eggs and skin readily absorb substances from the surrounding aquatic or terrestrial environment (Duellman and Trueb 1986, pp. 199-200). Negative effects that commonly used pesticides and herbicides may have on amphibians include delayed metamorphosis, paralysis, reduced growth rate, and mortality (Bishop 1992, pp. 67-69)."

417.    Plaintiffs' members engage in wildlife observation, research, photography, restoration activities, and educational programs involving endangered and threatened species that may be impacted by products containing ethoprop.  Plaintiffs' members will continue to maintain an interest in the species and areas that may be impacted by products containing ethoprop in the future.

418.    The above-described interests of Plaintiffs and their members have been and are being adversely affected by EPA's reregistration, registration and authorization of the use of products containing ethoprop, which is a pesticide that may harm endangered and threatened species and their habitats.  As alleged in the Complaint, products containing ethoprop may affect the species identified in Exhibit A, as well as their designated critical habitat.

419.    EPA's failure to ensure that products containing ethoprop does not impact endangered species and their habitats harms Plaintiffs' members' interests in the species and their habitats affected by products containing ethoprop.  For example, EPA's failure to consult on products containing ethoprop may impair recovery of species impacted by products containing ethoprop and may make it more likely that these species would suffer population declines.  Species declines and impaired recovery harm the interests that Plaintiffs' members have in the existence of these rare animals, such as by limiting their ability to observe the species.  Consultation on products containing ethoprop is necessary to ensure that Plaintiffs' members' interests in the species affected by products containing ethoprop are preserved and remain free from injury.

420.   EPA must register and authorize pesticide products before they can be used and has an ongoing responsibility to ensure that registered pesticides do not have unreasonable adverse effects on the environment.  Absent EPA's continuing registration and discretionary control and involvement in products containing ethoprop, this pesticide could not be used and could not negatively impact the listed species named in Exhibit A and their habitats.

421.   If this Court orders EPA to engage in consultation as required, the Service would analyze the extent to which products containing ethoprop affect listed species and their habitats and, if necessary, would suggest reasonable and prudent alternatives or measures to protect the species, which would protect Plaintiffs' members' interests in the species.  16 U.S.C. § 1536(a)(3).  Unless the requested relief is granted, Plaintiffs' interests will continue to be injured by EPA's failure to consult on products containing ethoprop with the Service, as well as by the potential ongoing harm to the species named in Exhibit A and their habitats as a result of ongoing use of products containing ethoprop.

422.   The injuries described above are actual, concrete injuries that are presently suffered by Plaintiffs and their members and will continue to occur unless relief is granted by this Court.  These injuries are directly caused by the Defendants' failure to consult with the Service to ensure that EPA's actions relating to products containing ethoprop do not affect listed species and Plaintiffs' members' cognizable interests in these species.  The relief sought herein, EPA's compliance with the ESA, would redress Plaintiffs' injuries.  Plaintiffs have no other adequate remedy at law, and they bring this action on behalf of their adversely affected members.

**MCPA, Salts and Esters**[24]

423.   Exhibit A contains a comprehensive, but not necessarily exhaustive, list of endangered and threatened species for which MCPA, salts and esters are known to be harmful to the taxonomic group of that species and is used in the state where that species lives.

---

[24] MCPA, salts and esters refers to the following, which also shows the current EPA Case Number and EPA PC Code: MCPA, 2-ethyl hexyl ester (0017, 030564); MCPA, dimethylamine salt (0017, 030516); MCPA, isooctyl ester (0017, 030563); MCPA (0017, 030501); MCPA, sodium salt (0017, 030502).

424.    MCPA, salts and esters are pesticides for which the EPA has indicated that estimated environmental concentrations (EECs) are likely to exceed the Levels of Concern (LOCs) for endangered species, and/or may cause indirect effects on endangered species by altering habitat or food sources.  Specifically, EECs of MCPA, salts and esters are likely to exceed the LOCs for the following taxonomic groups:  mammals, birds, and reptiles.

425.    The MCPA, salts and esters are pesticides that are "highly acutely toxic" or "very highly acutely toxic" to the following taxonomic groups:  fish, amphibians, mollusks, and crustaceans.  These toxicity rankings are based on LD50 or LC50 data (lethal dose to 50 percent of the test organisms or lethal concentration for 50 percent of the test organisms) that EPA possesses.

426.    The USGS has detected MCPA, salts and esters in dozens of waterways across the nation, as documented in reports on its nationwide water quality surveys. As shown in Exhibit B, some of these watersheds overlap the range of species that may be affected by this pesticide.

427.    EPA "affirmatively authorized" the continued use of the active ingredient MCPA, salts and esters when it issued a Reregistration Eligibility Decision in September of 2004.

428.    On August 18, 2010, EPA completed product reregistration for the MCPA, salts and esters.  *See* https://www.epa.gov/pesticide-reevaluation/pesticides-have-completed-product-reregistration (last visited 6/26/2017).

429.    Active product registrations for this pesticide can be found on EPA's Pesticide Product Label System, *available at* http://iaspub.epa.gov/apex/pesticides/f?p=PPLS:1 (last visited 6/26/2017).

430.    Specifically, the EPA's online Pesticide Product Label System lists the following pesticide products containing MCPA, salts and esters that EPA affirmatively authorized by product reregistration or new product registration since January 20, 2005[25]:

| Product Name | Date | Registration Number | Action |
|---|---|---|---|
| ORION HERBICIDE | 2/13/2008 | 100-1307 | Registration |
| RHOMENE MCPA AMINE HERBICIDE | 12/27/2007 | 11685-19 | Reregistration |

---

[25] Where a date is not included, the EPA documentation of product reregistration did not appear on EPA's Pesticide Product Label System. However, product reregistration should have occurred between the September, 2004 RED and the August 8, 2010 completion of product reregistration.

| | | | |
|---|---|---|---|
| CHIPTOX MCPA SODIUM SALT HERBICIDE | 1/20/2008 | 11685-20 | Reregistration |
| RHONOX MCPA LOW VOLATILE ESTER HERBICIDE | | 11685-21 | Reregistration |
| MCPA AMINE | 3/10/2008 | 1381-104 | Reregistration |
| WELD HERBICIDE | 3/18/2011 | 1381-246 | Registration |
| CARNIVORE HERBICIDE | 11/16/2011 | 1381-249 | Registration |
| MCPE PHENOXY HERBICIDE | 7/23/2008 | 1381-98 | Reregistration |
| AGROXONE | 12/26/2007 | 15440-37 | Reregistration |
| GORDON'S MCPA AMINE 4 | 1/11/2008 | 2217-362 | Reregistration |
| TRIMEC 959 BROADLEAF HERBICIDE | 4/9/2009 | 2217-773 | Reregistration |
| EH1153 WEED AND FEED 21-3-5 | 1/30/2008 | 2217-798 | Reregistration |
| EH-1154 WEED AND FEED 21-3-5 | 6/20/2008; 7/6/2009 | 2217-799 | Reregistration |
| EH1180 HERBICIDE | 8/11/2009 | 2217-803 | Registration |
| POWER ZONE BROADLEAF HERBICIDE FOR TURF | 10/22/2009 | 2217-834 | Reregistration |
| EH-1403 HERBICIDE | 8/20/2009 | 2217-863 | Reregistration |
| EH 1404 HERBICIDE | 10/1/2009 | 2217-865 | Reregistration |
| EH-1410 HERBICIDE | 1/31/2008 | 2217-873 | Reregistration |
| EH-1456 HERBICIDE | 9/17/2008 | 2217-914 | Registration |
| EH-1455 HERBICIDE | 9/17/2008 | 2217-915 | Registration |
| EH-1462 HERBICIDE | 10/2/2008 | 2217-917 | Registration |
| EH-1464 HERBICIDE | 10/2/2008 | 2217-918 | Registration |
| EH-1484 HERBICIDE | 8/6/2010 | 2217-940 | Registration |
| EH-1483 HERBICIDE | 8/6/2010 | 2217-941 | Registration |
| EH-1482 HERBICIDE | 4/29/2011 | 2217-945 | Registration |
| EH-1485 HERBICIDE | 1/21/2011 | 2217-946 | Registration |
| EH-1497 HERBICIDE | 9/15/2011 | 2217-953 | Registration |
| EH-1457 HERBICIDE | 9/15/2011 | 2217-954 | Registration |
| EH-1454 WEED & FEED | 9/15/2011 | 2217-956 | Registration |
| EH-1504 WEED & FEED | 9/15/2011 | 2217-957 | Registration |
| EH-1506 HERBICIDE | 7/14/2011 | 2217-958 | Registration |
| EH-1516 HERBICIDE | 10/11/2011 | 2217-961 | Registration |
| EH-1517 HERBICIDE | 10/11/2011 | 2217-962 | Registration |
| EH-1515 HERBICIDE | 2/7/2012 | 2217-965 | Registration |
| EH-1514 HERBICIDE | 5/7/2012 | 2217-966 | Registration |
| EH-1500 WEED & FEED | 6/8/2012 | 2217-967 | Registration |
| EH-1501 WEED & FEED | 6/8/2012 | 2217-968 | Registration |
| EH-1503 WEED & FEED | 8/23/2012 | 2217-969 | Registration |
| EH-1502 WEED & FEED | 8/23/2012 | 2217-970 | Registration |
| EH 1509 HERBICIDE | 8/28/2012 | 2217-971 | Registration |
| EH-1531 HERBICIDE | 8/26/2013 | 2217-979 | Registration |

| Product | Date | Number | Type |
|---|---|---|---|
| EH 1539 HERBICIDE | 11/18/2013 | 2217-984 | Registration |
| 1540 LCO TURF HERBICIDE | 11/18/2013 | 2217-985 | Registration |
| EH 1541 HERBICIDE | 11/21/2013 | 2217-986 | Registration |
| EH 1507 HERBICIDE | 9/10/2014 | 2217-994 | Registration |
| MCPA-4 AMINE | 1/11/2008 | 228-143 | Reregistration |
| RIVERDALE MCPA L.V. 4 ESTER | 9/17/2008 | 228-156 | Reregistration |
| RIVERDALE SODIUM SALT OF MCPA | 1/30/2008 | 228-199 | Reregistration |
| TRIAMINE II | 1/11/2008 | 228-206 | Reregistration |
| TRIAMINE II LAWN WEED KILLER | 1/11/2007 | 228-217 | Reregistration |
| TRI-POWER SELECTIVE HERBICIDE | 8/6/2009 | 228-262 | Reregistration |
| DAGGER SELECTIVE HERBICIDE | 1/24/2008 | 228-267 | Reregistration |
| SWEET SIXTEEN WEED AND FEED WITH TRI-POWER (R) | | 228-269 | Reregistration |
| RIVERDALE TRI-POWER (R) WEED AND FEED | 8/6/2009 | 228-270 | Reregistration |
| RIVERDALE TRI-POWER (R) LAWN WEED KILLER | | 228-271 | Reregistration |
| RIVERDALE TRI-POWER (R) SPOT WEED KILLER | | 228-272 | Reregistration |
| RIVERDALE TRI-POWER (R) LIQUID WEED AND FEED | 8/2/2011 | 228-276 | Reregistration |
| TRI-POWER PREMIUM LIQUID WEED AND FEED | 8/18/2010 | 228-277 | Reregistration |
| TRI-POWER (R) JET-SPRAY SPOT WEED KILLER | 1/28/2008 | 228-284 | Reregistration |
| RIVERDALE TRI-POWER L.A. WEED AND FEED | 5/3/2010 | 228-286 | Reregistration |
| RIVERDALE VETERAN 2010 HERBICIDE | 8/10/2009 | 228-296 | Reregistration |
| TRI-POWER (R) GRANULAR WEED KILLER | 8/24/2009 | 228-303 | Reregistration |
| 3-WAY WEED AND FEED WITH TRI-POWER (R) | 8/24/2009 | 228-304 | Reregistration |
| HORSEPOWER SELECTIVE HERBICIDE | 8/13/2009 | 228-313 | Reregistration |
| COOL POWER SELECTIVE HERBICIDE | 9/11/2009 | 228-317 | Reregistration |
| RIVERDALE TRUPOWER SELECTIVE HERBICIDE | 8/10/2009 | 228-323 | Reregistration |
| RIVERDALE SWEET SIXTEEN XL WEED AND FEED WITH HORSEPOWER | 6/16/2009 | 228-324 | Reregistration |
| RIVERDALE SWEET SIXTEEN WEED AND FEED WITH HORSEPOWER | 11/5/2007 | 228-325 | Reregistration |

| | | | |
|---|---|---|---|
| HORSEPOWER WEED AND FEED | 5/20/2009 | 228-326 | Reregistration |
| RIVERDALE HORSEPOWER L.A. WEED AND FEED | 8/6/2009 | 228-327 | Reregistration |
| HORSEPOWER GRANULAR WEED KILLER | 8/6/2009 | 228-328 | Reregistration |
| TRI-POWER N.Y. WEED AND FEED | 8/20/2009 | 228-330 | Reregistration |
| RIVERDALE MCDA L.A.C. SELECTIVE HERBICIDE | 6/30/2009 | 228-333 | Reregistration |
| RIVERDALE HORSEPOWER LAWN WEED KILLER | 8/13/2009 | 228-334 | Reregistration |
| RIVERDALE HORSEPOWER 8000 LAWN WEED KILLER | 1/31/2008 | 228-335 | Reregistration |
| HORSEPOWER SPOT WEED KILLER | 8/6/2009 | 228-336 | Reregistration |
| ECLIPSE SELECTIVE HERBICIDE | 1/23/2008 | 228-372 | Reregistration |
| PROGENY HERBICIDE | 7/1/2008 | 228-395 | Reregistration |
| RIVERDALE WIL-POWER SELECTIVE HERBICIDE | 7/23/2010 | 228-411 | Reregistration |
| TRUPOWER 2 SELECTIVE HERBICIDE | 9/11/2009 | 228-419 | Reregistration |
| CHASER ULTRA 2 SELECTIVE HERBICIDE | 12/10/2007 | 228-420 | Reregistration |
| RIVERDALE BATTLESHIP 2 SELECTIVE HERBICIDE | 3/24/2005 | 228-422 | Registration |
| CHANGE UP SELECTIVE HERBICIDE | 5/19/2005 | 228-445 | Registration |
| CHASER ULTRA3 SELECTIVE HERBICIDE | 5/27/2005 | 228-449 | Registration |
| BATTLESHIP 3 SELECTIVE HERBICIDE | 8/25/2005 | 228-453 | Registration |
| BRONATE ADVANCED HERBICIDE | 11/5/2007 | 264-690 | Reregistration |
| VENDETTA HERBICIDE | 11/22/2010 | 2935-552 | Registration |
| BASE CAMP MCP ESTER | 1/31/2011 | 2935-554 | Registration |
| COLT + SWORD HERBICIDE | 12/26/2007 | 34704-1011 | Reregistration |
| HAT TRICK THREE WAY HERBICIDE | 4/16/2009 | 34704-1017 | Registration |
| BROMAC ADVANCED | 3/19/2010 | 34704-1052 | Registration |
| MCP AMINE 4 | 6/6/2008 | 34704-130 | Reregistration |
| BROMAC | 10/21/2005 | 34704-886 | Registration |
| CHASER ULTRA 2 SELECTIVE HERBICIDE | 4/17/2006 | 34704-927 | Registration |
| MCP ESTER 4 HERBICIDE | 6/30/2008 | 34704-992 | Reregistration |
| SEE MCPA ESTER HERBICIDE | 6/17/2008 | 35935-20 | Reregistration |
| TRI-POWER OPTICAL MC | 6/30/2011 | 35935-85 | Registration |
| TRI-POWER OPTICAL NY MC | 8/2/2011 | 35935-89 | Registration |
| BROX-M ADVANCED | 11/18/2005 | 42750-103 | Registration |
| MCPA AMINE 4 | 12/27/2007 | 42750-14 | Reregistration |

| MCPA ESTER 4 | 1/17/2008 | 42750-23 | Reregistration |
|---|---|---|---|
| 91% MCPA ESTER | 10/3/2011 | 42750-233 | Registration |
| ALBAUGH SOLVE MCPA | 1/28/2008 | 42750-25 | Reregistration |
| DMD 3-WAY | 11/6/2014 | 42750-272 | Registration |
| MCPA DMA 750 | 9/27/2007 | 42750-306 | Reregistration |
| BROX-M HERBICIDE | 1/31/2008 | 42750-52 | Reregistration |
| CLOPYRALID ACID + MCPA ESTER | 6/1/2005 | 42750-91 | Registration |
| TURF BUILDER PLUS 2 W/S FOR GRASS | | 538-160 | Reregistration |
| WEED-RHAP MCPA ESTER | 6/30/2008 | 5905-506 | Reregistration |
| WILDCARD XTRA | 1/31/2008 | 5905-550 | Reregistration |
| VOUCHER HERBICIDE | 5/7/2012 | 5905-585 | Registration |
| HM-1144 HERBICIDE | 2/21/2013 | 5905-590 | Registration |
| MCP AMINE | 12/27/2007 | 62719-13 | Reregistration |
| GF-1727 | 9/28/2007 | 62719-562 | Registration |
| MCP ESTER HERBICIDE | 11/20/2006 | 62719-573 | Registration |
| MCPA AMINE | 4/30/2008 | 62719-62 | Reregistration |
| CURTAIL M | 7/23/2008 | 62719-86 | Reregistration |
| MCP AMINE WEED KILLER | 5/19/2008 | 67591-1 | Reregistration |
| MCP ACID | 3/24/2008 | 67591-2 | Reregistration |
| TECHNICAL I O ESTER | 1/17/2008 | 67591-3 | Reregistration |
| TRUSLATE PRO HERBICIDE | 4/1/2009 | 71368-88 | Registration |
| CLEANSWEEP M HERBICIDE | 9/2/2009 | 71368-89 | Registration |
| VENDETTA F HERBICIDE | 7/1/2010 | 71368-98 | Registration |
| CLEARMAX HERBICIDE | 5/15/2006 | 7969-238 | Registration |
| TRIAD SELECT HERBICIDE | 3/26/2015 | 89442-22 | Registration |
| CHEMISCO HERBICIDE CONCENTRATE 1455 | 3/25/2010 | 9688-278 | Registration |
| CHEMISCO RTU HERBICIDE 1456 | 3/25/2010 | 9688-279 | Registration |
| CHEMISCO RTU HERBICIDE 1462 | 3/25/2010 | 9688-280 | Registration |
| CHEMISCO HERBICIDE CONCENTRATE 1464 | 3/25/2010 | 9688-281 | Registration |

431.    Upon information and belief, EPA provided no hearings or other public participation for these product registration actions.

432.    As set forth above, EPA has discretion to influence or change registrations of pesticide products for the benefit of protected species.  For example, EPA may only register or reregister a pesticide product if its use does not cause an unreasonable adverse effect on the environment.  7 U.S.C. § 136a(c)(5); 7 U.S.C. § 136a-1(g)(2)(C); 40 C.F.R. § 152.112; 40 C.F.R. § 152.113(a).   EPA may also change, cancel, restrict, or immediately suspend registered pesticides, pesticide labeling, or particular

uses at any time if it appears that the pesticide is causing an unreasonable adverse effect on the environment. 7 U.S.C. § 136d(c).  Thus, EPA's product reregistration and its approvals of products containing MPCA salts and esters are "affirmative agency actions" subject to consultation under Section 7(a)(2) of the ESA. 16 U.S.C. § 1536(a)(2).

433.    Plaintiffs' members live, work, visit, recreate, and otherwise enjoy areas across the nation that may be impacted by products containing MCPA, salts and esters.  Plaintiffs' members derive professional, aesthetic, spiritual, recreational, economic, and educational benefits from the endangered and threatened species that live in these areas and may be impacted by products containing MCPA, salts and esters.  The list of species that may be affected by products containing MCPA, salts and esters is provided in Exhibit A, and Plaintiffs' members have cognizable interests in these species.

434.    For example, products containing MCPA, salts and esters may affect the blunt-nosed leopard lizard, and a member of Plaintiffs' organizations has a cognizable interest in this species based on, among other things, his efforts to observe the species during frequent visits to habitats where the species can be found and may be affected by products containing MCPA, salts and esters.

435.    In the recovery plan for the blunt-nosed leopard lizard, FWS states: "This dramatic loss of natural communities was the result of cultivation, modification and alteration of existing communities for petroleum and mineral extraction, pesticide applications, off-road vehicle use, and construction of transportation, communications, and irrigation infrastructures. These processes collectively have caused the reduction and fragmentation of populations and decline of blunt-nosed leopard lizards (Stebbins 1954, Montanucci 1965, USEWS 1980a, 1985a, Germano and Williams 1993)." MCPA salts and esters are herbicides commonly used in crops and pasture.

436.    Plaintiffs' members engage in wildlife observation, research, photography, restoration activities, and educational programs involving endangered and threatened species that may be impacted by products containing MCPA, salts and esters.  Plaintiffs' members will continue to maintain an interest in the species and areas that may be impacted by products containing MCPA, salts and esters in the future.

437.    The above-described interests of Plaintiffs and their members have been and are being adversely affected by EPA's reregistration, registration and authorization of the use of products

containing MCPA, salts and esters, which is a pesticide that may harm endangered and threatened species and their habitats.  As alleged in the Complaint, products containing MCPA, salts and esters may affect the species identified in Exhibit A, as well as their designated critical habitat.

438.    EPA's failure to ensure that products containing MCPA, salts and esters do not impact endangered species and their habitats harms Plaintiffs' members' interests in the species and their habitats affected by products containing MCPA, salts and esters.  For example, EPA's failure to consult on products containing MCPA, salts and esters may impair recovery of species impacted by products containing MCPA, salts and esters and may make it more likely that these species would suffer population declines.  Species declines and impaired recovery harm the interests that Plaintiffs' members have in the existence of these rare animals, such as by limiting their ability to observe the species.  Consultation on products containing MCPA, salts and esters is necessary to ensure that Plaintiffs' members' interests in the species affected by products containing MCPA, salts and esters are preserved and remain free from injury.

439.    EPA must register and authorize pesticides before they can be used and has an ongoing responsibility to ensure that registered pesticides do not have unreasonable adverse effects on the environment.  Absent EPA's continuing registration and discretionary control and involvement in products containing MCPA, salts and esters, this pesticide could not be used and could not negatively impact the listed species named in Exhibit A and their habitats.

440.    If this Court orders EPA to engage in consultation as required, the Service would analyze the extent to which products containing MCPA, salts and esters affect listed species and their habitats and, if necessary, would suggest reasonable and prudent alternatives or measures to protect the species, which would protect Plaintiffs' members' interests in the species.  16 U.S.C. § 1536(a)(3).  Unless the requested relief is granted, Plaintiffs' interests will continue to be injured by EPA's failure to consult on products containing MCPA, salts and esters with the Service, as well as by the potential ongoing harm to the species named in Exhibit A and their habitats as a result of ongoing use of products containing MCPA, salts and esters.

441.    The injuries described above are actual, concrete injuries that are presently suffered by Plaintiffs and their members and will continue to occur unless relief is granted by this Court.  These

1   injuries are directly caused by the Defendants' failure to consult with the Service to ensure that EPA's

2   actions relating to products containing MCPA, salts and esters do not affect listed species and

3   Plaintiffs' members' cognizable interests in these species.  The relief sought herein, EPA's compliance

4   with the ESA, would redress Plaintiffs' injuries.  Plaintiffs have no other adequate remedy at law, and

5   they bring this action on behalf of their adversely affected members.

6   **Mancozeb**[26]

7        442.   Exhibit A contains a comprehensive, but not necessarily exhaustive, list of endangered

8   and threatened species for which mancozeb is known to be harmful to the taxonomic group of that

9   species and is used in the state where that species lives.

10        443.   Mancozeb is a pesticide for which the EPA has indicated that estimated environmental

11   concentrations (EECs) are likely to exceed the Levels of Concern (LOCs) for endangered species,

12   and/or may cause indirect effects on endangered species by altering habitat or food sources.

13   Specifically, EECs of mancozeb are likely to exceed the LOCs for the following taxonomic groups:

14   mammals, birds, freshwater fish, freshwater invertebrates, estuarine/marine fish, estuarine/marine

15   invertebrates, and nonvascular aquatic plants.

16        444.   Mancozeb is a pesticide that is "highly acutely toxic" or "very highly acutely toxic" to

17   the following taxonomic groups:  fish, amphibians, and crustaceans.  These toxicity rankings are based

18   on LD50 or LC50 data (lethal dose to 50 percent of the test organisms or lethal concentration for 50

19   percent of the test organisms) that EPA possesses.

20        445.   EPA "affirmatively authorized" the continued use of the active ingredient mancozeb

21   when it issued a Reregistration Eligibility Decision in September of 2005.  EPA's 2005 mancozeb RED

22   states:  **"**Available screening-level information for mancozeb indicate a potential concern for chronic

23   effects on listed species of birds and mammals, acute and chronic effects on listed  species of

24   freshwater fish and freshwater invertebrates, and acute effects on listed species of estuarine/marine fish

25   should exposure actually occur . . . ."

26

27

28

---

[26] The current EPA Case Number and EPA PC Code for mancozeb are 0643, 014504.

446.   On June 11, 2013, EPA completed product reregistration for mancozeb. *See* https://www.epa.gov/pesticide-reevaluation/pesticides-have-completed-product-reregistration (last visited 6/26/2017).

447.   Active product registrations for this pesticide can be found on EPA's Pesticide Product Label System, *available at* http://iaspub.epa.gov/apex/pesticides/f?p=PPLS:1 (last visited 6/26/2017). Specifically, the EPA's online Pesticide Product Label System lists the following pesticide products containing mancozeb that EPA affirmatively authorized by product reregistration or new product registration since January 20, 2005:

| Product Name | Date | Registration Number | Action |
|---|---|---|---|
| MAXIM MZ | 11/30/2009 | 100-1158 | Reregistration |
| RIDOMIL GOLD MZ WG | 5/16/2007 | 100-1269 | Registration |
| PROTECT DF | 7/25/2011 | 1001-77 | Reregistration |
| MEFENOXAM MZ | 11/30/2009 | 100-803 | Reregistration |
| MONCOAT MZ | 9/22/2010 | 10163-320 | Registration |
| GAVEL 75 DF | 7/21/2011 | 10163-6414 | Reregistration |
| P.S.T. 6 | 8/20/2012 | 11682-35 | Reregistration |
| DREXEL MANCOZEB TECHNICAL | 8/14/2008 | 19713-613 | Reregistration |
| ACROBAT MZ FUNGICIDE | 3/26/2009 | 241-383 | Reregistration |
| ACROBAT MZ WDG FUNGICIDE | 6/8/2009 | 241-395 | Reregistration |
| STATURE MZ FUNGICIDE | 2/18/2009 | 241-411 | Reregistration |
| KOVERALL FUNGICIDE | 9/30/2011 | 279-3580 | Registration |
| MANCOZEB POTATO SEED PROTECTANT FUNGICIDE | 8/27/2009 | 2935-496 | Reregistration |
| POTATO SEED TREATER PS | 4/7/2009 | 2935-539 | Reregistration |
| POTATO SEED TREATER 6% | 8/27/2009 | 2935-541 | Reregistration |
| ROPER DF | 12/21/2011 | 34704-1063 | Registration |
| GRAIN GUARD | 5/19/2011 | 400-558 | Reregistration |
| CHEMINOVA MANCOZEB TECHNICAL | 9/30/2011 | 4787-69 | Registration |
| DUOSAN WSB WETTABLE POWDER TURF AND ORNAMENTAL FUNGICIDE | 1/13/2010 | 58185-31 | Reregistration |
| SEED RIGHT | 10/24/2014 | 59931-1 | Registration |
| DITHANE M-45 | 9/24/2009 | 62719-387 | Reregistration |
| FORE 80WP RAINSHIELD | 6/5/2013 | 62719-388 | Reregistration |
| DITHANE F-45 | 6/24/2009 | 62719-396 | Reregistration |
| DITHANE 75 DF RAINSHIELD | 3/26/2009 | 62719-402 | Reregistration |
| JUNCTION | 10/13/2005 | 67690-35 | Registration |

| | | | |
|---|---|---|---|
| PENTATHLON LF | 10/13/2005 | 67690-38 | Registration |
| PENTATHLON DF FUNGICIDE DISPERSIBLE GRANULES | 10/13/2005 | 67690-39 | Registration |
| Junction WSP | 8/22/2012 | 67690-59 | Registration |
| PENNCOZEB ORNAMENTAL FUNGICIDE | 7/24/2012 | 70506-182 | Reregistration |
| PENNCOZEB 80WP FUNGICIDE | 9/13/2012 | 70506-183 | Reregistration |
| PENNCOZEB 75 DF | 10/11/2011 | 70506-185 | Reregistration |
| PENNCOZEB TECHNICAL | 4/15/2011 | 70506-188 | Reregistration |
| MANZATE MAX FUNGICIDE | 6/11/2013 | 70506-194 | Reregistration |
| MANZATE 75 DF | 9/27/2012 | 70506-234 | Reregistration |
| MANZATE 80 WP FUNGICIDE | 6/8/2011 | 70506-235 | Reregistration |
| DUPONT MANZATE FLOWABLE | 7/13/2010 | 70506-236 | Reregistration |
| GREENSMAN | 4/8/2008 | 70506-269 | Registration |
| PHOENIX WINGMAN 4L | 3/1/2010 | 70506-287 | Registration |
| ELIXIR FUNGICIDE | 6/27/2013 | 70506-298 | Registration |
| Dexter Max Fungicide | 11/23/2016 | 70506-329 | Registration |
| MONCOAT MZ FUNGICIDE | 9/28/2009 | 71711-8 | Reregistration |
| 4 PLAY | 9/30/2010 | 73771-8 | Registration |
| DITHANE M-45 | 9/27/2012 | 829-286 | Reregistration |
| WILLOWOOD MANCOZEB 75WDG | 2/27/2014 | 87290-48 | Registration |
| MCC 3-Way Fungicide | 1/8/2016 | 87845-6 | Registration |
| Fortuna 75 WDG Fungicide | 12/6/2012 | 89333-1 | Registration |
| Mancozeb 80 WP Manufacturing Concentrate | 12/6/2012 | 89333-2 | Registration |
| Mancozeb Technical | 2/27/2012 | 89333-3 | Registration |
| Mancozeb 85 WP Manufacturing Use Concentrate | 11/5/2015 | 89333-4 | Registration |
| cY MANCO 4-40 WDG FUNGICIDE | 12/17/2014 | 90332-2 | Registration |
| JUNCTION | 8/10/2011 | 91411-7 | Reregistration |

448.   Upon information and belief, EPA provided no hearings or other public participation for these product registration actions.

449.   As set forth above, EPA has discretion to influence or change registrations of pesticide products for the benefit of protected species.  For example, EPA may only register or reregister a pesticide product if its use does not cause an unreasonable adverse effect on the environment.  7 U.S.C. § 136a(c)(5); 7 U.S.C. § 136a-1(g)(2)(C); 40 C.F.R. § 152.112; 40 C.F.R. § 152.113(a).   EPA may also change, cancel, restrict, or immediately suspend registered pesticides, pesticide labeling, or particular uses at any time if it appears that the pesticide is causing an unreasonable adverse effect on the

1   environment. 7 U.S.C. § 136d(c).   Thus, EPA's product reregistration and its approvals of products

2   containing mancozeb are "affirmative agency actions" subject to consultation under Section 7(a)(2) of

3   the ESA. 16 U.S.C. § 1536(a)(2).

4          450.    Plaintiffs' members live, work, visit, recreate, and otherwise enjoy areas across the

5   nation that may be impacted by products containing mancozeb.  Plaintiffs' members derive

6   professional, aesthetic, spiritual, recreational, economic, and educational benefits from the endangered

7   and threatened species that live in these areas and may be impacted by products containing mancozeb.

8   The list of species that may be affected by products containing mancozeb is provided in Exhibit A, and

9   Plaintiffs' members have cognizable interests in these species.

10         451.    For example, products containing mancozeb may affect the North American green

11   sturgeon (southern DPS), and a member of Plaintiffs' organizations has a cognizable interest in this

12   species based on, among other things, efforts to observe the species during frequent visits to habitats

13   where the species can be found and may be affected by products containing mancozeb.

14         452.    In the final rulemaking to designate critical habitat for North American green sturgeon,

15   the U.S. Fish and Wildlife Service found that the "application of pesticides may adversely affect prey

16   resources and water quality within the bays and estuaries . . . . In the San Francisco, San Pablo, and

17   Suisun bays, several pesticides have been detected at levels exceeding national benchmarks for the

18   protection of aquatic life (Domagalski et al. 2000). These pesticides pose a water quality issue and may

19   affect the abundance and health of prey items as well as the growth and reproductive health of Southern

20   DPS green sturgeon through bioaccumulation." 74 Fed. Reg. 52300 (October 9, 2009).

21         453.    Plaintiffs' members engage in wildlife observation, research, photography, restoration

22   activities, and educational programs involving endangered and threatened species that may be impacted

23   by products containing mancozeb.  Plaintiffs' members will continue to maintain an interest in the

24   species and areas that may be impacted by products containing mancozeb in the future.

25         454.    The above-described interests of Plaintiffs and their members have been and are being

26   adversely affected by EPA's reregistration, registration and authorization of the use of products

27   containing mancozeb, which are pesticides that may harm endangered and threatened species and their

28

1   habitats.  As alleged in the Complaint, products containing mancozeb may affect the species identified

2   in Exhibit A, as well as their designated critical habitat.

3          455.   EPA's failure to ensure that products containing mancozeb do not impact endangered

4   species and their habitats harms Plaintiffs' members' interests in the species and their habitats affected

5   by products containing mancozeb.  For example, EPA's failure to consult on products containing

6   mancozeb may impair recovery of species impacted by products containing mancozeb and may make it

7   more likely that these species would suffer population declines.  Species declines and impaired

8   recovery harm the interests that Plaintiffs' members have in the existence of these rare animals, such as

9   by limiting their ability to observe the species.  Consultation on products containing mancozeb is

10  necessary to ensure that Plaintiffs' members' interests in the species affected by products containing

11  mancozeb are preserved and remain free from injury.

12         456.   EPA must register and authorize pesticide products before they can be used and has an

13  ongoing responsibility to ensure that registered pesticides do not have unreasonable adverse effects on

14  the environment.  Absent EPA's continuing registration and discretionary control and involvement in

15  products containing mancozeb, these pesticides could not be used and could not be negatively

16  impacting the listed species named in Exhibit A and their habitats.

17         457.   If this Court orders EPA to engage in consultation as required, the Service would analyze

18  the extent to which the products containing mancozeb affect listed species and their habitats and, if

19  necessary, would suggest reasonable and prudent alternatives or measures to protect the species, which

20  would protect Plaintiffs' members' interests in the species.  16 U.S.C. § 1536(a)(3).  Unless the

21  requested relief is granted, Plaintiffs' interests will continue to be injured by EPA's failure to consult

22  on products containing mancozeb with the Service, as well as by the potential ongoing harm to the

23  species named in Exhibit A and their habitats as a result of ongoing use of products containing

24  mancozeb.

25         458.   The injuries described above are actual, concrete injuries that are presently suffered by

26  Plaintiffs and their members and will continue to occur unless relief is granted by this Court.  These

27  injuries are directly caused by the Defendants' failure to consult with the Service to ensure that EPA's

28  actions relating to products containing mancozeb do not affect listed species and Plaintiffs' members'

1   cognizable interests in these species.  The relief sought herein, EPA's compliance with the ESA, would
2   redress Plaintiffs' injuries.  Plaintiffs have no other adequate remedy at law, and they bring this action
3   on behalf of their adversely affected members.

4   **Methomyl**[27]

5   459.   Exhibit A contains a comprehensive, but not necessarily exhaustive, list of endangered
6   and threatened species for which methomyl is known to be harmful to the taxonomic group of that
7   species and is used in the state where that species lives.

8   460.   Methomyl is a known endocrine disrupter.  As explained above, endocrine disrupters
9   have effects on the reproductive and immune systems capable of compromising populations of
10  endangered species.

11  461.   Methomyl is a pesticide for which the EPA has indicated that estimated environmental
12  concentrations (EECs) are likely to exceed the Levels of Concern (LOCs) for endangered species,
13  and/or may cause indirect effects on endangered species by altering habitat or food sources.
14  Specifically, EECs of methomyl are likely to exceed the LOCs for the following taxonomic groups:
15  mammals, birds, fish, amphibians, crustaceans, and reptiles.

16  462.   Methomyl is a pesticide that is "highly acutely toxic" or "very highly acutely toxic" to
17  the following taxonomic groups:  mammals, birds, fish, amphibians, mollusks, crustaceans, insects, and
18  reptiles. These toxicity rankings are based on LD50 or LC50 data (lethal dose to 50 percent of the test
19  organisms or lethal concentration for 50 percent of the test organisms) that EPA possesses.

20  463.   The USGS has detected methomyl in dozens of waterways across the nation, as
21  documented in reports on its nationwide water quality surveys. As shown in Exhibit B, some of these
22  watersheds overlap the range of species that may be affected by this pesticide.

23  464.   EPA "affirmatively authorized" the continued use of the active ingredient methomyl
24  when it issued a Reregistration Eligibility Decision in March of 1998.

25  465.   On November 15, 2011, EPA completed product reregistration for methomyl.  *See*
26  https://www.epa.gov/pesticide-reevaluation/pesticides-have-completed-product-reregistration (last
27  visited 6/26/2017).

28

---

[27] The current EPA Case Number and EPA PC Code for methomyl are 0028, 090301.
Third Amended and First Supplemental Complaint for Declaratory and Injunctive Relief
Case No. 3:11-cv-00293-JCS                                                          146

466.    Active product registrations for this pesticide can be found on EPA's Pesticide Product Label System, *available at* http://iaspub.epa.gov/apex/pesticides/f?p=PPLS:1 (last visited 6/26/2017).

467.    Specifically, EPA's online Pesticide Product Label System lists the following pesticide products containing methomyl that EPA affirmatively authorized by product reregistration or new product registration since January 20, 2005:

| Product Name | Date | Registration Number | Action |
|---|---|---|---|
| DUPONT LANNATE SP INSECTICIDE | 9/22/2006 | 352-342 | Reregistration |
| DUPONT LANNATE LV INSECTICIDE | 5/23/2005 | 352-384 | Reregistration |
| ANNIHILATE LV | 7/9/2013 | 400-597 | Registration |
| ANNIHILATE SP | 7/9/2013 | 400-598 | Registration |
| LURECTRON SCATTERBAIT | 11/15/2011 | 7319-6 | Reregistration |
| METHOMYL 29 SL INSECTICIDE | 8/6/2012 | 82557-2 | Registration |
| METHOMYL 90 WSP | 8/6/2012 | 82557-3 | Registration |
| ROTAM METHOMYL 29LV INSECTICIDE | 4/5/2011 | 83100-27 | Registration |
| ROTAM METHOMYL 90SP INSECTICIDE | 4/5/2011 | 83100-28 | Registration |

468.    Upon information and belief, EPA provided no hearings or other public participation for these product registration actions. As set forth above, EPA has discretion to influence or change registrations of pesticide products for the benefit of protected species.  For example, EPA may only register or reregister a pesticide product if its use does not cause an unreasonable adverse effect on the environment.  7 U.S.C. § 136a(c)(5); 7 U.S.C. § 136a-1(g)(2)(C); 40 C.F.R. § 152.112; 40 C.F.R. § 152.113(a).   EPA may also change, cancel, restrict, or immediately suspend registered pesticides, pesticide labeling, or particular uses at any time if it appears that the pesticide is causing an unreasonable adverse effect on the environment.  7 U.S.C. § 136d(c).   Thus, EPA's product reregistration and its approvals of products containing methomyl are "affirmative agency actions" subject to consultation under Section 7(a)(2) of the ESA. 16 U.S.C. § 1536(a)(2).

469.    Plaintiffs' members live, work, visit, recreate, and otherwise enjoy areas across the nation that may be impacted by products containing methomyl.  Plaintiffs' members derive professional, aesthetic, spiritual, recreational, economic, and educational benefits from the endangered and threatened species that live in these areas and may be impacted by products containing methomyl.

1  The list of species that may be affected by products containing methomyl is provided in Exhibit A, and

2  Plaintiffs' members have cognizable interests in these species.

3      470.    For example, products containing methomyl may affect the giant garter snake, and a

4  member of Plaintiffs' organizations has a cognizable interest in this species based on, among other

5  things, his efforts to observe the species during frequent visits to habitats where the species can be

6  found and may be affected by products containing methomyl.

7      471.    In the rule listing the giant garter snake, FWS explains: "Contaminants, such as

8  fertilizers and pesticides, could adversely affect giant garter snake populations by degrading water

9  quality and reducing prey populations."

10      472.    Plaintiffs' members engage in wildlife observation, research, photography, restoration

11  activities, and educational programs involving endangered and threatened species that may be impacted

12  by products containing methomyl.  Plaintiffs' members will continue to maintain an interest in the

13  species and areas that may be impacted by products containing methomyl in the future.

14      473.    The above-described interests of Plaintiffs and their members have been and are being

15  adversely affected by EPA's registration and authorization of the use of products containing methomyl,

16  which is a pesticide that may harm endangered and threatened species and their habitats.  As alleged in

17  the Complaint, products containing methomyl may affect the species identified in Exhibit A, as well as

18  their designated critical habitat.

19      474.    EPA's failure to ensure that products containing methomyl do not impact endangered

20  species and their habitats harms Plaintiffs' members' interests in the species and their habitats affected

21  by products containing methomyl.  For example, EPA's failure to consult on products containing

22  methomyl may impair recovery of species impacted by products containing methomyl and may make it

23  more likely that these species would suffer population declines.  Species declines and impaired

24  recovery harm the interests that Plaintiffs' members have in the existence of these rare animals, such as

25  by limiting their ability to observe the species.  Consultation on products containing methomyl is

26  necessary to ensure that Plaintiffs' members' interests in the species affected by products containing

27  methomyl are preserved and remain free from injury.

28

1    475.    EPA must register and authorize pesticide products before they can be used and has an

2    ongoing responsibility to ensure that registered pesticides do not have unreasonable adverse effects on

3    the environment.  Absent EPA's continuing registration and discretionary control and involvement in

4    products containing methomyl, this pesticide could not be used and could not negatively impact the

5    listed species named in Exhibit A and their habitats.

6    476.    If this Court orders EPA to engage in consultation as required, the Service would analyze

7    the extent to which products containing methomyl affect listed species and their habitats and, if

8    necessary, would suggest reasonable and prudent alternatives or measures to protect the species, which

9    would protect Plaintiffs' members' interests in the species.  16 U.S.C. § 1536(a)(3).  Unless the

10   requested relief is granted, Plaintiffs' interests will continue to be injured by EPA's failure to consult

11   on products containing methomyl with the Service, as well as by the potential ongoing harm to the

12   species named in Exhibit A and their habitats as a result of ongoing use of products containing

13   methomyl.

14   477.    The injuries described above are actual, concrete injuries that are presently suffered by

15   Plaintiffs and their members and will continue to occur unless relief is granted by this Court.  These

16   injuries are directly caused by the Defendants' failure to consult with the Service to ensure that EPA's

17   actions relating to products containing methomyl do not affect listed species and Plaintiffs' members'

18   cognizable interests in these species.  The relief sought herein, EPA's compliance with the ESA, would

19   redress Plaintiffs' injuries.  Plaintiffs have no other adequate remedy at law, and they bring this action

20   on behalf of their adversely affected members.

21   **Metolachlor and Isomers**[28]

22   478.    Exhibit A contains a comprehensive, but not necessarily exhaustive, list of endangered

23   and threatened species for which metolachlor and isomers are known to be harmful to the taxonomic

24   group of that species and is used in the state where that species lives.

25

26

27

28   ---

[28] Metolachlor and isomers refers to the following, which also shows the current EPA Case Number and
EPA PC Code: metolachlor (0001, 108801), metalachlor,S (0001, 108800).

479.    Metolachlor and isomers are known endocrine disrupters.  As explained above, endocrine disrupters have effects on the reproductive and immune systems capable of compromising populations of endangered species.

480.    Metolachlor and isomers are pesticides for which the EPA has indicated that estimated environmental concentrations (EECs) are likely to exceed the Levels of Concern (LOCs) for endangered species, and/or may cause indirect effects on endangered species by altering habitat or food sources.  Specifically, EECs of metolachlor and isomers are likely to exceed the LOCs for the following taxonomic groups:  mammals, birds, fish, amphibians, and reptiles.

481.    The metolachlor and isomers are pesticides that are "highly acutely toxic" or "very highly acutely toxic" to the following taxonomic groups:  mammals, fish, and amphibians.  These toxicity rankings are based on LD50 or LC50 data (lethal dose to 50 percent of the test organisms or lethal concentration for 50 percent of the test organisms) that EPA possesses.

482.    The USGS has detected metolachlor and isomers in dozens of waterways across the nation, as documented in reports on its nationwide water quality surveys. As shown in Exhibit B, some of these watersheds overlap the range of species that may be affected by this pesticide.

483.    EPA "affirmatively authorized" the continued use of the active ingredient metolachlor and isomers when it issued a Reregistration Eligibility Decision in December of 1994.

484.    On July 21, 2005, EPA completed product reregistration for metolachlor and isomers. *See* https://www.epa.gov/pesticide-reevaluation/pesticides-have-completed-product-reregistration (last visited 6/26/2017).

485.    Active product registrations for this pesticide can be found on EPA's Pesticide Product Label System, *available at* http://iaspub.epa.gov/apex/pesticides/f?p=PPLS:1 (last visited 6/26/2017).

486.    Specifically, EPA's online Pesticide Product Label System lists the following pesticide products containing metolachlor and isomers that EPA affirmatively authorized by product reregistration or new product registration since January 20, 2005:

| Product Name | Date | Registration Number | Action |
|---|---|---|---|
| PREFIX HERBICIDE | 4/13/2007 | 100-1268 | Registration |
| HALEX GT HERBICIDE | 9/5/2007 | 100-1282 | Registration |
| SYN-AI7227 | 11/10/2009 | 100-1356 | Registration |

Third Amended and First Supplemental Complaint for Declaratory and Injunctive Relief
Case No. 3:11-cv-00293-JCS                                                                                                                            150

| | | | |
|---|---|---|---|
| ZEMAX SELECTIVE HERBICIDE | 11/16/2011 | 100-1410 | Registration |
| LEXAR EZ HERBICIDE | 12/14/2011 | 100-1414 | Registration |
| Lumax EZ Herbicide | 8/2/2012 | 100-1442 | Registration |
| Acuron Flexi | 2/8/2016 | 100-1568 | Registration |
| CHARGER MAX | 9/19/2005 | 1381-194 | Registration |
| CHARGER MAX ATZ | 2/9/2006 | 1381-199 | Registration |
| CHARGER BASIC | 6/30/2006 | 1381-207 | Registration |
| CHARGER MAX ATZ LITE | 11/20/2006 | 1381-208 | Registration |
| DREXEL TRIZMET II | 1/12/2005 | 19713-547 | Registration |
| DREXEL TRIZMET LITE | 7/10/2014 | 19713-663 | Registration |
| UP-FRONT HERBICIDE | 2/16/2016 | 19713-677 | Registration |
| DREXEL TRIZAR HERBICIDE | 10/19/2016 | 19713-686 | Registration |
| TRIZMAX HERBICIDE | 1/3/2017 | 19713-688 | Registration |
| DREXEL MES-O-SATE HERBICIDE | 4/6/2017 | 19713-694 | Registration |
| F7583-3 HERBICIDE | 3/15/2012 | 279-3442 | Registration |
| STATEMENT HERBICIDE | 1/28/2014 | 279-3591 | Registration |
| MATADOR | 2/2/2011 | 34704-1054 | Registration |
| INTIMIDATOR-M | 2/2/2012 | 34704-1062 | Registration |
| INTIMIDATOR | 9/20/2012 | 34704-1065 | Registration |
| MATADOR-S | 1/29/2013 | 34704-1067 | Registration |
| LPI S-METOLACHLOR +ATRAZINE | 1/8/2013 | 34704-1070 | Registration |
| LPI METOLACHLOR + ATRAZINE HERBICIDE | 1/8/2013 | 34704-1072 | Registration |
| LPI S-METOLACHLOR HERBICIDE | 1/15/2013 | 34704-1073 | Registration |
| LPI METOLACHLOR | 1/26/2007 | 34704-977 | Registration |
| STALWART XTRA LITE HERBICIDE | 1/24/2012 | 60063-48 | Registration |
| STALWART MTZ | 12/21/2012 | 60063-52 | Registration |
| TRIANGLE HERBICIDE | 7/19/2005 | 66222-131 | Registration |
| PARALLEL PLUS | 11/15/2005 | 66222-132 | Registration |
| MANA 14204 | 12/21/2012 | 66222-244 | Registration |
| MANA 14223 | 12/21/2012 | 66222-245 | Registration |
| MANA 25311 | 5/22/2013 | 66222-251 | Registration |
| Moccasin Herbicide | 6/2/2016 | 70506-323 | Registration |
| METOLACHLOR TC | 10/6/2016 | 74530-72 | Registration |
| HELMET SPC | 12/1/2016 | 74530-73 | Registration |
| HELMET | 12/28/2016 | 74530-74 | Registration |
| ARGOS ULTRA | 4/6/2017 | 74530-75 | Registration |
| Rotam Metolachlor+Atrazine+Mesotrione | 12/22/2016 | 83100-47 | Registration |
| Rotam Metolachlor+Mesotrione | 12/13/2016 | 83100-48 | Registration |
| Rotam Metolachlor 36.8% + Mesotrione 3.68% | 3/2/2017 | 83100-49 | Registration |
| Rotam Metolachlor 19% + Atrazine 18.6% + Mesotrione 2.44% | 3/8/2017 | 83100-50 | Registration |

| Sharda Metolachlor 86.4EC | 7/19/2016 | 83529-56 | Registration |
|---|---|---|---|
| Sharda Metolachlor 84.4EC-D | 7/19/2016 | 83529-57 | Registration |
| AGSAVER METOLACHLOR II | 5/24/2011 | 83772-10 | Registration |
| AGSAVER METOLACHLOR | 5/24/2011 | 83772-9 | Registration |
| ARC-METOLAZINE HERBICIDE | 12/28/2010 | 84930-23 | Registration |
| AX M-CHLOR CEC | 11/9/2012 | 89167-19 | Registration |
| AX M-CHLOR C | 11/13/2012 | 89167-20 | Registration |
| AX S-MET HERBICIDE | 6/26/2014 | 89167-40 | Registration |
| AX ATZ S-MET HERBICIDE | 5/29/2014 | 89167-41 | Registration |
| AX S-MET II HERBICIDE | 7/2/2014 | 89167-42 | Registration |
| AX MET-FOME | 11/30/2015 | 89167-55 | Registration |
| AX ATRACHLOR | 10/18/2012 | 89167-9 | Registration |
| LIBERTY METCHLORBUZIN | 11/21/2013 | 89168-28 | Registration |
| LIBERTY SULFENT/R-MET | 2/14/2017 | 89168-60 | Registration |

487.   Upon information and belief, EPA provided no hearings or other public participation for these product registration actions.

488.   As set forth above, EPA has discretion to influence or change registrations of pesticide products for the benefit of protected species.  For example, EPA may only register or reregister a pesticide product if its use does not cause an unreasonable adverse effect on the environment.  7 U.S.C. § 136a(c)(5); 7 U.S.C. § 136a-1(g)(2)(C); 40 C.F.R. § 152.112; 40 C.F.R. § 152.113(a).  EPA may also change, cancel, restrict, or immediately suspend registered pesticides, pesticide labeling, or particular uses at any time if it appears that the pesticide is causing an unreasonable adverse effect on the environment.  7 U.S.C. § 136d(c).  Thus, EPA's product reregistration and its approvals of products containing metolachlor and isomers are "affirmative agency actions" subject to consultation under Section 7(a)(2) of the ESA. 16 U.S.C. § 1536(a)(2).

489.   Plaintiffs' members live, work, visit, recreate, and otherwise enjoy areas across the nation that may be impacted by products containing metolachlor and isomers.  Plaintiffs' members derive professional, aesthetic, spiritual, recreational, economic, and educational benefits from the endangered and threatened species that live in these areas and may be impacted by products containing metolachlor and isomers.  The list of species that may be affected by products containing metolachlor and isomers is provided in Exhibit A, and Plaintiffs' members have cognizable interests in these species.

490.    For example, products containing metolachlor and isomers may affect the Atlantic salt marsh snake, and a member of Plaintiffs' organizations has a cognizable interest in this species based on, among other things, her efforts to observe the species during frequent visits to habitats where the species can be found and may be affected by products containing metolachlor and isomers.

491.    In the recovery plan for the Atlantic salt marsh snake, FWS explains: "Urban runoff, including pesticides and fertilizers applied to lawns and mosquito spraying, may degrade salt marsh habitats making them unsuitable for Atlantic salt marsh snakes." Metolachlor and isomers are herbicides used on lawns for weed control.

492.    Plaintiffs' members engage in wildlife observation, research, photography, restoration activities, and educational programs involving endangered and threatened species that may be impacted by products containing metolachlor and isomers.  Plaintiffs' members will continue to maintain an interest in the species and areas that may be impacted by products containing metolachlor and isomers in the future.

493.    The above-described interests of Plaintiffs and their members have been and are being adversely affected by EPA's reregistration, registration and authorization of the use of products containing metolachlor and isomers, which is a pesticide that may harm endangered and threatened species and their habitats.  As alleged in the Complaint, products containing metolachlor and isomers may affect the species identified in Exhibit A, as well as their designated critical habitat.

494.    EPA's failure to ensure that products containing metolachlor and isomers do not impact endangered species and their habitats harms Plaintiffs' members' interests in the species and their habitats affected by products containing metolachlor and isomers.  For example, EPA's failure to consult on products containing metolachlor and isomers may impair recovery of species impacted by products containing metolachlor and isomers and may make it more likely that these species would suffer population declines.  Species declines and impaired recovery harm the interests that Plaintiffs' members have in the existence of these rare animals, such as by limiting their ability to observe the species.  Consultation on products containing metolachlor and isomers is necessary to ensure that Plaintiffs' members' interests in the species affected by products containing metolachlor and isomers are preserved and remain free from injury.

495.    EPA must register and authorize pesticide products before they can be used and has an ongoing responsibility to ensure that registered pesticides do not have unreasonable adverse effects on the environment.  Absent EPA's continuing registration and discretionary control and involvement in products containing metolachlor and isomers, this pesticide could not be used and could not negatively impact the listed species named in Exhibit A and their habitats.

496.    If this Court orders EPA to engage in consultation as required, the Service would analyze the extent to which products containing metolachlor and isomers affect listed species and their habitats and, if necessary, would suggest reasonable and prudent alternatives or measures to protect the species, which would protect Plaintiffs' members' interests in the species.  16 U.S.C. § 1536(a)(3).  Unless the requested relief is granted, Plaintiffs' interests will continue to be injured by EPA's failure to consult on products containing metolachlor and isomers with the Service, as well as by the potential ongoing harm to the species named in Exhibit A and their habitats as a result of ongoing use of products containing metolachlor and isomers.

497.    The injuries described above are actual, concrete injuries that are presently suffered by Plaintiffs and their members and will continue to occur unless relief is granted by this Court.  These injuries are directly caused by the Defendants' failure to consult with the Service to ensure that EPA's actions relating to products containing metolachlor and isomers do not affect listed species and Plaintiffs' members' cognizable interests in these species.  The relief sought herein, EPA's compliance with the ESA, would redress Plaintiffs' injuries.  Plaintiffs have no other adequate remedy at law, and they bring this action on behalf of their adversely affected members.

**Metribuzin**[29]

498.    Exhibit A contains a comprehensive, but not necessarily exhaustive, list of endangered and threatened species for which metribuzin is known to be harmful to the taxonomic group of that species and is used in the state where that species lives.

499.    Metribuzin is a known endocrine disrupter.  As explained above, endocrine disrupters have effects on the reproductive and immune systems capable of compromising populations of endangered species.

---

[29] The current EPA Case Number and EPA PC Code for metribuzin are 0181, 101101.
Third Amended and First Supplemental Complaint for Declaratory and Injunctive Relief
Case No. 3:11-cv-00293-JCS                                                                        154

500.    Metribuzin is a pesticide for which the EPA has indicated that estimated environmental concentrations (EECs) are likely to exceed the Levels of Concern (LOCs) for endangered species, and/or may cause indirect effects on endangered species by altering habitat or food sources. Specifically, EECs of metribuzin are likely to exceed the LOCs for the following taxonomic groups: mammals, birds, and reptiles.

501.    The USGS has detected metribuzin in dozens of waterways across the nation, as documented in reports on its nationwide water quality surveys. As shown in Exhibit B, some of these watersheds overlap the range of species that may be affected by this pesticide.

502.    EPA "affirmatively authorized" the continued use of the active ingredient metribuzin when it issued a Reregistration Eligibility Decision in June of 1997.

503.    On July 21, 2005, EPA completed product reregistration for metribuzin.  *See* https://www.epa.gov/pesticide-reevaluation/pesticides-have-completed-product-reregistration (last visited 6/26/2017).

504.    Active product registrations for this pesticide can be found on EPA's Pesticide Product Label System, *available at* http://iaspub.epa.gov/apex/pesticides/f?p=PPLS:1 (last visited 6/26/2017).

505.    Specifically, EPA's online Pesticide Product Label System lists the following pesticide products containing metribuzin that EPA affirmatively authorized by product reregistration or new product registration since January 20, 2005:

| Product Name | Date | Registration Number | Actions |
|---|---|---|---|
| DIMETRIC DF 75% | 2/28/2006 | 1381-197 | Registration |
| F6482 45DF HERBICIDE | 9/2/2008 | 279-3340 | Registration |
| F6482 TURF AND IVM | 8/28/2008 | 279-3350 | Registration |
| F6482-2 TURF AND IVM HERBICIDE | 2/15/2011 | 279-3412 | Registration |
| MATADOR | 2/2/2011 | 34704-1054 | Registration |
| INTIMIDATOR-M | 2/2/2012 | 34704-1062 | Registration |
| INTIMIDATOR | 9/20/2012 | 34704-1065 | Registration |
| MATADOR-S | 1/29/2013 | 34704-1067 | Registration |
| METRIBUZIN 75 | 3/3/2005 | 34704-876 | Registration |
| METRIBUZIN 4 L | 1/18/2008 | 34704-990 | Registration |
| DUPONT BL2 HERBICIDE | 3/11/2014 | 352-885 | Registration |
| DUPONT CANOPY BLEND HERBICIDE | 3/12/2014 | 352-886 | Registration |
| DUPONT TRIVENCE HERBICIDE | 3/19/2014 | 352-887 | Registration |
| DUPONT CANSIO HERBICIDE | 8/17/2015 | 352-912 | Registration |

| SENCOR 75% TURF HERBICIDE | 3/14/2007 | 432-1469 | Registration |
|---|---|---|---|
| STALWART MTZ | 12/21/2012 | 60063-52 | Registration |
| MANA 14223 | 12/21/2012 | 66222-245 | Registration |
| MANA 31301 | 1/23/2014 | 66222-256 | Registration |
| MANA 31304 | 4/20/2015 | 66222-260 | Registration |
| METRIBUZIN TECHNICAL HERBICIDE | 3/29/2005 | 70506-62 | Registration |
| UPI METRIBUZIN 75DF HERBICIDE | 3/30/2005 | 70506-67 | Registration |
| METRI 4F HERBICIDE | 3/30/2005 | 70506-68 | Registration |
| Tribute SC | 11/28/2016 | 70905-5 | Registration |
| Tribute DF | 11/28/2016 | 70905-6 | Registration |
| Panther Pro Herbicide | 12/22/2016 | 71368-120 | Registration |
| CLOAK HERBICIDE | 1/5/2009 | 71368-83 | Registration |
| GWN-9889 | 12/7/2010 | 81880-25 | Registration |
| SHARDA CHLORIMURON + METRIBUZIN WDG | 10/23/2014 | 83529-41 | Registration |
| Metribuzin 70 WDG | 11/20/2015 | 83529-44 | Registration |
| Sharda Metribuzin 4SC | 12/2/2015 | 83529-46 | Registration |
| Sulfentrazone MTZ DF | 3/21/2017 | 87290-70 | Registration |
| LIBERTY METCHLORBUZIN | 11/21/2013 | 89168-28 | Registration |
| LIBERTY METRIBUZIN 75DF | 10/22/2013 | 89168-30 | Registration |
| LIBERTY BUZINAPYR | 4/13/2015 | 89168-37 | Registration |
| LIBERTY METRIBUZIN 4L | 1/3/2017 | 89168-62 | Registration |

506.    Upon information and belief, EPA provided no hearings or other public participation for these product registration actions.

507.    As set forth above, EPA has discretion to influence or change registrations of pesticide products for the benefit of protected species.  For example, EPA may only register or reregister a pesticide product if its use does not cause an unreasonable adverse effect on the environment.  7 U.S.C. § 136a(c)(5); 7 U.S.C. § 136a-1(g)(2)(C); 40 C.F.R. § 152.112; 40 C.F.R. § 152.113(a).   EPA may also change, cancel, restrict, or immediately suspend registered pesticides, pesticide labeling, or particular uses at any time if it appears that the pesticide is causing an unreasonable adverse effect on the environment.  7 U.S.C. § 136d(c).   Thus, EPA's product reregistration and its approvals of products containing metribuzin constitute "affirmative agency actions" subject to consultation under Section 7(a)(2) of the ESA. 16 U.S.C. § 1536(a)(2).

508.    Plaintiffs' members live, work, visit, recreate, and otherwise enjoy areas across the nation that may be impacted by products containing metribuzin.  Plaintiffs' members derive

professional, aesthetic, spiritual, recreational, economic, and educational benefits from the endangered and threatened species that live in these areas and may be impacted by products containing metribuzin. The list of species that may be affected by products containing metribuzin is provided in Exhibit A, and Plaintiffs' members have cognizable interests in these species.

509.    For example, products containing metribuzin may affect the Coastal California gnatcatcher, and a member of Plaintiffs' organizations has a cognizable interest in this species based on, among other things, efforts to observe the species during frequent visits to habitats where the species can be found and may be affected by products containing metribuzin.

510.    In the rule designating critical habitat for the Coastal California gnatcatcher, FWS explains that activities that affect gnatcatcher habitat, including "herbicide application" require consultation.

511.    Plaintiffs' members engage in wildlife observation, research, photography, restoration activities, and educational programs involving endangered and threatened species that may be impacted by products containing metribuzin.  Plaintiffs' members will continue to maintain an interest in the species and areas that may be impacted by products containing metribuzin in the future.

512.    The above-described interests of Plaintiffs and their members have been and are being adversely affected by EPA's reregistration, registration and authorization of the use of products containing metribuzin, which is a pesticide that may harm endangered and threatened species and their habitats.  As alleged in the Complaint, products containing metribuzin may affect the species identified in Exhibit A, as well as their designated critical habitat.

513.    EPA's failure to ensure that products containing metribuzin do not impact endangered species and their habitats harms Plaintiffs' members' interests in the species and their habitats affected by products containing metribuzin.  For example, EPA's failure to consult on products containing metribuzin may impair recovery of species impacted by products containing metribuzin and may make it more likely that these species would suffer population declines.  Species declines and impaired recovery harm the interests that Plaintiffs' members have in the existence of these rare animals, such as by limiting their ability to observe the species.  Consultation on products containing metribuzin is

1   necessary to ensure that Plaintiffs' members' interests in the species affected by products containing

2   metribuzin are preserved and remain free from injury.

3        514.    EPA must register and authorize pesticide products before they can be used and has an

4   ongoing responsibility to ensure that registered pesticides do not have unreasonable adverse effects on

5   the environment.  Absent EPA's continuing registration and discretionary control and involvement in

6   products containing metribuzin, this pesticide could not be used and could not negatively impact the

7   listed species named in Exhibit A and their habitats.

8        515.    If this Court orders EPA to engage in consultation as required, the Service would analyze

9   the extent to which products containing metribuzin affect listed species and their habitats and, if

10  necessary, would suggest reasonable and prudent alternatives or measures to protect the species, which

11  would protect Plaintiffs' members' interests in the species.  16 U.S.C. § 1536(a)(3).  Unless the

12  requested relief is granted, Plaintiffs' interests will continue to be injured by EPA's failure to consult

13  on products containing metribuzin with the Service, as well as by the potential ongoing harm to the

14  species named in Exhibit A and their habitats as a result of ongoing use of products containing

15  metribuzin.

16       516.    The injuries described above are actual, concrete injuries that are presently suffered by

17  Plaintiffs and their members and will continue to occur unless relief is granted by this Court.  These

18  injuries are directly caused by the Defendants' failure to consult with the Service to ensure that EPA's

19  actions relating to products containing metribuzin do not affect listed species and Plaintiffs' members'

20  cognizable interests in these species.  The relief sought herein, EPA's compliance with the ESA, would

21  redress Plaintiffs' injuries.  Plaintiffs have no other adequate remedy at law, and they bring this action

22  on behalf of their adversely affected members.

23  **Naled**[30]

24       517.    Exhibit A contains a comprehensive, but not necessarily exhaustive, list of endangered

25  and threatened species for which naled is known to be harmful to the taxonomic group of that species

26  and is used in the state where that species lives.

27

28

[30] The current EPA Case Number and EPA PC Code for naled are 0092, 034401.
Third Amended and First Supplemental Complaint for Declaratory and Injunctive Relief
Case No. 3:11-cv-00293-JCS                                                           158

518.   Naled is a pesticide for which the EPA has indicated that estimated environmental concentrations (EECs) are likely to exceed the Levels of Concern (LOCs) for endangered species, and/or may cause indirect effects on endangered species by altering habitat or food sources. Specifically, EECs of naled are likely to exceed the LOCs for the following taxonomic groups: mammals, birds, fish, amphibians, mollusks, crustaceans, insects, and reptiles].

519.   Naled is a pesticide that is "highly acutely toxic" or "very highly acutely toxic" to the following taxonomic groups:  mammals, birds, fish, amphibians, crustaceans, insects, and reptiles. These toxicity rankings are based on LD50 or LC50 data (lethal dose to 50 percent of the test organisms or lethal concentration for 50 percent of the test organisms) that EPA possesses.

520.   EPA "affirmatively authorized" the continued use of the active ingredient naled when it issued a Reregistration Eligibility Decision in July of 2006.

521.   On December 6, 2007, EPA completed product reregistration for naled.  *See* https://www.epa.gov/pesticide-reevaluation/pesticides-have-completed-product-reregistration (last visited 6/26/2017).

522.   Active product registrations for this pesticide can be found on EPA's Pesticide Product Label System, *available at* http://iaspub.epa.gov/apex/pesticides/f?p=PPLS:1 (last visited 6/26/2017).

523.   Specifically, EPA's online Pesticide Product Label System lists the following pesticide products containing naled that EPA affirmatively authorized by product reregistration or new product registration since January 20, 2005:

| Product Name | Date | Registration Number | Action |
|---|---|---|---|
| PROKIL NALED INSECTICIDE | 12/6/2007 | 10163-46 | Reregistration |
| NALED TECHNICAL | 6/22/2007 | 5481-478 | Reregistration |
| DIBROM 8 EMULSIVE | 9/24/2007 | 5481-479 | Reregistration |
| DIBROM CONCENTRATE | 7/12/2007 | 5481-480 | Reregistration |
| TRUMPET EC INSECTICIDE | 10/18/2007 | 5481-481 | Reregistration |
| FLY KILLER D | 11/8/2007 | 5481-482 | Reregistration |

524.   Upon information and belief, EPA provided no hearings or other public participation for these product registration actions.

525.   As set forth above, EPA has discretion to influence or change registrations of pesticide products for the benefit of protected species.  For example, EPA may only register or reregister a

Third Amended and First Supplemental Complaint for Declaratory and Injunctive Relief
Case No. 3:11-cv-00293-JCS                                                                159

1   pesticide product if its use does not cause an unreasonable adverse effect on the environment.  7 U.S.C.

2   § 136a(c)(5); 7 U.S.C. § 136a-1(g)(2)(C); 40 C.F.R. § 152.112; 40 C.F.R. § 152.113(a).   EPA may also

3   change, cancel, restrict, or immediately suspend registered pesticides, pesticide labeling, or particular

4   uses at any time if it appears that the pesticide is causing an unreasonable adverse effect on the

5   environment.  7 U.S.C. § 136d(c).   Thus, EPA's product reregistration and its approvals of products

6   containing naled constitute "affirmative agency actions" subject to consultation under Section 7(a)(2)

7   of the ESA. 16 U.S.C. § 1536(a)(2).

8       526.   Plaintiffs' members live, work, visit, recreate, and otherwise enjoy areas across the

9   nation that may be impacted by products containing naled.  Plaintiffs' members derive professional,

10   aesthetic, spiritual, recreational, economic, and educational benefits from the endangered and

11   threatened species that live in these areas and may be impacted by products containing naled.  The list

12   of species that may be affected by products containing naled is provided in Exhibit A, and Plaintiffs'

13   members have cognizable interests in these species.

14       527.   For example, products containing naled may affect the California least tern, and a

15   member of Plaintiffs' organizations has a cognizable interest in this species based on, among other

16   things, his efforts to observe the species during frequent visits to habitats where the species can be

17   found and may be affected by products containing naled.

18       528.   In the recovery plan for the California least tern, FWS explains: "A substantial pesticide

19   threat may occur from chemicals used for mosquito larvicide control. These may have high invertebrate

20   toxicities. It is conceivable that pesticides could alter the benthic communities to such an extent that

21   fish production or availability could be changed drastically. Agricultural fields near estuaries could also

22   be affected . . . ."  products containing naled are used in mosquito control.

23       529.   Plaintiffs' members engage in wildlife observation, research, photography, restoration

24   activities, and educational programs involving endangered and threatened species that may be impacted

25   by products containing naled.  Plaintiffs' members will continue to maintain an interest in the species

26   and areas that may be impacted by products containing naled in the future.

27       530.   The above-described interests of Plaintiffs and their members have been and are being

28   adversely affected by EPA's registration and authorization of the use of products containing naled,

1    which is a pesticide that may harm endangered and threatened species and their habitats.  As alleged in

2    the Complaint, products containing naled may affect the species identified in Exhibit A, as well as their

3    designated critical habitat.

4         531.    EPA's failure to ensure that products containing naled do not impact endangered species

5    and their habitats harms Plaintiffs' members' interests in the species and their habitats affected by

6    products containing naled.  For example, EPA's failure to consult on products containing naled may

7    impair recovery of species impacted by products containing naled and may make it more likely that

8    these species would suffer population declines.  Species declines and impaired recovery harm the

9    interests that Plaintiffs' members have in the existence of these rare animals, such as by limiting their

10   ability to observe the species.  Consultation on products containing naled is necessary to ensure that

11   Plaintiffs' members' interests in the species affected by products containing naled are preserved and

12   remain free from injury.

13        532.    EPA must reregister, register and authorize pesticides before they can be used and has

14   an ongoing responsibility to ensure that registered pesticides do not have unreasonable adverse effects

15   on the environment.  Absent EPA's continuing registration and discretionary control and involvement

16   in products containing naled, this pesticide could not be used and could not negatively impact the listed

17   species named in Exhibit A and their habitats.

18        533.    If this Court orders EPA to engage in consultation as required, the Service would analyze

19   the extent to which products containing naled affect listed species and their habitats and, if necessary,

20   would suggest reasonable and prudent alternatives or measures to protect the species, which would

21   protect Plaintiffs' members' interests in the species.  16 U.S.C. § 1536(a)(3).  Unless the requested

22   relief is granted, Plaintiffs' interests will continue to be injured by EPA's failure to consult on products

23   containing naled with the Service, as well as by the potential ongoing harm to the species named in

24   Exhibit A and their habitats as a result of ongoing use of products containing naled.

25        534.    The injuries described above are actual, concrete injuries that are presently suffered by

26   Plaintiffs and their members and will continue to occur unless relief is granted by this Court.  These

27   injuries are directly caused by the Defendants' failure to consult with the Service to ensure that EPA's

28   actions relating to products containing naled do not affect listed species and Plaintiffs' members'

1  cognizable interests in these species.  The relief sought herein, EPA's compliance with the ESA, would

2  redress Plaintiffs' injuries.  Plaintiffs have no other adequate remedy at law, and they bring this action

3  on behalf of their adversely affected members.

4  **Oxyfluorfen**[31]

5      535.   Exhibit A contains a comprehensive, but not necessarily exhaustive, list of endangered

6  and threatened species for which oxyfluorfen is known to be harmful to the taxonomic group of that

7  species and is used in the state where that species lives.

8      536.   Oxyfluorfen is a pesticide for which the EPA has indicated that estimated environmental

9  concentrations (EECs) are likely to exceed the Levels of Concern (LOCs) for endangered species,

10  and/or may cause indirect effects on endangered species by altering habitat or food sources.

11  Specifically, EECs of oxyfluorfen are likely to exceed the LOCs for the following taxonomic groups:

12  mammals, birds, fish, amphibians, crustaceans, and reptiles.

13      537.   Oxyfluorfen is a pesticide that is "highly acutely toxic" or "very highly acutely toxic" to

14  the following taxonomic groups:  birds, fish, amphibians, crustaceans, and reptiles.  These toxicity

15  rankings are based on LD50 or LC50 data (lethal dose to 50 percent of the test organisms or lethal

16  concentration for 50 percent of the test organisms) that EPA possesses.

17      538.   EPA "affirmatively authorized" the continued use of the active ingredient oxyfluorfen

18  when it issued a Reregistration Eligibility Decision in August of 2002.

19      539.   On January 8, 2008, EPA completed product reregistration for oxyfluorfen.  *See*

20  https://www.epa.gov/pesticide-reevaluation/pesticides-have-completed-product-reregistration (last

21  visited 6/26/2017).

22      540.   Active product registrations for this pesticide can be found on EPA's Pesticide Product

23  Label System, *available at* http://iaspub.epa.gov/apex/pesticides/f?p=PPLS:1 (last visited 6/26/2017).

24      541.   Specifically, EPA's online Pesticide Product Label System lists the following pesticide

25  products containing oxyfluorfen that EPA affirmatively authorized by product reregistration or new

26  product registration since January 20, 2005:

27

28

---

[31] The current EPA Case Number and EPA PC Code for oxyfluorfen are 2490, 111601.
Third Amended and First Supplemental Complaint for Declaratory and Injunctive Relief
Case No. 3:11-cv-00293-JCS                                                                    162

| Product Name | Date | Registration Number | Action |
|---|---|---|---|
| GALIGAN OXYFLUORFEN TECHNICAL | 7/28/2006 | 11603-29 | Reregistration |
| NUFARM DOUBLE O PRO HERBICIDE | 6/9/2006 | 228-632 | Registration |
| NUFARM TWO OX PRO HERBICIDE | 1/19/2007 | 228-649 | Registration |
| ORTHO FENCE & GRASS EDGER FORMULA II | 10/23/2007 | 239-2516 | Reregistration |
| TRIOX VEGETATION KILLER FORMULA II | 11/5/2007 | 239-2622 | Reregistration |
| ORTHO SEASON-LONG GRASS & WEED KILLER | 11/3/2005 | 239-2694 | Registration |
| ORTHO SEASON LONG WEED & GRASS KILLER PLUS PREVENTER READY-SPRAY II | 2/18/2010 | 239-2706 | Registration |
| END ZONE HERBICIDE | 4/7/2005 | 34704-877 | Registration |
| OXYFLUORFEN TGAI | 11/3/2006 | 42750-135 | Registration |
| OXYFLUORFEN 2EC | 11/3/2006 | 42750-136 | Registration |
| OXYFLUORFEN 4SC | 8/22/2008 | 42750-199 | Registration |
| KLEENUP SUPER EDGER | 12/10/2007 | 4-432 | Reregistration |
| REGAL O-O HERBICIDE | 8/2/2007 | 48234-10 | Reregistration |
| HARRELL'S GRANULAR HERBICIDE 75 | 2/4/2005 | 52287-15 | Registration |
| ORNAMENTAL HERBICIDE II | 10/6/2006 | 58185-178 | Reregistration |
| ROUT ORNAMENTAL HERBICIDE | 9/14/2007 | 58185-27 | Reregistration |
| BIATHLON | 11/24/2010 | 59807-12 | Registration |
| GOAL TECHNICAL PURIFIED HERBICIDE | 10/23/2007 | 62719-399 | Reregistration |
| GOAL 2XL HERBICIDE | 8/8/2006 | 62719-424 | Reregistration |
| GOALTENDER | 10/23/2007 | 62719-447 | Reregistration |
| RAWHIDE 4F HERBICIDE | 2/2/2006 | 62719-448 | Registration |
| Pindar GT | 12/17/2009 | 62719-611 | Registration |
| CLEANTRAXX | 2/24/2016 | 62719-702 | Registration |
| CHIEF 3SC HERBICIDE | 8/22/2005 | 66222-107 | Registration |
| GALIGAN H2O | 3/22/2007 | 66222-140 | Registration |
| ZOOMER HERBICIDE | 12/7/2007 | 66222-157 | Registration |
| GALIGAN 2E | 1/8/2008 | 66222-28 | Reregistration |
| OXBOW 2E | 10/27/2011 | 70506-245 | Registration |
| DOUBLEDOWN | 10/25/2007 | 70506-263 | Registration |
| OXYLFUORFEN TECHNICAL | 7/27/2012 | 70506-294 | Registration |
| ROCKET HERBICIDE | 10/5/2011 | 70506-295 | Registration |
| WILLOWWOOD OXYFLUORFEN TECHNICAL | 11/1/2010 | 87283-1 | Registration |

| WILLOWOOD OXYFLO 4 SC | 9/29/2010 | 87290-10 | Registration |
| WILLOWOOD OXYFLO 2 EC | 11/2/2010 | 87290-8 | Registration |
| CHEMSICO HERBICIDE CONCENTRATE 4A | 11/8/2007 | 9688-259 | Registration |
| CHEMSICO HERBICIDE RTU 4A | 12/3/2007 | 9688-264 | Registration |
| HERBICIDE CONCENTRATE 4B | 4/30/2010 | 9688-283 | Registration |
| CHEMSICO HERBICIDE RTU 4B | 5/6/2010 | 9688-284 | Registration |
| CHEMSICO HERBICIDE GWE | 12/17/2013 | 9688-318 | Registration |

542.    Upon information and belief, EPA provided no hearings or other public participation for these product registration actions.

543.    As set forth above, EPA has discretion to influence or change registrations of pesticide products for the benefit of protected species.  For example, EPA may only register or reregister a pesticide product if its use does not cause an unreasonable adverse effect on the environment.  7 U.S.C. § 136a(c)(5); 7 U.S.C. § 136a-1(g)(2)(C); 40 C.F.R. § 152.112; 40 C.F.R. § 152.113(a).   EPA may also change, cancel, restrict, or immediately suspend registered pesticides, pesticide labeling, or particular uses at any time if it appears that the pesticide is causing an unreasonable adverse effect on the environment.  7 U.S.C. § 136d(c).   Thus, EPA's product reregistration and its approvals of products containing oxyfluorfen constitute "affirmative agency actions" subject to consultation under Section 7(a)(2) of the ESA. 16 U.S.C. § 1536(a)(2).

544.    Plaintiffs' members live, work, visit, recreate, and otherwise enjoy areas across the nation that may be impacted by products containing oxyfluorfen.  Plaintiffs' members derive professional, aesthetic, spiritual, recreational, economic, and educational benefits from the endangered and threatened species that live in these areas and may be impacted by products containing oxyfluorfen. The list of species that may be affected by products containing oxyfluorfen is provided in Exhibit A, and Plaintiffs' members have cognizable interests in these species.

545.    For example, products containing oxyfluorfen may affect the piping plover, and a member of Plaintiffs' organizations has a cognizable interest in this species based on, among other things, her efforts to observe the species during frequent visits to habitats where the species can be found and may be affected by oxyfluorfen.

546.    In the RED for oxyfluorfen, EPA explains: "The Agency had a consultation in 1985 (amended in 1986) with the US Fish and Wildlife Service (FWS or the Service) on oxyfluorfen (Goal

1.6E and Goal 2E) regarding its use on non-crop areas including rights-of ways, fence rows, roadsides, and levee banks. The Service found jeopardy to 76 species of endangered plants, 54 species of endangered fish, 23 species of endangered mussels (clams), two species of snails, eleven species of endangered insects, four endangered amphibians and one endangered bird (piping plover)."

547.     Plaintiffs' members engage in wildlife observation, research, photography, restoration activities, and educational programs involving endangered and threatened species that may be impacted by products containing oxyfluorfen.  Plaintiffs' members will continue to maintain an interest in the species and areas that may be impacted by oxyfluorfen in the future.

548.     The above-described interests of Plaintiffs and their members have been and are being adversely affected by EPA's reregistration, registration and authorization of the use of products containing oxyfluorfen, which is a pesticide that may harm endangered and threatened species and their habitats.  As alleged in the Complaint, oxyfluorfen may affect the species identified in Exhibit A, as well as their designated critical habitat.

549.     EPA's failure to ensure that products containing oxyfluorfen do not impact endangered species and their habitats harms Plaintiffs' members' interests in the species and their habitats affected by products containing oxyfluorfen.  For example, EPA's failure to consult on products containing oxyfluorfen may impair recovery of species impacted by products containing oxyfluorfen and may make it more likely that these species would suffer population declines.  Species declines and impaired recovery harm the interests that Plaintiffs' members have in the existence of these rare animals, such as by limiting their ability to observe the species.  Consultation on products containing oxyfluorfen is necessary to ensure that Plaintiffs' members' interests in the species affected by products containing oxyfluorfen are preserved and remain free from injury.

550.     EPA must register and authorize pesticide products before they can be used and has an ongoing responsibility to ensure that registered pesticides do not have unreasonable adverse effects on the environment.  Absent EPA's continuing registration and discretionary control and involvement in products containing oxyfluorfen, this pesticide could not be used and could not negatively impact the listed species named in Exhibit A and their habitats.

551.   If this Court orders EPA to engage in consultation as required, the Service would analyze the extent to which products containing oxyfluorfen affect listed species and their habitats and, if necessary, would suggest reasonable and prudent alternatives or measures to protect the species, which would protect Plaintiffs' members' interests in the species.  16 U.S.C. § 1536(a)(3).  Unless the requested relief is granted, Plaintiffs' interests will continue to be injured by EPA's failure to consult on products containing oxyfluorfen with the Service, as well as by the potential ongoing harm to the species named in Exhibit A and their habitats as a result of ongoing use of products containing oxyfluorfen.

552.   The injuries described above are actual, concrete injuries that are presently suffered by Plaintiffs and their members and will continue to occur unless relief is granted by this Court.  These injuries are directly caused by the Defendants' failure to consult with the Service to ensure that EPA's actions relating to products containing oxyfluorfen do not affect listed species and Plaintiffs' members' cognizable interests in these species.  The relief sought herein, EPA's compliance with the ESA, would redress Plaintiffs' injuries.  Plaintiffs have no other adequate remedy at law, and they bring this action on behalf of their adversely affected members.

**Paraquat Dichloride**[32]

553.   Exhibit A contains a comprehensive, but not necessarily exhaustive, list of endangered and threatened species for which paraquat dichloride is known to be harmful to the taxonomic group of that species and is used in the state where that species lives.

554.   Paraquat dichloride is a pesticide for which the EPA has indicated that estimated environmental concentrations (EECs) are likely to exceed the Levels of Concern (LOCs) for endangered species, and/or may cause indirect effects on endangered species by altering habitat or food sources.  Specifically, EECs of paraquat dichloride are likely to exceed the LOCs for the following taxonomic groups:  mammals, birds, and reptiles.

555.   Paraquat dichloride is a pesticide that is "highly acutely toxic" or "very highly acutely toxic" to the following taxonomic groups:  crustaceans, mammals, fish, amphibians, and mollusks.

---

[32] The current EPA Case Number and EPA PC Code for paraquat dichloride are 0262, 061601.

These toxicity rankings are based on LD50 or LC50 data (lethal dose to 50 percent of the test organisms or lethal concentration for 50 percent of the test organisms) that EPA possesses.

556. EPA "affirmatively authorized" the continued use of the active ingredient paraquat dichloride when it issued a Reregistration Eligibility Decision in August of 1997.

557. On November 21, 2006, EPA completed product reregistration for paraquat dichloride. *See* https://www.epa.gov/pesticide-reevaluation/pesticides-have-completed-product-reregistration (last visited 6/26/2017).

558. Active product registrations for this pesticide can be found on EPA's Pesticide Product Label System, *available at* http://iaspub.epa.gov/apex/pesticides/f?p=PPLS:1 (last visited 6/26/2017).

559. Specifically, EPA's online Pesticide Product Label System lists the following pesticide products containing paraquat dichloride that EPA affirmatively authorized by product reregistration or new product registration since January 20, 2005:

| Product Name | Date | Registration Number | Action |
|---|---|---|---|
| GRAMOXONE SL 2.0 | 10/13/2011 | 100-1431 | Registration |
| DREXEL QUIK-QUAT | 2/17/2009 | 19713-617 | Registration |
| PARAZONE 3SL | 12/5/2006 | 66222-130 | Registration |
| BONFIRE HERBICIDE | 3/9/2011 | 70506-239 | Registration |
| PARAQUAT TECHNICAL CONCENTRATE | 5/19/2005 | 70552-1 | Registration |
| PARAQUAT TC | 1/15/2009 | 74530-37 | Registration |
| HELMQUAT 3SL | 12/6/2010 | 74530-48 | Registration |
| DYNAQUAT | 1/21/2010 | 82542-26 | Registration |
| PARAQUAT CONCENTRATE | 10/11/2007 | 82542-3 | Registration |
| PARAQUAT SL HERBICIDE | 1/25/2006 | 82557-1 | Registration |
| PARAQUAT MANUFACTURING CONCENTRATE | 5/5/2011 | 82633-16 | Registration |
| PARAQUAT CONCENTRATE | 3/24/2011 | 83529-27 | Registration |
| ROTAM PARAQUAT CONCENTRATE | 7/12/2013 | 83979-7 | Registration |
| WILLOWOOD PARAQUAT CONCENTRATE | 11/20/2012 | 87290-35 | Registration |
| AX PARAQUAT CONCENTRATE | 1/7/2013 | 89167-24 | Registration |
| LIBERTY PARAQUAT CONCENTRATE | 5/7/2013 | 89168-25 | Registration |
| WILLOWOOD PARAQUAT TECHNICAL | 11/20/2012 | 89275-1 | Registration |
| PARAQUAT MANUFACTURING CONCENTRATE | 1/27/2015 | 90330-2 | Registration |

| PARAQUAT MANUFACTURING CONCENTRATE | 4/24/2017 | 91640-7 | Registration |
|---|---|---|---|

560.    Upon information and belief, EPA provided no hearings or other public participation for these product registration actions.

561.    As set forth above, EPA has discretion to influence or change registrations of pesticide products for the benefit of protected species.  For example, EPA may only register or reregister a pesticide product if its use does not cause an unreasonable adverse effect on the environment.  7 U.S.C. § 136a(c)(5); 7 U.S.C. § 136a-1(g)(2)(C); 40 C.F.R. § 152.112; 40 C.F.R. § 152.113(a).   EPA may also change, cancel, restrict, or immediately suspend registered pesticides, pesticide labeling, or particular uses at any time if it appears that the pesticide is causing an unreasonable adverse effect on the environment.  7 U.S.C. § 136d(c).  Thus, EPA's product reregistration and its approvals of products containing paraquat dichloride constitute "affirmative agency actions" subject to consultation under Section 7(a)(2) of the ESA. 16 U.S.C. § 1536(a)(2).

562.    Plaintiffs' members live, work, visit, recreate, and otherwise enjoy areas across the nation that may be impacted by products containing paraquat dichloride.  Plaintiffs' members derive professional, aesthetic, spiritual, recreational, economic, and educational benefits from the endangered and threatened species that live in these areas and may be impacted by products containing paraquat dichloride.  The list of species that may be affected by products containing paraquat dichloride is provided in Exhibit A, and Plaintiffs' members have cognizable interests in these species.

563.    For example, products containing paraquat dichloride may affect the sand skink, and a member of Plaintiffs' organizations has a cognizable interest in this species based on, among other things, his efforts to observe the species during frequent visits to habitats where the species can be found and may be affected by paraquat dichloride.

564.    In the recovery plan for the sand skink, FWS prescribes: "Control pesticide use in or adjacent to sand skink habitat. Because pesticide use on adjacent agricultural and residential lands poses a potential risk to sand skinks, management plans should consider these risks and alleviate threats whenever possible."

565.    Plaintiffs' members engage in wildlife observation, research, photography, restoration activities, and educational programs involving endangered and threatened species that may be impacted

1   by products containing paraquat dichloride.  Plaintiffs' members will continue to maintain an interest in

2   the species and areas that may be impacted by products containing paraquat dichloride in the future.

3   566.   The above-described interests of Plaintiffs and their members have been and are being

4   adversely affected by EPA's reregistration, registration and authorization of the use of products

5   containing paraquat dichloride, which is a pesticide that may harm endangered and threatened species

6   and their habitats.  As alleged in the Complaint, products containing paraquat dichloride may affect the

7   species identified in Exhibit A, as well as their designated critical habitat.

8   567.   EPA's failure to ensure that products containing paraquat dichloride do not impact

9   endangered species and their habitats harms Plaintiffs' members' interests in the species and their

10   habitats affected by products containing paraquat dichloride.  For example, EPA's failure to consult on

11   products containing paraquat dichloride may impair recovery of species impacted by products

12   containing paraquat dichloride and may make it more likely that these species would suffer population

13   declines.  Species declines and impaired recovery harm the interests that Plaintiffs' members have in

14   the existence of these rare animals, such as by limiting their ability to observe the species.  Consultation

15   on products containing paraquat dichloride is necessary to ensure that Plaintiffs' members' interests in

16   the species affected by products containing paraquat dichloride are preserved and remain free from

17   injury.

18   568.   EPA must register and authorize pesticide products before they can be used and has an

19   ongoing responsibility to ensure that registered pesticides do not have unreasonable adverse effects on

20   the environment.  Absent EPA's continuing registration and discretionary control and involvement in

21   products containing paraquat dichloride, this pesticide could not be used and could not negatively

22   impact the listed species named in Exhibit A and their habitats.

23   569.   If this Court orders EPA to engage in consultation as required, the Service would analyze

24   the extent to which products containing paraquat dichloride affect listed species and their habitats and,

25   if necessary, would suggest reasonable and prudent alternatives or measures to protect the species,

26   which would protect Plaintiffs' members' interests in the species.  16 U.S.C. § 1536(a)(3).  Unless the

27   requested relief is granted, Plaintiffs' interests will continue to be injured by EPA's failure to consult

28   on products containing paraquat dichloride with the Service, as well as by the potential ongoing harm

1  to the species named in Exhibit A and their habitats as a result of ongoing use of products containing

2  paraquat dichloride.

3      570.    The injuries described above are actual, concrete injuries that are presently suffered by

4  Plaintiffs and their members and will continue to occur unless relief is granted by this Court.  These

5  injuries are directly caused by the Defendants' failure to consult with the Service to ensure that EPA's

6  actions relating to products containing paraquat dichloride do not affect listed species and Plaintiffs'

7  members' cognizable interests in these species.  The relief sought herein, EPA's compliance with the

8  ESA, would redress Plaintiffs' injuries.  Plaintiffs have no other adequate remedy at law, and they bring

9  this action on behalf of their adversely affected members.

10 **Pendimethalin**[33]

11     571.    Exhibit A contains a comprehensive, but not necessarily exhaustive, list of endangered

12 and threatened species for which pendimethalin is known to be harmful to the taxonomic group of that

13 species and is used in the state where that species lives.

14     572.    Pendimethalin is a known endocrine disrupter.  As explained above, endocrine disrupters

15 have effects on the reproductive and immune systems capable of compromising populations of

16 endangered species.

17     573.    Pendimethalin is a pesticide for which the EPA has indicated that estimated

18 environmental concentrations (EECs) are likely to exceed the Levels of Concern (LOCs) for

19 endangered species, and/or may cause indirect effects on endangered species by altering habitat or food

20 sources.  Specifically, EECs of pendimethalin are likely to exceed the LOCs for the following

21 taxonomic groups:  birds, fish, amphibians, mollusks, crustaceans, and reptiles.

22     574.    Pendimethalin is a pesticide that is "highly acutely toxic" or "very highly acutely toxic"

23 to the following taxonomic groups: fish, amphibians, and crustaceans. These toxicity rankings are

24 based on LD50 or LC50 data (lethal dose to 50 percent of the test organisms or lethal concentration for

25 50 percent of the test organisms) that EPA possesses.

26

27

28

---

[33] The current EPA Case Number and EPA PC Code for pendimethalin are 0187, 108501.

575.    The USGS has detected pendimethalin in dozens of waterways across the nation, as documented in reports on its nationwide water quality surveys. As shown in Exhibit B, some of these watersheds overlap the range of species that may be affected by this pesticide.

576.    EPA "affirmatively authorized" the continued use of the active ingredient pendimethalin when it issued a Reregistration Eligibility Decision in April of 1997.

577.    On July 3, 2007, EPA completed product reregistration for pendimethalin. *See* https://www.epa.gov/pesticide-reevaluation/pesticides-have-completed-product-reregistration (last visited 6/26/2017).

578.    Active product registrations for this pesticide can be found on EPA's Pesticide Product Label System, *available at* http://iaspub.epa.gov/apex/pesticides/f?p=PPLS:1 (last visited 6/26/2017).

579.    Specifically, the EPA's online Pesticide Product Label System lists the following pesticide products containing pendimethalin that EPA affirmatively authorized by product reregistration or new product registration since January 20, 2005:

| Product Name | Date | Registration Number | Action |
|---|---|---|---|
| LESCO PRE-M 1.31% PLUS FERTILIZER | 7/3/2007 | 10404-82 | Reregistration |
| FRAMEWORK 3.3 EC | 5/8/2007 | 1381-216 | Registration |
| DREXEL PIN-DEE 3.3 T&O | 6/27/2006 | 19713-590 | Registration |
| DREXEL PENDIGUARD TURF 0.75% | 10/21/2008 | 19713-614 | Registration |
| DREXEL PENDIGUARD TURF 0.86% | 10/21/2008 | 19713-615 | Registration |
| DREXEL AQUAPEN | 11/2/2009 | 19713-621 | Registration |
| PIN-DEE 3.3 EC | 7/1/2015 | 19713-668 | Registration |
| PRE-M 3.3 EC TURF HERBICIDE | 9/1/2005 | 241-360 | Reregistration |
| IMAZAPIC E 2L HERBICIDE | 12/13/2007 | 241-442 | Registration |
| F7488-1 HERBICIDE | 8/13/2009 | 279-3359 | Registration |
| PENDIMETHALIN 3.3 EC | 12/3/2014 | 33270-28 | Registration |
| PDM 3.3 T&O HERBICIDE | 12/14/2005 | 34704-898 | Registration |
| TURF PRIDE FERTILIZER + 0.85% PREEMERGENT WEED CONTROL | 4/13/2010 | 35512-60 | Registration |
| TURF BUILDER PLUS HALTS | 5/16/2006 | 538-189 | Reregistration |
| TURF BUILDER PLUS HALTS FOR LAWNS | 11/7/2005 | 538-190 | Reregistration |
| CRABGRASS PREVENTER PLUS LAWN FOOD | 5/16/2006 | 538-202 | Reregistration |

| | | | |
|---|---|---|---|
| PROTURF FERTILIZER PLUS SOUTHERN TURF WEEDGRASS CONTROL | 4/21/2006 | 538-206 | Reregistration |
| PROTURF FERTILIZER PLUS PREEMERGENT WEED CONTROL | 6/21/2007 | 538-214 | Reregistration |
| PRIVATE LABEL CRABGRASS PREVENTER PLUS LAWN FOOD | 5/16/2006 | 538-219 | Reregistration |
| LANDSCAPER LAWN FERTILIZER WITH CRABGRASS CONTROL | 5/12/2006 | 538-237 | Reregistration |
| TURF BUILDER PRE/POST 2 | 10/27/2006 | 538-299 | Registration |
| TURF FERTILIZER PLUS PREEMERGENT WEED CONTROL 0.75% | 2/25/2009 | 538-308 | Registration |
| 33-0-0 FERTILIZER PLUS PREEMERGENT WEED CONTROL | 2/25/2009 | 538-309 | Registration |
| SQUADRON HERBICIDE | 2/6/2006 | 5481-602 | Reregistration |
| ORNAMENTAL HERBICIDE II | 10/6/2006 | 58185-178 | Reregistration |
| SOUTHERN WEEDGRASS CONTROL | 12/19/2006 | 58185-179 | Reregistration |
| REVOKE PRE-EMERGENT HERBICIDE | 6/2/2008 | 58185-34 | Registration |
| SETRE PROWL HERBICIDE + PROPANIL | 6/21/2007 | 5905-495 | Reregistration |
| PENDI HYDROCAP | 7/12/2010 | 70506-230 | Registration |
| SATELLITE 3.3 HERBICIDE | 1/26/2016 | 70506-318 | Registration |
| SATELLITE FLEX HERBICIDE | 6/7/2016 | 70506-324 | Registration |
| RICEONE CS | 1/20/2016 | 71085-40 | Registration |
| BAS 756 00 H HERBICIDE | 4/23/2007 | 7969-254 | Registration |
| FREEHAND 1.75G HERBICIDE | 4/28/2008 | 7969-273 | Registration |
| CANDO GRANULAR WEED PREVENTER | 8/1/2012 | 7969-347 | Registration |
| FREEHAND CA 1.75G HERBICIDE | 4/24/2013 | 7969-358 | Registration |
| PENDIMETHALIN 3.3 EC | 11/17/2011 | 83222-35 | Registration |
| SHAW'S 30-4-6 FERTILIZER PLUS PREEMERGENT WEED CONTROL | 12/4/2006 | 8378-45 | Reregistration |
| SHAW'S TURF FOOD WITH PENDIMETHALIN 66 | 2/13/2006 | 8378-66 | Registration |
| SHAW'S TURF FOOD WITH PENDIMETHALIN 86 | 2/13/2006 | 8378-67 | Registration |
| SHAW'S TURF FOOD WITH PENDIMETHALIN 107 | 2/13/2006 | 8378-68 | Registration |
| SHAW'S TURF FOOD WITH PENDIMETHALIN 75 | 2/13/2006 | 8378-69 | Registration |
| AX PENDI 3.3 EC | 12/2/2013 | 89167-29 | Registration |
| THE ANDERSONS PROPENDI DG | 12/4/2006 | 9198-191 | Reregistration |

| ANDERSONS GOLF PRODUCTS KANSEL + FERTILIZER | 7/6/2005 | 9198-230 | Registration |
|---|---|---|---|

580.   Upon information and belief, EPA provided no hearings or other public participation for these product registration actions.

581.   As set forth above, EPA has discretion to influence or change registrations of pesticide products for the benefit of protected species.  For example, EPA may only register or reregister a pesticide product if its use does not cause an unreasonable adverse effect on the environment.  7 U.S.C. § 136a(c)(5); 7 U.S.C. § 136a-1(g)(2)(C); 40 C.F.R. § 152.112; 40 C.F.R. § 152.113(a).   EPA may also change, cancel, restrict, or immediately suspend registered pesticides, pesticide labeling, or particular uses at any time if it appears that the pesticide is causing an unreasonable adverse effect on the environment.  7 U.S.C. § 136d(c).   Thus, EPA's product reregistration and its approvals of products containing pendimethalin are "affirmative agency actions" subject to consultation under Section 7(a)(2) of the ESA. 16 U.S.C. § 1536(a)(2).

582.   Plaintiffs' members live, work, visit, recreate, and otherwise enjoy areas across the nation that may be impacted by products containing pendimethalin.  Plaintiffs' members derive professional, aesthetic, spiritual, recreational, economic, and educational benefits from the endangered and threatened species that live in these areas and may be impacted by products containing pendimethalin.  The list of species that may be affected by products containing pendimethalin is provided in Exhibit A, and Plaintiffs' members have cognizable interests in these species.

583.   For example, products containing pendimethalin may affect the Chipola slabshell, and a member of Plaintiffs' organizations has a cognizable interest in this species based on, among other things, his efforts to observe the species during frequent visits to habitats where the species can be found and may be affected by pendimethalin.

584.    In the recovery plan for the Chipola slabshell, FWS explains that pesticides may harm the Chipola slabshell. *Recovery Plan for Endangered Fat Threeridge, Shinyrayed Pocketbook, Gulf Moccasinshell,Ochlockonee Moccasinshell, Oval Pigtoe, and Threatened Chipola Slabshell and Purple Bankclimber*, *available at* http://ecos.fws.gov/docs/recovery_plan/030930.pdf (last visited May 3, 2013).  The recovery plan explains that "effects of pesticides on mussels may be particularly profound (Fuller 1974, Havlik and Marking 1987, Moulton et al. 1996). . . .  Commonly used pesticides have

been directly implicated in a North Carolina mussel dieoff (Fleming et al. 1995). Cotton is raised

extensively in much of the Apalachicolan Region inhabited by these mussels. One of the most

important pesticides used in cotton farming, malathion, is known to inhibit physiological activities of

mussels (Kabeer et al. 1979) that may decrease the ability of a mussel to respire and obtain food.  This

chemical may pose a continuing threat to some populations of these mussels." Pendimethalin is an

herbicide also used in cotton production.

585.    Plaintiffs' members engage in wildlife observation, research, photography, restoration

activities, and educational programs involving endangered and threatened species that may be impacted

by products containing pendimethalin.  Plaintiffs' members will continue to maintain an interest in the

species and areas that may be impacted by products containing pendimethalin in the future.

586.    The above-described interests of Plaintiffs and their members have been and are being

adversely affected by EPA's reregistration, registration and authorization of the use of products

containing pendimethalin, which is a pesticide that may harm endangered and threatened species and

their habitats.  As alleged in the Complaint, products containing pendimethalin may affect the species

identified in Exhibit A, as well as their designated critical habitat.

587.    EPA's failure to ensure that products containing pendimethalin do not impact

endangered species and their habitats harms Plaintiffs' members' interests in the species and their

habitats affected by products containing pendimethalin.  For example, EPA's failure to consult on

products containing pendimethalin may impair recovery of species impacted by products containing

pendimethalin and may make it more likely that these species would suffer population declines.

Species declines and impaired recovery harm the interests that Plaintiffs' members have in the

existence of these rare animals, such as by limiting their ability to observe the species.  Consultation on

products containing pendimethalin is necessary to ensure that Plaintiffs' members' interests in the

species affected by products containing pendimethalin are preserved and remain free from injury.

588.    EPA must register and authorize pesticide products before they can be used and has an

ongoing responsibility to ensure that registered pesticides do not have unreasonable adverse effects on

the environment.  Absent EPA's continuing registration and discretionary control and involvement in

1   products containing pendimethalin, this pesticide could not be used and could not negatively impact the

2   listed species named in Exhibit A and their habitats.

3   589.   If this Court orders EPA to engage in consultation as required, the Service would analyze

4   the extent to which products containing pendimethalin affect listed species and their habitats and, if

5   necessary, would suggest reasonable and prudent alternatives or measures to protect the species, which

6   would protect Plaintiffs' members' interests in the species.  16 U.S.C. § 1536(a)(3).  Unless the

7   requested relief is granted, Plaintiffs' interests will continue to be injured by EPA's failure to consult

8   on products containing pendimethalin with the Service, as well as by the potential ongoing harm to the

9   species named in Exhibit A and their habitats as a result of ongoing use of products containing

10  pendimethalin.

11  590.   The injuries described above are actual, concrete injuries that are presently suffered by

12  Plaintiffs and their members and will continue to occur unless relief is granted by this Court.  These

13  injuries are directly caused by the Defendants' failure to consult with the Service to ensure that EPA's

14  actions relating to products containing pendimethalin do not affect listed species and Plaintiffs'

15  members' cognizable interests in these species.  The relief sought herein, EPA's compliance with the

16  ESA, would redress Plaintiffs' injuries.  Plaintiffs have no other adequate remedy at law, and they bring

17  this action on behalf of their adversely affected members.

18  **Phorate**[34]

19  591.   Exhibit A contains a comprehensive, but not necessarily exhaustive, list of endangered

20  and threatened species for which phorate is known to be harmful to the taxonomic group of that species

21  and is used in the state where that species lives.

22  592.   Phorate is a pesticide for which the EPA has indicated that estimated environmental

23  concentrations (EECs) are likely to exceed the Levels of Concern (LOCs) for endangered species,

24  and/or may cause indirect effects on endangered species by altering habitat or food sources.

25  Specifically, EECs of phorate are likely to exceed the LOCs for the following taxonomic groups:

26  mammals, birds, fish, amphibians, mollusks, crustaceans, insects, and reptiles.

27

28

---

[34] The current EPA Case Number and EPA PC Code for phorate are 0103, 057201.

593.    Phorate is a pesticide that is "highly acutely toxic" or "very highly acutely toxic" to the following taxonomic groups:  mammals, birds, fish, amphibians, mollusks, crustaceans, insects, and reptiles.  These toxicity rankings are based on LD50 or LC50 data (lethal dose to 50 percent of the test organisms or lethal concentration for 50 percent of the test organisms) that EPA possesses.

594.    The USGS has detected phorate in dozens of waterways across the nation, as documented in reports on its nationwide water quality surveys. As shown in Exhibit B, some of these watersheds overlap the range of species that may be affected by this pesticide.

595.    EPA "affirmatively authorized" the continued use of the active ingredient phorate when it issued a Reregistration Eligibility Decision in July of 2006.

596.    On April 30, 2008, EPA completed product reregistration for phorate.  *See* https://www.epa.gov/pesticide-reevaluation/pesticides-have-completed-product-reregistration (last visited 6/26/2017).

597.    Active product registrations for this pesticide can be found on EPA's Pesticide Product Label System, *available at* http://iaspub.epa.gov/apex/pesticides/f?p=PPLS:1 (last visited 6/26/2017).

598.    Specifically, EPA's online Pesticide Product Label System lists the following pesticide products containing phorate that EPA affirmatively authorized by product reregistration or new product registration since January 20, 2005:

| Product Name | Date | Registration Number | Action |
|---|---|---|---|
| PHORATE 20G | 4/30/2008 | 34704-259 | Reregistration |
| THIMET 10-G SOIL AND SYSTEMIC INSECTICIDE | 4/30/2008 | 5481-526 | Reregistration |
| THIMET 15-G SOIL AND SYSTEMIC INSECTICIDE | 4/30/2008 | 5481-527 | Reregistration |
| THIMET MC - 85 FOR MANUFACTURING PURPOSES ONLY | 10/18/2006 | 5481-528 | Reregistration |
| THIMET TECHNICAL INSECTICIDE | 10/18/2006 | 5481-529 | Reregistration |
| THIMET 20-G | 4/30/2008 | 5481-530 | Reregistration |
| PHORATE MUP | 3/29/2016 | 5481-590 | Registration |
| PHORATE TECHNICAL INSECTICIDE | 4/2/2008 | 5481-8979 | Reregistration |
| PHORATE 20-G | 4/30/2008 | 9779-293 | Reregistration |

599.    Upon information and belief, EPA provided no hearings or other public participation for these product registration actions.

600.    As set forth above, EPA has discretion to influence or change registrations of pesticide products for the benefit of protected species.  For example, EPA may only register or reregister a pesticide product if its use does not cause an unreasonable adverse effect on the environment.  7 U.S.C. § 136a(c)(5); 7 U.S.C. § 136a-1(g)(2)(C); 40 C.F.R. § 152.112; 40 C.F.R. § 152.113(a).   EPA may also change, cancel, restrict, or immediately suspend registered pesticides, pesticide labeling, or particular uses at any time if it appears that the pesticide is causing an unreasonable adverse effect on the environment.  7 U.S.C. § 136d(c).   Thus, EPA's product reregistration and its approvals of products containing phorate constitute "affirmative agency actions" subject to consultation under Section 7(a)(2) of the ESA. 16 U.S.C. § 1536(a)(2).

601.    Plaintiffs' members live, work, visit, recreate, and otherwise enjoy areas across the nation that may be impacted by products containing phorate.  Plaintiffs' members derive professional, aesthetic, spiritual, recreational, economic, and educational benefits from the endangered and threatened species that live in these areas and may be impacted by products containing phorate.  The list of species that may be affected by products containing phorate is provided in Exhibit A, and Plaintiffs' members have cognizable interests in these species.

602.    For example, products containing phorate may affect the Callippe silverspot, and a member of Plaintiffs' organizations has a cognizable interest in this species based on, among other things, his efforts to observe the species during frequent visits to habitats where the species can be found and may be affected by phorate.

603.    In the ruling listing the Callippe silverspot, FWS explains that silverspot butterfly larvae are extremely sensitive to pesticides and the accumulation of runoff in the soil after spraying has proven lethal to the larvae of members of this genus. *Determination of Endangered Status for the Callippe Silverspot Butterfly and the Behren's Silverspot Butterfly and Threatened Status for Alameda Whipsnake*, 62 Fed. Reg. 64306, 64314 (Dec. 5, 1997).

604.    Plaintiffs' members engage in wildlife observation, research, photography, restoration activities, and educational programs involving endangered and threatened species that may be impacted by products containing phorate.  Plaintiffs' members will continue to maintain an interest in the species and areas that may be impacted by products containing phorate in the future.

605.     The above-described interests of Plaintiffs and their members have been and are being adversely affected by EPA's reregistration, registration and authorization of the use of products containing phorate, which is a pesticide that may harm endangered and threatened species and their habitats.  As alleged in the Complaint, products containing phorate may affect the species identified in Exhibit A, as well as their designated critical habitat.

606.     EPA's failure to ensure that products containing phorate do not impact endangered species and their habitats harms Plaintiffs' members' interests in the species and their habitats affected by products containing phorate.  For example, EPA's failure to consult on products containing phorate may impair recovery of species impacted by products containing phorate and may make it more likely that these species would suffer population declines.  Species declines and impaired recovery harm the interests that Plaintiffs' members have in the existence of these rare animals, such as by limiting their ability to observe the species.  Consultation on products containing phorate is necessary to ensure that Plaintiffs' members' interests in the species affected by products containing phorate are preserved and remain free from injury.

607.     EPA must register and authorize pesticide products before they can be used and has an ongoing responsibility to ensure that registered pesticides do not have unreasonable adverse effects on the environment.  Absent EPA's continuing registration and discretionary control and involvement in products containing phorate, this pesticide could not be used and could not negatively impact the listed species named in Exhibit A and their habitats.

608.     If this Court orders EPA to engage in consultation as required, the Service would analyze the extent to which products containing phorate affect listed species and their habitats and, if necessary, would suggest reasonable and prudent alternatives or measures to protect the species, which would protect Plaintiffs' members' interests in the species.  16 U.S.C. § 1536(a)(3).  Unless the requested relief is granted, Plaintiffs' interests will continue to be injured by EPA's failure to consult on products containing phorate with the Service, as well as by the potential ongoing harm to the species named in Exhibit A and their habitats as a result of ongoing use of products containing phorate.

609.     The injuries described above are actual, concrete injuries that are presently suffered by Plaintiffs and their members and will continue to occur unless relief is granted by this Court.  These

injuries are directly caused by the Defendants' failure to consult with the Service to ensure that EPA's actions relating to products containing phorate do not affect listed species and Plaintiffs' members' cognizable interests in these species.  The relief sought herein, EPA's compliance with the ESA, would redress Plaintiffs' injuries.  Plaintiffs have no other adequate remedy at law, and they bring this action on behalf of their adversely affected members.

**Phosmet**[35]

610.    Exhibit A contains a comprehensive, but not necessarily exhaustive, list of endangered and threatened species for which phosmet is known to be harmful to the taxonomic group of that species and is used in the state where that species lives.

611.    Phosmet is a pesticide for which the EPA has indicated that estimated environmental concentrations (EECs) are likely to exceed the Levels of Concern (LOCs) for endangered species, and/or may cause indirect effects on endangered species by altering habitat or food sources. Specifically, EECs of phosmet are likely to exceed the LOCs for the following taxonomic groups: mammals, birds, fish, amphibians, mollusks, crustaceans, insects, and reptiles.

612.    Phosmet is a pesticide that is "highly acutely toxic" or "very highly acutely toxic" to the following taxonomic groups:  mammals, fish, amphibians, crustaceans, and insects. These toxicity rankings are based on LD50 or LC50 data (lethal dose to 50 percent of the test organisms or lethal concentration for 50 percent of the test organisms) that EPA possesses.

613.    EPA "affirmatively authorized" the continued use of the active ingredient phosmet when it issued a Reregistration Eligibility Decision in July of 2006.

614.    On February 15, 2012, EPA completed product reregistration for phosmet.  *See* https://www.epa.gov/pesticide-reevaluation/pesticides-have-completed-product-reregistration (last visited 6/26/2017).

615.    Active product registrations for this pesticide can be found on EPA's Pesticide Product Label System, *available at* http://iaspub.epa.gov/apex/pesticides/f?p=PPLS:1 (last visited 6/26/2017).

---

[35] The current EPA Case Number and EPA PC Code for phosmet are 0242, 059201.

616.     Specifically, EPA's online Pesticide Product Label System lists the following pesticide products containing phosmet that EPA affirmatively authorized by product reregistration or new product registration since January 20, 2005:

| Product Name | Date | Registration Number | Action |
|---|---|---|---|
| IMIDAN 5 DUST | 3/9/2009 | 10163-168 | Reregistration |
| IMIDAN 70-W AGRICULTURAL INSECTICIDE | 8/12/2005 | 10163-169 | Reregistration |
| IMIDAN 1-E INSECTICIDE | 1/27/2010 | 10163-171 | Reregistration |
| IMIDAN TECHNICAL ORGANOPHOSPHORUS INSECTICIDE | 11/7/2007 | 10163-172 | Reregistration |
| IMIDAN 50-WSB | 8/22/5382 | 10163-175 | Reregistration |
| PHOSMET TECHNICAL ORGANOPHOSPHORUS INSECTICIDE | 4/29/2009 | 10163-304 | Registration |
| IMIDAN 60 WDG | 3/4/2010 | 10163-313 | Registration |
| ZOECON RF-43 EMULSIFIABLE LIQUID | 4/8/2009 | 2724-262 | Reregistration |

617.     Upon information and belief, EPA provided no hearings or other public participation for these product registration actions.

618.     As set forth above, EPA has discretion to influence or change registrations of pesticide products for the benefit of protected species.  For example, EPA may only register or reregister a pesticide product if its use does not cause an unreasonable adverse effect on the environment.  7 U.S.C. § 136a(c)(5); 7 U.S.C. § 136a-1(g)(2)(C); 40 C.F.R. § 152.112; 40 C.F.R. § 152.113(a).   EPA may also change, cancel, restrict, or immediately suspend registered pesticides, pesticide labeling, or particular uses at any time if it appears that the pesticide is causing an unreasonable adverse effect on the environment.  7 U.S.C. § 136d(c).   Thus, EPA's product reregistration and its approvals of products containing phosmet constitute "affirmative agency actions" subject to consultation under Section 7(a)(2) of the ESA. 16 U.S.C. § 1536(a)(2).

619.     Plaintiffs' members live, work, visit, recreate, and otherwise enjoy areas across the nation that may be impacted by products containing phosmet.  Plaintiffs' members derive professional, aesthetic, spiritual, recreational, economic, and educational benefits from the endangered and threatened species that live in these areas and may be impacted by products containing phosmet.  The

1    list of species that may be affected by products containing phosmet is provided in Exhibit A, and

2    Plaintiffs' members have cognizable interests in these species.

3         620.    For example, products containing phosmet may affect the Buena Vista Lake shrew, and a

4    member of Plaintiffs' organizations has a cognizable interest in this species based on, among other

5    things, his efforts to observe the species during frequent visits to habitats where the species can be

6    found and may be affected by phosmet.

7         621.    In the rule listing the Buena Vista Lake shrew, FWS states that due to the close

8    proximity of shrew habitat to an otherwise agriculturally dominated landscape, the shrew may be

9    "directly exposed to lethal and sublethal concentrations of pesticides from drift or direct spraying of

10   crops, canals and ditch banks, wetland or riparian edges, and roadsides where shrews might exist."

11   *Endangered Status for the Buena Vista Lake Shrew*, 67 Fed. Reg. 10101 (March 6, 2002).  The listing

12   designation also notes that "[r]educed reproduction in Buena Vista Lake Shrews could be directly

13   caused by pesticides through grooming, and secondarily from feeding on contaminated insects."  The

14   listing also specifically acknowledges the endocrine-disrupting effects of carbamates and

15   organophosphates, stating that "laboratory experiments have shown that behavioral activities such as

16   rearing, exploring for food, and sniffing can be depressed for up to 6 hours in the common shrew from

17   environmental and dietary exposure to sublethal doses of a widely used insecticide, dimethoate."  The

18   FWS explains that such depression in behavioral activities could make the shrews more vulnerable to

19   predation and starvation.  Furthermore, FWS explains that shrews may have higher concentrations of

20   pesticides in their system than would normally be available because they may feed heavily on

21   intoxicated arthropods after pesticide applications.  Finally, FWS reports that Fresno, Kern, and Tulare

22   counties are the three highest users of pesticides in California.  Phosmet is a organophosphate

23   insecticide.

24        622.    Plaintiffs' members engage in wildlife observation, research, photography, restoration

25   activities, and educational programs involving endangered and threatened species that may be impacted

26   by products containing phosmet.  Plaintiffs' members will continue to maintain an interest in the

27   species and areas that may be impacted by products containing phosmet in the future.

28

623.    The above-described interests of Plaintiffs and their members have been and are being adversely affected by EPA's reregistration, registration and authorization of the use of products containing phosmet, which is a pesticide that may harm endangered and threatened species and their habitats.  As alleged in the Complaint, phosmet may affect the species identified in Exhibit A, as well as their designated critical habitat.

624.    EPA's failure to ensure that products containing phosmet do not impact endangered species and their habitats harms Plaintiffs' members' interests in the species and their habitats affected by products containing phosmet.  For example, EPA's failure to consult on products containing phosmet may impair recovery of species impacted by products containing phosmet and may make it more likely that these species would suffer population declines.  Species declines and impaired recovery harm the interests that Plaintiffs' members have in the existence of these rare animals, such as by limiting their ability to observe the species.  Consultation on products containing phosmet is necessary to ensure that Plaintiffs' members' interests in the species affected by products containing phosmet are preserved and remain free from injury.

625.     EPA must register and authorize pesticide products before they can be used and has an ongoing responsibility to ensure that registered pesticides do not have unreasonable adverse effects on the environment.  Absent EPA's continuing registration and discretionary control and involvement in products containing phosmet, this pesticide could not be used and could not negatively impact the listed species named in Exhibit A and their habitats.

626.    If this Court orders EPA to engage in consultation as required, the Service would analyze the extent to which products containing phosmet affect listed species and their habitats and, if necessary, would suggest reasonable and prudent alternatives or measures to protect the species, which would protect Plaintiffs' members' interests in the species.  16 U.S.C. § 1536(a)(3).  Unless the requested relief is granted, Plaintiffs' interests will continue to be injured by EPA's failure to consult on products containing phosmet with the Service, as well as by the potential ongoing harm to the species named in Exhibit A and their habitats as a result of ongoing use of products containing phosmet.

627.    The injuries described above are actual, concrete injuries that are presently suffered by Plaintiffs and their members and will continue to occur unless relief is granted by this Court.  These injuries are directly caused by the Defendants' failure to consult with the Service to ensure that EPA's actions relating to products containing phosmet do not affect listed species and Plaintiffs' members' cognizable interests in these species.  The relief sought herein, EPA's compliance with the ESA, would redress Plaintiffs' injuries.  Plaintiffs have no other adequate remedy at law, and they bring this action on behalf of their adversely affected members.

**Propanil**[36]

628.    Exhibit A contains a comprehensive, but not necessarily exhaustive, list of endangered and threatened species for which propanil is known to be harmful to the taxonomic group of that species and is used in the state where that species lives.

629.    Propanil is a known endocrine disrupter.  As explained above, endocrine disrupters have effects on the reproductive and immune systems capable of compromising populations of endangered species.

630.    Propanil is a pesticide for which the EPA has indicated that estimated environmental concentrations (EECs) are likely to exceed the Levels of Concern (LOCs) for endangered species, and/or may cause indirect effects on endangered species by altering habitat or food sources. Specifically, EECs of propanil are likely to exceed the LOCs for the following taxonomic groups: mammals, birds, fish, amphibians, mollusks, crustaceans, and reptiles.

631.    Propanil is a pesticide that is "highly acutely toxic" or "very highly acutely toxic" to the following taxonomic groups:  mammals, fish, amphibians, and crustaceans.  These toxicity rankings are based on LD50 or LC50 data (lethal dose to 50 percent of the test organisms or lethal concentration for 50 percent of the test organisms) that EPA possesses.

632.    The USGS has detected propanil in dozens of waterways across the nation, as documented in reports on its nationwide water quality surveys. As shown in Exhibit B, some of these watersheds overlap the range of species that may be affected by this pesticide.

---

[36] The current EPA Case Number and EPA PC Code for propanil are 0226, 028201.
Third Amended and First Supplemental Complaint for Declaratory and Injunctive Relief
Case No. 3:11-cv-00293-JCS                                                    183

633.    EPA "affirmatively authorized" the continued use of the active ingredient propanil when it issued a Reregistration Eligibility Decision in September of 2003 (that was amended in March of 2006).

634.    On May 11, 2010, EPA completed product reregistration for propanil.  *See* https://www.epa.gov/pesticide-reevaluation/pesticides-have-completed-product-reregistration (last visited 6/26/2017).

635.    Active product registrations for this pesticide can be found on EPA's Pesticide Product Label System, *available at* http://iaspub.epa.gov/apex/pesticides/f?p=PPLS:1 (last visited 6/26/2017).

636.    Specifically, EPA's online Pesticide Product Label System lists the following pesticide products containing propanil that EPA affirmatively authorized by product reregistration or new product registration since January 20, 2005:

| Product Name | Date | Registration Number | Action |
|---|---|---|---|
| IDA PROP-A-NEL 4 | 11/26/2007 | 19713-285 | Reregistration |
| PROP-JOB 3 PROPANIL HERBICIDE | 11/20/2008 | 19713-30 | Reregistration |
| DREXEL PROP-JOB 4 PROPANIL HERBICIDE | 8/18/2008 | 19713-31 | Reregistration |
| PROPANIL XTRA FLOWABLE | 9/10/2008 | 19713-576 | Reregistration |
| DREXEL PROPANIL EC | 12/3/2007 | 19713-577 | Reregistration |
| BEST PROPANIL 3 EC POST EMERGENCE GRASS & WEED KILLER | 3/11/2009 | 34704-461 | Reregistration |
| SETRE PROWL HERBICIDE + PROPANIL | 6/21/2007 | 5905-495 | Reregistration |
| RICECO PROPANIL TECHNICAL | 11/26/2007 | 71085-1 | Reregistration |
| DUET DF RICE HERBICIDE | 3/24/2008 | 71085-16 | Reregistration |
| PROPANIL 48 SF | 12/20/2007 | 71085-2 | Reregistration |
| PROPANIL TECHNICAL | 1/24/2008 | 71085-21 | Reregistration |
| DUET 60DF | 4/7/2008 | 71085-23 | Reregistration |
| RICEMAX | 12/20/2006 | 71085-25 | Registration |
| RICEPRO | 3/13/2007 | 71085-26 | Registration |
| TECHNICAL PROPANIL | 11/26/2007 | 71085-28 | Reregistration |
| PROPANIL 36% | 3/11/2009 | 71085-3 | Reregistration |
| RICEEDGE | 4/1/2010 | 71085-31 | Registration |
| RICEEDGE 60 DF | 12/1/2010 | 71085-32 | Registration |
| STAM M4 HERBICIDE | 7/1/2008 | 71085-36 | Reregistration |
| STAM TECHNICAL | 6/23/2008 | 71085-37 | Reregistration |
| STAM 80 EDF | 6/23/2008 | 71085-38 | Reregistration |

| STAM 4 SC | 5/20/2008 | 71085-39 | Reregistration |
|---|---|---|---|
| WHAM ! EZ | 5/27/2008 | 71085-5 | Reregistration |
| WHAM! 80 DF | 8/31/2012 | 71085-6 | Registration |
| DUET HERBICIDE | 4/7/2008 | 71085-9 | Reregistration |
| WILLOWOOD PROPANIL 80DF | 3/16/2011 | 87290-17 | Registration |
| WILLOWOOD PROPANIL 4SC | 3/9/2011 | 87290-18 | Registration |
| WILLOWOOD PROPANIL 4EC | 2/7/2012 | 87290-32 | Registration |
| WILLOWOOD PROPANIL TECHNICAL | 6/13/2011 | 87829-1 | Registration |
| LIBERTY PROPANIL 80DF | 11/15/2012 | 89168-10 | Registration |
| LIBERTY PROPANIL 4SC | 11/15/2012 | 89168-13 | Registration |
| LIBERTY PROPANIL 4EC | 10/29/2013 | 89168-31 | Registration |
| PROPANIL TECHNICAL | 12/17/2014 | 90188-1 | Registration |
| PROPANIL 4SC HERBICIDE | 11/10/2014 | 90188-2 | Registration |
| PROPANIL 4EC HERBICIDE | 12/17/2014 | 90188-3 | Registration |

637.   Upon information and belief, EPA provided no hearings or other public participation for these product registration actions.

638.   As set forth above, EPA has discretion to influence or change registrations of pesticide products for the benefit of protected species.  For example, EPA may only register or reregister a pesticide product if its use does not cause an unreasonable adverse effect on the environment.  7 U.S.C. § 136a(c)(5); 7 U.S.C. § 136a-1(g)(2)(C); 40 C.F.R. § 152.112; 40 C.F.R. § 152.113(a).   EPA may also change, cancel, restrict, or immediately suspend registered pesticides, pesticide labeling, or particular uses at any time if it appears that the pesticide is causing an unreasonable adverse effect on the environment.  7 U.S.C. § 136d(c).   Thus, EPA's product reregistration and its approvals of products containing propanil constitute "affirmative agency actions" subject to consultation under Section 7(a)(2) of the ESA. 16 U.S.C. § 1536(a)(2).

639.   Plaintiffs' members live, work, visit, recreate, and otherwise enjoy areas across the nation that may be impacted by products containing propanil.  Plaintiffs' members derive professional, aesthetic, spiritual, recreational, economic, and educational benefits from the endangered and threatened species that live in these areas and may be impacted by products containing propanil.  The list of species that may be affected by products containing propanil is provided in Exhibit A, and Plaintiffs' members have cognizable interests in these species.

640.   For example, products containing propanil may affect the razorback sucker, and a member of Plaintiffs' organizations has a cognizable interest in this species based on, among other

1  things, efforts to observe the species during frequent visits to habitats where the species can be found
2  and may be affected by propanil.

3    641.   In the listing document for the razorback sucker, the U.S. Fish and Wildlife Service
4  explains: "Threats to the species include streamflow regulation, habitat modification, competition with
5  and predation by nonnative fish species, and pesticides and pollutants."

6    642.   Plaintiffs' members engage in wildlife observation, research, photography, restoration
7  activities, and educational programs involving endangered and threatened species that may be impacted
8  by products containing propanil.  Plaintiffs' members will continue to maintain an interest in the
9  species and areas that may be impacted by products containing propanil in the future.

10    643.   The above-described interests of Plaintiffs and their members have been and are being
11  adversely affected by EPA's reregistration, registration and authorization of the use of products
12  containing propanil, which is a pesticide that may harm endangered and threatened species and their
13  habitats.  As alleged in the Complaint, products containing propanil may affect the species identified in
14  Exhibit A, as well as their designated critical habitat.

15    644.   EPA's failure to ensure that products containing propanil do not impact endangered
16  species and their habitats harms Plaintiffs' members' interests in the species and their habitats affected
17  by products containing propanil.  For example, EPA's failure to consult on products containing
18  propanil may impair recovery of species impacted by products containing propanil and may make it
19  more likely that these species would suffer population declines.  Species declines and impaired
20  recovery harm the interests that Plaintiffs' members have in the existence of these rare animals, such as
21  by limiting their ability to observe the species.  Consultation on products containing propanil is
22  necessary to ensure that Plaintiffs' members' interests in the species affected by products containing
23  propanil are preserved and remain free from injury.

24    645.   EPA must register and authorize pesticide products before they can be used and has an
25  ongoing responsibility to ensure that registered pesticides do not have unreasonable adverse effects on
26  the environment.  Absent EPA's continuing registration and discretionary control and involvement in
27  products containing propanil, this pesticide could not be used and could not negatively impact the listed
28  species named in Exhibit A and their habitats.

Third Amended and First Supplemental Complaint for Declaratory and Injunctive Relief
Case No. 3:11-cv-00293-JCS                                                               186

646.    If this Court orders EPA to engage in consultation as required, the Service would analyze the extent to which products containing propanil affect listed species and their habitats and, if necessary, would suggest reasonable and prudent alternatives or measures to protect the species, which would protect Plaintiffs' members' interests in the species.  16 U.S.C. § 1536(a)(3).  Unless the requested relief is granted, Plaintiffs' interests will continue to be injured by EPA's failure to consult on products containing propanil with the Service, as well as by the potential ongoing harm to the species named in Exhibit A and their habitats as a result of ongoing use of products containing propanil.

647.    The injuries described above are actual, concrete injuries that are presently suffered by Plaintiffs and their members and will continue to occur unless relief is granted by this Court.  These injuries are directly caused by the Defendants' failure to consult with the Service to ensure that EPA's actions relating to products containing propanil do not affect listed species and Plaintiffs' members' cognizable interests in these species.  The relief sought herein, EPA's compliance with the ESA, would redress Plaintiffs' injuries.  Plaintiffs have no other adequate remedy at law, and they bring this action on behalf of their adversely affected members.

**Propargite**[37]

648.    Exhibit A contains a comprehensive, but not necessarily exhaustive, list of endangered and threatened species for which propargite is known to be harmful to the taxonomic group of that species and is used in the state where that species lives.

649.    Propargite is a pesticide for which the EPA has indicated that estimated environmental concentrations (EECs) are likely to exceed the Levels of Concern (LOCs) for endangered species, and/or may cause indirect effects on endangered species by altering habitat or food sources.  Specifically, EECs of propargite are likely to exceed the LOCs for the following taxonomic groups: mammals, birds, fish, amphibians, mollusks, crustaceans, and reptiles.

650.    Propargite is a pesticide that is "highly acutely toxic" or "very highly acutely toxic" to the following taxonomic groups: fish, amphibians, and crustaceans.  These toxicity rankings are based

---

[37] The current EPA Case Number and EPA PC Code for propargite are 0243, 097601.

on LD50 or LC50 data (lethal dose to 50 percent of the test organisms or lethal concentration for 50 percent of the test organisms) that EPA possesses.

651.   The USGS has detected propargite in dozens of waterways across the nation, as documented in reports on its nationwide water quality surveys. As shown in Exhibit B, some of these watersheds overlap the range of species that may be affected by this pesticide.

652.   EPA "affirmatively authorized" the use of propargite when it issued a Reregistration Eligibility Decision in September of 2001. In 2002, EPA conducted a public comment period on the 2001 RED. Based on the public comments, EPA revised the RED on December 15, 2005.  In September 2007, EPA amended the propargite RED to modify spray drift label language, the air blast application maximum use rate, and required personal protective equipment. On June 25, 2008, EPA issued an addendum to the propargite RED to specifiy minimum plant back intervals.  As set forth above, EPA has discretion to influence or change registrations of pesticides for the benefit of protected species.  For example, EPA may only register or reregister a pesticide if its use does not cause an unreasonable adverse effect on the environment.  7 U.S.C. § 136a(c)(5).  EPA may also change, cancel, restrict, or immediately suspend registered pesticides, pesticide labeling, or particular uses at any time if it appears that the pesticide is causing an unreasonable adverse effect on the environment.  7 U.S.C. § 136d(c).  Thus, EPA's reregistration of the active ingredient propargite is an "affirmative agency action" subject to consultation under Section 7(a)(2) of the ESA. 16 U.S.C. § 1536(a)(2).

653.   On May 15, 2008, EPA completed product reregistration for propargite.  *See* https://www.epa.gov/pesticide-reevaluation/pesticides-have-completed-product-reregistration (last visited 6/26/2017).

654.   Active product registrations for this pesticide can be found on EPA's Pesticide Product Label System, *available at* http://iaspub.epa.gov/apex/pesticides/f?p=PPLS:1 (last visited 6/26/2017).

655.   Specifically, EPA's online Pesticide Product Label System lists the following pesticide products containing propargite that EPA affirmatively authorized by product reregistration or new product registration since January 20, 2005:

| Product Name | Date | Registration Number | Action |
|---|---|---|---|
| COMITE | 7/27/2007 | 400-104 | Reregistration |
| COMITE II | 7/10/2007 | 400-154 | Reregistration |

Third Amended and First Supplemental Complaint for Declaratory and Injunctive Relief
Case No. 3:11-cv-00293-JCS                                                                                    188

| OMITE-30WS | 6/13/2007 | 400-427 | Reregistration |
| OMITE 30W | 12/18/2007 | 400-565 | Reregistration |
| OMITE-57E | 7/2/2007 | 400-83 | Reregistration |
| OMITE-6E | 7/20/2007 | 400-89 | Reregistration |
| OMITE TECHNICAL | 4/2/2007 | 400-95 | Reregistration |

656.    Upon information and belief, EPA provided no hearings or other public participation for these product registration actions.

657.    As set forth above, EPA has discretion to influence or change the RED and registrations of pesticide products for the benefit of protected species.  For example, EPA may only register or reregister a pesticide product if its use does not cause an unreasonable adverse effect on the environment.  7 U.S.C. § 136a(c)(5); 7 U.S.C. § 136a-1(g)(2)(C); 40 C.F.R. § 152.112; 40 C.F.R. § 152.113(a).   EPA may also change, cancel, restrict, or immediately suspend registered pesticides, pesticide labeling, or particular uses at any time if it appears that the pesticide is causing an unreasonable adverse effect on the environment.  7 U.S.C. § 136d(c).   Thus, EPA's product reregistration and its approvals of products containing propargite constitute "affirmative agency actions" subject to consultation under Section 7(a)(2) of the ESA. 16 U.S.C. § 1536(a)(2).

658.    Plaintiffs' members live, work, visit, recreate, and otherwise enjoy areas across the nation that may be impacted by propargite and products containing propargite.  Plaintiffs' members derive professional, aesthetic, spiritual, recreational, economic, and educational benefits from the endangered and threatened species that live in these areas and may be impacted by products containing propargite.  The list of species that may be affected by products containing propargite is provided in Exhibit A, and Plaintiffs' members have cognizable interests in these species.

659.    For example, propargite and products containing propargite may affect Santa Ana sucker, and a member of Plaintiffs' organizations has a cognizable interest in this species based on, among other things, efforts to observe the species during frequent visits to habitats where the species can be found and may be affected by propargite.

660.    In the rule listing the Santa Ana sucker, FWS states: "Although no toxicologically significant impacts were observed by the authors, maximum allowable concentrations of pesticides and related chemicals for aquatic organisms occasionally were exceeded. Moreover, maximum contaminant levels/health advisory levels were frequently exceeded for various pesticides and ground water nitrate-

1    nitrogen. Although the water quality tolerances of Santa Ana suckers are unknown, in general, point

2    and nonpoint source pollution (e.g., urban runoff, sedimentation) have significantly degraded the water

3    quality in most of the native range of the Santa Ana sucker."

4        661.   Plaintiffs' members engage in wildlife observation, research, photography, restoration

5    activities, and educational programs involving endangered and threatened species that may be impacted

6    by propargite and products containing propargite.  Plaintiffs' members will continue to maintain an

7    interest in the species and areas that may be impacted by products containing propargite in the future.

8        662.   The above-described interests of Plaintiffs and their members have been and are being

9    adversely affected by EPA's 2007 and 2008 propargite REDs, reregistration, registration and

10   authorization of the use of products containing propargite, which is a pesticide that may harm

11   endangered and threatened species and their habitats.  As alleged in the Complaint, propargite and

12   products containing propargite may affect the species identified in Exhibit A, as well as their

13   designated critical habitat.

14       663.   EPA's failure to ensure that propargite and products containing propargite do not impact

15   endangered species and their habitats harms Plaintiffs' members' interests in the species and their

16   habitats affected by products containing propargite.  For example, EPA's failure to consult on the 2007

17   and 2008 propargite REDs and products containing propargite may impair recovery of species

18   impacted by products containing propargite and may make it more likely that these species would

19   suffer population declines.  Species declines and impaired recovery harm the interests that Plaintiffs'

20   members have in the existence of these rare animals, such as by limiting their ability to observe the

21   species.  Consultation on the 2007 and 2008 propargite REDs and products containing propargite is

22   necessary to ensure that Plaintiffs' members' interests in the species affected by propargite and

23   products containing propargite are preserved and remain free from injury.

24       664.   EPA must register and authorize pesticide products before they can be used and has an

25   ongoing responsibility to ensure that registered pesticides do not have unreasonable adverse effects on

26   the environment.  Absent EPA's continuing registration and discretionary control and involvement in

27   propargite and products containing propargite, this pesticide could not be used and could not negatively

28   impact the listed species named in Exhibit A and their habitats.

665.    If this Court orders EPA to engage in consultation as required, the Service would analyze the extent to which the 2007 and 2008 propargite REDs and products containing propargite affect listed species and their habitats and, if necessary, would suggest reasonable and prudent alternatives or measures to protect the species, which would protect Plaintiffs' members' interests in the species.  16 U.S.C. § 1536(a)(3).  Unless the requested relief is granted, Plaintiffs' interests will continue to be injured by EPA's failure to consult on the 2007 and 2008 propargite REDs and products containing propargite with the Service, as well as by the potential ongoing harm to the species named in Exhibit A and their habitats as a result of ongoing use of products containing propargite.

666.    The injuries described above are actual, concrete injuries that are presently suffered by Plaintiffs and their members and will continue to occur unless relief is granted by this Court.  These injuries are directly caused by the Defendants' failure to consult with the Service to ensure that EPA's actions relating to the 2007 and 2008 propargite REDs and products containing propargite do not affect listed species and Plaintiffs' members' cognizable interests in these species.  The relief sought herein, EPA's compliance with the ESA, would redress Plaintiffs' injuries.  Plaintiffs have no other adequate remedy at law, and they bring this action on behalf of their adversely affected members.

**Simazine**[38]

667.    Exhibit A contains a comprehensive, but not necessarily exhaustive, list of endangered and threatened species for which simazine is known to be harmful to the taxonomic group of that species and is used in the state where that species lives.

668.    Simazine and its chlorinated degradates exhibit neuroendocrine effects seen across mammals and can alterer hormone levels in rats that may result in developemental and reproductive consequences. Simazine has the potential to interact with the estrogen and androgen pathways in mammals and other wildlife.

669.    Simazine is a pesticide for which the EPA has indicated that estimated environmental concentrations (EECs) are likely to exceed the Levels of Concern (LOCs) for endangered species, and/or may cause indirect effects on endangered species by altering habitat or food sources. Specifically, EECs of simazine are likely to exceed the LOCs for the following taxonomic groups:

---

[38] The current EPA Case Number and EPA PC Code for simazine are 0070, 080807.

1    mammals, birds, fish, plants, aquatic phase amphibians, aquatic invertebrates, and vascular aquatic

2    plants, birds, mammals.

3         670.    Simazine is a pesticide that is "highly acutely toxic" or "very highly acutely toxic" to the

4    following taxonomic groups:  fish and amphibians.  These toxicity rankings are based on LD50 or

5    LC50 data (lethal dose to 50 percent of the test organisms or lethal concentration for 50 percent of the

6    test organisms) that EPA possesses.

7         671.    The USGS has detected simazine in over 100 watersheds across the nation, as

8    documented in reports on its nationwide water quality surveys.  As shown in Exhibit B, some of these

9    watersheds overlap the range of species that may be affected by this pesticide.

10        672.    EPA "affirmatively authorized" the continued use of the active ingredient simazine when

11   it issued a Reregistration Eligibility Decision in April of 2006.  In its 2006 RED for simazine, EPA

12   states that EPA's "preliminary assessment indicates that the LOC for Listed Species is exceeded for the

13   following combination of taxonomic groups and uses: Freshwater fish – granular application for

14   nonselective weed control on turf and other non-crop land; Freshwater invertebrates – non-granular

15   application on citrus, pine trees, nuts, peaches, and corn; granular application for nonselective weed

16   control on turf and other non-crop land as well as apples; Vascular aquatic plants – non-granular

17   application on citrus, nuts, peaches, and corn; granular application for nonselective weed control on turf

18   and other non-crop land as well as apples; Birds – non-granular application for all uses; Mammals –

19   non-granular and granular application for all use. . . .   Based on acute and chronic RQs, there are

20   additional potential indirect effects to Listed Species that have the following behaviors: Eat fish or

21   amphibians (e.g., fish, mammals, birds, reptiles), or in the case of freshwater mussels, use a fish as a

22   necessary host in their life cycle; Rely on freshwater invertebrates (e.g., daphnids) as a primarily food

23   source; rely on aquatic plants for food and/or habitat and shelter; Eat birds or require birds as

24   pollinators or seed dispersers; Eat mammals or require mammals as pollinators or seed dispersers; and

25   rely either on a specific plant species (plant species obligate) or multiple plant species (plant dependent)

26   for some important aspect of their life cycle."

27

28

673.     In its April 13, 2016 Preliminary Ecological Risk Assessment for simazine, EPA determined that the endangered species LOC was exceeded for certain uses for mammals, birds, fish, freshwater invertebrates, vascual aquatic plants, and monocot and dicot terrestrial plants.

674.     On February 6, 2013, EPA completed product reregistration for simazine.  *See* https://www.epa.gov/pesticide-reevaluation/pesticides-have-completed-product-reregistration (last visited 6/26/2017).

675.     Active product registrations for this pesticide can be found on EPA's Pesticide Product Label System, *available at* http://iaspub.epa.gov/apex/pesticides/f?p=PPLS:1 (last visited 6/26/2017). Specifically, the EPA's online Pesticide Product Label System lists the following pesticide products containing simazine that EPA affirmatively authorized by product reregistration or new product registration since January 20, 2005:

| Product Name | Date | Registration Number | Action |
|---|---|---|---|
| PRINCEP 4L HERBICIDE | 7/26/2011 | 100-526 | Reregistration |
| SIMAZINE TECHNICAL | 3/21/2011 | 100-541 | Reregistration |
| PRINCEP CALIBER 90 HERBICIDE | 7/22/2011 | 100-603 | Reregistration |
| DREXEL SIMAZAT 4L HERBICIDE | 7/14/2011 | 19713-171 | Reregistration |
| SIMAZINE 90DF | 3/31/2011 | 19713-252 | Reregistration |
| DREXEL SIMAZINE 4F | 6/9/2011 | 19713-273 | Reregistration |
| SIMAZINE TECHNICAL TWO | 3/16/2011 | 19713-386 | Reregistration |
| DREXEL SIMAZAT 90DF | 7/14/2011 | 19713-553 | Reregistration |
| DREXEL SIMAZINE TECHNICAL | 6/7/2011 | 19713-59 | Reregistration |
| DREXEL SIMAZINE 4L | 3/31/2011 | 19713-60 | Reregistration |
| SIMAZINE 90DF | 12/16/2014 | 33270-26 | Registration |
| SIMAZINE 4L | 12/19/2014 | 33270-27 | Registration |
| SIMAZINE 90 WDG | 7/18/2011 | 34704-686 | Reregistration |
| SIMAZINE 4L FLOWABLE HERBICIDE | 7/18/2011 | 34704-687 | Reregistration |
| SMZ 4L | 8/4/2011 | 34704-913 | Reregistration |
| SIMAZINE 90 | 7/14/2011 | 34704-916 | Reregistration |
| SIMAZINE TECHNICAL | 5/20/2011 | 35915-10 | Reregistration |
| OXON ITALIA SIM-TROL 4L SIMAZINE FLOWABLE HERBICIDE | 12/29/2010 | 35915-11 | Reregistration |
| SIM-TROL 9DF | 7/14/2011 | 35915-12 | Reregistration |
| UPI SIMAZINE 4L | 9/14/2010 | 70506-232 | Registration |
| UPI SIMAZINE 90DF HERBICIDE | 9/14/2010 | 70506-233 | Registration |
| ALGICLEAR | 6/16/2011 | 9712-8 | Reregistration |
| SIMAZINE 90DF | 12/29/2010 | 9779-295 | Reregistration |

| SIMAZINE 4L | 3/10/2011 | 9779-296 | Reregistration |

676.    Upon information and belief, EPA provided no hearings or other public participation for these product registration actions.

677.    As set forth above, EPA has discretion to influence or change registrations of pesticide products for the benefit of protected species.  For example, EPA may only register or reregister a pesticide product if its use does not cause an unreasonable adverse effect on the environment.  7 U.S.C. § 136a(c)(5); 7 U.S.C. § 136a-1(g)(2)(C); 40 C.F.R. § 152.112; 40 C.F.R. § 152.113(a).   EPA may also change, cancel, restrict, or immediately suspend registered pesticides, pesticide labeling, or particular uses at any time if it appears that the pesticide is causing an unreasonable adverse effect on the environment.  7 U.S.C. § 136d(c).   Thus, EPA's product reregistration and its approvals of products containing simazine are "affirmative agency actions" subject to consultation under Section 7(a)(2) of the ESA. 16 U.S.C. § 1536(a)(2).

678.    Plaintiffs' members live, work, visit, recreate, and otherwise enjoy areas across the nation that may be impacted by products containing simazine.  Plaintiffs' members derive professional, aesthetic, spiritual, recreational, economic, and educational benefits from the endangered and threatened species that live in these areas and may be impacted by products containing simazine.  The list of species that may be affected by products containing simazine is provided in Exhibit A, and Plaintiffs' members have cognizable interests in these species.

679.    For example, products containing simazine may affect the Chiricahua leopard frog, and a member of Plaintiffs' organizations has a cognizable interest in this species based on, among other things, efforts to observe the species during frequent visits to habitats where the species can be found and may be affected by products containing simazine.

680.    In the listing document for the Chiricahua leopard frog, the U.S. Fish and Wildlife Service explains that pesticides are a stressor that could increase the frog's susceptibility to the deadly chytrid fungus. 67 Fed. Reg. 40789 (June 13, 2002).

681.    Plaintiffs' members engage in wildlife observation, research, photography, restoration activities, and educational programs involving endangered and threatened species that may be impacted

1  by products containing simazine.  Plaintiffs' members will continue to maintain an interest in the

2  species and areas that may be impacted by products containing simazine in the future.

3       682.   The above-described interests of Plaintiffs and their members have been and are being

4  adversely affected by EPA's reregistration, registration and authorization of the use of products

5  containing simazine, which are pesticides that may harm endangered and threatened species and their

6  habitats.  As alleged in the Complaint, products containing simazine may affect the species identified in

7  Exhibit A, as well as their designated critical habitat.

8       683.   EPA's failure to ensure that products containing simazine do not impact endangered

9  species and their habitats harms Plaintiffs' members' interests in the species and their habitats affected

10 by products containing simazine.  For example, EPA's failure to consult on products containing

11 simazine may impair recovery of species impacted by products containing simazine and may make it

12 more likely that these species would suffer population declines.  Species declines and impaired

13 recovery harm the interests that Plaintiffs' members have in the existence of these rare animals, such as

14 by limiting their ability to observe the species.  Consultation on products containing simazine is

15 necessary to ensure that Plaintiffs' members' interests in the species affected by products containing

16 simazine are preserved and remain free from injury.

17      684.   EPA must register and authorize pesticide products before they can be used and has an

18 ongoing responsibility to ensure that registered pesticides do not have unreasonable adverse effects on

19 the environment.  Absent EPA's continuing registration and discretionary control and involvement in

20 products containing simazine, these pesticides could not be used and could not be negatively impacting

21 the listed species named in Exhibit A and their habitats.

22      685.   If this Court orders EPA to engage in consultation as required, the Service would analyze

23 the extent to which the products containing simazine affect listed species and their habitats and, if

24 necessary, would suggest reasonable and prudent alternatives or measures to protect the species, which

25 would protect Plaintiffs' members' interests in the species.  16 U.S.C. § 1536(a)(3).  Unless the

26 requested relief is granted, Plaintiffs' interests will continue to be injured by EPA's failure to consult

27 on products containing simazine with the Service, as well as by the potential ongoing harm to the

28

species named in Exhibit A and their habitats as a result of ongoing use of products containing simazine.

686.    The injuries described above are actual, concrete injuries that are presently suffered by Plaintiffs and their members and will continue to occur unless relief is granted by this Court.  These injuries are directly caused by the Defendants' failure to consult with the Service to ensure that EPA's actions relating to products containing simazine do not affect listed species and Plaintiffs' members' cognizable interests in these species.  The relief sought herein, EPA's compliance with the ESA, would redress Plaintiffs' injuries.  Plaintiffs have no other adequate remedy at law, and they bring this action on behalf of their adversely affected members.

**S,S,S-Tributyl Phosphorotrithioate**[39]

687.    Exhibit A contains a comprehensive, but not necessarily exhaustive, list of endangered and threatened species for which S,S,S-tributyl phosphorotrithioate (tribufos) is known to be harmful to the taxonomic group of that species and is used in the state where that species lives.

688.    S,S,S-tributyl phosphorotrithioate is a pesticide for which the EPA has indicated that estimated environmental concentrations (EECs) are likely to exceed the Levels of Concern (LOCs) for endangered species, and/or may cause indirect effects on endangered species by altering habitat or food sources.  Specifically, EECs of S,S,S-tributyl phosphorotrithioate are likely to exceed the LOCs for the following taxonomic groups:  mammals, birds, fish, amphibians, mollusks, crustaceans, and reptiles.

689.    S,S,S-tributyl phosphorotrithioate is a pesticide that is "highly acutely toxic" or "very highly acutely toxic" to the following taxonomic groups:  fish, amphibians, crustaceans, and insects. These toxicity rankings are based on LD50 or LC50 data (lethal dose to 50 percent of the test organisms or lethal concentration for 50 percent of the test organisms) that EPA possesses.

690.    EPA "affirmatively authorized" the continued use of the active ingredient S,S,S-tributyl phosphorotrithioate when it issued a Reregistration Eligibility Decision in July of 2006

---

[39] The current EPA Case Number and EPA PC Code for S,S,S-tributyl phosphorotrithioate are 2145, 074801.

691.    On July 12, 2006, EPA completed product reregistration for S,S,S-tributyl phosphorotrithioate.  *See* https://www.epa.gov/pesticide-reevaluation/pesticides-have-completed-product-reregistration (last visited 6/26/2017).

692.    Active product registrations for this pesticide can be found on EPA's Pesticide Product Label System, *available at* http://iaspub.epa.gov/apex/pesticides/f?p=PPLS:1 (last visited 6/26/2017).

693.    Specifically, EPA's online Pesticide Product Label System lists the following pesticide products containing S,S,S-tributyl phosphorotrithioate that EPA affirmatively authorized by product reregistration or new product registration since January 20, 2005:

| Product Name | Date | Registration Number | Action |
|---|---|---|---|
| FOLEX 6 EC | 5/22/2006 | 5481-504 | Reregistration |
| DEF TECHNICAL DEFOLIANT | 1/18/2006 | 5481-9022 | Reregistration |
| DEF 6 EMULSIFIABLE DEFOLIANT | 7/12/2006 | 5481-9023 | Reregistration |
| TRIBUFOS TECHNICAL | 2/28/2011 | 85678-10 | Registration |
| TRIBUFOS 6 | 5/18/2011 | 85678-15 | Registration |
| AX TRIBUFOS 6 | 3/18/2014 | 89167-43 | Registration |

694.    Upon information and belief, EPA provided no hearings or other public participation for these product registration actions.

695.    As set forth above, EPA has discretion to influence or change registrations of pesticide products for the benefit of protected species.  For example, EPA may only register or reregister a pesticide product if its use does not cause an unreasonable adverse effect on the environment.  7 U.S.C. § 136a(c)(5); 7 U.S.C. § 136a-1(g)(2)(C); 40 C.F.R. § 152.112; 40 C.F.R. § 152.113(a).  EPA may also change, cancel, restrict, or immediately suspend registered pesticides, pesticide labeling, or particular uses at any time if it appears that the pesticide is causing an unreasonable adverse effect on the environment.  7 U.S.C. § 136d(c).  Thus, EPA's product reregistration and its approvals of products containing S,S,S-tributyl phosphorotrithioate constitute "affirmative agency actions" subject to consultation under Section 7(a)(2) of the ESA. 16 U.S.C. § 1536(a)(2).

696.    Plaintiffs' members live, work, visit, recreate, and otherwise enjoy areas across the nation that may be impacted by products containing S,S,S-tributyl phosphorotrithioate.  Plaintiffs' members derive professional, aesthetic, spiritual, recreational, economic, and educational benefits from the endangered and threatened species that live in these areas and may be impacted by products

1   containing S,S,S-tributyl phosphorotrithioate.  The list of species that may be affected by products

2   containing S,S,S-tributyl phosphorotrithioate is provided in Exhibit A, and Plaintiffs' members have

3   cognizable interests in these species.

4          697.    For example, products containing S,S,S-tributyl phosphorotrithioate may affect the Kern

5   primrose sphinx moth, and a member of Plaintiffs' organizations has a cognizable interest in this

6   species based on, among other things, efforts to observe the species during frequent visits to habitats

7   where the species can be found and may be affected by S,S,S-tributyl phosphorotrithioate.

8          698.    In the recovery plan for the Kern primrose sphinx moth, FWS explains: "Other

9   agricultural practices such as the application of pesticides and herbicides or channeling of washes could

10  adversely effect the moth and its host plant was shown to be negatively affected by drift from aerial

11  application of insecticide (Bagdonis, pers. comm.). The potential exists for causing accidental

12  extirpation of the moth." FWS further explains: "In order to protect Kern primrose sphinx moth habitat,

13  reduction of any deleterious effects to the moth from aerial pesticide application is essential."

14         699.    Plaintiffs' members engage in wildlife observation, research, photography, restoration

15  activities, and educational programs involving endangered and threatened species that may be impacted

16  by products containing S,S,S-tributyl phosphorotrithioate.  Plaintiffs' members will continue to

17  maintain an interest in the species and areas that may be impacted by products containing S,S,S-tributyl

18  phosphorotrithioate in the future.

19         700.    The above-described interests of Plaintiffs and their members have been and are being

20  adversely affected by EPA's reregistration, registration and authorization of the use of products

21  containing S,S,S-tributyl phosphorotrithioate, which is a pesticide that may harm endangered and

22  threatened species and their habitats.  As alleged in the Complaint, products containing S,S,S-tributyl

23  phosphorotrithioate may affect the species identified in Exhibit A, as well as their designated critical

24  habitat.

25         701.    EPA's failure to ensure that products containing S,S,S-tributyl phosphorotrithioate do

26  not impact endangered species and their habitats harms Plaintiffs' members' interests in the species and

27  their habitats affected by products containing S,S,S-tributyl phosphorotrithioate.  For example, EPA's

28  failure to consult on products containing S,S,S-tributyl phosphorotrithioate may impair recovery of

1   species impacted by products containing S,S,S-tributyl phosphorotrithioate and may make it more

2   likely that these species would suffer population declines.  Species declines and impaired recovery

3   harm the interests that Plaintiffs' members have in the existence of these rare animals, such as by

4   limiting their ability to observe the species.  Consultation on products containing S,S,S-tributyl

5   phosphorotrithioate is necessary to ensure that Plaintiffs' members' interests in the species affected by

6   products containing S,S,S-tributyl phosphorotrithioate are preserved and remain free from injury.

7       702.    EPA must register and authorize pesticide products before they can be used and has an

8   ongoing responsibility to ensure that registered pesticides do not have unreasonable adverse effects on

9   the environment.  Absent EPA's continuing registration and discretionary control and involvement in

10  products containing S,S,S-tributyl phosphorotrithioate, this pesticide could not be used and could not

11  negatively impact the listed species named in Exhibit A and their habitats.

12      703.    If this Court orders EPA to engage in consultation as required, the Service would analyze

13  the extent to which products containing S,S,S-tributyl phosphorotrithioate affect listed species and their

14  habitats and, if necessary, would suggest reasonable and prudent alternatives or measures to protect the

15  species, which would protect Plaintiffs' members' interests in the species.  16 U.S.C. § 1536(a)(3).

16  Unless the requested relief is granted, Plaintiffs' interests will continue to be injured by EPA's failure

17  to consult on products containing S,S,S-tributyl phosphorotrithioate with the Service, as well as by the

18  potential ongoing harm to the species named in Exhibit A and their habitats as a result of ongoing use

19  of products containing S,S,S-tributyl phosphorotrithioate.

20      704.    The injuries described above are actual, concrete injuries that are presently suffered by

21  Plaintiffs and their members and will continue to occur unless relief is granted by this Court.  These

22  injuries are directly caused by the Defendants' failure to consult with the Service to ensure that EPA's

23  actions relating to products containing S,S,S-tributyl phosphorotrithioate do not affect listed species

24  and Plaintiffs' members' cognizable interests in these species.  The relief sought herein, EPA's

25  compliance with the ESA, would redress Plaintiffs' injuries.  Plaintiffs have no other adequate remedy

26  at law, and they bring this action on behalf of their adversely affected members.

27  **Thiobencarb**[40]

28

---

[40] The current EPA Case Number and EPA PC Code for thiobencarb are 2665, 108401.

705.    Exhibit A contains a comprehensive, but not necessarily exhaustive, list of endangered and threatened species for which thiobencarb is known to be harmful to the taxonomic group of that species and is used in the state where that species lives.

706.    Thiobencarb is a pesticide for which the EPA has indicated that estimated environmental concentrations (EECs) are likely to exceed the Levels of Concern (LOCs) for endangered species, and/or may cause indirect effects on endangered species by altering habitat or food sources. Specifically, EECs of thiobencarb are likely to exceed the LOCs for the following taxonomic groups: mammals, birds, fish, amphibians, mollusks, crustaceans, and reptiles.

707.    Thiobencarb is a pesticide that is "highly acutely toxic" or "very highly acutely toxic" to the following taxonomic groups: fish, amphibians, mollusks, crustaceans, and insects. These toxicity rankings are based on LD50 or LC50 data (lethal dose to 50 percent of the test organisms or lethal concentration for 50 percent of the test organisms) that EPA possesses.

708.    The USGS has detected thiobencarb in dozens of waterways across the nation, as documented in reports on its nationwide water quality surveys. As shown in Exhibit B, some of these watersheds overlap the range of species that may be affected by this pesticide.

709.    EPA "affirmatively authorized" the continued use of the active ingredietnt thiobencarb when it issued a Reregistration Eligibility Decision in September of 1997.

710.    On April 20, 2006, EPA completed product reregistration for thiobencarb.  *See* https://www.epa.gov/pesticide-reevaluation/pesticides-have-completed-product-reregistration (last visited 6/26/2017).

711.    Active product registrations for this pesticide can be found on EPA's Pesticide Product Label System, *available at* http://iaspub.epa.gov/apex/pesticides/f?p=PPLS:1 (last visited 6/26/2017).

712.    Specifically, EPA's online Pesticide Product Label System lists the following pesticide products containing thiobencarb that EPA affirmatively authorized by product reregistration or new product registration since January 20, 2005:

| Product Name | Date | Registration Number | Action |
| --- | --- | --- | --- |
| League MVP Herbicide | 8/2/2012 | 59639-189 | Registration |
| BOLERO 8 EC (HERBICIDE) | 8/23/2005 | 59639-79 | Reregistration |
| BOLERO TECHNICAL | 10/24/2005 | 63588-4 | Reregistration |

Third Amended and First Supplemental Complaint for Declaratory and Injunctive Relief
Case No. 3:11-cv-00293-JCS                                                                                           200

| BOLERO 8 EC (HERBICIDE) | 2/2/2006 | 63588-6 | Reregistration |

713.    Upon information and belief, EPA provided no hearings or other public participation for these product registration actions.

714.    As set forth above, EPA has discretion to influence or change registrations of pesticide products for the benefit of protected species.  For example, EPA may only register or reregister a pesticide product if its use does not cause an unreasonable adverse effect on the environment.  7 U.S.C. § 136a(c)(5); 7 U.S.C. § 136a-1(g)(2)(C); 40 C.F.R. § 152.112; 40 C.F.R. § 152.113(a).   EPA may also change, cancel, restrict, or immediately suspend registered pesticides, pesticide labeling, or particular uses at any time if it appears that the pesticide is causing an unreasonable adverse effect on the environment.  7 U.S.C. § 136d(c).   Thus, EPA's product reregistration and its approvals of products containing thiobencarb constitute "affirmative agency actions" subject to consultation under Section 7(a)(2) of the ESA. 16 U.S.C. § 1536(a)(2).

715.    Plaintiffs' members live, work, visit, recreate, and otherwise enjoy areas across the nation that may be impacted by products containing thiobencarb.  Plaintiffs' members derive professional, aesthetic, spiritual, recreational, economic, and educational benefits from the endangered and threatened species that live in these areas and may be impacted by products containing thiobencarb. The list of species that may be affected by products containing thiobencarb is provided in Exhibit A, and Plaintiffs' members have cognizable interests in these species.

716.    For example, products containing thiobencarb may affect the San Bruno elfin, and a member of Plaintiffs' organizations has a cognizable interest in this species based on, among other things, efforts to observe the species during frequent visits to habitats where the species can be found and may be affected by thiobencarb.

717.    In the recovery plan for the San Bruno elfin, FWS prescribes: "Minimize use of herbicides, insecticides and other toxic substances. The use of toxic substances within the essential habitat of San Bruno elfin and Mission blue butterflies should be prohibited or minimized. Physical removal of unwanted flora is preferred."

718.    Plaintiffs' members engage in wildlife observation, research, photography, restoration activities, and educational programs involving endangered and threatened species that may be impacted

1  by products containing thiobencarb.  Plaintiffs' members will continue to maintain an interest in the

2  species and areas that may be impacted by products containing thiobencarb in the future.

3       719.    The above-described interests of Plaintiffs and their members have been and are being

4  adversely affected by EPA's reregistration, registration and authorization of the use of products

5  containing thiobencarb, which is a pesticide that may harm endangered and threatened species and their

6  habitats.  As alleged in the Complaint, products containing thiobencarb may affect the species

7  identified in Exhibit A, as well as their designated critical habitat.

8       720.    EPA's failure to ensure that products containing thiobencarb do not impact endangered

9  species and their habitats harms Plaintiffs' members' interests in the species and their habitats affected

10 by products containing thiobencarb.  For example, EPA's failure to consult on products containing

11 thiobencarb may impair recovery of species impacted by products containing thiobencarb and may

12 make it more likely that these species would suffer population declines.  Species declines and impaired

13 recovery harm the interests that Plaintiffs' members have in the existence of these rare animals, such as

14 by limiting their ability to observe the species.  Consultation on products containing thiobencarb is

15 necessary to ensure that Plaintiffs' members' interests in the species affected by products containing

16 thiobencarb are preserved and remain free from injury.

17      721.    EPA must register and authorize pesticide products before they can be used and has an

18 ongoing responsibility to ensure that registered pesticides do not have unreasonable adverse effects on

19 the environment.  Absent EPA's continuing registration and discretionary control and involvement in

20 products containing thiobencarb, this pesticide could not be used and could not negatively impact the

21 listed species named in Exhibit A and their habitats.

22      722.    If this Court orders EPA to engage in consultation as required, the Service would analyze

23 the extent to which products containing thiobencarb affect listed species and their habitats and, if

24 necessary, would suggest reasonable and prudent alternatives or measures to protect the species, which

25 would protect Plaintiffs' members' interests in the species.  16 U.S.C. § 1536(a)(3).  Unless the

26 requested relief is granted, Plaintiffs' interests will continue to be injured by EPA's failure to consult

27 on products containing thiobencarb with the Service, as well as by the potential ongoing harm to the

28 species named in Exhibit A and their habitats as a result of ongoing use of thiobencarb.

723.    The injuries described above are actual, concrete injuries that are presently suffered by Plaintiffs and their members and will continue to occur unless relief is granted by this Court.  These injuries are directly caused by the Defendants' failure to consult with the Service to ensure that EPA's actions relating to products containing thiobencarb do not affect listed species and Plaintiffs' members' cognizable interests in these species.  The relief sought herein, EPA's compliance with the ESA, would redress Plaintiffs' injuries.  Plaintiffs have no other adequate remedy at law, and they bring this action on behalf of their adversely affected members.

**Trifluralin**[41]

724.    Exhibit A contains a comprehensive, but not necessarily exhaustive, list of endangered and threatened species for which trifluralin is known to be harmful to the taxonomic group of that species and is used in the state where that species lives.

725.    Trifluralin is a known endocrine disrupter.  As explained above, endocrine disrupters have effects on the reproductive and immune systems capable of compromising populations of endangered species.

726.    Trifluralin is a pesticide for which the EPA has indicated that estimated environmental concentrations (EECs) are likely to exceed the Levels of Concern (LOCs) for endangered species, and/or may cause indirect effects on endangered species by altering habitat or food sources.  Specifically, EECs of trifluralin are likely to exceed the LOCs for the following taxonomic groups: mammals, birds, fish, amphibians, and reptiles.

727.    Trifluralin is a pesticide that is "highly acutely toxic" or "very highly acutely toxic" to the following taxonomic groups:  fish, amphibians, and crustaceans.  These toxicity rankings are based on LD50 or LC50 data (lethal dose to 50 percent of the test organisms or lethal concentration for 50 percent of the test organisms) that EPA possesses.

728.    The USGS has detected trifluralin in dozens of waterways across the nation, as documented in reports on its nationwide water quality surveys. As shown in Exhibit B, some of these watersheds overlap the range of species that may be affected by this pesticide.

---

[41] The current EPA Case Number and EPA PC Code for trifluralin are 0179, 036101.

729.    EPA "affirmatively authorized" the continued use of the active ingredient trifluralin when it issued a Reregistration Eligibility Decision in April of 1996.

730.    On October 17, 2006, EPA completed product reregistration for trifluralin.  *See* https://www.epa.gov/pesticide-reevaluation/pesticides-have-completed-product-reregistration (last visited 6/26/2017).

731.    Active product registrations for this pesticide can be found on EPA's Pesticide Product Label System, *available at* http://iaspub.epa.gov/apex/pesticides/f?p=PPLS:1 (last visited 6/26/2017).

732.    Specifically, the EPA's online Pesticide Product Label System lists the following pesticide products containing trifluralin that EPA affirmatively authorized by product reregistration or new product registration since January 20, 2005:

| Product Name | Date | Registration Number | Action |
|---|---|---|---|
| TEAM 2G | 12/10/2007 | 10163-340 | Reregistration |
| TURF FERTILIZER CONTAINS TEAM 1.25% | 1/11/2008 | 10163-343 | Reregistration |
| TURF FERTILIZER - CONTAINS TEAM* PRO {X.XX}% | 12/10/2007 | 10163-346 | Reregistration |
| TURF FERTILIZER-CONTAINS TEAM (XXX) % | 12/10/2007 | 10163-347 | Reregistration |
| TEAM PRO MU | 11/5/2007 | 10163-349 | Reregistration |
| SUPER TEAM* 1.15% | 4/29/2008 | 10163-351 | Reregistration |
| SUPER TEAM* 0.92% | 1/15/2008 | 10163-352 | Reregistration |
| TURF FERTILIZER - CONTAINS GALLERY PLUS TEAM PRO | 12/11/2006 | 10163-353 | Registration |
| LESCO Trifluralin 5G Herbicide | 11/23/2015 | 10404-118 | Registration |
| DREXEL TRIFLURALIN TECH | 12/18/2015 | 19713-673 | Registration |
| DREXEL TRIFLURALIN TECHNICAL | 2/27/2017 | 19713-683 | Registration |
| TRIFLURALIN 5%G | 1/3/2017 | 19713-689 | Registration |
| ACETO TRIFLURALIN 4 EC HERBICIDE | 9/15/2011 | 2749-561 | Registration |
| SENTRY TRIFLURALIN 4EC | 3/24/2011 | 33270-17 | Registration |
| FERTILIZER WITH STARTEEM(R) #2 | 7/31/2007 | 52287-11 | Reregistration |
| FERTILIZER WITH STARTEEM(R) #3 | 9/28/2007 | 52287-12 | Reregistration |
| HARRELL'S GRANULAR HERBICIDE 75 | 2/4/2005 | 52287-15 | Registration |
| FINCHIMICA TRIFLURALIN 4EC | 7/21/2014 | 53591-1 | Registration |
| FINCHIMICA TRIFLURALIN GR-10 | 8/1/2014 | 53591-2 | Registration |
| WEED PREVENTER | 12/11/2007 | 53883-234 | Registration |

| | | | |
|---|---|---|---|
| TRIFLURALIN 5G | 5/9/2008 | 53883-240 | Registration |
| BAYONET 2 | 2/16/2005 | 5905-554 | Registration |
| BIOBARRIER ROOT CONTROL SYSTEM | 8/10/2005 | 59823-1 | Reregistration |
| MIRACLE-GRO GARDEN WEED PREVENTER | 7/17/2008 | 62355-5 | Registration |
| MIRACLE GRO SHAKE 'N FEED ALL PURPOSE PLANT FOOD PLUS WEED PREVENTER | 5/7/2009 | 62355-7 | Registration |
| QUALI-PRO T/I 2.5 G | 11/23/2010 | 66222-224 | Registration |
| TRIFLURALIN HFP | 9/13/2011 | 66222-235 | Registration |
| TECHFILTER | 10/24/2006 | 83189-1 | Registration |
| SHAW'S PREMIUM TURF FOOD WITH CRABGRASS CONTROL | 9/27/2007 | 8378-18 | Reregistration |
| GRASSTOPPER | 3/18/2015 | 88863-2 | Registration |
| AX TRIFLURALIN 4EC | 12/20/2013 | 89167-33 | Registration |
| THE ANDERSONS WEED & GRASS PREVENTER WITH 5% TRAMMEL HERBICIDE (DISPERSIBLE GRANULES) | 12/8/2006 | 9198-237 | Registration |
| THE ANDERSONS 2.0% TREFLAN & 0.5% GALLERY HERBICIDES | 8/3/2010 | 9198-252 | Registration |
| THE ANDERSONS TEE TIME FERTILIZER WITH 1.15% TEAM | 1/16/2008 | 9198-79 | Reregistration |
| LEBANON LAWN CRABGRASS PREVENTER WITH FERTILIZER | 9/2/2008 | 961-346 | Reregistration |
| LEBANON LAWN FERTILIZER WITH TEAM CRABGRASS CONTROL | 7/23/2008 | 961-348 | Reregistration |
| PREEN GARDEN WEED PREVENTER PLUS FERTILIZER | 9/28/2006 | 961-407 | Registration |
| PREEN LANDSCAPE MULCH | 1/19/2007 | 961-408 | Registration |
| PREEN TRIFLURALIN MULCH | 1/10/2008 | 961-409 | Registration |
| PREEN WEED PRIVENTER WITH SNAPSHOT | 3/13/2014 | 961-421 | Registration |
| PREEN LANDSCAPE MULCH PLUS 3 | 3/18/2015 | 961-422 | Registration |

733.    Upon information and belief, EPA provided no hearings or other public participation for these product registration actions.

734.    As set forth above, EPA has discretion to influence or change registrations of pesticide products for the benefit of protected species.  For example, EPA may only register or reregister a pesticide product if its use does not cause an unreasonable adverse effect on the environment.  7 U.S.C. § 136a(c)(5); 7 U.S.C. § 136a-1(g)(2)(C); 40 C.F.R. § 152.112; 40 C.F.R. § 152.113(a).   EPA may also

1   change, cancel, restrict, or immediately suspend registered pesticides, pesticide labeling, or particular

2   uses at any time if it appears that the pesticide is causing an unreasonable adverse effect on the

3   environment.  7 U.S.C. § 136d(c).   Thus, EPA's product reregistration and its approvals of products

4   containing trifluralin are "affirmative agency actions" subject to consultation under Section 7(a)(2) of

5   the ESA. 16 U.S.C. § 1536(a)(2).

6       735.    Plaintiffs' members live, work, visit, recreate, and otherwise enjoy areas across the

7   nation that may be impacted by products containing trifluralin.  Plaintiffs' members derive

8   professional, aesthetic, spiritual, recreational, economic, and educational benefits from the endangered

9   and threatened species that live in these areas and may be impacted by products containing trifluralin.

10  The list of species that may be affected by products containing trifluralin is provided in Exhibit A, and

11  Plaintiffs' members have cognizable interests in these species.

12      736.    For example, products containing trifluralin may affect the desert pupfish, and a member

13  of Plaintiffs' organizations has a cognizable interest in this species based on, among other things,

14  efforts to observe the species during frequent visits to habitats where the species can be found and may

15  be affected by trifluralin.

16      737.    In the rule listing the desert pupfish and designating its critical habitat, FWS explains:

17  "The surviving natural populations are impacted by . . . agricultural pesticide drift . . . ."  In addition, in

18  the recovery plan, FWS explains: "Drift from aerial application of pesticides, in proximity to pupfish

19  populations, has contributed to the decline of Quitobaquito pupfish (Kynard 1981, Miller and Fuiman

20  1987). Aerial pesticide application is a common practice near other natural populations (e.g., Rio

21  Sonoyta, Mexico; lower San Felipe Creek, California and a small portion of the upper creek) which

22  may be similarly impacted."  In addition, in the 1989 Biological Opinion for trifluralin, FWS provides

23  reasonable and prudent alternatives to avoid harm to the pupfish.

24      738.    Plaintiffs' members engage in wildlife observation, research, photography, restoration

25  activities, and educational programs involving endangered and threatened species that may be impacted

26  by products containing trifluralin.  Plaintiffs' members will continue to maintain an interest in the

27  species and areas that may be impacted by products containing trifluralin in the future.

28

739.    The above-described interests of Plaintiffs and their members have been and are being adversely affected by EPA's reregistration, registration and authorization of the use of products containing trifluralin, which is a pesticide that may harm endangered and threatened species and their habitats.  As alleged in the Complaint, products containing trifluralin may affect the species identified in Exhibit A, as well as their designated critical habitat.

740.    EPA's failure to ensure that products containing trifluralin do not impact endangered species and their habitats harms Plaintiffs' members' interests in the species and their habitats affected by products containing trifluralin.  For example, EPA's failure to consult on products containing trifluralin may impair recovery of species impacted by products containing trifluralin and may make it more likely that these species would suffer population declines.  Species declines and impaired recovery harm the interests that Plaintiffs' members have in the existence of these rare animals, such as by limiting their ability to observe the species.  Consultation on products containing trifluralin is necessary to ensure that Plaintiffs' members' interests in the species affected by products containing trifluralin are preserved and remain free from injury.

741.    EPA must register and authorize pesticide products before they can be used and has an ongoing responsibility to ensure that registered pesticides do not have unreasonable adverse effects on the environment.  Absent EPA's continuing registration and discretionary control and involvement in products containing trifluralin, this pesticide could not be used and could not negatively impact the listed species named in Exhibit A and their habitats.

742.    If this Court orders EPA to engage in consultation as required, the Service would analyze the extent to which products containing trifluralin affect listed species and their habitats and, if necessary, would suggest reasonable and prudent alternatives or measures to protect the species, which would protect Plaintiffs' members' interests in the species.  16 U.S.C. § 1536(a)(3).  Unless the requested relief is granted, Plaintiffs' interests will continue to be injured by EPA's failure to consult on products containing trifluralin with the Service, as well as by the potential ongoing harm to the species named in Exhibit A and their habitats as a result of ongoing use of products containing trifluralin.

1       743.   The injuries described above are actual, concrete injuries that are presently suffered by

2  Plaintiffs and their members and will continue to occur unless relief is granted by this Court.  These

3  injuries are directly caused by the Defendants' failure to consult with the Service to ensure that EPA's

4  actions relating to products containing trifluralin do not affect listed species and Plaintiffs' members'

5  cognizable interests in these species.  The relief sought herein, EPA's compliance with the ESA, would

6  redress Plaintiffs' injuries.  Plaintiffs have no other adequate remedy at law, and they bring this action

7  on behalf of their adversely affected members.

8  **Warfarin**[42]

9       744.   Exhibit A contains a comprehensive, but not necessarily exhaustive, list of endangered

10  and threatened species for which warfarin is known to be harmful to the taxonomic group of that

11  species and is used in the state where that species lives.

12       745.   Warfarin is a pesticide for which the EPA has indicated that estimated environmental

13  concentrations (EECs) are likely to exceed the Levels of Concern (LOCs) for endangered species,

14  and/or may cause indirect effects on endangered species by altering habitat or food sources.

15  Specifically, EECs of warfarin are likely to exceed the LOCs for the following taxonomic groups:

16  mammals, birds, fish, amphibians, and reptiles.

17       746.   Warfarin is a pesticide that is "highly acutely toxic" or "very highly acutely toxic" to the

18  following taxonomic groups:  mammals, birds, fish, amphibians, and reptiles.  These toxicity rankings

19  are based on LD50 or LC50 data (lethal dose to 50 percent of the test organisms or lethal concentration

20  for 50 percent of the test organisms) that EPA possesses.

21       747.   EPA "affirmatively authorized" the continued use of the active ingredient warfarin when

22  it issued a Reregistration Eligibility Decision in June of 1991.

23       748.   EPA's 2008 rodenticide Risk Mitigation Decision states that there have been reported

24  rodenticide incidents involving the SanJoaquin kit fox and Northern spotted owl. EPA's comparative

25  ecological risk assessment concludes that each of the rodenticide active ingredients at issue, including

26  warfarin, poses significant risks to non-target wildlife when applied as grain-based bait products.  "The

27  risks to wildlife are from primary exposure (direct consumption of rodenticide bait) for all compounds

28

---

[42] The current EPA Case Number and EPA PC Code for warfarin are 0011, 086002.

and secondary exposure (consumption of prey by predators or scavengers with rodenticide stored in body tissues) from the anticoagulants."

749.    On May 9, 1995, EPA completed product reregistration for warfarin. *See* https://www.epa.gov/pesticide-reevaluation/pesticides-have-completed-product-reregistration (last visited 6/30/2017).

750.    Active product registrations for this pesticide can be found on EPA's Pesticide Product Label System, *available at* http://iaspub.epa.gov/apex/pesticides/f?p=PPLS:1 (last visited 6/30/2017). Specifically, the EPA's online Pesticide Product Label System lists the following pesticide products containing warfarin that EPA affirmatively authorized by product reregistration or new product registration since January 20, 2005:

| Product Name | Date | Registration Number | Action |
|---|---|---|---|
| KAPUT COMBO BAIT PELLETS | 5/17/2012 | 72500-13 | Registration |
| NOVEL COMMENSAL RODENT PELLET # 2 | 5/17/2012 | 72500-13 | Registration |
| KAPUT COMBO BAIT MINI BLOCKS FOR RODENTS & FLEAS | 5/17/2012 | 72500-14 | Registration |
| SLN PHARMACHEM WARFARIN | 2/23/2009 | 72500-15 | Registration |
| KAPUT FERAL HOG BAIT | 1/3/2017 | 72500-26 | Registration |

751.    Upon information and belief, EPA provided no hearings or other public participation for these product registration actions.

752.    As set forth above, EPA has discretion to influence or change registrations of pesticide products for the benefit of protected species.  For example, EPA may only register or reregister a pesticide product if its use does not cause an unreasonable adverse effect on the environment.  7 U.S.C. § 136a(c)(5); 7 U.S.C. § 136a-1(g)(2)(C); 40 C.F.R. § 152.112; 40 C.F.R. § 152.113(a).  EPA may also change, cancel, restrict, or immediately suspend registered pesticides, pesticide labeling, or particular uses at any time if it appears that the pesticide is causing an unreasonable adverse effect on the environment.  7 U.S.C. § 136d(c).  Thus, EPA's product reregistration and its approvals of products containing warfarin are "affirmative agency actions" subject to consultation under Section 7(a)(2) of the ESA. 16 U.S.C. § 1536(a)(2).

753.    Plaintiffs' members live, work, visit, recreate, and otherwise enjoy areas across the nation that may be impacted by products containing warfarin.  Plaintiffs' members derive professional, aesthetic, spiritual, recreational, economic, and educational benefits from the endangered and threatened species that live in these areas and may be impacted by products containing warfarin.  The list of species that may be affected by products containing warfarin is provided in Exhibit A, and Plaintiffs' members have cognizable interests in these species.

754.    For example, products containing warfarin may affect the Florida salt marsh vole, and a member of Plaintiffs' organizations has a cognizable interest in this species based on, among other things, efforts to observe the species during frequent visits to habitats where the species can be found and may be affected by products containing warfarin.

755.    The 1993 Biological Opinion concluded that warfarin was likely to jeopardize the Florida salt marsh vole.

756.    Plaintiffs' members engage in wildlife observation, research, photography, restoration activities, and educational programs involving endangered and threatened species that may be impacted by products containing warfarin.  Plaintiffs' members will continue to maintain an interest in the species and areas that may be impacted by products containing warfarin in the future.

757.    The above-described interests of Plaintiffs and their members have been and are being adversely affected by EPA's reregistration, registration and authorization of the use of products containing warfarin, which are pesticides that may harm endangered and threatened species and their habitats.  As alleged in the Complaint, products containing warfarin may affect the species identified in Exhibit A, as well as their designated critical habitat.

758.    EPA's failure to ensure that products containing warfarin do not impact endangered species and their habitats harms Plaintiffs' members' interests in the species and their habitats affected by products containing warfarin.  For example, EPA's failure to consult on products containing warfarin may impair recovery of species impacted by products containing warfarin and may make it more likely that these species would suffer population declines.  Species declines and impaired recovery harm the interests that Plaintiffs' members have in the existence of these rare animals, such as by limiting their ability to observe the species.  Consultation on products containing warfarin is

1    necessary to ensure that Plaintiffs' members' interests in the species affected by products containing

2    warfarin are preserved and remain free from injury.

3    759.    EPA must register and authorize pesticide products before they can be used and has an

4    ongoing responsibility to ensure that registered pesticides do not have unreasonable adverse effects on

5    the environment.  Absent EPA's continuing registration and discretionary control and involvement in

6    products containing warfarin, these pesticides could not be used and could not be negatively impacting

7    the listed species named in Exhibit A and their habitats.

8    760.    If this Court orders EPA to engage in consultation as required, the Service would analyze

9    the extent to which the products containing warfarin affect listed species and their habitats and, if

10   necessary, would suggest reasonable and prudent alternatives or measures to protect the species, which

11   would protect Plaintiffs' members' interests in the species.  16 U.S.C. § 1536(a)(3).  Unless the

12   requested relief is granted, Plaintiffs' interests will continue to be injured by EPA's failure to consult

13   on products containing warfarin with the Service, as well as by the potential ongoing harm to the

14   species named in Exhibit A and their habitats as a result of ongoing use of products containing

15   warfarin.

16   761.    The injuries described above are actual, concrete injuries that are presently suffered by

17   Plaintiffs and their members and will continue to occur unless relief is granted by this Court.  These

18   injuries are directly caused by the Defendants' failure to consult with the Service to ensure that EPA's

19   actions relating to products containing warfarin do not affect listed species and Plaintiffs' members'

20   cognizable interests in these species.  The relief sought herein, EPA's compliance with the ESA, would

21   redress Plaintiffs' injuries.  Plaintiffs have no other adequate remedy at law, and they bring this action

22   on behalf of their adversely affected members.

23   **Zinc phosphide**[43]

24   762.    Exhibit A contains a comprehensive, but not necessarily exhaustive, list of endangered

25   and threatened species for which zinc phosphide is known to be harmful to the taxonomic group of that

26   species and is used in the state where that species lives.

27

28

---

[43] The current EPA Case Number and EPA PC Code for zinc phosphide are 0026, 088601.

763. Zinc phosphide is a pesticide for which the EPA has indicated that estimated environmental concentrations (EECs) are likely to exceed the Levels of Concern (LOCs) for endangered species, and/or may cause indirect effects on endangered species by altering habitat or food sources. Specifically, EECs of zinc phosphide are likely to exceed the LOCs for the following taxonomic groups: mammals, birds, and reptiles.

764. Zinc phosphide is a pesticide that is "highly acutely toxic" or "very highly acutely toxic" to the following taxonomic groups: mammals, birds, and reptiles. These toxicity rankings are based on LD50 or LC50 data (lethal dose to 50 percent of the test organisms or lethal concentration for 50 percent of the test organisms) that EPA possesses.

765. EPA "affirmatively authorized" the continued use of the active ingredient zinc phosphide and esters when it issued a Reregistration Eligibility Decision in September of 1997.

766. EPA's 2008 rodenticide Risk Mitigation Decision states that there have been reported rodenticide incidents involving the SanJoaquin kit fox and Northern spotted owl. EPA's comparative ecological risk assessment concludes that each of the rodenticide active ingredients at issue, including warfarin, poses significant risks to non-target wildlife when applied as grain-based bait products. EPA states there are risks to wildlife are from primary exposure (direct consumption of rodenticide bait) for all rodenticide compounds at issue, including zinc phosphide.

767. On June 5, 2013, EPA completed product reregistration for zinc phosphide. *See* https://www.epa.gov/pesticide-reevaluation/pesticides-have-completed-product-reregistration (last visited 6/30/2017).

768. Active product registrations for this pesticide can be found on EPA's Pesticide Product Label System, *available at* http://iaspub.epa.gov/apex/pesticides/f?p=PPLS:1 (last visited 6/26/2017). Specifically, the EPA's online Pesticide Product Label System lists the following pesticide products containing zinc phosphide that EPA affirmatively authorized by product reregistration or new product registration since January 20, 2005:

| Product Name | Date | Registration Number | Action |
|---|---|---|---|
| ZP RODENT OAT BAIT AG | 10/29/2009 | 12455-102 | Registration |
| Eraze AG | 8/7/2015 | 12455-131 | Registration |
| ZP TRACKING POWDER | 10/22/2010 | 12455-16 | Reregistration |

| | | | |
|---|---|---|---|
| ZP RODENT BAIT AG | 11/21/2011 | 12455-17 | Reregistration |
| ZP POCKET GOPHER BAIT | 10/14/2010 | 12455-18 | Reregistration |
| GOPHA-RID | 11/9/2010 | 12455-30 | Reregistration |
| ZINC PHOSPHIDE PRAIRIE DOG BAIT | 11/21/2011 | 13808-6 | Reregistration |
| SWEENEY'S POISON PEANUTS MOLE & GOPHER BAIT II | 11/19/2010 | 149-16 | Reregistration |
| WILCO ZINC AG BAIT | 11/21/2011 | 36029-10 | Reregistration |
| WILCO ZINC HOMEOWNER BAIT | 12/7/2010 | 36029-12 | Reregistration |
| BONIDE ORCHARD MOUSE BAIT | 11/17/2011 | 4-152 | Reregistration |
| ZINC PHOSPHIDE ON OATS | 11/21/2011 | 4271-16 | Reregistration |
| BONIDE MOLETOX II | 11/9/2010 | 4-285 | Reregistration |
| ZINC PHOSPHIDE ON OATS | 9/27/2012 | 56228-14 | Reregistration |
| ZINC PHOSPHIDE ON WHEAT | 9/27/2012 | 56228-3 | Reregistration |
| PROZAP ZINC PHOSPHIDE TRACKING POWDER | 6/8/2017 | 61282-101 | Registration |
| ZINC PHOSPHIDE 82 | 9/30/2008 | 61282-13 | Reregistration |
| PROZAP ZINC PHOSPHIDE OAT BAIT | 9/30/2011 | 61282-14 | Reregistration |
| PROZAP ZINC PHOSPHIDE PELLETS | 11/21/2011 | 61282-49 | Reregistration |
| ZINC PHOSPHIDE RODENT PELLETS | 11/5/2010 | 61282-50 | Reregistration |
| PROZAP ZINC PHOSPHIDE RODENT OAT BAIT | 12/21/2005 | 61282-51 | Registration |
| PROZAP ZINC PHOSPHIDE RODENT PELLETS AG | 10/27/2011 | 61282-56 | Registration |
| ZINC PHOSPHIDE IN OAT PELLETS | 6/4/2007 | 71096-14 | Registration |
| FORCE'S MOUS-CON NO. 2 | 11/21/2011 | 814-9 | Reregistration |
| GOPHA-RID 30 | 7/7/2015 | 90780-4 | Registration |

769.    Upon information and belief, EPA provided no hearings or other public participation for these product registration actions.

770.    As set forth above, EPA has discretion to influence or change registrations of pesticide products for the benefit of protected species.  For example, EPA may only register or reregister a pesticide product if its use does not cause an unreasonable adverse effect on the environment.  7 U.S.C. § 136a(c)(5); 7 U.S.C. § 136a-1(g)(2)(C); 40 C.F.R. § 152.112; 40 C.F.R. § 152.113(a).   EPA may also change, cancel, restrict, or immediately suspend registered pesticides, pesticide labeling, or particular uses at any time if it appears that the pesticide is causing an unreasonable adverse effect on the environment.  7 U.S.C. § 136d(c).  Thus, EPA's product reregistration and its approvals of products containing zinc phosphid are "affirmative agency actions" subject to consultation under Section 7(a)(2) of the ESA. 16 U.S.C. § 1536(a)(2).

771.    Plaintiffs' members live, work, visit, recreate, and otherwise enjoy areas across the nation that may be impacted by products containing zinc phosphide.  Plaintiffs' members derive professional, aesthetic, spiritual, recreational, economic, and educational benefits from the endangered and threatened species that live in these areas and may be impacted by products containing zinc phosphide.  The list of species that may be affected by products containing zinc phosphide is provided in Exhibit A, and Plaintiffs' members have cognizable interests in these species.

772.    For example, products containing zinc phosphide may affect the Florida salt marsh vole, and a member of Plaintiffs' organizations has a cognizable interest in this species based on, among other things, efforts to observe the species during frequent visits to habitats where the species can be found and may be affected by products containing zinc phosphide.

773.    The 1993 Biological Opinion concluded that warfarin was likely to jeopardize the Florida salt marsh vole.

774.    Plaintiffs' members engage in wildlife observation, research, photography, restoration activities, and educational programs involving endangered and threatened species that may be impacted by products containing zinc phosphide.  Plaintiffs' members will continue to maintain an interest in the species and areas that may be impacted by products containing zinc phosphide in the future.

775.    The above-described interests of Plaintiffs and their members have been and are being adversely affected by EPA's reregistration, registration and authorization of the use of products containing zinc phosphide, which are pesticides that may harm endangered and threatened species and their habitats.  As alleged in the Complaint, products containing zinc phosphide may affect the species identified in Exhibit A, as well as their designated critical habitat.

776.    EPA's failure to ensure that products containing zinc phosphide do not impact endangered species and their habitats harms Plaintiffs' members' interests in the species and their habitats affected by products containing zinc phosphide.  For example, EPA's failure to consult on products containing zinc phosphide may impair recovery of species impacted by products containing zinc phosphides and may make it more likely that these species would suffer population declines. Species declines and impaired recovery harm the interests that Plaintiffs' members have in the existence of these rare animals, such as by limiting their ability to observe the species.  Consultation on

products containing zinc phospide is necessary to ensure that Plaintiffs' members' interests in the species affected by products containing zinc phosphide are preserved and remain free from injury.

777.   EPA must register and authorize pesticide products before they can be used and has an ongoing responsibility to ensure that registered pesticides do not have unreasonable adverse effects on the environment.  Absent EPA's continuing registration and discretionary control and involvement in products containing zinc phosphide, these pesticides could not be used and could not be negatively impacting the listed species named in Exhibit A and their habitats.

778.   If this Court orders EPA to engage in consultation as required, the Service would analyze the extent to which the products containing zinc phosphide affect listed species and their habitats and, if necessary, would suggest reasonable and prudent alternatives or measures to protect the species, which would protect Plaintiffs' members' interests in the species.  16 U.S.C. § 1536(a)(3).  Unless the requested relief is granted, Plaintiffs' interests will continue to be injured by EPA's failure to consult on products containing zinc phosphide with the Service, as well as by the potential ongoing harm to the species named in Exhibit A and their habitats as a result of ongoing use of products containing zinc phosphide.

779.   The injuries described above are actual, concrete injuries that are presently suffered by Plaintiffs and their members and will continue to occur unless relief is granted by this Court.  These injuries are directly caused by the Defendants' failure to consult with the Service to ensure that EPA's actions relating to products containing zinc phosphide do not affect listed species and Plaintiffs' members' cognizable interests in these species.  The relief sought herein, EPA's compliance with the ESA, would redress Plaintiffs' injuries.  Plaintiffs have no other adequate remedy at law, and they bring this action on behalf of their adversely affected members.

## VIII.   EPA's Failure To Reinitiate Consultation On Pesticides From Previous Biological Opinions

780.   In 1989, EPA concluded consultation with the FWS, and FWS issued a Biological Opinion titled "Effects of Pesticides on Aquatic Endangered Species."

781.   This 1989 Biological Opinion ("BiOp") addressed, in part, the following pesticides/pesticide groups that are still registered and used presently: 2,4-D, acephate, aldicarb,

1  atrazine, bensulide, captan, carbaryl, chlorothalinil, chlorpyrifos, cypermethrin, dazomet, diazinon,

2  dicamba, dichlorprop, dimethoate, diuron, ethoprop, malathion, mancozeb, methomyl, naled,

3  oxyfluorfen, paraquat dichloride, pendimethalin, permethrin, phorate, phosmet, profenofos, propargite,

4  simazine, S,S,S-tributyl phosphorotrithioate, terbufos, thiophanate-methly, tricholorofon, trifluralin.

5      782.  The 1989 BiOp, at pages II-4 to II-9, identifies Reasonable and Prudent Alternatives

6  ("RPAs") and Reasonable and Prudent Measures ("RPMs") that can apply to any given pesticide that

7  was analyzed in the BiOp.  The BiOp then, at pages II-11 to II-224, explains which specific RPAs and

8  RPMs apply to each pesticide/species combination.  Pages III-1 to III-5 of the BiOp identify the species

9  covered by the BiOp.

10      783.  In 1993, EPA concluded consultation with the USFWS, and FWS issued a Biological

11  Opinion titled "Effects of 16 Vertebrate Control Agents On Threatened and Endangered Species."

12      784.  This 1993 Biological Opinion addressed, in part, the following pesticides/pesticide

13  groups that are presently registered and used: brodifacoum, bromadialone, bromethalin,

14  chlorophacinone, diphacinone, warfarin, and zinc phosphide.

15      785.  The 1993 Biological Opinion covers all species that were listed or proposed for listing

16  prior to July 1, 1991 (see pages III-1 to III-9), and addressed, for example, the following currently

17  listed species:  (mammals) Amargosa vole, black-footed ferret, Carolina northern flying squirrel,

18  Delmarva Peninsula fox squirrel, Florida panther, Fresno kangaroo rat, giant kangaroo rat, gray wolf,

19  Key Largo cotton mouse, Key Largo woodrat, Louisiana black bear, Lower Keys rabbit, Morro Bay

20  kangaroo rat, ocelot, San Joaquin kit fox, Stephen's kangaroo rat, and Tipton kangaroo rat; (birds)

21  Audubon's crested caracara and California condor; (reptiles) blunt-nosed leopard lizard, desert tortoise,

22  Eastern indigo snake, and gopher tortoise.

23      786.  The 1993 Biological Opinion contains RPAs and RPMs that are specific to

24  pesticide/species combinations (pages II-1 to II-106), and explains, in regard to "incidental take":

25      In those situations where the Service believes take may occur but is not able to assign a
26      specific number to that take, an "unquantifiable" level of take has been assigned. This
        indicates that the Service believes that take is unavoidable but unquantifiable.

27      In order to insure protection for species assigned a level of unquantifiable take, the
28      Service must have a mechanism to reinitiate consultation. Since it is so unlikely that take
        resulting from pesticide use will ever be discovered, if even one dead specimen is

discovered whose death is attributable to the legal use of pesticides, then use of that pesticide must cease in all occupied habitat of the species and consultation on that chemical for that species must be reinitiated.

Specific reasonable and prudent measures that the Service considers necessary and appropriate to minimize incidental take and the terms and conditions to implement such measures are provided for those species receiving an incidental take statement. Reasonable and prudent measures are provided to minimize impacts to the individuals or habitat affected by the action. Such measures are designed to decrease the level of take to the maximum extent possible. Measures are determined to be reasonable and prudent when they are consistent with the basic design, location, scope, duration and timing of the action. These measures represent the Service's best professional judgment of the actions necessary to provide the appropriate level of protection to the species given the data currently available.

The Service has determined, that for certain listed species considered in this opinion, an unquantifiable level of incidental take may occur even if the recommended reasonable and prudent alternatives to preclude jeopardy are followed. . . .  To minimize take in the above-mentioned scenarios, the Service is requiring, as a reasonable and prudent measure that EPA adopt a monitoring/enforcement program.  The Service believes that the likelihood of incidental take will be minimized if the EPA fully implements a monitoring/enforcement program. A monitoring program will alert both the Service and EPA to possible deficiencies in the reasonable and prudent alternatives and allow the Service to request reinitiation of consultation to modify those deficiencies before further take occurs.

787.    To better understand what the EPA was or was not doing in regard to its obligations under the 1989 and 1993 BiOps's RPAs, RPMs, and incidental take provisions, the Center submitted a Freedom of Information Act request in 2009 asking for the following information:

All documents  . . . regarding monitoring of, compliance with, effectiveness of, and enforcement pertaining to, the reasonable and prudent alternatives and/or measures identified in the June 29, 1989 Biological Opinion entitled "Effects of Pesticides on Aquatic Endangered Species" [and the] March 1993 Biological Opinion entitled "Effects of 16 Vertebrate Control Agents on Threatened and Endangered Species."

The Center received the following response:

I am pleased to provide you with the following document: 'U.S. Department of Interior letter to EPA dated 11/1/96 as it relates to March 1993 Biological Opinion (2 pages).'  A search was conducted and there were no records found for the June 29, 1989 pesticide Biological Opinion.

The Department of Interior letter to EPA dated 11/1/96 states:

This responds to your October 31, 1996, request for approval of Pesticide Bulletins for the use of Grain Bait and Pelletized Rodenticides and Burrow Fumigants in the State of California. These bulletins were developed jointly by the Environmental Protection

Agency (EPA), California Department of Pesticide Regulation (DPR), California Department of Fish and Game, California Department of Food and Agriculture, Fish and Wildlife Service (Service), and County Agricultural Commissioners. Specifically, you requested the Service's concurrence that these bulletins adequately protect affected threatened and endangered species and can be substituted for the reasonable and prudent measures and reasonable and prudent alternatives as described in the Service's March 1993 biological opinion on the Effects of 16 Vertebrate Control Agents on Threatened and Endangered Species. The Service concludes that the Grain Bait and Pelletized Rodenticide and Burrow Fumigant Bulletins adequately protect federally listed species during subject pesticide uses and that they are consistent with the conclusions of the March 1993 Vertebrate Control biological opinion. Consequently, reinitiation of formal consultation is not required. However, please note that this concurrence applies only to those species covered in these bulletins that were also addressed in the 1993 opinion. The Service believes that reinitiation of consultation is required for species covered in the subject bulletins that were not addressed in the 1993 opinion (i.e., those listed since the issuance of that opinion), and are discussing such consultation with your staff to ensure adequate compliance under section 7 of the Endangered Species Act.

788.  The 'bulletins" referred to in the 1996 letter were, as far as Plaintiffs are aware, considered by EPA to be voluntary.

789.  EPA now has a new program – titled "Bulletins Live" – that is mandatory, but only if "your pesticide label directs you to [the Bulletins Live] Web site."

790.  It does not appear that EPA knows how much take has occurred for any of the species covered by the 1989 and 1993 BiOps.

791.  It does not appear that EPA is implementing the 1989 or 1993 BiOp's reasonable and prudent alternatives or measures, or performing monitoring. The failure to implement the measures specified in the BiOps triggers the duty to reinitiate consultation on the pesticides and species covered by those BiOps.

792.  EPA must reinitiate consultation on three pesticides addressed in the 1989 and 1993 BiOps for which EPA has not completed product reregistration: dazomet, malathion, and permethrin. Each of these pesticides may affect the species associated with it in Exhibit A for the reasons discussed above.

**Dazomet**[44] (1989 BiOp):

793.  EPA retains, and statutes and regulations authorize, ongoing discretionary involvement and control over dazomet, and EPA has discretion to influence or change dazomet use for the benefit of

---

[44] The current EPA Case Number and EPA PC Code for dazomet are 2135, 035602.

protected species. *See Wash. Toxics Coal.*, 413 F.3d at 1033.  For example, EPA may only register or reregister a pesticide if its use does not cause an unreasonable adverse effect on the environment, 7 U.S.C. § 136a(c)(5), and EPA may change, cancel, restrict, or immediately suspend registered pesticides, pesticide labeling, or particular pesticide uses at any time. 7 U.S.C. § 136d(c); *see also* 40 CFR Part 154 (Special Review Procedures).

794.    The EPA's 2009 amended RED finds: "The Agency's levels of concern are exceeded for acute oral consumption of dazomet granular product for both mammal and bird species."

795.    Dazomet is a pesticide for which the EPA has indicated that estimated environmental concentrations (EECs) are likely to exceed the Levels of Concern (LOCs) for endangered species, and/or may cause indirect effects on endangered species by altering habitat or food sources. Specifically, EECs of dazomet are likely to exceed to LOCs for the following taxonomic groups: mammals, birds, and reptiles.

796.    Dazomet is a pesticide now known to be "highly acutely toxic" or "very highly acutely toxic" to the following taxonomic groups:  fish, amphibians, and crustaceans.  These toxicity rankings are based on LD50 or LC50 data (lethal dose to 50 percent of the test organisms or lethal concentration for 50 percent of the test organisms) that EPA possesses.

797.    Dazomet is toxic or otherwise harmful to, and may be used in or impact the range of, the following species and critical habitat that have been listed or designated since 1989: Arroyo toad (listed 1994, critical habitat 2011); California tiger salamander (Central California DPS, except for Bay Area Counties) (listed 2004, critical habitat 2005); California tiger salamander (Santa Barbara County DPS) (listed 2000, critical habitat 2004); Chiricahua leopard frog (listed 2002, critical habitat 2012); Frosted flatwoods salamander (listed 1999, critical habitat 2009); Mississippi gopher frog (DPS) (listed 2001, critical habitat 2012); Mountain yellow-legged frog (Southern California DPS) (listed 2002, critical habitat 2006); Reticulated flatwoods salamander (listed 2009, critical habitat 2009); Coastal California gnatcatcher (listed 1993, critical habitat 2007); Northern spotted owl (listed 1990, critical habitat 2012); Piping plover (critical habitat 2001, 2002, 2008, 2009); Southwestern willow flycatcher (listed 1995, critical habitat 2013); Western snowy plover (Pacific DPS) (listed 1993, critical habitat 2012); Conservancy fairy shrimp (listed 1993, critical habitat 2005); Kauai Cave Amphipod (listed 2000,

critical habitat 2003); Alabama sturgeon (listed 2000, critical habitat 2009); Atlantic salmon (Gulf of Maine DPS) (listed 2009, critical habitat 2009); Blue shiner (listed 1992); Bonytail chub (critical habitat 1994); Bull trout (U.S. DPS) (listed 1998, critical habitat 2010); Gulf sturgeon (listed 1991, critical habitat 2003); North American green sturgeon (southern DPS) (listed 2006, critical habitat 2009); Razorback sucker (listed 1991, critical habitat 1994); Santa Ana sucker (listed 2000, critical habitat 2010); Topeka shiner (listed 1998, critical habitat 2004); Vermilion darter (listed 2001, critical habitat 2010); Buena Vista Lake ornate Shrew (listed 2002, critical habitat 2005); Florida salt marsh vole (listed 1991); Killer whale (southern resident DPS) (listed 2006, critical habitat 2006); Louisiana black bear (listed 1992, critical habitat 2009); Lower keys rabbit (listed 1990); Preble's meadow jumping mouse (listed 1998, critical habitat 2010); Riparian brush rabbit (listed 2000); Riparian woodrat (=San Joaquin Valley) (listed 2000); Bog turtle (Northern DPS) (listed 1997); Desert tortoise (critical habitat 1994); Giant garter snake (listed 1993).

798.   The above information reveals that triggers for reinitiation of formal consultation have occurred in regard to dazomet.  This information shows that dazomet may affect listed species or their critical habitat in a manner or to an extent not previously considered, and that new species have been listed or critical habitat designated that may be affected by dazomet.  For example, there now exists new toxicity information, as well as new analyses, data, and procedures.

799.   Additional information also likely exists in the possession of the EPA, or the Services, demonstrating either a) new information revealing effects of dazomet that may affect listed species or critical habitat in a manner or to an extent not previously considered, or b) modification of the dazomet registration in a manner that causes an effect to the listed species or critical habitat that was not considered in the biological opinion.  The EPA has been conducting its Endangered Species Program for many years and very likely has significant information regarding dazomet.

800.   Plaintiffs' members live, work, visit, recreate in, and otherwise enjoy areas across the nation that may be impacted by dazomet.  Plaintiffs' members derive professional, aesthetic, spiritual, recreational, economic, and educational benefits from the endangered and threatened species that live in these areas and may be impacted by dazomet.  The list of species that may be affected by dazomet is provided in Exhibit A, and Plaintiffs' members have cognizable interests in these species.

801.    For example, the Alabama cave shrimp was part of the 1989 BiOp, and a member of Plaintiffs' organizations has a cognizable interest in this species based on, among other things, efforts to observe the species during frequent visits to habitats where the species can be found and may be affected by dazomet.

802.    Plaintiffs' members engage in wildlife observation, research, photography, restoration activities, and educational programs involving endangered and threatened species that may be impacted by dazomet.  Plaintiffs' members will continue to maintain an interest in the species and areas that may be impacted by dazomet in the future.

803.    EPA's failure to ensure that dazomet does not impact endangered species and their habitats harms Plaintiffs' members' interests in those species.  For example, EPA's failure to reinitiate consultation on dazomet may impair recovery of species impacted by dazomet, or may make it more likely that these species would suffer population declines.  Species declines and impaired recovery harm the interests that Plaintiffs' members have in the existence and conservation of these rare animals, such as limiting the ability to observe the species.  Reinitiation of consultation on dazomet is necessary to ensure that Plaintiffs' members' interests in the species that may be affected by dazomet are preserved and remain free from injury.

804.     EPA must register and authorize pesticides before they can be used and has an ongoing responsibility to ensure that registered pesticides do not have unreasonable adverse effects on the environment.  Absent EPA's registration and continuing discretionary control and involvement, dazomet could not be used and could not negatively impact the listed species named in Exhibit A and their habitats.

805.    If this Court orders EPA to reinitiate consultation, the Service would analyze the extent to which dazomet affects listed species and their habitats and, if necessary, would suggest reasonable and prudent alternatives or measures to protect the species, which would protect Plaintiffs' members' interests in the species.  16 U.S.C. § 1536(a)(3).  Unless the requested relief is granted, Plaintiffs' interests will continue to be injured by EPA's failure to reinitiate consultation on dazomet with the Service, as well as by the potential ongoing harm to the species named in Exhibit A and their habitats as a result of ongoing use of dazomet.

1    806.    The injuries described above are actual, concrete injuries that are presently suffered by

2    Plaintiffs and their members and will continue to occur unless relief is granted by this Court.  These

3    injuries are directly caused by the Defendants' failure to reinitiate consultation with the Service to

4    ensure that EPA's actions relating to dazomet do not affect listed species and Plaintiffs' members'

5    cognizable interests in these species.  The relief sought herein, EPA's compliance with the ESA, would

6    redress Plaintiffs' injuries.  Plaintiffs have no other adequate remedy at law, and they bring this action

7    on behalf of their adversely affected members.

8    807.    Reinitiation of consultation regarding dazomet is reviewable under the ESA's citizen suit

9    provision, 16 U.S.C. § 1540(g).  In the alternative, because the triggering events for reinitiation of

10   consultation regarding dazomet did not occur as a result of a FIFRA hearing, they are therefore

11   judicially reviewable by a district court under FIFRA § 16(a), 7 § U.S.C. 136n(a).

12   **Malathion[45] (1989 BiOp):**

13   808.    EPA retains, and statutes and regulations authorize, ongoing discretionary involvement

14   and control over malathion, and EPA has discretion to influence or change malathion use for the benefit

15   of protected species. *See Wash. Toxics Coal.*, 413 F.3d at 1033.  For example, EPA may only register

16   or reregister a pesticide if its use does not cause an unreasonable adverse effect on the environment, 7

17   U.S.C. § 136a(c)(5), and EPA may change, cancel, restrict, or immediately suspend registered

18   pesticides, pesticide labeling, or particular pesticide uses at any time. 7 U.S.C. § 136d(c); *see also* 40

19   CFR Part 154 (Special Review Procedures).

20   809.    In its 2009 malathion RED, EPA determined that it "identified several exceedences of

21   the acute and chronic endangered LOC in certain cases for birds, mammals, fish and invertebrates

22   should exposures actually occur at modeled levels. . . .  The Agency recently completed an endangered

23   species risk assessment of the potential effects of malathion on the threatened California red-legged

24   frog (*Rana aurora draytonii*; CRLF) arising from current uses of malathion (USEPA 2007*b*). . . .  The

25   assessment resulted in a determination that the use of pesticide products containing malathion is likely

26   to adversely affect the CRLF.  This determination is based on the potential for malathion to both

27   directly and indirectly affect the species and result in modification to designated critical habitat.

28

---

[45] The current EPA Case Number and EPA PC Code for malathion are 0248, 057701.

1    Toxicity values used in this endangered species assessment in some cases indicate greater toxicity than

2    those used in the malathion RED. Although the RED was published in 2006, following completion of

3    the organophosphate cumulative assessment, the ecological risk assessment for the RED was compiled

4    in 1999, prior to the regular incorporation of open literature ecotoxicological (ECOTOX) data into

5    EFED risk assessments. Review of the open literature data resulted in a number of lower toxicity

6    endpoints. Risk conclusions are similar, in that listed species LOCs are exceeded, but the risk quotients

7    (RQs) presented in this endangered species assessment are higher than corresponding RQs in the RED.

8    . . . At this time, the Agency is not requiring label changes specific to the protection of listed species for

9    malathion. If, in the future, specific measures are necessary for the protection of listed species, the

10   Agency will implement them through the Endangered Species Protection Program. . . .  Following this

11   future species-specific analysis, a determination that there is a likelihood of potential impact to a listed

12   species or its critical habitat may result in: limitations on the use of malathion; other measures to

13   mitigate any potential impact; or consultations with the Fish and Wildlife Service or the National

14   Marine Fisheries Service as necessary. If the Agency determines that use of malathion "may affect"

15   listed species or their designated critical habitat, EPA will employ the provisions in the Services

16   regulations (50 CFR Part 402). Until that species-specific analysis is completed, the risk mitigation

17   measures being implemented through this RED will reduce the likelihood that endangered and

18   threatened species may be exposed to malathion at levels of concern. EPA is not requiring specific

19   malathion label language at the present time relative to threatened and endangered species. If, in the

20   future, specific measures are necessary for the protection of listed species, the Agency will implement

21   them through the Endangered Species Protection Program."

22          810.   Malathion is now known to be "highly acutely toxic" or "very highly acutely toxic" to the

23   following taxonomic groups:  mammals, fish, amphibians, mollusks, crustaceans, and insects. These

24   toxicity rankings are based on LD50 or LC50 data (lethal dose to 50 percent of the test organisms or

25   lethal concentration for 50 percent of the test organisms) that EPA possesses.

26

27

28

811.    A 2008 publication[46] examined low concentrations (10–250 lg/L) of a common insecticide, malathion.  The "malathion (which rapidly breaks down) did not directly kill [the] amphibians, but initiated a trophic cascade that indirectly resulted in substantial amphibian mortality."  The authors noted that "the trophic cascade is common to a wide range of insecticides (including carbaryl, diazinon, endosulfan, esfenvalerate, and pyridaben), offering the possibility of general predictions for the way in which many insecticides impact aquatic communities and the populations of larval amphibians."

812.    Another study found that malathion decreases hatching success by 6.5% and viability rates by 17%.[47]  The primary malformations documented in the two highest pesticide concentrations were ventralization and axial shortening.  After seven weeks of development in water with no malathion, tadpoles previously exposed as embryos for only 96 h to 60 and 600 g/L malathion suffered increased parasite encystment rates when compared to controls.  Research identifies embryonic development as a sensitive window for establishing latent susceptibility to infection in later developmental stages.

813.    Another study found that northern leopard frogs exposed to sublethal levels of DDT and malathion produced dramatically fewer antibodies.[48]  The study suggests that frogs exposed to pesticides have immune system changes similar to frogs exposed to immunosuppressants.

814.    Another study found that limb deformities in wood frogs due to exposure to trematode infection are more common at sites adjacent to agricultural runoff.[49]  The study concludes that stress due to pesticide exposure decreases tadpoles' ability to resist infection.

---

[46] Rick A. Relyea & Nicole Diecks, *An Unforeseen Chain Of Events: Lethal Effects Of Pesticides On Frogs At Sublethal Concentrations*, 18 Ecological Applications 1728 (2008).

[47] Sarah A. Budischak, Lisa K. Belden & William A. Hopkins, *Effects of Malathion on Embryonic Development and Latent Susceptibility to Trematode Parasites in Ranid Tadpoles*, 27 Envtl. Toxicology & Chemistry 2496 (2008).

[48] Mary-Kate Gilbertson, G. Douglas Haffner, Ken G. Drouillard, Anathea Albert & Brian Dixon, *Immunosuppression in the Northern Leopard Frog (Rana Pipiens) Induced by Pesticide Exposure*, 22 Envtl. Toxicology & Chemistry 101 (2003).

[49] Joseph M. Kiesecker*, Synergism Between Trematode Infection and Pesticide Exposure: A Link to Amphibian Limb Deformities in Nature?*, 99 Proc. Nat'l Acad. Sci. 9900 (2002).

815.   Relyea (2009)[50] researched "how a single application of five insecticides (malathion, carbaryl, chlorpyrifos, diazinon, and endosulfan) and five herbicides (glyphosate, atrazine, acetochlor, metolachlor, and 2,4-D) at low concentrations (2–16 p.p.b.) affected aquatic communities composed of zooplankton, phytoplankton, periphyton, and larval amphibians (gray tree frogs, *Hyla versicolor,* and leopard frogs, *Rana pipiens*)."  The study "examined each pesticide alone, a mix of insecticides, a mix of herbicides, and a mix of all ten pesticides."  Instead of testing the infinite pesticide combinations possible, Relyea selected a few broad combinations to determine if any of the concentrations caused deleterious effects unique to chemical mixing.  Results of the study show that "a single application of insecticides and herbicides (alone and in combination at low concentrations) can have dramatic effects on several taxonomic groups.  For many of the taxa (zooplankton and algae) the effects of the pesticide mixtures were largely predictable from the individual pesticide effects. In contrast, mixtures of globally common pesticides (driven by the mixture of the insecticides) can cause up to 99% mortality in larval amphibians, and this effect was not completely explained by the individual pesticide effects."

816.   The USGS has detected malathion in over 100 watersheds where susceptible species exist as well (see Exhibit B), and the USGS 2007 Report found high occurrences of malathion.

817.   Malathion is toxic or otherwise harmful to, and may be used in or impact the range of, the following species and critical habitat that have been listed or designated since 1989: Arroyo toad (listed 1994, critical habitat 2011); California tiger salamander (Central California DPS, except for Bay Area Counties) (listed 2004, critical habitat 2005); California tiger salamander (Santa Barbara County DPS) (listed 2000, critical habitat 2004); Chiricahua leopard frog (listed 2002, critical habitat 2012); Frosted flatwoods salamander (listed 1999, critical habitat 2009); Mississippi gopher frog (DPS) (listed 2001, critical habitat 2012); Mountain yellow-legged frog (Southern California DPS) (listed 2002, critical habitat 2006); Reticulated flatwoods salamander (listed 2009, critical habitat 2009); Coastal California gnatcatcher (listed 1993, critical habitat 2007); Northern spotted owl (listed 1990, critical habitat 2012); Piping plover (critical habitat 2001, 2002, 2008, 2009); Southwestern willow flycatcher (listed 1995, critical habitat 2013); Western snowy plover (Pacific DPS) (listed 1993, critical habitat

---

[50] Rick A. Relyea, *A Cocktail of Contaminants: How Mixtures of Pesticides at Low Concentrations Affect Aquatic Aommunities*, 159 Oecologia 363 (2009).

2012); Conservancy fairy shrimp (listed 1993, critical habitat 2005); Alabama sturgeon (listed 2000, critical habitat 2009); Blue shiner (listed 1992); Bonytail chub (critical habitat 1994); Bull trout (U.S. DPS) (listed 1998, critical habitat 2010); Gulf sturgeon (listed 1991, critical habitat 2003); North American green sturgeon (southern DPS) (listed 2006, critical habitat 2009); Razorback sucker (listed 1991, critical habitat 1994); Santa Ana sucker (listed 2000, critical habitat 2010)' Topeka shiner (listed 1998, critical habitat 2004); Vermilion darter (listed 2001, critical habitat 2010); American burying beetle (listed 1989); Behren's fritillary (listed 1997) (Behren's silverspot); Callippe silverspot (listed 1997); Mitchell's satyr butterfly (listed 1991); Myrtle's silverspot (listed 1992); Ohlone tiger beetle (listed 2001); Buena Vista Lake ornate Shrew (listed 2002, critical habitat 2005); Florida salt marsh vole (listed 1991); Killer whale (southern resident DPS) (listed 2006, critical habitat 2006); Louisiana black bear (listed 1992, critical habitat 2009); Lower keys rabbit (listed 1990); Riparian brush rabbit (listed 2000); Riparian woodrat (=San Joaquin Valley) (listed 2000); Alabama moccasinshell (listed 1993, critical habitat 2004); Appalachian Elktoe (listed 1994, critical habitat 2002); Chipola slabshell (listed 1998, critical habitat 2007); Clubshell (listed 1993); Coosa moccasinshell (listed 1993, critical habitat 2004); Cumberlandian combshell (listed 1997, critical habitat 2004); Dwarf wedgemussel (listed 1990); Fat threeridge (listed 1998, critical habitat 2007); Finelined pocketbook (listed 1993, critical habitat 2004); Gulf moccasinshell (listed 1998, critical habitat 2007); Northern riffleshell (listed 1993); Ochlockonee moccasinshell (listed 1998, critical habitat 2007); Oval pigtoe (listed 1998, critical habitat 2007); Oyster mussel (listed 1997, critical habitat 2004); Purple bankclimber (listed 1998, critical habitat 2007); Purple bean (listed 1997, critical habitat 2004); Shinyrayed pocketbook (listed 1998, critical habitat 2007); Southern clubshell (listed 1993, critical habitat 2004); Southern pigtoe (listed 1993, critical habitat 2004); Triangular kidneyshell (listed 1993, critical habitat 2004); Upland combshell (listed 1993, critical habitat 2004); Winged mapleleaf (listed 1991); Bog turtle (Northern DPS) (listed 1997); Desert tortoise (critical habitat 1994); Giant garter snake (listed 1993).

818.   The above information reveals that triggers for reinitiation of formal consultation have occurred in regard to malathion.  This information shows that malathion may affect listed species or their critical habitat in a manner or to an extent not previously considered, and that new species have

been listed or critical habitat designated that may be affected by malathion.  For example, new studies and new toxicity information now exist, as well as new information regarding presence in U.S. waters.

819.    Additional information also likely exists in the possession of the EPA, or the Services, demonstrating either a) new information revealing effects of malathion that may affect listed species or critical habitat in a manner or to an extent not previously considered, or b) modification of the malathion registration in a manner that causes an effect to the listed species or critical habitat that was not considered in the biological opinion.  The EPA has been conducting its Endangered Species Program for many years and very likely has significant information regarding malathion.

820.    Plaintiffs' members live, work, visit, recreate in, and otherwise enjoy areas across the nation that may be impacted by malathion.  Plaintiffs' members derive professional, aesthetic, spiritual, recreational, economic, and educational benefits from the endangered and threatened species that live in these areas and may be impacted by malathion.  The list of species that may be affected by malathion is provided in Exhibit A, and Plaintiffs' members have cognizable interests in these species.

821.    For example, Judge Tait's mussel was part of the 1993 BiOp, and a member of Plaintiffs' organizations has a cognizable interest in this species based on, among other things, efforts to observe the species during frequent visits to habitats where the species can be found and may be affected by malathion.

822.    Plaintiffs' members engage in wildlife observation, research, photography, restoration activities, and educational programs involving endangered and threatened species that may be impacted by malathion.  Plaintiffs' members will continue to maintain an interest in the species and areas that may be impacted by malathion in the future.

823.    EPA's failure to ensure that malathion does not impact endangered species and their habitats harms Plaintiffs' members' interests in those species.  For example, EPA's failure to reinitiate consultation on malathion may impair recovery of species impacted by carbaryl, or may make it more likely that these species would suffer population declines.  Species declines and impaired recovery harm the interests that Plaintiffs' members have in the existence and conservation of these rare animals, such as limiting the ability to observe the species.  Reinitiation of consultation on malathion is

1   necessary to ensure that Plaintiffs' members' interests in the species that may be affected by malathion
2   are preserved and remain free from injury.

3   824.   EPA must register and authorize pesticides before they can be used and has an ongoing
4   responsibility to ensure that registered pesticides do not have unreasonable adverse effects on the
5   environment.  Absent EPA's registration and continuing discretionary control and involvement,
6   malathion could not be used and could not negatively impact the listed species named in Exhibit A and
7   their habitats.

8   825.   If this Court orders EPA to reinitiate consultation, the Service would analyze the extent
9   to which malathion affects listed species and their habitats and, if necessary, would suggest reasonable
10  and prudent alternatives or measures to protect the species, which would protect Plaintiffs' members'
11  interests in the species.  16 U.S.C. § 1536(a)(3).  Unless the requested relief is granted, Plaintiffs'
12  interests will continue to be injured by EPA's failure to reinitiate consultation on malathion with the
13  Service, as well as by the potential ongoing harm to the species named in Exhibit A and their habitats
14  as a result of ongoing use of malathion.

15  826.   The injuries described above are actual, concrete injuries that are presently suffered by
16  Plaintiffs and their members and will continue to occur unless relief is granted by this Court.  These
17  injuries are directly caused by the Defendants' failure to reinitiate consultation with the Service to
18  ensure that EPA's actions relating to malathion do not affect listed species and Plaintiffs' members'
19  cognizable interests in these species.  The relief sought herein, EPA's compliance with the ESA, would
20  redress Plaintiffs' injuries.  Plaintiffs have no other adequate remedy at law, and they bring this action
21  on behalf of their adversely affected members.

22  827.   Reinitiation of consultation regarding malathion is reviewable under the ESA's citizen
23  suit provision, 16 U.S.C. § 1540(g).  In the alternative, because the triggering events for reinitiation of
24  consultation regarding malathion did not occur as a result of a FIFRA hearing, they are therefore
25  judicially reviewable by a district court under FIFRA § 16(a), 7 § U.S.C. 136n(a).

26

27

28

**Permethrin[51]** (1989 BiOp)

828.    EPA retains, and statutes and regulations authorize, ongoing discretionary involvement and control over permethrin, and EPA has discretion to influence or change permethrin use for the benefit of protected species. *See Wash. Toxics Coal.*, 413 F.3d at 1033.  For example, EPA may only register or reregister a pesticide if its use does not cause an unreasonable adverse effect on the environment, 7 U.S.C. § 136a(c)(5), and EPA may change, cancel, restrict, or immediately suspend registered pesticides, pesticide labeling, or particular pesticide uses at any time.  7 U.S.C. § 136d(c); *see also* 40 CFR Part 154 (Special Review Procedures).

829.    EPA's 2007 permethrin RED states: "The acute endangered LOC (RQ >0.05) for direct effects were exceeded for all maximum application rates for corn, sweet corn, potatoes, alfalfa, orchards, tomatoes, and mosquito abatement modeled scenarios. Estimated concentrations in surface water due to waste water containing permethrin were also used to calculate RQ values and show acute endangered species LOC exceedance. Potential chronic exposure for fish was limited to the corn modeled scenario.(In the ecological risk assessment for permethrin, freshwater fish toxicity data are used as surrogates for aquatic-phase amphibians).  Freshwater Invertebrates- The acute and chronic LOC was exceeded for the maximum application rate for all crops relative to aquatic macroinvertebrate exposure. Permethrin is expected to reach surface water concentrations high enough to exceed the acute endangered LOC (acute RQ > 0.05) for aquatic invertebrates.  Estuarine/Marine Fish- The acute endangered LOC (acute RQ >0.05) is exceed for all maximum application rates. The Agency also calculated estimated concentrations of permethrin in surface water due to waste water and noted the potential for acute endangered species exceedances. However, maximum application rates only showed that the potential for chronic exposure to fish was limited to the corn modeled scenario. Estuarine/Marine Invertebrates- The endangered species acute LOC and chronic LOC is exceeded for all modeled use sites and maximum label rates. However, currently there are no listed estuarine/marine invertebrates.  Although a hazard assessment shows that permethrin exposure can result in acute toxicity to honey bees and is considered to be highly toxic on both a contact and an oral basis (contact LD50 = 0.13 ug/bee; oral LD50 = 0.024 ug/bee), an assessment method for estimating the risk to bees

---

[51] The current EPA Case Number and EPA PC Code for permethrin are 2510, 109701.
Third Amended and First Supplemental Complaint for Declaratory and Injunctive Relief
Case No. 3:11-cv-00293-JCS                                                                              229

is not yet available; therefore, we cannot preclude the possibility of potential effects to listed insect species. . . . Finally, the agency cannot preclude the potential for indirect effects to listed species that may be dependent upon taxa that experience direct effects from the use of permethrin. . . .  At this time, the Agency is not requiring label changes specific to the protection of listed species.  If, in the future, specific measures are necessary for the protection of listed species, the Agency will implement them through the Endangered Species Protection Program."

830.     Permethrin has been detected by the USGS in over a dozen watersheds where susceptible species exist as well (see Exhibit B).

831.     Permethrin is toxic or otherwise harmful to, and may be used in or impact the range of, the following species and critical habitat that have been listed or designated since 1989: Arroyo toad (listed 1994, critical habitat 2011); California tiger salamander (Central California DPS, except for Bay Area Counties) (listed 2004, critical habitat 2005); California tiger salamander (Santa Barbara County DPS) (listed 2000, critical habitat 2004); Chiricahua leopard frog (listed 2002, critical habitat 2012); Frosted flatwoods salamander (listed 1999, critical habitat 2009); Mountain yellow-legged frog (Southern California DPS) (listed 2002, critical habitat 2006); Reticulated flatwoods salamander (listed 2009, critical habitat 2009); Conservancy fairy shrimp (listed 1993, critical habitat 2005); Atlantic salmon (Gulf of Maine DPS) (listed 2009, critical habitat 2009); Blue shiner (listed 1992); Bonytail chub (critical habitat 1994); Bull trout (U.S. DPS) (listed 1998, critical habitat 2010); Gulf sturgeon (listed 1991, critical habitat 2003); North American green sturgeon (southern DPS) (listed 2006, critical habitat 2009); Razorback sucker (listed 1991, critical habitat 1994); Santa Ana sucker (listed 2000, critical habitat 2010); Topeka shiner (listed 1998, critical habitat 2004); American burying beetle (listed 1989); Behren's fritillary (listed 1997) (Behren's silverspot); Callippe silverspot (listed 1997); Mitchell's satyr butterfly (listed 1991); Myrtle's silverspot (listed 1992); Ohlone tiger beetle (listed 2001); Salt Creek tiger beetle (listed 2005, critical habitat 2010); Alabama moccasinshell (listed 1993, critical habitat 2004); Appalachian Elktoe (listed 1994, critical habitat 2002); Chipola slabshell (listed 1998, critical habitat 2007); Clubshell (listed 1993); Coosa moccasinshell (listed 1993, critical habitat 2004); Cumberlandian combshell (listed 1997, critical habitat 2004); Dwarf wedgemussel (listed 1990); Fat threeridge (listed 1998, critical habitat 2007); Finelined pocketbook (listed 1993, critical habitat 2004);

1    Gulf moccasinshell (listed 1998, critical habitat 2007); Northern riffleshell (listed 1993); Ochlockonee

2    moccasinshell (listed 1998, critical habitat 2007); Oval pigtoe (listed 1998, critical habitat 2007);

3    Oyster mussel (listed 1997, critical habitat 2004); Purple bankclimber (listed 1998, critical habitat

4    2007); Purple bean (listed 1997, critical habitat 2004); Shinyrayed pocketbook (listed 1998, critical

5    habitat 2007); Southern clubshell (listed 1993, critical habitat 2004); Southern pigtoe (listed 1993,

6    critical habitat 2004); Triangular kidneyshell (listed 1993, critical habitat 2004); Upland combshell

7    (listed 1993, critical habitat 2004); Winged mapleleaf (listed 1991).

8    832.    The above information reveals that triggers for reinitiation of formal consultation have

9    occurred in regard to permethrin.  This information shows that permethrin may affect listed species or

10   their critical habitat in a manner or to an extent not previously considered, and that new species have

11   been listed or critical habitat designated that may be affected by permethrin.  For example, there now

12   exists new toxicity information as well as information regarding presence in U.S. waters.

13   833.    Additional information also likely exists in the possession of the EPA, or the Services,

14   demonstrating either a) new information revealing effects of permethrin that may affect listed species

15   or critical habitat in a manner or to an extent not previously considered, or b) modification of the

16   permethrin registration in a manner that causes an effect to the listed species or critical habitat that was

17   not considered in the biological opinion.  The EPA has been conducting its Endangered Species

18   Program for many years and very likely has significant information regarding permethrin.

19   834.    Plaintiffs' members live, work, visit, recreate in, and otherwise enjoy areas across the

20   nation that may be impacted by permethrin.  Plaintiffs' members derive professional, aesthetic,

21   spiritual, recreational, economic, and educational benefits from the endangered and threatened species

22   that live in these areas and may be impacted by permethrin.  The list of species that may be affected by

23   permethrin is provided in Exhibit A, and Plaintiffs' members have cognizable interests in these species.

24   835.    For example, the desert pupfish was part of the 1989 BiOp, and a member of Plaintiffs'

25   organizations has a cognizable interest in this species based on, among other things, efforts to observe

26   the species during frequent visits to habitats where the species can be found and may be affected by

27   permethrin.

28

836.   Plaintiffs' members engage in wildlife observation, research, photography, restoration activities, and educational programs involving endangered and threatened species that may be impacted by permethrin.  Plaintiffs' members will continue to maintain an interest in the species and areas that may be impacted by permethrin in the future.

837.   EPA's failure to ensure that permethrin does not impact endangered species and their habitats harms Plaintiffs' members' interests in those species.  For example, EPA's failure to reinitiate consultation on permethrin may impair recovery of species impacted by carbaryl, or may make it more likely that these species would suffer population declines.  Species declines and impaired recovery harm the interests that Plaintiffs' members have in the existence and conservation of these rare animals, such as limiting the ability to observe the species.  Reinitiation of consultation on permethrin is necessary to ensure that Plaintiffs' members' interests in the species that may be affected by permethrin are preserved and remain free from injury.

838.   EPA must register and authorize pesticides before they can be used and has an ongoing responsibility to ensure that registered pesticides do not have unreasonable adverse effects on the environment.  Absent EPA's registration and continuing discretionary control and involvement, permethrin could not be used and could not negatively impact the listed species named in Exhibit A and their habitats.

839.   If this Court orders EPA to reinitiate consultation, the Service would analyze the extent to which permethrin affects listed species and their habitats and, if necessary, would suggest reasonable and prudent alternatives or measures to protect the species, which would protect Plaintiffs' members' interests in the species.  16 U.S.C. § 1536(a)(3).  Unless the requested relief is granted, Plaintiffs' interests will continue to be injured by EPA's failure to reinitiate consultation on permethrin with the Service, as well as by the potential ongoing harm to the species named in Exhibit A and their habitats as a result of ongoing use of permethrin.

840.   The injuries described above are actual, concrete injuries that are presently suffered by Plaintiffs and their members and will continue to occur unless relief is granted by this Court.  These injuries are directly caused by the Defendants' failure to reinitiate consultation with the Service to ensure that EPA's actions relating to permethrin do not affect listed species and Plaintiffs' members'

cognizable interests in these species.  The relief sought herein, EPA's compliance with the ESA, would redress Plaintiffs' injuries.  Plaintiffs have no other adequate remedy at law, and they bring this action on behalf of their adversely affected members.

841.    Reinitiation of consultation regarding permethrin is reviewable under the ESA's citizen suit provision, 16 U.S.C. § 1540(g).  In the alternative, because the triggering events for reinitiation of consultation regarding permethrin did not occur as a result of a FIFRA hearing, they are therefore judicially reviewable by a district court under FIFRA § 16(a), 7 § U.S.C. 136n(a).

## FIRST CLAIM FOR RELIEF

### Violation Of The Endangered Species Act, 16 U.S.C. § 1536(a)(2)

### (EPA's Failure To Consult On 1,3-dichloropropene)

842.    All allegations set forth above in this Complaint are incorporated herein by reference.

843.    EPA "affirmatively authorized" the use of pesticide products containing 1,3-dichloropropene through its new registration and reregistration of these pesticide products listed in the Complaint.  EPA has discretion to influence or change this underlying agency activity for the benefit of protected species.  For example, EPA may only register or reregister a pesticide if its use does not cause an unreasonable adverse effect on the environment. 7 U.S.C. § 136a(c)(5).  EPA may also change, cancel, restrict, or immediately suspend registered pesticides, pesticide labeling, or particular uses at any time if it appears that the pesticide is causing an unreasonable adverse effect on the environment. 7 U.S.C. § 136d(c).  Thus, EPA's registration or reregistration of pesticide products containing1,3-dichloropropene is an "affirmative agency action" subject to consultation under Section 7(a)(2) of the ESA. 16 U.S.C. § 1536(a)(2).

844.    Because EPA's actions involving pesticide products containing 1,3-dichloropropene "may affect" the listed species named in Exhibit A and their designated critical habitat, EPA is required to initiate consultation with the Service.  50 C.F.R. § 402.14(a); 50 C.F.R. § 402.16.

845.    EPA has not initiated consultation with the Service on the effects of the affirmative authorizations of the use of pesticide products containing 1,3-dichloropropene on the affected endangered and threatened species listed in Exhibit A or their designated critical habitat.

846.    EPA is violating Section 7(a)(2) of the ESA and its implementing regulations by failing to initiate consultation with the Service and by failing to ensure through consultation that its actions regarding pesticide products containing 1,3-dichloropropene do not jeopardize the continued existence of endangered and threatened species or destroy or adversely modify designated critical habitat.  16 U.S.C. § 1536(a)(2); 50 C.F.R. Part 402.

847.    EPA's reregistrations and new registrations of products containing 1,3-dichloropropene did not follow a hearing and are therefore judicially reviewable by the district court under FIFRA § 16(a), 7 § U.S.C. 136n(a).

### SECOND CLAIM FOR RELIEF

**Violation Of The Endangered Species Act, 16 U.S.C. § 1536(a)(2)**

**(EPA's Failure To Consult On <u>2,4-D, salts and esters</u>)**

848.    All allegations set forth above in this Complaint are incorporated herein by reference.

849.    EPA "affirmatively authorized" the use of pesticide products containing 2,4-D, salts and esters through its new registration and reregistration of these pesticide products listed in the Complaint. EPA has discretion to influence or change this underlying agency activity for the benefit of protected species.  For example, EPA may only register or reregister a pesticide if its use does not cause an unreasonable adverse effect on the environment. 7 U.S.C. § 136a(c)(5).  EPA may also change, cancel, restrict, or immediately suspend registered pesticides, pesticide labeling, or particular uses at any time if it appears that the pesticide is causing an unreasonable adverse effect on the environment. 7 U.S.C. § 136d(c).  Thus, EPA's registration or reregistration of pesticide products containing 2,4-D, salts and esters is an "affirmative agency action" subject to consultation under Section 7(a)(2) of the ESA. 16 U.S.C. § 1536(a)(2).

850.    Because EPA's actions involving pesticide products containing 2,4-D, salts and esters "may affect" the listed species named in Exhibit A and their designated critical habitat, EPA is required to initiate consultation with the Service.  50 C.F.R. § 402.14(a); 50 C.F.R. § 402.16.

851.    EPA has not initiated consultation with the Service on the effects of the affirmative authorizations of the use of pesticide products containing 2,4-D, salts and esters on the affected endangered and threatened species listed in Exhibit A or their designated critical habitat.

852.   EPA is violating Section 7(a)(2) of the ESA and its implementing regulations by failing to initiate consultation with the Service and by failing to ensure through consultation that its actions regarding pesticide products containing 2,4-D, salts and esters do not jeopardize the continued existence of endangered and threatened species or destroy or adversely modify designated critical habitat.  16 U.S.C. § 1536(a)(2); 50 C.F.R. Part 402.

853.   EPA's reregistrations and new registrations of products containing 2,4-D, salts and esters did not follow a hearing and are therefore judicially reviewable by the district court under FIFRA § 16(a), 7 § U.S.C. 136n(a).

### THIRD CLAIM FOR RELIEF

**Violation Of The Endangered Species Act, 16 U.S.C. § 1536(a)(2)**

**(EPA's Failure To Consult On Acephate)**

854.   All allegations set forth above in this Complaint are incorporated herein by reference.

855.   EPA "affirmatively authorized" the use of pesticide products containing acephate through its new registration and reregistration of these pesticide products listed in the Complaint.  EPA has discretion to influence or change this underlying agency activity for the benefit of protected species.  For example, EPA may only register or reregister a pesticide if its use does not cause an unreasonable adverse effect on the environment. 7 U.S.C. § 136a(c)(5).  EPA may also change, cancel, restrict, or immediately suspend registered pesticides, pesticide labeling, or particular uses at any time if it appears that the pesticide is causing an unreasonable adverse effect on the environment. 7 U.S.C. § 136d(c).  Thus, EPA's reregistration or registration of pesticide products containing acephate is an "affirmative agency action" subject to consultation under Section 7(a)(2) of the ESA. 16 U.S.C. § 1536(a)(2).

856.   Because EPA's actions involving pesticide products containing acephate "may affect" the listed species named in Exhibit A and their designated critical habitat, EPA is required to initiate consultation with the Service.  50 C.F.R. § 402.14(a); 50 C.F.R. § 402.16.

857.   EPA has not initiated consultation with the Service on the effects of the affirmative authorizations of the use of pesticide products containing acephate on the affected endangered and threatened species listed in Exhibit A or their designated critical habitat.

Third Amended and First Supplemental Complaint for Declaratory and Injunctive Relief
Case No. 3:11-cv-00293-JCS                                                              235

858.   EPA is violating Section 7(a)(2) of the ESA and its implementing regulations by failing to initiate consultation with the Service and by failing to ensure through consultation that its actions regarding pesticide products containing acephate do not jeopardize the continued existence of endangered and threatened species or destroy or adversely modify designated critical habitat.  16 U.S.C. § 1536(a)(2); 50 C.F.R. Part 402.

859.   EPA's product reregistration and its approvals of products containing acephate did not follow a hearing and are therefore judicially reviewable by the district court under FIFRA § 16(a), 7 § U.S.C. 136n(a).

## FOURTH CLAIM FOR RELIEF

### Violation Of The Endangered Species Act, 16 U.S.C. § 1536(a)(2)

### (EPA's Failure To Consult On Atrazine)

860.   All allegations set forth above in this Complaint are incorporated herein by reference.

861.   EPA "affirmatively authorized" the use of pesticide products containing atrazine through its new registration and reregistration of these pesticide products listed in the Complaint.  EPA has discretion to influence or change this underlying agency activity for the benefit of protected species. For example, EPA may only register or reregister a pesticide if its use does not cause an unreasonable adverse effect on the environment. 7 U.S.C. § 136a(c)(5).  EPA may also change, cancel, restrict, or immediately suspend registered pesticides, pesticide labeling, or particular uses at any time if it appears that the pesticide is causing an unreasonable adverse effect on the environment. 7 U.S.C. § 136d(c). Thus, EPA's registration or reregistration of pesticide products containing atrazine is an "affirmative agency action" subject to consultation under Section 7(a)(2) of the ESA. 16 U.S.C. § 1536(a)(2).

862.   Because EPA's actions involving pesticide products containing atrazine "may affect" the listed species named in Exhibit A and their designated critical habitat, EPA is required to initiate consultation with the Service.  50 C.F.R. § 402.14(a); 50 C.F.R. § 402.16.

863.   EPA has not initiated consultation with the Service on the effects of the affirmative authorizations of the use of pesticide products containing atrazine on the affected endangered and threatened species listed in Exhibit A or their designated critical habitat.

1    864.    EPA is violating Section 7(a)(2) of the ESA and its implementing regulations by failing

2   to initiate consultation with the Service and by failing to ensure through consultation that its actions

3   regarding pesticide products containing atrazine do not jeopardize the continued existence of

4   endangered and threatened species or destroy or adversely modify designated critical habitat.  16

5   U.S.C. § 1536(a)(2); 50 C.F.R. Part 402.

6    865.    EPA's product reregistrations and new registrations of products containing atrazine did

7   not follow a hearing and are therefore judicially reviewable by the district court under FIFRA § 16(a), 7

8   § U.S.C. 136n(a).

9    **FIFTH CLAIM FOR RELIEF**

10    **Violation Of The Endangered Species Act, 16 U.S.C. § 1536(a)(2)**

11    **(EPA's Failure To Consult On Bensulide)**

12    866.    All allegations set forth above in this Complaint are incorporated herein by reference.

13    867.    EPA "affirmatively authorized" the use of pesticide products containing bensulide

14   through its registration and reregistration of these pesticide products listed in the Complaint.  EPA has

15   discretion to influence or change this underlying agency activity for the benefit of protected species.

16   For example, EPA may only register or reregister a pesticide if its use does not cause an unreasonable

17   adverse effect on the environment. 7 U.S.C. § 136a(c)(5).  EPA may also change, cancel, restrict, or

18   immediately suspend registered pesticides, pesticide labeling, or particular uses at any time if it appears

19   that the pesticide is causing an unreasonable adverse effect on the environment. 7 U.S.C. § 136d(c).

20   Thus, EPA's registration or reregistration of pesticide products containing bensulide is an "affirmative

21   agency action" subject to consultation under Section 7(a)(2) of the ESA. 16 U.S.C. § 1536(a)(2).

22    868.    Because EPA's actions involving pesticide products containing bensulide "may affect"

23   the listed species named in Exhibit A and their designated critical habitat, EPA is required to initiate

24   consultation with the Service.  50 C.F.R. § 402.14(a); 50 C.F.R. § 402.16.

25    869.    EPA has not initiated consultation with the Service on the effects of the affirmative

26   authorizations of the use of pesticide products containing bensulide on the affected endangered and

27   threatened species listed in Exhibit A or their designated critical habitat.

28

870.   EPA is violating Section 7(a)(2) of the ESA and its implementing regulations by failing to initiate consultation with the Service and by failing to ensure through consultation that its actions regarding pesticide products containing bensulide do not jeopardize the continued existence of endangered and threatened species or destroy or adversely modify designated critical habitat.  16 U.S.C. § 1536(a)(2); 50 C.F.R. Part 402.

871.   EPA's reregistrations and new registrations of products containing bensulide did not follow a hearing and are therefore judicially reviewable by the district court under FIFRA § 16(a), 7 § U.S.C. 136n(a).

## SIXTH CLAIM FOR RELIEF

### Violation Of The Endangered Species Act, 16 U.S.C. § 1536(a)(2)

### (EPA's Failure To Consult On Brodifacoum)

872.   All allegations set forth above in this Complaint are incorporated herein by reference.

873.   EPA "affirmatively authorized" the use of pesticide products containing brodifacoum through its registration and reregistration of these pesticide products listed in the Complaint.  EPA has discretion to influence or change this underlying agency activity for the benefit of protected species. For example, EPA may only register or reregister a pesticide if its use does not cause an unreasonable adverse effect on the environment. 7 U.S.C. § 136a(c)(5).  EPA may also change, cancel, restrict, or immediately suspend registered pesticides, pesticide labeling, or particular uses at any time if it appears that the pesticide is causing an unreasonable adverse effect on the environment. 7 U.S.C. § 136d(c). Thus, EPA's registration or reregistration of pesticide products containing brodifacoum is an "affirmative agency action" subject to consultation under Section 7(a)(2) of the ESA. 16 U.S.C. § 1536(a)(2).

874.   Because EPA's actions involving pesticide products containing brodifacoum "may affect" the listed species named in Exhibit A and their designated critical habitat, EPA is required to initiate consultation with the Service.  50 C.F.R. § 402.14(a); 50 C.F.R. § 402.16.

875.   EPA has not initiated consultation with the Service on the effects of the affirmative authorizations of the use of pesticide products containing brodifacoum on the affected endangered and threatened species listed in Exhibit A or their designated critical habitat.

876.    EPA is violating Section 7(a)(2) of the ESA and its implementing regulations by failing to initiate consultation with the Service and by failing to ensure through consultation that its actions regarding pesticide products containing brodifacoum do not jeopardize the continued existence of endangered and threatened species or destroy or adversely modify designated critical habitat.  16 U.S.C. § 1536(a)(2); 50 C.F.R. Part 402.

877.    EPA's reregistrations and new registrations of products containing brodifacoum did not follow a hearing and are therefore judicially reviewable by the district court under FIFRA § 16(a), 7 § U.S.C. 136n(a).

**SEVENTH CLAIM FOR RELIEF**

**Violation Of The Endangered Species Act, 16 U.S.C. § 1536(a)(2)**

**(EPA's Failure To Consult On <u>Bromadiolone</u>)**

878.    All allegations set forth above in this Complaint are incorporated herein by reference.

879.    EPA "affirmatively authorized" the use of pesticide products containing bromadiolone through its registration and reregistration of these pesticide products listed in the Complaint.  EPA has discretion to influence or change this underlying agency activity for the benefit of protected species. For example, EPA may only register or reregister a pesticide if its use does not cause an unreasonable adverse effect on the environment. 7 U.S.C. § 136a(c)(5).  EPA may also change, cancel, restrict, or immediately suspend registered pesticides, pesticide labeling, or particular uses at any time if it appears that the pesticide is causing an unreasonable adverse effect on the environment. 7 U.S.C. § 136d(c). Thus, EPA's registration or reregistration of pesticide products containing bromadiolone is an "affirmative agency action" subject to consultation under Section 7(a)(2) of the ESA. 16 U.S.C. § 1536(a)(2).

880.    Because EPA's actions involving pesticide products containing bromadiolone "may affect" the listed species named in Exhibit A and their designated critical habitat, EPA is required to initiate consultation with the Service.  50 C.F.R. § 402.14(a); 50 C.F.R. § 402.16.

881.    EPA has not initiated consultation with the Service on the effects of the affirmative authorizations of the use of pesticide products containing bromadiolone on the affected endangered and threatened species listed in Exhibit A or their designated critical habitat.

882.    EPA is violating Section 7(a)(2) of the ESA and its implementing regulations by failing to initiate consultation with the Service and by failing to ensure through consultation that its actions regarding pesticide products containing bromadiolone do not jeopardize the continued existence of endangered and threatened species or destroy or adversely modify designated critical habitat.  16 U.S.C. § 1536(a)(2); 50 C.F.R. Part 402.

883.    EPA's product reregistration and reregistration of products containing bromadiolone did not follow a hearing and are therefore judicially reviewable by the district court under FIFRA § 16(a), 7 § U.S.C. 136n(a).

## EIGHTH CLAIM FOR RELIEF

### Violation Of The Endangered Species Act, 16 U.S.C. § 1536(a)(2)

### (EPA's Failure To Consult On Captan)

884.    All allegations set forth above in this Complaint are incorporated herein by reference.

885.    EPA "affirmatively authorized" the use of pesticide products containing captan through its registration and reregistration of these pesticide products listed in the Complaint.  EPA has discretion to influence or change this underlying agency activity for the benefit of protected species. For example, EPA may only register or reregister a pesticide if its use does not cause an unreasonable adverse effect on the environment. 7 U.S.C. § 136a(c)(5).  EPA may also change, cancel, restrict, or immediately suspend registered pesticides, pesticide labeling, or particular uses at any time if it appears that the pesticide is causing an unreasonable adverse effect on the environment. 7 U.S.C. § 136d(c). Thus, EPA's registration or reregistration of pesticide products containing captan is an "affirmative agency action" subject to consultation under Section 7(a)(2) of the ESA. 16 U.S.C. § 1536(a)(2).

886.    Because EPA's actions involving pesticide products containing captan "may affect" the listed species named in Exhibit A and their designated critical habitat, EPA is required to initiate consultation with the Service.  50 C.F.R. § 402.14(a); 50 C.F.R. § 402.16.

887.    EPA has not initiated consultation with the Service on the effects of the affirmative authorizations of the use of pesticide products containing  captan on the affected endangered and threatened species listed in Exhibit A or their designated critical habitat.

1    888.   EPA is violating Section 7(a)(2) of the ESA and its implementing regulations by failing

2    to initiate consultation with the Service and by failing to ensure through consultation that its actions

3    regarding pesticide products containing captan do not jeopardize the continued existence of endangered

4    and threatened species or destroy or adversely modify designated critical habitat.  16 U.S.C. §

5    1536(a)(2); 50 C.F.R. Part 402.

6    889.   EPA's product reregistration and new registration of products containing captan did not

7    follow a hearing and are therefore judicially reviewable by the district court under FIFRA § 16(a), 7 §

8    U.S.C. 136n(a).

9    **NINTH CLAIM FOR RELIEF**

10   **Violation Of The Endangered Species Act, 16 U.S.C. § 1536(a)(2)**

11   **(EPA's Failure To Consult On Carbaryl)**

12   890.   All allegations set forth above in this Complaint are incorporated herein by reference.

13   891.   EPA "affirmatively authorized" the use of pesticide products containing carbaryl

14   through its registration and reregistration of these pesticide products listed in the Complaint.  EPA has

15   discretion to influence or change this underlying agency activity for the benefit of protected species.

16   For example, EPA may only register or reregister a pesticide if its use does not cause an unreasonable

17   adverse effect on the environment. 7 U.S.C. § 136a(c)(5).  EPA may also change, cancel, restrict, or

18   immediately suspend registered pesticides, pesticide labeling, or particular uses at any time if it appears

19   that the pesticide is causing an unreasonable adverse effect on the environment. 7 U.S.C. § 136d(c).

20   Thus, EPA's registration or reregistration of pesticide products containing carbaryl is an "affirmative

21   agency action" subject to consultation under Section 7(a)(2) of the ESA. 16 U.S.C. § 1536(a)(2).

22   892.   Because EPA's actions involving pesticide products containing carbaryl "may affect"

23   the listed species named in Exhibit A and their designated critical habitat, EPA is required to initiate

24   consultation with the Service.  50 C.F.R. § 402.14(a); 50 C.F.R. § 402.16.

25   893.   EPA has not initiated consultation with the Service on the effects of the affirmative

26   authorizations of the use of pesticide products containing carbaryl on the affected endangered and

27   threatened species listed in Exhibit A or their designated critical habitat.

28

894.   EPA is violating Section 7(a)(2) of the ESA and its implementing regulations by failing to initiate consultation with the Service and by failing to ensure through consultation that its actions regarding pesticide products containing carbaryl do not jeopardize the continued existence of endangered and threatened species or destroy or adversely modify designated critical habitat.  16 U.S.C. § 1536(a)(2); 50 C.F.R. Part 402.

895.   EPA's completion of product reregistration and new registration of products containing carbaryl did not follow a hearing and are therefore judicially reviewable by the district court under FIFRA § 16(a), 7 § U.S.C. 136n(a).

### TENTH CLAIM FOR RELIEF

### Violation Of The Endangered Species Act, 16 U.S.C. § 1536(a)(2)

### (EPA's Failure To Consult On Chlorothalonil)

896.   All allegations set forth above in this Complaint are incorporated herein by reference.

897.   EPA "affirmatively authorized" the use of pesticide products containing chlorothalonil through its registration and reregistration of these pesticide products listed in the Complaint.  EPA has discretion to influence or change this underlying agency activity for the benefit of protected species. For example, EPA may only register or reregister a pesticide if its use does not cause an unreasonable adverse effect on the environment. 7 U.S.C. § 136a(c)(5).  EPA may also change, cancel, restrict, or immediately suspend registered pesticides, pesticide labeling, or particular uses at any time if it appears that the pesticide is causing an unreasonable adverse effect on the environment. 7 U.S.C. § 136d(c). Thus, EPA's registration or reregistration of pesticide products containing chlorothalonil is an "affirmative agency action" subject to consultation under Section 7(a)(2) of the ESA. 16 U.S.C. § 1536(a)(2).

898.   Because EPA's actions involving pesticide products containing chlorothalonil "may affect" the listed species named in Exhibit A and their designated critical habitat, EPA is required to initiate consultation with the Service.  50 C.F.R. § 402.14(a); 50 C.F.R. § 402.16.

899.   EPA has not initiated consultation with the Service on the effects of the affirmative authorizations of the use of pesticide products containing chlorothalonil on the affected endangered and threatened species listed in Exhibit A or their designated critical habitat.

900.    EPA is violating Section 7(a)(2) of the ESA and its implementing regulations by failing to initiate consultation with the Service and by failing to ensure through consultation that its actions regarding pesticide products containing chlorothalonil do not jeopardize the continued existence of endangered and threatened species or destroy or adversely modify designated critical habitat.  16 U.S.C. § 1536(a)(2); 50 C.F.R. Part 402.

901.    EPA's product reregistrations and new registrations of products containing chlorothalonil did not follow a hearing and are therefore judicially reviewable by the district court under FIFRA § 16(a), 7 § U.S.C. 136n(a).

### ELEVENTH CLAIM FOR RELIEF

**Violation Of The Endangered Species Act, 16 U.S.C. § 1536(a)(2)**

**(EPA's Failure To Consult On Chlorpyrifos)**

902.    All allegations set forth above in this Complaint are incorporated herein by reference.

903.    EPA "affirmatively authorized" the use of pesticide products containing chlorpyrifos through its registration and reregistration of these pesticide products listed in the Complaint.  EPA has discretion to influence or change this underlying agency activity for the benefit of protected species.  For example, EPA may only register or reregister a pesticide if its use does not cause an unreasonable adverse effect on the environment. 7 U.S.C. § 136a(c)(5).  EPA may also change, cancel, restrict, or immediately suspend registered pesticides, pesticide labeling, or particular uses at any time if it appears that the pesticide is causing an unreasonable adverse effect on the environment. 7 U.S.C. § 136d(c).  Thus, EPA's registration or reregistration of pesticide products containing chlorpyrifos is an "affirmative agency action" subject to consultation under Section 7(a)(2) of the ESA. 16 U.S.C. § 1536(a)(2).

904.    Because EPA's actions involving pesticide products containing chlorpyrifos "may affect" the listed species named in Exhibit A and their designated critical habitat, EPA is required to initiate consultation with the Service.  50 C.F.R. § 402.14(a); 50 C.F.R. § 402.16.

905.    EPA has not initiated consultation with the Service on the effects of the affirmative authorizations of the use of pesticide products containing chlorpyrifos on the affected endangered and threatened species listed in Exhibit A or their designated critical habitat.

906.    EPA is violating Section 7(a)(2) of the ESA and its implementing regulations by failing to initiate consultation with the Service and by failing to ensure through consultation that its actions regarding pesticide products containing chlorpyrifos do not jeopardize the continued existence of endangered and threatened species or destroy or adversely modify designated critical habitat.  16 U.S.C. § 1536(a)(2); 50 C.F.R. Part 402.

907.    EPA's product reregistrations and new registrations of products containing chlorpyrifos did not follow a hearing and are therefore judicially reviewable by the district court under FIFRA § 16(a), 7 § U.S.C. 136n(a).

## TWELFTH CLAIM FOR RELIEF

### Violation Of The Endangered Species Act, 16 U.S.C. § 1536(a)(2)

### (EPA's Failure To Consult On Diazinon)

908.    All allegations set forth above in this Complaint are incorporated herein by reference.

909.    EPA "affirmatively authorized" the use of pesticide products containing diazinon through its registration and reregistration of these pesticide products listed in the Complaint.  EPA has discretion to influence or change this underlying agency activity for the benefit of protected species. For example, EPA may only register or reregister a pesticide if its use does not cause an unreasonable adverse effect on the environment. 7 U.S.C. § 136a(c)(5).  EPA may also change, cancel, restrict, or immediately suspend registered pesticides, pesticide labeling, or particular uses at any time if it appears that the pesticide is causing an unreasonable adverse effect on the environment.  7 U.S.C. § 136d(c). Thus, EPA's registration or reregistration of pesticide products containing diazinon is an "affirmative agency action" subject to consultation under Section 7(a)(2) of the ESA. 16 U.S.C. § 1536(a)(2).

910.    Because EPA's actions involving pesticide products containing diazinon "may affect" the listed species named in Exhibit A and their designated critical habitat, EPA is required to initiate consultation with the Service.  50 C.F.R. § 402.14(a); 50 C.F.R. § 402.16.

911.    EPA has not initiated consultation with the Service on the effects of the affirmative authorizations of the use of pesticide products containing diazinon on the affected endangered and threatened species listed in Exhibit A or their designated critical habitat.

912.    EPA is violating Section 7(a)(2) of the ESA and its implementing regulations by failing to initiate consultation with the Service and by failing to ensure through consultation that its actions regarding pesticide products containing diazinon do not jeopardize the continued existence of endangered and threatened species or destroy or adversely modify designated critical habitat.  16 U.S.C. § 1536(a)(2); 50 C.F.R. Part 402.

913.    EPA's product reregistrations and new registrations of products containing diazinon did not follow a hearing and are therefore judicially reviewable by the district court under FIFRA § 16(a), 7 § U.S.C. 136n(a).

## THIRTEENTH CLAIM FOR RELIEF

### Violation Of The Endangered Species Act, 16 U.S.C. § 1536(a)(2)

### (EPA's Failure To Consult On Dicamba And Salts)

914.    All allegations set forth above in this Complaint are incorporated herein by reference.

915.    EPA "affirmatively authorized" the use of pesticide products containing dicamba and salts through its registration and reregistration of these pesticide products listed in the Complaint.  EPA has discretion to influence or change this underlying agency activity for the benefit of protected species.  For example, EPA may only register or reregister a pesticide if its use does not cause an unreasonable adverse effect on the environment.  7 U.S.C. § 136a(c)(5).   EPA may also change, cancel, restrict, or immediately suspend registered pesticides, pesticide labeling, or particular uses at any time if it appears that the pesticide is causing an unreasonable adverse effect on the environment.  7 U.S.C. § 136d(c).   Thus, EPA's registration or reregistration of pesticide products containing dicamba and salts is an "affirmative agency action" subject to consultation under Section 7(a)(2) of the ESA. 16 U.S.C. § 1536(a)(2).

916.    Because EPA's actions involving pesticide products containing dicamba and salts "may affect" the listed species named in Exhibit A and their designated critical habitat, EPA is required to initiate consultation with the Service.  50 C.F.R. § 402.14(a); 50 C.F.R. § 402.16.

917.    EPA has not initiated consultation with the Service on the effects of the affirmative authorizations of the use of pesticide products containing dicamba on the affected endangered and threatened species listed in Exhibit A or their designated critical habitat.

918.   EPA is violating Section 7(a)(2) of the ESA and its implementing regulations by failing to initiate consultation with the Service and by failing to ensure through consultation that its actions regarding pesticide products containing dicamba and salts do not jeopardize the continued existence of endangered and threatened species or destroy or adversely modify designated critical habitat.  16 U.S.C. § 1536(a)(2); 50 C.F.R. Part 402.

919.   EPA's product reregistrations and new registrations of products containing dicamba and salts did not follow a hearing and are therefore judicially reviewable by the district court under FIFRA § 16(a), 7 § U.S.C. 136n(a).

## FOURTEENTH CLAIM FOR RELIEF

### Violation Of The Endangered Species Act, 16 U.S.C. § 1536(a)(2)

### (EPA's Failure To Consult On Dimethoate)

920.   All allegations set forth above in this Complaint are incorporated herein by reference.

921.   EPA "affirmatively authorized" the use of pesticide products containing dimethoate through its registration and reregistration of these pesticide products listed in the Complaint.  EPA has discretion to influence or change this underlying agency activity for the benefit of protected species. For example, EPA may only register or reregister a pesticide if its use does not cause an unreasonable adverse effect on the environment. 7 U.S.C. § 136a(c)(5).  EPA may also change, cancel, restrict, or immediately suspend registered pesticides, pesticide labeling, or particular uses at any time if it appears that the pesticide is causing an unreasonable adverse effect on the environment. 7 U.S.C. § 136d(c). Thus, EPA's registration or reregistration of pesticide products containing dimethoate is an "affirmative agency action" subject to consultation under Section 7(a)(2) of the ESA. 16 U.S.C. § 1536(a)(2).

922.   Because EPA's actions involving pesticide products containing dimethoate "may affect" the listed species named in Exhibit A and their designated critical habitat, EPA is required to initiate consultation with the Service.  50 C.F.R. § 402.14(a); 50 C.F.R. § 402.16.

923.   EPA has not initiated consultation with the Service on the effects of the affirmative authorizations of the use of pesticide products containing dimethoate on the affected endangered and threatened species listed in Exhibit A or their designated critical habitat.

924. EPA is violating Section 7(a)(2) of the ESA and its implementing regulations by failing to initiate consultation with the Service and by failing to ensure through consultation that its actions regarding pesticide products containing dimethoate do not jeopardize the continued existence of endangered and threatened species or destroy or adversely modify designated critical habitat. 16 U.S.C. § 1536(a)(2); 50 C.F.R. Part 402.

925. EPA's product reregistrations and new registrations of products containing dimethoate did not follow a hearing and are therefore judicially reviewable by the district court under FIFRA § 16(a), 7 § U.S.C. 136n(a).

### FIFTEENTH CLAIM FOR RELIEF

**Violation Of The Endangered Species Act, 16 U.S.C. § 1536(a)(2)**

**(EPA's Failure To Consult On Diuron)**

926. All allegations set forth above in this Complaint are incorporated herein by reference.

927. EPA "affirmatively authorized" the use of pesticide products containing diuron through its registration and reregistration of these pesticide products listed in the complaint. EPA has discretion to influence or change this underlying agency activity for the benefit of protected species. For example, EPA may only register or reregister a pesticide if its use does not cause an unreasonable adverse effect on the environment. 7 U.S.C. § 136a(c)(5). EPA may also change, cancel, restrict, or immediately suspend registered pesticides, pesticide labeling, or particular uses at any time if it appears that the pesticide is causing an unreasonable adverse effect on the environment. 7 U.S.C. § 136d(c). Thus, EPA's registration or reregistration of pesticide products containing diuron is an "affirmative agency action" subject to consultation under Section 7(a)(2) of the ESA. 16 U.S.C. § 1536(a)(2).

928. Because EPA's actions involving pesticide products containing diuron "may affect" the listed species named in Exhibit A and their designated critical habitat, EPA is required to initiate consultation with the Service. 50 C.F.R. § 402.14(a); 50 C.F.R. § 402.16.

929. EPA has not initiated consultation with the Service on the effects of the affirmative authorizations of the use of pesticide products containing diuron on the affected endangered and threatened species listed in Exhibit A or their designated critical habitat.

1    930.    EPA is violating Section 7(a)(2) of the ESA and its implementing regulations by failing

2    to initiate consultation with the Service and by failing to ensure through consultation that its actions

3    regarding pesticide products containing diuron do not jeopardize the continued existence of endangered

4    and threatened species or destroy or adversely modify designated critical habitat.  16 U.S.C. §

5    1536(a)(2); 50 C.F.R. Part 402.

6    931.    EPA's product reregistrations and new registrations of products containing diuron did

7    not follow a hearing and are therefore judicially reviewable by the district court under FIFRA § 16(a), 7

8    § U.S.C. 136n(a).

9    **SIXTEENTH CLAIM FOR RELIEF**

10   **Violation Of The Endangered Species Act, 16 U.S.C. § 1536(a)(2)**

11   **(EPA's Failure To Consult On Ethoprop)**

12   932.    All allegations set forth above in this Complaint are incorporated herein by reference.

13   933.    EPA "affirmatively authorized" the use of pesticide products containing ethoprop

14   through its registration and reregistration of these pesticide products listed in the complaint.  EPA has

15   discretion to influence or change this underlying agency activity for the benefit of protected species.

16   For example, EPA may only register or reregister a pesticide if its use does not cause an unreasonable

17   adverse effect on the environment. 7 U.S.C. § 136a(c)(5).  EPA may also change, cancel, restrict, or

18   immediately suspend registered pesticides, pesticide labeling, or particular uses at any time if it appears

19   that the pesticide is causing an unreasonable adverse effect on the environment. 7 U.S.C. § 136d(c).

20   Thus, EPA's registration or reregistration of pesticide products containing ethoprop is an "affirmative

21   agency action" subject to consultation under Section 7(a)(2) of the ESA. 16 U.S.C. § 1536(a)(2).

22   934.    Because EPA's actions involving pesticide products containing ethoprop "may affect"

23   the listed species named in Exhibit A and their designated critical habitat, EPA is required to initiate

24   consultation with the Service.  50 C.F.R. § 402.14(a); 50 C.F.R. § 402.16.

25   935.    EPA has not initiated consultation with the Service on the effects of the affirmative

26   authorizations of the use of pesticide products containing ethoprop on the affected endangered and

27   threatened species listed in Exhibit A or their designated critical habitat.

28

936.   EPA is violating Section 7(a)(2) of the ESA and its implementing regulations by failing to initiate consultation with the Service and by failing to ensure through consultation that its actions regarding pesticide products containing ethoprop do not jeopardize the continued existence of endangered and threatened species or destroy or adversely modify designated critical habitat.  16 U.S.C. § 1536(a)(2); 50 C.F.R. Part 402.

937.   EPA's product reregistrations and new registrations of products containing ethoprop did not follow a hearing and are therefore judicially reviewable by the district court under FIFRA § 16(a), 7 § U.S.C. 136n(a).

**SEVENTEENTH CLAIM FOR RELIEF**

**Violation Of The Endangered Species Act, 16 U.S.C. § 1536(a)(2)**

**(EPA's Failure To Consult On MCPA, salts and esters)**

938.   All allegations set forth above in this Complaint are incorporated herein by reference.

939.   EPA "affirmatively authorized" the use of pesticide products containing MCPA, salts and esters through its registration and reregistration of these pesticide products listed in the Complaint. EPA has discretion to influence or change this underlying agency activity for the benefit of protected species.  For example, EPA may only register or reregister a pesticide if its use does not cause an unreasonable adverse effect on the environment. 7 U.S.C. § 136a(c)(5).  EPA may also change, cancel, restrict, or immediately suspend registered pesticides, pesticide labeling, or particular uses at any time if it appears that the pesticide is causing an unreasonable adverse effect on the environment. 7 U.S.C. § 136d(c).  Thus, EPA's registration or reregistration of pesticide products containing MCPA, salts and esters is an "affirmative agency action" subject to consultation under Section 7(a)(2) of the ESA. 16 U.S.C. § 1536(a)(2).

940.   Because EPA's actions involving pesticide products containing MCPA, salts and esters "may affect" the listed species named in Exhibit A and their designated critical habitat, EPA is required to initiate consultation with the Service.  50 C.F.R. § 402.14(a); 50 C.F.R. § 402.16.

941.   EPA has not initiated consultation with the Service on the effects of the affirmative authorizations of the use of pesticide products containing MCPA, salts and esters on the affected endangered and threatened species listed in Exhibit A or their designated critical habitat.

1    942.   EPA is violating Section 7(a)(2) of the ESA and its implementing regulations by failing

2    to initiate consultation with the Service and by failing to ensure through consultation that its actions

3    regarding pesticide products containing MCPA, salts and esters do not jeopardize the continued

4    existence of endangered and threatened species or destroy or adversely modify designated critical

5    habitat.  16 U.S.C. § 1536(a)(2); 50 C.F.R. Part 402.

6    943.   EPA's product reregistrations and new registrations of products containing MCPA, salts

7    and esters did not follow a hearing and are therefore judicially reviewable by the district court under

8    FIFRA § 16(a), 7 § U.S.C. 136n(a).

9    **EIGHTEENTH CLAIM FOR RELIEF**

10   **Violation Of The Endangered Species Act, 16 U.S.C. § 1536(a)(2)**

11   **(EPA's Failure To Consult On <u>Mancozeb</u>)**

12   944.   All allegations set forth above in this Complaint are incorporated herein by reference.

13   945.   EPA "affirmatively authorized" the use of pesticide products containing mancozeb

14   through its registration and reregistration of these pesticide products listed in the Complaint.  EPA has

15   discretion to influence or change this underlying agency activity for the benefit of protected species.

16   For example, EPA may only register or reregister a pesticide if its use does not cause an unreasonable

17   adverse effect on the environment. 7 U.S.C. § 136a(c)(5).  EPA may also change, cancel, restrict, or

18   immediately suspend registered pesticides, pesticide labeling, or particular uses at any time if it appears

19   that the pesticide is causing an unreasonable adverse effect on the environment. 7 U.S.C. § 136d(c).

20   Thus, EPA's registration or reregistration of pesticide products containing mancozeb is an "affirmative

21   agency action" subject to consultation under Section 7(a)(2) of the ESA. 16 U.S.C. § 1536(a)(2).

22   946.   Because EPA's actions involving pesticide products containing mancozeb "may affect"

23   the listed species named in Exhibit A and their designated critical habitat, EPA is required to initiate

24   consultation with the Service.  50 C.F.R. § 402.14(a); 50 C.F.R. § 402.16.

25   947.   EPA has not initiated consultation with the Service on the effects of the affirmative

26   authorizations of the use of pesticide products containing mancozeb on the affected endangered and

27   threatened species listed in Exhibit A or their designated critical habitat.

28

948.    EPA is violating Section 7(a)(2) of the ESA and its implementing regulations by failing to initiate consultation with the Service and by failing to ensure through consultation that its actions regarding pesticide products containing mancozeb do not jeopardize the continued existence of endangered and threatened species or destroy or adversely modify designated critical habitat.  16 U.S.C. § 1536(a)(2); 50 C.F.R. Part 402.

949.    EPA's product reregistrations and new registrations of products containing mancozeb did not follow a hearing and are therefore judicially reviewable by the district court under FIFRA § 16(a), 7 § U.S.C. 136n(a).

## NINTEENTH CLAIM FOR RELIEF

### Violation Of The Endangered Species Act, 16 U.S.C. § 1536(a)(2)

### (EPA's Failure To Consult On Methomyl)

950.    All allegations set forth above in this Complaint are incorporated herein by reference.

951.    EPA "affirmatively authorized" the use of pesticide products containing methomyl through its registration and reregistration of these pesticide products listed.  EPA has discretion to influence or change this underlying agency activity for the benefit of protected species.  For example, EPA may only register or reregister a pesticide if its use does not cause an unreasonable adverse effect on the environment. 7 U.S.C. § 136a(c)(5).  EPA may also change, cancel, restrict, or immediately suspend registered pesticides, pesticide labeling, or particular uses at any time if it appears that the pesticide is causing an unreasonable adverse effect on the environment. 7 U.S.C. § 136d(c).  Thus, EPA's registration or reregistration of pesticide products containing methomyl is an "affirmative agency action" subject to consultation under Section 7(a)(2) of the ESA. 16 U.S.C. § 1536(a)(2).

952.    Because EPA's actions involving pesticide products containing methomyl "may affect" the listed species named in Exhibit A and their designated critical habitat, EPA is required to initiate consultation with the Service.  50 C.F.R. § 402.14(a); 50 C.F.R. § 402.16.

953.    EPA has not initiated consultation with the Service on the effects of the affirmative authorizations of the use of pesticide products containing methomyl on the affected endangered and threatened species listed in Exhibit A or their designated critical habitat.

954.   EPA is violating Section 7(a)(2) of the ESA and its implementing regulations by failing to initiate consultation with the Service and by failing to ensure through consultation that its actions regarding pesticide products containing methomyl do not jeopardize the continued existence of endangered and threatened species or destroy or adversely modify designated critical habitat.  16 U.S.C. § 1536(a)(2); 50 C.F.R. Part 402.

955.   EPA's product reregistrations and new registrations of products containing methomyl did not follow a hearing and are therefore judicially reviewable by the district court under FIFRA § 16(a), 7 § U.S.C. 136n(a).

## TWENTIETH CLAIM FOR RELIEF

### Violation Of The Endangered Species Act, 16 U.S.C. § 1536(a)(2)

### (EPA's Failure To Consult On Metolachlor And Isomers)

956.   All allegations set forth above in this Complaint are incorporated herein by reference.

957.   EPA "affirmatively authorized" the use of pesticide products containing metolachlor and isomers through its registration and reregistration of these pesticide products listed in the Complaint. EPA has discretion to influence or change this underlying agency activity for the benefit of protected species.  For example, EPA may only register or reregister a pesticide if its use does not cause an unreasonable adverse effect on the environment. 7 U.S.C. § 136a(c)(5).  EPA may also change, cancel, restrict, or immediately suspend registered pesticides, pesticide labeling, or particular uses at any time if it appears that the pesticide is causing an unreasonable adverse effect on the environment. 7 U.S.C. § 136d(c).  Thus, EPA's registration or reregistration of pesticide products containing metolachlor and isomers is an "affirmative agency action" subject to consultation under Section 7(a)(2) of the ESA. 16 U.S.C. § 1536(a)(2).

958.   Because EPA's actions involving pesticide products containing metolachlor and isomers "may affect" the listed species named in Exhibit A and their designated critical habitat, EPA is required to initiate consultation with the Service.  50 C.F.R. § 402.14(a); 50 C.F.R. § 402.16.

959.   EPA has not initiated consultation with the Service on the effects of the affirmative authorizations of the use of pesticide products containing  metolachlor on the affected endangered and threatened species listed in Exhibit A or their designated critical habitat.

960. EPA is violating Section 7(a)(2) of the ESA and its implementing regulations by failing to initiate consultation with the Service and by failing to ensure through consultation that its actions regarding pesticide products containing metolachlor and isomers do not jeopardize the continued existence of endangered and threatened species or destroy or adversely modify designated critical habitat. 16 U.S.C. § 1536(a)(2); 50 C.F.R. Part 402.

961. EPA's product reregistrations and new registrations of products containing metolachlor and isomers did not follow a hearing and are therefore judicially reviewable by the district court under FIFRA § 16(a), 7 § U.S.C. 136n(a).

## TWENTY-FIRST CLAIM FOR RELIEF

### Violation Of The Endangered Species Act, 16 U.S.C. § 1536(a)(2)

### (EPA's Failure To Consult On <u>Metribuzin</u>)

962. All allegations set forth above in this Complaint are incorporated herein by reference.

963. EPA "affirmatively authorized" the use of pesticide products containing metribuzin through its registration and reregistration of these pesticide products listed in the Complaint. EPA has discretion to influence or change this underlying agency activity for the benefit of protected species. For example, EPA may only register or reregister a pesticide if its use does not cause an unreasonable adverse effect on the environment. 7 U.S.C. § 136a(c)(5). EPA may also change, cancel, restrict, or immediately suspend registered pesticides, pesticide labeling, or particular uses at any time if it appears that the pesticide is causing an unreasonable adverse effect on the environment. 7 U.S.C. § 136d(c). Thus, EPA's registration or reregistration of pesticide products containing metribuzin is an "affirmative agency action" subject to consultation under Section 7(a)(2) of the ESA. 16 U.S.C. § 1536(a)(2).

964. Because EPA's actions involving pesticide products containing metribuzin "may affect" the listed species named in Exhibit A and their designated critical habitat, EPA is required to initiate consultation with the Service. 50 C.F.R. § 402.14(a); 50 C.F.R. § 402.16.

965. EPA has not initiated consultation with the Service on the effects of the affirmative authorizations of the use of pesticide products containing metribuzin on the affected endangered and threatened species listed in Exhibit A or their designated critical habitat.

966.   EPA is violating Section 7(a)(2) of the ESA and its implementing regulations by failing to initiate consultation with the Service and by failing to ensure through consultation that its actions regarding pesticide products containing metribuzin do not jeopardize the continued existence of endangered and threatened species or destroy or adversely modify designated critical habitat.  16 U.S.C. § 1536(a)(2); 50 C.F.R. Part 402.

967.   EPA's product reregistrations and new registrations of products containing metribuzin did not follow a hearing and are therefore judicially reviewable by the district court under FIFRA § 16(a), 7 § U.S.C. 136n(a).

## TWENTY-SECOND CLAIM FOR RELIEF

### Violation Of The Endangered Species Act, 16 U.S.C. § 1536(a)(2)

### (EPA's Failure To Consult On Naled)

968.   All allegations set forth above in this Complaint are incorporated herein by reference.

969.   EPA "affirmatively authorized" the use of pesticide products containing naled through its registration and reregistration of these pesticide products listed in the Complaint.  EPA has discretion to influence or change this underlying agency activity for the benefit of protected species. For example, EPA may only register or reregister a pesticide if its use does not cause an unreasonable adverse effect on the environment. 7 U.S.C. § 136a(c)(5).  EPA may also change, cancel, restrict, or immediately suspend registered pesticides, pesticide labeling, or particular uses at any time if it appears that the pesticide is causing an unreasonable adverse effect on the environment. 7 U.S.C. § 136d(c). Thus, EPA's registration or reregistration of pesticide products containing naled is an "affirmative agency action" subject to consultation under Section 7(a)(2) of the ESA. 16 U.S.C. § 1536(a)(2).

970.   Because EPA's actions involving pesticide products containing naled "may affect" the listed species named in Exhibit A and their designated critical habitat, EPA is required to initiate consultation with the Service.  50 C.F.R. § 402.14(a); 50 C.F.R. § 402.16.

971.   EPA has not initiated consultation with the Service on the effects of the affirmative authorizations of the use of pesticide products containing naled on the affected endangered and threatened species listed in Exhibit A or their designated critical habitat.

972.    EPA is violating Section 7(a)(2) of the ESA and its implementing regulations by failing to initiate consultation with the Service and by failing to ensure through consultation that its actions regarding pesticide products containing naled do not jeopardize the continued existence of endangered and threatened species or destroy or adversely modify designated critical habitat.  16 U.S.C. § 1536(a)(2); 50 C.F.R. Part 402.

973.    EPA's product reregistration and new registrations of products containing naled did not follow a hearing and are therefore judicially reviewable by the district court under FIFRA § 16(a), 7 § U.S.C. 136n(a).

### TWENTY-THIRD CLAIM FOR RELIEF

### Violation Of The Endangered Species Act, 16 U.S.C. § 1536(a)(2)

### (EPA's Failure To Consult On Oxyfluorfen)

974.    All allegations set forth above in this Complaint are incorporated herein by reference.

975.    EPA "affirmatively authorized" the use of pesticide products containing oxyfluorfen through its registration and reregistration of these pesticide products listed in the Complaint.  EPA has discretion to influence or change this underlying agency activity for the benefit of protected species. For example, EPA may only register or reregister a pesticide if its use does not cause an unreasonable adverse effect on the environment. 7 U.S.C. § 136a(c)(5).  EPA may also change, cancel, restrict, or immediately suspend registered pesticides, pesticide labeling, or particular uses at any time if it appears that the pesticide is causing an unreasonable adverse effect on the environment. 7 U.S.C. § 136d(c). Thus, EPA's registration or reregistration of pesticide products containing oxyfluorfen is an "affirmative agency action" subject to consultation under Section 7(a)(2) of the ESA. 16 U.S.C. § 1536(a)(2).

976.    Because EPA's actions involving pesticide products containing oxyfluorfen "may affect" the listed species named in Exhibit A and their designated critical habitat, EPA is required to initiate consultation with the Service.  50 C.F.R. § 402.14(a); 50 C.F.R. § 402.16.

977.    EPA has not initiated consultation with the Service on the effects of the affirmative authorizations of the use of pesticide products containing oxyfluorfen on the affected endangered and threatened species listed in Exhibit A or their designated critical habitat.

978.   EPA is violating Section 7(a)(2) of the ESA and its implementing regulations by failing to initiate consultation with the Service and by failing to ensure through consultation that its actions regarding pesticide products containing oxyfluorfen do not jeopardize the continued existence of endangered and threatened species or destroy or adversely modify designated critical habitat. 16 U.S.C. § 1536(a)(2); 50 C.F.R. Part 402.

979.   EPA's product reregistrations and reregistrations of products containing oxyfluorfen did not follow a hearing and are therefore judicially reviewable by the district court under FIFRA § 16(a), 7 § U.S.C. 136n(a).

## TWENTY-FOURTH CLAIM FOR RELIEF

### Violation Of The Endangered Species Act, 16 U.S.C. § 1536(a)(2)

### (EPA's Failure To Consult On Paraquat Dichloride)

980.   All allegations set forth above in this Complaint are incorporated herein by reference.

981.   EPA "affirmatively authorized" the use of pesticide products containing paraquat dichloride through its registration and reregistration of these pesticide products listed in the Complaint. EPA has discretion to influence or change this underlying agency activity for the benefit of protected species. For example, EPA may only register or reregister a pesticide if its use does not cause an unreasonable adverse effect on the environment. 7 U.S.C. § 136a(c)(5). EPA may also change, cancel, restrict, or immediately suspend registered pesticides, pesticide labeling, or particular uses at any time if it appears that the pesticide is causing an unreasonable adverse effect on the environment. 7 U.S.C. § 136d(c). Thus, EPA's registration or reregistration of pesticide products containing paraquat dichloride is an "affirmative agency action" subject to consultation under Section 7(a)(2) of the ESA. 16 U.S.C. § 1536(a)(2).

982.   Because EPA's actions involving pesticide products containing paraquat dichloride "may affect" the listed species named in Exhibit A and their designated critical habitat, EPA is required to initiate consultation with the Service. 50 C.F.R. § 402.14(a); 50 C.F.R. § 402.16.

983.   EPA has not initiated consultation with the Service on the effects of the affirmative authorizations of the use of pesticide products containing paraquat dichloride on the affected endangered and threatened species listed in Exhibit A or their designated critical habitat.

984.   EPA is violating Section 7(a)(2) of the ESA and its implementing regulations by failing to initiate consultation with the Service and by failing to ensure through consultation that its actions regarding pesticide products containing paraquat dichloride do not jeopardize the continued existence of endangered and threatened species or destroy or adversely modify designated critical habitat.  16 U.S.C. § 1536(a)(2); 50 C.F.R. Part 402.

985.   EPA's product reregistrations and new registrations of products containing paraquat dichloride did not follow a hearing and are therefore judicially reviewable by the district court under FIFRA § 16(a), 7 § U.S.C. 136n(a).

### TWENTY-FIFTH CLAIM FOR RELIEF

### Violation Of The Endangered Species Act, 16 U.S.C. § 1536(a)(2)

### (EPA's Failure To Consult On Pendimethalin)

986.   All allegations set forth above in this Complaint are incorporated herein by reference.

987.   EPA "affirmatively authorized" the use of pesticide products containing pendimethalin through its registration and reregistration of these pesticide products listed in the Complaint.  EPA has discretion to influence or change this underlying agency activity for the benefit of protected species. For example, EPA may only register or reregister a pesticide if its use does not cause an unreasonable adverse effect on the environment. 7 U.S.C. § 136a(c)(5).  EPA may also change, cancel, restrict, or immediately suspend registered pesticides, pesticide labeling, or particular uses at any time if it appears that the pesticide is causing an unreasonable adverse effect on the environment. 7 U.S.C. § 136d(c). Thus, EPA's registration or reregistration of pesticide products containing pendimethalin is an "affirmative agency action" subject to consultation under Section 7(a)(2) of the ESA. 16 U.S.C. § 1536(a)(2).

988.   Because EPA's actions involving pesticide products containing pendimethalin "may affect" the listed species named in Exhibit A and their designated critical habitat, EPA is required to initiate consultation with the Service.  50 C.F.R. § 402.14(a); 50 C.F.R. § 402.16.

989.   EPA has not initiated consultation with the Service on the effects of the affirmative authorizations of the use of pesticide products containing pendimethalin on the affected endangered and threatened species listed in Exhibit A or their designated critical habitat.

990.   EPA is violating Section 7(a)(2) of the ESA and its implementing regulations by failing to initiate consultation with the Service and by failing to ensure through consultation that its actions regarding pesticide products containing pendimethalin do not jeopardize the continued existence of endangered and threatened species or destroy or adversely modify designated critical habitat.  16 U.S.C. § 1536(a)(2); 50 C.F.R. Part 402.

991.   EPA's product reregistrations and new registrations of products containing pendimethalin did not follow a hearing and are therefore judicially reviewable by the district court under FIFRA § 16(a), 7 § U.S.C. 136n(a).

## TWENTY-SIXTH CLAIM FOR RELIEF

### Violation Of The Endangered Species Act, 16 U.S.C. § 1536(a)(2)

### (EPA's Failure To Consult On **Phorate**)

992.   All allegations set forth above in this Complaint are incorporated herein by reference.

993.   EPA "affirmatively authorized" the use of pesticide products containing phorate through its registration and reregistration of these pesticide products listed in the Complaint.  EPA has discretion to influence or change this underlying agency activity for the benefit of protected species. For example, EPA may only register or reregister a pesticide if its use does not cause an unreasonable adverse effect on the environment. 7 U.S.C. § 136a(c)(5).  EPA may also change, cancel, restrict, or immediately suspend registered pesticides, pesticide labeling, or particular uses at any time if it appears that the pesticide is causing an unreasonable adverse effect on the environment. 7 U.S.C. § 136d(c). Thus, EPA's registration or reregistration of pesticide products containing phorate is an "affirmative agency action" subject to consultation under Section 7(a)(2) of the ESA. 16 U.S.C. § 1536(a)(2).

994.   Because EPA's actions involving pesticide products containing phorate "may affect" the listed species named in Exhibit A and their designated critical habitat, EPA is required to initiate consultation with the Service.  50 C.F.R. § 402.14(a); 50 C.F.R. § 402.16.

995.   EPA has not initiated consultation with the Service on the effects of the affirmative authorizations of the use of pesticide products containing phorate on the affected endangered and threatened species listed in Exhibit A or their designated critical habitat.

1    996.   EPA is violating Section 7(a)(2) of the ESA and its implementing regulations by failing

2    to initiate consultation with the Service and by failing to ensure through consultation that its actions

3    regarding pesticide products containing phorate do not jeopardize the continued existence of

4    endangered and threatened species or destroy or adversely modify designated critical habitat.  16

5    U.S.C. § 1536(a)(2); 50 C.F.R. Part 402.

6    997.   EPA's product reregistrations and new registrations of products containing phorate did

7    not follow a hearing and are therefore judicially reviewable by the district court under FIFRA § 16(a), 7

8    § U.S.C. 136n(a).

9                              **TWENTY-SEVENTH CLAIM FOR RELIEF**

10                    **Violation Of The Endangered Species Act, 16 U.S.C. § 1536(a)(2)**

11                         **(EPA's Failure To Consult On Phosmet)**

12   998.   All allegations set forth above in this Complaint are incorporated herein by reference.

13   999.   EPA "affirmatively authorized" the use of pesticide products containing phosmet

14   through its registration and reregistration of these pesticides listed in the Complaint.  EPA has

15   discretion to influence or change this underlying agency activity for the benefit of protected species.

16   For example, EPA may only register or reregister a pesticide if its use does not cause an unreasonable

17   adverse effect on the environment. 7 U.S.C. § 136a(c)(5).  EPA may also change, cancel, restrict, or

18   immediately suspend registered pesticides, pesticide labeling, or particular uses at any time if it appears

19   that the pesticide is causing an unreasonable adverse effect on the environment. 7 U.S.C. § 136d(c).

20   Thus, EPA's registration or reregistration of pesticide products containing phosmet is an "affirmative

21   agency action" subject to consultation under Section 7(a)(2) of the ESA. 16 U.S.C. § 1536(a)(2).

22   1000.  Because EPA's actions involving pesticide products containing phosmet "may affect"

23   the listed species named in Exhibit A and their designated critical habitat, EPA is required to initiate

24   consultation with the Service.  50 C.F.R. § 402.14(a); 50 C.F.R. § 402.16.

25   1001.  EPA has not initiated consultation with the Service on the effects of the affirmative

26   authorizations of the use of pesticide products containing  phosmet on the affected endangered and

27   threatened species listed in Exhibit A or their designated critical habitat.

28

1    1002.  EPA is violating Section 7(a)(2) of the ESA and its implementing regulations by failing

2    to initiate consultation with the Service and by failing to ensure through consultation that its actions

3    regarding pesticide products containing phosmet do not jeopardize the continued existence of

4    endangered and threatened species or destroy or adversely modify designated critical habitat.  16

5    U.S.C. § 1536(a)(2); 50 C.F.R. Part 402.

6    1003.  EPA's product reregistrations and new registrations of products containing phosmet did

7    not follow a hearing and are therefore judicially reviewable by the district court under FIFRA § 16(a), 7

8    § U.S.C. 136n(a).

9                              **TWENTY-EIGHTH CLAIM FOR RELIEF**

10              **Violation Of The Endangered Species Act, 16 U.S.C. § 1536(a)(2)**

11                        **(EPA's Failure To Consult On Propanil)**

12   1004.  All allegations set forth above in this Complaint are incorporated herein by reference.

13   1005.  EPA "affirmatively authorized" the use of pesticide products containing propanil through

14   its registration and reregistration of these pesticide products listed in the Complaint.  EPA has

15   discretion to influence or change this underlying agency activity for the benefit of protected species.

16   For example, EPA may only register or reregister a pesticide if its use does not cause an unreasonable

17   adverse effect on the environment. 7 U.S.C. § 136a(c)(5).  EPA may also change, cancel, restrict, or

18   immediately suspend registered pesticides, pesticide labeling, or particular uses at any time if it appears

19   that the pesticide is causing an unreasonable adverse effect on the environment. 7 U.S.C. § 136d(c).

20   Thus, EPA's registration or reregistration of pesticide products containing propanil is an "affirmative

21   agency action" subject to consultation under Section 7(a)(2) of the ESA. 16 U.S.C. § 1536(a)(2).

22   1006.  Because EPA's actions involving pesticide products containing propanil "may affect" the

23   listed species named in Exhibit A and their designated critical habitat, EPA is required to initiate

24   consultation with the Service.  50 C.F.R. § 402.14(a); 50 C.F.R. § 402.16.

25   1007.  EPA has not initiated consultation with the Service on the effects of the affirmative

26   authorizations of the use of pesticide products containing propanil on the affected endangered and

27   threatened species listed in Exhibit A or their designated critical habitat.

28

1008.  EPA is violating Section 7(a)(2) of the ESA and its implementing regulations by failing to initiate consultation with the Service and by failing to ensure through consultation that its actions regarding pesticide products containing propanil do not jeopardize the continued existence of endangered and threatened species or destroy or adversely modify designated critical habitat.  16 U.S.C. § 1536(a)(2); 50 C.F.R. Part 402.

1009.  EPA's product reregistrations and new registrations of products containing propanil did not follow a hearing and are therefore judicially reviewable by the district court under FIFRA § 16(a), 7 § U.S.C. 136n(a).

## TWENTY-NINTH CLAIM FOR RELIEF

### Violation Of The Endangered Species Act, 16 U.S.C. § 1536(a)(2)

### (EPA's Failure To Consult On Propargite)

1010.  All allegations set forth above in this Complaint are incorporated herein by reference.

1011.  EPA "affirmatively authorized" the use of the active ingredient propargite in its 2007 and 2008 REDs and the use of pesticide products containing propargite through its registration and reregistration of these pesticide products listed in the Complaint.  EPA has discretion to influence or change this underlying agency activity for the benefit of protected species.  For example, EPA may only register or reregister a pesticide if its use does not cause an unreasonable adverse effect on the environment. 7 U.S.C. § 136a(c)(5).  EPA may also change, cancel, restrict, or immediately suspend registered pesticides, pesticide labeling, or particular uses at any time if it appears that the pesticide is causing an unreasonable adverse effect on the environment. 7 U.S.C. § 136d(c).  Thus, EPA's registration or reregistration of pesticide products containing propargite is an "affirmative agency action" subject to consultation under Section 7(a)(2) of the ESA. 16 U.S.C. § 1536(a)(2).

1012.  Because EPA's actions involving propargite and pesticide products containing propargite "may affect" the listed species named in Exhibit A and their designated critical habitat, EPA is required to initiate consultation with the Service.  50 C.F.R. § 402.14(a); 50 C.F.R. § 402.16.

1013.  EPA has not initiated consultation with the Service on the effects of the affirmative authorizations of the use of the active ingredient propargite and pesticide products containing

propargite on the affected endangered and threatened species listed in Exhibit A or their designated critical habitat.

1014.  EPA is violating Section 7(a)(2) of the ESA and its implementing regulations by failing to initiate consultation with the Service and by failing to ensure through consultation that its actions regarding the active ingredient propargite and pesticide products containing propargite do not jeopardize the continued existence of endangered and threatened species or destroy or adversely modify designated critical habitat.  16 U.S.C. § 1536(a)(2); 50 C.F.R. Part 402.

1015.  EPA's 2007 and 2008 propargite REDs and product reregistrations and new registrations of products containing propargite did not follow a hearing and are therefore judicially reviewable by the district court under FIFRA § 16(a), 7 § U.S.C. 136n(a) ).

## THIRTIETH CLAIM FOR RELIEF

### Violation Of The Endangered Species Act, 16 U.S.C. § 1536(a)(2)

### (EPA's Failure To Consult On <u>Simazine</u>)

1016.  All allegations set forth above in this Complaint are incorporated herein by reference.

1017.  EPA "affirmatively authorized" the use of pesticide products containing simazine through its registration and reregistration of these pesticide products listed in the Complaint.  EPA has discretion to influence or change this underlying agency activity for the benefit of protected species. For example, EPA may only register or reregister a pesticide if its use does not cause an unreasonable adverse effect on the environment. 7 U.S.C. § 136a(c)(5).  EPA may also change, cancel, restrict, or immediately suspend registered pesticides, pesticide labeling, or particular uses at any time if it appears that the pesticide is causing an unreasonable adverse effect on the environment. 7 U.S.C. § 136d(c). Thus, EPA's registration or reregistration of pesticide products containing simazine is an "affirmative agency action" subject to consultation under Section 7(a)(2) of the ESA. 16 U.S.C. § 1536(a)(2).

1018.  Because EPA's actions involving pesticide products containing simazine "may affect" the listed species named in Exhibit A and their designated critical habitat, EPA is required to initiate consultation with the Service.  50 C.F.R. § 402.14(a); 50 C.F.R. § 402.16.

1019.  EPA has not initiated consultation with the Service on the effects of the affirmative authorizations of the use of pesticide products containing simazine on the affected endangered and threatened species listed in Exhibit A or their designated critical habitat.

1020.  EPA is violating Section 7(a)(2) of the ESA and its implementing regulations by failing to initiate consultation with the Service and by failing to ensure through consultation that its actions regarding pesticide products containing simazine do not jeopardize the continued existence of endangered and threatened species or destroy or adversely modify designated critical habitat.  16 U.S.C. § 1536(a)(2); 50 C.F.R. Part 402.

1021.  EPA's product reregistrations and new registrations of products containing simazine did not follow a hearing and are therefore judicially reviewable by the district court under FIFRA § 16(a), 7 § U.S.C. 136n(a).

## THIRTY-FIRST CLAIM FOR RELIEF

### Violation Of The Endangered Species Act, 16 U.S.C. § 1536(a)(2)

### (EPA's Failure To Consult On <u>S,S,S-tributyl phosphorotrithioate</u>)

1022.  All allegations set forth above in this Complaint are incorporated herein by reference.

1023.  EPA "affirmatively authorized" the use of pesticide products containing S,S,S-tributyl phosphorotrithioate through its registration and reregistration of these pesticide products listed in the Complaint.  EPA has discretion to influence or change this underlying agency activity for the benefit of protected species.  For example, EPA may only register or reregister a pesticide if its use does not cause an unreasonable adverse effect on the environment. 7 U.S.C. § 136a(c)(5).  EPA may also change, cancel, restrict, or immediately suspend registered pesticides, pesticide labeling, or particular uses at any time if it appears that the pesticide is causing an unreasonable adverse effect on the environment. 7 U.S.C. § 136d(c).  Thus, EPA's registration or reregistration of pesticide products containing S,S,S-tributyl phosphorotrithioate is an "affirmative agency action" subject to consultation under Section 7(a)(2) of the ESA. 16 U.S.C. § 1536(a)(2).

1024.  Because EPA's actions involving pesticide products containing S,S,S-tributyl phosphorotrithioate "may affect" the listed species named in Exhibit A and their designated critical

1   habitat, EPA is required to initiate consultation with the Service.  50 C.F.R. § 402.14(a); 50 C.F.R. §

2   402.16.

3          1025.  EPA has not initiated consultation with the Service on the effects of the affirmative

4   authorizations of the use of pesticide products containing S,S,S-tributyl phosphorotrithioate on the

5   affected endangered and threatened species listed in Exhibit A or their designated critical habitat.

6          1026.  EPA is violating Section 7(a)(2) of the ESA and its implementing regulations by failing

7   to initiate consultation with the Service and by failing to ensure through consultation that its actions

8   regarding pesticide products containing S,S,S-tributyl phosphorotrithioate do not jeopardize the

9   continued existence of endangered and threatened species or destroy or adversely modify designated

10  critical habitat.  16 U.S.C. § 1536(a)(2); 50 C.F.R. Part 402.

11         1027.  EPA's product reregistrations and new registrations of products containing S,S,S-tributyl

12  phosphorotrithioate did not follow a hearing and are therefore judicially reviewable by the district court

13  under FIFRA § 16(a), 7 § U.S.C. 136n(a).

14                          **THIRTY-SECOND CLAIM FOR RELIEF**

15               **Violation Of The Endangered Species Act, 16 U.S.C. § 1536(a)(2)**

16                    **(EPA's Failure To Consult On Thiobencarb)**

17         1028.  All allegations set forth above in this Complaint are incorporated herein by reference.

18         1029.  EPA "affirmatively authorized" the use of pesticide products containing thiobencarb

19  through its registration and reregistration of these pesticide products listed in the Complaint.  EPA has

20  discretion to influence or change this underlying agency activity for the benefit of protected species.

21  For example, EPA may only register or reregister a pesticide if its use does not cause an unreasonable

22  adverse effect on the environment. 7 U.S.C. § 136a(c)(5).  EPA may also change, cancel, restrict, or

23  immediately suspend registered pesticides, pesticide labeling, or particular uses at any time if it appears

24  that the pesticide is causing an unreasonable adverse effect on the environment. 7 U.S.C. § 136d(c).

25  Thus, EPA's registration or reregistration of pesticide products containing thiobencarb is an

26  "affirmative agency action" subject to consultation under Section 7(a)(2) of the ESA. 16 U.S.C. §

27  1536(a)(2).

28

1030.  Because EPA's actions involving pesticide products containing thiobencarb "may affect" the listed species named in Exhibit A and their designated critical habitat, EPA is required to initiate consultation with the Service.  50 C.F.R. § 402.14(a); 50 C.F.R. § 402.16.

1031.  EPA has not initiated consultation with the Service on the effects of the affirmative authorizations of the use of pesticide products containing thiobencarb on the affected endangered and threatened species listed in Exhibit A or their designated critical habitat.

1032.  EPA is violating Section 7(a)(2) of the ESA and its implementing regulations by failing to initiate consultation with the Service and by failing to ensure through consultation that its actions regarding pesticide products containing thiobencarb do not jeopardize the continued existence of endangered and threatened species or destroy or adversely modify designated critical habitat.  16 U.S.C. § 1536(a)(2); 50 C.F.R. Part 402.

1033.  EPA's product reregistrations and new registrations of products containing thiobencarb did not follow a hearing and are therefore judicially reviewable by the district court under FIFRA § 16(a), 7 § U.S.C. 136n(a).

### THIRTY-THIRD CLAIM FOR RELIEF

### Violation Of The Endangered Species Act, 16 U.S.C. § 1536(a)(2)

### (EPA's Failure To Consult On Trifluralin)

1034.  All allegations set forth above in this Complaint are incorporated herein by reference.

1035.  EPA "affirmatively authorized" the use of pesticide products containing trifluralin through its registration and reregistration of these pesticide products listed in the Complaint.  EPA has discretion to influence or change this underlying agency activity for the benefit of protected species. For example, EPA may only register or reregister a pesticide if its use does not cause an unreasonable adverse effect on the environment. 7 U.S.C. § 136a(c)(5).  EPA may also change, cancel, restrict, or immediately suspend registered pesticides, pesticide labeling, or particular uses at any time if it appears that the pesticide is causing an unreasonable adverse effect on the environment. 7 U.S.C. § 136d(c). Thus, EPA's reregistration of trifluralin is an "affirmative agency action" subject to consultation under Section 7(a)(2) of the ESA. 16 U.S.C. § 1536(a)(2).

1036.  Because EPA's actions involving pesticide products containing trifluralin "may affect" the listed species named in Exhibit A and their designated critical habitat, EPA is required to initiate consultation with the Service.  50 C.F.R. § 402.14(a); 50 C.F.R. § 402.16.

1037.  EPA has not initiated consultation with the Service on the effects of the affirmative authorizations of the use of pesticide products containing  trifluralin on the affected endangered and threatened species listed in Exhibit A or their designated critical habitat.

1038.  EPA is violating Section 7(a)(2) of the ESA and its implementing regulations by failing to initiate consultation with the Service and by failing to ensure through consultation that its actions regarding pesticide products containing trifluralin do not jeopardize the continued existence of endangered and threatened species or destroy or adversely modify designated critical habitat.  16 U.S.C. § 1536(a)(2); 50 C.F.R. Part 402.

1039.  EPA's product reregistration and new registrations of products containing trifluralin did not follow a hearing and are therefore judicially reviewable by the district court under FIFRA § 16(a), 7 § U.S.C. 136n(a).

**THIRTY-FOURTH CLAIM FOR RELIEF**

**Violation Of The Endangered Species Act, 16 U.S.C. § 1536(a)(2)**

**(EPA's Failure To Consult On <u>Warfarin</u>)**

1040.  All allegations set forth above in this Complaint are incorporated herein by reference.

1041.  EPA "affirmatively authorized" the use of pesticide products containing warfarin through its registration and reregistration of these pesticide products listed in the Complaint.  EPA has discretion to influence or change this underlying agency activity for the benefit of protected species. For example, EPA may only register or reregister a pesticide if its use does not cause an unreasonable adverse effect on the environment. 7 U.S.C. § 136a(c)(5).  EPA may also change, cancel, restrict, or immediately suspend registered pesticides, pesticide labeling, or particular uses at any time if it appears that the pesticide is causing an unreasonable adverse effect on the environment. 7 U.S.C. § 136d(c). Thus, EPA's registration or reregistration of pesticide products containing warfarin is an "affirmative agency action" subject to consultation under Section 7(a)(2) of the ESA. 16 U.S.C. § 1536(a)(2).

1042.  Because EPA's actions involving pesticide products containing warfarin "may affect" the listed species named in Exhibit A and their designated critical habitat, EPA is required to initiate consultation with the Service.  50 C.F.R. § 402.14(a); 50 C.F.R. § 402.16.

1043.  EPA has not initiated consultation with the Service on the effects of the affirmative authorizations of the use of pesticide products containing warfarin on the affected endangered and threatened species listed in Exhibit A or their designated critical habitat.

1044.  EPA is violating Section 7(a)(2) of the ESA and its implementing regulations by failing to initiate consultation with the Service and by failing to ensure through consultation that its actions regarding pesticide products containing warfarin do not jeopardize the continued existence of endangered and threatened species or destroy or adversely modify designated critical habitat.  16 U.S.C. § 1536(a)(2); 50 C.F.R. Part 402.

1045.  EPA's product reregistrations and new registrations of products containing warfarin did not follow a hearing and are therefore judicially reviewable by the district court under FIFRA § 16(a), 7 § U.S.C. 136n(a).

## THIRTY-FIFTH CLAIM FOR RELIEF

### Violation Of The Endangered Species Act, 16 U.S.C. § 1536(a)(2)

### (EPA's Failure To Consult On Zinc Phosphide)

1046.  All allegations set forth above in this Complaint are incorporated herein by reference.

1047.  EPA "affirmatively authorized" the use of pesticide products containing zinc phosphide through its registration and reregistration of these pesticide products listed in the Complaint.  EPA has discretion to influence or change this underlying agency activity for the benefit of protected species. For example, EPA may only register or reregister a pesticide if its use does not cause an unreasonable adverse effect on the environment. 7 U.S.C. § 136a(c)(5).  EPA may also change, cancel, restrict, or immediately suspend registered pesticides, pesticide labeling, or particular uses at any time if it appears that the pesticide is causing an unreasonable adverse effect on the environment. 7 U.S.C. § 136d(c). Thus, EPA's registration or reregistration of pesticide products containing zinc phosphide is an "affirmative agency action" subject to consultation under Section 7(a)(2) of the ESA. 16 U.S.C. § 1536(a)(2).

1048.  Because EPA's actions involving pesticide products containing zinc phosphide "may affect" the listed species named in Exhibit A and their designated critical habitat, EPA is required to initiate consultation with the Service.  50 C.F.R. § 402.14(a); 50 C.F.R. § 402.16.

1049.  EPA has not initiated consultation with the Service on the effects of the affirmative authorizations of the use of pesticide products containing zinc phosphide on the affected endangered and threatened species listed in Exhibit A or their designated critical habitat.

1050.  EPA is violating Section 7(a)(2) of the ESA and its implementing regulations by failing to initiate consultation with the Service and by failing to ensure through consultation that its actions regarding pesticide products containing zinc phosphide do not jeopardize the continued existence of endangered and threatened species or destroy or adversely modify designated critical habitat.  16 U.S.C. § 1536(a)(2); 50 C.F.R. Part 402.

1051.  EPA's product reregistrations and new registrations of products containing zinc phosphide did not follow a hearing and are therefore judicially reviewable by the district court under FIFRA § 16(a), 7 § U.S.C. 136n(a).

### THIRTY-SIXTH CLAIM FOR RELIEF

### Violation Of The Endangered Species Act, 16 U.S.C. § 1536(a)(2)

### (EPA's Failure To Reinitiate Consultation On Dazomet)

1052.  All allegations set forth above in this Complaint are incorporated herein by reference.

1053.  In 1989, EPA consulted with the Services regarding dazomet, and a Biological Opinion was issued.

1054.  As discussed above, EPA retains discretionary involvement and control over dazomet, and this discretion can be used for the benefit of ESA protected species.

1055.  In addition, as discussed above, a trigger for reinitiation of consultation has occurred in regard to dazomet.

1056.  Despite the occurrence of a trigger, EPA has not reinitiated consultation with the Service.

1057.  EPA is violating Section 7(a)(2) of the ESA and its implementing regulations by failing to reinitiate consultation with the Service and by failing to ensure through consultation that its actions

1   regarding dazomet do not jeopardize the continued existence of endangered and threatened species or
2   destroy or adversely modify designated critical habitat.  16 U.S.C. § 1536(a)(2); 50 C.F.R. Part 402.

3       1058.  EPA's failure to reinitiate consultation constitutes a violation of the ESA within the
4   meaning of the ESA's citizen suit provision, 16 U.S.C. § 1540(g).

5       1059.  In the alternative, because the trigger for reinitiation of consultation did not follow a
6   hearing, this claim is judicially reviewable by the district court under FIFRA § 16(a), 7 § U.S.C.
7   136n(a).

8                        **THIRTY-SEVENTH CLAIM FOR RELIEF**

9               **Violation Of The Endangered Species Act, 16 U.S.C. § 1536(a)(2)**

10              **(EPA's Failure To Reinitiate Consultation On Malathion)**

11      1060.  All allegations set forth above in this Complaint are incorporated herein by reference.

12      1061.  In 1989, EPA consulted with the Services regarding malathion, and a Biological Opinion
13  was issued.

14      1062.  As discussed above, EPA retains discretionary involvement and control over malathion,
15  and this discretion can be used for the benefit of ESA protected species.

16      1063.  In addition, as discussed above, a trigger for reinitiation of consultation has occurred in
17  regard to malathion.

18      1064.  Despite the occurrence of a trigger, EPA has not reinitiated consultation with the
19  Service.

20      1065.  EPA is violating Section 7(a)(2) of the ESA and its implementing regulations by failing
21  to reinitiate consultation with the Service and by failing to ensure through consultation that its actions
22  regarding malathion do not jeopardize the continued existence of endangered and threatened species or
23  destroy or adversely modify designated critical habitat.  16 U.S.C. § 1536(a)(2); 50 C.F.R. Part 402.

24      1066.  EPA's failure to reinitiate consultation constitutes a violation of the ESA within the
25  meaning of the ESA's citizen suit provision, 16 U.S.C. § 1540(g).

26      1067.  In the alternative, because the trigger for reinitiation of consultation did not follow a
27  hearing, this claim is judicially reviewable by the district court under FIFRA § 16(a), 7 § U.S.C.
28  136n(a).

**THIRTY-EIGHTH CLAIM FOR RELIEF**

**Violation Of The Endangered Species Act, 16 U.S.C. § 1536(a)(2)**

**(EPA's Failure To Reinitiate Consultation On Permethrin)**

1068.  All allegations set forth above in this Complaint are incorporated herein by reference.

1069.  In 1989, EPA consulted with the Services regarding permethrin, and a Biological Opinion was issued.

1070.  As discussed above, EPA retains discretionary involvement and control over permethrin, and this discretion can be used for the benefit of ESA protected species.

1071.  In addition, as discussed above, a trigger for reinitiation of consultation has occurred in regard to permethrin.

1072.  Despite the occurrence of a trigger, EPA has not reinitiated consultation with the Service.

1073.  EPA is violating Section 7(a)(2) of the ESA and its implementing regulations by failing to reinitiate consultation with the Service and by failing to ensure through consultation that its actions regarding permethrin do not jeopardize the continued existence of endangered and threatened species or destroy or adversely modify designated critical habitat.  16 U.S.C. § 1536(a)(2); 50 C.F.R. Part 402.

1074.  EPA's failure to reinitiate consultation constitutes a violation of the ESA within the meaning of the ESA's citizen suit provision, 16 U.S.C. § 1540(g).

1075.  In the alternative, because the trigger for reinitiation of consultation did not follow a hearing, this claim is judicially reviewable by the district court under FIFRA § 16(a), 7 § U.S.C. 136n(a).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment providing the following relief:

1.       Declare that EPA is violating Section 7(a)(2) of the ESA by failing to consult with the Service concerning effects of pesticide products on the endangered and threatened species and critical habitats;

2.      Declare that EPA is violationg Section 7(a)(2) of the ESA by failing to reinitiate consulation with the Service concerning effects of dazomet, malathion, and permethrin on endangered and threatened species and critical habitats;

3.      Order EPA to begin or reinitiate consultation pursuant to Section 7(a)(2) of the ESA on the effects of pesticide products identified herein on endangered and threatened species and critical habitats that may be affected in an expeditious fashion and by a date certain;

4.      Vacate, set aside, and enjoin EPA's authorization of pesticide uses that may result in pesticides entering occupied habitat or designated critical habitat of endangered and threatened species until the consultation process has been completed and EPA is in compliance with Section 7(a)(2);

5.      Award Plaintiffs' costs, including reasonable attorneys' fees and expert witness fees; and

6.      Grant Plaintiffs such additional and further relief as the Court may deem just and appropriate.

Respectfully submitted this 19th day of September 2017,

/s/ Stephanie M. Parent
Stephanie M. Parent (OR Bar No. 925908)*
Center for Biological Diversity
PO Box 11374
Portland, OR 97211-0374
(971) 717-6404
sparent@biologicaldiversity.org

Justin Augustine (CA Bar No. 235561)
Jennifer Loda (CA Bar No. 284889)
Center for Biological Diversity
1212 Broadway
Suite 800
Oakland, CA 94612
(415) 436-9682 ext. 302
Fax: (415) 436-9683
jaugustine@biologicaldiversity.org
jloda@biological diversity.org

Collette L. Adkins  (MN Bar No. 035059X)*
Center for Biological Diversity
P.O. Box 595
Circle Pines, MN  55014-0595
Tel: (651) 955-3821
Fax: (415) 436-9683
cadkins@biologicaldiversity.org

* Granted admission *pro hac vice*