JEFFREY WOOD
Acting Assistant Attorney General
United States Department of Justice
Environment and Natural Resources Division
SETH M. BARSKY, Section Chief
Wildlife and Marine Resources Section
S. JAY GOVINDAN, Assistant Section Chief

BRIDGET KENNEDY McNEIL
Senior Trial Attorney
999 18th St., Suite 370
Denver, CO 80202
Ph: 303-844-1484
bridget.mcneil@usdoj.gov

TRAVIS J. ANNATOYN
Trial Attorney
Benjamin Franklin Station, P.O. Box 7611
Washington, D.C. 20044-7611
Ph: 202-514-5243
travis.annatoyn@usdoj.gov

*Attorneys for Federal Defendants*

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, *et al.*, | CASE NO. NO. 3:11-CV-293-JCS |
| Plaintiffs, | |
| v. | **FEDERAL DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS** |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, *et al.*, | Date: March 23, 2018 |
| Defendants, | Time: 9:30 a.m. |
| and | Location: Courtroom G, 15th Floor |
| CROPLIFE AMERICA, *et al.*, | |
| Intervenor-Defendants. | |

## NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE that on Friday, March 23, 2018, at 9:30 a.m., or as soon thereafter as counsel may be heard, Federal Defendants, the United States Environmental Protection Agency, *et al.*, by and through undersigned counsel, will bring for hearing their Motion to Dismiss in the Courtroom of the Honorable Joseph C. Spero, United States Magistrate Judge, U.S. District Court for the Northern District of California, San Francisco Division, Courtroom G - 15th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102-1301.

Pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(1), Federal Defendants hereby move to dismiss the Third Amended Complaint (ECF No. 259) for lack of subject matter jurisdiction and failure to state a claim for which relief can be granted. In support of this Motion, Federal Defendants rely upon the enclosed Memorandum of Points and Authorities, the proposed order accompanying this Motion, the pleadings on file in this action, and such additional matters that the Court may entertain, including oral argument, at the time of the hearing on this motion.

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT
OF FEDERAL DEFENDANTS' MOTION TO DISMISS**

## TABLE OF CONTENTS

PAGE

INTRODUCTION ................................................................................................ 1

I.   BACKGROUND ...................................................................................... 2

   A.   The Federal Insecticide, Fungicide, and Rodenticide Act ............................. 2

      1.   The "Reregistration" Program ................................................. 3

      2.   Registration Review ............................................................. 3

      3.   Relevant Judicial Review of FIFRA Actions ............................... 5

   B.   The Endangered Species Act ............................................................ 5

   C.   Procedural History ....................................................................... 6

   D.   The Third Amended Complaint ......................................................... 9

II.   STANDARDS OF REVIEW ...................................................................... 10

   A.   Federal Rule of Civil Procedure 12(b)(1) .............................................. 10

   B.   Federal Rule of Civil Procedure 12(b)(6) .............................................. 11

III.   ARGUMENT ........................................................................................ 11

   C.   Plaintiffs Have Not Alleged Standing To Challenge Any Identifiable
       Agency Action ............................................................................ 11

      1.   Plaintiffs Have Not Alleged An Injury In Fact From Any Of The
         Thousands Of Agency Actions Challenged In Their Third Amended
         Complaint ....................................................................... 11

      2.   Plaintiffs Have Alleged No Facts Linking Their Asserted Injuries To
         Their Vague And Sweeping Request For Relief ............................. 15

   B.   The Court Lacks Jurisdiction Over Actions Post-Dating the Notice
       Letters. .................................................................................... 16

      1.   The Notice Requirement is Mandatory and Jurisdictional ................. 17

      2.   Anticipatory or Prospective Notice Does Not Comply with the
         Statute ........................................................................... 18

   C.   Newly-Added Actions Taken Prior to July 13, 2011 Are Barred. ................. 19

      1.   For Failure to Consult Claims Carried Over from the Second Amended
         Complaint, the Statute of Limitations Bars the Inclusion of

Newly-Challenged Product Actions predating July 13, 2011.................................... 19

    2.    For the Six New Failure to Consult Claims, the Statute of Limitations
Bars Challenges to Actions Taken Prior to July 13, 2011. ........................................ 22

CONCLUSION............................................................................................................. 23

MEM. ISO FED. DEFENDANTS' MOTION TO DISMISS          U.S. Department of Justice
Case No. 3:11-cv-00293-JCS          Environment & Natural Resources Division
Washington, D.C. 20044-7611

## TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE**

*All. for the Wild Rockies v. U.S. Dep't of Agric.*,
    772 F.3d 592 (9th Cir. 2014) ............................................................ 19

*Am. Rivers v. U.S. Army Corp. of Eng'rs*,
    2004 WL 2905281 (D. Minn. Dec. 10, 2004) ................................... 18

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ........................................................................... 11

*Baker v. United States*,
    722 F.2d 517 (9th Cir. 1983) ............................................................. 12

*Bates v. United Parcel Serv.*,
    511 F.3d 974 (9th Cir. 2007) ............................................................. 12

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ........................................................................... 11

*Chapman v. Pier 1 Imps. (U.S.)*,
    631 F.3d 939 (9th Cir. 2011) ............................................................. 13

*Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau*,
    690 F.2d 1240 (9th Cir. 1982) ........................................................... 20

*CopyTele, Inc. v. E Ink Holdings*,
    962 F. Supp. 2d 1130 (N.D. Cal. 2013) ............................................. 10

*Ctr. for Biological Diversity v. EPA*,
    65 F. Supp. 3d 742 (N.D. Cal. 2014) ................................................. 19

*Ctr. for Biological Diversity v. EPA*,
    847 F.3d 1075 (9th Cir. 2017) .................................................. 9, 19, 21

*Ctr. for Biological Diversity v. EPA*,
    861 F.3d 174 (D.C. Cir. 2017) ........................................................... 13

*Davis v. Fed. Election Comm'n*,
    554 U.S. 724 (2008) .................................................................... 12, 15

*Ellis v. Bradbury*,
    2014 WL 1569271 (N.D. Cal. Apr. 18, 2014) ................................... 18

*Epstein v. Wash. Energy Co.*,
    83 F.3d 1136 (9th Cir. 1996) ............................................................. 11

*Forest Guardians v. U.S. Bureau of Reclamation*,
  462 F. Supp. 2d 1177 (D.N.M. 2006) .................................................................... 18

*Friends of the Earth v. Laidlaw Envtl. Servs.*,
  528 U.S. 167 (2000) ........................................................................................... 12

*Hallstrom v. Tillamook Cty.*,
  493 U.S. 20 (1989) ............................................................................................. 17

*In re Glacier Bay*,
  746 F. Supp. 1379 (D. Alaska 1990) .................................................................. 20

*Karuk Tribe of California v. U.S. Forest Service*,
  681 F.3d 1006 (9th Cir. 2012) .............................................................................. 6

*Kern Cty. Farm Bureau v. Badgley*,
  2002 WL 34236869 (E.D. Cal. Oct. 10, 2002) ................................................... 18

*Klamath-Siskiyou Wildlands Ctr. v. MacWhorter*,
  797 F.3d 645 (9th Cir. 2015) .............................................................................. 17

*Lee v. City of Los Angeles*,
  250 F.3d 668 (9th Cir. 2001) .............................................................................. 11

*Levine v. Vilsack*,
  587 F.3d 986 (9th Cir. 2009) .............................................................................. 16

*Lewis v. Casey*,
  518 U.S. 343 (1996) ........................................................................................... 12

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992) ........................................................................................... 12

*Lujan v. Nat'l Wildlife Fed'n*,
  497 U.S. 871 (1990) ........................................................................................... 15

*Mayle v. Felix*,
  545 U.S. 644 (2005) ........................................................................................... 20

*Miller v. FEC*, 136 S. Ct. 895 (2016) .................................................................... 15

*Meijer, Inc. v. Biovail Corp.*,
  533 F.3d 857 (D.C. Cir. 2008) ........................................................................... 20

*Moden v. U.S. Fish and Wildlife Serv.*,
  281 F. Supp. 2d 1193 (D. Or. 2003) ................................................................... 18

*Morongo Band of Mission Indians v. Cal. State Bd. of Equalization*,
    858 F.2d 1376 (9th Cir. 1988) ........................................................................ 10

*Nat. Res. Def. Council v. Kempthorne*,
    539 F. Supp. 2d 1155 (E.D. Cal. 2008) ......................................................... 18

*Nulankeyutmonen Nkihtaqmikon v. Impson*,
    503 F.3d 18 (1st Cir. 2007) .......................................................................... 10

*Oja v. U.S. Army Corps of Engineers*,
    440 F.3d 1122 (9th Cir. 2006) ...................................................................... 21

*Renal Physicians Ass'n v. U.S. Dep't of Health & Human Servs.*,
    489 F.3d 1267 (D.C. Cir. 2007) .................................................................... 16

*Safe Air for Everyone v. Meyer*,
    373 F.3d 1035 (9th Cir. 2004) ...................................................................... 10

*Salmon Spawning & Recovery All. v. Gutierrez*,
    545 F.3d 1220 (9th Cir. 2008) ................................................................. 15, 16

*Schmier v. U.S. Court of Appeals for Ninth Circuit*,
    279 F.3d 817 (9th Cir. 2002) ........................................................................ 12

*Starr v. Baca*,
    652 F.3d 1202 (9th Cir. 2011) ...................................................................... 11

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009) ...................................................................................... 14

*Sw. Ctr. for Biological Diversity v. U.S. Bureau of Reclamation*,
    143 F.3d 515 (9th Cir. 1998) ................................................................... 17, 19

*Swanson Grp. Mfg. LLC v. Jewell*,
    790 F.3d 235 (D.C. Cir. 2015) ...................................................................... 16

*The Constitution Party of Pa. v. Cortes*,
    433 F. App'x 89 (3d Cir. 2011) .................................................................... 16

*Turtle v. Castle Records Inc.*,
    2005 WL 1159419 (N.D. Cal. May 17, 2005) .............................................. 20

*United States ex rel. Lee v. Colleges*,
    2012 WL 12878361 (C.D. Cal. Apr. 19, 2012) ....................................... 21, 22

*United States v. Ritchie*,
    342 F.3d 903 (9th Cir. 2003) ........................................................................ 11

*Wagner v. Fed. Election Comm'n*,
  793 F.3d 1 (D.C. Cir. 2015) ........................................................................ 15

*Whitmore v. Arkansas*,
  495 U.S. 149 (1990) .................................................................................... 12

*WildEarth Guardians v. U.S. Dep't of Agric.*,
  795 F.3d 1148 (9th Cir. 2015) ..................................................................... 12

*Williams v. Boeing Co.*,
  517 F.3d 1120 (9th Cir. 2008) ............................................................... 20, 21

*Wolfe v. Strankman*,
  392 F.3d 358 (9th Cir. 2004) ....................................................................... 10

## STATUTES

7 U.S.C. § 136a(a) ............................................................................................. 2

7 U.S.C. §§ 136a(c)(3)(A) .................................................................................. 2

7 U.S.C. § 136a(c)(5) ......................................................................................... 2

7 U.S.C. § 136a(g)(1)(A)(iii) .............................................................................. 3

7 U.S.C. § 136n(a) ............................................................................................. 5

7 U.S.C. § 136(u) ............................................................................................... 2

16 U.S.C. § 1533 ................................................................................................ 5

16 U.S.C. § 1536(a)(2) .................................................................................... 5, 6

16 U.S.C. § 1540(g)(1)(A) ................................................................................ 16

16 U.S.C. § 1540(g)(2)(A) ................................................................................ 17

16 U.S.C. § 1540(g)(2)(A)(i) ............................................................................ 18

28 U.S.C. § 2401(a) ................................................................................ 7, 20, 22

## FEDERAL REGULATIONS

40 C.F.R. § 155.46 .............................................................................................. 4

40 C.F.R. § 155.50 .............................................................................................. 3

40 C.F.R. § 155.53(a) .......................................................................................... 4

50 C.F.R. §§ 17.11 .............................................................................................. 5

50 C.F.R. § 402.02 .............................................................................................. 5

50 C.F.R. § 402.14 ...................................................................................................... 5, 6

50 C.F.R. §§ 402.13-402.14 .......................................................................................... 5

65 Fed. Reg. 14,200 (Mar. 15, 2000) ........................................................................... 3

69 Fed. Reg. 26,819 (May 14, 2004) ........................................................................... 3

69 Fed. Reg. 47,732 (Aug. 5, 2004) ............................................................................. 2

# INTRODUCTION

After the Ninth Circuit reinstated Plaintiffs' challenges to specific product registration and reregistration actions, the parties agreed that Plaintiffs should be allowed to amend their complaint "[i]n light of the passage of more than three years." *See* ECF No. 251 at 2. But instead of merely updating their pleadings to reflect changed circumstances (such as the completion of product reregistration for active ingredients that had been the subject of a "failure to reinitiate" claim), Plaintiffs' fourth complaint seeks to drastically expand the scope of this already unwieldy litigation. If the breadth of Plaintiffs' prior complaint – about 500 actions – was prohibitively broad, then the new complaint presents a wholly unworkable leviathan: Plaintiffs have swelled the failure-to-consult claims by six more active ingredients and over 1,500 new product actions.

While the Environmental Protection Agency ("EPA") lacks the resources – and, under the Federal Rules of Civil Procedure, the obligation – to have investigated each of the 2,000-plus actions vaguely pled in Plaintiffs' Third Amended Complaint ("TAC"), glaring errors are readily apparent. Plaintiffs' most sweeping error is the total failure to allege standing to sue for even a single claim for relief, justifying their request for a massive judicial inquiry and innumerable, nationwide injunctions by asserting only general interests in pesticide active ingredients, *i.e.*, interests untethered to even a single species' habitat or a single pesticide *product*. This lack of even a minimal effort to allege standing may be a byproduct of the sheer number of claims in the amended pleading, but Plaintiffs' litigation strategy does not somehow waive the jurisdictional requirements that every plaintiff must satisfy. Plaintiffs' remaining errors are likewise compounded by the sheer scale of the complaint. Hundreds of actions post-date Plaintiffs' last 60-day notice letter, thereby flouting a firm jurisdictional requirement of the Endangered Species Act ("ESA") that Plaintiffs have had every opportunity to satisfy. Similarly, Plaintiffs' four-fold expansion of the actions at issue runs afoul of the six-year statute of limitations, as over 1,300 actions transpired more than six years before Plaintiffs lodged the Third Amended Complaint. Accordingly, Federal Defendants respectfully request that the latest complaint be dismissed for lack of subject matter jurisdiction and failure to state a claim for which relief can be granted.

# I.     BACKGROUND

## A.     The Federal Insecticide, Fungicide, and Rodenticide Act

FIFRA is the primary statute under which EPA regulates the distribution, sale, and use of pesticides. FIFRA defines a "pesticide" as "any substance or mixture of substances intended for preventing, destroying, repelling, or mitigating any pest …" 7 U.S.C. § 136(u). When a pesticide is sold or distributed, it is generally referred to as a "pesticide product." FIFRA generally prohibits the sale or distribution of a pesticide product unless it has first been "registered" by EPA. 7 U.S.C. § 136a(a). "EPA issues a license, referred to as a 'registration,' for each specific pesticide product allowed to be marketed; the registration approves sale of a product with a specific formulation, in a specific type of package, and with specific labeling limiting application to specific uses." 69 Fed. Reg. 47,732, 47,733 (Aug. 5, 2004). FIFRA Section 3(c)(5), "Approval of registration," provides that EPA "shall register a pesticide if [the agency] determines that …

(A) its composition is such as to warrant the proposed claims for it;

(B)  its labeling and other material required to be submitted comply with the requirements of this subchapter;

(C)  it will perform its intended function without unreasonable adverse effects on the environment; and

(D) when used in accordance with widespread and commonly recognized practice it will not generally cause unreasonable adverse effects on the environment.

7 U.S.C. § 136a(c)(5). Also, under certain circumstances, *e.g.*, a pesticide product is substantially similar or identical to a currently registered product, and if EPA finds that the pesticide meets the standard for registration, but there are outstanding data requirements, the Agency may grant a "conditional" registration pursuant to FIFRA Section 3(c)(7). *Id.* § 136a(c)(7).

As this Court recognized, registration follows a detailed process. ECF No. 222 at 4. EPA receives and reviews the applications for registration actions, including any required supporting data, and then determines, "as expeditiously as possible," whether the pesticide meets the applicable standards for registration. 7 U.S.C. §§ 136a(c)(3)(A), (c)(5), (c)(7). EPA is required to give expedited review to applications for registration of an "end-use pesticide that, if registered

as proposed, would be identical or substantially similar in composition and labeling to a currently-registered pesticide identified in the application," or that would only differ in ways "that would not significantly increase the risk of unreasonable adverse effects on the environment." *Id.* § 136a(c)(3)(B).

### 1. The "Reregistration" Program

In 1988, Congress enacted FIFRA Section 4, which mandates that EPA "reregister ... each registered pesticide containing any active ingredient contained in any pesticide first registered before November 1, 1984," pursuant to a five-phase process. *See id.* § 136a–1(a); H.R. Rep. No. 100–939, 29-30, 139 (1988), as reprinted in 1988 U.S.C.C.A.N. 3474, 3478–79, 3529. In phase five of this process, EPA made a determination as to each active pesticide ingredient's eligibility for reregistration, termed Reregistration Eligibility Decision ("RED"). *Id.* §§ 136a–1(g)(2). EPA then obtained any additional product-specific data regarding particular pesticides prior to determining "whether to reregister a pesticide by determining whether such pesticide meets the requirements of section 136a(c)(5)" of FIFRA. *Id.* §§ 136a–1(g)(2)(B)(i), 136a–1(g)(2)(C).

EPA started a pilot program in 1998 to include public participation with respect to the reregistration of organophosphate pesticides and, in 2000, EPA solicited public comment to expand the pilot program for reregistration of all pesticides. *See* 65 Fed. Reg. 14,200 (Mar. 15, 2000). In 2004, EPA announced its program to provide opportunities for public comment with respect to pesticide reregistration to "increase transparency and stakeholder involvement in the development of pesticide risk assessments and risk management decisions." 69 Fed. Reg. 26,819 (May 14, 2004).

### 2. Registration Review

Congress amended FIFRA again in 1996 to establish the program of "Registration Review," which requires EPA to "complete the registration review of each pesticide or pesticide case" every 15 years. *See* 7 U.S.C. § 136a(g)(1)(A)(iii), (iv). EPA's implementing regulations established a procedure for registration review that starts with the creation of "a docket for each registration review case" that is open to the public. 40 C.F.R. § 155.50. The docket contains

"information that will assist the public in understanding the types of information and issues" that EPA "may consider in the course of the registration review," including "[r]isk assessment documents." *Id.* § 155.50(a)(3). EPA publishes a notice in the Federal Register announcing the docket, and establishes at least a 60–day comment period in which "interested persons may identify any additional information they believe" should be considered in the course of registration review. *Id.* § 155.50(b).

In conducting the registration review, EPA assesses "any changes that may have occurred since the Agency's last registration decision in order to determine ... whether the pesticide still satisfies the FIFRA standard for registration." 40 C.F.R. § 155.53(a). EPA decides "whether any new data or information on the pesticide ... warrant conducting a new risk assessment or a new risk/benefit assessment." *Id.* EPA also considers "whether any new data or information regarding an individual pesticide product, ... such as data or information about an inert ingredient in the pesticide product or other information or data relating to the composition, labeling or use of the pesticide product, warrant additional review of a pesticide product's registration." *Id.* EPA publishes its proposed registration review decision and the bases for that decision in the pesticide's registration review docket. *Id.* § 155.58(a). EPA then provides a comment period of at least 60 days. *Id.* "After considering any comments on the proposed decision," the EPA issues its registration review decision or interim decision. *Id.* § 155.58(c).

The regulations further provide that EPA "may determine that there is no need to reconsider a previous decision that a pesticide satisfies the standard of registration in FIFRA." 40 C.F.R. § 155.46. "In such cases, instead of establishing a pesticide registration review case docket as described in § 155.50, the Agency may propose that ... no further review will be necessary." *Id.* Prior to the decision to not conduct a registration review, the EPA provides notice and at least a 60–day opportunity for public comment. *See id.* As of July 1, 2017, there are about 725 registration review cases that include approximately 1,140 pesticide active ingredients;[1]

---

[1] Pesticide cases may be related by chemical class or structure, mode of action (or how the pesticide works), use, or for other reasons.

almost 600 cases are in active review and over 200 registration review interim and final

decisions have been completed.[2]

### 3. Relevant Judicial Review of FIFRA Actions

Judicial review of EPA's actions under FIFRA is governed by Section 16 of the statute,

which provides, in relevant part:

> (a) *District court review*.  Except as otherwise provided in this subchapter, the refusal of the Administrator to cancel or suspend a registration or to change a classification not following a hearing and other final actions of the Administrator not committed to the discretion of the Administrator by law are judicially reviewable by the district courts of the United States.

7 U.S.C. § 136n(a). For those orders following a public hearing, a party to the proceedings may

obtain judicial review in the courts of appeal if they file suit within 60 days after the entry of

such order. *Id.* § 136n(b).

### B. The Endangered Species Act

The ESA provides for the listing of species as threatened or endangered.  16 U.S.C. §

1533. The Secretaries of Commerce and the Interior share responsibility for implementing the

ESA. The Secretary of Commerce has responsibility for listed marine species (including

anadromous salmonids) and administers the ESA through the National Marine Fisheries Service

("NMFS"). The Secretary of the Interior is responsible for listed terrestrial and inland fish

species and administers the ESA through the U.S. Fish & Wildlife Service ("FWS"). *See id.* §

1532(15); 50 C.F.R. §§ 17.11, 402.01(b).

ESA Section 7 directs each federal agency to ensure, in consultation with FWS or NMFS

(the "consulting agency"), that "any <u>action</u> authorized, funded, or carried out by such agency …

is not likely to jeopardize the continued existence of" any listed species or destroy or adversely

modify designated critical habitat. 16 U.S.C. § 1536(a)(2) (emphasis added); *see* 50 C.F.R. §

402.02 (defining "action" for consultation purposes). If the agency proposing the relevant action

("action agency") determines that the action "may affect" listed species or critical habitat, the

---

[2] https://www.epa.gov/pesticide-reevaluation/registration-review-process (last visited Nov. 15, 2017).

1  action agency must pursue either informal or formal consultation. 50 C.F.R. §§ 402.13-402.14.

2  Formal consultation is required unless the action agency determines, with the consulting

3  agency's written concurrence, that the proposed action is "not likely to adversely affect" a listed

4  species or critical habitat. *Id.* §§ 402.14(b)(1), 402.13(a). If formal consultation is required, the

5  consulting agency must prepare a biological opinion stating whether the proposed action is likely

6  to "jeopardize the continued existence of" any listed species or destroy or adversely modify

7  critical habitat. 16 U.S.C. § 1536(a)(2); 50 C.F.R. § 402.14.

8      After completion of consultation, the action agency may be required to reinitiate

9  consultation if the relevant action has not been completed, the action agency retains discretionary

10  "involvement or control over the action," and one of the four triggers occurs. *Id.* § 402.16.

11      **C.    Procedural History**

12      Plaintiffs filed their initial Complaint on January 20, 2011, advancing a single claim with

13  two components. First, Plaintiffs alleged that EPA violated its duty to consult regarding 382

14  pesticide active ingredients. ECF No. 1, ¶¶ 1-3, 142-144. Plaintiffs did not identify any specific

15  registration action pertaining to each active ingredient allegedly taken by EPA in violation of the

16  duty to consult. Instead, Plaintiffs alleged that "EPA retains ongoing discretionary control and

17  involvement over all of these pesticides, which constitutes 'agency action' subject to

18  consultation." *Id.* ¶ 141. Second, Plaintiffs alleged that EPA violated its duty to reinitiate

19  consultation on various active ingredients addressed in prior ESA consultations and biological

20  opinions issued by FWS in 1989 and 1993. *Id.* ¶¶ 133, 135-37.

21      Federal Defendants and Intervenor-Defendants moved to dismiss the Complaint under

22  Federal Rules of Civil Procedure 12(b)(6) and 12(b)(1). By Order dated April 22, 2013 (ECF No.

23  157), the Court granted the motions while allowing Plaintiffs leave to file an amended complaint.

24  With respect to Plaintiffs' "failure to consult" claim, the Court held that Plaintiffs had failed to

25  plead both elements of the two-part inquiry for "agency action" under ESA Section 7, as set forth

26  in *Karuk Tribe of California v. U.S. Forest Service*, 681 F.3d 1006, 1021 (9th Cir. 2012) (*en*

27  *banc*). Specifically, the Court held that Plaintiffs had not identified a specific, affirmative agency

28  act that allegedly triggered the ESA consultation duty for each of the 382 pesticide active

ingredients. *See* ECF No. 157 at 15-16. The Court rejected Plaintiffs' argument that EPA's alleged discretionary oversight of pesticide registrations constituted "agency action" because, under *Karuk Tribe*, "[m]ere discretionary control and involvement will not suffice." *Id.* at 15. The Court held that "Plaintiffs must allege a separate ESA claim corresponding to an affirmative act with respect to each of the 382 pesticides." *Id.* at 15.

The Court recognized that the requirement of identifying the allegedly unlawful agency action for each active ingredient "has far-reaching implications with regard to Plaintiffs' allegations of standing and subject matter jurisdiction." *Id.* at 15-16. For example, the Court held that any FIFRA action taken after notice and the opportunity for public comment would be reviewable exclusively in the courts of appeals under FIFRA Section 16(b), *see id.* at 20-32, and that the question of subject matter jurisdiction "will be addressed based on the allegations of the specific affirmative acts in any amended complaint." *Id.* at 31. The Court likewise rejected Plaintiffs' argument that their claims are exempt from the statute of limitations "because [Plaintiffs] are challenging 'ongoing agency action.'" *Id.* at 32. As the Court explained, "in light of the Ninth Circuit's decision in *Karuk Tribe*, Plaintiffs cannot merely identify an 'ongoing agency action' based on discretionary control or authority. Rather, Plaintiffs must identify an affirmative act." *Id.* The Court held that the six-year statute of limitations in 28 U.S.C. § 2401(a) applies and that any claims based on affirmative agency actions occurring prior to January 20, 2005, are time barred. *Id.* at 32-33.

Finally, the Court found that Plaintiffs' "failure to reinitiate" claim was too general, merely reciting the elements of the claim without alleging specific facts showing that the triggers for reinitiation had been met. *Id.* at 16-17, 32. The Court directed Plaintiffs to "allege with greater specificity the facts giving rise to the EPA's duty to reinitiate consultation regarding each of the pesticides and species addressed in the 1989 and 1993 Biological Opinions" and to "address the [reinitiation] factors." *Id.* at 17.

On June 5, 2013, Plaintiffs filed a 437-page Amended Complaint purporting to state 74 claims for relief relating to 50 pesticide active ingredients. Despite its length, the Amended Complaint did not provide the basic information required by the Dismissal Order, including the

identity of the specific EPA action pertaining to each active ingredient allegedly taken in violation of the duty to consult. Accordingly, Federal Defendants and Defendant-Intervenors moved for a more definite statement under Rule 12(e).

By Order dated November 25, 2013, ECF No.192, the Court granted the motions in part and denied them in part. For the failure-to-consult claims, the Court held that the Amended Complaint still did not adequately identify the specific affirmative agency action or actions for each pesticide active ingredient allegedly triggering the duty to consult. *Id.* at 8-9. The Court emphasized that "clear identification of specific affirmative act or acts that trigger the duty to consult is of the utmost importance" because "several other questions depend on the affirmative act identified, including whether the ESA claim is timely, whether Plaintiffs have standing to bring the claim, and whether this Court has jurisdiction over that particular claim." *Id.* at 8. Accordingly, the Court held that "in an amended complaint, for each cause of action encompassing one or more failure-to-consult claims, Plaintiffs shall provide an exhaustive list of every affirmative act that triggered the duty to consult. Plaintiffs shall also provide the date of such affirmative act to the best of their knowledge." *Id.* at 10. With respect to Plaintiffs' reinitiation claims, the Court denied the motions for a more definite statement. *Id.* at 10-11.

On January 21, 2014, Plaintiffs filed the Second Amended Complaint ("SAC"), again advancing 74 claims over 50 pesticide active ingredients. Federal Defendants and Defendant-Intervenors moved to dismiss the SAC. On August 13, 2014, the Court granted the motion in part and denied it in part. ECF No. 222. The Court dismissed challenges to those REDs that had received notice and comment, finding that such action fell under the exclusive review provision of FIFRA Section 16(b). *Id.* at 17. The Court then affirmed its prior determination that the agency's "continued discretionary control and involvement in this pesticide's registration" does not constitute an "ongoing agency action" triggering the duty to consult. *Id.* at 17-19. The Court next rejected any contention that EPA's completion of product reregistration for products containing the active ingredients –as opposed to the actual registration actions – is an action that would trigger a duty to consult. *Id.* at 20. With respect to specific product actions, the Court found that Plaintiffs had sufficiently alleged affirmative agency actions. However, because the

Second Amended Complaint did not include any allegations that the product reregistrations raised new issues regarding the EPA's compliance with ESA Section 7 that could not have been raised in a timely challenge to the relevant active ingredient RED, the Court dismissed the product actions, with the opportunity to amend. *Id.* at 28. Finally, the Court dismissed the failure-to-reinitiate claims for the active ingredients alleged to have completed product registration, which superseded the actions on which EPA initially consulted, leaving no current action upon which to reinitiate consultation. *Id.* at 38.

Rather than amend their complaint, Plaintiffs requested that the Court certify the dismissal of the failure-to-consult claims in order to appeal. ECF No. 224. On appeal, the Ninth Circuit affirmed the dismissal of the first three categories of each claim – the challenges to the REDs, the allegation that continued discretionary control triggered consultation, and that the completion of product reregistration triggered consultation. *Ctr. for Biological Diversity v. EPA*, 847 F.3d 1075, 1086-91 (9th Cir. 2017). However, the Court reversed the dismissal of the product actions, agreeing that pesticide product reregistration is an affirmative agency action but rejecting the finding that the challenges are barred by the collateral attack doctrine. *Id.* at 1093-94. The Court held that, at the motion to dismiss stage, Plaintiffs were not required to allege facts specific to each pesticide product demonstrating how each product reregistration raises new ESA compliance issues. *Id.* at 1093. Accordingly, the Court reversed the dismissal of "all category four sub-claims alleged in Claims for Relief one through thirty-one in which the reregistration took place after January 20, 2005, and in which there was no public notice and comment in the Federal Register" and remanded for further proceedings. *Id.* at 1094.

**D.    The Third Amended Complaint**

Pursuant to the case management schedule agreed upon by the parties, Plaintiffs moved to file the Third Amended and First Supplemental Complaint on July 13, 2017. ECF No. 259. Plaintiffs now assert 35 failure-to-consult claims.[3] For each claim, Plaintiffs assert that EPA's

---

[3] As compared to the Second Amended Complaint, Plaintiffs eliminated the active ingredients of alachlor and oxydemeton-methyl and have asserted new failure-to-consult claims for six active ingredients that were included in the Second Amended Complaint only as failure-to-reinitiate claims (brodifacoum, dimethoate, mancozeb, simazine, warfarin, and zinc phosphide).

registration or reregistration of pesticide products listed in the complaint are affirmative agency actions triggering ESA Section 7 consultation. However, as compared to the Second Amended Complaint, which identified roughly 497 product actions, the Third Amended Complaint exponentially expands the scope of the case by identifying 2,216 product actions, ranging from 2005 until 2017. Plaintiffs also assert three failure-to-reinitiate consultation claims for active ingredients that have not yet completed product reregistration. Plaintiffs seek declaratory as well as injunctive relief for these claims, requesting that the Court order EPA to begin or reinitiate ESA Section 7 consultation by a date certain and to vacate EPA's "authorization of pesticide uses that may result in pesticides entering" the habitat of listed species.

## II.     STANDARDS OF REVIEW

### A.     Federal Rule of Civil Procedure 12(b)(1)

A motion to dismiss for lack of jurisdiction under Federal Rule of Civil Procedure 12(b)(1) may take the form of a "facial attack" or a "factual attack." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). Where, as here, a facial attack is brought, "the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id.* "Whether subject matter jurisdiction exists therefore does not depend on resolution of a factual dispute, but rather on the allegations in [the] complaint." *Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). Although EPA is the movant here, it is not EPA's burden to demonstrate that jurisdiction is lacking. Rather, Plaintiffs bear the burden of "clearly alleging definite facts to demonstrate that jurisdiction is proper," *Nulankeyutmonen Nkihtaqmikon v. Impson*, 503 F.3d 18, 25 (1st Cir. 2007) (citation omitted), and where they fail to do so, the Court "has no power to do anything with the case except dismiss." *Morongo Band of Mission Indians v. Cal. State Bd. of Equalization*, 858 F.2d 1376, 1380 (9th Cir. 1988) (citation omitted). "A court may consider not only the allegations in the complaint in a facial attack but also documents attached to the complaint and judicially noticeable facts." *CopyTele, Inc. v. E Ink Holdings,* 962 F. Supp. 2d 1130, 1135-36 (N.D. Cal. 2013) (citations omitted).

**B.      Federal Rule of Civil Procedure 12(b)(6)**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when there are sufficient factual allegations to draw a reasonable inference that the defendants have committed the violation alleged. While a court "must take all of the factual allegations in the complaint as true," it is "not bound to accept as true a legal conclusion couched as a factual allegation," *id.* (quoting *Twombly*, 550 U.S. at 555), and a "formulaic recitation of the elements of a cause of action" is not enough. *Twombly*, 550 U.S. at 555. Likewise, "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996) (citation omitted). The allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) .

Although a court generally may not consider materials beyond the pleadings, a court may take judicial notice of matters of public record, *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (citation omitted), and may consider documents referenced in a complaint that present no issues of authenticity. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

## III.      ARGUMENT

### A.      Plaintiffs Have Not Alleged Standing To Challenge Any Identifiable Agency Action

#### 1.      Plaintiffs Have Not Alleged An Injury In Fact From Any Of The Thousands Of Agency Actions Challenged In Their Third Amended Complaint

Despite the inclusion of thousands of claims in the Third Amended Complaint, Plaintiffs failed to properly allege standing for even one of the agency actions at issue in this case. The "irreducible constitutional minimum" of standing requires a showing "that (1) the plaintiff suffered an injury in fact, i.e., one that is sufficiently 'concrete and particularized' and 'actual or

imminent, not conjectural or hypothetical,' (2) the injury is 'fairly traceable' to the challenged conduct, and (3) the injury is 'likely' to be 'redressed by a favorable decision.'" *Bates v. United Parcel Serv.*, 511 F.3d 974, 985 (9th Cir. 2007) (*quoting Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). Insofar as Plaintiffs seek to sue on behalf of their members, they must show that one or more "members would otherwise have standing to sue in their own right, the interests at stake are germane to the organization[s'] purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *WildEarth Guardians v. U.S. Dep't of Agric.*, 795 F.3d 1148, 1154 (9th Cir. 2015) (*quoting Friends of the Earth v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 181 (2000)). Where, as here, "plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily 'substantially more difficult' to establish." *Defs of Wildlife*, 504 U.S. at 562 (citations omitted).

Plaintiffs bear the burden of demonstrating standing "with the manner and degree of evidence required at the successive stages of the litigation." *Id.* at 561. Although "general factual allegations of injury resulting from the defendant's conduct may suffice" at the pleading stage, *id.*, Plaintiffs must nonetheless "alleg[e] *specific facts* sufficient to satisfy" each element of standing. *Schmier v. U.S. Court of Appeals for Ninth Circuit*, 279 F.3d 817, 821, 823 (9th Cir. 2002) (emphasis added). "The facts to show standing must be clearly apparent on the face of the complaint," *Baker v. United States*, 722 F.2d 517, 518 (9th Cir. 1983) (citation omitted), and "[a] federal court is powerless to create its own jurisdiction by embellishing otherwise deficient allegations of standing." *Whitmore v. Arkansas*, 495 U.S. 149, 155-56 (1990).

Plaintiffs' Third Amended Complaint falls well short of this standard because "standing is not dispensed in gross." *Lewis v. Casey*, 518 U.S. 343, 358 n.6 (1996). To prevent courts from "undertaking tasks assigned to the political branches," *id.* at 357, a plaintiff must adequately allege and ultimately prove the elements of standing "'for each claim he seeks to press' and for 'each form of relief' sought." *Davis v. Fed. Election Comm'n,* 554 U.S. 724, 734 (2008) (citation omitted). Accordingly, this Court has previously instructed Plaintiffs that any valid pleading in this matter must, at a minimum, state a "separate ESA claim in connection with the EPA's

affirmative act with regard to each individual pesticide" *and* "allege facts supporting standing *for each individual claim.*" *Ctr. for Biological Diversity v. EPA*, No. 11-CV-00293-JCS, 2013 WL 1729573, at *12 (N.D. Cal. Apr. 22, 2013) (emphasis added, citations omitted).

Plaintiffs have declined to heed this instruction, offering catch-all allegations of injury that are totally disproportionate to their requested relief. Rather than allege "interests in . . . particular species or geographical area[s] affected by . . . [a] particular pesticide" as this Court has requested, *Ctr. for Biological Diversity*, 2013 WL 1729573, at *12, Plaintiffs' Third Amended Complaint argues – in largely boilerplate language – that Plaintiffs' membership has suffered generalized injuries in fact from each pesticide *active ingredient*. *Compare, e.g.*, TAC ¶¶ 139-147 (alleging harm from 2,4-D salts and ethers to the Puerto Rican crested toad) *with id.* at ¶¶ 374-402 (largely identical allegations of harm to the tan riffleshell from dimethoate). But Plaintiffs may not seek relief against broad, undefined categories of active ingredients, since the Court rejected precisely that theory of pleading when dismissing Plaintiffs' original Complaint.

Because the Third Amended Complaint directs its claims for relief against individual agency actions, Plaintiffs necessarily rely on their ingredient-based allegations of injury to seek injunctive relief vis-à-vis thousands of pesticide products with unique uses, label restrictions, and histories. *See, e.g.*, TAC at 33-47 (listing challenged actions for 2,4-D salts and ethers). On its face, the Third Amended Complaint omits standing allegations for each of these challenges, resting instead on allegations of injury that are ostensibly representative across all challenged products, but that are not obviously or even purportedly tethered to particular agency actions. Nothing in Article III permits such short cuts. *Chapman v. Pier 1 Imps. (U.S.)*, 631 F.3d 939, 954-55 (9th Cir. 2011) (en banc) (dismissing Complaint that "simply identifie[d] alleged . . . violations without connecting the alleged violations to [plaintiffs]"). Indeed, the Third Amended Complaint does not describe even a single "geographical area" in which pesticide products supposedly harm Plaintiffs' membership. ECF No. 157 at 18; *see also Ctr. for Biological Diversity v. EPA,* 861 F.3d 174, 183-84 (D.C. Cir. 2017) (finding standing in FIFRA case where petitioner demonstrated a "geographical nexus" between its membership and challenged action).

While Plaintiffs' standing allegations are insufficiently precise on their face, the practical

disconnect between Plaintiffs' requested relief and their "one size fits all" approach to standing underscores the wisdom of a product-by-product application of Article III in this case. For example, Plaintiffs seek relief against products approved for entirely or nearly-entirely indoor use, including products registered only for use in the manufacture of other pesticide products; *i.e.*, products which are highly unlikely to affect any listed species or interests therein. *See, e.g.*, Exhibit A at 7-8 (label for acephate PCO SP, requiring indoor use or limited exterior use as a perimeter treatment).[4] Other limited-use products, even those approved for outdoor application, have no clear geographical nexus with what the Third Amended Complaint offers as representative standing allegations. *See, e.g.*, Exhibit B at 10-11 (label for Orthene Tobacco Insect Spray, a form of acephate for use only on tobacco farms). And still more products are not merely limited to discrete locales, but are actually designed to *protect* threatened and endangered species. *See* Exhibit C at 3 (label for brodifacoum 25D Conservation, limiting use to "islands" and "vessels" for conservation of protected species). Plaintiffs' failure to explain why they have any stake in these esoteric products – and the concomitant request that Defendants and the Court perform that labor on Plaintiffs' behalf – "make[s] a mockery" of Supreme Court precedent requiring "plaintiff-organizations to make specific allegations establishing that at least one identified member had suffered or would suffer harm" from each challenged action. *Summers v. Earth Island Inst.*, 555 U.S. 488, 498 (2009).

While the Third Amended Complaint's total lack of action-specific standing allegations would foreclose even modest requests for relief, Plaintiffs' failure to adequately allege injury in fact is particularly egregious in light of their request that the Court enjoin specific *uses* of the challenged products, namely any use "that may result in pesticides *entering* occupied habitat or designated critical habitat" for *any* listed species. *See* TAC at 271 (emphasis added). In practice, this request could call on the Court to investigate, supervise, and potentially enjoin hundreds of

---

[4] As a result of the parties' conferences regarding the instant motions, the parties have stipulated to a process by which indoor-use and manufacturing-use products will be dismissed by February 8, 2018. *See* ECF No. 274. However, the dismissal of these actions neither relieves Plaintiffs of their obligation to articulate a link between their memberships and each remaining pesticide product nor supplies evidence of such links. Accordingly, the examples set forth are relevant evidence of Plaintiffs' pleading oversights regardless of the recent stipulation.

thousands (if not millions) of particularized pesticide uses across the nation for years or even decades, a gargantuan task presumptively entrusted to the political branches. *Summers*, 555 U.S. at 493. If such relief is ever compatible with Article III's limitation of the judicial power to "cases" and "controversies," a plaintiff must at least offer particularized – and, in this case, itemized – allegations of injury in proportion to that relief. While such a "product-by-product" or "action-by-action" approach to standing may be "understandably frustrating to . . . organization[s] such as [Plaintiff[s]], which ha[ve] as [their] objective across-the-board protection of [the] Nation's wildlife . . . ," that approach "is the traditional, and remains the normal, mode of operation of the courts." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 894 (1990).

For similar reasons, Plaintiffs have likewise failed to adequately allege injury in fact with respect to their reinitiation claims. Unlike Plaintiffs' challenges to final agency actions, these claims for relief hinge not on individual pesticide products but on active ingredients. But Plaintiffs must nonetheless articulate an injury in fact corresponding to each type of relief sought for these ingredients. *Davis,* 554 U.S. at 734. In this case, however, Plaintiffs seek nationwide injunctive relief against innumerable "uses" of the active ingredients based on allegations of harm to a handful of listed species with discrete, limited ranges, and with no articulated connection to the undefined galaxy of "uses" that Plaintiffs ask this Court to enjoin. *See* TAC ¶ 801 (seeking nationwide injunction vis-à-vis dazomat based upon harm to Alabama cave shrimp); *id.* ¶ 821 (same for malathion and Judge Tait's mussel); *id.* ¶ 736 (permethrin and desert pupfish). Because Plaintiffs have not even alleged that these "uses" present a justiciable case or controversy vis-à-vis Plaintiffs' membership, the Third Amended Complaint's reinitiation claims, like its failure-to-consult claims, should be dismissed for failure to allege an injury in fact. *See, e.g.*, *Wagner v. Fed. Election Comm'n*, 793 F.3d 1, 4-5 (D.C. Cir. 2015), *cert. denied sub nom. Miller v. FEC*, 136 S. Ct. 895 (2016).

### 2. Plaintiffs Have Alleged No Facts Linking Their Asserted Injuries To Their Vague And Sweeping Request For Relief

Beyond alleging specific facts that, taken as true, would demonstrate an injury in fact, Plaintiffs must also allege facts showing that their injury is caused by Defendants and is

redressable by a favorable order from this Court. Because Plaintiffs claim that Defendants have failed to follow the ESA's *procedures*, this requirement may in some cases be less stringent: a successful "showing of procedural injury lessens a plaintiff's burden on the last two prongs of the Article III standing inquiry." *Salmon Spawning & Recovery All. v. Gutierrez*, 545 F.3d 1220, 1226 (9th Cir. 2008). But the causation and redressability requirements are not "toothless in procedural injury cases," and the Third Amended Complaint does not adequately allege causation and redressability for two reasons. *Id.* at 1227. First, and as set forth above, Plaintiffs have not adequately alleged a concrete, particularized injury in fact for their challenges to individual product actions or reinitiation claims, and there is accordingly no indication that any such injury is caused by Defendants or is redressable by this Court. *See Swanson Grp. Mfg. LLC v. Jewell*, 790 F.3d 235, 243 (D.C. Cir. 2015) ("Without information about [plaintiff's] past injury," even testimony supplied via declarations will "not show [plaintiff's] . . . losses 'fairly can be traced'" to a defendant's actions); *Renal Physicians Ass'n v. U.S. Dep't of Health & Human Servs.*, 489 F.3d 1267, 1277 (D.C. Cir. 2007).

Second, Plaintiffs have not alleged specific facts meeting even the lenient standard of pleading in procedural injury cases, *i.e.*, Plaintiffs have alleged no facts showing that reinitiation of Section 7 consultation "could protect [its] concrete interests." *Gutierrez*, 545 F.3d at 1226 (citation omitted). Plaintiffs have offered only conclusory statements to that effect, an unadorned recitation of the standing inquiry which is insufficient at the pleadings stage. *See, e.g.*, TAC ¶¶ 740-43. *See Levine v. Vilsack*, 587 F.3d 986, 997 (9th Cir. 2009) ("Absent . . . factual allegations, any pleading directed at the likely actions of third parties or of parties under separate and independent statutory obligations would almost necessarily be conclusory and speculative."); *The Constitution Party of Pa. v. Cortes*, 433 F. App'x 89, 93 (3d Cir. 2011). Even had Plaintiffs adequately alleged an injury in fact, therefore, their failure to properly allege causation and redressability renders its Third Amended Complaint nonjusticiable.

**B.** **The Court Lacks Jurisdiction Over Actions Post-Dating the Notice Letters**

Plaintiffs bring suit under the ESA's citizen suit provision, which permits suit "to enjoin any person, including the United States and any other governmental instrumentality or agency . .

. who is alleged to be in violation of any provision of this chapter or regulation issued under the authority thereof." *See* 16 U.S.C. § 1540(g)(1)(A), *e.g.*, TAC, ¶¶ 6-7. That grant of jurisdiction, however, is cabined by the requirement that a plaintiff provide the alleged violator and the Secretary of the Interior or Commerce with at least 60 days' advance written notice of its intent to sue for a violation of the ESA. 16 U.S.C. § 1540(g)(2)(A). Prior to commencing this lawsuit in January 2011, Plaintiffs sent three letters to the EPA Administrator, alleging that EPA had failed to satisfy the requirements of ESA Section 7(a)(2) with respect to pesticide product registrations and reregistrations. The last letter was dated May 20, 2010. Thus, assuming that Plaintiffs' three letters gave sufficient notice with respect to registrations and reregistration actions through May 20, 2010, they could not have given notice of anticipated ESA violations that had not yet occurred. The ESA requires notice of an actual violation, rather than a possible future violation.

### 1. The Notice Requirement is Mandatory and Jurisdictional

The 60-day notice requirement is jurisdictional. *Klamath-Siskiyou Wildlands Ctr. v. MacWhorter*, 797 F.3d 645, 647 (9th Cir. 2015) (*citing Sw. Ctr. for Biological Diversity v. U.S. Bureau of Reclamation*, 143 F.3d 515, 520 (9th Cir. 1998)). In *Hallstrom*, the Supreme Court rejected a "flexible or pragmatic construction" of a similar citizen suit notice provision because "[u]nder a literal reading of the statute, compliance with the 60-day notice provision is a mandatory, not optional, condition precedent for suit." *Hallstrom v. Tillamook Cty.*, 493 U.S. 20, 26 (1989). As in *Hallstrom*, the "language of this provision" here "could not be clearer" and courts therefore cannot create exceptions.[5] *Id.* at 26-27. "A failure to strictly comply with the notice requirement acts as an absolute bar to bringing suit under the ESA." *MacWhorter*, 797 F.3d at 647 (quoting *Sw. Ctr.*, 143 F.3d at 520).

While dismissal of a claim for failure to comply with the notice requirement may seem severe, "the equities do not weigh in favor of modifying [citizen suit] statutory requirements." *Hallstrom*, 493 U.S. at 27. Under all of these citizen suit provisions, the plaintiff has "full control

---

[5] As the Supreme Court recognized, many environmental citizen suit provisions, including the ESA, were modeled on the Clean Air Act citizen suit provision and thus interpretations of one statute's provision may inform interpretations of the others. *Hallstrom*, 493 U.S. at 23 & n.1.

over the timing of [its] suit." *Id.* A plaintiff only needs to "give notice to the appropriate parties and refrain from commencing [the] action for at least 60 days." *Id.* Because a plaintiff need only take "minimal steps necessary to preserve [its] claims," any "procedural default" should not be excused. *Id.* (citation omitted).

>    **2.      Anticipatory or Prospective Notice Does Not Comply with the Statute**

Numerous courts have ruled that notice of future anticipated violations does not satisfy the ESA's 60-day notice requirement. *See, e.g., Nat. Res. Def. Council v. Kempthorne*, 539 F. Supp. 2d 1155, 1179 (E.D. Cal. 2008) (concluding notice provided prior to reinitiation of ESA Section 7 consultation constituted an "invalid 'pre-violation' notice" of claims related to the reinitiated consultation); *Am. Rivers v. U.S. Army Corp. of Eng'rs*, No. Civ. 04-3188 PAM/RLE, 2004 WL 2905281, at *3 (D. Minn. Dec. 10, 2004) (finding that notice pertaining to earlier biological opinion could not serve as notice for challenges to implementation of subsequent biological opinion); *Moden v. U.S. Fish and Wildlife Serv.*, 281 F. Supp. 2d 1193, 1206 (D. Or. 2003) ("[B]ecause the agency had not acted on the petition [to delist the species] at the time of notice, plaintiffs could not have given the Secretary notice of an unlawful action."); *Kern Cty. Farm Bureau v. Badgley*, No. CV F-02-5376 AWI DLB, 2002 WL 34236869, at *13 (E.D. Cal. Oct. 10, 2002) ("one cannot give notice of a violation which has not yet happened"). More relevant to the case at bar, courts have rejected any notion that notice about an existing or past violation can provide sufficient notice of a later alleged violation, no matter how similar. *See, e.g.*, *Forest Guardians v. U.S. Bureau of Reclamation*, 462 F. Supp. 2d 1177, 1182-83 (D.N.M. 2006) (notice of alleged violations in 2002 irrigation season, resolved in prior suit, insufficient for similar alleged violations that occurred four years later).

The case most directly relevant to the situation at bar is *Ellis v. Bradbury*, No. C-13-1266 MMC, 2014 WL 1569271 (N.D. Cal. Apr. 18, 2014), which similarly involved challenges to individual pesticide product approvals. There, the plaintiffs sent a notice letter alleging that EPA violated ESA Section 7 with respect to actions taken for 86 products. *Id.* at *10. However, the first amended complaint named 103 product actions, including four product approvals taken after the date of the notice letter. *Id.* For these subsequent actions, the Court correctly noted that the

notice letter could not have provided the "written notice of the violation" required by the statute, as the alleged violations had not yet occurred. *Id.* at *11 (quoting 16 U.S.C. § 1540(g)(2)(A)(i)). It was of no matter that the plaintiffs had provided notice of similar product approvals in their letter; the Court found that allowing the post-notice-letter claims to proceed would run counter to the statutory purpose of the notice requirement. *Id.* (citing *Sw. Ctr.*, 143 F.3d at 520).

So it is here. As this Court has previously ruled, and the Ninth Circuit has confirmed, the ESA Section 7(a)(2) consultation obligation is triggered by specific, affirmative agency action – not a general description of a class of actions or nebulous "ongoing control" over future actions. *Ctr. for Biological Diversity v. EPA*, 65 F. Supp. 3d 742, 757–58 (N.D. Cal. 2014); *Ctr. for Biological Diversity v. EPA*, 847 F.3d at 1090-91. Based on Federal Defendants' review, at least 836 of the actions in the new complaint post-date the last May 20, 2010 notice letter, including all of the actions listed for active ingredients dimethoate and simazine. *See* Exhibit D. There is simply no way that Plaintiffs' notice letters could have provided "written notice of the violation" with respect to these 836 actions.

We do not argue that Plaintiffs are categorically prohibited from seeking to supplement their complaint. However, as they are aware (as demonstrated by their three prior notice letters), they would need to first satisfy the jurisdictional notice requirement before seeking to amend or supplement their complaint. *See All. for the Wild Rockies v. U.S. Dep'' of Agric.*, 772 F.3d 592, 602 (9th Cir. 2014). Plaintiffs simply ignored that first step here, despite having had over five months between the Ninth Circuit decision holding that the product action challenges could move forward and the filing of the TAC. Therefore, Plaintiffs have not complied with the statutory requirement and the Court lacks jurisdiction over those claims. Each of the identified actions that post-date the May 20, 2010 notice letter should be dismissed from this lawsuit.

### C.    Newly Added Actions Taken Prior to July 13, 2011, Are Barred

#### 1.    For Failure-to-Consult Claims Carried Over from the Second Amended Complaint, the Statute of Limitations Bars the Inclusion of Newly Challenged Product Actions predating July 13, 2011

Plaintiffs' second amended complaint, filed January 21, 2014, ECF No. 198, was the first pleading wherein Plaintiffs affirmatively identified a discrete list of product actions for which

they alleged EPA failed to comply with ESA Section 7. Plaintiffs identified roughly 500 product actions with respect to 31 active ingredients. The Third Amended Complaint seeks to drastically expand the scope of the case, now identifying 2,216 product actions taken with respect to registrations of products containing 35 active ingredients. The span of challenged agency actions now ranges from 2005 until 2017. This four-fold expansion of a case that has been pending before this Court for over six years should not be permitted, especially as 1,250 of those newly added product actions are time barred by the statute of limitations in 28 U.S.C. § 2401(a). As set forth in Exhibit E, each of these actions pre-date the filing of the TAC (July 13, 2017) by more than six years and Plaintiffs are thus barred from adding them to this already unwieldy case.[6]

Nor is there an argument that the newly challenged actions should relate back to the date of the second amended complaint.[7] Federal Rule 15(c) allows relation-back only when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading." Fed. R. Civ. P. 15(c). While the relation-back doctrine is "liberally applied," *Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau*, 690 F.2d 1240, 1259 n.29 (9th Cir. 1982), courts do limit its application; otherwise, the statute of limitations would become meaningless. Relation-back generally is improper when the new pleading "asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Mayle v. Felix*, 545 U.S. 644, 650 (2005). Indeed, even an amendment that shares "some elements and some facts in common" with the original claim does not relate back if its effect is "to fault [the defendants] for conduct different from that identified in the original complaint." *Meijer, Inc. v. Biovail Corp.*, 533 F.3d 857, 866 (D.C. Cir.

---

[6] Although the new complaint was filed on September 19, 2017 (ECF No. 270), July 13, 2017, is the relevant date for the purpose of the statute of limitations analysis. *Turtle v. Castle Records Inc.*, No. 03-3922MMC, 2005 WL 1159419, at *1 (N.D. Cal. May 17, 2005) (*citing In re Glacier Bay*, 746 F. Supp. 1379, 1389 (D. Alaska 1990)) (filing date, for purpose of statute of limitations, was date plaintiff lodged proposed amended complaint, not later date when district court granted plaintiff's motion to amend). However, if the Court determines that September 19, 2017, is the relevant date, there may well be additional actions taken between July 13 and September 19, 2011 that would be barred by the statute of limitations.

[7] Even if relation-back were permissible here, there are still numerous newly added actions that pre-date the filing of the second amended complaint (January 21, 2014) by more than six years.

2008).

In *Williams*, for example, the Ninth Circuit found no relation-back for a newly added compensation discrimination claim, despite the inclusion of a promotion discrimination claim in the original complaint. *Williams v. Boeing Co.*, 517 F.3d 1120, 1133 (9th Cir. 2008). The Court noted that the new claim would require "different statistical evidence and witnesses" and determined that the new claim "is a new legal theory depending on different facts, not a new legal theory depending on the same facts." *Id.* And in *Oja v. U.S. Army Corps of Engineers*, 440 F.3d 1122, 1134 (9th Cir. 2006), the Ninth Circuit held that a newly added Privacy Act claim did not relate back to the original Privacy Act claim, despite the fact that the alleged violation involved the disclosure of the same personal information on a different website maintained by the same agency. Despite the similarity of alleged violations and common core of facts, the Court's determination indicates that analysis hinges on the elements necessary to allege each claim, stating that "[t]he fact that the language in the two disclosures is identical is inapposite because Oja's claims under the Privacy Act are based on the acts of disclosure themselves, each of which is distinct in time and place, if not substance." *Id.*

Here, the situation involves separate actions and determinations that are much more distinct than those dealt with in *Oja* and *Williams*. As the Ninth Circuit held, each product reregistration (or registration) is a separate and distinct agency action. While product actions relating to the same active ingredient may have some underlying data or information in common, such as the RED for that ingredient, a "RED does not contain all the research upon which the EPA relies when reaching its final pesticide product reregistration decision." *Ctr. for Biological Diversity v. EPA*, 847 F.3d at 1092 (citing U.S. EPA, Evaluation of the U.S. Pesticide Product Reregistration Process: Opportunities for Efficiency and Innovation, at 1-4, 15 (2007)). Because these actions are each distinct, with their own set of facts, the newly challenged product actions cannot be considered to arise from the same "transaction" or "occurrence" as the previously challenged product actions. Indeed, as the 1,250 newly challenged actions involve distinct determinations, taken over a period of 12 years, for product registrations held by numerous different registrants, any court would be hard-pressed to find that these actions arise from the

same transaction as the previously identified actions.

In a case analogous to the case at bar, the Central District of California faced a similar attempt to expand the temporal scope of a case by including similar alleged violations and rejected the plaintiffs' reliance on the relation-back doctrine. *United States ex rel. Lee v. Colleges,* No. CV 07-1984 PSG (MANx), 2012 WL 12878361, at *4 (C.D. Cal. Apr. 19, 2012) (original complaint filed in 2007, alleged False Claims Act beginning in 2005, but amended complaint, filed in 2011, alleged fraudulent acts going back to 2000). Relying on *Oja*, the *Lee* Court held that "each false certification . . . would have constituted a separate violation of the False Claims Act." *Id.* The Court thus held that false certifications occurring more than six years before the amended complaint were independent acts, not part of the same "conduct, transaction, or occurrence" as the allegations in the original complaint, and thus barred by the statute of limitations. *Id.* (quoting Fed. R. Civ. P. 15(c)).

So it is here. Each product action is an independent act, not part of the same transaction as separate product actions that were identified in the Second Amended Complaint. Thus, the relation-back doctrine cannot save the actions identified in Exhibit E from dismissal, as they are barred by the statute of limitations.

## 2. For the Six New Failure-to-Consult Claims, the Statute of Limitations Bars Challenges to Actions Taken Prior to July 13, 2011

For the first time, Plaintiffs allege that EPA has failed to consult on certain product registration or reregistration actions containing the following six active ingredients: brodifacoum, dimethoate, mancozeb, simazine, warfarin, and zinc phosphide. These new claims add another 143 new actions to the litigation. However, as shown in Exhibit F, 78 of those actions were taken prior to six years before the July 13, 2017 filing of the TAC and are therefore barred by the statute of limitations in 28 U.S.C. § 2401(a).

It is of no matter that Plaintiffs previously pled a failure-to-reinitiate claim concerning these ingredients or that such a claim may now be moot by EPA's completion of product reregistration. *See* ECF No. 222 at 38. As this Court has noted from the beginning, a claim that EPA has failed to reinitiate consultation is factually and legally distinct from a claim that EPA

has never consulted in the first place.[8] ECF No. 157 at 16; ECF No. 192 at 10; ECF No. 222 at 37-38. And Plaintiffs previously pled both failure-to-consult and failure-to-reinitiate claims for other active ingredients, ECF No. 222 at 13 n.6, but not for these six ingredients. Whatever reasons lay behind Plaintiffs' litigation strategy, they could have brought failure-to-consult claims for product registration/reregistration actions containing these ingredients, but chose not to do so. They should not now be permitted to disregard the statute of limitations and further inflate the scope of this already-unwieldy case by including actions taken prior to July 13, 2011.

Accordingly, Plaintiffs' failure-to-consult challenges to the 78 products listed in Exhibit F are barred by the statute of limitations.

## CONCLUSION

For the foregoing reasons, Federal Defendants' Motion to Dismiss should be granted, and the Third Amended Complaint should be dismissed for lack of subject matter jurisdiction and failure to state a claim for which relief can be granted.

Respectfully submitted this 15th day of November 2017,

JEFFREY WOOD
Acting Assistant Attorney General

*/s/ Bridget Kennedy McNeil*
BRIDGET KENNEDY McNEIL,
Senior Trial Attorney
United States Department of Justice
Environment and Natural Resources Division
Wildlife and Marine Resources Section
999 18th St., Suite 370
Denver, CO 80202
Ph: 303-844-1484
bridget.mcneil@usdoj.gov

*/s/ Travis Annatoyn*
TRAVIS J. ANNATOYN,
Trial Attorney
United States Department of Justice
Environment & Natural Resources Division
Wildlife and Marine Resources Section
Benjamin Franklin Station, P.O. Box 7611

---

[8] For this reason, as well as the discussion above, the relation-back doctrine would have even less applicability for these claims.

Washington, D.C. 20044-7611
Ph: 202-514-5243
Fax: 202-305-0275

*Attorneys for Federal Defendants*