WILEY REIN LLP
David B. Weinberg (D.C. Bar No. 186247)*
dweinberg@wileyrein.com
Roger H. Miksad (D.C. Bar No. 996137)*
rmiksad@wileyrein.com
    1776 K Street NW
    Washington, DC  20006
    T: (202) 719-7000 F:  (202) 719-7049
CROWELL & MORING LLP
Tracy Eila Reichmuth (CA Bar No. 215458)
treichmuth@crowell.com
    3 Embarcadero Center, 26th Floor
    San Francisco, CA 94111
    T: (415) 986-2800 F: (415)986-2827
*Attorneys for Intervenor-Defendants CropLife
America, et al.*




* Admitted *pro hac vice*

CROWELL & MORING LLP
Kirsten L. Nathanson (D.C. Bar No. 463992)*
knathanson@crowell.com
    1001 Pennsylvania Ave., NW
    Washington, D.C. 20004-2595
    T: (202) 624-2500 F: (202) 628-5116
Tracy Eila Reichmuth (CA Bar No. 215458)
treichmuth@crowell.com
    3 Embarcadero Center, 26th Floor
    San Francisco, CA 94111
    T: (415) 986-2800 F: (415)986-2827
*Attorneys for Intervenor-Defendants American
Farm Bureau Federation, et al.*

AMERICAN CHEMISTRY COUNCIL
Amelia A. Thorn (D.C. Bar No. 1013828)
amelia_thorn@americanchemistry.com
    700 2nd Street, NE
    Washington, DC 20002
    T: (202) 249-6729
STEPTOE & JOHNSON LLP
Seth Goldberg (CA Bar No. 153719)
sgoldberg@steptoe.com
Cynthia L. Taub (D.C. Bar No. 445906)*
ctaub@steptoe.com
    1330 Connecticut Avenue, NW
    Washington, DC 20036
T: (202) 429-3000 F: (202) 429-3902
*Attorneys for Intervenor-Defendant American
Chemistry Council*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, *et al.*,<br><br>             Plaintiffs,<br><br>    v.<br><br>UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, *et al.*,<br>             Defendants,<br>    and<br><br>CROPLIFE AMERICA, *et al.*<br>             Intervenor-Defendants. | CASE NO. 11-CV-293-JCS<br><br>**INTERVENOR-DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS AND MEMORANDUM IN SUPPORT**<br><br>(The Honorable Joseph C. Spero)<br><br>Date:    March 23, 2018<br>Time:   9:30 am<br><br>Place:    Courtroom G - 15th Floor |

# TABLE OF CONTENTS

*Page*

NOTICE OF MOTION AND MOTION TO DISMISS .................................................................... 1

I.     INTRODUCTION ............................................................................................... 2

II.    BACKGROUND .................................................................................................. 2

III.   STANDARD OF REVIEW UNDER RULE 12 AND RULE 41(b) ................................ 3

     A.    Standard of Review Under Fed. R. Civ. P. 12(b)(1) and 12(h)(3)...................... 3

     B.    Standard for Granting Dismissal Under Fed. R. Civ. P. 41(b) ............................ 4

IV.   ARGUMENT ...................................................................................................... 4

     A.    The TAC's First Thirty-Five Claims Must Be Dismissed Because Plaintiffs Have Failed to Adequately Plead Standing.............................................. 4

     B.    The TAC's First Thirty-Five Claims Must Be Dismissed Because This Court Lacks Subject Matter Jurisdiction Over Them .................................... 7

         1.    FIFRA § 16(b) Deprives This Court of Jurisdiction to Hear All of Plaintiffs' Product Reregistration Failure to Consult Challenges ................................................................................................... 8

         2.    The ESA Citizen Suit Provision Does Not Provide Jurisdiction ...................................................................................... 10

     C.    The Statute of Limitations Bars the Court from Considering Allegations Regarding the Approximately 1,639 Registration and Reregistration Actions That Occurred Prior to July 13, 2011 ......................... 12

     D.    Plaintiffs' Claims Are Moot with Regard to Atrazine, Carbaryl, Chlorpyrifos, Diazinon, Malathion, Methomyl, and Simazine........................... 14

     E.    The TAC's "Reinitiation" Claims (Claims 36-38) Must Be Dismissed Because They Do Not Identify an "Agency Action" Subject to Consultation ...................................................................................... 17

     F.    Plaintiffs' TAC Should Be Dismissed Under Rule 41(b) for Failure to Comply with the Court's Orders........................................................................ 22

V.   CONCLUSION.................................................................................................. 24

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009)..................................................................................................7

*Bernhardt v. County of Los Angeles,*
   279 F.3d 862 (9th Cir. 2002) .................................................................................17

*Bowen v. Massachusetts,*
   487 U.S. 879 (1988)..............................................................................................12

*Cafasso v. General Dynamics C4 Systems, Inc.,*
   637 F.3d 1047 (9th Cir. 2011) ................................................................................2

*Center for Biological Diversity v. EPA,*
   65 F. Supp. 3d 742 (N.D. Cal. 2014) ........................................................ *passim*

*Center for Biological Diversity v. EPA,*
   847 F.3d. 1075 (9th Cir. 2017) ................................................................... *passim*

*Center for Biological Diversity v. EPA,*
   No. 11-cv-00293-JCS, 2013 WL 1729573 (N.D. Cal. Apr. 22, 2013) ........................... *passim*

*Center for Biological Diversity v. EPA,*
   No. 11-cv-00293-JCS, 2013 WL 6225183 (N.D. Cal. Nov. 25, 2013) ...............................3, 7

*Center for Biological Diversity v. Lohn,*
   511 F.3d 960 (9th Cir. 2007) .................................................................................14

*Center for Biological Diversity v. U.S. Department of Interior,*
   No. 3:15-cv-00658-JCS (N.D. Cal. Feb. 19, 2016) ..............................................15

*Center for Biological Diversity v. U.S. Fish & Wildlife Service,*
   No. 3:11-cv-05108-JSW (N.D. Cal. July 28, 2014).............................................15

*City of Rochester v. Bond,*
   603 F.2d 927, 931 (D.C. Cir. 1979) .....................................................................12

*Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.,*
   690 F.2d 1240 (9th Cir. 1982) ..............................................................................13

*Coalition of Airline Pilots Associations v. Federal Aviation Administration,*
   370 F.3d 1184 (D.C. Cir. 2004).............................................................................14

*Coos County Board of County Commissioners v. Kempthorne,*
  531 F.3d 792 (9th Cir. 2008) ...................................................12

*DaimlerChrysler Corp. v. Cuno,*
  547 U.S. 332 (2006).............................................................5

*Ellis v. Bradbury,*
  No. C-13-1266 MMC, 2014 WL 1569271 (N.D. Cal. Apr. 18, 2014) ...................12

*Ferdik v. Bonzelet,*
  963 F.2d 1258 (9th Cir. 1992) ..........................................4, 22, 24

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.,*
  528 U.S. 167 (2000).............................................................5

*Gonzalez v. Planned Parenthood of Los Angeles,*
  759 F.3d 1112 (9th Cir. 2014) ..................................................7

*Hawaii County Green Party v. Clinton,*
  124 F. Supp. 2d 1173 (D. Haw. 2000)............................................12

*Home Builders Association of Northern California v. U.S. Fish & Wildlife Service,*
  No. CIV S-05-0629, 2006 WL 3190518 (E.D. Cal. Nov. 2, 2006) ...............10, 11

*Klamath-Siskiyou Wildlands Center. v. MacWhorter,*
  797 F.3d 645 (9th Cir. 2015) ..................................................11

*Lewis v. Casey,*
  518 U.S. 343 (1996).........................................................3, 5

*Lujan v. Defenders of Wildlife,*
  504 U.S. 555 (1992).........................................................3, 4

*Mayle v. Felix,*
  545 U.S. 644 (2005)...........................................................13

*Moe v. United States,*
  326 F.3d 1065 (9th Cir. 2003) .................................................3

*Morris v. Morgan Stanley & Co.,*
  942 F.2d 648 (9th Cir. 1991) .................................................24

*Murphy v. Hunt,*
  455 U.S. 478 (1982)...........................................................14

*Naranjo v. Bank of America National Association,*
  No. 14-CV-02748-LHK, 2015 WL 4463851 (N.D. Cal. July 21, 2015)................22

*Oregon v. Legal Services Corp.*,
  552 F.3d 965 (9th Cir. 2009) ..................................................................5

*Perez v. Nidek Co.*,
  711 F.3d 1109 (9th Cir. 2013) ................................................................7

*In re Phenylpropanolamine (PPA) Products Liability Litigation*,
  460 F.3d 1217 (9th Cir. 2006) ..........................................................22, 24

*Public Utilities Commission v. Federal Energy Regulatory Commission*,
  100 F.3d 1451 (9th Cir. 1996) ..............................................................14

*Santana v. Holiday Inns, Inc.*,
  686 F.2d 736 (9th Cir. 1982) ................................................................12

*Shanko v. Lake Cty.*,
  No. 14-CV-05543-JST (JCS), 2016 WL 9047117 (N.D. Cal. Feb. 2, 2016) ........................22

*Southern Oregon Barter Fair v. Jackson County, Oregon*,
  372 F.3d 1128 (9th Cir. 2004) ..............................................................17

*Southwest Center for Biological Diversity v. U.S. Bureau of Reclamation*,
  143 F.3d 515 (9th Cir. 1998) ............................................................10, 11

*Spokeo, Inc., v. Robins*,
  136 S. Ct. 1540 (2016) ..........................................................................5

*Steel Co. v. Citizens for a Better Environment*,
  523 U.S. 83 (1998) ..............................................................................4

*Thomas v. Bible*,
  983 F.2d (9th Cir. 1993) ......................................................................17

*Thompson v. Housing Authority of the City of Los Angeles*,
  782 F.2d 829 (9th Cir. 1986), *cert denied*, 479 U.S. 829 (1986) ........................4

*Washington Toxics Coalition v. EPA*,
  No. C01-132C, 2002 WL 34213031 (W.D. Wash. July 2, 2002) ..............................5

*Williams v. Boeing Co.*,
  517 F.3d 1120 (9th Cir. 2008) ..............................................................13

*Willis Corroon Corp. of Utah, Inc. v. United Capitol Insurance Co.*,
  No. 97-2208 MHP, 1998 WL 30069 (N.D. Cal. Jan. 5, 1998) ..............................17

*Yourish v. California Amplifier*,
  191 F.3d 983 (9th Cir. 1999) ............................................................4, 22

**STATUTES**

7 U.S.C. §§ 136 – 136y ........................................................................................2

7 U.S.C. § 136j(a)(2)(G) .....................................................................................20

7 U.S.C. § 136(n) ................................................................................................10

16 U.S.C. §§ 1531 – 1544 ....................................................................................2

16 U.S.C. § 1540(g) ............................................................................................10

16 U.S.C. § 1540(g)(2)(A) ..................................................................................10

28 U.S.C. § 1331 .................................................................................................12

FIFRA § 16(a) .....................................................................................................10

FIFRA § 16(b) ..................................................................................................8, 12

FIFRA § 12(a)(2)(G) ..........................................................................................20

**RULES**

Fed. R. Civ. P. 10(a) ...........................................................................................24

Fed. R. Civ. P. 12(b)(1).........................................................................1, 7, 14, 16

Fed. R. Civ. P. 12(b)(6)..........................................................................1, 17, 21

Fed. R. Civ. P. 12(h)(3).............................................................................1, 3

Fed. R. Civ. P. 41(b) ........................................................................................1, 4, 22

**REGULATIONS**

40 C.F.R. § 152.130 ............................................................................................20

40 C.F.R. § 152.130(c), (d) .................................................................................20

50 C.F.R. § 402.16 ..............................................................................................18

64 Fed. Reg. 9145 (February 24, 1999) ................................................................9

78 Fed. Reg. 59,021 (September 25, 2013) ........................................................21

**MISCELLANEOUS**

5C Charles Alan Wright & Arthur R. Miller, *Fed. Prac. Proc. Civ.* § 1393 (3d ed.) ..................3

## NOTICE OF MOTION AND MOTION TO DISMISS

Notice is hereby given that on March 23, 2018, at 9:30 a.m., or as soon thereafter as the case may be heard, in the Courtroom of the Honorable Joseph C. Spero (Courtroom G - 15th Floor), Intervenor-Defendants CropLife America, Responsible Industry for a Sound Environment, Southern Crop Production Association, Western Plant Health Association, Mid America CropLife Association, American Chemistry Council, American Farm Bureau Federation, National Agricultural Aviation Association, National Alliance of Forest Owners, National Association of Corn Growers, National Cotton Council, National Council of Farmer Cooperatives, National Potato Council, Oregonians for Food and Shelter, USA Rice Federation, and Washington Friends of Farms and Forests (collectively "Intervenor-Defendants") will and hereby do respectfully move to dismiss Plaintiffs' Third Amended and First Supplemental Complaint under Federal Rules of Civil Procedure 12 and 41 for lack of subject matter jurisdiction, mootness, failure to state a claim upon which relief can be granted, and failure to comply with prior orders of this Court.

This Motion is based upon the Memorandum of Points and Authorities in Support thereof and all pleadings and papers filed in this action, and upon such matters the Court may entertain. For the reasons set forth below, Intervenor-Defendants request that the Court grant the relief requested and dismiss the case in its entirety for lack of jurisdiction under Rules 12(b)(1) and 12(h)(3), failure to state a claim under Rule 12(b)(6), and failure to comply with this Court's prior orders in accordance with Rule 41(b).

<u>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**</u>

## I.  <u>INTRODUCTION</u>

This fourth effort by Plaintiffs to provide a short and plain statement of their case should be dismissed in its entirety.  Among other things, the 271-page Third Amended and First Supplemental Complaint (ECF No. 270) ("TAC") fails to allege facts sufficient to demonstrate standing, seeks to address matters outside the jurisdiction of the Court, asserts claims for which relief cannot be granted, and disregards this Court's prior orders.  Plaintiffs have had more than enough bites at the apple.  This Court is "busy enough without having to penetrate a tome approaching the magnitude of *War and Peace* to discern [Plaintiffs'] claims and allegations." *Cafasso v. Gen. Dynamics C4 Sys.*, *Inc.*, 637 F.3d 1047, 1059 (9th Cir. 2011).

## II.  <u>BACKGROUND</u>

Having had this case on its docket since 2011, the Court likely needs little additional recitation of the pertinent statutory[1] and regulatory background and case history.  Intervenor-Defendants expect that Federal Defendants' Motion to Dismiss will provide a sufficient summary of these issues[2] and supplement it only with the following partial list of rulings included in prior Orders in this case (which, as explained more fully below, Plaintiffs have ignored in drafting the TAC):

- "To the extent Plaintiffs base their claims on arguments previously rejected by this Court, Plaintiffs have failed to adhere to Civil Local Rule 7-9 governing motion for reconsideration." *Ctr. for Biological Diversity v. EPA*, 65 F. Supp. 3d 742, 757 (N.D. Cal. 2014) [hereinafter *CBD v. EPA*, Order Granting Second Motion to Dismiss].

- Plaintiffs must allege "facts in connection to Plaintiffs' or the members' injury with regard to their interests in any particular species or geographical area affected by any particular pesticide."  *Ctr. for Biological Diversity v. EPA*, No. 11-cv-00293-JCS, 2013 WL 1729573, at *12 (N.D. Cal. Apr. 22, 2013) [hereinafter *CBD v. EPA*, Order Granting First Motion to Dismiss].

---

[1] *E.g.*, Endangered Species Act ("ESA") 16 U.S.C. §§ 1531 – 1544; Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA") 7 U.S.C. §§ 136 – 136y.

[2] If not, Intervenor-Defendants refer the Court to the Government's May 5, 2014, Motion to Dismiss.  ECF No. 203 at 6-10.

- "[P]laintiff's standing in connection with Pesticide X does not confer standing on the plaintiff to also bring a separate claim regarding Pesticide Y.  If that were the case, the remedy would not be 'limited to the inadequacy that produced the injury in fact that the plaintiff has established.'"  *Lewis*, 518 U.S. at 358." *Id*. at *13.

- "Plaintiffs must bring a separate ESA claim in connection with the EPA's affirmative act with regard to each individual pesticide in order to invoke Section 7's consultation requirement.  It follows that Plaintiffs must also allege facts supporting standing for each individual claim." *Id*. at *12.

- "Plaintiffs bear the burden of showing the basis for subject matter jurisdiction. *Lujan*, 504 U.S. at 561.  Thus, if the jurisdictional provisions in FIFRA § 16 apply to Plaintiffs' ESA claims, Plaintiffs must show why each particular claim is governed by FIFRA § 16(a) rather than § 16(b) to establish this Court's jurisdiction." *Id*. at *15.

- Plaintiffs "must plead facts showing how this Court has jurisdiction under FIFRA § 16(a) for the affirmative actions alleged—or that the specific affirmative acts fall outside the ambit of FIFRA § 16." *Id*. at *22.

- "[T]he EPA exercises its discretion when determining whether the foregoing factors are met, and ultimately, whether or not to reregister the pesticide." *CBD v. EPA*, Order Granting Second Motion to Dismiss at 760.

- "The requirement that Plaintiffs plead facts establishing standing, jurisdiction and timeliness also applies to claims based on the EPA's alleged failure to reinitiate consultation."  *Ctr. for Biological Diversity v. EPA*, No. 11-cv-00293-JCS, 2013 WL 6225183, at *1 (N.D. Cal. Nov. 25, 2013) [hereinafter *CBD v. EPA*, Order Granting Motion for More Definite Statement].

- "To state a claim for failure to reinitiate, Plaintiffs must plead, for a specific pesticide, that the agency had prior consultation, and facts showing that one or more of the triggering events occurred." *CBD v. EPA*, Order Granting First Motion to Dismiss at *11.

## III.   STANDARD OF REVIEW UNDER RULE 12 AND RULE 41(b)

Intervenor-Defendants incorporate by reference the statements regarding standard of review in their May 12, 2014 Motion to Dismiss, ECF No. 204, with the following supplementation:

### A.   Standard of Review Under Fed. R. Civ. P. 12(b)(1) and 12(h)(3)

Fed. R. Civ. P. 12(h)(3) provides that, "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  This defense can be raised at any time by any interested party.  *See* 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1393 (3d ed. 2017); *see also Moe v. United States*, 326 F.3d 1065, 1070 (9th Cir. 2003) ("Jurisdiction is at issue in all stages of a case.").  "Without jurisdiction the court

1  cannot proceed at all in any cause." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94

2  (1998) (citation omitted).

3      **B.**    <u>**Standard for Granting Dismissal Under Fed. R. Civ. P. 41(b)**</u>

4      Rule 41(b) provides for dismissal of an action "[i]f the plaintiff fails . . . to comply with

5  . . . a court order . . . ." In determining whether to dismiss a case, "the district court must weigh

6  five factors including: '(1) the public's interest in expeditious resolution of litigation; (2) the

7  court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public

8  policy favoring disposition of cases on their merits; and (5) the availability of less drastic

9  alternatives.'" *Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (quoting *Thompson v.*

10  *Hous. Auth. of the City of L.A.*, 782 F.2d 829, 831 (9th Cir. 1986), *cert denied*, 479 U.S. 829

11  (1986)). Dismissal is appropriate where four of these factors support dismissal or at least three

12  do so strongly. *Yourish v. Cal. Amplifier*, 191 F.3d 983, 990 (9th Cir. 1999).

13  **IV.**    <u>**ARGUMENT**</u>

14      **A.**    <u>**The TAC's First Thirty-Five Claims Must Be Dismissed Because Plaintiffs**</u>

15            <u>**Have Failed to Adequately Plead Standing**</u>

16      To support standing and state a justiciable claim, plaintiffs (1) must allege "'injury in

17  fact'—an invasion of a legally protected interest which is (a) concrete and particularized . . . and

18  (b) actual or imminent, not 'conjectural' or 'hypothetical,'" (2) "there must be a causal

19  connection between the injury and the conduct complained of—the injury has to be 'fairly . . .

20  trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent

21  action of some third party not before the court'" (alteration in original) and (3) "it must be

22  'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable

23  decision.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992).

24      Furthermore, Plaintiffs must "allege facts supporting standing for each individual claim."

25

26

27

28

*CBD v. EPA*, Order Granting First Motion to Dismiss at *12.[3]  Your Honor explained in 2013:

> [I]f properly pleaded, *each pesticide corresponds to an individual agency affirmative act* which triggers the EPA's duty to consult with the Services.  If the EPA failed to consult with the Services regarding the effects of Pesticide X on the environment, and that failure-to-consult confers standing on a plaintiff to bring an ESA claim arising under Section 7, *the plaintiff's standing in connection with Pesticide X does not confer standing on the plaintiff to also bring a separate claim regarding Pesticide Y* . . . . It is certainly possible that some of the facts giving rise to the plaintiff's standing in connection with Pesticide X will overlap with the facts giving rise to the plaintiff's standing in connection with Pesticide Y, but *such fact must be expressly alleged.*[4]

The Ninth Circuit's review affirmed this Court's analysis.  *Ctr. for Biological Diversity v. EPA*, 847 F.3d. 1075, 1091-92 (9th Cir. 2017) [hereinafter *CBD v. EPA*, Ninth Circuit Opinion]; *see also, e.g.*, *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1545 (2016) (citing *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81 (2000)).

The TAC fails to meet these requirements.  Its first thirty-five claims allege failure by EPA to consult on the registration or reregistration of a total of more than 2,200 product registration actions.[5]  Nowhere in the TAC, however, do Plaintiffs allege facts that could establish any concrete injury to Plaintiffs or their members or "allege any facts in connection to Plaintiffs' or the members' injury with regard to their interests in any particular species or geographical area affected by any particular pesticide."  *CBD v. EPA*, Order Granting First Motion to Dismiss at *12.

---

[3] *See also, e.g., Lewis v. Casey*, 518 U.S. 343 (1996); *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332 (2006); *Oregon v. Legal Servs. Corp.*, 552 F.3d 965 (9th Cir. 2009); *Wash. Toxics Coal. v. EPA*, No. C01-132C, 2002 WL 34213031, *6-8 (W.D. Wash. July 2, 2002).  Of course, it is Plaintiffs' obligation to meet their burdens to plead standing, not Defendant-Intervenor's obligation to review, in the first instance, the facts pertinent to each of the more than 2,200 product registrations challenged in the TAC.  *Legal Servs. Corp.*, 552 F.3d at 969 ("A plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief sought.") (internal quotations omitted).  But the examples in this Memorandum clearly reveal that the TAC does not pass muster.

[4] *Id*. at *13 (emphasis added) (citing *DaimlerChrysler Corp.*, 547 U.S. at 352).  This ruling has never been challenged by Plaintiffs.  Indeed, as the Court noted in its 2014 decision, had Plaintiffs wanted to do so, Local Rule 7-9 would have required that they seek leave of the Court or to have raised it with the Ninth Circuit.  Plaintiffs did neither.

[5] Plaintiffs list 2,214 product registration actions.  However, the exact number of actions at issue is unclear since some products are listed more than once in the TAC.

1      Instead, the TAC regurgitates the vague standing allegations of the First and Second

2 Amended Complaints that purported to support the active ingredient-based claims that this Court

3 and the Ninth Circuit since have held were improper.  The TAC updates the prior allegations

4 only by inserting the words "products containing" into them.  *Compare, e.g.*, Second Amended

5 Complain ("SAC") ¶ 125 (ECF No. 198), *with* TAC ¶ 118.

6      Plaintiffs also do not allege any particular facts to support standing for any individual

7 challenged pesticide product action.  Plaintiffs merely allege that unspecified products containing

8 each active ingredient "may be used in the states where each of the species" live.  TAC ¶ 96.  But

9 Plaintiffs fail to allege any facts regarding the specific states or particular geographical areas of

10 those states where the product may be used and a protected species or habitat exists,[6] or even

11 which individual pesticide products may affect any species.

12      Yet every one of the registration and reregistration actions Plaintiffs now seek to

13 challenge involves product-specific use and application limitations.  These directly control

14 where—and whether—any effects of the pesticide might be felt.  For example, as to "end-use"

15 products to be applied to agricultural fields, limitations typically address geographic areas of

16 permissible use,[7] timing of applications, permissible wind conditions at the time of use, and use

17 conditions—such as buffer zones or spray-drift prevention measures—designed and EPA-

18 approved to prevent impacts to non-target species.[8]

19

20     [6] In fact, given the unique habitats of many species, even identification of a state (rather than a particular area of a state) likely would be insufficient.

21     [7] This is precisely why this Court previously ruled that Plaintiffs' original complaint failed to

22 "allege any facts in connection to Plaintiffs' or the members' injury with regard to their interests in any particular . . . geographical area affected by any particular pesticide."  *CBD v. EPA*, Order

23 Granting First Motion to Dismiss at *12.

24     [8] For example, the 2,4-D product GlyMix MT (Reg. No. 62719-366) (TAC ¶ 136) is only approved for use in Colorado, Idaho, Kansas, Montana, Nebraska, Nevada, North Dakota,

25 Oklahoma, Oregon, South Dakota, Utah, Washington and Wyoming.  *See* GlyMix label (June 23, 2009), *available at* https://www3.epa.gov/pesticides/chem_search/ppls/062719-00366-

26 20090623.pdf (last accessed Nov. 15, 2017).  In contrast, the 2,4-D product ForeFront R&P (Reg. No. 62719-524) (TAC ¶ 136) is prohibited from "Sale, Distribution, or Use in New York

27 State."  *See* ForeFront R&P label (June 23, 2008), *available at*

28

1   To adequately allege standing, the TAC must present facts pertinent to the alleged

2   impacts arising from *those specific product registrations*. *Ashcroft v. Iqbal*, 556 U.S. 662, 678

3   (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter,

4   accepted as true, to 'state a claim to relief that is plausible on its face.'"); *see also Perez v. Nidek*

5   *Co.*, 711 F.3d 1109, 1113 (9th Cir. 2013) (affirming dismissal for lack of standing when

6   complaint's allegations "reveal[] virtually nothing because they are no more than conclusory and

7   bare bones words and phrases without any factual content.").[9]

8   In short, as to all of their "failure to consult" claims, Plaintiffs have failed to meet this

9   Court's requirement that the TAC "allege any facts in connection to Plaintiffs' or the members'

10   injury with regard to their interests in any particular species or geographic area affected by" that

11   particular pesticide product. *CBD v. EPA*, Order Granting First Motion to Dismiss at *12-13.

12   Those claims thus must be dismissed pursuant to Rule 12(b)(1).

13   **B.      The TAC's First Thirty-Five Claims Must Be Dismissed Because This Court**

14   **Lacks Subject Matter Jurisdiction Over Them**

15   This Court repeatedly has ruled that Plaintiffs' pleadings must allege appropriate facts to

16   demonstrate subject matter jurisdiction.[10]  In the TAC, Plaintiffs assert several bases for this

17   https://www3.epa.gov/pesticides/chem_search/ppls/062719-00524-20080623.pdf (last accessed

18   Nov. 15, 2017).

19   Moreover, many of the listed products are even more tightly restricted.  For example, many

20   of the listed registration/reregistration actions are "technical" or "manufacturing" registrations
     that only authorize use of the product in a factory to produce end-use products.  Numerous others

21   authorize only indoor uses to control insects.  We do not address any of these products here,
     however, because Plaintiffs have stipulated that they are not pursuing such claims as to such

22   registrations.  *See* ECF No. 274.

23   [9] The Court is not required to "accept as true allegations that contradict matters properly
     subject to judicial notice or by exhibit."  *Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d

24   1112, 1115 (9th Cir. 2014) (internal citation omitted).

25   [10] *CBD v. EPA*, Order Granting First Motion to Dismiss at *15 ("Plaintiffs bear the burden of
     showing the basis for subject matter jurisdiction" and, if FIFRA's jurisdictional provisions apply,

26   "Plaintiffs must show why each particular claim is governed by FIFRA § 16(a) . . . to establish
     this Court's jurisdiction."); *CBD v. EPA*, Order Granting Motion for More Definite Statement at

27   *6; *CBD v. EPA*, Order Granting Second Motion to Dismiss at 755.

28

1    Court's subject matter jurisdiction over their thirty-five "failure to consult" claims, but for many

2    products, none is availing.

3            **1.      FIFRA § 16(b) Deprives This Court of Jurisdiction to Hear All of**

4                      **Plaintiffs' Product Reregistration Failure to Consult Challenges**

5            For all of the products Intervenor-Defendants so far have had resources to review, EPA

6    provided notice of, and an opportunity for comment on, the proposed reregistration of all then-

7    currently-registered products.  Plaintiff's assertion that all of the reregistration actions were not

8    subject to notice and comment is thus incorrect on its face.  Therefore, pursuant to FIFRA §

9    16(b) and the prior decisions of this Court and the Ninth Circuit, the reregistration pesticide

10   product actions named in the TAC were only properly subject to review in the Courts of

11   Appeal.[11]

12           EPA provided notices of and opportunities for comment on several issues as a routine

13   part of EPA's reregistration process.  In addition to releasing a RED for comment, EPA also

14   announced its intention to reregister all existing products containing a certain active ingredient

15   and invited comment on those reregistration actions.  Because Plaintiffs' claims cover products

16   whose regulatory histories span several decades, EPA's methods for providing for notice and

17   comment varied, but each of the reregistration actions listed in the TAC falls into one or both of

18   two methods.

19           First, for products containing at least thirteen of the identified active ingredients, EPA

20   published a Federal Register notice which announced EPA's determination that all then-

21   registered products were approved for reregistration—subject to certain conditions—and

22   soliciting comment on that proposed action.[12]  For example, when it published and solicited

---

23           [11] *CBD v. EPA*, Order Granting First Motion to Dismiss at *22; *CBD v. EPA*, Order Granting

24   Second Motion to Dismiss at 756; *CBD v. EPA*, Ninth Circuit Decision at 1088-89.

25           [12] 1,3-Dichloropropene Pesticide Reregistration Eligibility Decision, 64 Fed. Reg. 9,145
     (Feb. 24, 1999) (1,3-D); 2,4-D Reregistration Eligibility Decision, 70 Fed. Reg. 45,719 (Aug. 8,

26   2005) (2,4-D); Rodenticides Final Risk Mitigation Decision, 73 Fed. Reg. 31,868 (June 4, 2008)
     (Brodifacoum, Bromadiolone, Warfarin, Zinc Phosphide); Carbaryl Reregistration Eligibility

27   Decision, 72 Fed. Reg. 58,844 (Oct. 17, 2007) (Carbaryl); Dicamba Reregistration Eligibility

28

comment on Reregistration Eligibility Decision ("RED") for 1,3-Dichloropropene ("1,3-D"),

EPA stated that "[t]he RED for 1,3-Dichloropropene is the Agency's formal regulatory

assessment of the health and environmental data base of the subject chemical, and presents the

Agency's determination that all pre-plant soil fumigant uses of 1,3-Dichloropropene are eligible

for reregistration." 64 Fed. Reg. 9,145 (Feb. 24, 1999). EPA further stated that it "ha[d]

determined that *all currently registered products* containing 1,3-Dichloropropene as an active

ingredient are eligible for reregistration." *Id.* at 9,146 (emphasis added). The RED itself also

provided a list of those products. 1,3-D RED at 155.[13] EPA provided 60 days for comment.[14]

Second, even as to those products for which the Federal Register notice did not so plainly

solicit comment as to individual products, each RED itself—many of which this Court has

already ruled were subject to notice and comment[15]—clearly explains that all products

containing the chemical have been deemed eligible for reregistration and the conditions under

---

Decision, 71 Fed. Reg. 40,097 (July 14, 2006) (Dicamba); Dimethoate Interim Reregistration Eligibility Decision, 71 Fed. Reg. 39,312 (July 12, 2006) (Dimethoate); Ethoprop, Addendum to the Interim Reregistration Eligibility Decision, 71 Fed. Reg. 17,096 (April 5, 2006) (Ethoprop); Mancozeb Reregistration Eligibility Decision, 70 Fed. Reg. 76,828 (Dec. 28, 2005) (Mancozeb); Reregistration Eligibility Decision Documents for Ethephon, Linuron, and Metochlor, 60 Fed. Reg. 27,504 (May 24, 1995) (Metolachlor); Simazine Reregistration Eligibility Decision, 71 Fed. Reg. 35,669 (June 21, 2006) (Simazine).

Due to the prolixity of Plaintiffs' TAC, Intervenor-Defendants may not have identified the specific opportunity for notice and comment for every single alleged reregistration action. However, the relative ease by which Intervenor-Defendants identified a large percentage of products that were affirmatively subject to notice and comment illuminates the failure of Plaintiffs to perform this most basic research and meet their pleading burden.

[13] U.S. Envtl. Prot. Agency, 738-R-98-016, Reregistration Eligibility Decision (RED) 1,3-Dichloropropene (Dec. 1998), available at https://archive.epa.gov/pesticides/reregistration/web/pdf/0328red.pdf.

[14] Moreover, Plaintiffs recognized that they were being invited to comment on product registrations as part of similar Federal Register notices. Plaintiff PANNA's comments on the Malathion RED recognized that EPA had decided that "products containing malathion are eligible for reregistration . . . ." Dkt. No. EPA-HQ-OPP-2004-0348-0135 (Jan. 29, 2007), *available at* https://www.regulations.gov/document?D=EPA-HQ-OPP-2004-0348-0135 (last accessed Nov. 15, 2017).

[15] *CBD v. EPA*, Order Granting Second Motion to Dismiss at 756-57.

Case Number: 11-cv-293-JCS
Intervenor-Defendants' Motion to Dismiss

1   which those products will be reregistered.  And nearly all of the REDs include an explicit list of

2   existing registered products the agency intended to reregister.[16]

3       In light of these notices, the "reregistration" pesticide product actions named in the TAC

4   were only properly subject to review in the Courts of Appeal.[17]

5           **2.**    **The ESA Citizen Suit Provision Does Not Provide Jurisdiction**

6       The TAC asserts that the ESA's citizen suit provision, Section 11(g), 16 U.S.C. §

7   1540(g), also provides jurisdiction for Plaintiffs' failure to consult claims.  TAC ¶ 6.  This is

8   flatly inconsistent with the Ninth Circuit's February ruling.  *CBD v. EPA*, Ninth Circuit Opinion

9   at 1088-90.  Moreover, the ESA could not provide jurisdiction to the TAC's claims relating to

10  failure to consult upon a "registration" action and any remaining "reregistration" claims, for two

11  additional reasons:

12      First, the ESA's citizen suit provision only authorizes suit sixty days after "written notice

13  of the violation has been given to the Secretary."  16 U.S.C § 1540(g)(2)(A).  "A failure to

14  strictly comply with the notice requirement acts as an absolute bar to bringing suit under the

15  ESA."  *Sw. Ctr. for Biological Diversity v. U.S. Bureau of Reclamation*, 143 F.3d 515, 520 (9th

16  Cir. 1998); *See also Home Builders Ass'n of N. Cal. v. U.S. Fish & Wildlife Serv.*, No. CIV S-05-

17  0629 WBS-GGH, 2006 WL 3190518, at *4 (E.D. Cal. Nov. 2, 2006) ("Compliance with this

18

---

19      [16] REDs or other final reregistration documents for the following active ingredients contained
20  a list of then-currently registered products:  1,3-Dichloropropene; Acephate; Atrazine;
    Bensulide; Brodifacoum; Bromadiolone; Captan; Chlorothalonil; Chlorpyrifos; Diazinon;
21  Diuron; Ethoprop; MCPA, salts and esters; Mancozeb; Methomyl; Metolachlor and isomers;
    Metribuzin; Naled; Oxyfluorfen; Paraquat dichloride; Pendimethalin; Phorate; Propanil;
22  Propargite; Simazine; S,S,S-tributyl phosphorotrithioate; Thiobencarb; Trifluralin; Warfarin; and
    Zinc Phosphide.  *See* Ex. A.

23      [17] In addition, for carbaryl products, Plaintiffs allege that "EPA's *completion of product
24  reregistration* and new registration of products containing carbaryl did not follow a hearing and
    are therefore judicially reviewable by the district court under FIFRA § 16(a), 7 § U.S.C.
25  136n(a)."  TAC ¶ 895 (emphasis added).  This Court has previously ruled that "Plaintiffs may
    not base their failure-to-consult claims on the EPA's 'completion' of product reregistration—as
26  opposed to the actual registration actions—for products containing a particular active
    ingredient."  *CBD v. EPA*, Order Granting Second Motion to Dismiss at 759. Thus, their grounds
27  for jurisdiction over the carbaryl reregistration actions does not exist.

28

provision of the ESA is a jurisdictional prerequisite to filing suit.").  The statutorily-required notice must provide specific information that allows the defendant "to identify and address the alleged violations."  *Klamath-Siskiyou Wildlands Ctr. v. MacWhorter*, 797 F.3d 645, 651 (9th Cir. 2015) (summarizing Ninth Circuit precedent).  After such notice is provided, suit may be filed only "on those exact issues."  *Home Builders Ass'n of N. Cal. v. U.S. Fish & Wildlife Serv.*, No. CIV. S-05-0629 WBS-GGH, 2006 WL 3190518, at *6 (E.D. Cal. Nov. 2, 2006).

　　　　None of Plaintiffs' three notice letters identified the pesticide product registration and reregistration actions as to which Plaintiffs now seek relief.  Instead, they: alleged that EPA failed to "regulate pesticide use" to avoid impacts on endangered species and threatened habitats; provided lists of pesticide *active ingredients* of concern and allegedly affected species; and presented voluminous information regarding the alleged environmental effects of use of those *active ingredients*.  *See* Letter from Justin Augustine, Center for Biological Diversity, to Lisa Jackson, Administrator, U.S. Environmental Protection Agency (Jan. 27, 2010) at 122; 63-121.[18] But the Ninth Circuit's February 2017 decision instructs (as did this Court) that EPA's decision on a pesticide product registration "necessarily involves a determination distinct from" its decision as to the pesticide active ingredient "because a pesticide active ingredient and a pesticide product are not the same."  *CBD v. EPA*, Ninth Circuit Opinion at 1093.  It inexorably follows that a notice letter sufficient to support district court jurisdiction for a complaint alleging failure to consult on a *product* registration or reregistration action must have identified that *product* registration or reregistration action as being challenged.  None of Plaintiffs' notice letters did so.  They thus did not "provide sufficient information of a violation so that the [EPA] could identify and attempt to abate the violation."  *Sw. Ctr. for Biological Diversity*, 143 F.3d at 522.  In light of Plaintiffs' failure, this Court cannot look to the ESA citizen suit provision for jurisdiction.

　　　　Second, Plaintiffs' three notice letters were sent long before 786 of the registration and

_____

[18] Exhibit B.

1    reregistration actions identified in the TAC took place.[19]  Thus, even if this Court were to relax

2    the requirement for specific notice, "the Notice Letter[s] could not have provided the requisite

3    notice as the violation had not yet occurred."  *Ellis v. Bradbury*, No. C-13-1266 MMC, 2014 WL

4    1569271, at *11 (N.D. Cal. Apr. 18, 2014).  Even if this Court were to find ESA jurisdiction, any

5    actions that post-date the notice letter (786 products by Intervenor-Defendant's count) should be

6    dismissed for that reason alone.[20]

7        C.    **The Statute of Limitations Bars the Court from Considering Allegations**

8              **Regarding the Approximately 1,639 Registration and Reregistration Actions**

9              **That Occurred Prior to July 13, 2011**

10           This Court previously has ruled that a six-year statute of limitations applies to those

11   litigable claims brought by Plaintiffs that are not subject to the FIFRA § 16(b) 60-day statute of

12   limitation, and the Ninth Circuit affirmed.  *CBD v. EPA*, Order Granting First Motion to Dismiss

13   at *22; *CBD v. EPA*, Order Granting Second Motion to Dismiss at 756; *CBD v. EPA*, Ninth

14   Circuit Opinion at 1092.[21]  That ruling is controlling here, but the filing date of the original

15   Complaint is not the appropriate date from which now to calculate the statute of limitations.  It

16   would only be an appropriate basis for doing so if the original Complaint brought "the defendant

17   [] in court on a claim *arising out of a particular transaction or set of facts*" that also is the

18   subject of the TAC.  *Santana v. Holiday Inns, Inc.*, 686 F.2d 736, 739 (9th Cir. 1982) (emphasis

---

19   [19] The last notice letter was sent on May 20, 2010 (TAC ¶ 7).  The actions alleged in the TAC

20   which occurred after that date are identified in Exhibit C.

21   [20] The TAC's assertion that an independent basis for jurisdiction exists "by virtue of 28

22   U.S.C. § 1331 because Plaintiffs allege violations of federal law" (TAC ¶ 6), is incorrect.
     Residual jurisdiction "does not provide additional judicial remedies in situations where the
     Congress has provided special and adequate review procedures." *Bowen v. Mass.*, 487 U.S. 879,

23   903 (1988); *accord Coos Cty. Bd. of Cty. Comm'rs. v. Kempthorne*, 531 F.3d 792, 802 (9th Cir.
     2008).  "[T]hat procedure [is] to be the exclusive means of obtaining judicial review . . . ." *City

24   of Rochester v. Bond*, 603 F.2d 927, 931 (D.C. Cir. 1979).  Having not met the elements of either
     FIFRA or the ESA, Plaintiffs may not invoke Section 1331.  *Haw. Cty. Green Party v. Clinton*,

25   124 F. Supp. 2d 1173, 1192-93 (D. Haw. 2000).

26   [21] The Court thus dismissed challenges to actions identified in the original Complaint that

27   were alleged to have occurred more than six years before its filing date—that is, before January
     20, 2005.

28

added).  "[R]elation back depends on the existence of a common 'core of operative facts' uniting the original and newly asserted claims."  *Mayle v. Felix*, 545 U.S. 644, 659 (2005) (quoting *Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc*., 690 F.2d 1240, 1259 n.29 (9th Cir. 1982)).  Here, however, there is no common core of facts.

The original Complaint challenged EPA's decisions only with regard to approval and supervision of "active ingredients."  ECF No. 1.  But this Court and the Ninth Circuit have ruled that "active ingredients" are not synonymous with "product registrations."  Product registration "necessarily involves a determination distinct from" the Agency's decision as to the pesticide active ingredient "because a pesticide active ingredient and a pesticide product are not the same." *CBD v. EPA*, Ninth Circuit Opinion at 1093.

Plaintiffs now have chosen to seek judicial review of EPA's compliance with the ESA in making more than 2,200 individual pesticide product registration or reregistration actions.  But the Ninth Circuit held that, in light of the "multiphase reregistration process" EPA chose to use before the more recently-imposed routine 15-year registration review system, each such ultimate product action required EPA to "determine whether each pesticide product comports with the Paragraph 5 requirements contained in Section 136a(c)."  *Id*. at 1092.  Plaintiffs' new allegations that EPA violated its duty to consult as to the registration or reregistration of *products* as part of that now-completed reregistration process thus necessarily implicate a wholly distinct and far more extensive sets of facts (*i.e.*, the "research" referred to by the Ninth Circuit) than did the original Complaint.  As a consequence, the required common core of operative facts is absent. *See Williams v. Boeing Co.*, 517 F.3d 1120, 1133-34 (9th Cir. 2008) (denying relation back where new claims would require "different statistical evidence and witnesses . . . because of the different processes [defendant] uses to make . . . [the] decisions.").[22]

---

[22] The lack of a common core of operative facts is particularly stark with regard to the products containing active ingredients for which Plaintiffs have never previously asserted a claim for failure to consult:  brodifacoum, dimethoate, mancozeb, simazine, warfarin, and zinc phosphide.  For these products, there is no basis for using any date other than the filing date of the TAC for calculating the statute of limitations.

1    Plaintiffs' motion for leave to file the TAC was filed on July 13, 2017, (ECF No. 259).

2    At least 1,639 of the actions that it alleges should have triggered ESA consultations occurred

3    more than six years before the TAC was filed, (*i.e.,* before July 13, 2011).[23]  This Court thus

4    does not have jurisdiction to consider those claims as to these actions, and they should be

5    dismissed pursuant to Rule 12(b)(1).

6    **D.    Plaintiffs' Claims Are Moot with Regard to Atrazine, Carbaryl,**

7    **Chlorpyrifos, Diazinon, Malathion, Methomyl, and Simazine**

8    A federal court lacks jurisdiction unless there is a "case or controversy" under Article III

9    of the Constitution.  *See, e.g.*, *Pub. Utils. Comm'n v. Fed. Energy Regulatory Comm'n*, 100 F.3d

10   1451, 1458 (9th Cir. 1996).  "In general a case becomes moot when the issues presented are no

11   longer live or the parties lack a legally cognizable interest in the outcome." *Murphy v. Hunt*, 455

12   U.S. 478, 481 (1982) (internal quotations omitted).  This includes where a defendant has

13   committed itself to resolving the alleged failure and has evidenced progress towards doing so.

14   *See, e.g.*, *Coal. of Airline Pilots Ass'ns v. FAA*, 370 F.3d 1184, 1190 (D.C. Cir. 2004) ("[T]he

15   agencies' commitment to draft new regulations that will provide additional administrative review

16   procedures—a commitment made both to this court and in the formal entry in the TSA

17   rulemaking dockets—provides sufficient assurance that the agencies will never return to . . . [the]

18   allegedly unlawful procedures."); *see also Ctr. for Biological Diversity v. Lohn*, 511 F.3d 960,

19   963 (9th Cir. 2007) (challenging agency policy mooted where agency adopted change in agency

20   decision demanded in complaint).

21   Plaintiffs' Fourth, Ninth, Eleventh, Twelfth, Nineteenth, and Thirtieth Claims for Relief

22   respectively allege that "EPA has not initiated consultation with the Service" regarding products

23   containing atrazine, carbaryl, chlorpyrifos, diazinon, methomyl, and simazine.  TAC ¶¶ 863, 893,

24   905, 911, 953, 1020.  Plaintiffs' Thirty-Seventh Claim for Relief alleges that "EPA has not

25   reinitiated consultation with the Service" regarding the pesticide active ingredient malathion.

26   TAC ¶ 1064.  Plaintiffs' Prayer for Relief thus requests that this Court "order EPA to begin or

27   _____

[23] A list of those actions is in Exhibit D.

28

Case Number: 11-cv-293-JCS
Intervenor-Defendants' Motion to Dismiss

1    reinitiate consultation."

2         However, consultation already has been committed to by enforceable Court Orders (in

3    one case, an Order by Your Honor) and, as to products containing at least three active

4    ingredients, is well underway.  Those consultations were agreed to in two settlement agreements

5    between Plaintiff CBD and Federal Defendants EPA and the Fish and Wildlife Service.

6         First, in a 2014 settlement agreement regarding carbaryl, chlorpyrifos, diazinon,

7    malathion, and methomyl, EPA and the Fish and Wildlife Service (FWS) agreed "to consult on

8    the potential effects that pesticides at issue in this case have on threatened and endangered

9    species nationwide . . . ."  Stipulation with Proposed Order Amending Original Stipulated

10   Settlement, *Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*, No. 3:11-cv-05108-JSW

11   (N.D. Cal. July 25, 2014), ECF No. 86.  Under the terms of that 2014 settlement, Plaintiff CBD

12   agreed that it "resolves its Complaint [that ESA consultations had not been held by EPA] to the

13   five active ingredients carbaryl, chlorpyrifos, diazinon, malathion, and methomyl . . . ."  *Id.* ¶ 8.

14   Further, the settlement contains a binding dispute resolution procedure that applies "in the event

15   of a disagreement . . . concerning the interpretation or performance of any aspect of this

16   Stipulated Settlement." *Id*., ECF No. 76, as amended.

17        Nineteen months later, a 2016 settlement agreement entered by Your Honor recognized

18   that "EPA expects to complete a nationwide evaluation of the effects of four pesticides–atrazine,

19   simazine, propazine and glyphosate–on listed species in connection with registration review

20   under FIFRA and initiate any necessary nationwide ESA consultations for these four pesticides

21   by June 30, 2020."  Stipulated Settlement and Order, *Ctr. for Biological Diversity v. U.S. Dep't

22   of Interior*, No. 3:15-cv-00658-JCS (N.D. Cal. Feb. 19, 2016), ECF No. 74.[24]

23        In light of these settlements, it is unsurprising that the website of the Fish and Wildlife

24   Service states that EPA and the Services "are currently working together to complete

25
     _____
26   [24] The parties also referred to the consultations required by the 2014 settlement agreement,
     and agreed that "EPA and FWS are working to complete such nationwide consultations on
27   carbaryl, chlorpyrifos, diazinon, malathion, and methomyl."  *Id.*

28

1    consultations on nine pesticides (carbaryl, chlorpyrifos, diazinon, malathion, methomyl, atrazine,

2    simazine, propazine and glyphosate)."[25]

3          Further, three of these consultations—chlorpyrifos, diazinon, and malathion—have

4    progressed to the point where final Biological Evaluations (BEs) have been issued by EPA.

5    And, while for expedience those BEs were conducted on an active ingredient basis, EPA has

6    been clear that each of those BEs applies to all products containing them.[26]  Plaintiffs are well

7    aware of this fact: they jointly filed comments on the draft BEs.[27]  In those comments, Plaintiffs

8    lauded EPA's draft documents and stated that "[o]ther than a handful of issues outlined below,

9    these biological evaluations, as they stand now, are adequately protective of endangered species

10   and generally comply with the mandates of the Endangered Species Act ("ESA")."  Dkt. No.

11   EPA-HQ-OPP-2009-0317-0063 at 1.

12         Plaintiffs cannot plausibly allege that EPA has not begun or reinitiated these

13   consultations while simultaneously being an active commenter on those very consultations.

14   Plaintiffs should have eliminated the active ingredients and/or products containing these active

15   ingredients from this litigation after they obtained relief elsewhere.[28]  Because they failed to do

16   so, those claims should be dismissed with prejudice for mootness pursuant to Rule 12(b)(1) and

17

18   [25] U.S. Fish & Wildlife Service, Pesticide Registration and Endangered Species Act
     Consultations, *available at* https://www.fws.gov/endangered/what-we-do/pesticide-
     consultation.html (last accessed Nov. 15, 2017).

19

20   [26] *See* Appendix 1-2 to the Diazinon Final Biological Evaluation, *available at*
     https://www.epa.gov/endangered-species/biological-evaluation-chapters-diazinon-esa-
     assessment (last accessed Nov. 15, 2017); Appendix 1-2 to the Chlorpyrifos Final Biological
21   Evaluation, *available at* https://www.epa.gov/endangered-species/biological-evaluation-
     chapters-chlorpyrifos-esa-assessment (last accessed Nov. 15, 2017).

22

23   [27] Comments on Draft Biological Evaluation for Malathion, Center for Biological Diversity,
     Pesticide Action Network, *et al.;* Dkt. No. EPA-HQ-OPP-2009-0317-0063 (June 10, 2016),
     *available at* https://www.regulations.gov/document?D=EPA-HQ-OPP-2009-0317-0063 (last
24   accessed Nov. 15, 2017).  Identical comments were also submitted to the dockets for
     chlorpyrifos and diazinon.  Dkt. Nos. EPA-HQ-OPP-2008-0850-0901 and EPA-HQ-OPP-2008-
25   0351-0080.

26   [28] While EPA has not yet reached the stage of publishing draft BEs with regard to atrazine,
     carbaryl, methomyl, and simazine, Plaintiffs' claims are nonetheless moot because Defendant
27   EPA has publicly committed to doing so on a schedule agreed to by Plaintiffs in other litigation.

28

1   12(b)(6).  *See, e.g.*, *Bernhardt v. Cty. of L.A.*, 279 F.3d 862, 871 (9th Cir. 2002) (Rule 12(b)(1)

2   basis for dismissal for mootness); *Willis Corroon Corp. of Utah, Inc. v. United Capitol Ins. Co.*,

3   No. 97-2208 MHP, 1998 WL 30069, at *4 (N.D. Cal. Jan. 5, 1998) ("[T]he [Rule 12(b)(6)]

4   motion to dismiss procedure may be used to enforce settlement agreement terms which prescribe

5   procedures for or limitations on further litigation, and courts have interpreted such agreements to

6   establish bars to the maintenance of a civil action.").

7       **E.**      **The TAC's "Reinitiation" Claims (Claims 36-38) Must Be Dismissed Because**

8           **They Do Not Identify an "Agency Action" Subject to Consultation**

9           By identifying specific registration and reregistration actions in its "failure to consult"

10  claims (Claims 1-35), the TAC reflects a key holding of this Court and the Ninth Circuit: that

11  consultation under ESA Section 7 is only required regarding the effects of an identifiable agency

12  action.  However, the TAC does not reflect that holding as to the "reinitiation" claims set forth as

13  Claims 36, 37, and 38.  It should have: the regulation establishing the reinitiation obligation

14  applies only "where discretionary Federal involvement or control *over the action* has been

15  retained or is authorized," and one of four enumerated events have occurred.  *Id.* (emphasis

16  added).  Those claims thus should be dismissed for Plaintiffs' failure to identify the relevant,

17  required, agency action.

18          Intervenor-Defendants recognize this Court's prior holding that the "the reinitiation

19  claims are not similarly triggered by an affirmative agency action, but rather, are triggered by the

20  factors listed in 50 C.F.R. § 402.16."  *CBD v. EPA*, Order Granting Second Motion to Dismiss at

21  *6.  However, the Ninth Circuit's holding above urges expansion of this analysis, and "a court

22  properly exercises its discretion to reconsider an issue previously decided if there has been an

23  intervening change in the law." *S. Or. Barter Fair v. Jackson Cty., Or.*, 372 F.3d 1128, 1136 (9th

24  Cir. 2004) (citing *Thomas v. Bible*, 983 F.2d 152, 155 (9th Cir. 1993)).  The Ninth Circuit's

25  holding—building on this Court's prior decision—changes the scope of Plaintiffs' pleading

26  obligation.  The Ninth Circuit affirmed that Plaintiffs must "identify an affirmative agency action

27  that would trigger a Section 7 consultation . . . ."  *CBD v. EPA*, Ninth Circuit Opinion at 1091.

28

Case Number: 11-cv-293-JCS
Intervenor-Defendants' Motion to Dismiss

1   Further, the Ninth Circuit firmly and finally rejected Plaintiffs' "continuing authority" argument

2   which confused action with oversight.  *Id.*  These holdings teach that, as applied to the

3   reinitiation claims, while this Court has previously held that the "trigger" for reinitiation need not

4   be an affirmative agency action, the *subject* of such reinitiated consultation must be an

5   affirmative action, and must be properly identified by Plaintiffs.  In other words, in addition to

6   the "trigger," Plaintiffs must also identify the action which would be the subject of such

7   consultation and forming the foundation of the reinitiation obligation allegedly imposed by 50

8   C.F.R. § 402.16.  But they have not.

9       Furthermore, the Ninth Circuit confirmed this Court's finding that the relevant "actions"

10  here are the granting of registration or reregistration.  That is why Plaintiffs have listed specific

11  registration and reregistration actions in Claims 1-35.[29]  But the TAC fails to reflect a necessary

12  corollary of the Ninth Circuit's ruling:  averments of the TAC alleging an obligation to reinitiate

13  prior consultations also must enumerate the specific registration actions as to which reinitiation

14  is required.

15      Review of the extensive list available on EPA's website of products containing the active

16  ingredients identified in Claims 36-38 demonstrates why this is important.  There are a total of

17  over 200 named products that contain the three active ingredients at issue.[30]  But (1) many of

18  those products had not been registered at the time of the 1989 Biop that is the foundation of

19  Plaintiffs' claims, and thus could not have been "actions" covered by it subject to "reinitiation of

20

21

22  [29] The Ninth Circuit held that "the Second Amended Complaint allege[d] facts sufficient to
23  support the proposition that pesticide product reregistrations are affirmative agency actions,
    distinct from the issuance of REDS, that trigger a Section 7 consultation obligation."  The court's
    explanatory footnote stating that "as pled, CBD is not challenging the analyses or conclusions
24  contained in the RED, but rather the affirmative action of reregistering a pesticide product"
    (*CBD v. EPA*, Ninth Circuit Opinion at 1093 n.20) requires that a similar analysis be applied as
25  to the TAC's "reinitiation claims."

26  [30] According to registration data provided by EPA's Pesticide Product and Label System,
27  *available at* https://iaspub.epa.gov/apex/pesticides/f?p=PPLS:1 (last accessed Nov. 15, 2017).

28

Case Number: 11-cv-293-JCS
Intervenor-Defendants' Motion to Dismiss

1    consultation," (*i.e.,* there was no prior consultation that could be reinitiated);[31] (2) numerous

2    products registered in 1989, and subject to the consultation, are no longer registered at all;[32] (3)

3    many of the products have, in fact, been reregistered by EPA;[33] and (4) pertinent labels for

4    many—if not all—of the other products containing those active ingredients already have been

5    amended to change their ecological protection provisions to reflect the requirements of the

6    relevant RED(s).  To validly state "reinitiation claims," the TAC should thus have identified

7    those registrations as to which Plaintiffs have some basis to allege reinitiation was required.

8          This Court has already ruled that products which have been reregistered since the original

9    RED cannot be subject to a reinitiation claim.  *CBD v. EPA*, Order Granting Second Motion to

10   Dismiss at 772 ("It makes no sense to require a consultation by the EPA with the Service on the

11   question of whether the old registrations, which no longer govern anything, have any effect on

12   endangered species or their habitat.").  The corollary that products no longer registered today and

13   those not yet registered in 1989 cannot be subject to "reinitiated" consultation is self-evident.

14         Why post-RED label amendments lead to the same result requires some explanation,

15   however.  What was not presented to Your Honor at the time of your 2014 decision because the

16   focus at that point was on Plaintiffs' active-ingredient based claims, but of which the Court can

17   now take judicial notice, is that while "completion of reregistration" eliminates the "force and

18

19         [31] For example, the following Dazomet products:  AMA-35DB, Reg. No 9386-48 (first
20   registered Jan. 12, 2010); Basamid Granular, Reg. No. 5481-9027 (first registered Apr. 25,
     1991).

21         [32] For example, the following Dazomet products actively registered in 1989 are no longer
22   registered:  AMA-20T, Reg. No. 9386-29 (first registered May 21, 1986, cancelled Jan. 22,
     1991); Cosan S, Reg. No. 8489-4 (first registered Mar. 30, 1967, cancelled Jan. 22, 1991).

23         [33] For example, Dazomet Pellets (Reg. No. 71406-5) was reregistered on Nov. 23, 2011.
24   EPA Notice of Pesticide Reregistration (Nov. 23, 2011) *available at*
     https://www3.epa.gov/pesticides/chem_search/ppls/071406-00005-20111123.pdf (last accessed
25   Nov. 15, 2017); Nalcon D3T-A (Reg. No. 1706-193) was reregistered on Sept. 10, 2012. EPA
     Notice of Pesticide Reregistration (Sept. 10, 2012) *available at*
26   https://www3.epa.gov/pesticides/chem_search/ppls/001706-00193-20120910.pdf (last accessed
     Nov. 15, 2017).

27

28

1  effect" of the prior registration[34] it is not the only action that may have such an effect.  For

2  example, EPA's approval of an amended label has the effect of making it illegal for the

3  manufacturer to sell or distribute under the previously approved label.  *See* 40 C.F.R.

4  § 152.130.[35]  Thus, long before EPA lists reregistration as "complete," it can require the

5  amendment of the labels to mandate ecologically-protective conditions.

6       This occurs on an individual product—not an "active ingredient"—basis.  But, where a

7  product has had its label amended to conform to the ecological protection requirements of a

8  relevant RED, the use of directions and restrictions which may have *previously* impacted or

9  protected a species are superseded by those amended, protective use directions and restrictions.

10  This is a result of the fact that it is a product's label—approval of which is only one element of

11  "registration"—that controls a product's use in the field, and therefore potential impacts to

12  species.  To use a product not in compliance with its label is a statutory offense.  FIFRA §

13  12(a)(2)(G), 7 U.S.C. § 136j(a)(2)(G).  Thus, just as Your Honor found it would make no sense

14  to require consultation as to reregistered products, it would make no sense to require reinitiation

15  on products whose labels have been amended to incorporate the ecologically-protective

16  conditions from the REDs.[36]

17       For example, products containing the active ingredient dazomet, the subject of the TAC's

18  thirty-sixth claim for relief, are fumigants.  While EPA has delayed proclaiming reregistration

19  complete, in the meantime the Agency has required the registrants to meet the requirements of

20  the RED, and to amend product labels to address the ecological analyses in the RED, among

21  other things.[37]  Indeed, the Agency is sufficiently comfortable that dazomet's reregistration

---

22

23       [34] *CBD v. EPA*, Order Granting Second Motion to Dismiss at 772.

24       [35] Generally, EPA allows eighteen months for this ban to take effect, so as not to interfere with the channels of trade, but that period may be reduced.  40 C.F.R. § 152.130(c), (d).

25       [36] This is true even where the Agency has reserved the right to require further revisions of the label after, for example, receipt of studies required by reregistration.

26

27       [37] *See, e.g.*, the June 30, 2016 label amendment approval letter for the dazomet product AMA-20, which states that EPA "has completed reviewing all of the information submitted with

28

1   process is effectively complete that it has also already started dazomet's Registration Review

2   process.  Registration Review; Pesticide Dockets Opened for Review and Comment, 78 Fed.

3   Reg. 59,021 (Sept. 25, 2013).[38]  Analogous delays have occurred in the "completion" of

4   reregistration for other products, but Registration Review nonetheless has started for all of

5   them.[39]

6        Intervenor-Defendants believe that many of the relevant products have been reregistered,

7   and that it is likely the labels for all of the products that existed prior to the issuance of the 1989

8   BiOp have been amended to reflect the RED's ecological analyses.  In light of the burden that

9   would be involved to confirm this, however, we have not been able to do so.  But it is Plaintiffs'

10  obligation, not Defendant-Intervenor's (or this Court's) to undertake that analysis before a

11  complaint for "reinitiation" is pursued, and then to pursue reinitiation only as to the specific

12  products as to which no reregistration action or pertinent label amendments have been

13  undertaken.  Having failed to reflect any such analysis in Claims 36, 37, and 38, those claims

14  should be dismissed pursuant to Rule 12(b)(6).

15

16

17  your application to support the reregistration of the above referenced product in connection with
    the Dazomet RED, and has concluded that your submission is acceptable. The label referred to
18  above, submitted in connection with registration under FIFRA, as amended, is acceptable."
    However, the letter then states: "This product is not yet being reregistered under section 4(g) of
19  FIFRA" for unspecified reasons.  *Available at*
20  https://www3.epa.gov/pesticides/chem_search/ppls/009386-00028-20160630.pdf (last accessed
    Nov. 15, 2017) (emphasis omitted).

21     [38] Plaintiffs CBD and PANNA are well aware.  Both separately filed comments in the
22  Dazomet registration review docket (and others).  Dkt. Nos. EPA-HQ-OPP-2013-0080-0011
    (Nov. 25, 2013), *available at* https://www.regulations.gov/document?D=EPA-HQ-OPP-2013-
23  0080-0011 (last accessed Nov. 11, 2017), and EPA-HQ-OPP-2013-0080-0017 (Nov. 25, 2013),
    *available at* https://www.regulations.gov/document?D=EPA-HQ-OPP-2013-0080-0017 (last
24  accessed Nov. 15, 2017), respectively.

25     [39] EPA's Registration Review Docket Opening Schedule website states that "As of
26  November 2016, all dockets have been opened for conventional and antimicrobial pesticides for
    which [EPA] will complete registration review by October 1, 2022."  *Available at*
27  https://www.epa.gov/pesticide-reevaluation/registration-review-docket-opening-schedule (last
    accessed Nov. 15, 2017).

28

1        **F.**     **Plaintiffs' TAC Should Be Dismissed Under Rule 41(b) for Failure to**

2               **Comply with the Court's Orders**

3            Plaintiffs' failure to comply with the prior orders of this Court is manifest throughout the

4    preceding discussion.  That failure should lead the Court to dismiss the TAC in its entirety with

5    prejudice, pursuant to Fed. R. Civ. P. 41(b).

6            As explained at page 4, *supra*, Rule 41(b) analysis requires consideration of five factors.

7    The first two factors are "the public's interest in expeditious resolution of litigation," and "the

8    court's need to manage its docket."  Here, both strongly support dismissal.  "The public's interest

9    in expeditious resolution of litigation always favors dismissal," *Yourish*, 191 F.3d at 990, but this

10   is especially so here.  *See also Shanko v. Lake Cty.*, No. 14-CV-05543-JST (JCS), 2016 WL

11   9047117, at *2 (N.D. Cal. Feb. 2, 2016) (Spero, MJ).  This case has been pending before this

12   Court since 2011, and has "consumed large amounts of the court's valuable time . . . ." *See*

13   *Ferdik*, 963 F.2d at 1261.  The TAC now brings the Plaintiffs' total pages this Court

14   preliminarily has been required to wade through to over 2,000, without ever reaching the merits.

15   Plaintiffs' failures to respond satisfactorily to the Court's repeated pleading instructions have

16   been legion, and occur yet again in the TAC.

17           The third factor, risk of prejudice to the defendants, also clearly supports dismissal.

18   "'[P]rejudice' for purposes of a motion to dismiss brought pursuant to Rule 41(b) 'may . . .

19   consist of costs or burdens of litigation.'"  *Naranjo v. Bank of Am. Nat'l Assc'n*, No. 14-CV-

20   02748-LHK, 2015 WL 4463851, at *11-12 (N.D. Cal. July 21, 2015) (quoting *In re*

21   *Phenylpropanolamine (PPA) Prods. Liab. Litig*., 460 F.3d 1217, 1228 (9th Cir. 2006)).

22   Plaintiffs' repeated failures to comply with the Court's orders have required Defendants and

23   Intervenor-Defendants to expend significant efforts and resources engaging in evaluating four

24   massive, confused, self-contradictory complaints and engaging in otherwise unnecessary motions

25   practice.  The ever-evolving nature and scope of this action also prejudices Defendants' ability to

26   prepare their defenses.

27           In this context, this Court also can take notice of the fact that this case focuses on policy,

28

1   not damages, and Defendant EPA, directed by Congress, is addressing that policy, as Plaintiffs

2   are well aware.  In the 2014 Farm Bill, Congress recognized the challenges posed by the

3   intersection of FIFRA and ESA and directed EPA to work with sister federal agencies "to

4   minimize delays in integrating applicable pesticide registration and reregistration review

5   requirements and the species and habitat protection processes" described in the ESA.  Report to

6   Accompany Agricultural Act of 2014, H.R. 2642, H.R. Rep. No. 113-333, at 530 (2014),

7   *reprinted in* 2014 U.S.C.C.A.N. 12. That mandate resulted in a 2014 report to Congress[40] and

8   production of the Biological Evaluations and consultation activities described at pp. 16-17 *supra*.

9   This work is continuing, regardless of the outcome of the Court's decision on this Motion.

10        Moreover, should Plaintiffs choose to pursue their concerns through litigation after

11   dismissal of the TAC by this Court, they may do so by filing a properly formulated complaint

12   that follows the rulings of this Court and those of the Ninth Circuit.  And this Court has

13   recognized, "other administrative means exist for 'any interested person' to petition the EPA to

14   conduct a 'special review'" of a pesticide to seek the species protection results Plaintiffs ask for

15   here.  *CBD v. EPA*, Order Granting First Motion to Dismiss at *21.

16        The fourth factor is the public policy favoring disposition of cases on their merits.  Any

17   case that has been "stalled or unreasonably delayed" by virtue of a plaintiff's actions is properly

18   dismissed under Rule 41(b).  *In re PPA Prods. Liab. Litig.*, 460 F.3d at 1228.  This case has been

19   on file for years, has not moved beyond the pleading stage, and is indefinitely stalled due to

20   Plaintiffs' refusal to comply with the Court's orders and the Federal Rules of Civil Procedure.

21   As the Ninth Circuit has recognized, "this factor lends little support to a party whose

22   responsibility it is to move a case toward disposition on the merits but whose conduct impedes

23

24        [40] Interim Report to Congress on Endangered Species Act Implementation in Pesticide
Evaluation Programs, U.S. Environmental Protection Agency, U.S. Fish and Wildlife Service,

25   National Marine Fisheries Service, and the U.S. Department of Agriculture (Nov. 2014)
*available at* https://www.epa.gov/sites/production/files/2015-

26   07/documents/esareporttocongress.pdf (last accessed Nov. 15, 2017); *see generally,* Evaluation
of the U.S. EPA Pesticide Product Reregistration Process: Opportunities for Efficiency and

27   Innovation, Attachment to Slip Op., *CBD v. EPA*, Ninth Circuit Opinion at Dkt. No. 71-2.

28

Case Number: 11-cv-293-JCS
Intervenor-Defendants' Motion to Dismiss

1    progress in that direction." *Id*. (internal quotation marks omitted), *see also Morris v. Morgan*

2    *Stanley & Co.*, 942 F.2d 648, 652 (9th Cir. 1991).  The years-long delay of this case is solely due

3    to Plaintiffs' many failings.  Thus, the fourth *Ferdik* factor weighs in favor of dismissal.

4         The fifth factor, the availability of less drastic sanctions, also weighs in favor of

5    dismissal.  This action has been pending since 2011.  Plaintiffs are now on their fourth

6    complaint, and have again presented a seriously deficient complaint, despite multiple chances to

7    amend.  Plaintiffs have shown that even if given another bite at the apple, they are unlikely to

8    comply with this Court's orders.

9    **V.    CONCLUSION**

10        For the foregoing reasons, the TAC should be dismissed in its entirety with prejudice.

11

12                           *            *            *

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1          *          *          *

2

3     Dated:  11/15/2017       Respectfully submitted,

4                                    /s/ David B. Weinberg**

5

6     WILEY REIN LLP                      CROWELL & MORING LLP
      David B. Weinberg (D.C. Bar No.     Kirsten L. Nathanson (D.C. Bar No. 463992)*
7     186247)*                            knathanson@crowell.com
      dweinberg@wileyrein.com                 1001 Pennsylvania Ave., NW
8     Roger H. Miksad (D.C. Bar No. 996137)*  Washington, D.C. 20004-2595
      rmiksad@wileyrein.com                   T: (202) 624-2500 F: (202) 628-5116
9         1776 K Street NW               Tracy Eila Reichmuth (CA Bar No. 215458)
          Washington, DC  20006          treichmuth@crowell.com
10        T: (202) 719-7000 F: (202) 719-7049    3 Embarcadero Center, 26th Floor
      CROWELL & MORING LLP                   San Francisco, CA 94111
11    Tracy Eila Reichmuth (CA Bar No.        T: (415)986-2800 F: (415)986-2827
      215458)                            *Attorneys for Intervenor-Defendants American*
12    treichmuth@crowell.com             *Farm Bureau Federation, et al.*
          3 Embarcadero Center, 26th Floor
13        San Francisco, CA 94111        AMERICAN CHEMISTRY COUNCIL
          T: (415)986-2800 F: (415)986-2827  Amelia A. Thorn (D.C. Bar No. 1013828)
14    *Attorneys for Intervenor-Defendants*  amelia_thorn@americanchemistry.com
      *CropLife America, et al.*             700 2nd Street, NE
15                                           Washington, DC 20002
                                             T: (202) 249-6729
16                                       STEPTOE & JOHNSON LLP
                                         Seth Goldberg (CA Bar No. 153719)
17                                       sgoldberg@steptoe.com
                                         Cynthia L. Taub (D.C. Bar No. 445906)*
18                                           ctaub@steptoe.com
                                             1330 Connecticut Avenue, NW
19                                           Washington, DC 20036
                                             T: (202) 429-3000 F: (202) 429-3902
20                                       *Attorneys for Intervenor-Defendant American*
                                         *Chemistry Council*
21

22      *Admitted *pro hoc vice*

23    **In accord with Local Rule 5-1(i)(3), I attest that concurrence in the filing of this document has
24    been obtained from the other signatories who are listed on this signature page.

25

26

27

28