UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CENTER FOR BIOLOGICAL
DIVERSITY, et al.,

        Plaintiffs,

   v.

ENVIRONMENTAL PROTECTION
AGENCY, et al.,

        Defendants.

Case No. 11-cv-00293-JCS

**ORDER REGARDING MOTIONS TO DISMISS THIRD AMENDED COMPLAINT**

Re: Dkt. Nos. 275, 276

## I.    INTRODUCTION

Plaintiffs Center for Biological Diversity ("CBD") and Pesticide Action Network North America assert that the Environmental Protection Agency ("EPA") and its administrator Scott Pruitt (collectively, the "Federal Defendants") violated duties under the Endangered Species Act ("ESA") by failing to initiate or reinitiate consultation with the Fish and Wildlife Service and National Marine Fisheries Service (the "Services") in the course of registering pesticides under the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"). Chemical and agricultural business organizations ("Intervenors," or collectively with the Federal Defendants, "Defendants") have intervened as additional defendants. After the Ninth Circuit affirmed in part and reversed in part a previous order of this Court dismissing some of Plaintiffs' claims, Plaintiffs filed their operative Third Amended Complaint, and Intervenors and the Federal Defendants each filed a motion to dismiss. The Court heard argument on June 15, 2018. For the reasons discussed below, the motions are GRANTED in part but DENIED in large part. Plaintiffs may file a fourth amended complaint consistent with this order no later than July 20, 2018.[1]

---

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge for all purposes pursuant to 28 U.S.C. § 636(c).

United States District Court
Northern District of California

## II.    BACKGROUND

This order assumes the parties' familiarity with the subject matter and history of this case, which has been pending for more than seven years, including extended periods when the case was on appeal before the Ninth Circuit or stayed to allow for settlement discussions.  The Ninth Circuit's opinion dated February 2, 2017 provides a detailed summary of the underlying statutory framework and the history of the action.  *See generally Ctr. for Biological Diversity v. U.S. Envtl. Prot. Agency* ("*CBD v. EPA*"), 847 F.3d 1075, 1081–86 (9th Cir. 2017).

In brief, the "ESA seeks to protect and conserve endangered and threatened species and their habitats" by "requiring federal agencies to consult with the Service[s] to ensure their discretionary actions do not jeopardize endangered and threatened species, or adversely modify a listed species' critical habitat."  *Id.* at 1084 (footnote and citations omitted).  Consultation is required when an agency determines that its action "'*may* affect listed species or critical habitat,'" and the Services must then prepare an opinion as to whether the action would in fact have such an effect.  *Id.* at 1084–85 (quoting 50 C.F.R. § 402.14(h)) (emphasis added).  "FIFRA provides a comprehensive regulatory scheme for the use, sale, and labeling of pesticide active ingredients and pesticide products."  *Id.* at 1085.  As a result of legislation enacted in 1988, the EPA is currently undergoing a process of reregistering pesticides that were first registered before 1984, which involves multiple steps including the issuance of a "Reregistration Eligibility Decision" ("RED") related to each registered active ingredient, followed by reregistration of each individual product containing that active ingredient.  *Id.* at 1085–86.

Plaintiffs filed their original complaint in 2011, asserting a single claim for relief based on the EPA's failure to consult under the ESA while continuing to exercise discretionary control over the use of 382 registered pesticide ingredients.  On April 22, 2013, this Court granted a motion to dismiss on the grounds that retaining control is not an affirmative agency action requiring consultation under the ESA as interpreted by *Karuk Tribe of California v. U.S. Forest Service*, 681 F.3d 1006 (9th Cir. 2012) (en banc), and that Plaintiffs had not sufficiently alleged circumstances triggering an obligation to reinitiate consultation under 50 C.F.R. § 402.16.  *See generally* Apr.

2013 Order (dkt. 157).[2]  The Court held that more specific allegations would be necessary to evaluate standing, the jurisdictional requirements of FIFRA, and the application of 28 U.S.C. § 2401(a)'s six-year statute of limitations.  *See id.*  Plaintiffs filed an amended complaint, and Defendants moved for a more definite statement under Rule 12(e) of the Federal Rules of Civil Procedure.  The Court granted those motions in part, holding that Plaintiffs needed to identify more specifically the agency actions—in particular, reregistrations of particular products—on which they based their failure-to-initiate-consultation claims, but that Plaintiffs did not need to identify particular agency actions related to their failure-to-reinitiate claims.  *See generally* Nov. 2013 Order (dkt. 192).[3]

On August 13, 2014, the Court granted in large part Defendants' motions to dismiss Plaintiffs' Second Amended Complaint.  *See generally* Aug. 2014 Order (dkt. 222).[4]  The Court held that claims based on the EPA's issuance of REDs either warranted dismissal based on the statute of limitations or fell within the exclusive jurisdiction of the courts of appeals under FIFRA section 16(b), and thus outside the jurisdiction of this Court, because all REDs issued within the limitation period were subject to public notice and comment and thus constituted actions "following a public hearing" based on the Ninth Circuit's interpretation of section 16(b).  *Id.* at 15–17 (citing, *e.g.*, *United Farm Workers of Am. v. Adm'r, Envtl. Prot. Agency*, 592 F.3d 1080 (9th Cir. 2010)).  The Court again held that discretionary control over registered pesticides did not constitute agency action sufficient to require consultation under the ESA, *id.* at 17–19, and also held that the "completion" of all product reregistrations for a particular active ingredient was "a mere fact" and did not constitute an agency action distinct from the product reregistrations themselves, *id.* at 20.  The Court held that the reregistrations were themselves agency actions, but dismissed claims based on the reregistrations as impermissible collateral attacks on the REDs, which, as noted above, were not subject to challenge in a district court.  *Id.* at 20–28.  The Court

---

[2] *Ctr. for Biological Diversity v. Envtl. Prot. Agency*, No. 11-cv-00293-JCS, 2013 WL 1729573 (N.D. Cal. Apr. 22, 2013).
[3] *Ctr. for Biological Diversity v. Envtl. Prot. Agency*, No. 11-cv-00293-JCS, 2013 WL 6225183 (N.D. Cal. Nov. 25, 2013).
[4] *Ctr. for Biological Diversity v. Envtl. Prot. Agency*, 65 F. Supp. 2d 742 (N.D. Cal. 2014).

granted Plaintiffs leave to amend to include more specific allegations identifying any salient differences between the REDs and the subsequent product reregistrations. *See id.* The Court denied Defendants' motion as to Plaintiffs' claims for failure to reinitiate consultation, except with respect to active ingredients for which all product reregistrations had been completed, because in those circumstances the reregistrations fully superseded the original registrations on which Plaintiffs sought reinitiation of consultation. *Id.* at 28–39.

Plaintiffs appealed to the Ninth Circuit, which affirmed this Court's order except as to claims based on failure to initiate consultation regarding product reregistrations. *See generally CBD v. EPA*, 847 F.3d 1075. The Ninth Circuit held that "[t]he collateral attack doctrine is not at issue here" because the reregistrations were separate actions from the REDs based on different data and determinations, and that Plaintiffs were "not required to allege facts beyond what [they] already ha[d] alleged in [their] Second Amended Complaint" with respect to the reregistration claims. *Id.* at 1092–94.

Following remand, the parties stipulated to allow Plaintiffs to amend their complaint once again. Plaintiffs' Third Amended Complaint asserts thirty-eight claims: thirty-five claims for failure to consult under the ESA when registering or reregistering over two thousand pesticide products[5] containing thirty-five active ingredients (3d Am. Compl. ("TAC," dkt. 259-2) ¶¶ 842–1051), and three claims for failing to reinitiate consultation regarding the pesticide active ingredients dazomet (*id.* ¶¶ 793–807, 1052–59), malathion (*id.* ¶¶ 808–27, 1060–67), and permethrin (*id.* ¶¶ 828–41, 1068–75). Plaintiffs seek a declaration that the EPA is violating the ESA by failing to consult or reinitiate consultation, an order that the EPA begin or reinitiate consultation by a date certain, and vacatur of the EPA's authorizations of the products at issue until consultation is complete and the EPA is in compliance with section 7(a)(2) of the ESA, as well as an award of attorneys' fees and costs. *Id.* at 270–71, ¶¶ 1–5 (prayer for relief).

The Federal Defendants now move to dismiss for failure to include sufficient allegations

---

[5] The Third Amended Complaint identifies a much larger number of product registration and reregistration actions than the Second Amended Complaint, but does not expand the scope of active ingredients at issue.

regarding Plaintiffs' standing, failure to comply with the ESA's pre-suit notice requirement, and failure to bring claims regarding certain products within the statute of limitations. *See generally* Fed. Defs.' Mot. (dkt. 275). Intervenors move to dismiss on the same grounds, and also based on mootness as to certain claims, failure to identify agency actions with respect to reinitiation claims, and failure to follow court orders. *See generally* Intervenors' Mot. (dkt. 276).

## III. ANALYSIS

### A. Legal Standards

#### 1. Rule 12(b)(1)

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, a district court must dismiss an action if it lacks jurisdiction over the subject matter of the suit. *See* Fed. R. Civ. P. 12(b)(1). "Subject matter jurisdiction can never be forfeited or waived and federal courts have a continuing independent obligation to determine whether subject-matter jurisdiction exists." *Leeson v. Transamerica Disability Income Plan*, 671 F.3d 969, 975 n.12 (9th Cir. 2012) (internal quotation marks and citations omitted). On a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), it is the plaintiff's burden to establish the existence of subject matter jurisdiction. *Kingman Reef Atoll Invs., LLC v. United States*, 541 F.3d 1189, 1197 (9th Cir. 2008).

A party challenging the court's subject matter jurisdiction under Rule 12(b)(1) may bring a facial challenge or a factual challenge. *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). In evaluating a facial challenge to subject matter jurisdiction, the court accepts the factual allegations in the complaint as true. *See Miranda v. Reno*, 238 F.3d 1156, 1157 n.1 (9th Cir. 2001). Where a defendant brings a factual challenge, on the other hand, "a court may look beyond the complaint to matters of public record without having to convert the motion into one for summary judgment." *White*, 227 F.3d at 1242 (citation omitted). Once the moving party has made a factual challenge by offering affidavits or other evidence to dispute the allegations in the complaint, the party opposing the motion must "present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction." *Colwell v. Dep't of Health & Human Servs.*, 558 F.3d 1112, 1121 (9th Cir. 2009) (quoting *St. Clair v. City of Chico*,

880 F.2d 199, 201 (9th Cir. 1989)).

### 2. Rule 12(b)(6)

A complaint may be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim on which relief can be granted. "The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint." *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983). Generally, a plaintiff's burden at the pleading stage is relatively light. Rule 8(a) of the Federal Rules of Civil Procedure states that a "pleading which sets forth a claim for relief . . . shall contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

In ruling on a motion to dismiss under Rule 12(b)(6), the court analyzes the complaint and takes "all allegations of material fact as true and construe[s] them in the light most favorable to the non-moving party." *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal may be based on a lack of a cognizable legal theory or on the absence of facts that would support a valid theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A complaint must "contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "[C]ourts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557) (alteration in original). Rather, the claim must be "'plausible on its face,'" meaning that the plaintiff must plead sufficient factual allegations to "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 570).

### B.    Standing

In order for an action to satisfy Article III's requirement of a "case or controversy," a plaintiff must establish standing by showing "(1) an injury in fact that (2) is fairly traceable to the challenged conduct and (3) has some likelihood of redressability." *Jewel v. Nat'l Sec. Agency*, 673 F.3d 902, 908 (9th Cir. 2011) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). Defendants' arguments here focus on the first prong: whether Plaintiffs have sufficiently alleged that they, through their members, suffered cognizable harm.  At the pleading stage, "[g]eneral factual allegations of injury resulting from the defendant's conduct may suffice, as we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Id.* at 907 (quoting *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 889 (1990)) (second alteration in original).

The Ninth Circuit held on appeal of this action that, with respect to claims based on pesticide product reregistrations, "CBD is not required to allege facts beyond what it already has alleged in its Second Amended Complaint," *CBD v. EPA*, 847 F.3d at 1093, which included no more specific allegations as to standing than the present Third Amended Complaint.  As Defendants correctly note in their reply briefs, the Ninth Circuit expressed its approval of Plaintiffs' allegations only within its discussion of the collateral attack doctrine, and did not specifically address standing.  *See* Intervenors' Reply (dkt. 282) at 4; Fed. Defs.' Reply (dkt. 283) at 3–4.  Nevertheless, because "federal courts are required sua sponte to examine jurisdictional issues such as standing," the Ninth Circuit's holding that the allegations as to certain claims were sufficient at least suggests that the Circuit did not consider standing to be barrier to such claims. *See B.C. v. Plumas Unified Sch. Dist.*, 192 F.3d 1260, 1264 (9th Cir. 1999).  This Court reaches the same conclusion with respect to the allegations of the Third Amended Complaint.

The thrust of Defendants' arguments regarding standing is that Plaintiffs must include separate allegations tying each individual agency action approving a pesticide product to harm to a particular species in a particular area affecting one or more of Plaintiffs' members.  While Defendants are correct that Plaintiffs must have standing to challenge each action included in their complaint, Plaintiffs' allegations that their members have cognizable interests in species that may

be affected by products containing all of the various active ingredients listed in the Third Amended Complaint are sufficient at the pleading stage. *See, e.g.*, TAC ¶¶ 118–23 (allegations regarding Plaintiffs' members' interests in products containing 1,3-dichloropropene).

Defendants argue that by grouping the various products by their active ingredients, Plaintiffs' allegations are inconsistent with their theory—and the Ninth Circuit's recognition, 847 F.3d at 1093—that the individual product approvals are separate agency actions based on considerations distinct from the analysis of active ingredients that the EPA conducts in the context of issuing REDs. *See, e.g.*, Fed. Defs.' Reply at 5; Intervenors' Reply at 1–3. The fact that the products require individualized determinations for approval does not render implausible Plaintiffs' allegations that the EPA's approvals of products within each active ingredient group "may affect" (which is all that the ESA requires to trigger consultation) a list of endangered species susceptible to harm from the active ingredient used in each product. *See, e.g.*, TAC ¶ 118 ("The list of species that may be affected by *products containing* 1,3-dichloropropene is provided in Exhibit A . . . ." (emphasis added)); *id.* ¶ 122 ("[P]roducts containing 1,3-dichloropropene may affect the species identified in Exhibit A, as well as their identified critical habitat.").

Intervenors argue that Plaintiffs have not sufficiently alleged standing because certain products at issue were approved with conditions that would reduce the likelihood of them affecting certain species at issue. Intervenors focus on the GlyMix MT product, which is not approved for use in Puerto Rico, and contend that it would not affect the Puerto Rican crested toad, which is the species that Plaintiffs focus on as an example of harm that may be caused by products (like GlyMix MT) that contain the active ingredient 2,4-D. Intervenors' Reply at 2–4. Intervenors fail to address the other species listed in Exhibit A to the complaint that Plaintiffs allege may be harmed by 2,4-D products like GlyMix MT. *See* TAC ¶¶ 139, 143. The Federal Defendants similarly argue that Plaintiffs' prayer for nationwide relief is not tied to the specific species that Plaintiffs discuss as examples in their complaint, without addressing the additional species listed in Exhibit A that Plaintiffs allege may be affected by the products at issue. *See* Fed. Defs.' Mot. at 15. And while the Federal Defendants note that several products are only approved for relatively esoteric uses, such as on islands or vessels, Fed. Defs.' Reply at 2–4, the question of

whether such products in fact "may affect" the species at issue goes directly to the merits of Plaintiffs' claims.

At the pleading stage and under the circumstances of this case, the question of standing is better focused on whether Plaintiffs have plausibly alleged a cognizable interest in the species that they allege may be affected. "[T]he desire to use or observe an animal species, even for purely esthetic purposes, is undeniably a cognizable interest for purpose of standing." *Defs. of Wildlife*, 504 U.S. at 562–63. Particularly in light of the allegations that each plaintiff has tens of thousands of conservation-minded members distributed nationwide, *see* TAC ¶¶ 11–12, the allegations that Plaintiffs' members seek to use or observe the species listed in Exhibit A are plausible and sufficient to survive a motion to dismiss.

Plaintiffs' burden will be significantly greater at summary judgment, where they must "submit affidavits or other evidence showing, through specific facts, not only that listed species were in fact being threatened . . . but also that one or more of [their] members would thereby be 'directly' affected apart from their 'special interest' in the subject." *Defs. of Wildlife*, 504 U.S. at 563 (citations, brackets, and internal quotation marks omitted). At the pleading stage, however, Plaintiffs' relatively general allegations regarding their members' interest in the species at issue, both those discussed as examples in the complaint and those listed in Exhibit A thereto, suffice to allege standing. *See Jewel*, 673 F.3d at 907.

## C. Statute of Limitations

Defendants argue that Plaintiffs' claims as to certain registration and reregistration actions are untimely under the applicable six-year statute of limitations because they are not sufficiently related to Plaintiffs' original complaint—which only specifically addressed approval of pesticide active ingredients, rather than approval of products containing such ingredients—to relate back to the date of that filing. *See* Fed. Defs.' Mot. at 19–23; Intervenors' Mot. at 12–14. Plaintiffs contend that the relation-back doctrine applies because their present claims arise out of the same common facts as their original complaint: the risk of harm to endangered species from the active ingredients at issue, and the EPA's failure to consult under the ESA before permitting those chemicals to be used as pesticides. Opp'n (dkt. 279) at 32–37.

Rule 15 of the Federal Rules of Civil Procedure provides in relevant part that an amended pleading "relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). The Ninth Circuit looks to whether the original and amended claims "share a common core of operative facts," and applies the standard "liberally." *ASARCO, LLC v. Union Pac. R.R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014) (citations omitted). "Under Rule 15(c)'s liberal standard, a plaintiff need only plead the general conduct, transaction, or occurrence to preserve its claims against a defendant. The exact contours of those claims—the facts that will ultimately be alleged and the final scope of relief that will be sought—can and should be sorted out through later discovery and amendments to the pleadings." *Id.* at 1006 (holding that an amendment expanding the scope of a claim for environmental cleanup costs to include a geographic area explicitly excluded from the original complaint nevertheless related back to the original pleading). Defendants are, of course, correct that there are limits to the doctrine. The Ninth Circuit has held, for example, that an amended claim must be amenable to proof "by the 'same kind of evidence' offered in support of the original pleading," *Percy v. S.F. Gen. Hosp.*, 841 F.2d 975, 978 (9th Cir. 1988) (citation omitted), and that an "entirely new claim for compensation discrimination unrelated to [existing] promotion, hostile work environment, and retaliation claims" did not relate back even where both the new and existing claims were based on alleged racial discrimination, *Williams v. Boeing Co.*, 517 F.3d 1120, 1133 & n.8 (9th Cir. 2008).

Plaintiffs' original complaint in this case asserted a single claim, alleging that the EPA violated the ESA by failing to initiate or reinitiate consultation regarding "the pesticides identified in the paragraphs above"—i.e., pesticide active ingredients—while "retain[ing] ongoing discretionary control and involvement over all of these pesticides." Compl. (dkt. 1) ¶¶ 140–44.[6] The original complaint focused on the risks posed to endangered species by "EPA-registered pesticides." *Id.* ¶¶ 1; *see also id.* ¶ 12 ("EPA must register and authorize pesticides before they

---

[6] Although the original complaint discussed various REDs issued by the EPA, it did not, as the Federal Defendants now suggest in their present motion, base the EPA's purported duty of consultation on the issuance of the REDs. *See* Fed. Defs.' Mot. at 21.

can be used."); *id.* ¶¶ 34–45 (discussing the process of "register[ing] a pesticide" in a way that primarily describes the procedures for registering products, rather than receiving approval for active ingredients). It identified the "pesticides" at issue, which it described as "currently registered for use by EPA," by listing several hundred pesticide active ingredients. *Id.* ¶ 130. After this Court held that original complaint lacked sufficient specificity and that (as the Ninth Circuit affirmed) ongoing discretionary control is not itself an agency action triggering a duty to consult under the ESA, and after the complaint underwent multiple rounds of dismissal and amendment based on those and other pleading defects, Plaintiffs eventually filed their operative Third Amended Complaint, in which the thirty-five failure-to-consult claims focus on the EPA's duties when registering or reregistering scores of pesticide products containing thirty-five of the active ingredients included in the original complaint.

While Plaintiffs' original claim, as originally pleaded, was not cognizable, "the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading" encompasses the conduct giving rise to Plaintiffs' present failure-to-consult claims. *See* Fed. R. Civ. P. 15(c)(1)(B). The questions at issue in both the original complaint and the Third Amended Complaint are the extent to which the products containing the listed pesticide ingredients may affect endangered species, and the extent to which the EPA engaged in ESA consultation regarding those ingredients. Although the original complaint listed and focused primarily on pesticide ingredients rather than pesticide products, its references to "registered pesticides" and description of the registration process suggest an imprecise use of the word "pesticide" that encompassed both ingredients and products. Regardless, a claim based on the effects and approvals of active ingredients, framed as broadly as it was in the original complaint, would encompass the effects and registrations of products containing those ingredients, because individual pesticide products are the means by which the ingredients are used in practice and thus the means by which they affect (if at all) listed species. If Plaintiffs' original complaint had been allowed to proceed, it therefore would have required the Court to examine what products the EPA approved containing the ingredients at issue, whether those products "may affect" endangered species, and what if any consultation the EPA engaged in under the ESA regarding any such risks.

11

All of those issues demonstrate "a common core of operative facts" shared by the original complaint and the Third Amended Complaint. *See ASARCO*, 765 F.3d at 1004.[7] To the extent that the current complaint might require consideration of *some* additional evidence beyond what would have been relevant to the original complaint, Ninth Circuit precedent permits at least some variance: the addition of previously-excluded geographic scope to an environmental cleanup contribution claim in *ASARCO* would presumably have implicated new evidence pertaining to that area, as would the additional period of unpaid wages that the plaintiffs were permitted to add in *Rural Fire Protection Co. v. Hepp*, 366 F.2d 355, 362 (9th Cir. 1966), on which the *ASARCO* decision relied.

The circumstances here are not analogous to cases where the Ninth Circuit has rejected arguments that claims related back to an earlier pleading. In *Oja v. U.S. Army Corps of Engineers*, a case based on disclosure of private information, the court held that an amended complaint alleging a particular instance in which the information at issue was disclosed did not relate back to an original complaint alleging a different instance of disclosure of the same information because each disclosure was "distinct in time and place, if not substance." 440 F.3d 1122, 1134–35 (9th Cir. 2006). Here, rather than relying on an earlier complaint that alleged different registration actions, Plaintiffs seek to relate claims of specific registration and reregistration actions to the broader claim in their original complaint that more generally implicated the EPA's control over the pesticide active ingredients at issue, and thus necessarily encompassed the particular actions that Plaintiffs have now identified. Nor is this case like *Williams v. Boeing Co.*, where the Ninth Circuit held that a class action claim for compensation discrimination did not relate back to claims for promotion discrimination, hostile work environment, and retaliation because the new claim rested on both a different theory and different facts—in particular, statistical evidence of relative levels of compensation, which was not implicated by the earlier claims. 517 F.3d 1120, 1132–34 (9th Cir. 2008). As noted above, the evidence relevant to Plaintiffs' current claims for failure to

_____

[7] It is true that the length of Plaintiffs' complaint has increased significantly over the various amendments, but the growth in page count is due to increased granularity within a narrower scope of conduct at issue.

initiate consultation regarding product registration or reregistration actions would have also been relevant to Plaintiffs' original claim for failure to consult regarding the EPA's broad and ongoing discretionary control of pesticide ingredients, which necessarily encompasses the product-specific actions now at issue, had such a claim been allowed to proceed.

The Court holds that the failure-to-consult claims in the Third Amended Complaint relate back to the original complaint filed on January 20, 2011. Accordingly, the applicable statute of limitations encompasses actions taken since January 20, 2005. Defendants' motions to dismiss Plaintiffs' claims based on the statute of limitations is DENIED.

### D. Pre-Suit Notice Requirement

The ESA authorizes citizen suits to enjoin any person or government agency alleged to be in violation of the statute, but requires that "[n]o action may be commenced under [that provision] . . . prior to sixty days after written notice of the violation has been given to the Secretary, and to any alleged violator." 16 U.S.C. § 1540(g)(1)–(2). Plaintiffs provided a notice of intent to sue on May 20, 2010. *See generally* Opp'n Ex. A. Defendants argue that that the notice requirement deprives the Court of jurisdiction to hear some or all of the claims at issue: the Federal Defendants contend that the notice letter cannot be effective as to actions taken after the date of the letter, and Intervenors contend that the letter is not sufficiently tied to any particular agency actions to give effective notice of any of the claims in the Third Amended Complaint.

Plaintiffs argue as a threshold matter that they need not comply with the ESA's requirement of a notice letter because FIFRA section 16(a) provides an independent basis for jurisdiction with no such requirement, citing *Washington v. Daley*, 173 F.3d 1158, 1170 n.16 (9th Cir. 1999), where the Ninth Circuit rejected an argument that the ESA's notice requirement applied to a claim brought under the Magnuson Act. *See* Opp'n at 23. *Washington* is distinguishable because the claim at issue there was "that the challenged regulations *violated the Magnuson Act* by failing to comply with the Endangered Species Act" and another statute. *Washington*, 173 F.3d at 1161 (emphasis added). Here, all of Plaintiffs' claims assert that the EPA violated the ESA, with no allegation that the EPA violated any duty imposed by FIFRA, whether by virtue of its alleged ESA violations or in any other way. While FIFRA's provision for

13

review of pesticide registration decisions is also relevant here—particularly with respect to claims for review of decisions after a hearing, which the Court held, and the Ninth Circuit affirmed, fall within the exclusive jurisdiction of the courts of appeals under FIFRA section 16(b)—Plaintiffs cite no authority for the proposition that a claim *for violation of the ESA* may proceed without the notice required by that statute. It is not clear why both statutes should not apply to Plaintiffs' claims where there is no apparent conflict between their requirements, but even if only one could apply, the Ninth Circuit has "held that 'when two jurisdictional statutes draw different routes of appeal, the well-established rule is to apply only the more specific legislation.'" *CBD v. EPA*, 847 F.3d at 1089 (quoting *Am. Bird Conservancy v. FCC*, 545 F.3d 1190, 1194 (9th Cir. 2008)). With respect to claims based on actions that did not follow a public hearing, the ESA's jurisdictional requirement of pre-suit notice is more specific than FIFRA section 16(a)'s general statement that such decisions "are judicially reviewable by the district courts of the United States," and thus applies to Plaintiffs' claims here.

In the alternative, Plaintiffs contend that the notice letter they provided on May 20, 2010 was sufficient to give notice of all claims now at issue. That notice letter, like Plaintiffs' original complaint, asserts that the EPA was required to consult under section 7 of the ESA based on the potential harm to endangered species caused by the active ingredients at issue, but does not specifically discuss any particular pesticide products. *See generally* Opp'n Ex. A. Plaintiffs also mention in a footnote that they provided a supplemental notice letter on December 19, 2017. Opp'n at 27 n.16.

In *Hallstrom v. Tillamook County*, the Supreme Court interpreted a similar notice requirement for claims under the Resource Conservation and Recovery Act of 1976 as requiring dismissal of an action where the plaintiffs had notified the defendant county of their intent to sue, but failed to provide any pre-suit notice to a state agency or the EPA, as required by the statute at issue. 493 U.S. 20, 24, 33 (1989). The district court declined to dismiss the case on that basis, instead staying proceedings for sixty days after the plaintiffs eventually provided the required notice, reasoning that the post-filing notice and delay cured any defect and satisfied the functional purpose of the statute by providing an opportunity for voluntary compliance or administrative

14

enforcement. *Id.* at 24. After years of litigation and an eventual trial, the Ninth Circuit reversed the district court, holding that the failure to provide pre-suit notice deprived the court of jurisdiction and required dismissal, and the Supreme Court affirmed that decision. *Id.* at 24, 33.

Under *Hallstrom*, the supplemental notice letter that Plaintiffs provided in December of 2017 is of no consequence to this Court's jurisdiction over the Third Amended Complaint, which was filed several months earlier. This case differs from *Hallstrom*, however, in that there is no dispute that Plaintiffs provided notice of at least some claims to the relevant parties before filing the action. The question here is whether the notice that Plaintiffs provided was sufficient to encompass the claims they now assert. "'In practical terms, the notice must be sufficiently specific to inform the alleged violator about what it is doing wrong, so that it will know what corrective actions will avert a lawsuit.'" *Nat. Res. Def. Council v. Sw. Marine, Inc.*, 236 F.3d 985, 996 (9th Cir. 2000) (quoting *Atl. States Legal Found., Inc. v. Stroh Die Casting Co.*, 116 F.3d 814, 819 (7th Cir. 1997)) (considering a notice requirement for claims under the Clean Water Act ("CWA")).[8] As part of that inquiry, the Ninth Circuit "consider[s] the defendant's superior access to information about its own activities." *Klamath-Siskiyou Wildlands Ctr. v. MacWhorter*, 797 F.3d 645, 651 (9th Cir. 2015).

For much the same reasons discussed above in the context of holding that Plaintiffs' current claims relate back to the more general claim of their original complaint, the Court is satisfied that Plaintiffs' notice of their position that the EPA failed to engage in necessary consultation when authorizing the use of pesticide active ingredients also provides sufficient notice of the current claims based on failure to consult when registering or reregistering products

---

[8] Subsequent authority addressing the CWA's notice requirement has examined and applied implementing regulations requiring "'sufficient information to permit the recipient to identify the specific standard, limitation, or order alleged to have been violated, the activity alleged to constitute a violation, the person or persons responsible for the alleged violation, the location of the alleged violation, the date or dates of such violation, and the full name, address, and telephone number of the person giving notice.'" *E.g.*, *Ctr. for Biological Diversity v. Marina Point Dev. Co.*, 566 F.3d 794, 801 (9th Cir. 2009) (quoting 40 C.F.R. § 135.3(a)). No equivalent regulations apply to claims under the ESA, and "to the degree that the CWA implementing regulation might be thought to require more specific notice than would be required under the statute, standing alone, [courts] are not bound to adopt that more demanding requirement" in ESA cases. *Klamath-Siskiyou Wildlands Ctr. v. MacWhorter*, 797 F.3d 645, 650 (9th Cir. 2015).

that contain those ingredients. The EPA, knowledgeable of its own procedures, was well aware that the process by which those ingredients were authorized for actual use culminated with registration and reregistration of particular products. It is telling that the Federal Defendants themselves do not join Intervenors' argument that *all* of the product-specific claims fall outside the scope of the 2010 notice letter, instead arguing only that the letter is not effective as to subsequent registration actions. By asserting that the EPA "failed to satisfy its ESA Section 7 requirements regarding registered pesticides," that such "requirements apply to EPA's registration of pesticides," and that "the consultation obligations of the ESA apply to EPA's registration of pesticides under FIFRA," and by asserting that particular active ingredients may affect endangered species, Plaintiffs provided sufficient notice of claims that the EPA was required to engage in consultation before registering or reregistering pesticide products containing those ingredients. *See* Opp'n Ex. A at 2, 6, 124 n.226.

That alone does not resolve whether such notice was effective as to registration actions taken after the date of the notice letter, the issue presented by the Federal Defendants. Courts have reached different answers to that question. The Third Circuit, in a CWA case, held that "as long as a post-complaint discharge violation is of the same type as a violation included in the notice letter (same parameter, same outfall), no new 60-day notice letter is necessary to include these violations in the suit." *Pub. Interest Research Grp. of N.J., Inc. v. Hercules, Inc.*, 50 F.3d 1239, 1250 (3d Cir. 1995). The *Hercules* court based its reasoning in part on the rule that jurisdiction for citizen suits under the CWA requires a continuous or intermittent violation, as opposed to "'wholly past violations,'" and that such suits will therefore often involve conduct that continues or recurs past the date of a notice letter. *Id.* at 1251 (quoting *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 64 (1987)).

The Ninth Circuit has repeatedly cited other aspects of the Third Circuit's *Hercules* decision with approval, but has not applied the particular holding that post-complaint violations of the same type can be added to an action without a new notice letter. *See, e.g.*, *MacWhorter*, 797 F.3d at 651; *Cmty. Ass'n for Restoration of the Env't v. Henry Bosma Dairy*, 305 F.3d 943, 950– 51 (9th Cir. 2002); *Sw. Ctr. for Biological Diversity v. U.S. Bureau of Reclamation*, 143 F.3d 515,

522 (9th Cir. 1998).  In *Henry Bosma Dairy*, the Ninth Circuit specifically noted the Third

Circuit's holding regarding "violations occurring during *and after* the date of the notice letter," but

had no occasion to address that issue because all of the violations in the complaint in that case

occurred before the date of the plaintiff's notice letter.  *See* 305 F.3d at 950 (emphasis added).

On the other hand, several district court decisions, particularly within the Sixth Circuit,

have rejected *Hercules*.  *E.g.*, *Little v. Louisville Gas & Elec. Co.*, 33 F. Supp. 3d 791, 804 (W.D.

Ky. 2014) (collecting district court decisions from within the Sixth Circuit).  In one decision from

this district, considering ESA pesticide product registration claims very similar to those at issue

here, Judge Chesney held that a "Notice Letter could not have provided the requisite notice as the

violation had not yet occurred," but did not consider *Hercules* or engage in extensive analysis of

the issue.  *Ellis v. Bradbury*, No. C-13-1266 MMC, 2014 WL 1569271, at *11 (N.D. Cal. Apr. 18,

2014).  This Court is not aware of appellate decisions from any circuit rejecting the *Hercules* rule.

Other courts have followed *Hercules* and held that, at least in some circumstances, a notice letter

can encompass claims for subsequent related conduct.  *E.g.*, *Atl. States Legal Found.*, 116 F.3d at

819–20 (Seventh Circuit decision holding that a notice letter for discharge of contaminated water

continued to be effective where the defendant redirected the discharge to a different location after

receiving the letter); *Friends of the Earth, Inc. v. Chevron Chem. Co.*, 900 F. Supp. 67, 77 (E.D.

Tex. 1995).

The Ninth Circuit's decision in *Southwest Marine*, while not directly on point, is

instructive on the issue of whether notice can encompass claims based on subsequent action by a

defendant.  In that case, the defendant operated under a permit requiring it to prepare and

implement adequate plans for handling storm water.  236 F.3d at 991–92.  After the plaintiffs

provided notice of intent to sue, but before they filed their complaint, the defendant significantly

modified its storm water plans, and later argued that the plaintiffs' notice letter did not encompass

claims that the new plans still failed to meet the defendant's obligations.  *Id.* at 997.  The Ninth

Circuit addressed the issue as follows:

> The second and more theoretical question that Defendant's argument
> raises is what, if any, effect Defendant's post-notice alterations of its
> plans and facilities had on the adequacy of the notice letter. If a

defendant receives a proper notice letter alleging that it has failed to prepare and implement an adequate plan and, in response, prepares a new plan and begins to implement it before the complaint is filed, is the otherwise proper notice letter defective for failing to identify and discuss the new plan and its implementation? In those circumstances, must a citizen-plaintiff send a new notice letter? We think not. Subject matter jurisdiction is established by providing a notice that is adequate on the date it is given to the defendant. The defendant's later changes to its operations and plans may affect standing, . . . the question of ongoing violations or remedies, . . . or mootness . . . . But such changes do not retroactively divest a district court of jurisdiction . . . .

*Id.* The Court is also mindful of the Ninth Circuit's determination on appeal of this action that "CBD notified the EPA of its intent to file suit, and . . . [n]either the ESA nor FIFRA requires . . . CBD to remind the EPA to engage in ESA consultation at every phase of the pesticide active ingredient and pesticide product reregistration process." *CBD v. EPA*, 847 F.3d at 1093.

The rule of *Hercules* presents an appropriate interpretation of the notice requirement, which is consistent with the Ninth Circuit's analysis in *Southwest Marine* and on appeal of this case. By sending their notice letter in May of 2010, Plaintiffs established subject matter jurisdiction for their claims that the EPA was required to consult under the ESA in authorizing the use of the pesticide active ingredients at issue. Such notice was sufficient to make the EPA aware of Plaintiffs' position, more clearly articulated in their subsequent amended complaints, that ongoing registration and reregistration of products containing those ingredients implicated the consultation requirement. Building from the holding above that notice was adequate as to product registration actions before the date of the notice letter, the Court holds that subsequent registrations of products containing the same active ingredients are sufficiently similar actions to fall within the jurisdiction established by the notice letter. Defendants' motions to dismiss based on the ESA's pre-suit notice requirement are DENIED.

Recognizing that other district courts have disagreed with this Court's conclusion regarding similar claims arising after a notice letter, and that a later determination on appeal that this Court lacked jurisdiction to hear some or all of Plaintiffs' claims would result in significant wasted resources by all parties and the Court in litigating those claims before such determination, the Court will permit Plaintiffs to file a fourth amended complaint subsequent to and referencing

their December 19, 2017 supplemental notice letter.[9]  Plaintiffs' counsel indicated at the hearing that Plaintiffs intend to do so.  Other than the amended notice allegations, or amendments to address other deficiencies identified in this order, any such complaint must be identical to (or narrower than) the present complaint.

### E.    Reregistrations and FIFRA Section 16(b)

Intervenors argue that jurisdiction for Plaintiffs' product reregistration claims falls under section 16(b) of FIFRA, and is therefore exclusive to the courts of appeals, because the relevant agency actions effectively "follow[ed] a public hearing" due to the opportunity for public comments on REDs issued for the active ingredients used in those products.  Intervenors' Mot. at 8–10.  FIFRA "bifurcates which claims may be brought before the district court and which claims must be presented to the court of appeals," with actions following a hearing committed to the courts of appeals.  *CBD v. EPA*, 847 F.3d at 1088 (citing 7 U.S.C. § 136n).  As this Court previously held, and the Ninth Circuit affirmed, the REDs themselves were actions "following a public hearing" because "the issuance of the subject REDs were all preceded by a public comment and notice period published in the Federal Register." *Id.* at 1088–90 (citing *United Farm Workers of Am. v. Adm'r, Envtl. Prot. Agency*, 592 F.3d 1080, 1082–84 (9th Cir. 2010)).

While at least some of the Federal Register notices regarding the REDs identified particular products as "eligible for reregistration," they stopped short of stating intent to actually reregister those products on any particular terms.  *See, e.g.*, 1,3-Dichloropropene; Pesticide Reregistration Eligibility Decision Document; Availability for Comment, 64 Fed. Reg. 9,145 (Feb. 24, 1999).  Instead, the notices specifically provided that the EPA would make its decisions to reregister particular products separately in the future—to use one example, the RED notice for 1,3 dichloropropene stated that "products will not be reregistered until adequate product specific data have been submitted and all necessary product label changes are implemented," and allowed registrants eight months from receipt of the RED to submit relevant data, meaning that the data

---

[9] The Supreme Court in *Hallstrom* acknowledged that, while failure to comply with the notice requirement can require dismissal, it does not warrant dismissal with prejudice. *See Hallstrom*, 493 U.S. at 32 ("Petitioners remain free to give notice and file their suit in compliance with the statute to enforce pertinent environmental standards.").

would not be available until well after the sixty-day comment period for the RED notices expired. *Id.* at 9,146; *see also, e.g.*, Carabaryl Reregistration Eligibility Decision, 72 Fed. Reg. 58,844 (Oct. 17, 2007 ("Upon submission of any required product specific data under section 4(g)(2)(B) of FIFRA and any necessary changes to the registration and labeling (either to address concerns identified in the RED or as a result of product specific data), EPA will make a final reregistration decision under section 4(g)(2)(C) of FIFRA for products containing carbaryl.").  It is also worth noting that several of the RED notices that Intervenors cite as purportedly inviting comment on product reregistrations in fact state that the EPA took comments during *earlier* phases leading up to the RED, and would *not* accept further public comments after issuing the RED.  *E.g.*, 2,4-D Reregistration Eligibility Decision, 70 Fed. Reg. 45,719, 45,720 (Aug. 8, 2005) ("Because two public comment periods as well as numerous opportunities for informal consultation were offered during the development of this decision, and since all risk mitigation issues have been resolved, EPA does not plan to request additional public comment on the 2,4-D RED.  The Agency therefore is issuing the 2,4-D RED without a comment period."); Carbaryl Reregistration Eligibility Decision, 72 Fed. Reg. at 58,844–45 ("Because all issues related to this pesticide were resolved through consultations with stakeholders, the Agency is issuing the carbaryl RED without a comment period.").

Even for pesticides like 1,3 dichloropropene, where the EPA solicited comment on the final RED notice, the opportunity to comment on a determination that products would be *eligible* for reregistration did not serve as a "public hearing" on the subsequent decisions to actually reregister particular products.  *See CBD v. EPA*, 847 F.3d at 1092 (describing the difference between a RED and a product reregistration decision and concluding that "the reregistering of a pesticide product involves multiple other steps, thus triggering its own consultation requirement").  The comments that Intervenors cite as purportedly "recogniz[ing] that EPA was asking for comments on EPA's proposal to reregister individual . . . products" in fact address whether products should be *eligible* for reregistration.  Intervenors' Reply at 6 & n.7; *see also* Intervenors' Mot. at 9 n.14.

At the hearing, Intervenors' counsel argued that because the REDs described the EPA's

20

plan for eventual consultation with the Services, which did not call for consultation accompanying reregistration actions, Plaintiffs' claims based on failure to consult regarding the reregistration actions should be construed as challenging that plan, and should fall within the exclusive jurisdiction of the courts of appeals because there was an opportunity for public comment on the consultation plan. That argument does not appear in Intervenors' briefs and is not persuasive. The exclusive jurisdiction provision at issue appears in FIFRA, not the ESA, and applies to lawsuits challenging agency final actions under FIFRA. The relevant distinction for FIFRA section 16's jurisdictional bifurcation is whether the particular FIFRA action being challenged followed a public hearing. As discussed in this Court's previous order and the Ninth Circuit's opinion, Plaintiffs' now-dismissed claims impermissibly sought to set aside the REDs, which were actions following a public hearing, without complying with section 16(b)'s requirements for setting aside such actions. The fact that Plaintiffs could have commented at that time on the EPA's plan for consultation (or for a lack of consultation, as the case may be) does not transform the subsequent reregistration decisions, which are the separate FIFRA actions implicated by the present claims, into actions taken after a public hearing.

Because Intervenors present no example of a notice and opportunity for comment on an actual reregistration decision, their motion to dismiss Plaintiffs' reregistration claims based on the exclusive jurisdiction provision of FIFRA section 16(b) is DENIED.

### F. Mootness

Intervenors contend that claims related to products containing atrazine, carbaryl, chlorpyrifos, diazinon, methomyl, and simazine are moot because existing settlement agreements in other actions call for consultation regarding those active ingredients, the EPA has publicly committed to initiate consultation, and consultation has now concluded with respect to certain ingredients. Intervenors' Mot. at 14–17. Plaintiffs respond that stipulations filed in settling other cases explicitly disclaim any requirement that the EPA engage in nationwide consultation, and that while consultation has occurred as to some ingredients, the fact that the omission giving rise to the alleged violation has been corrected does not moot Plaintiffs' claims for relief that extend beyond merely initiating consultation, such as the request for injunctive relief vacating the EPA's

authorization of the pesticides at issue until the EPA has complied with its obligations under the ESA. Opp'n at 29–31.

While Intervenors are correct the Plaintiffs' claims assert that the EPA violated its obligation under the ESA only by failing to initiate or reinitiate consultation when it was required to do so, decisions by the Ninth Circuit support Plaintiffs' position that the appropriate measure of mootness is not whether the EPA has now taken that action, but whether any relief remains available for its alleged failure to do so at an earlier time.

In *Neighbors of Cuddy Mountain v. Alexander*, 303 F.3d 1059 (9th Cir. 2002), the plaintiff alleged that the United States Forest Service violated the National Forest Management Act and the National Environmental Policy Act by approving logging in a particular area. 303 F.3d at 1061. The defendants argued that the case was moot after logging was complete, but the Ninth Circuit held "that completion of activity is not the hallmark of mootness. Rather, a case is moot only where no effective relief for the alleged violation can be given." *Id.* at 1065 (citing *Cantrell v. City of Long Beach*, 241 F.3d 674, 678 (9th Cir. 2001)). Recognizing that "of course the logged trees cannot be brought back," the Ninth Circuit nevertheless held that effective relief remained available, because the district court could order the Forest Service to engage in other remedial measures to offset the harm to protected species affected by the logging or assist with their recovery. *Id.* at 1065–66. In *Northwest Environmental Defense Center v. Gordon*, 849 F.2d 1241 (9th Cir. 1988), the Ninth Circuit held that claims challenging fishery management measures applicable to the 1986 coho salmon season were not moot when that season ended during litigation, because although the challenged provisions could no longer be meaningfully altered, any damage they caused to the salmon population could "still be repaired or mitigated—obviously not by restoring the fish harvested in 1986, but by allowing more fish to spawn in 1989." 849 F.2d at 1245. The court explained that "where the violation complained of may have caused continuing harm and where the court can still act to remedy such harm by limiting its future adverse effects, the parties clearly retain a legally cognizable interest in the outcome." *Id.* The Ninth Circuit has also held that even where a request for injunctive relief has become moot, cases may proceed if declaratory relief is also requested and "a declaratory judgment would nevertheless

22

provide effective relief." *Forest Guardians v. Johanns*, 450 F.3d 455, 462 (9th Cir. 2006).

Here, even if the EPA has now belatedly engaged in required consultations for some groups of pesticide products, that would not mean there was no violation if, as Plaintiffs contend, the EPA was required to do so when it registered those products. Any such violation "may have caused continuing harm," *see Nw. Envtl. Def.*, 849 F.2d at 1245, in allowing pesticide products to be used that affect endangered species and that would not have been approved for registration, or would have been approved on different terms, if the EPA had engaged in consultation at the required time. Any such harm could still be remedied in this action.

In addition to a request for injunctive relief requiring the EPA to engage in consultation regarding the pesticide products at issue, Plaintiffs also ask the Court to:

> Vacate, set aside, and enjoin EPA's authorization of pesticide uses that may result in pesticides entering occupied habitat or designated critical habitat of endangered and threatened species until the consultation process has been completed and EPA is in compliance with Section 7(a)(2).

TAC at 271 ¶ 4 (prayer for relief). Defendants have not, at this stage, challenged whether such relief is available for violation of the consultation requirement. Assuming for the purpose of this order that such relief is available, it would be effective in "limiting [the] future adverse effects," *see Nw. Envtl. Def.*, 849 F.2d at 1245, of the EPA having approved pesticide products without engaging in consultation. Plaintiffs therefore "retain a legally cognizable interest in the outcome," *id.*, and none of their claims are moot.

## G. Reinitiation and "Agency Action" Requirement

While most of Plaintiffs' claims allege failure to initiate consultation regarding product registration or reregistration, three allege failure to reinitiate consultation as required by 50 C.F.R. § 402.16. This Court previously allowed Plaintiffs' claims for failure to reinitiate consultation to proceed, except for claims related to active ingredients where product reregistration had been completed. Aug. 2014 Order at 38–39. The Court reasoned that the "actions that triggered the [1989 and 1993] Biological Opinions were product registrations, which are superseded by product reregistrations," that the registrations at issue in the consultations that led to those biological opinions therefore remained operative until reregistration was completed, and that such

registrations could give rise to a duty a reinitiate consultation. *See id.* The Court allowed

reinitiation claims based on eleven active ingredients to proceed. *Id.* at 39 n.17. In contrast,

where reregistration had been completed for products containing a particular active ingredient, the

Court determined that "[i]t makes no sense to require a consultation by the EPA with the Service

on the question of whether the old registrations, which no longer govern anything, have any effect

on endangered species or their habitat." *Id.* at 38. The Ninth Circuit did not address that holding

on appeal. After remand, Plaintiffs reduced the scope of their reinitiation claims to three active

ingredients—dazomet, malathion, and permethrin—because the EPA completed reregistration of

products containing the other active ingredients at issue in the intervening period.

      Intervenors argue that those claims warrant additional scrutiny because the Ninth Circuit's

order in this case clarified "that Plaintiffs must 'identify an affirmative agency action that would

trigger a Section 7 consultation . . . .'" Intervenors' Mot. at 17 (quoting *CBD v. EPA*, 847 F.3d at

1091). According to Intervenors, although this Court previously determined that "the pesticide

registrations that gave rise to the two Biological Opinions are the agency actions in question," *see*

Aug. 2014 Order at 38, Plaintiffs should be required to specifically allege the registrations that

prompted that earlier consultation and that remain relevant. Intervenors contend that after taking

into account products that have been taken off the market and had their registrations canceled,

products that have been reregistered, products that (while not fully reregistered) have had their

labeling requirements amended such that they are now subject to different use restrictions, and

more recent products that did not exist at the time of the earlier consultations, there are likely few

if any products that remain subject to the terms of the registrations on which the EPA initiated

consultation. Intervenors' Mot. at 18–21.

      Plaintiffs argue that their reinitiation claims should be allowed to proceed because the

Court previously held them to be sufficient and because the original registrations "remain in

effect, have not been superseded, and have not been the subject of any subsequent consultations."

Opp'n at 37–39. Even so, the Court agrees with Intervenors that identification of the particular

products that Plaintiffs believe are still governed by the registrations underlying the previous

consultation is necessary to determine whether any live controversy remains with respect to those

earlier registrations, particularly as the EPA continues to proceed through the process of product reregistration. Plaintiffs' thirty-sixth, thirty-seventh, and thirty-eighth claims are therefore DISMISSED with leave to amend.[10] While Plaintiffs remain free to pursue such claims until the original registration actions have been superseded, Plaintiffs are encouraged to consider whether doing so is worthwhile in light of the ongoing reregistration process.

**H.    Failure to Comply with Court Orders**

As is apparent from the analysis above, Plaintiffs have substantially complied with relevant court orders in their Third Amended Complaint. Intervenors' motion to dismiss this action with prejudice under Rule 41(b) of the Federal Rules of Civil Procedure is DENIED.

## IV.    CONCLUSION

For the reasons discussed above, Defendants' motions to dismiss are DENIED in large part, but Intervenors' motion is GRANTED with respect to Plaintiffs' failure-to-reinitiate-consultation claims, which are DISMISSED with leave to amend. Plaintiffs may file a fourth amended complaint no later than July 20, 2018. Any such complaint must be either narrower than or identical to the present complaint, except for changes addressing the issues identified herein. Further challenges to Plaintiffs' pleadings will only be considered to the extent that they address changes in response to this order or failure to comply with this order.

**IT IS SO ORDERED.**

Dated: June 21, 2018

JOSEPH C. SPERO
Chief Magistrate Judge

---

[10] The Court declines to reach the question of whether amendments to labeling requirements can, in themselves, effectively supersede earlier registrations such that a reinitiation claim is no longer viable.